Exhibit "A"



7017 2400 0000 2321 1055



Ross William Ulbricht
Register Number: 18870-111
U.S. Penitentiary, USP Tucson
P.O. Box 24550
Tucson, AZ 85734

DOI-2042

**U.S. Department of Justice**
United States Attorney
Northern District of California
450 Golden Gate Avenue, P.O. Box 36055
San Francisco, California 94102-3495

Official Business
Penalty for Private Use $300

DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

DAVID B. COUNTRYMAN (CABN 226995)
CHRIS KALTSAS (NYBN 5460902)
CLAUDIA QUIROZ (CABN 254419)
WILLIAM FRENTZEN (LABN 24421)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Facsimile: (415) 436-7234
    Email:  david.countryman@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO:  CV 20-7811 RS |
|     Plaintiff, | ) |
| v. | ) CERTIFICATE OF SERVICE |
| Approximately 69,370 Bitcoin (BTC), Bitcoin Gold (BTG), Bitcoin SV (BSV), and Bitcoin Cash (BCH) seized from 1HQ3Go3ggs8pFnXuHVHRytPCq5fGG8Hbhx, | ) |
|     Defendant. | ) |

The undersigned hereby certifies that she is an employee in the Office of the United States

Attorney for the Northern District of California and is a person of such age and discretion to be

competent to serve papers.  The undersigned further certifies that she caused a copy of

- Amended Complaint for Civil Forfeiture;

- Amended Notice of Forfeiture Action;

- Amended Warrant of Arrest of Property *in Rem*;

1       •   Related Case Order;

2       •   Judge Seeborg's Standing Order re: Initial Case Management Conferences;

3       •   Judge Seeborg's Guidelines for Final Pretrial Conference in Jury Cases;

4       •   Judge Seeborg's Standing Order for Civil Bench Trial;

5       •   Standing Order for All Judges of the Northern District of California;

6       •   Notice of Availability of Magistrate Judge to Exercise Jurisdiction;

7       •   Dispute Resolution Procedures in the Northern District of California; and

8       •   ECF Registration Information

9 to be served this date via United States Certified Mail and United States First Class mail delivery upon

10 the person(s) below at the place(s) and address(es) which is the last known address(es):

| | |
|---|---|
| Ross William Ulbricht<br>Register Number: 18870-111<br>U.S. Penitentiary, USP Tucson<br>P.O. Box 24550<br>Tucson, AZ 85734 | |

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct to the best of my knowledge.

Executed this 25th day of November, 2020, at San Francisco, California

/S/ Carolyn Jusay
CAROLYN JUSAY
FSA Paralegal Asset Forfeiture Unit



# Dispute
# Resolution
# Procedures

### in the
### Northern District
### of California

# United States District Court



# Table of Contents

Why Does the Court Offer ADR?..................................................................... Preface

How Can ADR Help in My Case?.................................................................... 1

Which ADR Processes Does the Court Offer? ............................................... 2

    What is the ADR Multi-Option Program? ................................................... 2

    Early Neutral Evaluation............................................................................. 3

    Mediation .................................................................................................... 5

    Settlement Conferences.............................................................................. 7

    Other ADR Processes................................................................................. 8

Which Is the Most Suitable ADR Process for My Case?................................ 9

    How likely is each ADR Process to deliver the specific benefit?................ 11

What Else Do I Need to Know?..................................................................... 12

    What Is an ADR Phone Conference and How Do I Schedule One?............. 12

    How Do I Get My Case into an ADR Process? .......................................... 12

    When Can I Get My Case into an ADR Process?........................................ 12

    When Is the Best Time to Use ADR and How Much Discovery Should I First Complete? .... 13

    Will ADR Affect the Status of My Case on the Trial Track or Disclosure and Discovery? .... 13

    How Might ADR Be Better than the Parties' Meeting on Their Own?................................... 13

    Won't I Risk Giving Away My Trial Strategy in ADR? ....................................................... 14

What Else Do I Need to Know?..................................................................... 14



# Why Does the Court Offer ADR?

**A Message from the Judges of the U.S. District Court**

It is the mission of this court to do everything it can to help parties resolve their disputes as fairly, quickly and efficiently as possible. The cases filed in our court present a wide range of issues and circumstances. No single process can be expected to meet the needs of all of these cases.

While traditional litigation can serve parties' interests well in some situations, many cases have needs that can be better met through other procedures. We offer a wide selection of non-binding alternative dispute resolution (ADR) options—each of which provides different kinds of services—so that parties can use the procedure that best fits the particular circumstances of their case.

As discussed in the following pages, ADR processes can offer numerous advantages over both formal litigation and direct negotiations between the parties. In contrast to formal litigation and direct negotiations, ADR procedures may lead to resolutions that are faster, less expensive, more creative, and better tailored to the parties underlying interests.

We urge you to consider using an ADR process in any civil case, at any time. The court's professional ADR staff, which includes attorneys with expertise in ADR procedures, is available to help you select a suitable option or to customize an ADR procedure to meet your needs. Our ADR processes, which are governed by the court's ADR Local Rules, are available in every civil case.

This handbook provides information about the benefits of ADR, available ADR options, selecting an appropriate ADR process, and procedures in the court's ADR programs. To help ensure that you make informed choices, the court requires, under Civil Local Rule 16, that every attorney and client certify that they have read this handbook and considered the ADR options. Reading this handbook is not a substitute for understanding the ADR Local Rules. Be sure to consult the rules when selecting and participating in an ADR process.

We have committed substantial resources to our ADR programs because we are confident that litigants who use them conscientiously can save significant money and time and will often obtain more satisfying results.

Phyllis J. Hamilton
Chief Judge
Northern District of California



# How Can ADR Help in My Case?

Most cases can benefit in some way from ADR. The various ADR processes offer different types of benefits. Each ADR process offers at least some of the following advantages over traditional litigation or direct settlement negotiations.

**Produce more satisfying results**

After litigating a case through trial, even the winners may feel they have lost. The costs and time commitment on both sides may be enormous. Sometimes neither side is satisfied with the result—and any relationship that may have existed between the parties is likely to have been severely strained. On the other hand, ADR may:

- help settle all or part of the dispute much sooner than trial
- permit a mutually acceptable solution that a court would not have the power to order
- save time and money
- preserve ongoing business or personal relationships
- increase satisfaction and thus result in a greater likelihood of a lasting resolution

**Allow more flexibility, control and participation**

In formal litigation, the court is limited in the procedures it must follow and the remedies it may award—and submitting a case to a judge or jury can be extremely risky. ADR processes are more flexible and permit parties to participate more fully and in a wider range of ways. They afford parties more control by providing opportunities to:

- tailor the procedures used to seek a resolution
- broaden the interests taken into consideration
- fashion a business-driven or other creative solution that may not be available from the court
- protect confidentiality
- eliminate the risks of litigation

**Enable a better understanding of the case**

In traditional litigation, sometimes the parties stop communicating directly—and it is only after a significant amount of time and expensive discovery or motions that the parties understand what is really in dispute. ADR can expedite the parties' access to information. It can also improve the quality of justice by helping the parties obtain a better understanding of their case early on. It may:

- provide an opportunity for clients to communicate their views directly and informally
- help parties get to the core of the case and identify the disputed issues
- enhance the parties' understanding of the relevant law and the strengths and weaknesses of their positions
- help parties agree to exchange key information directly.

**Improve case management**

Attorneys in litigation sometimes find it difficult, early in the case, to devise a cost-effective case management plan, reach stipulations or narrow the dispute. An ADR neutral can help parties:

- ‣ streamline discovery and motions
- ‣ narrow the issues in dispute and identify areas of agreement and disagreement
- ‣ reach factual and legal stipulations

**Reduce hostility**

Due to its adversarial nature, litigation sometimes increases the level of hostility between sides, which can make communication more difficult and impede chances for settlement. In contrast, a trained ADR neutral can:

- ‣ improve the quality and tone of communication between parties
- ‣ decrease hostility between clients and between lawyers
- ‣ reduce the risk that parties will give up on settlement efforts

**WHEN ADR MAY NOT BE USEFUL**

Although most cases can benefit in some way from ADR, some cases might be better handled without ADR. These include suits in which:

- ‣ a party seeks to establish precedent
- ‣ a dispositive motion requiring little preparation will probably succeed
- ‣ a party needs the protections of formal litigation
- ‣ a party prefers that a judge preside over all processes

If your dispute might benefit from one or more of the listed advantages, please seriously consider trying ADR and give careful thought to selecting the most appropriate process for your case.

 # Which ADR Processes Does the Court Offer?

## What is the ADR Multi-Option Program?

Most civil cases are assigned to the ADR Multi-Option program (ADRMOP) governed by ADR Local Rule 3. You will be notified of such assignment by way of the initial case management scheduling order. In this program, the parties are presumptively required to participate in one non-binding ADR process offered by the court or, with the assigned judge's permission, in an ADR process offered by a private provider. Indeed, each side must 1) read this handbook, 2) discuss the available ADR options provided by the court and private entities, and 3) consider whether the case might benefit from any of the available ADR options. Each counsel and client must then certify that they have complied with these requirements by filing an ADR Certification by the date specified in the initial case management scheduling order. *See* ADR L-R 3-5(b).

2

We encourage you to discuss ADR with the other side and stipulate to an ADR process as early as feasible. If you do not stipulate early, you will be required to participate in a joint telephone conference with an ADR legal staff member to consider suitable ADR options for your case. *See* ADR Local Rule 3-5(c)(2). If you have not stipulated before your case management conference, you will discuss ADR with the judge who may refer you to one of the court's ADR processes.

**The court sponsors three major ADR processes:**

> ‣ **Early Neutral Evaluation**
> ‣ **Mediation**
> ‣ **Settlement Conferences** (ordinarily conducted by magistrate judges)

Each of these programs is described separately in the next few pages. Please consult the ADR Local Rules for more information. The court's ADR staff will help parties customize an ADR process to meet their needs.

The court also makes available other dispute resolution processes and encourages parties to consider retaining the services of private sector ADR providers as discussed on page 13 and in ADR Local Rule 8-2.

# Early Neutral Evaluation

**Goal**

The goals of Early Neutral Evaluation (ENE) are to enhance direct communication between the parties about their claims and supporting evidence; to provide an assessment of the merits of the case by a neutral expert; to provide a "reality check" for clients and lawyers; to identify and clarify the central issues in dispute; to assist with discovery and motion planning or with an informal exchange of key information; to facilitate settlement discussions, when requested by the parties.

ENE aims to position the case for early resolution by settlement, dispositive motion or trial. It may serve as a cost-effective substitute for formal discovery and pretrial motions. Although settlement is not the major goal of ENE, the process can lead to settlement.

**Process**

The evaluator, an experienced attorney with expertise in the subject matter of the case, hosts an informal meeting of clients and counsel at which the following occurs:

> ‣ each side–through counsel, clients or witnesses–presents the evidence and arguments supporting its case (without regard to the rules of evidence and without direct or cross-examination of witnesses)
> ‣ the evaluator identifies areas of agreement, clarifies and focuses the issues and encourages the parties to enter procedural and substantive stipulations
> ‣ the evaluator writes an evaluation in private that includes:
> > o an estimate, where feasible, of the likelihood of liability and the dollar range of damages
> > o an assessment of the relative strengths and weaknesses of each party's case
> > o the reasoning that supports these assessments

- the evaluator offers to present the evaluation to the parties, who may then ask either to:
  - o hear the evaluation (which must be presented orally if any party requests it), *or*
  - o postpone hearing the evaluation to:
    - engage in settlement discussions facilitated by the evaluator, often in separate meetings with each side, *or*
    - conduct focused discovery or make additional disclosures if settlement discussions do not occur or do not resolve the case, the evaluator may:
      - o help the parties devise a plan for sharing additional information and/or conducting the key discovery that will expeditiously equip them to enter meaningful settlement discussions or position the case for resolution by motion or trial
      - o help the parties realistically assess litigation costs
      - o determine whether some form of follow up to the session would contribute to case development or settlement.

**Preservation of right to trial**

The evaluator has no power to impose settlement and does not attempt to coerce a party to accept any proposed terms. The parties' formal discovery, disclosure and motion practice rights are fully preserved. The confidential evaluation is non-binding and is not shared with the trial judge, nor with anyone not involved in the litigation. The parties may agree to a binding settlement. If no settlement is reached, the case remains on the litigation track.

**The neutral**

The court's ADR staff appoints a neutral evaluator with expertise in the substantive legal area of the lawsuit, who is available and has no apparent conflict of interest. The parties may object to the neutral evaluator if they perceive a conflict of interest. All neutral evaluators on the court's panel have been admitted to the practice of law for at least 15 years, have experience with civil litigation in federal court, have expertise in the substantive law of the case, and have been trained by the court. Many neutral evaluators also have completed the court's mediation training.

**Attendance**

The following individuals are required to attend in person: clients with settlement authority and knowledge of the facts; the lead trial attorney for each party; and insurers of parties, if their agreement would be necessary to achieve settlement. Requests to permit attendance by phone rather than in person, which will be granted only under extraordinary circumstances, may be made to the ADR Magistrate Judge. Clients are strongly encouraged to participate actively in the ENE session.

**Confidentiality**

Communications made in connection with an ENE session ordinarily may not be disclosed to the assigned judge or to anyone else not involved in the litigation, unless otherwise agreed.

**Timing**

An ENE session may be requested at any time. The time for holding the ENE session is presumptively within 90 days after the referral to ENE, unless otherwise fixed by the court. The

neutral evaluator contacts counsel to schedule an initial telephone conference to set the date, time and location of the ENE session and to discuss how to maximize the utility of ENE.

**Written submissions**

Counsel exchange and submit written statements to the neutral evaluator at least 7 days before the ENE session. ADR Local Rule 5-9 lists special requirements for intellectual property cases.

The statements are confidential and thus are not filed with the court.

**Appropriate cases/circumstances**

All civil cases are eligible. Cases with the following characteristics may be particularly appropriate:

- counsel or the parties are far apart on their view of the law and/or value of the case
- the case involves technical or specialized subject matter and it is important to have a neutral with expertise in that subject
- case planning assistance would be useful
- communication across party lines (about merits or procedure) could be improved
- equitable relief is sought if parties, with the aid of a neutral expert, might agree on the terms of an injunction or consent decree

**Cost**

The neutral evaluator volunteers up to two hours of preparation time and the first four hours of the ENE session. After four hours in an ENE session, the Evaluator may (1) continue to volunteer his or her time or (2) give the parties the option of either concluding the proceeding or paying the Evaluator. The ENE proceeding will continue only if all parties and the Evaluator agree. If all parties agree to continue, the Evaluator may then charge his or her hourly rate or such other rate that all parties agree to pay.

**Governing rule**

ADR Local Rule 5.

# Mediation

**Goal**

The goal of mediation is to reach a mutually satisfactory agreement resolving all or part of the dispute by carefully exploring not only the relevant evidence and law, but also the parties' underlying interests, needs and priorities.

**Process**

Mediation is a flexible, non-binding, confidential process in which a neutral lawyer-mediator facilitates settlement negotiations. The informal session typically begins with presentations of each side's view of the case, through counsel or clients. The mediator, who may meet with the parties in joint and separate sessions, works to:

- improve communication across party lines
- help parties clarify and communicate their interests and those of their opponent
- probe the strengths and weaknesses of each party's legal positions

- ▸ identify areas of agreement and help generate options for a mutually agreeable resolution

The mediator generally does not give an overall evaluation of the case. Mediation can extend beyond traditional settlement discussion to broaden the range of resolution options, often by exploring litigants' needs and interests that may be independent of the legal issues in controversy.

## Preservation of right to trial

The mediator has no power to impose settlement and does not attempt to coerce a party to accept any proposed term. The parties' discovery, disclosure and motion practice rights are fully preserved. The parties may agree to a binding settlement. If no settlement is reached, the case remains on the litigation track.

## The neutral

The court's ADR staff appoints a mediator who is available and has no apparent conflicts of interest. The parties may object to the mediator if they perceive a conflict of interest. Most mediators on the court's panel are lawyers who have been admitted to practice for at least seven years. The panel also includes a few mediators who have other professional credentials. The court's ADR staff will appoint a non-lawyer mediator only after obtaining the parties' permission. All mediators on the court's panel have experience in communication and negotiation techniques, knowledge about civil litigation in federal court and training provided by the court

## Attendance

The following individuals are required to attend the mediation session: clients with settlement authority and knowledge of the facts; the lead trial attorney for each party; and insurers of parties, if their agreement would be necessary to achieve a settlement. Requests to permit attendance by phone rather than in person, which will be granted only under extraordinary circumstances, may be made to the ADR Magistrate Judge. Clients are strongly encouraged to participate actively in the mediation.

## Confidentiality

Communications made in connection with a mediation ordinarily may not be disclosed to the assigned judge or to anyone else not involved in the session, unless otherwise agreed.

## Timing

A mediation may be requested at any time. The time for holding the mediation is presumptively within 90 days after the referral to mediation, unless otherwise fixed by the court. The mediator contacts counsel to schedule an initial telephone conference to set the date, time and location of the mediation session and to discuss how to maximize the utility of mediation.

## Written submission

Counsel exchange and submit written statements to the mediator at least 7 days before the mediation. ADR Local Rule 6-8 lists special requirements for intellectual property cases. The mediator may request or accept additional confidential statements that are not shared with the other side. Both the shared and confidential statements, if any, are privileged documents and thus are not filed with the court.

**Appropriate cases/circumstances**

All civil cases are eligible. Cases with the following characteristics may be particularly appropriate:

- the parties desire a business-driven or other creative solution
- the parties may benefit from a continuing business or personal relationship
- multiple parties are involved
- equitable relief is sought - if parties, with the aid of a neutral, might agree on the terms of an injunction or consent decree
- communication appears to be a major barrier to resolving or advancing the case

**Cost**

The mediator volunteers preparation time and the first four hours of the mediation. After four hours of Mediation, the mediator may (1) continue to volunteer his or her time or (2) give the parties the option of either concluding the proceeding or paying the mediator. The proceeding will continue only if all parties and the mediator agree. If all parties agree to continue, the mediator may then charge his or her hourly rate or such other rate that all parties agree to pay.

**Governing rule**

ADR Local Rule 6.

# Settlement Conferences

## Goal

The goal of a settlement conference is to facilitate the parties' efforts to negotiate a settlement of all or part of the dispute.

## Process

A judicial officer, usually a magistrate judge, helps the parties negotiate. Some settlement judges also use mediation techniques to improve communication among the parties, probe barriers to settlement and assist in formulating resolutions. Settlement judges might articulate views about the merits of the case or the relative strengths and weaknesses of the parties' legal positions. Often settlement judges meet with one side at a time, and some settlement judges rely primarily on meetings with counsel.

## Preservation of right to trial

The settlement judge has no power to impose settlement and does not attempt to coerce a party to accept any proposed terms. The parties may agree to a binding settlement. If no settlement is reached, the case remains on the litigation track. The parties' formal discovery, disclosure and motion practice rights are fully preserved.

## The neutral

A magistrate judge or, in limited circumstances, a district judge conducts the settlement conference. The judge who would preside at trial does not conduct the settlement conference unless the parties stipulate in writing and the judge agrees. Parties may request a specific magistrate judge or rank several magistrate judges in order of preference. The court will attempt to accommodate such preferences.

Magistrate judges have standing orders setting forth their requirements for settlement conferences, including written statements and attendance. Questions about these issues should be directed to the chambers of the magistrate judge assigned to conduct the settlement conference.

**Attendance**

Settlement judges' standing orders generally require the personal attendance of lead counsel and the parties. This requirement is waived only when it poses a substantial hardship, in which case the absent party is required to be available by telephone. Persons who attend the settlement conference are required to be thoroughly familiar with the case and to have authority to negotiate a settlement.

**Confidentiality**

Communications made in connection with a settlement conference ordinarily may not be disclosed to the assigned judge or to anyone else not involved in the litigation, unless otherwise agreed.

**Timing**

The assigned judge may refer a case to a magistrate judge for a settlement conference at any time. The timing of the settlement conference depends on the schedule of the assigned magistrate judge.

**Written submissions**

Written settlement conference statements, when required, are submitted directly to the settlement judge. The statements are not filed with the court.

**Appropriate cases/circumstances**

All civil cases are eligible. Cases with these characteristics may be particularly appropriate:

- a client or attorney strongly prefers to appear before a judicial officer
- issues of procedural law are especially important
- a party is not represented by counsel.

Please note that because of the many other duties and functions performed by magistrate judges in this district, the court refers only a limited number of cases for early settlement conferences.

**Cost**

There is no charge to the litigants.

**Governing rule**

ADR Local Rule 7.

# Other ADR Processes

**Customized ADR Processes**

The court's ADR legal staff will work with parties to customize an ADR process to meet the needs of their case or to design an ADR process for them. An ADR legal staff member is available for a telephone conference with all counsel to discuss ADR options. Clients are invited to join such conferences.

**Arbitration**

Arbitration is an adjudicative process in which an arbitrator or a panel of three arbitrators issues a non-binding judgment ("award" or "decision") on the merits after an expedited, adversarial

hearing. Either party may reject the non-binding award or decision and request a trial de novo. An Arbitration occurs earlier in the life of a case than a trial and is less formal and less expensive. Because testimony is taken under oath and is subject to cross-examination, arbitration can be especially useful in cases that turn on credibility of witnesses. Arbitrators do not facilitate settlement discussions. Parties considering a non-binding arbitration are encouraged to contact the ADR Unit for assistance in structuring a non-binding arbitration tailored to their case.

**Non-binding Summary Bench or Jury Trial**

The ADR staff can help parties structure a non-binding summary bench or jury trial under ADR Local Rule 8-1(a). A summary bench or jury trial is a flexible, non-binding process designed to promote settlement in complex, trial-ready cases headed for long trials; to provide an advisory verdict after an abbreviated presentation of evidence; to offer litigants a chance to ask questions and hear the reactions of the judge and/or jury; and to trigger settlement negotiations based on the judge's or jury's non-binding verdict and reactions.

**Special Masters**

The assigned judge may appoint a special master, whose fee is paid by the parties, to serve a wide variety of functions, including:

- discovery manager
- fact-finder
- host of settlement negotiations
- post-judgment administrator or monitor

**Private ADR Providers**

The court encourages parties to consider private sector ADR providers who offer services including arbitration, mediation, fact-finding, neutral evaluation and private judging. Private providers may be lawyers, law professors, retired judges or other professionals with expertise in dispute resolution techniques. They generally charge a fee.

 # Which Is the Most Suitable ADR Process for My Case?

Each ADR process meets different needs and circumstances. When selecting an ADR process, you should carefully consider the needs of your particular case or situation and identify the goals you hope to achieve through ADR. Then select the ADR process that appears to maximize the potential for achieving your goals.

The chart on the next page may help you select an ADR process. The chart summarizes the court's general observations about the major benefits of ADR and the extent to which the court's four major ADR processes are likely to accomplish them. These are generalizations that the court believes are accurate in many, but not all, cases. The likelihood that a particular ADR process will deliver a benefit depends not only on the type of process, but on numerous other factors including: the style of the neutral; the type and procedural posture of the case; and the parties' and counsel's attitudes and personalities, level of preparation, and experience with the particular

ADR process. The court's ADR legal staff is available to help you select or customize an ADR process to meet your needs.

**What If I Don't Have a Lawyer?**

If you are not represented by a lawyer, the court suggests that you select the option of a magistrate judge settlement conference where your questions and concerns can be addressed directly by a judge who has experience working with unrepresented parties. Volunteer mediators, evaluators, and arbitrators, who take only a few cases each year, sometimes feel uncomfortable working with unrepresented parties, making it more difficult to place your case in these programs and potentially slowing down the process. If you do select mediation or ENE and we are unable to find a suitable neutral, your case likely will be redirected to a settlement conference with a magistrate judge.

# How likely is each ADR Process to deliver the specific benefit?

• = Very likely  ◉ = Somewhat likely  ○ = Unlikely

| | ENE | MED | MJSC |
|---|---|---|---|
| **ENHANCE PARTY SATISFACTION** | | | |
| Help settle all or part of dispute | ◉[1] | ● | ● |
| Permit creative/business driven solution that court could not offer | ◉[1] | ● | ◉[2] |
| Preserve personal or business relationships | ◉[1] | ● | ◉[2] |
| Increase satisfaction and thus improve chance of lasting solution | ◉[1] | ● | ◉[2] |
| **ALLOW FLEXIBILITY, CONTROL AND PARTICIPATION** | | | |
| Broaden the interests taken into consideration | ◉[1] | ● | ◉[2] |
| Protect confidentiality | ● | ● | ● |
| Provide trial-like hearing | N/A | N/A | N/A |
| Provide opportunity to appear before judicial officer | N/A | N/A | ● |
| **IMPROVE CASE MANAGEMENT** | | | |
| Help parties agree on further conduct of the case | ● | ◉[3] | ◉[2] |
| Streamline discovery and motions | ● | ◉[3] | ◉[2] |
| Narrow issues and identify areas of agreement | ● | ●[3] | ● |
| Reach stipulations | ● | ◉[3] | ● |
| **IMPROVE UNDERSTANDING OF CASE** | | | |
| Help get to core of case and sort out issues in dispute | ● | ● | ● |
| Provide neutral evaluation of case | ● | ○ | ◉[2] |
| Provide expert in subject matter | ● | ◉[4] | ◉[4] |
| Help parties see strengths and weaknesses of positions | ● | ● | ● |
| Permit direct and informal communication of clients' views | ◉ | ● | ○[2] |
| Provide opportunity to assess witness credibility and performance | ◉[5] | ◉[5] | ○ |
| Help parties agree to an informal exchange of key information | ● | ◉[3] | ◉[2] |
| **REDUCE HOSTILITY** | | | |
| Improve communications between parties/attorneys | ● | ● | ◉[2] |
| Decrease hostility | ● | ● | ◉[2] |

**Notes**

1. ENE may provide this benefit when the parties use it for settlement discussions. Many of the court's ENE evaluators also have been trained as mediators.
2. Depending on the settlement judge's particular style, a settlement conference may or may not deliver this benefit.
3. Mediation may deliver this benefit, but it focuses primarily on settlement.
4. Depending on the subject of the dispute, the neutral may have expertise.
5. This benefit may result if the parties participate actively in the joint session.

 # What Else Do I Need to Know?

## What Is an ADR Phone Conference and How Do I Schedule One?

During an ADR Phone Conference, a member of the court's ADR legal staff will help counsel select or customize an ADR process that meets the needs of the parties. Clients are encouraged, but not required, to participate. Generally, if the parties cannot agree on an ADR process, or if they prefer a settlement conference, they must file a Notice of Need for ADR Phone Conference by the date specified in the initial case management scheduling order. *See* ADR Local 3-5(c)(2). Of course, you may contact the ADR Unit to schedule an ADR Phone Conference at any time. For your convenience, the court provides a standard form for requesting a phone conference, the *Notice of Need for ADR Phone Conference.*

## How Do I Get My Case into an ADR Process?

There are two ways cases can enter an ADR process:

By stipulation/proposed order

Counsel may file a stipulation and proposed order with the assigned judge. *See* ADR Local Rule 2-3. For your convenience, the court provides a standard form for stipulating to an ADR Process, the *Stipulation and Proposed Order Selecting ADR Process.*

By other order of the court

The assigned judge may order the case into an ADR program at the request of a party or on the judge's own initiative, subject to the provisions of 28 U.S.C. § 654. *See* ADR Local Rule 2-3.

## When Can I Get My Case into an ADR Process?

At any time

Counsel, individually or jointly, can request an ADR referral at any time. The court encourages the use of ADR as early as it can be helpful.

Before the Case Management Conference

If all parties agree on an ADR process before the initial Case Management Conference, which usually occurs about 90 days after filing, you should file a stipulation and proposed order identifying the process selected and the time frame you prefer by the date set forth in the initial case management scheduling order.

At the Case Management Conference

If all parties have not yet agreed on an ADR process before the initial case management conference, you will discuss ADR with the judge at the conference. You are asked to state your ADR preferences in the Joint Case Management Statement you file before that conference.

## When Is the Best Time to Use ADR and How Much Discovery Should I First Complete?

You should consider using ADR early, whether you are seeking assistance with settlement or case management. Conducting full-blown discovery before an ADR session may negate potential cost savings. If you are using ADR for settlement purposes, you should know enough about your case to assess its value and identify its major strengths and weaknesses.

## Will ADR Affect the Status of My Case on the Trial Track or Disclosure and Discovery?

Assignment to an ADR process generally does not affect the status of your case in litigation. Disclosure, discovery and motions are not stayed during ADR proceedings unless the court orders otherwise. Judges sometimes postpone case management or status conferences until after the parties have had an ADR session. If your case does not settle through ADR, it remains on the litigation track.

## How Might ADR Be Better than the Parties' Meeting on Their Own?

### Getting settlement discussions started

Sometimes advocates are reluctant to initiate settlement discussions. The availability of multiple ADR options and the ability to consult with the ADR legal staff allows a party to explore settlement potential without indicating any litigation weakness.

### Saving time and money

For various reasons, direct settlement discussions often do not occur until late in the lawsuit after much time and money have been spent. A substantial amount of time and money can be saved if parties actively explore settlement early in the pretrial period. An ADR process can provide a safe and early opportunity to discuss settlement.

### Providing momentum and a "back up"

Often parties successfully negotiate an early resolution to their dispute on their own. Even if you are negotiating a settlement without the assistance of a neutral, you should still consider having your case referred to an ADR process to use as a "back up" in the event the case does not settle. Meanwhile, knowing that you have a date for the ADR process may help provide momentum and a "deadline" for your direct settlement discussions.

### Overcoming obstacles to settlement

The adversarial nature of litigation often makes it difficult for counsel and parties to negotiate a settlement effectively. An ADR neutral can help overcome barriers to settlement by selectively using information from each side to:

- help parties engage in productive dialogue
- help each party understand the other side's views and interests
- communicate views or proposals in more palatable terms
- gauge the receptiveness to proposals

> ‣ help parties realistically assess their alternatives to settlement
> ‣ help generate creative solutions

**Improving case management**

Discovery can be broad and expensive, and sometimes fails to focus on the most important issues in the case. An early meeting with a neutral such as an ENE evaluator may help parties agree to a focused, cost-effective discovery plan or may help them agree to exchange information informally.

## Won't I Risk Giving Away My Trial Strategy in ADR?

About 98 percent of civil cases in our court are resolved without a trial. If you don't raise your best arguments in settlement discussions, you risk failing to achieve the best result for your side. Although you need not reveal in an ADR session sensitive information related to trial strategy, you might find it useful to raise it in a confidential separate session with the neutral (available after the evaluator prepares the evaluation in ENE, or at any time in mediation or a settlement conference). You can then hear the neutral's views of the significance of the information and whether or when sharing it with the other side may benefit you in the negotiations.

 # What Else Do I Need to Know?

**Website**

Our website at **www.cand.uscourts.gov/adr** contains information about the court's ADR

Programs, including the contents of this ADR handbook, the ADR Local Rules, ADR Forms and an application to serve as a neutral.

**Clerk's Office**

You may obtain copies of this handbook and the ADR Local Rules from the intake counter at each of the Clerk's Office locations. The phone numbers for the Clerk's Office locations in San Francisco, Oakland and San Jose are as follows:

> ‣ San Francisco: (415) 522-2000
> ‣ Oakland: (510) 637-3530
> ‣ San Jose: (408) 535-5363

**Court Library**

The court's library on the 18th floor of the Federal Building and United States Courthouse in San Francisco is open to counsel and clients who have cases pending before the court. The library has a collection of resources on ADR. The collection includes copies of the court's ENE and Mediation Handbooks, which were prepared by the court to train evaluators and mediators, but which might be helpful to counsel and clients referred to the respective programs. The library's telephone number is (415) 436-8130.

**ADR Unit**

For information about selecting an ADR process or customizing one for your case, conflicts of interest, becoming a neutral or for other information, contact:

ADR Unit — U.S. District Court
450 Golden Gate Avenue
San Francisco, CA 94102

*Tel:* (415) 522-2199
*Fax:* (415)522-4112

Email: mailto:ADR@cand.uscourts.gov

Internet: www.cand.uscourts.gov/adr

# STANDING ORDER FOR ALL JUDGES
## OF THE NORTHERN DISTRICT OF CALIFORNIA
## CONTENTS OF JOINT CASE MANAGEMENT STATEMENT

All judges of the Northern District of California require identical information in Joint Case Management Statements filed pursuant to Civil Local Rule 16-9. The parties must include the following information in their statement which, except in unusually complex cases, should not exceed ten pages:

1.  Jurisdiction and Service: The basis for the court's subject matter jurisdiction over plaintiff's claims and defendant's counterclaims, whether any issues exist regarding personal jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be served, a proposed deadline for service.

2.  Facts: A brief chronology of the facts and a statement of the principal factual issues in dispute.

3.  Legal Issues: A brief statement, without extended legal argument, of the disputed points of law, including reference to specific statutes and decisions.

4.  Motions: All prior and pending motions, their current status, and any anticipated motions.

5.  Amendment of Pleadings: The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings.

6.  Evidence Preservation: A brief report certifying that the parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirming that the parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. *See ESI Guidelines 2.01 and 2.02, and Checklist for ESI Meet and Confer.*

7.  Disclosures: Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26, and a description of the disclosures made.

8.  Discovery: Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, a brief report on whether the parties have considered entering into a stipulated e-discovery order, a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f), and any identified discovery disputes.

9.  Class Actions: If a class action, a proposal for how and when the class will be certified, and whether all attorneys of record for the parties have reviewed the Procedural Guidance for Class Action Settlements.

10. Related Cases: Any related cases or proceedings pending before another judge of this court, or before another court or administrative body.

11. Relief: All relief sought through complaint or counterclaim, including the amount of any damages sought and a description of the bases on which damages are calculated. In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established.

12. <u>Settlement and ADR</u>: Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case, including compliance with ADR L.R. 3-5 and a description of key discovery or motions necessary to position the parties to negotiate a resolution.

13. <u>Consent to Magistrate Judge For All Purposes</u>: Whether **all** parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment. ___ Yes ___ No

14. <u>Other References</u>: Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

15. <u>Narrowing of Issues</u>: Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses.

16. <u>Expedited Trial Procedure</u>: Whether this is the type of case that can be handled under the Expedited Trial Procedure of General Order No. 64 Attachment A. If all parties agree, they shall instead of this Statement, file an executed Agreement for Expedited Trial and a Joint Expedited Case Management Statement, in accordance with General Order No. 64 Attachments B and D.

17. <u>Scheduling</u>: Proposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.

18. <u>Trial</u>: Whether the case will be tried to a jury or to the court and the expected length of the trial.

19. <u>Disclosure of Non-party Interested Entities or Persons</u>: Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15. In addition, each party must restate in the case management statement the contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding. In any proposed class, collective, or representative action, the required disclosure includes any person or entity that is funding the prosecution of any claim or counterclaim.

20. <u>Professional Conduct</u>: Whether all attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

21. Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**GUIDELINES FOR FINAL PRETRIAL CONFERENCE**

**IN BENCH TRIALS BEFORE DISTRICT JUDGE RICHARD SEEBORG**

**A.**   **Meeting and Disclosure Prior to Pretrial Conference**

At least 21 days before the final Pretrial Conference, lead counsel who will try the case shall meet and confer with respect to:

Settlement of the case;

Preparation and content of the Joint Pretrial Statement and Order; and

Preparation and exchange of pretrial materials to be served and lodged pursuant to Rule 26(a)(3) F.R. Civ. P.; and

Clarifying and narrowing the contested issues for trial in order to achieve a just, speedy and efficient determination of the case.

**B.**   **Joint Pretrial Statement and Order**

At least ten (10) days before the Pretrial Conference, unless otherwise ordered, the parties shall file and serve a Joint Pretrial Statement and Proposed Order containing the following information:

Substance of the Action.  A brief description of the parties, the substance of claims and defenses that remain to be decided, and the operative pleadings that raise the issues;

Relief Prayed.  A detailed statement of all relief claimed, particularly itemizing all elements of damages claimed;

Undisputed Facts.  A plain and concise statement of all relevant facts to which the parties will stipulate for incorporation into the trial record without the necessity of supporting testimony or exhibits.  The parties shall exercise good faith in stipulating to facts that are not reasonably disputable;

Disputed Factual Issues.  A plain and concise list of the issues of fact that are contested and remain to be litigated at trial;

United States District Court
For the Northern District of California

Agreed Statement.  A statement assessing whether all or part of the action may be presented upon an agreed statement of facts;

Stipulations.  A statement of proposed stipulations or agreements that will expedite the presentation of evidence;

Witnesses to be Called.  A list of all witnesses likely to be called at trial, other than solely for impeachment or rebuttal, together with a brief statement following each name describing the substance of the testimony to be given.  No party shall be permitted to call any witness in its case in chief who is not disclosed in its pretrial statement without leave of court for good cause;

Exhibits, Schedules and Summaries.  A list of all documents and other items to be offered as exhibits at the trial, other than solely for impeachment or rebuttal, with a brief statement following each, describing its substance or purpose and the identity of the sponsoring witness; Disputed Legal Issues.  Without extended legal argument, a concise statement of each disputed point of law concerning liability or relief, citing supporting statutes and decisions;

Pending Motions or Matters.  A statement of any motions or matters that must be resolved prior to trial;

Bifurcation, Separate Trial of Issues.  A statement of whether bifurcation or a separate trial of specific issues is feasible and desired;

Estimate of Trial Time.  An estimate of the number of hours or days needed for the trial; and,

Miscellaneous. Any other matters that will facilitate the just, speedy and efficient determination of the action.

C.    **Binding Effect of the Joint Pretrial Statement and Order**

The Joint Pretrial Statement and Order described above shall recite, directly above the signature lines of each party, the following:

*The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues of fact and law remaining to be litigated, this order*

STANDING ORDER

*shall supplement the pleadings and govern the course of trial of this cause, unless modified to prevent manifest injustice.*

**D.      Preparation For Trial**

    **1.      Exhibits**

        (a)      At least (10) days before the final Pretrial Conference, the parties shall exchange copies of all exhibits, summaries, charts, and diagrams to be used at trial other than solely for impeachment or rebuttal.

        (b)      Each exhibit shall be premarked for identification.   Counsel shall meet and confer and reach agreement upon a method for marking exhibits (for example, Plaintiff shall use numbers and Defendant shall use letters, or Plaintiff shall use numbers 100-199 and Defendant shall use numbers 200-299, etc.).

        (c)      Unless otherwise ordered, at least five (5) days prior to the commencement of trial the parties shall deliver three sets of all premarked exhibits contained in three ring binders to the judge's deputy clerk.

        (d)      No party shall be permitted to offer any exhibit at trial that is not disclosed in its pretrial statement without leave of court for good cause, unless it is offered solely for impeachment or rebuttal.

    **2.      Motions in Limine**

Ordinarily, motions in limine are unnecessary in a bench trial.  However, any party believing motions in limine to be necessary shall file and serve any such motions at least ten (10) days before the final Pretrial Conference.  Any oppositions thereto shall be filed and served at least three (3) days before the final Pretrial Conference. Unless otherwise ordered, these motions will be deemed submitted without oral argument.

    **3.      Deposition and Discovery Designations**

Unless otherwise ordered, at least five (5) days before the commencement of trial, the parties shall file and serve any excerpts of deposition testimony or other

3

discovery to be offered at trial, other than solely for impeachment or rebuttal. (A copy of the designated deposition testimony with page and line references, or the interrogatory response or admission shall be provided). Any objections to the use of designated excerpts and any counter-designations of deposition testimony shall be filed and served prior to the commencement of trial.

**4.      Proposed Findings of Fact and Conclusions of Law**

At least five (5) days prior to the pretrial conference, each party shall file and serve proposed findings of fact and conclusions of law. The findings of fact shall set forth in simple declarative sentences, separately numbered, all factual contentions relied upon by the party in support of its claims for relief or defenses and shall be free of pejorative language and argument. Conclusions of law shall be supported by appropriate citation to legal authority. The proposed findings of fact and conclusions of law shall be submitted in hard copy as well as in word processing format via email to RSpo@cand.uscourts.gov.

**5.      Trial Briefs**

Trial briefs are optional, but any party wishing to file a trial brief must do so not less than five (5) days prior to the commencement of trial.

**6.      Transcripts**

Should a daily transcript and/or realtime reporting be desired, the parties shall make arrangements with the Court Reporter Supervisor at (415) 522-2079 at least 14 calendar days prior to the trial date.

DATED: May 9, 2019

RICHARD SEEBORG
United States District Judge

STANDING ORDER

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

**GUIDELINES FOR FINAL PRETRIAL CONFERENCE**

**IN JURY CASES BEFORE DISTRICT JUDGE RICHARD SEEBORG**

A.   **Meeting and Disclosure Prior to Pretrial Conference:**

At least 21 days before the final Pretrial Conference, lead counsel who will try the case shall meet and confer with respect to:

1.   Settlement of the case;

2.   Preparation of the Joint Pretrial Statement; and

3.   Preparation and exchange of pretrial materials to be served and lodged pursuant to Rule 26(a)(3) F.R. Civ. P.; and

4.   Clarifying and narrowing the contested issues for trial in order to achieve a just, speedy and efficient determination of the case.

B.   **Joint Pretrial Statement and Order:**

At least ten (10) days before the Pretrial Conference, unless otherwise ordered, the parties shall file and serve a Joint Pretrial Statement and Proposed Order containing the following information:

1.   Substance of the Action.  A brief description of the parties, the substance of claims and defenses that remain to be decided, and the operative pleadings that raise the issues;

2.   Relief Prayed.  A detailed statement of all relief claimed, particularly itemizing all elements of damages claimed;

3.   Undisputed Facts.  A plain and concise statement of all relevant facts to which the parties will stipulate for incorporation into the trial record without the necessity of supporting testimony or exhibits. The parties shall exercise good faith in stipulating to facts that are not reasonably disputable;

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

**C.**    **Binding Effect of the Joint Pretrial Statement and Order:**

The Joint Pretrial Statement and Order described above shall recite, directly above the signature lines of each party, the following:

*The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues of fact and law remaining to be litigated, this order shall supplement the pleadings and govern the course of trial of this cause, unless modified to prevent manifest injustice.*

**D.**    **Preparation For Trial:**

1.    <u>Exhibits</u>:

    a)    At least (10) days before the final Pretrial Conference, the parties shall exchange copies of all exhibits, summaries, charts, and diagrams to be used at trial other than solely for impeachment or rebuttal.

    b)    Each exhibit shall be pre-marked for identification. Counsel shall meet and confer and reach agreement upon a method for marking exhibits (for example, Plaintiff shall use numbers and Defendant shall use letters, or Plaintiff shall use numbers 100-199 and Defendant shall use numbers 200-299, etc.).

    c)    Unless otherwise ordered, at least five (5) days prior to the commencement of trial the parties shall deliver three sets of all pre-marked exhibits contained in three ring binders to the judge's deputy clerk.

    d)    No party shall be permitted to offer any exhibit at trial that is not disclosed in its pretrial statement without leave of court for good cause, unless it is offered solely for impeachment or rebuttal.

2.  Motions in Limine:

Unless otherwise ordered, the parties shall file and serve any motions in limine at least ten (10) days before the final Pretrial Conference, and any oppositions thereto at least three (3) days before the final Pretrial Conference.  Ordinarily, these motions will be deemed submitted without oral argument.

3.  Deposition and Discovery Designations:

Unless otherwise ordered, at least five (5) days before the commencement of trial, the parties shall file and serve any excerpts of deposition testimony or other discovery to be offered at trial, other than solely for impeachment or rebuttal.  (A copy of the designated deposition testimony with page and line references, or the interrogatory response or admission shall be provided).  Any objections to the use of designated excerpts and any counter-designations of deposition testimony shall be filed and served prior to the commencement of trial.

4.  Jury Materials:

a)  Unless otherwise ordered, at least five (5) days prior to the pretrial conference, the parties shall file and serve:

(1)  Jury Voir Dire Questions;

(2)  Proposed Jury Instructions; and

(3)  Proposed Jury Verdict Forms.

b)  Ordinarily, the court will give the standard preliminary jury instructions contained in the Model Jury Instructions of the Ninth Circuit prior to opening statements and will give the standard closing instructions in the Model Jury Instructions of the Ninth Circuit before closing arguments.

STANDING ORDER

United States District Court
For the Northern District of California

c)     As to substantive case specific instructions, the parties shall meet and confer and submit <u>jointly</u> an agreed set of instructions, using the <u>Model Jury Instructions of the Ninth Circuit</u> where appropriate.  In the event the parties are unable to agree to the language of a particular instruction, the objecting party shall submit a written objection or an alternative proposed instruction placed in sequence immediately following the disputed instruction.  The joint set of jury instructions shall be submitted in hard copy as well as in word processing format via email to RSpo@cand.uscourts.gov.

5.     <u>Trial Briefs</u>:

Trial briefs are optional, but any party wishing to file a trial brief must do so not less than five (5) days prior to the commencement of trial.

6.     <u>Transcripts</u>:

Should a daily transcript and/or realtime reporting be desired, the parties shall make arrangements with the Court Reporter Supervisor at (415) 522-2079 at least 14 calendar days prior to the trial date.

DATED: <u>May 8, 2019</u>

RICHARD SEEBORG
United States District Judge

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
JUDGE RICHARD SEEBORG

## STANDING ORDER RE: INITIAL CASE MANAGEMENT

1. The civil law and motion calendar is heard on Thursdays at 1:30 p.m. in Courtroom 3, 17th Floor, United States Courthouse, 450 Golden Gate Avenue, San Francisco, California. Motions must be noticed for hearing pursuant to Civil L.R. 7. Counsel need not reserve a hearing date in advance for civil motions. However, noticed dates may be reset as the Court's calendar requires.

2. Civil Case Management Conferences will be held on Thursdays at 10 a.m. and Civil Pretrial Conferences will be held on Wednesdays at 10:00 a.m. in Courtroom 3, 17th Floor, United States Courthouse, 450 Golden Gate Avenue, San Francisco, California.

3. All scheduling questions should be addressed to Judge Seeborg's courtroom deputy at 415/522-2123.

4. Parties shall be familiar and comply with the Local Rules.

5. The parties do not need to submit chambers copies for cases subject to electronic filing, except for documents that (1) are related to a pending motion and (2) exceed 10 pages when combined. (For example, if a motion is 8 pages and a supportive declaration is 5 pages, chambers copies are required. However, if there is a 20- page stipulation and proposed order, no chambers copy is required.) For these documents only, the submitting party shall comply with Civil Local Rule 5-1(e)(7).

6. In addition to the requirements of Civil Local Rule 79-5, only for the most compelling reasons will the Court grant a sealing request covering information that relates to potential hazards to the health, safety, or well-being of the public.

IT IS SO ORDERED.

Dated: September 24, 2019

Richard Seeborg
United States District Judge

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

### ECF Registration Information

Electronic Case Filing "ECF" or "e-filing" is mandatory for all civil cases in this Court. Please refer to Civil Local Rule 5-1 for the Court's rules pertaining to electronic filing.

Parties who are representing themselves pro se (without attorney representation) are not required to e-file and, in fact, may e-file only with the permission of the assigned judge.

Please review and attend to the following important notes and tasks:

- Serve this ECF Registration Information Handout on all parties in the case along with the complaint or removal notice and the other documents generated by the court upon filing.

- If not already registered, each attorney in the case must register to become an e-filer at cand.uscourts.gov/ECF. Your ECF registration is valid for life in this district; please do not register more than once.

  IMPORTANT NOTICE: by signing and submitting to the court a request for an ECF user id and password, you consent to entry of your email address into the court's electronic service registry for electronic service on you of all e-filed papers, pursuant to rules 77 and 5(b)(2)(d) of the Federal Rules of Civil Procedure.

- If you are a party and do not have an attorney and would like to e-file in the case, please visit cand.uscourts.gov/ECF/proseregistration for instructions and information. Unless and until the assigned judge has given you permission to e-file, you are required to file and serve papers in hard copy (paper) form.

- Access dockets and documents using your PACER (Public Access to Court Electronic Records) account. If your firm already has a PACER account, please use that account. It is not necessary to have individual PACER accounts for each user in your office. To set up an account, visit: pacer.gov or call (800) 676-6856.

Instructions and tips for e-filing and other information are available at cand.uscourts.gov/ECF.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

# RELATED CASE ORDER

A Notice of Related Cases has been filed that the following cases are related within the meaning of Crim. L.R. 8-1(b):

15-cr-00319 RS      USA V.  Carl M. Force IV, and Shaun Bridges,

20-cv-07811 RS      USA v. Approximately 69,370 Bitcoin (BTC), et al.,

# ORDER

The time for filing a statement to support or oppose the Notice has passed.  On the basis of the material submitted to the Court, as the Judge assigned to the earliest filed case, I find that the cases:

( )      ARE NOT RELATED as defined by Crim. L.R. 8-1(b).

( )      ARE RELATED as defined by Crim. L.R. 8-1(b).  I find, however, that reassignment to me of the action(s) currently assigned to another judge is not warranted.

(X )      ARE RELATED as defined by Crim. L.R. 8-1(b).  Pursuant to Crim. L.R. 8-1(e), the Clerk of Court is ordered to reassign the later-filed action to the undersigned. Counsel are instructed that all future filings are to bear the initials immediately after the case number.  All matters presently scheduled for hearing in the reassigned case(s) are vacated and must be renoticed for hearing before the undersigned.

DATED: November 16, 2020

RICHARD SEEBORG
United States District Judge

1  DAVID L. ANDERSON (CABN 149604)
   United States Attorney
2
   HALLIE HOFFMAN (CABN 210020)
3  Chief, Criminal Division

4  DAVID B..COUNTRYMAN (CABN 226995)
   CHRIS KALTSAS (NYBN 5460902)
5  CLAUDIA QUIROZ (CABN 254419)
   WILLIAM FRENTZEN (LABN 24421)
6  Assistant United States Attorneys

7        450 Golden Gate Avenue, Box 36055
         San Francisco, California  94102-3495
8        Telephone: (415) 436-7303
         FAX: (415) 436-7234
9        David.Countryman@usdoj.gov

10 Attorneys for United States of America

11                  UNITED STATES DISTRICT COURT

12                NORTHERN DISTRICT OF CALIFORNIA

13                   SAN FRANCISCO DIVISION

14 UNITED STATES OF AMERICA,           ) CASE NO.: CV 20-7811  RS
                                       )
15        Plaintiff,                   ) AMENDED NOTICE OF FORFEITURE ACTION
                                       )
16    v.                               )
                                       )
17                                     )
   Approximately 69,370  Bitcoin (BTC), Bitcoin )
18 Gold  (BTG), Bitcoin SV (BSV), and Bitcoin )
   Cash (BCH) seized  from              )
19 1HQ3Go3ggs8pFnXuHVHRytPCq5fGG8Hbhx, )
                                       )
20                                     )
                                       )
21        Defendant.                   )
   _____)

22

23        An amended civil complaint  seeking forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A),

24 981(a)(1)(C), 981(b), and 21 U.S.C. § 881(a)(6), was filed on November 20, 2020, in the United States

25 District Court for the Northern District of California by the United States of America, plaintiff,  against

26 the in rem defendant, approximately 69,370 Bitcoin (BTC), Bitcoin Gold (BTG), Bitcoin SV (BSV), and

27 Bitcoin Cash (BCH) seized from 1HQ3Go3ggs8pFnXuHVHRytPCq5fGG8Hbhx.

28

   Amended Notice of Forfeiture  Action
   CV 20-7811 RS
                                       1

1    All persons asserting an interest in or claim against the defendant and who have received direct

2 notice of the forfeiture action must file a verified claim with the Clerk of this Court pursuant to Rule

3 G(5) of the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims, within thirty-

4 five (35) days after the notice is sent; or if notice was published but direct notice was not sent to the

5 claimant or the claimant's attorney, a claim must be filed no later than sixty (60) days after the first day

6 of publication on an official internet government forfeiture website (www.forfeiture.gov); or within the

7 time that the Court allows. Additionally, a claimant must serve and file an answer to the complaint or a

8 motion under Rule 12 of the Federal Rules of Civil Procedures within 21 days after filing the claim.

9    An agent, bailee or attorney must state the authority to file a statement of interest or right against

10 the property on behalf of another.

11    Statements of interest and answers should be filed with the Office of the Clerk, United States

12 District Court for the Northern District of California, 450 Golden Gate Avenue, 16th floor, San

13 Francisco, California 94102, and copies should be served on David B. Countryman, Assistant United

14 States Attorney, 450 Golden Gate Avenue, 9th Floor, San Francisco, California 94102.

15 DATED: November 20, 2020                    Respectfully submitted,

16

17                                            DAVID L. ANDERSON
                                             United States Attorney
18                                           _____/S/_____
                                             DAVID B. COUNTRYMAN
19                                           Assistant United States Attorney

20    .

21

22

23

24

25

26

27

28

Amended Notice of Forfeiture Action
CV 20-7811 RS
                                             2

1  DAVID L. ANDERSON (CABN 149604)
   United States Attorney
2
   HALLIE HOFFMAN (CABN 210020)
3  Chief, Criminal Division

4  DAVID B. COUNTRYMAN (CABN 226995)
   CHRIS KALTSAS (NYBN 5460902)
5  CLAUDIA QUIROZ (CABN 254419)
   WILLIAM FRENTZEN (LABN 24421)
6  Assistant United States Attorneys

7       450 Golden Gate Avenue, Box 36055
        San Francisco, California 94102-3495
8       Telephone: (415) 436-7303
        FAX: (415) 436-7234
9       David.Countryman@usdoj.gov

10 Attorneys for United States of America

11              UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13                 SAN FRANCISCO DIVISION

14 UNITED STATES OF AMERICA,            ) CASE NO.: CV 20-7811 RS
                                        )
15         Plaintiff,                   ) AMENDED WARRANT OF ARREST OF
                                        ) PROPERTY *IN REM*
16     v.                               )
                                        )
17 Approximately 69,370 Bitcoin (BTC), Bitcoin )
   Gold (BTG), Bitcoin SV (BSV), and Bitcoin  )
18 Cash (BCH) seized from                )
   1HQ3Go3ggs8pFnXuHVHRytPCq5fGG8Hbhx,  )
19                                      )
                                        )
20         Defendant.                   )
                                        )
21 ─────────────────────────────────────)

22      TO:    ANY SPECIAL AGENT OF INTERNAL REVENUE SERVICE

23

24      YOU ARE HEREBY COMMANDED to arrest and seize the defendant Approximately 69,370

25 Bitcoin (BTC), Bitcoin Gold (BTG), Bitcoin SV (BSV), and Bitcoin Cash (BCH) seized from

26 1HQ3Go3ggs8pFnXuHVHRytPCq5fGG8Hbhx and maintain custody of same pursuant to 19 U.S.C.

27 § 1605 until further Order of the Court.

28

   Amended Warrant of Arrest of Property *IN REM*
   CV 20-7811 RS
                                    1

Claimants of the above-described property which is the subject of this action shall file their claims with Clerk of the Court, Northern District of California, 450 Golden Gate Avenue, 16th floor, San Francisco, California 94102 and serve a copy thereof upon the United States Attorney, Attention: David B. Countryman, Assistant United States Attorney, U.S. Attorney's Office, 450 Golden Gate Avenue, 9th Floor, San Francisco, California 94102, within 35 days after the date of service of the complaint in accordance with Rule G(5) of the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims or within 60 days after the first date of publication of the Notice of Forfeiture Action, whichever is earlier and answers to the Complaint shall be filed and served within twenty-one (21) days thereafter or within such additional time as may be allowed by the Court.

Statements of interest and answers should be filed with the Office of the Clerk, United States District Court for the Northern District of California, 450 Golden Gate Avenue, 16th floor, San Francisco, California 94102, and copies should be served on David B. Countryman, Assistant United States Attorney, 450 Golden Gate Avenue, 9th Floor, San Francisco, California 94102.

United States District Clerk
*Susan Y. Soong*

Dated: November 23, 2020                    By                              Deputy Clerk

Amended Warrant of Arrest of Property *IN REM*
CV 20-7811 RS

2

DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

DAVID COUNTRYMAN (CABN 226995)
CHRIS KALTSAS (NYBN 5460902)
CLAUDIA QUIROZ (CABN 254419)
WILLIAM FRENTZEN (LABN 24421)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7303
    FAX: (415) 436-7234
    david.countryman@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO. CV 20-7811 RS |
|     Plaintiff, | ) AMENDED COMPLAINT FOR FORFEITURE |
| v. | ) |
| Approximately 69,370 Bitcoin (BTC), Bitcoin Gold (BTG), Bitcoin SV (BSV), and Bitcoin Cash (BCH) seized from 1HQ3Go3ggs8pFnXuHVHRytPCq5fGG8Hbhx, | ) |
|     Defendant. | ) |

## NATURE OF THE ACTION

1.    This is a judicial forfeiture action, as authorized by 18 U.S.C. §§ 981(a)(1)(A), 981(a)(1)(C), 981(b), and 21 U.S.C. § 881(a)(6), involving the seizure of the following property:

- Approximately 69,370.22491543 Bitcoin (BTC), Bitcoin Gold (BTG), Bitcoin SV (BSV), Bitcoin Cash (BCH), obtained from 1HQ3Go3ggs8pFnXuHVHRytPCq5fGG8Hbhx;

(hereinafter, collectively, the "Defendant Property"), as property constituting, or derived from, any

1  proceeds of 18 U.S.C. § 371 (Conspiracy), 18 U.S.C. § 1030(a)(2) and (a)(4) (Computer Hacking),

2  property furnished or intended to be furnished by a person in exchange for a controlled substance, or

3  money traceable to such an exchange, or money used or intended to be used to facilitate such a violation

4  (Narcotics Sales), and property involved in violations of 18 U.S.C. § 1956 and 1956(h) (Money

5  Laundering and Conspiracy), and thereby forfeitable pursuant to 18 U.S.C. §§ 981(a)(l)(A), 981(a)(1)(C),

6  981(b), and 21 U.S.C. § 881.

7  <center>**JURISDICTION AND VENUE**</center>

8       2.      This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355(a), and 18 U.S.C. §§

9  981(a)(l)(A), 981(a)(1)(C), 981(b), and 21 U.S.C. § 881.

10       3.      Venue is proper because the defendant currency was seized in the Northern District of

11  California. 28 U.S.C. §§ 1355(b) and 1395.

12       4.      Intra-district venue is proper in the San Francisco Division within the Northern District of

13  California.

14  <center>**PARTIES**</center>

15       5.      Plaintiff is the United States of America.

16       6.      The Defendant Property is approximately 69,370.22491543 Bitcoin (BTC),

17  69,370.10730857 Bitcoin Gold (BTG), 69,370.10710518 Bitcoin SV (BSV), and 69,370.12818037

18  Bitcoin Cash (BCH), obtained from 1HQ3Go3ggs8pFnXuHVHRytPCq5fGG8Hbhx on or about

19  November 3, 2020.

20  <center>**FACTS**</center>

21       7.      From 2011 until October 2013, when it was seized by law enforcement, Silk Road was the

22  most sophisticated and extensive criminal marketplace on the Internet, serving as a sprawling black

23  market bazaar where unlawful goods and services, including illegal drugs of virtually all varieties, were

24  bought and sold regularly by the site's users. While in operation, Silk Road was used by thousands of

25  drug dealers and other unlawful vendors to distribute hundreds of kilograms of illegal drugs and other

26  unlawful goods and services to well over 100,000 buyers, and to launder hundreds of millions of dollars

27  derived from these unlawful transactions.

28

AMENDED COMPLAINT FOR FORFEITURE
CV 20-7811 RS

8.      For example, contemporaneous with its seizure, there were nearly 13,000 listings for controlled substances on the website, listed under the categories "Cannabis," "Dissociatives," "Ecstasy," "Intoxicants," "Opioids," "Precursors," "Prescription," "Psychedelics," and "Stimulants," among others. Clicking on the link for a particular listing brings up a picture and description of the drugs being offered for sale, such as "HIGH QUALITY #4 HEROIN ALL ROCK" or "5gr UNCUT Crystal Cocaine!!".

9.      During its operation, law enforcement agents made over 100 individual undercover purchases of controlled substances from Silk Road vendors. The substances purchased in these undercover transactions have been various Schedule I and II drugs, including ecstasy, cocaine, heroin, LSD, and others. Samples of these purchases were laboratory-tested and have typically shown high purity levels of the items that were advertised by Silk Road. Based on the postal markings of the packages in which the drugs arrived, these purchases appear to have been filled by vendors located in over ten different countries, including the United States. Law enforcement agents also made undercover purchases of hacking services on Silk Road, including purchases of malicious software such as password stealers and remote access tools.

10.     Contemporaneous with the seizure of Silk Road, there were 159 listings on the site under the category "Services." Most concerned computer services: for example, one listing was by a vendor to hack into Facebook, Twitter, and other social networking accounts of the customer's choosing, offering that "You can Read, Write, Upload, Delete, View All Personal Info"; another offered tutorials teaching "22 different methods" for hacking ATM machines. Other listings offered services that were likewise criminal in nature. For example, one listing was for "HUGE Blackmarket Contact List," which described lists of "connects" for "Services" such as "Anonymous Bank Accounts," "Counterfeit Bills (CAD/GBP/EUR/USD)," "Firearms + Ammunition," "Stolen Info (CC [credit card], Paypal)," and "Hitmen (10+ countries)."

11.     The only form of payment accepted on Silk Road was Bitcoin.

12.     All told, Silk Road generated sales revenue totaling over 9.5 million Bitcoin, and collected commissions from these sales totaling over 600,000 Bitcoin.

13.     Silk Road used a so-called "tumbler" to process Bitcoin transactions in a manner designed to frustrate the tracking of individual transactions through the Blockchain. According to the Silk Road

AMENDED COMPLAINT FOR FORFEITURE
CV 20-7811 RS

1  wiki web page, Silk Road's tumbler "sends all payments through a complex, semi-random series of
2  dummy transactions, . . . making it nearly impossible to link your payment with any coins leaving the
3  site." In other words, if a buyer makes a payment on Silk Road, the tumbler obscures any link between
4  the buyer's Bitcoin address and the vendor's Bitcoin address where the Bitcoins end up—making it
5  fruitless to use the Blockchain to follow the money trail involved in the transaction, even if the buyer's
6  and vendor's Bitcoin addresses are both known. The only function served by Silk Road's implementation
7  of such "tumblers" is to assist with the laundering of criminal proceeds.

8         14.    In February 2015, a federal jury convicted Silk Road creator Ross Ulbricht on seven
9  counts including conspiracy to distribute narcotics and money laundering. Ulbricht had moved to San
10 Francisco, within the Northern District of California, prior to his arrest and was operating Silk Road from
11 the Northern District of California. He was arrested in San Francisco and processed through the United
12 States District Court for the Northern District of California before being removed to the Southern District
13 of New York for prosecution.

14        15.    In 2020, law enforcement officers used a third party bitcoin attribution company to
15 analyze Bitcoin transactions executed by Silk Road. From this review they observed 54 transactions that
16 were sent from Bitcoin addresses controlled by Silk Road, to two Bitcoin addresses:
17 1BADznNF3W1gi47R65MQs754KB7zTaGuYZ  and 1BBqjKsYuLEUE9Y5WzdbzCtYzCiQgHqtPN
18 totaling 70,411.46 BTC (valued at approximately $354,000 at the time of transfer).

19        16.    The individual amounts that were transferred were mainly round Bitcoin amounts and
20 close together in time. For example, 10 of the transfers occurred at approximately 3:59 a.m. and each
21 transfer was for exactly 2,500 Bitcoin. This pattern of withdrawals and the amount that was withdrawn
22 was not typical for a Silk Road user. Specifically, a review of other withdrawals from Silk Road revealed
23 Bitcoin amounts that were mostly less than 100 Bitcoin. These 54 transactions were not noted in the Silk
24 Road database as a vendor withdrawal or a Silk Road employee withdrawal and therefore appear to
25 represent Bitcoin that was stolen from Silk Road.

26        17.    On approximately April 9, 2013, the Bitcoin addresses that received the 70,411.46 Bitcoin
27 from Silk Road sent 69,471.082201 (approximately $14 million at the time of transfer) to
28 1HQ3Go3ggs8pFnXuHVHRytPCq5fGG8Hbhx (hereafter "1HQ3").

AMENDED COMPLAINT FOR FORFEITURE
CV 20-7811 RS

18.     On approximately April 23, 2015, 1HQ3 sent 101 Bitcoin (approximately $23,700) to BTC-e, a company that provided Bitcoin related services and operated as an unlicensed cryptocurrency exchange. In January 2017, BTC-e and a Russian operator of BTC-e were indicted in the Northern District of California for operating an unlicensed money transmitting business and for money laundering through the exchange.

19.     Between April 2015 and November 2020, the remainder of the funds, 69,370.082201 BTC, remained in 1HQ3.[1] As of November 3, 2020, 1HQ3 had a balance of 69,370.22491543 Bitcoin (valued at approximately $1 Billion as of November 4, 2020).

20.     In August 2017, Bitcoin split into two cryptocurrencies, commonly known as a hard fork. Hard fork coin splits are created via changes of the blockchain rules and share a transaction history with Bitcoin up to the time of the split. The first hard fork split occurred on August 1, 2017, resulting in the creation of Bitcoin Cash (BCH). When this split occurred, any Bitcoin address that had a Bitcoin balance now had the same balance on the Bitcoin blockchain and on the Bitcoin Cash blockchain. A search for 1HQ3 on the Bitcoin Cash blockchain revealed a balance of approximately 69,370.12818037 BCH prior to the Government's seizure. Much like the aforementioned hard fork of Bitcoin and BCH, there were subsequent hard forks of Bitcoin that resulted in the creation of Bitcoin Gold (BTG) and Bitcoin SV (BSV). Review of the BTG and BSV blockchains revealed that 1HQ3 held a balance of 69,370.10730857 BTG and 69,370.10710518 BSV prior to the Government's seizure.

21.     Individual X, whose identity is known to the government, was determined to have been involved in a transaction that related to 1HQ3.

22.     According to an investigation conducted by the Criminal Investigation Division of the Internal Revenue Service and the U.S. Attorney's Office for the Northern District of California, Individual X was the individual who moved the cryptocurrency from Silk Road. According to the investigation, Individual X was able to hack into Silk Road and gain unauthorized and illegal access to Silk Road and thereby steal the illicit cryptocurrency from Silk Road and move it into wallets that

---

[1] Because Bitcoin addresses are public, individuals are able to identify Bitcoin addresses with large balances. Individuals will often send minimal amounts of Bitcoin to these addresses for unknown reasons. For example, on November 3, 2020, 1HQ3 received 0.00010999 bitcoin (approximately $1.51) from an unknown individual.

AMENDED COMPLAINT FOR FORFEITURE
CV 20-7811 RS

1  Individual X controlled. According to the investigation, Ulbricht became aware of Individual X's online

2  identity and threatened Individual X for return of the cryptocurrency to Ulbricht. Individual X did not

3  return the cryptocurrency but kept it and did not spend it.

4      23.     On November 3, 2020, Individual X signed a Consent and Agreement to Forfeiture with

5  the U.S. Attorney's Office, Northern District of California. In that agreement, Individual X, consented to

6  the forfeiture of the Defendant Property to the United States government.

7      24.     On November 3, 2020, the United States took custody of the Defendant Property from

8  1HQ3.

9                                    **VIOLATION**

10     The United States incorporates by reference the allegations in paragraphs one through 24 as

11  though fully set forth.

12     Title 18, United States Code, Section 981(a)(1)(A) provides for civil and criminal forfeiture of

13  any property, real or personal, involved in a transaction or attempted transaction in violation of Title 18,

14  United States Code, Sections 1956, 1957, or 1960, and any property traceable to such property.

15     Title 18, United States Code, Section 981(a)(1)(C) provides for the civil forfeiture of any property,

16  real or personal, which constitutes or is derived from proceeds traceable to any offense constituting a

17  "specified unlawful activity" or a conspiracy to commit such offense. Title 18, United States Code, Sections

18  1956(c)(7) and 1961(1) define specified unlawful activity to include Computer Hacking, in violation of Title

19  18, United States Code, Section 1030, and conspiracy to commit Computer Hacking.

20     Title 21, United States Code, Section 881(a)(6) provides for the forfeiture of all moneys,

21  negotiable instruments, securities, or other things of value furnished or intended to be furnished by any

22  person in exchange for a controlled substance or listed chemical, all proceeds traceable to such an

23  exchange and all money used or intended to be used to facilitate any violation of Subchapter I, Chapter

24  13, Subchapter I of Title 21 United States Code.

25     In light of the foregoing, and considering the totality of the circumstances, there is probable cause

26  to believe that the Defendant Property represents proceeds traceable to computer hacking in violation 18

27  U.S.C. § 1030(a) and conspiracy in violation of 18 U.S.C. § 371. As such, the Defendant Property is

28  forfeitable pursuant to 18 U.S.C. § 981(a)(I)(C). Additionally, there is probable cause to believe that the

AMENDED COMPLAINT FOR FORFEITURE
CV 20-7811 RS

1  Defendant Property represents property traceable to narcotics trafficking. As such, the Defendant

2  Property is forfeitable pursuant to 21 U.S.C. § 881(a)(6). To the extent the Defendant Property includes

3  funds that did not originate as proceeds from the illegal activities discussed herein, those funds were

4  "involved in" money laundering in violation of 18 U.S.C. § 1956 because they were comingled with and

5  used to conceal and disguise the nature, location, source, ownership or control of the criminal proceeds,

6  or were involved in a conspiracy to launder such proceeds. Accordingly, the Defendant Property is

7  forfeitable pursuant to 18 U.S.C. §§ 981(a)(l)(A) and 981(b).

8    WHEREFORE, plaintiff United States of America requests that due process issue to enforce the

9  forfeiture of the Defendant Property; that notice be given to all interested parties to appear and show

10  cause why forfeiture should not be decreed; that judgment of forfeiture be entered; that the Court enter

11  judgment forfeiting the Defendant Property; and that the United States be awarded such other relief as

12  may be proper and just.

13

14  DATED: 11/20/2020

15           Respectfully submitted,
         DAVID L. ANDERSON

16           United States Attorney

17

          /s/ David Countryman

18           DAVID COUNTRYMAN
         CHRIS KALTSAS

19           CLAUDIA QUIROZ
         WILLIAM FRENTZEN

20           Assistant United States Attorneys

21

22

23

24

25

26

27

28

AMENDED COMPLAINT FOR FORFEITURE
CV 20-7811 RS

1

VERIFICATION

2

3          I, Jeremiah Haynie, state as follows:

4          1.      I am a Special Agent with the Criminal Investigation Division of the Internal Revenue

5   Service ("IRS-CI").  I am a case agent assigned to this case.  As such, I am familiar with the facts, and

6   the investigation leading to the filing of this Amended Complaint for Forfeiture.

7          2.      I have read the Amended Complaint and believe the allegations contained in it to be true.

8

9                              *      *      *      *      *

10

11         I declare under penalty of perjury that the foregoing is true and correct.  Executed this

12  20th day of November, 2020 in East Lansing, Michigan.

13

14

15                                          _____

16                                          JEREMIAH HAYNIE
                                            Special Agent
17                                          Internal Revenue Service - Criminal Investigation

18

19

20

21

22

23

24

25

26

27

28