STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

DAVID COUNTRYMAN (CABN 226995)
CHRIS KALTSAS (NYBN 5460902)
CLAUDIA QUIROZ (CABN 254419)
WILLIAM FRENTZEN (LABN 24421)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-436-7428
    FAX: (415) 436-7234
    claudia.quiroz@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CV 20-7811 RS |
| Plaintiff, | **NOTICE OF MOTION AND MOTION TO STRIKE CLAIMANT ROMAN HOSSAIN'S CLAIM FOR LACK OF STANDING AND FAILING TO COMPLY WITH SUPPLEMENTAL RULE G(5)** |
| v. | |
| Approximately 69,370 Bitcoin (BTC), Bitcoin Gold (BTG), Bitcoin SV (BSV), and Bitcoin Cash (BCH) seized from 1HQ3Go3ggs8pFnXuHVHRytPCq5fGG8Hbhx | DATE:  June 10, 2021<br>TIME:  1:30 p.m.<br>COURTROOM: #3, 17th Floor |
| Defendant. | |

# TABLE OF CONTENTS

I.   Introduction……………………………………………………………..…………………2

II.  Procedural History……………………………………………………………….....3

III. Facts……………………………………………………………………………….4

    A.  Silk Road…………………………………………………………………………4

    B.  Theft of Bitcoin from Silk Road and Transfer of Bitcoin from Hossain's Mt. Gox Account...4

    C.  Both Ulbricht and the Thief Consented to Forfeiture………………………………………6

IV. Forfeiture Proceedings………………………………………………………………6

V.  Legal Standard……….…………………………………………………………...9

    A.  The Claim Must Comply with the Requirements in Rule G(5)(a)…………………………...9

    B.  Rule G(5)(a) Requires the Claimant to State his Interest in the Property………………...10

    C.  Because of the Danger of False Claims, Courts Require "Strict Compliance with the Rule"…………………………………………………………………………………...11

    D.  The Court May Strike a Claim Where the Claimant Lacks Standing………………………12

VI. Argument……….……………………………………………………………………14

    A.  Hossain has Failed to Properly Identify his Interest in the Defendant Property……………14

    B.  Hossain Lacks Standing to Bring a Claim……………………………………………16

    C.  Hossain's Objections to the Government's Special Interrogatories are Misplaced………...17

    D.  The Risk of a False Claim in this Instance is Even More Heightened Given the Background of this Particular Claimant………………………………………………………………23

V.  Conclusion……………………………………………………………………...  25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Clapper v. Amnesty Int'l USA,*
   133 S. Ct. 1138 (2013) ................................................................................................. 9

*Degen v. United States,*
   517 U.S. 820, 116 S. Ct. 1777 (1996)………………………………………...…….11

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ................................................................................................... 13

*Mercado v. U.S. Customs Service,*
   873 F.2d 641 (2d Cir.1989) ....................................................................................... 12

*United States v. $333,806.93 in Proceeds,*
   No. CV 05-2556 DOC ANX, 2010 WL 3733932 ..................................................... 13

*Spencer Enters., Inc. v. United States,*
   345 F.3d 683 (9th Cir. 2003) ..................................................................................... 19

*Appeal of Torres,*
   1988 WL 83331 (4th Cir. 1988) ................................................................................ 10

*United States v. $307,970,*
   No. 12-CV-136, 2013 WL 4095373 (E.D.N.C. Aug. 13, 2013) ................................ 19

*United States v. $12,126.00 in U.S. Currency,*
   337 Fed. A'ppx 818 (11th Cir. 2009) .................................................................. 10, 12

*United States v. $100,348.00 in U.S. Currency,*
   354 F.3d 1110 (9th Cir. 2004) ..................................................................................... 9

*United States v. $133,420 in U.S. Currency,*
   672 F.3d 629 (9th Cir. 2012) .............................................................................. passim

*United States v. $39,557.00, More or Less, in U.S. Currency,*
   683 F. Supp. 2d 335 (D.N.J. 2010) ..................................................................... 10, 12

*United States v. $288,914.00 in U.S. Currency,*
   722 F. Supp. 267 (E.D. La. 1989) ............................................................................. 12

*United States v. $38,570 in U.S. Currency,*
   950 F.2d 1108 (5th Cir. 1992) ................................................................................... 11

*United States v. $13,970.00 U.S. Currency*,
  2007 WL 1231659 (M.D. Ga. 2007)................................................................... 10

*United States v. $134,750 in U.S. Currency*,
  2010 WL 1741359 (D. Md. Apr. 28, 2010) ........................................................ 11

*United States,*
  *v. $1,181,895.00 in U.S. Currency*, No. CV 14-03973-CBM, 2015 U.S. Dist. LEXIS 17448, 2015 WL
  631394 (C.D. Cal. Feb. 12, 2015)....................................................................... 12

*United States,*
  *v. $41,471.00 in U.S. Currency*, No. CV 15-00696-R(SSx)(SHSX), 2016 U.S. Dist. LEXIS 10952,
  2016 WL 337380 (C.D. Cal. Jan. 6, 2016) ................................................... 7, 9, 12

*United States v. $557,933.89 more or less, in U.S. Funds*,
  287 F.3d 66 (2d Cir. 2002)................................................................................. 16

*United States v. $487,825.00 in United States Currency*,
  484 F.3d 662 (3rd Cir. 2007) ......................................................................... 9, 12

*United States v. $2,051,660.00 in United States Currency*,
  No. 07-cv-1338, 2008 U.S. Dist. LEXIS 124625, 2008 WL 8723566 (D. Kans. Sept. 29, 2008)....... 19

*United States v. $128,915.00 in United States Currency*,
  No. 20-CV-00667-JPG, 2021 U.S. Dist. LEXIS 130008 (S.D. Ill. Jan. 25, 2021)…………..……….20

*United States v. One Hundred One Thousand & 00/100 Dollars in United States Currency*,
  No. 10-4047, 2011 U.S. Dist. LEXIS 90196 (C.D. Ill, Aug. 12, 2011)……..…………………....…21

*United States v. $209,815 in United States Currency*,
  2014 U.S. Dist. LEXIS 90028 (N.D. Cal. Jun. 30, 2014)……………………………………………...22

*United States v. BTC-e, a/k/a Canton Business Corporation, and Alexander Vinnik*,
  No. CR 16-00227 SI, (N.D.Cal., Jan. 17, 2017)……………………………………………...…17

*United States v. Cambio Exacto, S.A.*,
  166 F.3d 522 (2d Cir.1999)................................................................................ 12

*United States v. Eng*,
  951 F.2d 461 (2d Cir. 1991)............................................................................... 11

*United States,*
  *v. Real Prop. Located at 17 Coon Creek Rd., Hawkins Bar California, Trinity Cty. ("17 Coon Creek
  Rd"),*
  787 F.3d 968 (9th Cir. 2015) ....................................................................... 11, 13

*United States v. Real Prop. Located at 475 Martin Lane*,
  545 F.3d 1134 (9th Cir. 2008) ..................................................................... 13, 16

*United States v. Real Property Located at 4527-535 Michigan Avenue*,
    489 Fed. A'ppx 855 (6th Cir. 2012) ............................................................................... 10

*United States v. Real Property Located at 5208 Los Franciscos Way*,
    385 F.3d 1187 (9th Cir. 2004) ....................................................................................... 12

## FEDERAL STATUTES

18 U.S.C. § 371 ............................................................................................................................. 3

18 U.S.C. § 981(a)(1)(C) ............................................................................................................. 3

18 U.S.C. § 983 ............................................................................................................................. 8

18 U.S.C. § 983(a)(4) ......................................................................................................... 9, 10, 21

18 U.S.C. § 1001 ......................................................................................................................... 24

18 U.S.C. § 1030(a) ...................................................................................................................... 3

18 U.S.C. § 1343 ......................................................................................................................... 23

18 U.S.C. § 1956 ........................................................................................................................... 3

18 U.S.C. § 981(a)(l)(A) .............................................................................................................. 3

18 U.S.C § 981(b).......................................................................................................................... 3

18 U.S.C. §§ 983(a)(4)(A) & (d) .............................................................................................. 6, 9

21 U.S.C. § 881(a)(6) .................................................................................................................... 3

26 U.S.C. § 7203 ......................................................................................................................... 24

31 U.S.C. § 5324(a)(3) ............................................................................................................... 11

## FEDERAL RULES

Fed. R. Civ. P. 26(b)(1) .............................................................................................................. 13

Fed. R. Civ. P. 26(d)(1) .............................................................................................................. 13

Fed. R. Civ. P. 37(a)(4) .............................................................................................................. 14

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE that on June 10, 2021, at 1:30 p.m., or as soon thereafter as the

3   matter may be heard, in Courtroom 3 of the above-entitled court located at 450 Golden Gate Avenue,

4   San Francisco, California 94102, Movant, the United States of America (hereinafter "the United

5   States" or "the government"), hereby respectfully moves to strike the Verified Claim of Claimant

6   Roman Hossain.

7        The Motion will be based on this Notice of Motion and Motion, the attached Memorandum of

8   Points and Authorities, the Declaration of IRS-CI Special Agent Jeremiah Haynie, attached hereto as

9   Exhibit "A," the Declaration of Assistant United States Attorney Claudia Quiroz, attached hereto as

10  Exhibit "B" along with all exhibits, and all other files and pleadings in this matter.

11

12  DATED:  April 30, 2021                    STEPHANIE M. HINDS
                                              Acting United States Attorney
13

14                                            *Claudia Quiroz*
                                              _____
15                                            DAVID COUNTRYMAN
                                              CHRIS KALTSAS
16                                            CLAUDIA QUIROZ
                                              WILLIAM FRENTZEN
17                                            Assistant United States Attorneys

18

19

20

21

22

23

24

25

26

27

28  U.S. MOTION TO STRIKE ROMAN HOSSAIN'S CLAIM
    CV 20-7811 RS                              1

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

The United States of America hereby moves pursuant to Supplemental Rule (G)(8)(c)(i)(A) of the Supplemental Rules for Admiralty of Maritime Claims and Asset Forfeiture Actions ("the Supplemental Rules") to strike the claim filed by Romain Hossain for failure to comply with the pleading requirements of Rule G(5) and because he lacks standing to bring his claim under Rule G(8)(c)(B).

Hossain—a convicted fraudster—has repeatedly refused to provide information that is highly relevant to his interest in the Defendant Property and that would establish his standing to bring a claim in this case.  In essence, Hossain asserts that he owned approximately 245.92 Bitcoin (BTC) that hackers stole from his account at Mt. Gox, the now-defunct Japanese cryptocurrency exchange. According to Hossain, his stolen Bitcoin ended up in Silk Road, from which it was stolen again and transferred to the Bitcoin address from which the government seized the Defendant Property at issue in this case.  Hossain has repeatedly refused to provide information about his Mt. Gox account, however. In so doing, he has failed to properly state his interest in the Defendant Property and withheld information that would allow the government to properly trace the trajectory of his Bitcoin and ascertain his standing to bring a claim.

Notwithstanding his repeated refusal to provide his Mt. Gox account information, the government has ascertained two sets of facts that unquestionably disprove Hossain's standing to bring a claim in this case and eviscerate his purported interest in the Defendant Property:  First, none of the Bitcoins stolen in the Mt. Gox hack (which included Hossain's BTC) went to Silk Road, thereby making it impossible for Hossain's Bitcoin to have ended up in the address from which the government seized the Defendant Property.  Second, the series of transactions that resulted in 70,411.46 BTC being moved out of Bitcoin addresses controlled by Silk Road occurred in May 2012, nine months before Hossain's 245.92 Bitcoin was withdrawn from his Mt. Gox account in February 2013.  This means that Hossain's Bitcoin remained in his Mt. Gox account for several months after the Defendant Property

1  left Silk Road, a separate and second reason why it would have been impossible for Hossain's Bitcoin

2  to have ended up in the address from which the government seized the Defendant Property.

3         Hossain's incomplete and evasive responses to the government's Special Interrogatories, and in

4  particular his refusal to provide his Mt. Gox account information, are by design, because that

5  information would unequivocally prove his lack of standing and show that there is no connection

6  between his Bitcoin and the Defendant Property.  No further opportunities for Hossain to cure either

7  his verified claim or responses to the Special Interrogatories will change this fact.  The Court should

8  therefore strike his entire claim forthwith.

9  **II.    PROCEDURAL HISTORY**

10        This is an *in rem* forfeiture action against approximately 69,370.22491543 BTC, Bitcoin Gold

11  (BTG), Bitcoin SV (BSV), Bitcoin Cash (BCH), obtained from

12  1HQ3Go3ggs8pFnXuHVHRytPCq5fGG8Hbhx, (hereinafter, collectively, the "Defendant Property"),

13  that was seized on November 3, 2020 from Individual X, who signed a Consent and Agreement to

14  Forfeiture with the U.S. Attorney's Office, Northern District of California.  *See* United States'

15  Amended Complaint for Forfeiture, Dkt. No. 8 ¶ 23.  In that agreement, Individual X consented to the

16  forfeiture of the Defendant Property to the United States government.  *Id.*  The government's

17  Complaint alleges that the Defendant Property is subject to forfeiture pursuant to (1) 18 U.S.C. §

18  981(a)(1)(C) because it represents proceeds traceable to computer hacking in violation 18 U.S.C. §

19  1030(a) and conspiracy in violation of 18 U.S.C. § 371; (2) 21 U.S.C. § 881(a)(6) because there is

20  probable cause to believe that the Defendant Property represents property traceable to narcotics

21  trafficking; and (3) 18 U.S.C. §§ 981(a)(l)(A) and 981(b), because to the extent the Defendant Property

22  includes funds that did not originate as proceeds from the illegal activities discussed in the Complaint,

23  those funds were "involved in" money laundering in violation of 18 U.S.C. § 1956 because they were

24  comingled with and used to conceal and disguise the nature, location, source, ownership or control of

25  the criminal proceeds, or were involved in a conspiracy to launder such proceeds.

26  / / /

27

28  U.S. MOTION TO STRIKE ROMAN HOSSAIN'S CLAIM
   CV 20-7811 RS                      3

## III.   FACTS

### A.   Silk Road

From 2011 until October 2013, when it was seized by law enforcement, Silk Road was the most sophisticated and extensive criminal marketplace on the Internet, serving as a sprawling black market bazaar where unlawful goods and services, including illegal drugs of virtually all varieties, were bought and sold regularly by the site's users.  While in operation, Silk Road was used by thousands of drug dealers and other unlawful vendors to distribute hundreds of kilograms of illegal drugs and other unlawful goods and services to well over 100,000 buyers, and to launder hundreds of millions of dollars derived from these unlawful transactions.  Dkt. No. 8 ¶ 7.  Contemporaneous with the seizure of Silk Road, there were 159 listings on the site under the category "Services."  Most concerned computer services that were criminal in nature.  *Id.* ¶ 10.

The only form of payment accepted on Silk Road was Bitcoin.  *Id.* ¶ 11.  All told, Silk Road generated sales revenue totaling over 9.5 million Bitcoin, and collected commissions from these sales totaling over 600,000 Bitcoin.  *Id.* ¶ 12.  Silk Road used a so-called "tumbler" to process Bitcoin transactions in a manner designed to frustrate the tracking of individual transactions through the Blockchain.  The only function served by Silk Road's implementation of such "tumblers" was to assist with the laundering of criminal proceeds.  *Id.* ¶ 13.

In February 2015, a federal jury convicted Silk Road creator Ross Ulbricht on seven counts including conspiracy to distribute narcotics and money laundering.  Ulbricht was living in San Francisco prior to his arrest and was operating Silk Road from the Northern District of California.  He was arrested in San Francisco and removed to the Southern District of New York for prosecution.  *Id.* ¶ 14.

### B.   Theft of Bitcoin from Silk Road and Transfer of Bitcoin from Hossain's Mt. Gox Account

In 2020, law enforcement officers used a third-party bitcoin attribution company to analyze Bitcoin transactions executed by Silk Road.  From this review they observed that on May 6, 2012, 54 transactions were sent from Bitcoin addresses controlled by Silk Road to two Bitcoin addresses:

1BADznNF3W1gi47R65MQs754KB7zTaGuYZ and 1BBqjKsYuLEUE9Y5WzdbzCtYzCiQgHqtPN (hereinafter, collectively "1BAD") totaling 70,411.46 BTC (valued at approximately $354,000 at the time of transfer).  *Id.* ⁋ 15; *see* Declaration of IRS-CI Special Agent Jeremiah Haynie ⁋ 3 (attached hereto as Exhibit A).  These 54 transactions were not noted in the Silk Road database as a vendor withdrawal or a Silk Road employee withdrawal and therefore appeared to represent Bitcoin that was stolen from Silk Road.  Dkt. No. 8 ⁋ 16.

In February 2013—nine months after the theft of Bitcoin from Silk Road—Hossain's Bitcoins were withdrawn from his Mt. Gox account.  Haynie Decl., Ex. A ⁋ 4 ("Mt. Gox records show that on February 8, 2013 and February 9, 2013, there was a transfer of 200 BTC and 45.92 BTC out of Hossain's Mt. Gox account for a total of 245.92 BTC.  This matches exactly the amount Hossain claimed was stolen from his Mt. Gox account.")

On approximately April 9, 2013, the Bitcoin addresses that received the 70,411.46 Bitcoin from Silk Road sent 69,471.082201 (approximately $14 million at the time of transfer) to 1HQ3Go3ggs8pFnXuHVHRytPCq5fGG8Hbhx (hereafter "1HQ3").  Dkt. No. 8 ⁋ 17.

On approximately April 23, 2015, 1HQ3 sent 101 Bitcoin (approximately $23,700) to BTC-e, a company that provided Bitcoin related services and operated as an unlicensed cryptocurrency exchange.  In January 2017, BTC-e and a Russian operator of BTC-e were indicted in the Northern District of California for operating an unlicensed money transmitting business and for money laundering through the exchange.  *Id.* ⁋ 18.

Between April 2015 and November 2020, the remainder of the funds, 69,370.082201 BTC, remained in 1HQ3.  As of November 3, 2020, 1HQ3 had a balance of 69,370.22491543 Bitcoin (valued at approximately USD $3.6 Billion as of April 29, 2021).  *Id.* ⁋ 19.

Individual X, whose identity is known to the government, was determined to have been involved in a transaction that related to 1HQ3.  *Id.* ⁋ 21.

According to an investigation conducted by the Criminal Investigation Division of the Internal Revenue Service and the U.S. Attorney's Office for the Northern District of California, Individual X

was the individual who moved the cryptocurrency from Silk Road to 1BAD.  Investigators believe that Individual X was able to hack into Silk Road and gain unauthorized and illegal access to Silk Road and thereby steal the illicit cryptocurrency from Silk Road and move it into wallets that Individual X controlled.  The investigation further revealed that Ulbricht became aware of Individual X's online identity and threatened Individual X for return of the cryptocurrency to Ulbricht.  Individual X did not return the cryptocurrency, and instead kept it.  *Id.* ⁋ 22.

### C.    Both Ulbricht and the Thief Consented to Forfeiture

On November 3, 2020, Individual X signed a Consent and Agreement to Forfeiture with the U.S. Attorney's Office, Northern District of California.  *Id.* ⁋ 23.  In that agreement, Individual X, consented to the forfeiture of the Defendant Property to the United States government.  *Id.*  That same day, the United States took custody of the Defendant Property from 1HQ3.  *Id.* ⁋ 24.

On January 22, 2012, Ross Ulbricht, admitted that the Defendant Property was subject to forfeiture and consented to its forfeiture to the United States.  Dkt. No. 47.

## IV.    FORFEITURE PROCEEDINGS

On November 5, 2020, the government initiated a judicial forfeiture proceeding against the Defendant Property by filing a Civil Complaint for Forfeiture.[1]  Dkt. No. 1.  The government simultaneously filed a Notice of Forfeiture Action, advising all persons asserting an interest in the Defendant Property and who had received direct notice of the forfeiture action to file a verified claim with the Clerk of the Court pursuant to Supplemental Rule G(5).  Dkt. No. 3.  Thereafter, several individuals filed claims.  Claimant Roman Hossain was one of them.

On January 25, 2021, Hossain filed a verified claim and statement of interest pursuant to 18 U.S.C. §§ 983(a)(4)(A) & (d), and Supplemental Rules C(6)(a) & (G)(5)(a).  Dkt. No. 42 at 1.  In his claim, Hossain asserts that he is "the original, rightful, and innocent owner of at least 245.92[2] of the 69,370 Bitcoin seized by the government from . . . the 1HQ3 wallet."  *Id.* ⁋ 1.  According to Hossain, he

---

[1] The government amended its complaint on November 20, 2020 to add a missing letter from the Bitcoin address from which the government seized the Defendant Property.  *See* Dkt. No. 8.

[2] Valued at approximately $1.3 million as of April 29, 2021.

had the 245.92 BTC at the Mt. Gox Exchange,[3] "from where it was stolen by hackers and transferred to Silk Road." *Id.* ¶ 2.  From Silk Road, he claims that it was stolen again and transferred to the 1HQ3 wallet, from which it was seized by the government.  *Id.*

Hossain claims that he opened an account on the Mt. Gox Exchange on or before March 1, 2012 and deposited $2,475 USD to purchase Bitcoin with the hope that his investment would appreciate over time.  *Id.* ¶ 4.  He "thereafter openly and legitimately purchased BTC on the Mt. Gox Exchange for investment purposes, and for no unlawful purpose."  *Id.*  Hossain asserts that his account balance at the time hackers were stealing Bitcoin from Mt. Gox was 245.98124 BTC and that at least 245.92 BTC were stolen from him.  *Id.* ¶ 5.  Hossain did not identify his Mt. Gox Bitcoin wallet address or account information in his claim.

On February 11, 2021, the government served Special Interrogatories on Hossain's counsel in accordance with Supplemental Rule G(6)(a).[4]  The government's Special Interrogatories sought information to ascertain Hossain's ownership interest in the defendant Bitcoin, including information relating to any account held by him at the Mt. Gox exchange.  *See* Exhibit 1 to the Declaration of Assistant United States Attorney Claudia Quiroz (hereinafter "Quiroz Decl."), attached hereto as Exhibit B.  Hossain twice asked for an extension of time to respond to the government's Special Interrogatories, to which the government assented.

---

[3] Mt. Gox was a bitcoin exchange based in Japan that was launched in July 2010.  *See* https://en.wikipedia.org/wiki/Mt._Gox.  By 2013 and into 2014, it was handling over 70% of all Bitcoin transactions worldwide, as the largest Bitcoin intermediary and the world's leading Bitcoin exchange.  *Id.*  In February 2014, Mt. Gox suspended trading, closed its website and exchange service, and filed for bankruptcy protection from creditors.  *Id.*  Mt. Gox announced that approximately 850,000 bitcoins belonging to customers and the company were missing and likely stolen, an amount valued at more than $450 million at the time.  *Id.*

[4] Unlike in typical civil proceedings, the government may commence limited discovery immediately after a verified claim is filed.  *United States v. $41,471.00 in United States Currency*, No. CV 15-00696-R, 2016 U.S. Dist. LEXIS 10952, *4-5 (C.D. Cal. Jan. 6, 2016).  Supplemental Rule G(6)(a) provides that the government may serve special interrogatories limited to the claimant's identity and relationship to the Defendant Property without the court's leave at any time after the claim is filed and before discovery is closed.  "The purpose of the rule is to permit the Government to file limited interrogatories at any time after the claim is filed to gather information that bears on the claimant's standing."  *Id.* (citing Rule G, 2006 Advisory Committee Notes, Subdivision (6)).

1    Hossain served his objections and responses on March 26, 2021, which consisted of a

2 combination of blanket refusals to provide the information requested and a reiteration of the assertions

3 in his verified claim.  *See* Quiroz Decl., Ex. 2 (Roman Hossain's Responses to Plaintiff's Special

4 Interrogatories).  Hossain's Mt. Gox user information was among the information he refused to provide.

5    On March 8, 2021, Hossain filed his Answer to the First Amended Complaint for Forfeiture *In*

6 *Rem*, in which he asserts that his interests in the Defendant Property may not be forfeited because he is

7 an innocent owner pursuant to 18 U.S.C. § 983.  Dkt. No. 60 at 4.

8    On March 26, 2021, the government sent a meet and confer email to Hossain's counsel to

9 address Hossain's refusal to answer questions about his alleged account information at Mt. Gox and his

10 assertion that his Bitcoins were stolen and are now contained in the Defendant Property.  *See* Quiroz

11 Decl., Ex. 3 (March 26, 2021 Email from AUSA David Countryman to Yasin Almadani).  The

12 government's meet and confer email stated the following in relevant part:

13    . . . Interrogatory 12 asked for "the name, account number, email address,
    and any other identifier associated with the account or accounts held by
14    you at the Mt. Gox Exchange from which the Bitcoins you are claiming
    were allegedly stolen."  Your response consisted entirely of objections,
15    including that providing the account information for your allegedly stolen
    Mt. Gox accounts would be unduly burdensome and outside the scope of
16    identifying your relationship to the defendant property.

17    However, it is unclear how these objections are applicable or why you are
    objecting to providing this information.  In paragraph 5 of your claim you
18    asserted that you held 245.98124 BTC at the Mt. Gox Exchange.  In
    paragraphs 2 and 6 of your claim you asserted that the hacked Bitcoins
19    from the Mt. Gox Exchange (including those you are claiming) were
    transferred from Mt. Gox to Silk Road.  As such determining what
20    accounts you had at Mt. Gox and following the blockchain to determine
    where those Bitcoin went and if they are a portion of the defendant
21    property is integral to identifying your relationship to the defendant
    property.

22
    Similarly, Interrogatories 13 and 14 asked for evidence "supporting the
23    assertion in paragraph 5 of your claim that you held 245.98124 BTC at the
    Mt. Gox Exchange."  You refused to answer this question and provided
24    boilerplate objections.

25    Interrogatories 15 and 16 asked for evidence "supporting the assertion in
    paragraphs 2 and 6 of your claim that the hacked Bitcoins from the Mt.
26    Gox Exchange (including those you are claiming) were transferred from
    Mt. Gox to Silk Road."  Again, you refused to answer and provided
27    boilerplate objections.

28 U.S. MOTION TO STRIKE ROMAN HOSSAIN'S CLAIM
    CV 20-7811 RS                                        8

1

2          These questions go to the heart of any alleged ownership interest you have
           in the defendant property, and I don't understand how providing this
3          information is either overly burdensome or outside the scope of
           identifying your relationship to the defendant property.

4

5   *See id.*  In response, Hossain's counsel sent a letter to the government on April 4, 2021.  *See* Quiroz

6   Decl., Ex. 4 (April 4, 2021 Letter from Yasin M. Almadani Responding to March 26, 2021 Email).

7   Hossain's counsel accused the government of issuing interrogatories outside the scope of Supplemental

8   Rule G(6), provided none of the information requested, and reiterated the statements made in his claim.

9   **V.    LEGAL STANDARD**

10         **A.    The Claim Must Comply with the Requirements in Rule G(5)(a)**

11         Pleadings in civil forfeiture actions must be filed in accordance with the Supplemental Rules.

12  *See* 18 U.S.C. § 983(a)(4)(A) ("any person claiming an interest in the seized property may file a claim

13  asserting such person's interest in the property in the manner set forth in the [Supplemental Rules]").

14  Specifically, to pursue a claim, the claimant must demonstrate, in addition to the usual requirement of

15  establishing Article III standing, *see Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013),

16  compliance with "the jurisdictional procedural requirements" set forth in Supplemental Rule

17  G(5). *United States v. $100,348.00 in U.S. Currency*, 354 F.3d 1110, 1126 (9th Cir. 2004).  Many courts

18  refer to the latter as "statutory standing" and have held that it is established through compliance

19  with Rule G.  *See id.; see also, e.g., United States v. 487,825.00 in United States Currency*, 484 F.3d

20  662, 664 (3rd Cir. 2007) ("[t]o establish statutory standing in a forfeiture case, the claimant must comply

21  with the procedural requirements set forth in Rule C(6)(a) [the predecessor to Rule G(5)] and §

22  983(a)(4)(A)").

23         At any point before trial, "the Government may move to strike the claimant's claim on the

24  grounds that the claim does not comply with Supplemental Rule G(5), that the claimant has not

25  responded to special interrogatories pursuant to Rule G(6)(a), or that the claimant lacks standing"

26  pursuant to Supplemental Rule G(8)(c)(i)(A) & (B).  *United States v. $41,471.00 in United States*

27  *Currency*, No. CV 15-00696-R(SSx), 2016 U.S. Dist. LEXIS 10952, *10 (C.D. Cal.  Jan. 5, 2016).  *See*

28  U.S. MOTION TO STRIKE ROMAN HOSSAIN'S CLAIM
    CV 20-7811 RS                                     9

1   *also United States v. $12,126.00 in U.S. Currency,* 337 Fed. A'ppx 818, 820 (11th Cir. 2009) (noting

2   that the government may move under Rule G(8)(c) to strike a claim for failure to comply with Rule

3   G(5), and affirming an order striking a claim for lack of statutory standing); *United States v. $13,970.00*

4   *in U.S. Currency*, 2007 WL 1231659 (M.D. Ga. 2007) (holding that statutory standing is a threshold

5   issue, and that a claimant who fails to comply with section 983(a)(4) and Rule G(5) lacks standing); *cf.*

6   *Appeal of Torres,* 1988 WL 83331 (4th Cir. 1988) (applying the predecessor to Rule G and holding that

7   until the procedural requirements of the Supplemental Rules are met, the claimant "has no standing to

8   contest the forfeiture").

9       **B.      Rule G(5)(a) Requires the Claimant to State his Interest in the Property**

10      Among other things, Rule G(5)(a) requires that the claim "identify the claimant and state the

11  claimant's interest in the property."  Rule G(5)(a)(i)(B).  The burden for demonstrating standing falls

12  squarely upon a claimant, not the government.  *See United States $133,420 in U.S. Currency*, 672 F.3d

13  629, 644 (9th Cir. 2012).  The case law is unambiguous on the issue of obligatory conformity to the

14  rules of procedure as a prerequisite to achieving standing in a forfeiture action: a putative claimant

15  lacks statutory standing if s/he fails to comply with the pleading requirements of Supplemental Rules

16  G(4) and G(5).  *See United States v. Real Property Located at 4527-535 Michigan Avenue*, 489 Fed.

17  A'ppx 855 (6th Cir. 2012).  The reason for this is clear—if the claim does not state the claimant's

18  interest, or if it states it only in broad or equivocal terms, the role of the pleading requirement in

19  screening out false claims at the pleading stage is severely undermined.

20      Courts have repeatedly explained this rule and the reason why it must be strictly enforced.  In

21  *United States v. $39,557.00, More or Less, in U.S. Currency*, 683 F. Supp. 2d 335 (D.N.J. 2010), law

22  enforcement officers seized a quantity of currency from a vehicle in which the claimant was riding as a

23  passenger.  When the government filed a civil forfeiture action against the property, the Claimant filed

24  what the court characterized as "a bald assertion of ownership."  683 F. Supp. 2d 335 at 339.  Such a

25  claim, the court held, fails to satisfy the pleading requirements of Rule G(5)(a) because it "fails to

26  sufficiently identify [the claimant's] interest in the currency."  *Id.*  Accordingly, the court granted the

27

28

government's motion to strike the claim.  *Id.*

In *United States v. $134,750 in U.S. Currency,* 2010 WL 1741359 (D. Md. Apr. 28, 2010), the government filed a civil forfeiture action against funds in a bank account, alleging that they were involved in a structuring offense in violation of 31 U.S.C. § 5324(a)(3).[5]  The court agreed with the government that the claim had to set forth Claimant's interest in the property in some detail.  It was not sufficient, the court said, for the Claimant simply to state that "the assets were taken out of my bank accounts by IRS."  *Id.* at *3.  To the contrary, to comply with Rule G(5)(a), "the Claimant needs to state where and how he acquired the seized assets in which he asserts property interests . . . including, but not limited to, the persons(s) from whom he received the currency, the date of receipt, the place of the receipt, and a description of the transaction which generated the currency."  *Id.*

## C.   Because of the Danger of False Claims, Courts Require "Strict Compliance with the Rule"

Courts generally require "strict compliance" with the pleading requirements in Rule G(5).  The Ninth Circuit and other courts have stated that standing to contest a forfeiture action can be conditioned on "strict compliance with filing requirements."  *United States v. Real Prop. Located at 17 Coon Creek Rd., Hawkins Bar California, Trinity Cty. ("17 Coon Creek Rd")*, 787 F.3d 968, 974 (9th Cir. 2015) (internal citations omitted); *United States v. $38,570 U.S. Currency*, 950 F.2d 1108, 1112-15 (5th Cir. 1992); *United States v. Eng*, 951 F.2d 461, 468 (2d Cir. 1991), *abrogated on other grounds by Degen v. United States*, 517 U.S. 820, 116 S. Ct. 1777 (1996).

As many courts have recognized, there is a substantial danger of false claims in *in rem* actions where the government files an action against the property, and anyone who has notice of the action can file a claim.  Requiring strict compliance with the pleading requirements minimizes the danger of such claims by forcing the claimants to assert their ownership interest under oath.  For that reason, the

---

[5] In that case, Claimant filed an answer to the allegations in the government's complaint, but he did not file a claim stating his interest in the property as required by Rule G(5)(a).  The government moved to strike the answer for failing to file a verified claim.  In light of the claimant's *pro se* status, the court denied the motion, ruling that "the equities favor providing Claimant addition time to amend his claim . . . ." *Id* at *1.

pleading requirements are not treated as "mere procedural technicalit[ies]." *United States v. $487,825.00*, 484 F.3d 662, 664-65 (3d Cir. 2007).  *See also United States v. $12,126.00*, 337 Fed. App'x at 820 ("the district court was entitled to insist upon strict compliance with the procedural requirements set forth in Rule G(5)"); *United States v. $39,557.00, supra* (holding that the pleading requirements in Rule G(5) must be strictly enforced).  As one district court noted in construing the predecessor to the current rule, "[s]trict conformity, not casual compliance, is the message of the case literature."  *United States v. $288,914.00 in U.S. Currency*, 722 F. Supp. 267, 270 (E.D. La. 1989).

### D.    The Court May Strike a Claim Where the Claimant Lacks Standing

"Before a claimant can contest a forfeiture, he must demonstrate standing."  *Mercado v. U.S. Customs Service*, 873 F.2d 641, 644 (2d Cir.1989).  Standing is a threshold jurisdictional issue in civil forfeiture cases, *see United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526-27 (2d Cir.1999), and the government is entitled to "test" the veracity of the claimant's claim of ownership and interest any time after a claim is filed.  *$133,420.00*, 672 F.3d at 642 (9th Cir. 2012) ("The issue of standing is subject to adversarial testing under Supplemental Rule G(6)(a), which gives the government the right to question the claimant regarding the 'claimant's identity and relationship to the defendant property,' and to 'gather information that bears on the claimant's standing") (internal citations omitted).

To contest a forfeiture, a claimant must demonstrate both statutory and Article III standing.  *United States v. $1,181,895.00 in U.S. Currency*, No. CV 14-03973-CBM, 2015 U.S. Dist. LEXIS 17448, 2015 WL 631394, at *2 (C.D. Cal. Feb. 12, 2015).  "A claimant bears the burden of establishing Article III standing, the threshold function of which is to ensure that the government is put to its proof only where someone acting with a legitimate interest contests the forfeiture . . . . A claimant must therefore demonstrate that he has a sufficient interest in the property to create a case or controversy."  *United States v. $41,471.00 in U.S. Currency*, No. CV 15-00696-R(SHSX), 2016 U.S. Dist. LEXIS 10952, 2016 WL 337380, at *1 (C.D. Cal. Jan. 6, 2016).  *See also United States v. Real Property Located at 5208 Los Franciscos Way*, 385 F.3d 1187, 1191 (9th Cir. 2004).

"In order to meet the case-or-controversy requirement of Article III, a plaintiff (including a civil

1   forfeiture claimant) must establish the three elements of standing . . . ." *$133,420.00*, 672 F.3d at 637

2   (9th Cir. 2012).  These are (1) "that the plaintiff suffered an injury in fact," (2) "that there is a causal

3   connection between the injury and the conduct complained of, and" (3) "that it is likely the injury will

4   be redressed by a favorable decision." *Id.* (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61

5   (1992)).  In a civil forfeiture proceeding, standing is satisfied if the claimant can show "a colorable

6   interest in the property, for example, by showing actual possession, control, title, or financial

7   stake." *United States v. Real Prop. Located at 475 Martin Lane*, 545 F.3d 1134, 1140 (9th Cir. 2008).

8   The burden for showing standing rests on the party asserting it.  *Lujan*, 504 U.S. at 561.

9          To collect evidence on the issue of standing, Rule G(6) "broadly allows the government to

10  collect information regarding the claimant's 'relationship to the defendant property'" through the use of

11  special interrogatories.[6]  *$133,420.00*, 672 F.3d at 642 (9th Cir. 2012) (concluding that claimants in civil

12  forfeiture actions have standing when they have a "colorable interest in the property").  While the scope

13  of this rule is limited, the Ninth Circuit has stated that the rule "broadly allows the government to collect

14  information regarding the claimant's relationship to the defendant property," and "contemplates that the

15  government may seek information beyond the claimant's identity and type of property interest." *Id.*

16  (affirming the district court's decision to strike claimant's Special Interrogatory response because the

17  claimant "impaired the truth-seeking function of the judicial process" by failing to provide a response

18  that addressed the "claimant's identity and relationship to the defendant property.")

19         Rule G(8)(c)(1) provides that the government may move to strike a claim for failing to comply

20  with Rule G(5) or (6), or because the claimant lacks standing.  *17 Coon Creek Rd*, 787 F.3d at 973 (9th

21  Cir. 2015); *see United States v. $333,806.93 in Proceeds*, No. CV 05-2556 DOC ANX, 2010 WL

22  3733932, at *1 (C.D. Cal. Aug. 30, 2010) (striking claim under "strict compliance" standard for failure

23

24       [6] The Federal Rules of Civil Procedure authorize party-initiated discovery of any evidence that is
relevant to any party's claims or defenses.  Fed. R. Civ. P. 26(b)(1).  However, discovery under Rule

25  26 is generally barred prior to the initial case management conference.  *See* Fed. R. Civ. P. 26(d)(1).
Nevertheless, in the particular context of forfeiture proceedings, Supplemental Rule G(6) applies, which

26  "supersedes the discovery 'moratorium' of Rule 26(d)," and permits the government to file "limited
interrogatories at any time after a claim is filed to gather information that bears on the claimant's

27  standing."  Advisory Committee Note to Subd. 6 of Supp. R. G.

1   to respond to Special Interrogatories served pursuant to Supplemental Rule G(6)); (citing Supp. R.

2   G(8)(c)(i)(A)); *$133,420.00 in U.S. Currency*, 672 F.3d at 635 (emphasizing that pursuant to Rule

3   G(8)(c), at any time before trial, the government may move to strike the claimant's claim or answer if

4   the claimant has not responded to special interrogatories propounded pursuant to Rule G(6)(a), or if the

5   claimant lacks standing)).  The Advisory Committee Notes to the Supplemental Rules provide that the

6   sufficiency of a claimant's responses to special interrogatories under Rule G(6) should be evaluated

7   using a "more demanding" standard than that employed to determine eligibility for discovery sanctions

8   under Rule 37 of the Federal Rules of Civil Procedure."  *Id.* (citing Adv. Comm. Note to Supp. R.

9   G(8)(c)(i)(A).  Rule 37 states that "evasive or incomplete disclosure, answer, or response must be treated

10  as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(4).

11  **VI.    ARGUMENT**

12      **A.    Hossain has Failed to Properly Identify his Interest in the Defendant Property**

13        In his claim, Hossain asserts that he is "an innocent owner of at least 245.92 BTC" of the 69,370

14  BTC that is the subject of the instant forfeiture action and that his interest "predates and supersedes the

15  government's forfeiture claim."  Dkt. No. 42 ¶ 9.  Hossain argues that Bitcoin stolen from the Mt. Gox

16  exchange in a series of hacks between 2011 and 2014 (which included his 245.92 BTC) "ended up in

17  Silk Road, from where it was stolen again and transferred to the 1HQ3 wallet."  *Id.* ¶ 6.  Specifically, he

18  claims that the transfer of 70,411.46 BTC from Silk Road to 1BAD and eventually to 1HQ3 "contained

19  mostly, if not entirely, the BTC that was stolen from Mt. Gox Exchange by hackers, including [his]

20  BTC."[7]  *Id.*

21        Hossain's claim is insufficient in two main respects.  First, he has failed (and refused) to

22  provide his Mt. Gox Bitcoin wallet address or account information.  This information is vital to

---

[7] Hossain asserts that "[b]etween 2011 and 2014, Mt. Gox was actively concealing the fact that its accounts were being hacked and customers' BTC was being stolen and placed into Silk Road" (i.e., its "ledgers were not accurate, and customers were being deceived with ledgers showing BTC that had been stolen and was gone.")  Dkt. No. 42 ¶ 7.  Through its investigations in other matters related to Mt. Gox, the government has determined that the Mt. Gox ledgers are not fake and that the BTC stolen from Mt. Gox did not go to Silk Road.

establish standing, as account information indicates some connection to the property to be forfeited.

Without any account information, the government would be unable to confirm that Hossain's account

was implicated in any of the hacks or thefts discussed in the government's Complaint.  Without any

information concerning his account information, there would be no way to establish the relationship

between Hossain and the Defendant Property.

Second, Hossain does not offer any specific transactions to support his assertion that the Mt.

Gox funds ended up at Silk Road.  Again, without some connection between the funds at Mt. Gox to

the funds at Silk Road, or an explanation as to how why the funds at issue in this litigation are the

same as the funds he claims were stolen, his claim remains inadequate.[8]

In its Special Interrogatories and again in a meet and confer email, the government requested

information from Hossain concerning his accounts at Mt. Gox for the purpose of determining if the

Bitcoin he had in his account is part of the Bitcoin the government is seeking to forfeit.  The government

also asked for information to support his assertion in paragraphs 2 and 6 of his Claim that the hacked

Bitcoins from the Mt. Gox Exchange (including those he is claiming) were transferred from Mt. Gox to

Silk Road.  *See* Quiroz Decl. Ex. 2 (Interrogatories 15 and 16).  Hossain refuses to provide this

information, likely because, if he did, the government would be able to determine that the Bitcoin he had

in his account is not at all related to the Defendant property.  If Hossain truly owns part of the Defendant

Property, he should be required to assert so and answer the government's most basic question—how did

his hacked Bitcoin end up in Silk Road?  Without a Mt. Gox wallet address belonging to Hossain, the

government is unable to determine the grounds on which Hossain is asserting ownership of a portion of

the Defendant Property.

By failing to properly identify his interest in the property and refusing to adequately respond to

the special interrogatories to provide the basis for his relationship to the Defendant Property, Hossain

---

[8] These omissions are particularly important because, as explained in more detail below, the government has determined two facts through its own investigation that obliterate Hossain's claim: (1) the funds stolen from Mt. Gox were not transferred to Silk Road; and (2) Hossain's Bitcoin left his Mt. Gox account <u>after</u> the Defendant Property was taken from Silk Road.

1   has failed to comply with the requirements of the Supplemental Rules and his claim must therefore be

2   stricken.  *See $133,420*, 672 F.3d at 635 (9th Cir. 2012).

3   **B.      Hossain Lacks Standing to Bring a Claim**

4          Hossain's claim also demonstrates his lack of standing and is a separate and alternative basis

5   upon which the Court can strike his claim.  A claimant bears the burden of establishing Article III

6   standing, the threshold function of which is to ensure that the government is put to its proof only

7   where someone acting with a legitimate interest contests the forfeiture.  *United States v. $557,933.89,*

8   *more or less, in U.S. Funds*, 287 F.3d 66, 79 (2d Cir. 2002).  A claimant must therefore demonstrate

9   that he has a sufficient interest in the property to create a case or controversy.  *United States v. Real*

10  *Property Located at 475 Martin Lane*, 545 F.3d 1134, 1139 (9th Cir. 2008).

11         Hossain's conclusory and self-serving statements are not sufficient to establish his standing.

12  Hossain's claim to 245.92 BTC of the Defendant Property is premised on his allegation that it went

13  from Mt. Gox to Silk Road and then to 1HQ3.  This is a faulty premise, however, because neither his

14  245.92 BTC, nor the other BTC stolen from Mt. Gox in a series of hacks ever went to Silk Road.  *See*

15  Ex. A ⁋ 6.  Based on information Hossain presented in his claim, the government has been able to

16  identify his Mt. Gox account information from Mt. Gox records the IRS received from two separate,

17  reliable sources in a separate investigation.  *Id.* ⁋ 2.  Specifically, the Mt. Gox records revealed that on

18  or about March 1, 2012, a Mt. Gox account was registered using the email address

19  millions█████@gmail.com.[9]  *Id.*  The account was opened with a deposit of $2,475.  *Id.*  The opening

20  date, March 1, 2012, and the amount, $2,475 both match the information Hossain provided in his

21  claim.  *See* Dkt. No. 42 ⁋ 4 ("On or before March 1, 2012, I opened an account on the Mt. Gox

22  Exchange and deposited $2,475 USD to purchase BTC with the hope that my BTC investment would

23  appreciate over time.")

24         Further, on February 8, 2013 and February 9, 2013, the records show a transfer of 200 BTC

25  and 45.92 BTC out of a Mt. Gox account for a total of 245.92 BTC.  *Id.* ⁋ 4.  This matches exactly the

26

27         ────────────────
           [9] This email address has been redacted to protect the user's privacy.

28  U.S. MOTION TO STRIKE ROMAN HOSSAIN'S CLAIM
    CV 20-7811 RS                                    16

amount Hossain claims was stolen from his Mt. Gox account, sent to Silk Road, and subsequently stolen by Individual X.  *See id.* ⁋ 5 ("My Mt. Gox account balance at the time hackers were stealing BTC from Mt. Gox was 245.98124 BTC, and at least 245.92 BTC was stolen from me.")  Because the 245.92 BTC was transferred out of Hossain's Mt. Gox account approximately nine months after the Bitcoin in question was moved out of Silk Road Bitcoin wallets, it is impossible for Hossain's 245.92 BTC to have been among the BTC Individual X stole from Silk Road in May 2012.  *Id.*

In addition, Hossain claims that "[b]etween 2011 and 2014, Mt. Gox was actively concealing the fact that its accounts were being hacked and customers' BTC was being stolen and placed into Silk Road." Dkt. No. 42 ⁋ 7.  In a separate investigation in the Northern District of California that culminated in federal charges against BTC-e and its operator Alexander Vinnik, the government found evidence that the Bitcoin stolen from Mt. Gox was deposited into wallets at three different digital currency exchanges: (i) BTC-e; (ii) Trade Hill, another exchange based in San Francisco; and (iii) back into Mt. Gox into a different Mt. Gox wallet.[10]  *See* Ex. A ⁋ 6. *See also* Superseding Indictment, *United States v. BTC-e, a/k/a Canton Business Corporation, and Alexander Vinnik*, Case No. CR 16-00227 SI, ⁋ 52 (N.D.Cal., Jan. 17, 2017) (redacted), *available at* https://www.justice.gov/usao-ndca/pr/russian-national-and-bitcoin-exchange-charged-21-count-indictment-operating-alleged.  The BTC-e investigation did not uncover evidence that the stolen Mt. Gox BTC was sent to Silk Road, as Hossain claims.  *See id.*

This information underscores the importance of the information Hossain refuses to provide and explains his persistent refusal to do so.  Accordingly, Hossain lacks standing to bring his claim and it must be stricken.

## C.     Hossain's Objections to the Government's Special Interrogatories are Misplaced

In his April 4, 2021 letter in response to the government's email regarding Hossain's deficient responses to the special interrogatories, Hossain's counsel accuses the government of seeking "special

---

[10] In approximately February 2014, Mt. Gox closed its exchange service and filed for bankruptcy protection.  The bankruptcy trustee set up a claims process for Mt. Gox accountholders to file claims. Ex. A ⁋ 7.

treatment" and serving abusive interrogatories "that go far beyond the scope of Rule (6)."  *See* Quiroz Decl., Ex. 4 at 1.  Hossain's counsel also claims that his responses "were thoughtful, factual, and complete" and that he has met his obligation under the rule to "provide information on his identity and relationship to the defendant property sufficient to establish his standing."  *Id.* at 2.  Hossain's responses to the Special Interrogatories, however, provide little more than a regurgitation of the statements in his verified claim, which consist of nothing more than conclusory and self-serving assertions about the purported trajectory of the Bitcoins that were allegedly stolen from his Mt. Gox wallet.

The government's Special Interrogatories are not "abusive;" they are pointed and carefully tailored to ascertain precisely what the rule allows—"the claimant's identity and the relationship to the defendant property."  *See* Supplemental Rule G(6)(a).  In his letter, Hossain's counsel emphasizes that his client provided his social security number in response to the interrogatories—a fact that, as explained in detail below, allowed the government to identify Hossain as a convicted fraudster—yet repeatedly refused to provide the most crucial piece of information that would allow the government to challenge his standing: his Mt. Gox account details.  Hossain's consistent refusal to provide this information (and, correspondingly, his unduly reactive response to the government's request) is understandable, given that such information would give finality to his claim.

Hossain argues that because the scope of Supplemental Rule G(6) is limited to information bearing on Claimant's standing, and his responses to the government's special interrogatories and verified claim are sufficient to establish his standing at this stage, any further discovery necessarily exceeds the scope of the Rule.  However, the Ninth Circuit has expressly rejected this argument. *$133,420.00*, 672 F.3d at 642-43 (9th Cir. 2012) ("[Claimant's] premise that the only information relevant to standing is the claimant's identity and interest in the defendant property is simply incorrect . . . .").  Just as in *$133,420*, Hossain's proffered narrow interpretation of Supplemental Rule G(6) would render Supplemental Rule G(5)(a)(i)(B), which already requires a verified claim to "identify the claimant and state the claimant's interest in the property," superfluous.  *Id.* (quoting *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 691 (9th Cir. 2003)) (restating the "cardinal rule of statutory

interpretation that no provision should be construed to be entirely redundant."). Furthermore, Hossain's position ignores the fact that "the advisory committee's note to this rule contemplates that the government may seek information beyond the claimant's identity and type of property interest . . . ." *Id.* at 642 (citing Supp. R. G Advisory Committee's Note (subsection 6)). This interpretation is in accord with the other lower courts that have considered the scope of Supplemental Rule G(6). *See, e.g.*, *United States v. $307,970*, No. 12-CV-136, 2013 WL 4095373, at *3 (E.D.N.C. Aug. 13, 2013) ("[P]ermissible interrogatories as to a claimant's relationship to the defendant property may encompass more than just the type of interest asserted in the property.") (citing *$133,420*, at 642-43); *United States v. 2,051,660.00 in United States Currency*, No. 07-cv-1338, 2008 U.S. Dist. LEXIS 124625, 2008 WL 8723566, at *1 (D. Kans. Sept. 29, 2008) ("[T]he addition of Supplemental Rule G(6) phrase [sic] regarding 'claimant's identity and relationship to the defendant property' must allow more than a mere recitation of the information already required by Supplemental Rule G(5)").

Indeed, Hossain's "information and belief" is the only thing that substantiates his claim that his stolen Bitcoin ended up in Silk Road and subsequently in the address seized by the government from Individual X.[11]  *See* Quiroz Decl., Ex. 4 at 3, 4 ("*[b]ased on information and belief*, between 2011 and 2014, the Mt. Gox Exchange experienced several hacks, which resulted in the theft of significant BTC that ended up in Silk Road, from which it was stolen again and transferred to the 1HQ wallet . . . *[b]ased on information and belief*, between 2011 and 2014, Mt. Gox was actively concealing the fact that its accounts were being hacked and customers' BTC was being stolen and placed into Silk Road") (emphasis added).  The stolen Mt. Gox Bitcoin did not end up in Silk Road, however, and no amount of desire on Hossain's behalf to the contrary can translate his "information and belief" to proper standing such that he can legitimately assert a right to a portion of the Defendant Property.  In fact, the 245.92

---

[11] Hossain's conjecture is likely what led Nobuaki Kobayashi, the Mt. Gox Trustee and Foreign Representative of MtGox co., Ltd., a/k/a MtGoxv KK, to recently file a Motion to Intervene in this action.  *See* Dkt. No. 67 at 5 (the Foreign Representative has reason to believe . . . that a material portion of the [Defendant Property] was once stolen from the now-defunct MtGox bitcoin exchange and thereby constitutes the property of MtGox.").  Kobayashi's allegations similarly lack merit and will be addressed in a separate filing.

BTC was transferred out of Hossain's Mt. Gox account approximately nine months after Individual X stole the Bitcoin in question from Silk Road, so it is literally impossible for Hossain's 245.92 BTC to have been a part of the BTC Individual X stole from Silk Road in May 2012.  *See* Ex. A ₱ 5.

In his April 4, 2021 letter, Hossain cites to a handful of cases to justify his refusal to provide complete responses to the government's Special Interrogatories, all but one of which are decisions by courts outside of the Ninth Circuit.  Moreover, although the government recognizes that the facts of the instant case are unique and do not arise on a regular basis, the cases cited by Hossain involve starkly different facts and circumstances.  First, he cites to a decision in the Southern District of Illinois for the proposition that that objective of Supplemental Rule G(6) "is to ensure that the Government may challenge the standing of the claimant before the court decides a motion to dismiss . . . ."  *See Quiroz Decl.*, Ex. 4 at 1 (citing *United States v. $128,915.00 in United States Currency*, No. 20-CV-00667-JPG, 2021 U.S. Dist. LEXIS 130008, at *11 (S.D. Ill. Jan. 25, 2021).  In that case, which involved the seizure of $128,915 during a traffic stop because it was allegedly connected to a controlled-substance offense, the court denied the government's motion to compel responses to its Special Interrogatories.  The interrogatories asked "[w]here [claimant] works, whether he has a criminal history, whether he is the 'rightful owner' of the cash, where he held the cash before its seizure, why the cash was not in a bank, whether he paid taxes on the cash, whether there are others that know about the cash, why the cash was in his car, whether he ever had other cash seized from him, why he made certain statements during the traffic stop, who his grandmother is, and where he went to school."  *$128,915.00* at *13.  Here, the Defendant Property was not seized from Hossain, so the posture is different at the outset.  Furthermore, the Special Interrogatories go specifically to the heart of Hossain's claim—his Mt. Gox account.  For example, the government's Special Interrogatory 12 asked for "the name, account number, email address, and any other identifier associated with the account or accounts held by [Hossain] at the Mt. Gox Exchange from which the Bitcoins you are claiming were allegedly stolen."  Quiroz Decl., Ex. 1 at 6.  Interrogatories 13 and 14 asked for evidence "supporting the assertion in paragraph 5 of [Hossain's] claim that [he] held 245.98124 BTC at the Mt. Gox Exchange."  *Id.*  Hossain refused to answer these

interrogatories, providing boilerplate objections instead.  The government has not asked Hossain about his criminal history, his employment, his grandmother, whether he paid taxes, or where he went to school.  They all relate to his claim to the Defendant Property and trajectory of the subject Bitcoin, and therefore his standing to bring the claim.

Hossain also cites a decision from the Central District of Illinois for the proposition that interrogatories that seek actual proof of the claims are unnecessary at an early stage in the case.  *See* Quiroz Decl., Ex. 4 at 2 (citing *United States v. One Hundred One Thousand & 00/100 Dollars in United States Currency*, No. 10-4047, 2011 U.S. Dist. LEXIS 90196, at *13 (C.D. Ill. Aug. 12, 2011)). Hossain's parenthetical in support of that case is misleading—the Court did not deny the government's motion to compel responses to the interrogatories; it granted it in part and denied it in part, concluding that none of the Interrogatories were either vague or overbroad.  *Id.* at *13.  Indeed, the Court found them to be clear and pointed.  *Id.*  The court emphasized that "[s]tanding is a jurisdictional issue, so clarifying the Claimants' standing at the beginning of the case is not premature . . . [t]hose objections are rejected out of hand.")  Although the court found that two of the interrogatories sought actual proof of the claims and found them to be unnecessary at that early stage in the litigation, the court emphasized that the claimants had to answer the rest of the interrogatories in order to evaluate whether they had a colorable interest in the currency and therefore standing to pursue their claims.  *See id.* at *12, 13 ("[s]ome indicia of reliability or substance is required to reduce the likelihood that these are false or frivolous claims and therefore not made by persons with standing.)  Here, the government's interrogatories are similarly clear and pointed and the information surrounding Hossain's Mt. Gox account is necessary to evaluate whether he has a colorable interest in the Defendant Property and standing to pursue his claims.  As the court noted, "[b]oth Article III 'case or controversy' standing and statutory standing must exist, and the burden is on the claimant to show both."  2011 U.S. Dist. LEXIS 90196, *5 ("Statutory standing requires procedural compliance with Rule G(5) and 18 U.S.C. § 983(a)(4), namely the filing of a claim that identifies the claimant and its interest") (internal citations omitted.)  Hossain's refusal to provide his Mt. Gox account information creates great doubt about his

1   statements that he owns part of the Bitcoins seized by the government from 1HQ3.  Hossain's assertion

2   of ownership in the face of the circumstances set forth below and alleged in the Forfeiture Complaint is

3   simply insufficient to demonstrate a colorable interest in the Defendant Property.

4       Courts differ in their view regarding what information is sufficient to identify a claimant's

5   'interest,' which raises the question regarding the standard required in *this* Circuit.  Hossain's April 4,

6   2021 letter cites to only one Ninth Circuit case—*United States v. $133,420.00 in United States*

7   *Currency*, 672 F.3d 629, 643 n.5 (9th Cir. 2012).  The proposition for which Hossain cites this case is

8   irrelevant—"finding special interrogatory requiring the claimant to explain 'why anyone would travel

9   anywhere with more than $133,420 in U.S. currency in a rented vehicle' to be beyond the scope of Rule

10  G(6)(a)"—because none of the government's Special Interrogatories ask anything close to this.  In fact,

11  as referenced throughout this brief, the Ninth Circuit's decision in the *$133,420.00* case actually

12  supports the government's position as to Hossain's claim.

13      The government here has not sought admissions or productions of documents, "which are outside

14  the scope of the Rule and might qualify as 'overly broad, burdensome, and oppressive.'"  *See United*

15  *States v. $209,815 in United States Currency*, 2014 U.S. Dist. LEXIS 90028, *6 (N.D. Cal. Jun. 30,

16  2014) (citing 672 F.3d at 643 n.5 and highlighting that the government in that case similarly did not seek

17  admissions or productions of documents).  The government's interrogatories in this case are similar to

18  those that have been endorsed by the Ninth Circuit and those that have been approved by at least one

19  court in this district.  *See id.* at *6-7 ("the interrogatories in this case mirror those endorsed by the Ninth

20  Circuit in *$133,420*, which also sought information relevant to (1) the nature of the Claimant's interest,

21  and (2) the means by which the Claimant's interest was acquired (including, among other things, the

22  dates, times, circumstances of each transaction, persons from which the currency was obtained, reasons

23  why it was obtained, and names and contact information for witnesses to transactions in which it was

24  obtained") (internal citations omitted).  The government's interrogatories are limited to Hossain's

25  claimed Bitcoin and its relationship to the Defendant Property and are therefore proper under Ninth

26  Circuit law and the precedent in this district.  *See Id.* at *7 ("because Plaintiff's interrogatories are all

27

28

1  "limited to the claimant's . . . relationship to the defendant property," they are neither outside the scope

2  of the Rule nor impermissibly broad") (internal citations omitted).

3      **D.    The Risk of a False Claim in this Instance is Even More Heightened Given the
           Background of this Particular Claimant**

4

5      Through its investigation in this matter, the government has learned that Roman Hossain has

6  been convicted of wire fraud and failing to file a tax return and is currently in violation of his supervised

7  release conditions.[12]  Specifically, on December 11, 2013, a federal grand jury charged Roman Hossain

8  and others with wire fraud, in violation of 18 U.S.C. § 1343.  *See* Indictment, *United States v. Daniel*

9  *Wheeler, et al.*, No. CR 13-0224, Dkt. No. 1.  According to the Indictment and Presentence Investigation

10 Report in that case, Hossain and his co-defendants participated in a block funds fraud scheme in which

11 they told victims that they had access to millions in private funds, which the respective victim could

12 lease.  The victim paid a fee for these leased funds to be deposited into a bank account set up in the

13 victim's name or the victim's business name.  The funds were purportedly blocked (could not be

14 withdrawn), but could be used, for example, as leverage to obtain a separate line of credit to fund the

15 victim's project.  *Id.*  The victims typically wired their service fee payments to an escrow agent.  The

16 victims were told their respective (fee) funds would not be released until the victim verified the leased

17 funds.  After the victim deposited the victim's service fee payment, Hossain and his co-defendants

18 created statements and letters purportedly coming from banks.  Those documents claimed that funds

19 were deposited into a bank account established in the victim's name or into a business account

20 associated with the victim.  Those bank letters contained the name of a true bank officer associated with

21 that bank and a phone number for the banker at the purported specified bank for the victim to contact to

22 verify the deposit of funds.  In truth, the purported banker's phone number was a virtual phone number

23 which had a voicemail identifying that banker.  Thus, the victim calling that phone number was not able

24 _____

25 [12] The government has confirmed that Claimant Hossain is the same individual who has
   sustained these convictions in the Central District of California.  *See* Ex. A ¶ 8, ("Through my
26 investigation I have learned that an individual named Roman Hossain was convicted of wire fraud and a
   willful failure to file a tax return in the Central District of California in 2013.  I have determined that the
27 Roman Hossain who filed the claim for a portion of the Defendant Property is the same Roman Hossain
   that was convicted in that case.")

28 U.S. MOTION TO STRIKE ROMAN HOSSAIN'S CLAIM
   CV 20-7811 RS                                          23

to speak with a person and would leave a message.  The victim would then receive a return phone call from the purported banker via a spoofed number which would show to the victim the name of the bank and the bank's true main toll-free number as the caller.  The purported banker would verify the deposit and the legitimacy of the leased funds.  At this point the victim's deposit would be released from escrow, and Hossain and his co-defendants would divide those funds.  Hossain used two companies that he created to help facilitate and disguise the receiver of the scheme proceeds.  *Id.*

While those charges were pending, on August 22, 2014, Hossain was charged in an information with one count of willful failure to file tax return, in violation of 26 U.S.C. § 7203.  *See United States v. Roman Hossain*, No. CR 14-00136, Dkt. No. 1.  On September 18, 2014, Hossain simultaneously pled guilty in both cases (one count of wire fraud and one count of failure to file tax return) pursuant to a plea agreement with the government.  *See* Nos. CR 13-0224, Dkt. No. 130; CR 14-00136, Dkt. No. 17.  On January 23, 2017, Hossain was sentenced for both violations to thirteen (13) months in custody and a three-year term of supervised release.  *See* Judgment and Commitment Order, No. CR 13-0224, Dkt. No. 429 (C.D. Cal. Jan. 25, 2017).  The Court also sentenced Defendant Hossain to pay the following: Restitution: $693,446.00; Fine: $50,000.00; Special assessment: $125.00.  *Id.*

Hossain's supervised release commenced on July 6, 2018.  On January 12, 2021, the U.S. Probation Office in the Central District of California filed a violation report which alleged a violation of 18 U.S.C. § 1001 (false statements), failure to be truthful to the Probation Officer, failure to disclose bank accounts and cryptocurrency holdings, and transferring assets of value over $500.  That petition is currently pending.  It is the government's understanding that Hossain has admitted to three of the six violations and will be sentenced on May 5, 2021.  *See* Case No. CR 13-0224, Dkt. No. 535.

In light of this background and history of fraud and untruthfulness, as well as the need to strictly apply Rule G to civil forfeiture proceedings, Hossain should at the very least be required to provide corroboration for his claim and his responses to the government's Special Interrogatories.  As currently presented, they simply do not pass muster with respect to establishing any sense of a claim, even if he had an impeccable record.

## VII.   CONCLUSION

The government has given Claimant Hossain several opportunities to comply with the pleading requirements and Special Interrogatories by repeatedly asking for basic information to support his claim.  Hossain has refused to comply because he likely knows that if he furnishes the requested information, the impossibility of his assertions will be exposed.  Allowing Hossain's claim to proceed as it currently exists would eviscerate the requirement that Claimants confirm their relationship to the property in their pleadings and their answers to special interrogatories.  Rather, permitting the claim as it stands would expose the government and the Court to exactly the type of time-consuming, protracted litigation over the claimant's standing to contest the forfeiture that the pleading requirements were designed to avoid.  Given the facts set forth herein, Hossain cannot cure the defects in his claim and allowing him to do so would be futile.  Accordingly, the Court should grant the government's motion to strike his claim pursuant to Rule G(8)(c)(i).

DATED:  April 30, 2021

Respectfully submitted,

STEPHANIE M. HINDS
Acting United States Attorney

*Claudia Quiroz*

DAVID COUNTRYMAN
CHRIS KALTSAS
CLAUDIA QUIROZ
WILLIAM FRENTZEN
Assistant United States Attorneys