1  STEPHANIE M. HINDS (CABN 154284)
   Acting United States Attorney
2
   HALLIE HOFFMAN (CABN 210020)
3  Chief, Criminal Division

4  DAVID COUNTRYMAN (CABN 226995)
   CHRIS KALTSAS (NYBN 5460902)
5  CLAUDIA QUIROZ (CABN 254419)
   WILLIAM FRENTZEN (LABN 24421)
6  Assistant United States Attorneys

7        450 Golden Gate Avenue, Box 36055
         San Francisco, California 94102-3495
8        Telephone: (415) 436-436-7428
         FAX: (415) 436-7234
9        claudia.quiroz@usdoj.gov

10 Attorneys for United States of America

11                UNITED STATES DISTRICT COURT

12                NORTHERN DISTRICT OF CALIFORNIA

13                   SAN FRANCISCO DIVISION

14

15 UNITED STATES OF AMERICA,          )  CASE NO. CV 20-7811 RS
                                      )
16        Plaintiff,                  )  **UNITED STATES' OPPOSITION TO NOBUAKI**
                                      )  **KOBAYASHI MOTION FOR DIRECT ACCESS**
17    v.                              )  **AND INTERVENTION**
                                      )
18 Approximately 69,370 Bitcoin (BTC), Bitcoin )  DATE:  June 10, 2021
   Gold (BTG), Bitcoin SV (BSV), and Bitcoin   )  TIME:  1:30 p.m.
19 Cash (BCH) seized from               )  COURTROOM: #3, 17th Floor
   1HQ3Go3ggs8pFnXuHVHRytPCq5fGG8Hbhx )
20                                    )
                                      )
21        Defendant.                  )

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

I.  Introduction…………………………………………………………..…………………….1

II. Procedural History……………………………………………………………....…1

III. Facts……………………………………………………………………………….2

    A.  Silk Road………………………………………………………………………2

    B.  Theft of Bitcoin from Silk Road and Transfer of Bitcoin from Hossain's Mt. Gox Account...3

    C.  Both Ulbricht and the Thief Consented to Forfeiture………………………………4

    D.  Theft of Bitcoin from MtGox and Tracing of Stolen Funds by Chainalysis...……………4

IV. Forfeiture Proceedings……………………………………………………………6

V.  Argument…….………………………………………………………………….7

    A.  The Trustee Should Not be Permitted to Participate in This Matter Pursuant to Chapter 15, Section 1509(b) of the United States Bankruptcy Code………………………………7

    B.  The Trustee Does Not Meet the Requirements of Intervention of Right Under Federal Rule of Civil Procedure 24(a)(2)……………………………………………………9

        1.  The Foreign Representative's Motion is Time Barred………………………9

            a.  Stage of Proceedings………………………………………………10

                i.   Construed as a Claim, Kobayashi's Filing is Untimely Under the Supplemental Rules……………………………………………10

                ii.  There Was No Change of Circumstances that Would Justify the Timing of Kobayashi's Motion Filing……………………………………11

            b.  Prejudice to Other Parties………………………………………………12

            c.  The Reason for the Length of the Delay ...…………………………………12

        2.  The MtGox Estate Has No Actual or Identifiable Property Interests in the Defendant Property ……………………………………………………………13

        3.  Denial of the Foreign Representative's Motion Will Not Impair His Ability to Protect the MtGox Estate's Interests……………………………………13

        4.  The Foreign Representative Has No Interest to be Represented in the Instant Action….14

    C.  The Trustee is not Entitled to Permissive Intervention Under Federal Rule of Civil Procedure 24(b)(1)(B) …………………………………………………14

VI.  Conclusion...……………………………………………………………14

1

## **TABLE OF AUTHORITIES**

2

### **Cases**

3

*CT Inv. Mgmt. Co., LLC v. Cozumel Caribe, S.A. de C.V. (In re Cozumel Caribe, S.A., de C.V.)*,
    482 B.R. 96 (Bankr. S.D.N.Y. 2012) ................................................................ 7

*In re Metcalfe & Mansfield Alternative Investments*,
    421 B.R. 685 (Bankr. S.D.N.Y. 2010) .......................................................... 7, 8

*League of United Latin Am. Citizens v. Wilson*,
    131 F.3d 1297 (9th Cir. 1997) ......................................................................... 12

*Freedom from Religion Found., Inc., v. Geithner*,
    644 F.3d 836, 841 (9th Cir 2011) ...................................................................... 9

*Smith v. Marsh*,
    194 F.3d 1045 (9th Cir. 1999) ................................................................ 9, 10, 12

*United States v. Alisal Water Corp.*,
    370 F.3d 915 (9th Cir. 2004) ................................................................ 9, 12, 13

*United States v. State of Oregon*,
    745 F.2d 550 (9th Cir. 1984) ........................................................................... 11

*United States v. Washington*,
    86 F.3d 1499 (9th Cir. 1996) ........................................................................... 12

### **Statutes**

11 U.S.C. § 1509 ...................................................................................................... 1

11 U.S.C. § 1509(b) .................................................................................................. 7

18 U.S.C. § 371 ........................................................................................................ 2

18 U.S.C. § 981(a)(1)(C) .......................................................................................... 2

18 U.S.C. § 1030(a) .................................................................................................. 2

18 U.S.C. § 1956 ...................................................................................................... 2

18 U.S.C. § 981(a)(l)(A) ........................................................................................... 2

21 U.S.C. § 881(a)(6) ............................................................................................... 2

1

**<u>Rules</u>**

2  Fed. R. Civ. P. 24(b) ................................................................................................ 14

3  Federal Rule of Civil Procedure 24 .......................................................................... 1

4  Federal Rule of Civil Procedure 24(a)(2) .................................................................. 9

5  Federal Rule of Civil Procedure 24(b)(1)(B) ........................................................... 14

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.   INTRODUCTION

The United States of America hereby submits its opposition to Nobuaki Kobayashi's Motion for Direct Access and Intervention in the above-referenced matter.  Kobayashi has filed this motion in his capacity as the Civil Rehabilitation Trustee and Foreign Representative of MtGox Co., Ltd., a/k/a MtGox KK (hereinafter "Kobayashi" or "Trustee").  Kobayashi seeks to intervene in this matter pursuant to Chapter 15 of the United States Bankruptcy Code (11 U.S.C. § 1509) and Federal Rule of Civil Procedure 24.  Kobayashi asserts that he should be allowed to intervene in this case because he is tasked with collecting and distributing any assets of the MtGox estate to creditors and has "reason to believe" that the Defendant Property contains stolen MtGox funds.  Kobayashi fails to expand on that "reason," however, because there is none.  Indeed, the Trustee's own investigation revealed that there was no connection between the stolen MtGox Bitcoin and Silk Road.  The MtGox Trustee hired Michael Gronager, the current CEO and Co-Founder of Chainalysis, to track down the stolen Bitcoin after MtGox filed for bankruptcy.  Gronager found where the stolen Bitcoin went—BTC-e, Tradehill Exchange, and MtGox itself—and conveyed that to the Trustee in July of 2015.

Kobayashi cannot articulate a valid reason for intervention in this matter because there is none.  It is improper for the Trustee to now attempt to interject himself in a judicial proceeding by making representations that directly contradict the conclusions of his own investigation.  Kobayashi may be frustrated by his inability to obtain privileged information from the government relating to a separate matter; that does not give him the right to interject himself in an unrelated proceeding in the hopes that the civil discovery process will allow him access to information to which he is not entitled.  The Court should not allow this abuse of the judicial process.  Kobayashi's motion should be denied.

# II.   PROCEDURAL HISTORY

This matter involves an *in rem* forfeiture action against approximately 69,370.22491543 BTC, Bitcoin Gold (BTG), Bitcoin SV (BSV), Bitcoin Cash (BCH), obtained from 1HQ3Go3ggs8pFnXuHVHRytPCq5fGG8Hbhx, (hereinafter, collectively, the "Defendant Property"), that was seized on November 3, 2020 from Individual X, who signed a Consent and Agreement to

1  Forfeiture with the U.S. Attorney's Office, Northern District of California.  *See* United States'

2  Amended Complaint for Forfeiture, Dkt. No. 8 ₱ 23.  In that agreement, Individual X consented to the

3  forfeiture of the Defendant Property to the United States government.  *Id.*  The government's

4  Complaint alleges that the Defendant Property is subject to forfeiture pursuant to (1) 18 U.S.C. §

5  981(a)(1)(C) because it represents proceeds traceable to computer hacking in violation 18 U.S.C. §

6  1030(a) and conspiracy in violation of 18 U.S.C. § 371; (2) 21 U.S.C. § 881(a)(6) because there is

7  probable cause to believe that the Defendant Property represents property traceable to narcotics

8  trafficking; and (3) 18 U.S.C. §§ 981(a)(l)(A) and 981(b), because to the extent the Defendant Property

9  includes funds that did not originate as proceeds from the illegal activities discussed in the Complaint,

10  those funds were "involved in" money laundering in violation of 18 U.S.C. § 1956 because they were

11  comingled with and used to conceal and disguise the nature, location, source, ownership or control of

12  the criminal proceeds, or were involved in a conspiracy to launder such proceeds.

13  **III.    FACTS**

14        **A.    Silk Road**

15        From 2011 until October 2013, when it was seized by law enforcement, Silk Road was the most

16  sophisticated and extensive criminal marketplace on the Internet, serving as a sprawling black market

17  bazaar where unlawful goods and services, including illegal drugs of virtually all varieties, were bought

18  and sold regularly by the site's users.  While in operation, Silk Road was used by thousands of drug

19  dealers and other unlawful vendors to distribute hundreds of kilograms of illegal drugs and other

20  unlawful goods and services to well over 100,000 buyers, and to launder hundreds of millions of dollars

21  derived from these unlawful transactions.  Dkt. No. 8 ₱ 7.  Contemporaneous with the seizure of Silk

22  Road, there were 159 listings on the site under the category "Services."  Most concerned computer

23  services that were criminal in nature.  *Id.* ₱ 10.

24        The only form of payment accepted on Silk Road was Bitcoin.  *Id.* ₱ 11.  All told, Silk Road

25  generated sales revenue totaling over 9.5 million Bitcoin, and collected commissions from these sales

26  totaling over 600,000 Bitcoin.  *Id.* ₱ 12.  Silk Road used a so-called "tumbler" to process Bitcoin

27

28  U.S. OPPOSITION TO NOBUAKI KOBAYASHI MOTION FOR DIRECT ACCESS AND INTERVENTION
CV 20-7811 RS                                         2

1    transactions in a manner designed to frustrate the tracking of individual transactions through the

2    Blockchain.  The only function served by Silk Road's implementation of such "tumblers" was to assist

3    with the laundering of criminal proceeds.  *Id.* ¶ 13.

4         In February 2015, a federal jury convicted Silk Road creator Ross Ulbricht on seven counts

5    including conspiracy to distribute narcotics and money laundering.  Ulbricht was living in San Francisco

6    prior to his arrest and was operating Silk Road from the Northern District of California.  He was arrested

7    in San Francisco and removed to the Southern District of New York for prosecution.  *Id.* ¶ 14.

8         **B.    Theft of Bitcoin from Silk Road**

9         In 2020, law enforcement officers used a third-party Bitcoin attribution company to analyze

10   Bitcoin transactions executed by Silk Road.  From this review they observed that on May 6, 2012, 54

11   transactions were sent from Bitcoin addresses controlled by Silk Road to two Bitcoin addresses:

12   1BADznNF3W1gi47R65MQs754KB7zTaGuYZ and 1BBqjKsYuLEUE9Y5WzdbzCtYzCiQgHqtPN

13   (hereinafter, collectively "1BAD") totaling 70,411.46 BTC (valued at approximately $354,000 at the

14   time of transfer).  *Id.* ¶ 15.  *See also* Dkt. No. 69, Ex. A ¶ 3 (Declaration of IRS-CI Special Agent

15   Jeremiah Haynie).  These 54 transactions were not noted in the Silk Road database as a vendor

16   withdrawal or a Silk Road employee withdrawal and therefore appeared to represent Bitcoin that was

17   stolen from Silk Road.  Dkt. No. 8 ¶ 16.

18        On approximately April 9, 2013, the Bitcoin addresses that received the 70,411.46 BTC from

19   Silk Road sent 69,471.082201 BTC (approximately $14 million at the time of transfer) to

20   1HQ3Go3ggs8pFnXuHVHRytPCq5fGG8Hbhx (hereafter "1HQ3").  Dkt. No. 8 ¶ 17.

21        On approximately April 23, 2015, 1HQ3 sent 101 BTC (approximately $23,700) to BTC-e, a

22   company that provided Bitcoin-related services and operated as an unlicensed cryptocurrency exchange.

23   In January 2017, BTC-e and a Russian operator of BTC-e were indicted in the Northern District of

24   California for operating an unlicensed money transmitting business and for laundering money through

25   the exchange.  *Id.* ¶ 18.

26        Between April 2015 and November 2020, the remainder of the funds, 69,370.082201 BTC,

27

28   U.S. OPPOSITION TO NOBUAKI KOBAYASHI MOTION FOR DIRECT ACCESS AND INTERVENTION
     CV 20-7811 RS                              3

1    remained in 1HQ3.  As of November 3, 2020, 1HQ3 had a balance of 69,370.22491543 BTC (valued at

2    approximately USD $3.9 Billion as of May 7, 2021).  *Id.* ¶ 19.

3            Individual X, whose identity is known to the government, was determined to have been involved

4    in a transaction that related to 1HQ3.  *Id.* ¶ 21.

5            According to an investigation conducted by the Criminal Investigation Division of the Internal

6    Revenue Service and the U.S. Attorney's Office for the Northern District of California, Individual X

7    was the individual who moved the cryptocurrency from Silk Road to 1BAD.  Investigators believe that

8    Individual X was able to hack into Silk Road and gain unauthorized and illegal access to Silk Road and

9    thereby steal the illicit cryptocurrency from Silk Road and move it into wallets that Individual X

10   controlled.  The investigation further revealed that Ulbricht became aware of Individual X's online

11   identity and threatened Individual X for return of the cryptocurrency to Ulbricht.  Individual X did not

12   return the cryptocurrency, and instead kept it.  *Id.* ¶ 22.

13           **C.      Both Ulbricht and the Thief Consented to Forfeiture**

14           On November 3, 2020, Individual X signed a Consent and Agreement to Forfeiture with the U.S.

15   Attorney's Office, Northern District of California.  *Id.* ¶ 23.  In that agreement, Individual X, consented

16   to the forfeiture of the Defendant Property to the United States government.  *Id.*  That same day, the

17   United States took custody of the Defendant Property from 1HQ3.  *Id.* ¶ 24.

18           On January 22, 2021, Ross Ulbricht admitted that the Defendant Property was subject to

19   forfeiture and consented to its forfeiture to the United States.  Dkt. No. 47.

20           **D.      Theft of Bitcoin from MtGox and Tracing of Stolen Funds by Chainalysis**

21           Between 2011 and February 2014, the Japanese cryptocurrency exchange MtGox experienced a

22   series of hacks, which resulted in the theft of several hundred thousand bitcoins.  *See* Declaration of

23   Chainalysis CEO and Co-Founder Michael Gronager ¶ 3, attached hereto as Exhibit A.  In

24   approximately February 2014, MtGox closed its exchange service.  *Id.*  In April 2014, MtGox filed for

25   bankruptcy protection.  *Id.*  A Japanese court appointed Nobuaki Kobayashi as the bankruptcy trustee

26   and set up a claims process for MtGox accountholders to file claims.  *Id.*

27

28   U.S. OPPOSITION TO NOBUAKI KOBAYASHI MOTION FOR DIRECT ACCESS AND INTERVENTION
     CV 20-7811 RS                               4

1    After MtGox filed for bankruptcy, the MtGox Trustee asked Michael Gronager to assist him and

2    the MtGox creditors to investigate what had happened with the stolen funds. *Id.* ¶ 4.  In an initial study

3    from February 2015, Gronager and his team at Chainalysis found that funds were slowly leaking out of

4    MtGox from summer 2011 until summer 2013. *Id.* ¶ 5.  This was found from a week-to-week

5    reconciliation between the amount according to the book (the database) and the funds actually kept by

6    the keys possessed by MtGox according to the blockchain. *Id.*

7    Gronager and his team followed the stolen funds and were able to account for 98% of all funds

8    not recorded in the database. *Id.* ¶ 6.  Chainalysis isolated three separate hacks, the last one responsible

9    for 80% of all the funds lost over the course of two years. *Id.*  Chainalysis identified the final

10   destination for all funds for the former hacks to be at two major exchanges (Tradehill[1] and BTC-e) as

11   well as on MtGox itself. *Id.*  Chainalysis found no evidence that the stolen MtGox BTC was sent to

12   Bitcoin wallets associated with Silk Road. *Id.*  These findings were documented in a report dated July 9,

13   2015. *See id.*, Ex. 1 (filed under seal).

14   The conclusions of the report were shared with the MtGox Trustee. *Id.* ¶ 7.  Specifically, on July

15   9, 2015, Gronager sent an email to Kuroda Yutaka, Deputy Trustee of MtGox, notifying him and his

16   team that Chainalysis had completed the analysis of the missing Bitcoin funds from MtGox, and was

17   able to account for more than 98% of funds missing. *See id.*, Ex. 2 (filed under seal).  Gronager

18   simultaneously transmitted the report, which detailed the result of the investigation and highlighted

19   where the funds went as described above. *Id.*

20   Following his correspondence with Kuroda Yutaka on July 9, 2015, Gronager exchanged a series

21   of emails with Yukata and his team between July 10, 2015 and September 2, 2015, in which Yukata

22   asked Gronager to confirm several issues relating to malleability. *Id.* ¶ 8.  This indicated to Gronager

23   that the Trustee and his team had read the report and understood it. *Id.*

24   / / /

25

26

27   [1] Chainalysis initially misattributed the Tradehill addresses as GLBSE (Global Bitcoin Stock Exchange) and later corrected it. *Id.*

28   U.S. OPPOSITION TO NOBUAKI KOBAYASHI MOTION FOR DIRECT ACCESS AND INTERVENTION
     CV 20-7811 RS                          5

## IV.    FORFEITURE PROCEEDINGS

On November 5, 2020, the government initiated a judicial forfeiture proceeding against the Defendant Property by filing a Civil Complaint for Forfeiture.[2] Dkt. No. 1.  The government simultaneously filed a Notice of Forfeiture Action, advising all persons asserting an interest in the Defendant Property and who had received direct notice of the forfeiture action to file a verified claim with the Clerk of the Court pursuant to Supplemental Rule G(5).  Dkt. No. 3.  On November 27, 2020, the United States posted Notice of Civil Forfeiture on an official government internet site (www.forfeiture.gov), which notified potential claimants that they had 60 days to file a verified claim with the Court.  Dkt. No. 25.  Thereafter, several individuals filed claims and the deadline to file a claim expired on January 26, 2021.

On April 23, 2021—five months after the government filed its Complaint in this matter, and three months after the deadline to file a claim expired—Nobuaki Kobayashi, in his capacity as the Civil Rehabilitation Trustee and Foreign Representative of MtGox Co., Ltd., a/k/a MtGox KK, filed the instant Motion for Direct Access and Intervention in this case.  He simultaneously filed an answer to the complaint.  In his motion, Kobayashi argues that the instant forfeiture proceedings "may bear on the MtGox estate's assets" and thus he needs "direct access" and to intervene in this matter because he "is tasked with the collection and distribution to creditors of any assets of the MtGox estate."  Dkt. No. 67 at 5.  Kobayashi asserts that he "has reason to believe . . . that a material portion of the [Defendant Property] was once stolen from the now-defunct MtGox bitcoin exchange and therefore constitutes the property of MtGox."  *Id*.  He provides no information about the purported reason that has led him to believe he has a right to any of the Defendant Property in this case, however.  Indeed, Kobayashi acknowledges in his motion that he has no information.  *Id*.  Interestingly, he blames the government— in particular, the United States Attorney's Office—for this informational void.  *Id*. at 6, 7.

/ / /

---

[2] The government amended its complaint on November 20, 2020 to add a missing letter from the Bitcoin address from which the government seized the Defendant Property.  *See* Dkt. No. 8.

## V.    ARGUMENT

### A.    The Trustee Should Not be Permitted to Participate in This Matter Pursuant to Chapter 15, Section 1509(b) of the United States Bankruptcy Code

Kobayashi's request to exercise his "right to access" this case under Section 1509(b) is improper and should be denied.

Section 1509 is entitled "Right of Direct Access."  It presents several related provisions addressing the ability of a foreign representative to pursue actions before federal and state courts in the United States.  If the bankruptcy court grants recognition under Section 1517, the foreign representative has the capacity to sue and be sued in a court in the United States; the foreign representative may apply directly to a court in the United States for appropriate relief in that court; and a court in the United States shall grant comity or cooperation to the foreign representative.  11 U.S.C. § 1509(b).  However, "nothing in section 1509 commands that comity shall be given to all orders entered by a foreign court in a foreign insolvency proceeding."  *CT Inv. Mgmt. Co., LLC v. Cozumel Caribe, S.A. de C.V. (In re Cozumel Caribe, S.A., de C.V.)*, 482 B.R. 96, 109 (Bankr. S.D.N.Y. 2012).  "In short, other than providing access to courts in the United States, section 1509 is not a self-executing relief section of Chapter 15.  Relief to a foreign representative must be based on sections 1507, 1519, 1520 and 1521, subject to limitations that may be imposed under section 1522."  *Id.*

Once recognition is granted under section 1517, "a court in the United States shall grant comity or cooperation to the foreign representative," although such a grant is "subject to any limitations that the court may impose consistent with the policy of this chapter."  11 U.S.C. § 1509(b).  "While this provision [Section 1509(b)] mandates courtesy and respect for the foreign proceeding, consistent with the statement of purpose of chapter 15 and its international origin, it does not mandate relief.  The foreign representative must still make a case that the relief it seeks is warranted."  *In re Cozumel Caribe, S.A., de C.V.*, 482 B.R. at 109 (quoting 8 COLLIER ON BANKRUPTCY ¶ 1509.02).  "While recognition of the foreign proceeding turns on the objective criteria under § 1517, 'relief [post-recognition] is largely discretionary and turns on subjective factors that embody principles of comity.'"  *In re Metcalfe &*

1   *Mansfield Alternative Investments*, 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010) (internal citations

2   omitted).  "Once a case is recognized as a foreign main proceeding, chapter 15 specifically contemplates

3   that the court will exercise its discretion consistent with principles of comity." *Id*. (internal citations

4   omitted).

5           The case law makes clear that comity (and, therefore, direct access) is not a foregone conclusion.

6   Indeed, the Court has the discretion to deny the request.  Here, the subjective factors presented by the

7   Trustee for post-recognition relief favor against granting his request.  Kobayashi argues that this case "is

8   precisely the type of action to which the Trustee may seek comity and apply for 'direct access'" because

9   the government's forfeiture of the Defendant Property bears directly in his duties as Trustee.  Dkt. No.

10  67 at 9.  According to Kobayashi, these duties include (1) identifying the entity/individual from which

11  the Bitcoin was stolen, (2) when the Bitcoin was stolen, (3) whether the Defendant Property was

12  originally stolen from Mt. Gox, and (4) what entities have an interest in the Defendant Property.

13          The Trustee already has answers to each of these questions.  The government's Complaint

14  specifies the entity (Silk Road) and individual (Ross Ulbricht) from which the Bitcoin was stolen.  *See*

15  Dkt. No. 8 ¶¶ 15, 22; Dkt. No 47.  Both the Complaint and the Declaration of IRS-CI Special Agent

16  Jeremiah Haynie specify when the Defendant Property was stolen (May 6, 2012).  *See* Dkt. No. 8 ¶ 15;

17  Dkt. No. 69, Ex. A.  The Trustee knows that the Defendant Property was not originally stolen from

18  MtGox because his own investigation, with the assistance of Michael Gronager and Chainalysis,

19  revealed that the stolen Mt. Gox Bitcoin went to three different locations (BTC-e, Tradehill, and MtGox)

20  and not Silk Road.  *See* Ex. A (Gronager Decl.) ¶¶ 4-8.  Finally, a review of the publicly filed docket

21  shows which individuals/entities have asserted an interest in the Defendant Property.  Both Individual X

22  and Ross Ulbricht have consented to forfeiture.  Dkt No. 8 ¶ 24; Dkt. No. 47.  The government asserts

23  that the Defendant Property represents proceeds traceable to computer hacking, conspiracy, and

24  narcotics trafficking and was involved in money laundering.  Accordingly, the only entity with a

25  legitimate interest in the Defendant Property is the government.  The Trustee does not need direct access

26  to get the answers to his questions—he already has them.  Access to this matter in order to exploit the

27

28

1   discovery process in the hopes of gaining information related to other matters pending in this district,[3]

2   however, is improper and should not be allowed.

3   **B.      The Trustee Does Not Meet the Requirements of Intervention of Right Under Federal Rule of Civil Procedure 24(a)(2)**

4

5   In the alternative and in addition to "the Foreign Representative's rights" under Section 1509,

6   Kobayashi argues for intervention as of right under Fed. R. Civ. P. 24(a)(2). Kobayashi should not be

7   permitted to intervene pursuant to Rule 24 because he does not meet the elements required under the

8   rule. An applicant for intervention under Rule 24(a)(2) must establish four elements: (1) that the

9   prospective intervenor's motion is "timely"; (2) that the would-be intervenor has "a 'significantly

10  protectable' interest relating to . . . the subject of the action," (3) that the intervenor is "so situated that

11  the disposition of the action may as a practical matter impair or impede [the intervenor's] ability to

12  protect that interest"; and (4) that such interest is "inadequately represented by the parties to the action."

13  *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011).

14  **1.      The Foreign Representative's Motion is Time Barred**

15  Timeliness is determined by the totality of the circumstances facing would-be intervenors, with a

16  focus on three primary factors: "(1) the stage of the proceeding at which an applicant seeks to intervene;

17  (2) the prejudice to other parties; and (3) the reason for and length of the delay." *United States v. Alisal*

18  *Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004). "The crucial date for assessing the timeliness of a

19  motion to intervene is when proposed intervenors should have been aware that their interests would not

20  be adequately protected by the existing parties." *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).

21  / / /

22  / / /

23

24

---

25  [3] The Trustee argues that "as early as October 3, 2019," his counsel contacted Government prosecutors in charge of two pending matters concerning property of the MtGox Estate, namely, pending

26  civil and criminal proceedings that the Government had brought against Alexander Vinnik and BTC-e, both pending in this District, in an effort to gain further information about the extent to which the

27  Government had seized property from Vinnik and/or BTC-e, in which the Foreign Representative would have a property interest on behalf of creditors of the MtGox Estate." Dkt. No. 67 at 6.

28  U.S. OPPOSITION TO NOBUAKI KOBAYASHI MOTION FOR DIRECT ACCESS AND INTERVENTION
CV 20-7811 RS                                    9

1

### a.     Stage of the Proceedings

2       Kobayashi argues that his motion is timely because "the proceedings are still in their early

3  stages, there has been no discovery or dispositive motion practice," and several claimants have answered

4  the Complaint.  Dkt. No. 67 at 10.   Laying blame on the government for not providing adequate notice,

5  Kobayashi argues that he has "put the Government on notice—multiple times—with respect to its

6  interests in property that may relate to the MtGox Estate."  Dkt. No. 67 at 10.   Kobayashi argues that he

7  "acted promptly as soon as it became aware that the [Defendant Property] may have once been stolen

8  from the MtGox exchange."  *Id*.  Kobayashi's arguments lack merit on multiple fronts.

9

### i.     Construed as a Claim, Kobayashi's Filing is Untimely Under the Supplemental Rules

10

11       First, although it is styled as a motion for intervention, Kobayashi's filing appears to be a claim

12  in disguise. [4]  As such, it has been filed long after the passage of the deadline for prospective claimants

13  to file their claims.  The Court should therefore strike his motion for failure to adhere to Supplemental

14  Federal Rule of Civil Procedure G(5).  *See* Sup. Fed. R. Civ. P. G(8)(c)(i)(A).

15       Supplemental Federal Rules of Civil Procedure C, E, and G control the procedural aspects of all

16  forfeiture actions filed in federal courts, except that to the extent any aspect of a case is not described in

17  those rules, the other Federal Rules of Civil Procedure apply.  Sup. Fed. R. Civ. P. G(1).  Rule G

18  provides for all notice requirements, as well as all requirements for prospective claimants.  Pursuant to

19  Rule G(4), the government is required to provide two forms of notice: notice by publication and direct

20  notice.  Notice by publication requires the government to ensure that there is a publicly available source

21  announcing the government's intent to forfeit a property.  One of the methods available to the

22  government to fulfill its notice by publication requirements is the publishing of a notice of intent to

23  forfeit for at least thirty consecutive days.  Sup. Fed. R. Civ. P. G(4)(a)(iv)(C).  In this case, the

24  government began posting notice to an official government website, www.forfeiture.gov, beginning on

25

26       [4] Rule G of the Supplemental Federal Rules of Civil Procedure specifically provides that the appropriate responsive pleadings to a complaint for forfeiture *in rem* include a claim and an answer. *See*

27  Sup. Fed. R. Civ. P. G(5)(a), (b).  Indeed, Kobayashi filed an answer as an Exhibit to his "motion for intervention." Dkt. No. 67-1.

November 27, 2020.  Dkt. No. 25.  The notice was published for thirty consecutive days, ending on or about December 27, 2020.  Once Notice by Publication begins, claimants maintain "60 days after the first day of publication" to file a claim, which in this case ended on Tuesday, January 26, 2021.

The other method for notice is direct notice to known potential claimants.  For the reasons stated above, the only individual to whom the government was required to send direct notice was Ross Ulbricht, which it accomplished on November 25, 2020.  Dkt. No. 12; *see also* Sup. Fed. R. Civ. P. G(4)(b)(i).  Indeed, as MtGox was not implicated in this case in any respect, the government had no responsibility to notify them directly.

Kobayashi is accordingly almost three months late in filing his motion.  Notwithstanding his entreaties to the contrary, he was not due any direct notice.  Moreover, he failed to respond to the notice of publication, which was publicly available for viewing on www.forfeiture.gov for thirty days.  As Kobayashi has failed to articulate any legal basis to excuse his failure to timely file a claim, the Court should deny his motion.

        **ii.**      **There Was No Change of Circumstances that Would Justify the Timing of Kobayashi's Motion Filing**

The Ninth Circuit has stated that in analyzing the "stage of the proceedings" factor, the "[m]ere lapse of time alone is not determinative."  *United States v. State of Oregon*, 745 F.2d 550, 552 (9th Cir. 1984).  Where a change of circumstances occurs, and that change is the "major reason" for the motion to intervene, the stage of proceedings factor should be analyzed by reference to the change in circumstances, and not the commencement of the litigation.  *See id.*

Here, there are no changed circumstances that would warrant a timeliness determination in favor of Kobayashi.  Indeed, the only thing Kobayashi presents in support of his motion is a sudden awareness of a connection between the Defendant Property and the stolen MtGox funds.  *See, e.g.*, Dkt. No. 67 at 10 ("the Foreign Representative has acted promptly as soon as it became aware that the bitcoin subject to the Government's warrant may have once been stolen from the MtGox exchange.")  Kobayashi provides no basis for this sudden awareness, however; thus, the government can only surmise that the source of this potential connection is Claimant Roman Hossain (who has made unsubstantiated

allegations that Bitcoin stolen from his MtGox account ended up in Silk Road wallets and subsequently

in the government's possession).  *See* Dkt. No. 42.  On April 30, 2021, the government filed a Motion to

Strike Hossain's claim (Dkt. No. 69), which will be heard on June 10, 2021 at 1:30 p.m.

contemporaneous with the instant motion.  Assuming that is the basis for Kobayashi's conjecture,

Hossain's claim can hardly qualify as a change of circumstances that would trigger the filing of

Kobayashi's motion to intervene.

### b.    Prejudice to Other Parties

The Ninth Circuit has found prejudice where allowing intervention would cause delay,

complicate issues, or expand the scope of the litigation.  *See Smith v. Marsh*, 194 F.3d 1045, 1051 (9th

Cir. 1999) (finding prejudice where allowing intervention would cause undue delay); *League of United

Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1304 (9th Cir. 1997); *United States v. Washington*, 86 F.3d

1499, 1504 (9th Cir. 1996) (finding prejudice where intervention would complicate the issues and

prolong the litigation); *United States v. Alisal Water Corp.*, 370 F.3d 915, 923 (9th Cir. 2004) (same).

Here, allowing Kobayashi to intervene after the deadline to file a claim has expired will cause undue

delay.  This is particularly true where, as discussed below, Kobayshi has no identifiable interest in the

Defendant Property.  Further, Kobayashi admits that he intends to seek discovery from the government

regarding the prior ownership of the Defendant Property.  Such a fishing expedition will complicate

issues and expand the scope of the litigation, causing prejudice to the parties to this action.

### c.    The Reason for and Length of the Delay

Kobayashi repeatedly blames the government for its delay, arguing that he put the government

on notice multiple times with respect to interests in property that could relate to the estate.[5]  The

government has a process for collecting information from victims of crimes.  The Trustee does not need

to put the government "on notice" with respect to MtGox property interests.  In any event, the Trustee

has no interest in the Defendant Property and, to the extent he believes he does, he has failed to

---

[5] The government received the Trustee's subpoena in the matter against Alexander Vinnik and BTC-e (again, separate and unrelated matters to this one) and responded ahead of the May 14, 2021 deadline on April 26, 2021.

articulate a valid reason for the delay.  Conjecture does not suffice.

### 2. The MtGox Estate Has No Actual or Identifiable Property Interests in the Defendant Property

The Trustee states that "[w]hile the proceedings against Vinnik and BTC-e may be unrelated to the current case before this Court, the Foreign Representative now has reason to believe that the property at issue in these proceedings is that which the MtGox Estate has actual and identifiable property interests." Dkt. No. 67 at 7.  The proceedings against Vinnik and BTC-e are in fact unrelated to the instant case, so the Trustee has no interest in this matter.  Moreover, his "reason to believe" that the MtGox Estate has an interest in the Defendant Property remains unstated.  It is remarkable that the Trustee blames the government for lacking the information required to bring an actionable motion when it knows that the stolen MtGox funds did not go to Silk Road but rather went to BTC-e, Tradehill, and other MtGox wallets.

The Trustee should not be permitted to participate in these proceedings because he does not have an interest in the Defendant Property and has a report that demonstrates it.  In his motion, the Trustee admits that he intends to seek further information from the government regarding the prior ownership of the Defendant Property.  He should not be allowed to intervene in this case to conduct a fishing expedition in the hopes of finding information on an unrelated matter.

### 3. Denial of the Foreign Representative's Motion Will Not Impair His Ability to Protect the MtGox Estate's Interests

The Trustee argues that he "is tasked with the identification, collection, and distribution of any and all assets of the MtGox Estate, and accordingly, has an interest in participating in these proceedings" because any Bitcoin "stolen from MtGox must be (i) identified, and (ii) returned to the MtGox Estate." Dkt. No. 67 at 11.  The stolen Bitcoin has already been identified.  *See* Exhibit A.  It went to BTC-e, Tradehill, and MtGox itself.  *Id.*  It did not go to Silk Road.  The theft of Silk Road Bitcoin from 1HQ3 and the theft of Bitcoin from MtGox are two separate thefts involving separate assets.  There is therefore nothing about dismissing the instant motion that would impair or impede his ability to protect the MtGox Estate's interests in any way.

1

> **4.     The Foreign Representative Has No Interest to be Represented in the Instant Action**

2

3          The Trustee argues that there are no parties currently in this case that adequately protect the

4     interests of the Foreign Representative or of the MtGox Estate, including the Gox Victim Bitcoin

5     Trust.  Dkt. No. 67 at 11.  This is because they have no interest in the Defendant Property so his

6     motion should be denied.

7     **C.     The Trustee is not Entitled to Permissive Intervention Under Federal Rule of Civil Procedure 24(b)(1)(B)**

8

9          In the alternative, Kobayashi argues that he qualifies for permissive intervention under Fed. R.

10    Civ. P. 24(b).  Kobayashi does not even attempt to make an argument for intervention under this rule.

11    His request for permissive intervention should be denied for the reasons set forth above.

12    **VI.     CONCLUSION**

13          For the reasons set forth above, the Court should deny Kobayashi's motion for direct access and

14    intervention.

15    DATED:  May 7, 2021                                    Respectfully submitted,

16

17                                                          STEPHANIE M. HINDS
                                                            Acting United States Attorney

18

19                                                          *Claudia Quiroz*
                                                            DAVID COUNTRYMAN

20                                                          CHRIS KALTSAS
                                                            CLAUDIA QUIROZ

21                                                          WILLIAM FRENTZEN
                                                            Assistant United States Attorneys

22

23

24

25

26

27

28