BROWN RUDNICK LLP
David J. Molton, #262075
dmolton@brownrudnick.com
Seven Times Square
New York, NY 10036
Telephone:  (212) 209-4800
Facsimile:  (212) 209-4801

BROWN RUDNICK LLP
Stephen R. Cook, #204446
scook@brownrudnick.com
2211 Michelson Drive, 7th Floor
Irvine, CA 92612
Telephone:  (949) 752-7100
Facsimile:  (949) 252-1514

Attorneys for Nobuaki Kobayashi, in his capacity as the Civil Rehabilitation Trustee and Foreign Representative of MtGox Co., Ltd., a/k/a MtGox KK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| United States of America,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>Approximately 69,370 Bitcoin (BTC), Bitcoin Gold (BTG) Bitcoin SV (BSV) and Bitcoin Cash (BCH),<br><br>　　　　　　Defendants. | Civil Action No.3:20-cv-07811-RS<br><br>[Honorable Richard Seeborg]<br><br>**REPLY BRIEF IN SUPPORT OF MOTION FOR DIRECT ACCESS AND INTERVENTION**<br><br>DATE:　　June 10, 2021<br>TIME:　　1:30 p.m.<br>CTRM　　3 |

1
REPLY BRIEF IN SUPPORT OF MOTION FOR DIRECT ACCESS AND INTERVENTION
3:20-cv-07811-RS United States of America v. Approximately 69,370 Bitcoin (BTC), Bitcoin Gold (BTG) Bitcoin SV (BSV) and Bitcoin Cash (BCH)

# THE MTGOX TRUSTEE AND FOREIGN REPRESENTATIVE'S REPLY IN SUPPORT OF MOTION FOR DIRECT ACCESS AND INTERVENTION

1. PRELIMINARY STATEMENT

The Government's opposition misses the key point and assumes without explanation that this case is open and shut—and cites a report that was commissioned for an entirely different purpose. But this case is not open and shut, and for the reasons set forth below, the Civil Rehabilitation Trustee and Foreign Representative of MtGox Co., Ltd , (the "Foreign Representative" or "Trustee") should be granted direct access and intervention.

In fact, the Gronager Report and the Government's reliance on it is noteworthy not for the conclusions it reaches, but rather, for the conclusions *it does not reach*. At the time when the Trustee and his team sought Mr. Gronager's support, their primary concern was a possible discrepancy between the MtGox database and the blockchain and how the leakage of bitcoin from MtGox happened, and to which location the leaked bitcoins were transferred. The Gronager Report, assuming that it is accurate, identified that a vast majority of hacked and/or stolen bitcoin was transferred from MtGox to exchanges like BTC-e. However, the Gronager Report (dated July 9, 2015) does not speak to, and indeed is silent on whether any such transferred bitcoin—after it was leaked, stolen, or hacked from MtGox—was subsequently transferred to Silk Road or ultimately ended up at Silk Road through a series of not yet known, intervening transfers. And of course, it did not examine the critical question: whether any of the bitcoin subject to these forfeiture proceedings from Silk Road was initially stolen from MtGox. That question remains live and entirely open. Further, the Gronager Report is not perfect and comprehensive, as is the nature of an investigation made by a private person carried out with certain limited information. Accordingly, the reason the Foreign Representative should be permitted to intervene is so that he may be assured that the Government's investigation, once disclosed to the Foreign Representative, has convincingly and conclusively determined that the seized bitcoin was not initially stolen from MtGox.

For reasons that are not abundantly clear, the Government also asserts that the Foreign

Representative is attempting to "interject himself in a judicial proceeding" and purportedly warns the Court not to permit an "abuse of judicial process," after speculating that the Foreign Representative is "frustrated by his inability to obtain" information related to assets that may bear on the MtGox Estate, *see* Dkt No. 72 at 1.   The Government protests too much.   For the last seven years, the Foreign Representative has been tasked with managing the MtGox Estate, which includes, among other things, a technically savvy, cross-border, and a highly sophisticated creditor base—not to mention the inherently complex nature of the cryptocurrency ecosystem.   The Trustee's duties to his Japanese Court, as well facilitated by Chapter 15 of the United States Bankruptcy Code, demands that the Trustee investigate and seek recovery of MtGox assets in the United States, and the United States Bankruptcy Court, through its orders, has entrusted the Foreign Representative with ensuring that MtGox assets located in the United States be located, collected, returned to the location of the plenary insolvency proceeding in Japan and distributed to creditors.   The Foreign Representative seeks to participate in these proceedings for one purpose, and one purpose alone: to determine the extent to which the seized bitcoin originated from hacks and thefts from the MtGox exchange, and if so, as its duly recognized representative, to protect the MtGox Estate's interests in the property that is subject to the seizure.

Accordingly, for the reasons further set forth above and below, the Foreign Representative should be granted direct access pursuant to Section 1509(b) of Chapter 15 of the United States Bankruptcy Code and Rule 24 of the Federal Rules of Civil Procedure to participate in this proceeding which may bear on assets or interests in property of the MtGox Estate.

2. ARGUMENT

    A.   <u>The Government's *Ipse Dixit* Argument Misses the Point.</u>

The Government argues that the seized bitcoin was not stolen from MtGox and therefore the Foreign Representative has no reason to participate under Chapter 15 of Title 11 of the U.S. Bankruptcy Code, or otherwise.   However, in its opposition, the Government points only to the Gronager Report as evidence of their assertion.   The Gronager Report, an out-of-court private report, analyzed a different question and was prepared for a different purpose; it simply does not

answer the question of whether any seized bitcoin at issue in this case before this Court was initially stolen from MtGox. As described in the accompanying Declaration of Deputy Trustee Yutaka Kuroda, attached hereto as Exhibit A, the Gronager Report does not clearly state that the final destination of the leaked bitcoin was a certain wallet controlled by BTC-e, Tradehill or MtGox user account, but rather, it indicates that a certain amount of bitcoin was leaked to such wallets in the third big theft from MtGox which occurred between October 1, 2011 and May 21, 2014. Whether there were any subsequent transfers of stolen bitcoin, including to wallets or exchanges that were ultimately involved in the seizure from Silk Road, is not yet clear. Furthermore, given the nature of the Gronager Report as a private report prepared with certain limited information, and the fact that the investigation was carried out without having access to the records of BTC-e or Tradehill, the Gronager Report cannot be determinative and comprehensive in the context of any subsequent transfer of bitcoin after the leakage from MtGox to BTC-e and/or Tradehill. *See id.* The Government's premise, therefore, is based on no evidence and boils down to the bare assertion that the Foreign Representative has no interest in the seized bitcoin because the Government states that the Foreign Representative has no interest in the seized bitcoin. The Foreign Representative cannot rely on the Government's beliefs without any evidence, and must protect the MtGox Estate and its creditors by testing the Government's assertions in this proceeding.

    (1) <u>Chapter 15 Direct Access</u>

As the Government recognizes, Section 1509(b) provides that United States courts "shall grant comity or cooperation to the foreign representative" subject to "any limitations that the court may impose consistent with the policy of [Chapter 15]." *Id.*, § (b)(3). The United States Bankruptcy Court for the Northern District of Texas (which granted foreign main proceeding recognition to the MtGox insolvency proceeding in Japan) explicitly provided the Foreign Representative with the "full protections and rights enumerated under Sections 1521(a)(4) and 1521(a)(5), which include "providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or

liabilities," *see* § 1521(a)(4), and "entrusting the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States to the foreign representative or another person, including an examiner, authorized by the court," *see* § 1521(a)(5).   Further, it ordered that the Foreign Representative be authorized to "take all actions necessary to effectuate the relief granted pursuant to this Order."[1]  Aside from the Recognition Order's contours, the core purpose of Chapter 15 was to ensure cooperation and comity between foreign courts and United States courts, and indeed, "expedited and direct access for foreign representatives."   *See* Motion for Direct Access, Dkt No. 67 at 6-7 (citing UNCITRAL Model Law on Cross Border Insolvency with Guide to Enactment and Interpretation, (2014), Art. 108).

As explained in the Preliminary Statement, the Foreign Representative seeks direct access into the proceedings before this Court to determine to what extent the bitcoin seized by the Government from Silk Road originated from the initial hack of MtGox, or was subsequently transferred to MtGox through not yet known, intervening transfers.   This question remains open, and the Gronager Report does not answer it, despite the Government's conclusory assertions. *See* Declaration of Yutaka Kuroda (explaining purpose, findings, and limitations of the Gronager Report).   Specifically, the Gronager Report does not conclude the final destination of the leakage, but rather it states the leakage of bitcoin to certain accounts during the period between October 1, 2011 and May 21, 2014.   It explained no conclusions related to any post-leakage transfers.   For example, the Gronager Report makes no finding with respect to funds first stolen from MtGox, then transferred to the locations Gronager lists (BTC-e and Tradehill), *and then* an ultimate destination, which may have included Silk Road.   Furthermore, while the Government specifies that the 54 transactions of bitcoin from the wallets controlled by Silk Road to 1BAD took place on May 6, 2012, the Government admits that the series of hacks to MtGox occurred between 2011 and February 2014.   This leaves a reasonable ground to suspect that some part, if not all, of the

---

[1] *See In re: MtGox Co., Ltd. (a/k/a MtGox KK)*, U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division, Case No. 14-31229-sgj15, [Dkt. No. 151], as modified on December 11, 2018 [Dkt No. 194] (citing 11U.S.C. §§ 1515, 1517(b)(1), 1520, 1521(a)(4), and 1521(a)(5)).

leaked bitcoin was subsequently transferred to wallets controlled by Silk Road before May 6, 2012.  Again, no sufficient evidence exists to show that there had not been a subsequent transfer from BTC-e or other exchanges to the wallets controlled by Silk Road before May 6, 2012 in light of the imperfect nature of the Gronager Report.   For the primary reason stated above, and because the Government does not address this possibility, misunderstands the Gronager Report, and misconstrues the Foreign Representative's efforts as a "fishing expedition," this Court should provide the Foreign Representative with direct access into these proceedings to (i) facilitate the Foreign Representative's execution of fiduciary duties, and (ii) provide comity and cooperation to the Japanese Court presiding over the Japanese MtGox civil rehabilitation proceedings.

(2) <u>Rule 24 Intervention</u>

In the alternative, this Court should grant the Foreign Representative's motion for intervention for the same reasons articulated above.   Namely, if the bitcoin subject to the Government's forfeiture proceedings is found to have originated from the MtGox hacks, then the Foreign Representative has a supervening right, based in statute, to collect assets, property and interests in property of MtGox within the United States for distribution to creditors in the foreign main proceeding pending in Japan.   No other party in these proceedings possesses the interests in property that the MtGox Estate would possess should it be determined that any of the seized bitcoin originated in thefts or hacks from the MtGox exchange.   Finally, to the extent the Government relies on Rule G of the Supplemental Federal Rules of Civil Procedure in an attempt to pigeon-hole the Foreign Representative into a set of deadlines, those deadlines that need not apply: Rule 24 simply requires that a motion for intervention—as opposed to a "claim"—be "timely."   And here, the Foreign Representative filed this motion five months after the Government's initial complaint.   The parties are still in the early stages of claim analysis and initial motion practice.   No discovery has taken place, nor has the Court set any scheduling order or case management plan.   The Foreign Representative should be permitted to intervene on this basis.

B.     Conclusion

For the reasons set forth herein, it is respectfully requested that this Court should grant the Foreign Representative's motion for direct access, and in the alternative, its motion to intervene in these proceedings.

DATED: May 14, 2021                    Respectfully submitted,

                                                  BROWN RUDNICK LLP

By:   *s/David J. Molton*
      David J. Molton
      Seven Times Square
      New York, New York 10036
      Telephone (212) 209-4800
      Fascimile (212) 209-4801

      and

      Stephen R. Cook
      2211 Michelson Drive
      Irvine, California 92612
      Telephone (949) 752-7100
      Fascimile (949) 252-1514

      *Counsel for Nobuaki Kobayashi, in his capacity as the Civil Rehabilitation Trustee and Foreign Representative of MtGox Co., Ltd., a/k/a MtGox KK*