STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

DAVID COUNTRYMAN (CABN 226995)
CHRIS KALTSAS (NYBN 5460902)
CLAUDIA QUIROZ (CABN 254419)
WILLIAM FRENTZEN (LABN 24421)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7428
    FAX: (415) 436-7234
    claudia.quiroz@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> Approximately 69,370 Bitcoin (BTC), Bitcoin Gold (BTG), Bitcoin SV (BSV), and Bitcoin Cash (BCH) seized from 1HQ3Go3ggs8pFnXuHVHRytPCq5fGG8Hbhx <br><br> Defendant. | **CASE NO.** CV 20-7811 RS <br><br> **REPLY IN SUPPORT OF MOTION TO STRIKE CLAIMANT ROMAN HOSSAIN'S CLAIM FOR LACK OF STANDING AND FAILING TO COMPLY WITH SUPPLEMENTAL RULE G(5)** <br><br> DATE: June 10, 2021 <br> TIME: 1:30 p.m. <br> COURTROOM: #3, 17th Floor |

REPLY IN SUPPORT OF U.S. MOTION TO STRIKE ROMAN HOSSAIN'S CLAIM
CV 20-7811 RS                                                          1

## I. INTRODUCTION

In his opposition, Hossain repeats the same bald-face assertions of ownership and dances around a variety of tangential issues to avoid focusing on the meat of the matter—Article III standing. This action is not about Bitcoin stolen out of MtGox—it is about Bitcoin stolen out of Silk Road. Hossain could have standing in this case if the Defendant Property originated from MtGox. But it did not. Hossain attempts to conflate MtGox and Silk Road and trace an imaginary line between them that simply does not exist. Indeed, Hossain does not dispute that his MtGox account is the same account the government identified, which has no connection to the Defendant Property. He does not even address the impossibility of his claim—that his 245.92 BTC remained in his MtGox account for nine months after the Defendant Property left Bitcoin addresses controlled by Silk Road and into 1HQ3. Hossain may have a colorable interest in the Bitcoins stolen out of his MtGox account, wherever they may be, but he does not have a colorable interest in the Defendant Property in this action. The rules were designed to curtail deficient claims just like this one. His claim must be stricken forthwith.

## II. ARGUMENT

### A. Hossain's Opposition is a Reiteration of his Conclusory Assertions of Ownership

Hossain's chastisement of the government's purportedly failed meet and confer efforts is nothing more than an extension of his accusatory April 4, 2021 letter in which he reiterates his repetitive and conclusory assertions of ownership. The government acquiesced to each of Hossain's requests for additional time to submit his answer to the complaint and responses to the government's Special Interrogatories. The government's March 26, 2021 email explained the reason for the government's questions around his MtGox account and provided him with a further opportunity to supplement his responses to the Special Interrogatories. In return, Hossain doubled down on his refusal to provide his MtGox account information rather than provide a substantive response that would invite discussions about the merits of his claim. It is telling that Hossain is so adamant in his refusal to provide that information. If Hossain's stolen Bitcoin was in fact sent from his MtGox account to Silk Road the blockchain would show that and presumably Hossain would want to provide his account information to demonstrate his standing in this case.

Four months after Hossain submitted his claim, however, the government is no closer to divining

the basis of his claim than it was in the beginning.  Now, confronted with facts that conclusively foreclose the validity of his claim—and, in fact, highlight its impossibility—Hossain now argues that he has something that shows why the government's position is based on inaccurate records.  *See* Dkt. No. 81 at 6.  This statement is nothing more than an empty attempt to keep his claim alive.  Hossain could have already provided the government with specific facts to legitimately undermine the government's position or presented them in his opposition to the instant motion.  But he has not, because they do not exist.  Instead, he has repeated the statements in his deficient claim over and over, providing no substantive information at the heart of the matter in this case.  He hopes that an opportunity at discovery will give him insight into MtGox records, which have no relation to the instant case.

> **B.  The Defendant Property is Subject to Forfeiture Because it Represents Proceeds of Criminal Activity and Has No Connection to MtGox Funds**

No portion of the Defendant Property belongs to innocent victims—it consists of proceeds of criminal activity.  Hossain argues that the government "assumes" the Defendant Property is forfeitable "because it was transferred from Silk Road regardless of whether it was stolen from innocent owners before it was transferred into Silk Road."  Dkt. No. 81 at 6.  This argument misses an important distinction—whereas MtGox was an exchange where people like Hossain could keep their Bitcoin (just like a bank holds its customers' fiat currency), Silk Road was an online criminal marketplace operating in the dark web.  Unlike Silk Road, MtGox was ostensibly performing a legal activity that Bitcoin was designed to perform—facilitating the transaction of funds securely over the Internet.  Silk Road was a completely different business.  While in operation, Silk Road generated massive revenues in Bitcoin from illegal activity—it was used by thousands of drug dealers and other unlawful vendors to distribute hundreds of kilograms of illegal drugs and other unlawful goods and services to well over 100,000 buyers, and to launder hundreds of millions of dollars derived from these unlawful transactions.  Dkt. No. 8 ¶ 7.

Hossain also argues that the government's complaint "is vague about the source of the subject BTC and the owners from whom it was originally stolen."  Dkt. No. 81 at 6.  It is quite the opposite, in fact.  As the creator and operator of Silk Road, Ross Ulbricht held his illicit gains in Bitcoin addresses that he controlled.  In May 2012, Individual X stole 70,411.46 BTC from Bitcoin addresses *controlled*

by Silk Road. Indeed, according to the government's investigation, Ulbricht became aware of Individual X's online identity and threatened Individual X for return of the cryptocurrency to Ulbricht. Dkt. No. 8 at 6. In October 2013, the FBI shut down Silk Road and arrested Ross Ulbricht.

It is telling that Hossain does not even attempt to address the impossibility of his claim in his opposition. Because the 245.92 BTC was transferred out of Hossain's Mt. Gox account approximately nine months after the Bitcoin in question was moved out of Silk Road Bitcoin wallets, it is impossible for Hossain's 245.92 BTC to have been among the Bitcoin Individual X stole from Silk Road in May 2012. Dkt. No. 69 at 22. Hossain does not dispute that the MtGox account located by the government belongs to him. As noted in the government's opposition to Claimant Nobuaki Kobayashi's Motion to Intervene, none of the Bitcoin stolen from MtGox went to Silk Road – it went to BTC-e, Tradehill, and other MtGox wallets. Dkt. No. 72 at 9.

    **C.**    **Hossain Has Not Pleaded a Colorable Interest in the Property at Issue in *This* Case**

Hossain has not pleaded a colorable interest in the Defendant Property; he has expressed a bald assertion of ownership over it. He seemingly has, however, pleaded a colorable interest in the Bitcoin that he alleges was stolen out of his MtGox account. While that might give him standing in a claim against MtGox, that does not give him standing in *this* case. *See United States v. $299,912 in Account Funds*, 685 F. App'x. 517 (9th Cir. 2017) (claimants who lack a colorable interest in property lack standing to participate in forfeiture proceedings); *United States v. 1998 BMW "I" Convertible*, 235 F.3d 397, 399 (8th Cir. 2000) ("at the outset, a claimant must be able to show a facially colorable interest in the proceedings sufficient to satisfy Article III standing"); *United States v. $97,040 in U.S. Currency*, No. 8:15CV362, 2017 WL 3142027 (D. Neb. July 24, 2017) (claimants offering sufficient detail on ownership of respective portions of currency to establish "colorable interest" in the funds established Article III standing; claimants' filing of a claim stating interest in the property, supported by evidence and argument, met Rule G(5) statutory standing requirements); *United States v. $19,952 in U.S. Currency*, No. 17cv0427, 2017 WL 3085841 (W.D. Pa. July 20, 2017) (claimant who makes only general, bald assertions of ownership fails to demonstrate a colorable interest in seized currency and lacks both statutory and Article III standing).

Hossain's bald face assertion of ownership in Bitcoin stolen from Silk Road is no different and

puts him no closer to the Defendant Property than any other person's assertion of ownership in Bitcoin stolen at any other time from any other location. Under Hossain's theory, anyone in the world could make a claim to the Defendant Property. This is the reason why Article III standing is required. Allowing Hossain's claim to proceed and permitting discovery would be a waste of time and resources. It would also invite anyone who has suffered a loss of Bitcoin by theft to make a claim in this case. This case is a prime example of the need for critical gatekeeping functions in forfeiture proceedings. The Supplemental Rules provide a mechanism to strike claims at this stage of forfeiture proceedings for situations precisely like this one.

Hossain argues that the government's motion centers on MtGox records that "are publicly known to be unreliable." This is incorrect and misunderstands how the blockchain works. First, the MtGox records are not unreliable and there is nothing in Hossain's submissions to support it. He cannot even provide support for the purported "public knowledge" around that claim. Second, the government's motion is not focused on MtGox records—it is focused on the trajectory of the Bitcoin stolen from the account the government has identified as belonging to him (which he does not dispute), available to the public in the blockchain. It is also focused on the impossibility of his claim given the timing of the theft of his Bitcoin vis-à-vis the theft of Silk Road funds into the wallet from which the Defendant Property was derived.

Hossain also argues that he has pleaded sufficient facts at this stage because he has (1) asserted ownership of 245.92 BTC[1]; (2) provided a generalized background about how he acquired those Bitcoins; (3) talked about how those Bitcoins were stolen in a hack from MtGox; and (4) claimed that his Bitcoins were stolen before the government filed its forfeiture action. *See* Dkt. No. 81 at 8. None of this amounts to a colorable claim. It is not the quantity of the detail that matters but rather the quality. Hossain could have laid out his entire life story in his claim, but that would still not amount to showing actual possession, control, title, or financial stake in the Defendant Property. *See United States v. 5208 Los Franciscos Way*, 385 F.3d 1187, 1191 (9th Cir. 2004) ("claimant's burden under Article III is not a heavy one; the claimant need demonstrate only a colorable interest in the property, for example, by

---

[1] To put this in perspective, there are currently approximately 18,715,250 BTC in circulation. *See* https://www.buybitcoinworldwide.com/how-many-bitcoins-are-there/ (last visited May 21, 2021).

showing actual possession, control, title, or financial stake"). The government laments that Hossain was a victim of the MtGox hack. However, he has provided no connection whatsoever between his Bitcoin and the Bitcoin stolen from addresses controlled by Silk Road. Because has not asserted a colorable interest in the Defendant Property, his claim necessarily fails at this stage.

Hossain further suggests that his claim cannot be stricken at this juncture because he has not been given an opportunity to cure the defect in his responses. *See* Dkt. No. 81 at 9. Given the facts and Hossain's representations and submissions in this case thus far, Hossain cannot cure the defects in his claim and allowing him to do so would be futile and a waste of resources.

If Hossain's claim is not dismissed on the pleadings, the government's alternative is to serve him with additional Special Interrogatories focusing on his standing to contest the forfeiture—which he will not answer—and then move for summary judgment under Rule G(8) on the basis that Hossain cannot establish his Article III standing to contest the forfeiture by a preponderance of the evidence. If the motion for summary judgment is not granted, because there are material facts at issue, the court must conduct an evidentiary hearing on the standing issue on which Hossain bears the burden of proof. Rule G(8)(c)(ii)(B). In light of Hossain's continued failure to produce any evidence of standing to date, allowing Hossain to engage in discovery would be a massive waste of judicial resources.

### D.     The Danger of False Claims is Heightened in this Case

Hossain mistakes the government's reference to his prior convictions and supervised release violations as an attempt to malign his character. The government intends no such thing. There is a reason for the strict requirement that a claimant file a verified claim and that it identifies the nature of claimant's interest in, or connection to, the property—to minimize the danger of false claims. *See, e.g., United States v. $100,348 in U.S. Currency*, 354 F.3d 1110, 1118–1119 (9th Cir. 2004) (because "the danger of false claims in these proceedings is substantial," courts require more than "conclusory or hearsay allegations of some interest in the forfeited property"); *United States v. $574,840*, 719 F.3d 648, 652–653 (7th Cir. 2013) (court noted the danger of false claims in civil forfeiture proceedings and government's right to use special interrogatories to gather evidence needed to challenge standing under Rule G(8)(c)); *United States v. $487,825*, 484 F.3d 662, 664–665 (3d Cir. 2007) (requirement that a claimant file a timely verified claim serves two purposes: it forces claimants to come forward as quickly

as possible, and it minimizes the danger of false claims); *United States v. Approx. $189,040 in U.S. Currency*, No. 2:13–cv–0643–JAM–KJN, 2013 WL 4714177, *3 (E.D. Cal. Aug. 9, 2013) (because the danger of false claims in civil forfeiture proceedings is substantial, Rule G(5)(a) requires a statement identifying the nature of claimant's interest in, or connection to, the property; a statement that the person filing the claim is "a lawful claimant" is insufficient because it does not identify his interest in the property).

The Defendant Property is unique because 1HQ3 was—for years—one of the most sought-after Bitcoin addresses due to its sheer value. The seizure of the 69,370 BTC represents the largest seizure of cryptocurrency by the Department of Justice in history. Even with the sharp decrease in the value of Bitcoin in the past week, the Defendant Property is still worth approximately USD $2.6 Billion. This is manna for anyone intending to manufacture a claim, which is why strict adherence to the rules is imperative. Hossain's criminal history and past conduct is real, recent, and available in the public record. He has been convicted of defrauding innocent victims and, more recently, found to have lied to an officer of the court. It would therefore be inappropriate not to scrutinize the veracity behind his claim and require corroboration for his statements.

Since the government's filing of the instant motion, the District Court in the Central District of California found that Hossain violated the conditions of his supervised release and sentenced him to 75 days in custody. *See United States v. Roman Muntaking Hossain*, No. CR 13-224 JVS, Dkt. No. 539 (C.D.C.A May 6, 2021) (Judgment Revoking Supervised Release). In his underlying case, Hossain pleaded guilty to making false statements and creating bogus documents to obtain money from his victims and for willful failure to file a tax return and pay the taxes on the money defendant illegally obtained. *See id.*, Dkt. No. 536 at 3 (Government's Position Re: Supervised Release Violation Sentencing for Defendant Roman Hossain). Prior to Hossain's sentencing on the underlying charges, the Court stated "Frankly, the Court believes that Hossain is toying with the Court to secure the best deal he can at the cheapest cost to him." *Id.* As the Assistant United States Attorney handling Hossain's matter in the Central District aptly noted, "Defendant's underlying criminal conduct demonstrated that defendant was willing to lie, repeatedly, to obtain money, and to take further actions to keep his ill-gotten gains." *Id.* In the words of Hossain's Probation Officer (even before Hossain admitted his

REPLY IN SUPPORT OF U.S. MOTION TO STRIKE ROMAN HOSSAIN'S CLAIM
CV 20-7811 RS                                                    7

conduct):

> [T]he records we do have paint a picture of a person who enjoys a lavish lifestyle and had no intention of allowing the Probation Officer, and in turn the Court's involvement in his personal finances.  Further he has demonstrated a willful defiance with paying the victims of his case . . . [Hossain] has made a mockery of supervision and he has perpetrated a fraud on the Court. . . . [Hossain] misrepresented his assets and ability to pay which is a breach of the Court's trust. His efforts were vast, purposeful, deceitful and exorbitant and a custodial sentence is warranted.

*Id.* at 6.

The government does not have an interest in curtailing Hossain's due process rights.  His background and history of deceit is relevant, however, and must be scrutinized in the face of his conclusory and bald-face assertions of ownership in the Defendant Property.

### III.    CONCLUSION

In light of Hossain's conclusory and bald-face assertions of ownership, his failure to meet the requirements of the rules, and the impossibility of his allegations, the Court must strike his claim at this stage.  Allowing this claim to proceed and permitting discovery would undermine the purpose of the rules and eviscerate the gatekeeping functions designed to minimize the danger of false claims.  It would also invite other meritless claims to these—and other—forfeiture proceedings even if they lack a remote connection to property subject to forfeiture.

DATED:  May 21, 2021                            Respectfully submitted,

STEPHANIE M. HINDS
Acting United States Attorney


*Claudia Quiroz*
DAVID COUNTRYMAN
CHRIS KALTSAS
CLAUDIA QUIROZ
WILLIAM FRENTZEN
Assistant United States Attorneys