REES F. MORGAN (State Bar No. 229899)
JONATHAN R. BASS (State Bar No. 75779)
STAN ROMAN (State Bar No. 87652)
MARI SAHAKYAN CLIFFORD (State Bar No. 331152)
WILLIAM ABRAMOVITZ (State Bar No. 319385)
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, California 94104-5500
Telephone: 415.391.4800
Facsimile: 415.989.1663
Email:     ef-rfm@cpdb.com
           ef-jrb@cpdb.com
           ef-sgr@cpdb.com
           ef-msc@cpdb.com
           ef-wia@cpdb.com

Attorneys for Claimants
Battle Born Investments Company, LLC, First
100, LLC, 1st One Hundred Holdings, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:20-cv-07811-RS |
| Plaintiff, | |
| v. | **OPPOSITION TO MOTION TO STRIKE THE CLAIMS OF CLAIMANTS BATTLE BORN INVESTMENTS COMPANY, LLC, FIRST 100, LLC AND 1ST ONE HUNDRED HOLDINGS, LLC; OR, IN THE ALTERNATIVE, REQUEST FOR CONTINUANCE PER FRCP 56(d)** |
| Approximately 69,370 Bitcoin (BTC), Bitcoin Gold (BTG), Bitcoin SV (BSV), and Bitcoin Cash (BCH) seized from 1HQ3Go3ggs8pFnXuHVHRytPCq5fGG8Hbhx, | |
| Defendant. | Date:     September 9, 2021 |
| | Time:     1:30 p.m. |
| | Ctrm:     3 (Via Zoom) |
| Battle Born Investments Company, LLC, First 100, LLC, and 1st One Hundred Holdings, LLC | The Hon. Richard Seeborg |
| Claimants. | Trial Date:          None Set |

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND ...........................2

    A. Claimants Obtain A $2.2 Billion Judgment. ..................................2

    B. Claimants Purchase Raymond Ngan's Bankruptcy Estate. ............2

    C. Claimants Seek to Enforce their Judgment and Recover The Assets
    They Purchased. ..............................................................................3

    D. Mr. Ngan's Bankruptcy Estate Appears To Have Included The
    1HQ3 Wallet. ..................................................................................3

    E. Mr. Ngan Fled Before Turning Over The 1HQ3 Wallet To
    Claimants. ........................................................................................4

    F. The Government Provided Direct Notice Of Forfeiture To Just One
    Person. .............................................................................................5

    G. Claimants Learn Of The Forfeiture Action, And Diligently Pursue
    The Bitcoins Seized From The 1HQ3 Wallet. ................................6

III. THE GOVERNMENT'S "LATE CLAIM" ARGUMENT. ....................7

    A. Legal Standard. ...............................................................................7

    B. Timeliness. ......................................................................................9

        1. The Government suffered no prejudice. ...............................10

        2. Claimants have expended significant resources in preparing
        to prove their claim. ............................................................12

        3. Claimants became aware of the seizure only after the time to
        file a claim had expired, and they acted diligently thereafter. .........13

        4. Whether the Government encouraged delay; whether the US
        Attorney encouraged the delay; whether claimant was
        properly served; whether the Government complied with
        rules; and whether claimant petitioned for more time. ....................14

        5. The Claimants' health and representation by counsel. ...................14

        6. The sufficiency of the proposed claim. ...............................14

        7. The significance of the amount seized. ...............................14

IV. THE GOVERNMENT'S "ARTICLE III STANDING" ARGUMENT. ................14

    A. Motion to Strike as a Motion for Judgment on the Pleadings. ....................16

**OPPOSITION TO MOTION TO STRIKE THE CLAIMS OF CLAIMANTS BATTLE BORN INVESTMENTS COMPANY, LLC, FIRST 100, LLC AND 1ST ONE HUNDRED HOLDINGS, LLC**

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

B.    Motion to Strike as a Motion for Summary Judgment. ..............................18

C.    The Government Has Not Disproven Claimants' Innocent
       Ownership. ................................................................................................20

D.    If the Court Construes the Government's Motion as One for
       Summary Judgment, Claimants Are Entitled to Discovery Prior to
       Adjudication. ..............................................................................................21

V.    CAFRA DOES NOT STRIP CLAIMANTS OF THEIR PROCEDURAL
       AND SUBSTANTIVE RIGHTS UNDER THE FOURTH AND FIFTH
       AMENDMENTS. ...................................................................................................23

A.    Claimants' Fourth Amendment Protection Against Unreasonable
       Seizure. .......................................................................................................24

B.    Claimants' Fifth Amendment Right to Due Process. ..................................25

C.    Claimants' Fifth Amendment Right Not to Have Property Taken for
       a Public Purpose Without Just Compensation. ............................................25

VI.   CONCLUSION ......................................................................................................25

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

**OPPOSITION TO MOTION TO STRIKE THE CLAIMS OF CLAIMANTS BATTLE BORN
INVESTMENTS COMPANY, LLC, FIRST 100, LLC AND 1ST ONE HUNDRED HOLDINGS, LLC**

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Austad v. U.S.,*
   386 F.2d 147 (9th Cir. 1967)............................................................................17

5

*Burlington N. & Santa Fe R.R. Co. v. The Assiniboine,*
6   323 F.3d 767 (9th Cir. 2003)..........................................................................22

7

*Chicago, B. & Q.R. Co. v. Chicago,*
   166 U.S. 226 (1897)........................................................................................25

8

9

*Clark v. Cty. of Tulare,*
   755 F. Supp. 2d 1075 (E.D. Cal. 2010)..........................................................21

10

*Curnow v. Ridgecrest Police,*
   952 F.2d 321 (9th Cir.1991), *cert. denied*, 506 U.S. 972, 113 S.Ct. 460, 121
11   L.Ed.2d 369 (1992)........................................................................................21

12

*Doleman v. Meiji Mut. Life Ins. Co.,*
   727 F.2d 1480 (9th Cir. 1984)........................................................................17

13

14

*Energy & Env't Legal Inst. v. Epel,*
   793 F.3d 1169 (10th Cir. 2015)......................................................................23

15

*Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs,*
   543 F.3d 586 (9th Cir. 2008)..........................................................................17

16

17

*Honeycutt v. United States,*
   137 S. Ct. 1626 (2017)....................................................................................24

18

*Mullane v. Cent. Hanover Bank & Tr. Co.,*
   339 U.S. 306 (1950)..........................................................................................9

19

20

*Nelson v. City of Davis,*
   685 F.3d 867 (9th Cir. 2012)..........................................................................19

21

*Program Eng'g, Inc. v. Triangle Publ'ns, Inc.,*
   634 F.2d 1188 (9th Cir. 1980)........................................................................16

22

23

*Shelton v. Bledsoe,*
   775 F.3d 554 (3d Cir. 2015)...........................................................................23

24

*Soldal v. Cook County,*
   506 U.S. 56 (1992)..........................................................................................24

25

*U.S. v.2006 Dodge Crew Cab Pickup Truck,*
26   No. CV-F-07-387 OWW/TAG, 2007 WL 2481930, at *3 (E.D. Cal. Aug. 29,
   2007).................................................................................................................11

27

*Ulrich v. City & Cty. of San Francisco,*
28   308 F.3d 968 (9th Cir. 2002)..........................................................................25

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

**OPPOSITION TO MOTION TO STRIKE THE CLAIMS OF CLAIMANTS BATTLE BORN
INVESTMENTS COMPANY, LLC, FIRST 100, LLC AND 1ST ONE HUNDRED HOLDINGS, LLC**

*United States v. $100,348.00 in U.S. Currency*,
354 F.3d 1110 (9th Cir. 2004)................................................................................10, 11

*United States v. $11,500.00 in U.S. Currency*,
710 F.3d 1006 (9th Cir. 2013)........................................................................................11

*United States v. $125,938.62*,
370 F.3d 1325 (11th Cir. 2004)............................................................................10, 13, 14

*United States v. $133,420.00 in U.S. Currency*,
672 F.3d 629 (9th Cir. 2012)....................................................................................17, 18

*United States v. $148,840*,
521 F.3d 1268 (10th Cir. 2008)......................................................................................18

*United States v. $149,345 U.S. Currency*,
747 F.2d 1278 (9th Cir. 1984)........................................................................................13

*United States v. $191,910.00 in U.S. Currency*,
16 F.3d 1051 (9th Cir. 1994)........................................................................................7, 8

*United States v. $209,815 in U.S. Currency*,
No. C 14-0780 SC, 2014 WL 6900836 (N.D. Cal. Dec. 8, 2014)............................16, 22

*United States v. $38,570*,
950 F.2d 1108 (5th Cir. 1992)........................................................................................18

*United States v. $40,000 in U.S. Currency*,
No. 18-CV-00482-BAS-JLB, 2018 WL 3729503 (S.D. Cal. Aug. 6, 2018) ..........................8

*United States v. $81,000*,
189 F.3d 28 (1st Cir. 1999) ..........................................................................................18

*United States v. 1982 Yukon Delta Houseboat*,
774 F.2d 1432 (9th Cir. 1985)........................................................................................10

*United States v. 4492 S. Livonia Rd.*,
889 F.2d 1258 (2nd Cir. 1989)........................................................................................8

*United States v. Four Hundred Seventeen Thousand, One Hundred Forty-Three
Dollars & Forty-Eight Cents ($417,143.48)*, No. 13-CV-5567 MKB, 2015 WL
5178121 (E.D.N.Y. Sept. 2, 2015), *aff'd sub nom. United States v. $417,143.48,
Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars &
Forty-Eight Cents (417,143.48)*, 682 F. App'x 17 (2d Cir. 2017)............................15

*United States v. James Daniel Good Real Prop. et al.*,
510 U.S. 43 (1993) ..................................................................................................24, 25

*United States v. Marolf*,
173 F.3d 1213 (9th Cir. 1999)....................................................................................8, 25

*United States v. One 1936 Model Ford V–8 DeLuxe Coach*,
307 U.S. 219 (1939) ........................................................................................................7

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800  ·  FAX 415.989.1663

**OPPOSITION TO MOTION TO STRIKE THE CLAIMS OF CLAIMANTS BATTLE BORN
INVESTMENTS COMPANY, LLC, FIRST 100, LLC AND 1ST ONE HUNDRED HOLDINGS, LLC**

*United States v. One-Sixth Share of Mass Millions Lottery Ticket,*
  326 F.3d 36 (1st Cir. 2003) ............................................................................16, 18

*United States v. Real Prop. and Improvements Located at 2366 San Pablo Avenue,
  Berkeley, California,*
  2014 WL 3704041 (N.D. Cal. 2014) ...........................................................................22

*United States v. Real Prop. Located at 17 Coon Creek Rd., Hawkins Bar
  California, Trinity Cty.,*
  787 F.3d 968 (9th Cir. 2015) .......................................................................................8

*United States v. Real Prop. Located at 149 G St., Lincoln, Cal., Placer Cty., APN
  008-266-015-000,*
  No. 2:12-CV-0705-TLN-DAD, 2013 WL 2664770 (E.D. Cal. June 12, 2013).................16

*United States v. Real Prop. Located at 475 Martin Lane, Beverly Hills, CA,*
  545 F.3d 1134, 1140 (9th Cir. 2008) ..........................................................................17

*United States v. Real Prop. Located at 730 Glen-Mady Way, Folsom, Sacramento
  Cty., CA,*
  590 F. Supp. 2d 1295 (E.D. Cal. 2008) ........................................................................9

*United States v. Real Prop. Located at 5208 Los Franciscos Way, Los Angeles,
  C.A.,*
  385 F.3d 1187 (9th Cir. 2004) ....................................................................................18

*United States v. Real Property,*
  135 F.3d 1312 (9th Cir. 1998) .....................................................................................8

*United States v. Real Property at 2659 Roundhill Dr., Alamo, Cal.,*
  194 F.3d 1020 (9th Cir. 1999) .....................................................................................8

*United States v. Seventeen Thousand Nine Hundred Dollars in U.S. Currency,*
  859 F.3d 1085 (D.C. Cir. 2017) ..................................................................................18

*Unites States v. Parcel of Land, Bldgs., Appurtenances and Improvements, Known
  as 92 Buena Vista Ave., Rumson, N.J.,*
  507 U.S. 111 (1993) ..................................................................................................21

**Statutes & Rules**

11 U.S.C. § 363(m) .......................................................................................................2

18 U.S.C. § 983(d)(1) ..................................................................................................20

18 U.S.C. § 983(d)(3) ..................................................................................................20

Federal Rule of Civil Procedure 56(d) ...............................................................21, 22, 23

Federal Rule of Evidence 408 .......................................................................................12

Federal Rules of Civil Procedure Rule 12(c) ...................................................................15

Local Rule 16-7 ...........................................................................................................22

One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

Coblentz Patch Duffy & Bass LLP

**OPPOSITION TO MOTION TO STRIKE THE CLAIMS OF CLAIMANTS BATTLE BORN
INVESTMENTS COMPANY, LLC, FIRST 100, LLC AND 1ST ONE HUNDRED HOLDINGS, LLC**

Federal Rules of Civil Procedure Rule, Supplemental Rule G(4)(a)(i) ...........................13

Federal Rules of Civil Procedure Rule, Supplemental Rule G(5).....................................8

Federal Rules of Civil Procedure Rule, Supplemental Rule G(8)(c) ...............................15

Federal Rules of Civil Procedure Rule, Supplemental Rule G(8)(c)(i)(B) ................15, 18

**Other Authorities**

*Asset Forfeiture Policy Manual* (U.S. Department of Justice, 2021) ................................9

*Historical Bitcoin Price & ROI Lookup*, OnChainFX.com,
    https://onchainfx.com/hist/BTC (last visited August 10, 2021).........................5, 9, 11

Kate Rooney, *Record $1 billion worth of Bitcoin linked to the Silk Road seized by
    U.S. Government,* https://www.cnbc.com/2020/11/05/1-billion-worth-of-
    Bitcoin-linked-to-the-silk-road-seized-by-the-us.html (Nov. 6, 2020, 8:39 P.M.
    EST) ..........................................................................................................................6

*Ultrafine copper powder: Institute for rare earths and metals*, Institute Fur Seltene
    Erden Und Strategische Metalle, https://en.institut-seltene-erden.de/ultrafeines-
    kupferpulver-preise-und-herstellung/ (last visited Aug 11, 2021). ...........................3

U.S. Constitution, Fourth Amendment................................................................1, 23, 24

U.S. Constitution, Fifth Amendment ...........................................................................1, 25

U.S. Constitution, Seventh Amendment ...........................................................................1

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

Case No. CV 20-7811 RS

**OPPOSITION TO MOTION TO STRIKE THE CLAIMS OF CLAIMANTS BATTLE BORN
INVESTMENTS COMPANY, LLC, FIRST 100, LLC AND 1ST ONE HUNDRED HOLDINGS, LLC**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

## I.  **INTRODUCTION**

The Government hopes to avoid any meaningful judicial scrutiny of its seizure of a multi-billion dollar Bitcoin "wallet," despite the thinness of its own narrative of the wallet's provenance, and notwithstanding the colorable claim to that property by Claimants First 100, LLC; 1st One Hundred Holdings, LLC; and Battle Born Investments Company, LLC. The Government may believe that it has a solid basis for its forfeiture action, and that Claimants' competing assertion of ownership should be disregarded.  But the Government is not the arbiter of this matter, and its disparagement of Claimants carries no weight.

This action comprises what appears to be the most valuable asset ever seized under the Civil Asset Forfeiture Reform Act.  The nature of that asset – coupled with the Government's inability to establish, by way of reliable documentation, who owned it at the time of the seizure – militates strongly against the uncritical acceptance of the Government's *ipse dixit*.  Claimants believe that *they* own this asset, having acquired it in the course of a bankruptcy proceeding.  The information they have already developed in support of their claim is exactly the type that should carry weight in the context of a virtual asset that, by its nature, lacks the traditional means of establishing ownership.  Claimants should be given an opportunity to pursue further proof of their claim, so that, at an appropriate time, the matter can be decided on the merits. The alternative urged by the Government – that the Court just take the Government's word for it – is contrary to the text of the Civil Asset Forfeiture Reform Act, and would strip Claimants of their rights under the Fourth and Fifth Amendments, not to mention their Seventh Amendment right to a jury trial.

The ownership of most forms of property, whether real or personal, tangible or intangible, can generally be established in ways that tradition, law and experience have proven to be reliable: for real property, there is usually a deed; for tangible personal property, possession is at least suggestive, if not determinative, of ownership, and there may be a paper trail sufficient to establish ownership where it is otherwise in question; for intangibles, bank and brokerage account records, and other sorts of documentary tracing, will generally identify the owner.

Bitcoin, a form of cryptocurrency, lacks the traditional means of establishing ownership, or even possession, for that matter.  Indeed, it was created with that feature in mind.  On the strength

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

of "evidence" that would not be accepted as conclusive – indeed, would likely not even be considered – in any other context, the Government claims to have determined ownership of the Bitcoin it has seized.  Claimants have good reason to believe that the Bitcoin belongs to *them*, and they should be given an opportunity to establish their ownership.  The Government's attempt to foreclose Claimants' right to pursue and present that proof should be rejected.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Claimants Obtain A $2.2 Billion Judgment.

On March 28, 2017, Claimants First 100 and 1st One Hundred obtained a $2 billion judgment against Raymond Ngan in the Judicial District Court of the State of Nevada, Case No. A-16-738970-C.  (Declaration of Joseph Gutierrez, Esq. ("Gutierrez Decl."), ¶ 3.)  The lawsuit concerned Mr. Ngan's breach of agreements to provide $160 million to Claimants' business ventures.  (*Id.* ¶ 4.) Mr. Ngan was known to be an individual of substantial personal wealth.  (*Id.* ¶ 5.)  But he breached those agreements, causing the loss of approximately $1 billion in profits, an amount the Nevada Court doubled by way of a punitive damages award.  (Gutierrez Decl. ¶ 6.)

### B.    Claimants Purchase Raymond Ngan's Bankruptcy Estate.

After Claimants obtained the judgment, Mr. Ngan filed a Chapter 7 bankruptcy petition in the U.S. Bankruptcy Court, District of Nevada, Case No. 17-14166-BTB ("Bankruptcy Action"). (Dkt. No. 62-5, ¶ 3.)  On March 27, 2018, Claimants (acting through Claimant Battle Born Investment Company) entered into an agreement to purchase all assets of the bankruptcy estate from the Chapter 7 bankruptcy trustee.  (Dkt. No. 62-6, ¶ 3.)  These assets included all disclosed and undisclosed property interests of the bankruptcy debtor, "wherever located and by whomever held" (the "Bankruptcy Estate").  (*Id.*)

On May 14, 2018, the Honorable Bruce Beesley of the Bankruptcy Court issued an order approving the trustee's sale of the Bankruptcy Estate to Battle Born.  (Dkt. No. 62-6, ¶ 4.)  The order designated Battle Born a good faith purchaser of all assets of the Bankruptcy Estate, whether or not disclosed in Mr. Ngan's bankruptcy schedules and statements, pursuant to 11 U.S.C. section 363(m).  (Declaration of Ryan Andersen (the "Andersen Decl."), ¶ 3, Exhibit 1.)

**OPPOSITION TO MOTION TO STRIKE THE CLAIMS OF CLAIMANTS BATTLE BORN
INVESTMENTS COMPANY, LLC, FIRST 100, LLC AND 1ST ONE HUNDRED HOLDINGS, LLC**

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · Fax 415.989.1663

C.      **Claimants Seek to Enforce their Judgment and Recover The Assets They Purchased.**

Claimants proceeded with efforts to enforce their judgment, and to recover the assets they had purchased, assembling a team of investigators and lawyers.  (Declaration of Jay Bloom ("Bloom Decl."), ¶ 2.)  They identified one of Mr. Ngan's bank accounts, containing roughly $8 million.  They located and seized 272 kilograms of Monatomic Ultra-Pure Electrolytic Copper Powder, a rare isotope with enormous value.  (Bankruptcy Action, Dkt. Nos. 401 and 579.)[1] Neither of those assets had been disclosed by Mr. Ngan in his bankruptcy filings.  (Gutierrez Decl. ¶ 18.)  To confirm their legal ownership of the isotope (and their right to sell it), Claimants obtained an order from the Bankruptcy Court certifying the isotope as an asset acquired by Battle Born, and that Battle Born was a bona fide purchaser of that asset.  (Gutierrez Decl., Ex. 1.)

D.      **Mr. Ngan's Bankruptcy Estate Appears To Have Included The 1HQ3 Wallet.**

On March 14, 2019, in violation of Judge Beesley's order that Raymond Ngan produce all electronically stored information on his laptops, cell phone, chat logs, and emails, Mr. Ngan's associate, Robert Dooley, gave Mr. Ngan's laptop and cell phone to one of Mr. Ngan's business partners, Samuel Oliver, who in turn fled to Canada with the devices.  (Andersen Decl. ¶ 5.)  On March 15, 2019, Judge Beesley issued a Writ of Assistance directing the U.S. Marshal Service to seize all of Ngan's financial records, correspondence, any electronic storage devices, and all electronically stored information.  (Andersen Decl. ¶ 6, Ex. 2.)

On April 9, 2019, Mr. Oliver sent Mr. Ngan's laptop and cell phone to his attorney, who turned them over to Claimants' data forensic experts.  (Gutierrez Decl. ¶ 21.)  A forensic review of the devices seized from Mr. Ngan revealed that he and Mr. Oliver called each other no less than 600 times between late December 2018 and mid-March 2019, and that Mr. Oliver deleted fifty-four files from Mr. Ngan's devices – a number corresponding to the number of wallets that

---

[1] The Institute of Rare Earths and Metals based in Switzerland estimates copper powder of this quality costs between EUR 500 and EUR 2500 per gram, depending on the purchase quantity. 272 kilograms of this copper powder (based on a rate of $1.19 per Euro) would be valued somewhere between $160 million to over $800 million.  *Ultrafine copper powder: Institute for rare earths and metals*, Institute Fur Seltene Erden Und Strategische Metalle, https://en.institut-seltene-erden.de/ultrafeines-kupferpulver-preise-und-herstellung/ (last visited Aug 11, 2021).

**OPPOSITION TO MOTION TO STRIKE THE CLAIMS OF CLAIMANTS BATTLE BORN INVESTMENTS COMPANY, LLC, FIRST 100, LLC AND 1ST ONE HUNDRED HOLDINGS, LLC**

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

originally held the Bitcoin that was transferred into the 1HQ3 wallet at issue in this action. (Dkt. No. 90 at 10; Gutierrez Decl. ¶ 24.)

Notwithstanding the fifty-four deleted files, Claimants' analysts were able to determine that (1) between 2017 and 2019, multiple investors contacted Mr. Ngan to purchase substantial quantities of Bitcoin and facilitate Bitcoin transactions, and (2) Mr. Ngan exchanged contracts and other documents with investors related to the sale of Bitcoin, including providing an escrow account for Bitcoin transactions. (Declaration of Jacky Lee (the "Lee Decl."), ¶¶ 4-14.)

One of Mr. Ngan's deals involved Patrick Ranzijn in late 2018. According to his LinkedIn profile, Mr. Ranzijn is the CFO of the Dengue Research Corporation, a venture capitalist and a Chartered Alternative Investment Analyst.[2] The deal involved Mr. Ngan selling a significant amount of Bitcoin, and Mr. Ngan sent Mr. Ranzijn a proposed contract. (Lee Decl. ¶ 6; Ex. 3.) To secure the transaction, Mr. Ngan established an escrow account at Dunton Rainville LLP, a large Canadian law firm. (Lee Decl., Ex. 2 at § 2.) The Escrow Agreement provided that the purchasing party would wire funds to Dunton Rainville's escrow account at the Bank of Montreal, and that Dunton Rainville would return the funds to the purchaser "[i]n the event the BTC are not delivered within 24 hours." (*Id.* at § 3(8).)

On December 5, 2018, Mr. Ngan sent Mr. Ranzijn a file with the heading "Bitcoin Procedures Sam Oliver.pdf," which described the terms of a prospective sale of Bitcoin in three tranches. (Lee Decl., ¶ 4, Ex. 1.) When Mr. Ranzijn inquired what Bitcoin wallet Mr. Ngan would use to execute the sales, Mr. Ngan identified the 1HQ3 Wallet that is the subject of this proceeding. He did so by sending an image of the 1HQ3 page on the website, blockchain.com, which is a recognized means for Bitcoin users (and anyone else) to view the current contents and entire transactional history of a given Bitcoin wallet. (Lee Decl., ¶ 11, Ex. 8.)

**E.**     **Mr. Ngan Fled Before Turning Over The 1HQ3 Wallet To Claimants.**

Battle Born planned to compel Mr. Ngan to turn over the contents of the 1HQ3 Wallet

---

[2] Patrick Ranzijn, LinkedIn (Aug. 6, 2021, 9:40 PM),
https://www.linkedin.com/in/patrickranzijn/?originalSubdomain=ch.

**OPPOSITION TO MOTION TO STRIKE THE CLAIMS OF CLAIMANTS BATTLE BORN INVESTMENTS COMPANY, LLC, FIRST 100, LLC AND 1ST ONE HUNDRED HOLDINGS, LLC**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

1   during an evidentiary hearing in the Bankruptcy Action set for December 5-6, 2019.  (Andersen

2   Decl. ¶ 8.)  Mr. Ngan, however, requested a continuance of the hearing based on medical reasons,

3   failed to appear at the continued hearing set on January 31, 2020, and has since been non-

4   responsive to various requests in the Bankruptcy Court proceeding.  (*Id.*)  After Mr. Ngan failed to

5   appear, Claimants began attempts to locate him but the onset of the COVID-19 pandemic in

6   March 2020 disrupted those efforts.  *Id.*  Claimants do not currently know Mr. Ngan's

7   whereabouts, although they are attempting to locate him.  (*Id.*, ¶ 11.)

8   **F.**   **The Government Provided Direct Notice Of Forfeiture To Just One Person.**

9   On November 5, 2020, the Government filed a Complaint for Civil Forfeiture to forfeit the

10   1HQ3 wallet. (Dkt. No. 1.)  It served direct notice of the forfeiture action on a single individual,

11   Ross Ulbricht, who is serving a prison sentence for his facilitation of transactions for illicit

12   substances and services on the "dark web" site known as Silk Road.  (*See* Dkt. No. 90 at 11.)

13   On November 20, 2020, the Government filed an amended Complaint for Civil Action

14   Forfeiture, alleging it had traced Bitcoins held in the 1HQ3 Wallet to transactions that "appear to

15   represent Bitcoin that was stolen from Silk Road" by a person identified as "Individual X" from

16   fifty-four separate wallets, who purportedly then moved the stolen Bitcoin into two wallets that

17   Individual X controlled on May 6, 2012 and later transferred them to the 1HQ3 Wallet on April 9,

18   2013.  (*See* Dkt. Nos. 8, ¶¶ 15-17, 22; 90 at 3.)  At the time of the April 9, 2013 transfer, the value

19   of Bitcoin averaged $208.20 each, meaning that the 69,370 Bitcoins in the 1HQ3 Wallet had a

20   total value of about $14.5 million.[3]  As of today, their value is approximately $ 3,166,844,555.00.

21   The amended complaint further alleges that Individual X signed a Consent and Agreement to

22   Forfeiture with the U.S. Attorney's office in the Northern District of California, and turned over

23   the contents of the 1HQ3 Wallet to the U.S. Government on November 3, 2020.  (Dkt. No. 8, ¶

24   23.)  The Government advances no claim, however, that Individual X was at any time the "owner"

25   of the wallet or the Bitcoin held in it.  Indeed, the Government alleges (a) that Individual X stole

26

27   _____

[3] *Historical Bitcoin Price & ROI Lookup*, OnChainFX.com,
28   https://onchainfx.com/hist/BTC/2013/04/9 (last visited August 10, 2021).

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

1  the Bitcoins in the 1HQ3 Wallet (Dkt. No. 8, ¶ 22), but (b) that "a thief does not have a legal

2  interest in stolen property." (Dkt. No. 90 at 28).

3      The Government did not serve direct notice of the forfeiture action on Claimants or the

4  trustee in the Bankruptcy Action.  Nothing in the record suggests that the Government undertook

5  an investigation concerning the identity of other persons or entities who may have an ownership

6  interest in the 1HQ3 Wallet.  (*See* Dkt. 90 at 11.)  On January 6, 2021, unbeknownst to the

7  Claimants at the time, the Government filed a certificate of service that attached a document

8  entitled "Declaration of Publication," which stated that a "Notice of Civil Forfeiture was posted on

9  an official Government internet site (www.forfeiture.gov) for at least 30 consecutive days,

10  beginning on November 27, 2020."  (Dkt. No. 25.)  Under the 30-day rule for published notice on

11  the Government forfeiture site, a November 27 posting would have expired, and thus the posting

12  removed and no longer visible, on December 27, 2020.  Claimants never saw it before the posting

13  was removed.  (Bloom Decl. ¶ 5.)

**G.  Claimants Learn Of The Forfeiture Action, And Diligently Pursue The Bitcoins Seized From The 1HQ3 Wallet.**

15      Claimants did not learn that the Government had seized the Bitcoin associated with Mr.

16  Ngan until January 28, 2021, two days after the claim-filing deadline.  Jay Bloom, Claimants'

17  principal, received a text from his business partner, John Cooper, which contained a link to an

18  article entitled "Record $1 billion worth of Bitcoin linked to the Silk Road seized by U.S.

19  Government," which reported that "69,370 Bitcoins — worth about $1 billion — had been moved

20  out of a Bitcoin wallet" and seized.[4]  The text also included screenshots from the blockchain

21  showing the same amount of Bitcoins contained in the 1HQ3 Wallet, worth over $2.3 billion that

22  day, had been transferred to another wallet, bc1qa5wkgaew2dkv56kfvj49j0av5nml45x9ek9hz6,

23  three months earlier.  (Bloom Decl. ¶ 5, Ex. 1.)

24      The next day, January 29, 2021, Battle Born's bankruptcy counsel reviewed the docket

---

[4] Kate Rooney, *Record $1 billion worth of Bitcoin linked to the Silk Road seized by U.S. Government*, cnbc.com (Nov. 6, 2020, 8:39 P.M. EST), https://www.cnbc.com/2020/11/05/1-billion-worth-of-Bitcoin-linked-to-the-silk-road-seized-by-the-us.html.

**OPPOSITION TO MOTION TO STRIKE THE CLAIMS OF CLAIMANTS BATTLE BORN INVESTMENTS COMPANY, LLC, FIRST 100, LLC AND 1ST ONE HUNDRED HOLDINGS, LLC**

1    entries in the forfeiture action on PACER.  (Andersen Decl. ¶ 10.)  He did not see anything that

2    indicated to him there was a deadline for the filing of a claim.  (*Id*.)  He never saw the

3    Government's internet notice, which had been removed from the Government's forfeiture website

4    over a month earlier.  (*Id.*)

5         Unbeknownst to Claimants and their counsel at the time, the only entry in the PACER

6    docket that would have informed Claimants that a January 26 deadline to file a claim had existed

7    (and had already passed) was a document the Government filed as "Certificate of Service by

8    United States of America (*Declaration of Publication*)" on January 6, 2021.  (*See* Dkt. No. 25.)

9    When bankruptcy counsel reviewed the docket on January 29, 2021, it contained five separate

10   entries entitled "Certificate of Service ," and counsel did not realize that such proof of service

11   forms would provide substantive information relevant to Claimants' claims, so he did not review

12   them.  (Andersen Decl., ¶ 10.)

13        Notwithstanding the fact that they were unaware of any claims deadline based upon a prior

14   publication, Claimants proceeded diligently to file a claim after they discovered that the 1HQ3

15   wallet had been seized.  They engaged new counsel for the forfeiture proceeding and filed claims

16   on March 16, 2021, 47 days after they first learned of the forfeiture action (49 days after the

17   deadline).  (Declaration of Jeffrey Nicholas ("Nicholas Decl.") ¶ 2.)

18   **III.    THE GOVERNMENT'S "LATE CLAIM" ARGUMENT.**

19        The Government has moved to strike the claim on timeliness and standing grounds.

20   Neither justifies a denial of Claimants' right to recover this property.  Indeed, the Government's

21   position is not just ill-taken under the Civil Asset Forfeiture Reform Act ("CAFRA"); it raises

22   constitutional issues as well.

23        **A.    Legal Standard.**

24        Forfeiture is a "'harsh and oppressive procedure' which is not favored by the

25   courts." *United States v. $191,910.00 in U.S. Currency,* 16 F.3d 1051, 1069 (9th Cir. 1994)

26   (quoting *United States v. One 1976 Mercedes Benz,* 618 F.2d 453, 454 (7th Cir. 1980).  Forfeiture

27   statutes are strictly construed against the Government.  *See United States v. One 1936 Model Ford*

28   *V–8 DeLuxe Coach,* 307 U.S. 219 (1939); *$191,910.00 in U.S. Currency,* 16 F.3d at 1068; *see also*

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

**OPPOSITION TO MOTION TO STRIKE THE CLAIMS OF CLAIMANTS BATTLE BORN
INVESTMENTS COMPANY, LLC, FIRST 100, LLC AND 1ST ONE HUNDRED HOLDINGS, LLC**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

*United States v. Marolf*, 173 F.3d 1213, 1217 (9th Cir. 1999) (denying forfeiture where Government "erred" by failing to provide due notice to property owner).  For good reason, "the burden on the Government to adhere to procedural rules should be heavier than on claimants."  *$191,910.00 in U.S. Currency*, 16 F.3d at 1069.

With respect to the timeliness issue, "courts have 'discretion to overlook the failure to conform to the requirements of [forfeiture claim rules].'"  *See United States v. Real Prop. Located at 17 Coon Creek Rd., Hawkins Bar California, Trinity Cty.*, 787 F.3d 968, 974 (9th Cir. 2015) (hereinafter, "*Coon Creek Rd.*");[5] *United States v. Real Property at 2659 Roundhill Dr., Alamo, Cal.*, 194 F.3d 1020, 1024 (9th Cir. 1999) (same); *see also United States v. $40,000 in U.S. Currency*, No. 18-CV-00482-BAS-JLB, 2018 WL 3729503, at *2 (S.D. Cal. Aug. 6, 2018) ("Indeed, as the Court has observed, Rule G(5) permits a court to set the filing deadline of a verified claim to 'different time for good cause.'") (*citing* Supp. R. G(5)(a)(ii)(A)); *see also United States v. 4492 S. Livonia Rd.*, 889 F.2d 1258, 1262 (2nd Cir. 1989) ("When, as here, a claimant has made a sufficient showing of interest in the property through filing with the court a motion and accompanying affidavits, technical noncompliance with the procedural rules governing the filing of claims may be excused."); *compare United States v. Real Property*, 135 F.3d 1312, 1317 (9th Cir. 1998) (requiring "strict compliance" with the filing rules where claimant received *direct notice* of forfeiture proceedings but failed to file a claim, only challenging the forfeiture one year after receiving notice and six months after the Government received a final judgment of forfeiture, as allowing the claimant to challenge a forfeiture judgment after so much time had elapsed would "exact a significant toll on judicial resources") (emphasis added).

CAFRA requires the Government to send direct written notice of a seizure, accompanied by information concerning applicable procedures to claim the seized property, to each person who "reasonably appears to be a potential claimant."  Supp. R. G(4)(b)(i).  It must undertake

---

[5] The Government cites *Coon Creek Rd.* for the proposition that forfeiture actions require "strict compliance with filing requirements" and that "courts regularly strike claims on timeliness grounds." (Dkt. 90 at 23.)  Actually, *Coon Creek Rd.* rejected the plaintiff's argument that a claimant's failure to strictly comply with the procedural rules under Supplemental Rule G amounts to a "per se statutory standing defect" that required automatic dismissal. *Id.* at 975-76.

**OPPOSITION TO MOTION TO STRIKE THE CLAIMS OF CLAIMANTS BATTLE BORN INVESTMENTS COMPANY, LLC, FIRST 100, LLC AND 1ST ONE HUNDRED HOLDINGS, LLC**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

1  "reasonable efforts . . . to identify any person or entity with a likely ownership interest."  *See Asset*

2  *Forfeiture Policy Manual* (U.S. Department of Justice, 2021) at 86, n. 45; *see also Mullane v.*

3  *Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental

4  requirement of due process in any proceeding which is to be accorded finality is notice reasonably

5  calculated, under all the circumstances, to apprise interested parties of the pendency of the action

6  and afford them an opportunity to present their objections."); *United States v. Real Prop. Located*

7  *at 730 Glen-Mady Way, Folsom, Sacramento Cty., CA*, 590 F. Supp. 2d 1295, 1299 n. 3 (E.D. Cal.

8  2008) ("The requirements of due process have moved beyond mere publication, and include the

9  requirement of direct written notice to persons who reasonably appear to be potential claimants.").

10  Given the "harsh and oppressive" nature of asset forfeitures, the Government has a high obligation

11  to attempt to identify, and give notice to, parties with potential ownership interests where, as here,

12  the value of the asset exceeded $1.1 billion at the time that the Government published its notice.[6]

13      **B.**    <u>**Timeliness.**</u>

14        The Government has offered nothing to establish that it conducted a sufficient

15  investigation to identify potential claimants.  The IRS agent who "personally conducted the

16  blockchain analysis at issue in this case," simply asserts that "Raymond Ngan is not Individual X,"

17  and that his "investigation has not revealed any association or connection between Ngan and

18  Individual X."  (Dkt. 90-1, ¶ 4.)  Claimants are not privy to what efforts, if any, the Government

19  undertook to investigate potential claimants to the Bitcoin wallet.  As discussed below, the

20  Government says Individual X was able to give them 1HQ3; Mr. Ngan's records indicate he had

21  control of the wallet.  There may have been a connection between the two that the Government

22  could have discovered.  The claim should not be dismissed for untimeliness without allowing

23  Claimants discovery to determine whether the Government should, in fact, have given them direct

24  notice of the forfeiture and the claims deadline.  At the least, the Court should defer ruling on the

25  timeliness question until Claimants are provided an opportunity to review what the Government

26

27  ―――――――――――――――

[6] *Historical Bitcoin Price & ROI Lookup*, onchainfx.com,

28  https://onchainfx.com/hist/BTC/2020/11/27 (last checked July 30, 2021).

did or did not do to investigate potential claimants and provide the requisite statutory notice.

Regardless of whether the Government did "enough," the Court has discretion to excuse a failure to comply with the claim filing requirements, or to extend the claim filing period.  The Government's motion notes twelve factors that bear on the exercise of that discretion, which are discussed in *United States v. $100,348.00 in U.S. Currency*, 354 F.3d 1110, 1117-18 (9th Cir. 2004):  "(1) when claimant became aware of the currency's seizure; (2) whether the United States Attorney may have encouraged the delay; (3) the claimant's health; (4) whether the claimant was properly served; (5) any prejudice to the Government in permitting the claims to go forward; (6) whether the claimant informed the Government and the court of its interest before the claims deadline; (7) whether the claimant expended resources preparing for trial; (8) the claimant's good faith; (9) whether the Government complied with its procedural rules; (10) whether the claimant was acting *pro se*; (11) whether the claimant petitioned for an enlargement of time; and (12) the sufficiency of the proposed claim."  (Dkt. 90 at 17-25.)

Other Circuits, including the Seventh and Eleventh, have held that "the district court should consider the amount seized in evaluating the above factors."  *See United States v. $125,938.62*, 370 F.3d 1325, 1329-30 (11th Cir. 2004) (holding that a forfeiture of approximately $800,000 was "substantial" enough to warrant an extension of time deadlines in a CAFRA action);[7] *see also United States v. 1982 Yukon Delta Houseboat*, 774 F.2d 1432, 1435–36 (9th Cir. 1985) (the court "should only exercise its discretion to grant additional time where the goals underlying the time restriction and the verification requirement are not thwarted.")  Here, the Claimants came forward as soon as they knew of the proceeding, and they have in no way delayed this case or prejudiced the Government.

### 1.    The Government suffered no prejudice.

The only prejudice the Government has suggested consists of (1) "add[ed]. . . uncertainty of the value of the Defendant Property it is seeking to forfeit," and (2) "time-consuming, protracted litigation over the claimant's standing to contest the forfeiture that the pleading

---

[7] The value of 69,370 Bitcoins as of the filing of this opposition is roughly $ 3.166 billion.

**OPPOSITION TO MOTION TO STRIKE THE CLAIMS OF CLAIMANTS BATTLE BORN INVESTMENTS COMPANY, LLC, FIRST 100, LLC AND 1ST ONE HUNDRED HOLDINGS, LLC**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

1  requirements were designed to avoid."  (*See* Dkt. No. 90 at 19-21.)  In other words, the market

2  value of the Bitcoin may decline in the course of this litigation, and it will take some time to

3  litigate standing.  This argument reflects a disregard for the rights of property owners, and of basic

4  economic principles.  The reality is that today's market price for Bitcoin reflects a collective

5  prediction that it will be worth *more* in the future.  The value of the seized Bitcoin today exceeds

6  by 2 billion dollars the value of the Bitcoin when it was seized.[8]  As to the protracted nature of

7  litigation, the Court is well aware of that reality, but it is no reason to deprive a party of its due

8  process rights.

9       The timing of Claimants' claim filing has not interfered with the Government's action in

10  any way.  Nothing substantive has occurred in the case yet.  *United States v. $11,500.00 in U.S.*

11  *Currency*, 710 F.3d 1006, 1009 (9th Cir. 2013) ("[T]he dismissal of the claim to the $11,500 for

12  that failure was an abuse of discretion, primarily because the omission did not prejudice the

13  government, did not appear to be calculated, and did not delay or extend the forfeiture

14  proceedings."); *U.S. v.2006 Dodge Crew Cab Pickup Truck*, No. CV-F-07-387 OWW/TAG, 2007

15  WL 2481930, at *3 (E.D. Cal. Aug. 29, 2007) ("The United States' protestations of prejudice due

16  to the delay in complying with [the government counsel's] agreement to allow Claimant to file a

17  properly verified Claim and a properly verified Answer ring hollow when the Scheduling Order is

18  examined."); *compare $100,348.00 in U.S. Currency*, 354 F.3d at 1119 ("The Government had

19  litigated the case for nearly one year before [the claimant] attempted to file his claim, and several

20  issues had already been definitively resolved by the district court, such as the forfeitability of the

21  currency and the applicability of the 'innocent owner' defense.  Permitting the late claim would

22  have resulted in costly duplicative litigation for the Government, requiring it to litigate the same

23  issues all over again.").  The Government can point to no comparable prejudice here, and its

24  preference not to litigate its own forfeiture action is no reason to close the door to Claimants.

25       The Government's own actions undermine any claim of prejudice.  Within three days after

26

27  [8] *Historical Bitcoin Price & ROI Lookup*, OnChainFX.com,
https://onchainfx.com/hist/BTC/2021/08/10 (last visited August 10, 2021).

28

**OPPOSITION TO MOTION TO STRIKE THE CLAIMS OF CLAIMANTS BATTLE BORN
INVESTMENTS COMPANY, LLC, FIRST 100, LLC AND 1ST ONE HUNDRED HOLDINGS, LLC**

the claims were filed on March 16, 2021, the Government began communicating with Claimants' counsel by email. (Declaration of Jeffrey Nicholas (the "Nicholas Decl."), ¶ 4.)[9] It was not until two months later, during a virtual meeting to discuss the claims on May 24, 2021, that the Government first mentioned that the claims were late. (Nicholas Decl., ¶ 6.)[10] The Government did not file this motion to strike the claims until July 13, 2021, nearly four months after the claims were filed. (See Dkt. Nos. 62, 90.) In sum, the Government claims prejudice because Claimants filed their claim seven weeks past the purported deadline, yet the Government waited seventeen weeks after that to bring this motion to strike. Permitting Claimants' claims to proceed at this stage will not waste judicial (or Government) resources by re-litigating substantive issues or delay the case, as the lawsuit has not progressed past the initial phase to determine which claims will remain and the Court has yet to issue a scheduling order.[11] The only "prejudice" faced by the Government is the prospect of having to meet Claimants' evidence. That is not legal prejudice. It is their obligation.

## 2. Claimants have expended significant resources in preparing to prove their claim.

The Government asserts that "[s]triking the claim is proper pursuant to the seventh factor,

---

[9] The portion of the Government's motion addressing Raymond Ngan's ownership of 1HQ3 relies in significant part on information Claimants' counsel provided in what the Government calls "a series of meet and confer discussions." (See, e.g., Dkt. No. 90 at 13.) Those communications were actually settlement communications under Federal Rule of Evidence 408, making them inadmissible. Claimants' counsel involved in the communications, as well as Claimants' principal, would attest that they insisted the communications remain confidential, and that the Government agreed. Claimant's counsel have contemporaneous notes reflecting that the discussions were settlement communications. It is odd that the Government calls these "meet and confer discussions" when there was nothing to meet and confer about at the time. Nevertheless, Claimants do not disavow what they told the Government in settlement discussions and will not burden the Court or parties with a motion to strike or formal objections. We raise the matter to make clear that Claimants are not waiving Rule 408's protection with respect to future settlement discussions the parties may have, or as to additional information from the prior discussions.

[10] In contrast, the Government informed at least one other untimely claimant in this forfeiture action that the claims filing deadline had passed within two hours of their first correspondence. (See Dkt. No. 95-2 at 9-10.)

[11] The Government has stipulated to briefing extensions as to at least one claimant who filed claims later than the Claimants here, extending adjudication of that motion to strike beyond the current deadline for this one. (Dkt. Nos. 96-97.) This further evidences the lack of any prejudice to the Government with respect to Claimants' late-filed claim.

**OPPOSITION TO MOTION TO STRIKE THE CLAIMS OF CLAIMANTS BATTLE BORN INVESTMENTS COMPANY, LLC, FIRST 100, LLC AND 1ST ONE HUNDRED HOLDINGS, LLC**

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

given that there is no indication that the Claimants have spent any time preparing for trial."  (Dkt. 90 at 20.)  We have no idea what the Government is referring to.  There is no trial date.  Claimants have, invested substantial resources investigating this matter, including retaining counsel, blockchain and forensic ESI experts, and investigators.  (Bloom Decl. ¶¶ 2-4.)

### 3. Claimants became aware of the seizure only after the time to file a claim had expired, and they acted diligently thereafter.

The Government's motion suggests that the "sheer value" at issue, the Claimants' awareness of the existence of the 1HQ3 wallet since 2019, and the "highly publicized" nature of the Government's seizure means that Claimants must have actually known that the Government seized the wallet on November 3, 2020, yet failed to file a timely claim.  (*See* Dkt. No. 90 at 18-19.)  That simply is not true, and the Government has no basis for making that assertion.  As set forth above, the Government did not serve Claimants with direct notice of the forfeiture, and Claimants only learned of it on January 28, 2021, after the deadline had passed.  They acted diligently thereafter, including retaining further counsel to pursue the claim.  (Bloom Decl. ¶ 7); *See United States v. $149,345 U.S. Currency*, 747 F.2d 1278, 1282 (9th Cir. 1984) (granting additional time for claimants to file a claim where "it [wa]s unclear from the record precisely when the [claimants] became aware of the currency's seizure").  While Claimants' bankruptcy counsel reviewed the civil forfeiture docket, he did not realize that one of the five "Certificates of Service" listed there revealed that the Government had previously published notice of the forfeiture.  Absent such knowledge, counsel reasonably assumed that the Government had not yet issued such a notice, as CAFRA sets no specific deadline for the Government to do so (*see* Rule G(4)(a)(i)), and likewise presumed that no clock was running on the claims.  Even if counsel can be faulted under these circumstances, it would be inequitable to hold Claimants responsible for counsel's oversight, particularly given the magnitude of the claim and the absence of prejudice to the Government.  *See $125,938.62*, 370 F.3d at 1329 ("The district court should be wary to not confer the sins of the attorney unto the claimant in a civil forfeiture case, especially when the prejudice to the government, if any, is slight.").

**OPPOSITION TO MOTION TO STRIKE THE CLAIMS OF CLAIMANTS BATTLE BORN INVESTMENTS COMPANY, LLC, FIRST 100, LLC AND 1ST ONE HUNDRED HOLDINGS, LLC**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

4. **Whether the Government encouraged delay; whether the US Attorney encouraged the delay; whether claimant was properly served; whether the Government complied with rules; and whether claimant petitioned for more time.**

As discussed above, Claimants were not served with direct notice of the forfeiture and were unaware of the claim deadline. Claimants did not petition for additional time, and could not have done so while unaware of the seizure (or of the deadline for filing a claim). Claimants are prepared to file such a petition now, should the Court deem it procedurally necessary.

5. **The Claimants' health and representation by counsel.**

No health problems hindered Claimants' ability to file claims, and they are represented by counsel. While not favoring an extension of time to file a claim, these factors should not weigh against the Court's exercise of its discretion to allow the claim.

6. **The sufficiency of the proposed claim.**

The claims clearly assert ownership of the Defendant Property. The Government argues that Claimants lack standing to assert the claims. That issue is addressed later in this brief.

7. **The significance of the amount seized.**

Given that this action concerns "the largest seizure of cryptocurrency in the history of the Department of Justice" (Dkt. No. 90 at 18), and that the value of the 1HQ3 Wallet is many times greater than other seizures deemed "substantial" enough to warrant an extension of time deadlines, this factor weighs heavily in favor of excusing Claimants' late filing. *See, e.g.*, *$125,938.62*, 370 F.3d at 1329-30.

## IV. THE GOVERNMENT'S "ARTICLE III STANDING" ARGUMENT.

The Government asserts that Claimants lack standing to present a claim because they do not own the 1HQ3 Bitcoin. But that issue – who owned this property at the relevant point in time? – goes to the merits of the claim, not to the question of standing. Claimants have evidence that the Bitcoin belonged to Raymond Ngan, and that, by virtue of the May 14, 2018 Bankruptcy Court order, they acquired that ownership, all before the Government commenced its forfeiture action. The Government cannot deprive Claimants of their standing to claim ownership of this property merely by asserting that Claimants do not in fact own it. The Court will ultimately decide that

**OPPOSITION TO MOTION TO STRIKE THE CLAIMS OF CLAIMANTS BATTLE BORN INVESTMENTS COMPANY, LLC, FIRST 100, LLC AND 1ST ONE HUNDRED HOLDINGS, LLC**

1   question – on the merits, and on the basis of proof, not on the strength of the Government's

2   contentions, and not by way of this pleading motion.

3   There are procedural problems with the Government's motion as well.  The Government

4   filed it under Rule G(8)(c) of the Supplemental Rules for Admiralty or Maritime Claims and Asset

5   Forfeiture Actions, Federal Rules of Civil Procedure.  That rule states that a motion to strike a

6   claim in a forfeiture proceeding "may be presented" in one of three ways: 1) "as a motion for

7   judgment on the pleadings," 2) "as a motion to determine after a hearing," or 3) "by summary

8   judgment."  Rule G(8)(c)(i)(B).  On its face, the rule contemplates that the Government will

9   choose one of the alternative procedures.  But the Government has not filed a motion for judgment

10   on the pleadings, or one for summary judgment, nor has it requested an evidentiary hearing.  It has

11   not even suggested under which procedure's very different standards the Court should decide its

12   "Motion to Strike."

13   The Court would be justified in denying the motion as procedurally improper on that basis

14   alone.  Or the Court could elect to treat the motion as one for judgment on the pleadings, which

15   would be a suitable procedure at this early juncture when the case has not progressed beyond a

16   complaint, a claim and an answer.  Another court has done so, in a decision affirmed by the

17   Second Circuit.  Where "[t]he government is not clear as to which type of motion it is making,"

18   "no discovery has been presented to the court," and the Court has "little information beyond the

19   pleadings" and "neither party has requested a hearing, the Court will construe the government's

20   motion to strike the claim for lack of standing as a motion pursuant to Rule 12(c) of the Federal

21   Rules of Civil Procedure."  *United States v. Four Hundred Seventeen Thousand, One Hundred*

22   *Forty-Three Dollars & Forty-Eight Cents ($417,143.48),* No. 13-CV-5567 MKB, 2015 WL

23   5178121, at *5 (E.D.N.Y. Sept. 2, 2015), *aff'd sub nom. United States v. $417,143.48, Four*

24   *Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents*

25   *(417,143.48)*, 682 F. App'x 17 (2d Cir. 2017).

26   Other courts have treated motions to strike as summary judgment motions.  The timeliness

27   of the claims here is somewhat susceptible to treatment a summary judgment standard, though as

28   previously noted discovery would be necessary to determine if the Government should have given

18906.001 4847-7510-2195.17

-15-

Case No. 3:20-cv-07811-RS

**OPPOSITION TO MOTION TO STRIKE THE CLAIMS OF CLAIMANTS BATTLE BORN INVESTMENTS COMPANY, LLC, FIRST 100, LLC AND 1ST ONE HUNDRED HOLDINGS, LLC**

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

Coblentz Patch Duffy & Bass LLP

One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

1   Claimants direct notice.  The standing issue cannot be addressed summarily, however.  As

2   explained below, the inquiry on standing is limited to determining whether a claimant has "some

3   evidence" that it has a "colorable interest" in the seized property.  Claimants have demonstrated

4   that they do.  On that basis, the motion to strike for lack of standing should be denied.  But the

5   Government goes beyond the limited standing issue, asserting that Claimants' evidence is not

6   convincing and that regardless of what evidence Claimants have, they do not own the 1HQ3

7   Bitcoin.  This series of argumentative contortions does not shift the burden to Claimants to prove

8   their case, and the Court should not wade into the conflicting evidence to rule on the

9   Government's standing motion.  "Courts should not, however, conflate the constitutional standing

10  inquiry with the merits determination that comes later."  *United States v. One-Sixth Share of Mass*

11  *Millions Lottery Ticket,* 326 F.3d 36, 41 (1st Cir. 2003).

12         Moreover, should the Court choose to construe the motion as one for summary judgment,

13  it should not grant it without affording Claimants discovery.  As the Ninth Circuit has cautioned,

14  "Generally, where a party has had no previous opportunity to develop evidence and the evidence is

15  crucial to material issues in the case, discovery should be allowed before the trial court rules on a

16  motion for summary judgment."  *Program Eng'g, Inc. v. Triangle Publ'ns, Inc.,* 634 F.2d 1188,

17  1193 (9th Cir. 1980), *cited by United States v. $209,815 in U.S. Currency*, No. C 14-0780 SC,

18  2014 WL 6900836, at *8 (N.D. Cal. Dec. 8, 2014); *see also United States v. Real Prop. Located at*

19  *149 G St., Lincoln, Cal., Placer Cty., APN 008-266-015-000*, No. 2:12-CV-0705-TLN-DAD, 2013

20  WL 2664770, at *4 (E.D. Cal. June 12, 2013) ("The Ninth Circuit has held that courts should

21  liberally grant a 56(d) motion when the nonmoving party has not had adequate time to conduct

22  discovery.").[12]

23         **A.      Motion to Strike as a Motion for Judgment on the Pleadings.**

24         Should the Court treat the Government's motion as one for judgment on the pleadings, the

25  motion should be denied.  Judgment on the pleadings is properly granted when, taking all

26  allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law.

27  _____

28  [12] The Government has not requested an evidentiary hearing, so we do not address that procedure.

**OPPOSITION TO MOTION TO STRIKE THE CLAIMS OF CLAIMANTS BATTLE BORN
INVESTMENTS COMPANY, LLC, FIRST 100, LLC AND 1ST ONE HUNDRED HOLDINGS, LLC**

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

1   *Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586 (9th Cir. 2008).  The

2   allegations of the non-moving party must be accepted as true, while the allegations of the moving

3   party that have been denied are assumed false.  *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d

4   1480, 1482 (9th Cir. 1984).  Only if, *on the facts so admitted*, the moving party is clearly entitled

5   to prevail can the motion be granted.  *Austad v. U.S.*, 386 F.2d 147, 149 (9th Cir. 1967).

6       The claims here make an unequivocal assertion of ownership interest in 1HQ3.  They state

7   that Claimants purchased the Defendant Property "for valuable consideration pursuant to the

8   United States Bankruptcy Code, effective on or about May 14, 2018, and further, that such

9   purchase was approved by the Bankruptcy Court as final disposition of the Defendant Property

10  and transfer of ownership of such to Claimant Battle Born."  (Verified Claim Dkt. 62-6 at ¶ 10;

11  Verified Claim Dkt. 62-5 at ¶ 10).  The claims also specify that, "Claimant Battle Born can show it

12  was a bona fide third party purchaser of the Defendant Property pursuant to the United States

13  Bankruptcy Code, that it did not know of any illegal conduct, that it was without cause to know

14  that the Defendant Property was subject to forfeiture, and it can prove ownership to the Defendant

15  Property by way of the Bankruptcy Court Order."  (Battle Born Verified Claim Dkt. 62-6 at ¶ 16;

16  First 100 Verified Claim Dkt. 62-5 at ¶ 16 ).

17      When assessing the sufficiency of a claimant's pleadings in a forfeiture proceeding, a

18  claimant's unequivocal assertion of an ownership interest in the property is sufficient by itself to

19  establish standing.  *United States v. Real Prop. Located at 475 Martin Lane, Beverly Hills, CA*,

20  545 F.3d 1134, 1140 (9th Cir. 2008) ("In their pleadings, the Kim Claimants specifically alleged

21  an ownership interest in the May 2004 properties, which was sufficient at the initial stages of the

22  litigation to establish that they had standing to challenge the civil forfeiture action."); *United

23  States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 638 (9th Cir. 2012) ("At the motion to

24  dismiss stage, a claimant's unequivocal assertion of an ownership interest in the property is

25  sufficient by itself to establish standing.").

26      The Government does not appear to contest the sufficiency of the pleadings as to

27  Claimants' Article III standing.  Claimants have sufficiently pled their ownership interest in

28  1HQ3, and the Motion to Strike cannot be granted as a motion for judgment on the pleadings.

**OPPOSITION TO MOTION TO STRIKE THE CLAIMS OF CLAIMANTS BATTLE BORN
INVESTMENTS COMPANY, LLC, FIRST 100, LLC AND 1ST ONE HUNDRED HOLDINGS, LLC**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

### B.   Motion to Strike as a Motion for Summary Judgment.

Even if the Court construes the motion as one for summary judgment *and* proceeds to adjudicate it without permitting discovery, the motion is patently insufficient.  To establish standing in response to the Government's summary judgment motion in a forfeiture proceeding, Claimants need only demonstrate "a colorable interest" in the seized property.  *$133,420.00*, 672 F.3d at 637-38 (quotation marks omitted); *see also United States v. Real Prop. Located at 5208 Los Franciscos Way*, *Los Angeles, C.A.,* 385 F.3d 1187, 1191 (9th Cir. 2004) (same).  The amount of evidence required to establish a colorable interest is "'some evidence of ownership' beyond the mere assertion in order to survive a motion for summary judgment." *$133,420.00*, 672 F.3d at 638-39; *see also United States v. $148,840*, 521 F.3d 1268, 1276 (10th Cir. 2008) (same); *United States v. $81,000*, 189 F.3d 28, 35 (1st Cir. 1999) (same); *United States v. $38,570*, 950 F.2d 1108, 1112 (5th Cir. 1992) (same).  The "requirements for a [claimant] to demonstrate constitutional standing to challenge a forfeiture are very forgiving." *United States v. Seventeen Thousand Nine Hundred Dollars in U.S. Currency,* 859 F.3d 1085, 1089 (D.C. Cir. 2017) (brackets in original).

The Government asks the Court to assess not only their assertion that "the claimant lacks standing," which is all that is at issue in this motion under Rule G(8)(c)(i)(B); they ask the Court to rule on the merits of the claim.  But the Government is ignoring the distinction between constitutional standing and the merits.  *See Seventeen Thousand Nine Hundred Dollars,* 859 F.3d at 1091 ("Where, as here, a claimant's account of ownership is irreconcilable with the theory upon which the Government seeks forfeiture, requiring the claimant to produce more than 'some evidence' of ownership runs the danger of impermissibly shifting the merits burden to the claimant—tantamount to, say, making a claimant prove that her property is unconnected to unlawful activity.").  Though Claimants must establish standing by identifying a colorable interest in the property with "some evidence," "it is the Government that bears the burden to prove, on the merits, 'that the property is subject to forfeiture.'"  *Id.*  (citing 18 U.S.C. § 983(c)(1)).  "Courts should not, however, conflate the constitutional standing inquiry with the merits determination that comes later."  *One-Sixth Share of Mass Millions Lottery Ticket*, 326 F.3d at 41.

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

Because of this distinction, on a motion to strike a claim for lack of standing, "the Judge does not weigh disputed evidence with respect to a disputed material fact. Nor does the judge make credibility determinations with respect to statements made in affidavits, answers to interrogatories, admissions, or depositions. These determinations are within the province of the factfinder at trial." *Nelson v. City of Davis*, 685 F.3d 867 (9th Cir. 2012) (quoting *Dominquez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1036 (9th Cir. 2005)).

Claimants' evidence consists of contemporaneous records showing that, from 2017 through 2019, Raymond Ngan engaged in discussions with a number of investors about selling a substantial quantity of Bitcoin. In the most relevant transaction, he had a formal purchase and sale agreement prepared, by which he would deposit his 1HQ3 Bitcoin into a law firm escrow account. He specifically identified 1HQ3 as his wallet, and provided the purchaser a screenshot of the blockchain showing it contained 69,370 Bitcoins (the amount the Government seized). The Government dismisses this as a scam on Mr. Ngan's part (Dkt. No. 90 at 12, 18-21), but he would not have realized any profit unless he actually had possession of the Bitcoin and was able to deposit it into the law firm's escrow account, from where it could be transferred to the buyer. The Government must likewise consider it merely a coincidence that, according to the Government, the Bitcoin at issue was originally stolen from fifty-four wallets, which were ultimately transferred to 1HQ3, and that Mr. Ngan's associates deleted fifty-four files from his computer before turning it over to Claimants. That is further evidence of Mr. Ngan's association with the 1HQ3 Bitocoin. Claimants have been declared bona fide purchasers of all assets in Mr. Ngan's estate by the United States Bankruptcy Court. If Mr. Ngan owned 1HQ3 – and at the least "some evidence" indicates that is the case – Claimants now own it.

The Government offers a hearsay declaration of an IRS agent that an unidentified hacker ("Individual X") (a) stole the Bitcoin in 2012, (b) put it in wallet 1HQ3 in 2013, and (c) gave it to the Government on November 3, 2020. (Haynie Decl. at ¶¶ 2-5.) The agent says he knows all this from his investigation, but does not provide any actual evidence. On its face, the claim is far-fetched. The proposition that Individual X hacked fifty-four individual Bitcoin wallets is implausible, if not impossible. (Lee Decl. ¶ 17.) The agent further states that Raymond Ngan is

**OPPOSITION TO MOTION TO STRIKE THE CLAIMS OF CLAIMANTS BATTLE BORN INVESTMENTS COMPANY, LLC, FIRST 100, LLC AND 1ST ONE HUNDRED HOLDINGS, LLC**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

not Individual X, and that his investigation did not reveal any connection between Mr. Ngan and Individual X.  Again, this is all just conclusory, the sort of "testimony" that would never be countenanced in an evidentiary proceeding, and that is not competent evidence for purposes of a summary judgment motion.[13]  That is the entirety of the Government's "factual" showing.  The rest is simply argument – that there are lots of scams involving Bitcoin, and Mr. Ngan may have been pulling a scam when he said he had 1HQ3 and was prepared to put it into an escrow account for a sale.

### C.   The Government Has Not Disproven Claimants' Innocent Ownership.

The Government argues that, if Raymond Ngan did actually possess 1HQ3, he would not have possessed it lawfully because "a thief does not have a legal interest in stolen property." (Mot. at 21).  But the Government does not suggest that Mr. Ngan stole 1HQ3, or even that he got it from Individual X, who the Government says stole it.  Claimants do not yet know how Mr. Ngan obtained 1HQ3, but it could certainly have been from sources unrelated to Individual X or Silk Road.  And he could have been a bona fide purchaser of the Bitcoin even if it was unlawfully acquired originally.  The claims should not be dismissed based upon the Government's unsupported speculation that Mr. Ngan may have stolen it or did not innocently acquire it.

The Government's final argument is that, because of the "relation back' doctrine, the Bitcoin in 1HQ3 never became part of the Bankruptcy estate that Claimants purchased because rights to it "vested" in the Government when it was allegedly generated by unlawful Silk Road activity.  Once again, the argument assumes too much.

The relation-back doctrine will not defeat the interests of innocent owners in a forfeiture proceeding, and none of the cases upon which the Government relies deal with innocent owners. 18 U.S.C. § 983(d)(1) provides that, "[a]n innocent owner's interest in property shall not be forfeited under any civil forfeiture statute," and §983(d)(3) says that one is an innocent owner of property acquired *after* the conduct giving rise to a forfeiture if one was a bona fide purchaser for

---

[13] Of course, more than one person can have the private key (password) to access and transfer a Bitcoin wallet.  Even the agent concedes that as late as September of 2020 (two months before the hacker Individual X gave the Government 1HQ3), "it is possible" that a password protected wallet containing the 1HQ3 key was being "passed around by hackers."  (Haynie Decl. at ¶ 9).

**OPPOSITION TO MOTION TO STRIKE THE CLAIMS OF CLAIMANTS BATTLE BORN INVESTMENTS COMPANY, LLC, FIRST 100, LLC AND 1ST ONE HUNDRED HOLDINGS, LLC**

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

value who did not know or have reason to believe that the property was subject to forfeiture.   The Supreme Court has made clear that the relation back doctrine "cannot be used to obviate the protected interests of innocent owners even when they have arisen after the commission of the offense giving rise to forfeiture." *Unites States v. Parcel of Land, Bldgs., Appurtenances and Improvements, Known as 92 Buena Vista Ave., Rumson, N.J.*, 507 U.S. 111, 123 (1993).

Claimants are innocent owners of all assets that were in Raymond Ngan's bankruptcy estate.  The Government does not suggest otherwise.  If Raymond Ngan was an innocent purchaser of the Bitcoin in 1HQ3, then that Bitcoin was part of his bankruptcy estate.  We do not yet know how Mr. Ngan obtained the Bitcoin he was trying to sell.  He may have been an innocent purchaser of it from Individual X (who nevertheless later gave the wallet's password to the Government), or he may have obtained it from a source unrelated to Silk Road or Individual X.  That remains to be determined in this litigation, when it will be the Government's burden to establish by a preponderance of admissible evidence who is the rightful owner of 1HQ3.  The Government has certainly not done that yet.

**D.**   **If the Court Construes the Government's Motion as One for Summary Judgment, Claimants Are Entitled to Discovery Prior to Adjudication.**

Should the Court construe the Government's motion as one for summary judgment, Claimants would be entitled to discovery prior to any adverse decision on that motion.  Pursuant to Rule 56(d), Claimants have submitted an affidavit with this opposition specifying the reasons that the Court should defer ruling against Claimants on the Government's motion if treated as one for summary judgment, to allow Claimants to obtain discovery from the Government and relevant witnesses.  (*See* Fed.R.Civ.P. 56(d) Declaration of Rees Morgan (the "Morgan Decl.")[14]

The Government's support for their motion rests entirely on an untested, conclusory, hearsay declaration of an IRS agent.  "[W]here Claimants dispute large portions of the Agent's

---

[14] In opposing a motion for summary judgment, "the evidence on which the opponent relies must be admissible at trial. But the evidence need not be in an admissible *form* as presented in the opposition. A party may present testimony of its own witnesses by declarations." *Clark v. Cty. of Tulare*, 755 F. Supp. 2d 1075, 1082–83 (E.D. Cal. 2010) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Curnow v. Ridgecrest Police*, 952 F.2d 321, 324 (9th Cir.1991), *cert. denied*, 506 U.S. 972, 113 S.Ct. 460, 121 L.Ed.2d 369 (1992).

**OPPOSITION TO MOTION TO STRIKE THE CLAIMS OF CLAIMANTS BATTLE BORN INVESTMENTS COMPANY, LLC, FIRST 100, LLC AND 1ST ONE HUNDRED HOLDINGS, LLC**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

1  description of events 'they should be permitted to obtain discovery regarding the Agent and to

2  depose him prior to the Court addressing summary judgment.'"  *$209,815 in United States*

3  *Currency*, 2014 WL 6900836, at *8.  *$209,815 in U. S. Currency* found the Government's motion

4  for summary judgment "premature," particularly because, like here, Civil Local Rule 16-7

5  prohibited the claimant from conducting discovery "so early in the case."  2014 WL 6900836, at

6  *8.[15]  Indeed, pursuant to FRCP 56(d), a court may defer or deny a motion for summary judgment

7  in order to allow non-movant claimants in forfeiture actions to conduct discovery and develop

8  facts essential to their opposition.  *See United States v. Real Prop. and Improvements Located at*

9  *2366 San Pablo Avenue, Berkeley, California*, 2014 WL 3704041, at *2-3 (N.D. Cal. 2014)

10  (unreported).  District courts should grant a Rule 56(d) request "fairly freely" when the moving

11  party seeks summary judgment before the non-moving party has had a realistic opportunity to

12  pursue discovery relating to its theory of the case.  *Burlington N. & Santa Fe R.R. Co. v. The*

13  *Assiniboine*, 323 F.3d 767, 773-74 (9th Cir. 2003).  Where essential facts are in the moving party's

14  exclusive possession, a Rule 56(d) request for continuance "should be granted almost as a matter

15  of course."  *Id.*  Affording Claimants an opportunity to conduct discovery is critical here, where

16  the Government's motion essentially (and improperly) attempts to address the ultimate question,

17  and not just standing, based on unidentified evidence entirely within its exclusive control.

18      Claimants expect that discovery will lead to additional evidence supporting their claims.

19  (Morgan Decl. ¶¶ 5-8.)  Claimants would seek documentary evidence and deposition testimony

20  from third parties, including Mr. Ngan and the individuals and entities to whom he tried to sell

21  Bitcoin.  *Id.*  Obtaining such evidence voluntarily is and will be challenging.  *Id.*  Claimants would

22  also seek discovery from the Government about its Agent's unsubstantiated, conclusory

23  declaration.  *Id.*  And Claimants would seek discovery relating to individuals it believes may have

24  relevant information about Mr. Ngan, including the so far anonymous Individual X.

25      While Claimants' investigation has been hampered by the lack of legal process, it has

26

27  _____

28  [15] Northern District of California Civil Local Rule 16-7 prohibits claimants from serving discovery until the issuance of a Case Management Order outlining the permissible scope of discovery.

**OPPOSITION TO MOTION TO STRIKE THE CLAIMS OF CLAIMANTS BATTLE BORN INVESTMENTS COMPANY, LLC, FIRST 100, LLC AND 1ST ONE HUNDRED HOLDINGS, LLC**

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

1   revealed evidence of a possible connection between Mr. Ngan and an individual that may be the

2   Government's Individual X – Nikita Kislitsin.  The federal government indicted Mr. Kislitsin, a

3   Russian national, for hacking various accounts in 2013 and 2014.  Mr. Klitsin met with

4   Government agents after being charged, and listed Las Vegas as his location on Twitter at roughly

5   the same time Mr. Ngan lived there.  (Gutierrez Decl. ¶¶ 30-33, Ex. 2.)  Mr. Kislitsin apparently

6   cooperated in the Government's prosecution of a hacker associate, Yevgeniy Nikulin.  (*Id.* ¶¶ 30,

7   34-37.)  A jury convicted Mr. Nikulin at trial and the court sentenced him to 88 months in prison

8   on September 29, 2020.  (*Id.* ¶ 34.)  Just four weeks after Mr. Nikulin's sentencing, Individual X

9   signed an agreement with the Government, providing the key to 1HQ3.  (*Id.* ¶ 36.)  Seventeen

10  days after that agreement, a federal judge in Nevada unsealed Mr. Kislitsin's 2013 indictment in

11  response to a Government motion, after virtually nothing had occurred in the case over seven

12  years.  (*Id.* ¶ 37.)  High ranking federal prosecutors have commented that the unsealing of an

13  indictment often indicates that the Government does not anticipate an arrest or prosecution.  *Id.* ¶

14  37.)  And despite Mr. Kislitsin's apparent involvement in Russian hacking efforts, his indictment,

15  and the Government's failed prosecution, he – in contrast to at least one of his known hacker

16  associates – is not listed as subject to sanctions by the Office of Foreign Assets Control.  (*Id.*

17  ¶¶ 37-39.)  Mr. Kislitsin may not be Individual X.  But circumstantial evidence suggests that either

18  he or an associate is, and that he has a connection to Mr. Ngan.  A connection between Individual

19  X and Raymond Ngan would be further evidence supporting Mr. Ngan's (and Claimants')

20  ownership of 1HQ3 because it could explain how Individual X obtained 1HQ3, how Mr. Ngan

21  obtained it from him, and/or how Individual X was able to transfer 1HQ3 to the Government.

22      If the Court views the motion as one for summary judgment, the Court should permit

23  Claimants to take discovery before deciding it against Claimants.[16]

24  ## V.   CAFRA DOES NOT STRIP CLAIMANTS OF THEIR PROCEDURAL AND SUBSTANTIVE RIGHTS UNDER THE FOURTH AND FIFTH AMENDMENTS.

25      The Government takes it as a given that Claimants' ownership of the Bitcoin, and their

26

---

27  [16] No formal motion is required for a party to assert the protections provided by Rule 56(d).
    *Shelton v. Bledsoe*, 775 F.3d 554, 566-67 (3d Cir. 2015); *Energy & Env't Legal Inst. v. Epel,* 793

28  F.3d 1169, 1176 (10th Cir. 2015) (same).

**OPPOSITION TO MOTION TO STRIKE THE CLAIMS OF CLAIMANTS BATTLE BORN INVESTMENTS COMPANY, LLC, FIRST 100, LLC AND 1ST ONE HUNDRED HOLDINGS, LLC**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

1   right to contest the Government's seizure of it, are subject exclusively to the procedures

2   established by CAFRA.  But Claimants' right to object to the Government's seizure of their

3   property has deeper roots.

4          Claimants' constitutional rights, under the Fourth and Fifth (and Seventh) Amendments are

5   not diminished by the Government's mere contention that the property is subject to forfeiture by

6   virtue of its link to a criminal enterprise.  Claimants' rights under the Fourth and Fifth

7   Amendments – to be free from unreasonable seizure of their property, not to be deprived of

8   property without due process of law, and not to have their property taken for a public use without

9   just compensation – all apply, and those rights are not confined within the narrow borders of

10  CAFRA.  *See United States v. James Daniel Good Real Prop. et al.*, 510 U.S. 43, 49-50 (1993)

11  ("Here, as in *Soldal*, the seizure of property implicates two "explicit textual source[s] of

12  constitutional protection,' the Fourth Amendment and the Fifth. [] The proper question is not

13  which Amendment controls but whether either Amendment is violated."); *citing Soldal v. Cook

14  County,* 506 U.S. 56, 70 (1992).  And Claimants' rights to assert their ownership of this property

15  are not subject to the processes or limitations of CAFRA at all unless the necessary predicate to

16  the Government's forfeiture action – that the property itself be of a nature that renders it subject to

17  forfeiture – is present.  *See Honeycutt v. United States*, 137 S. Ct. 1626, 1629 (2017).

18         A.      **Claimants' Fourth Amendment Protection Against Unreasonable Seizure.**

19         A seizure of property, for purposes of the Fourth Amendment, occurs when there is some

20  "meaningful interference with an individual's possessory interests in that property."  *Soldal*, 506

21  U.S. at 61, *citing United States v. Jacobsen,* 466 U.S. 109, 113 (1984); *see also James Daniel

22  Good Real Prop.*, 510 U.S. at 49 ("The Fourth Amendment does place restrictions on seizures

23  conducted for purposes of civil forfeiture ….").

24         The Government seized the Bitcoin at issue on the assumption that it emanated from Silk

25  Road.  Claimants believe that it actually belonged to Mr. Ngan, from whom they acquired it, in

26  good faith and for value.  If Claimants are correct – and the proof to be developed in the course of

27  this case will demonstrate that one way or the other – then the Government's seizure was wrongful

28  to begin with, and it was a violation of Claimants' Fourth Amendment rights.

**OPPOSITION TO MOTION TO STRIKE THE CLAIMS OF CLAIMANTS BATTLE BORN
INVESTMENTS COMPANY, LLC, FIRST 100, LLC AND 1ST ONE HUNDRED HOLDINGS, LLC**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

### B.     Claimants' Fifth Amendment Right to Due Process.

"Where the Government seizes property not to preserve evidence of criminal wrongdoing but to assert ownership and control over the property, its action must also comply with the Fifth Amendment's Due Process Clause." *James Daniel Good Real Prop.*, 510 U.S. at 43-44 (internal citations omitted).  "To prevail on a due process claim, plaintiff must prove three elements: (1) property interest protected by Constitution, (2) deprivation of interest by government, and (3) lack of required process." *Ulrich v. City & Cty. of San Francisco*, 308 F.3d 968 (9th Cir. 2002). Claimants meet all three requirements.

Claimants, as bona fide purchasers, have an ownership interest in the 1HQ3 wallet. Further, the Government's act of transferring the Bitcoin from 1HQ3 was a deprivation of Claimants' property interest.  The Ninth Circuit is "particularly wary of civil forfeiture statutes, for they impose quasi-criminal penalties without affording property owners all of the procedural protections afforded criminal defendants." *Marolf*, 173 F.3d at 1217.  That constitutional concern is especially acute where (a) the Government failed to provide notice of forfeiture to an interested party, and (b) that interested party is the true owner of the property.

### C.     Claimants' Fifth Amendment Right Not to Have Property Taken for a Public Purpose Without Just Compensation.

If, again, this property belonged to Claimants, then the Government's seizure of it represents a taking of Claimants' property in violation of the Fifth Amendment.  The Takings Clause commands that "private property [shall not] be taken for public use, without just compensation."  U.S. CONST. Amend. V; *see Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226 (1897).  It does not appear that the Government took this property for a public use within the meaning of the Fifth Amendment, and it therefore had no constitutional power to take it in the first place.  But if the property *is* subject to being taken for a public use, then Claimants are entitled to be compensated for it.

### VI.     CONCLUSION

The Government's motion to strike should be denied.

**OPPOSITION TO MOTION TO STRIKE THE CLAIMS OF CLAIMANTS BATTLE BORN INVESTMENTS COMPANY, LLC, FIRST 100, LLC AND 1ST ONE HUNDRED HOLDINGS, LLC**

1    DATED:  August 10, 2021                COBLENTZ PATCH DUFFY & BASS LLP

2

3                                           By: _____/s/ *Rees Morgan*_____

4                                               REES F. MORGAN
                                                Attorneys for Claimants
5                                               Battle Born Investments Company, LLC, First
                                                100, LLC, 1st One Hundred Holdings, LLC
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**OPPOSITION TO MOTION TO STRIKE THE CLAIMS OF CLAIMANTS BATTLE BORN INVESTMENTS COMPANY, LLC, FIRST 100, LLC AND 1ST ONE HUNDRED HOLDINGS, LLC**

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663