REES F. MORGAN (State Bar No. 229899)
JONATHAN R. BASS (State Bar No. 75779)
STAN ROMAN (State Bar No. 87652)
MARI SAHAKYAN CLIFFORD (State Bar No. 331152)
WILLIAM ABRAMOVITZ (State Bar No. 319385)
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, California 94104-5500
Telephone: 415.391.4800
Facsimile: 415.989.1663
Email: ef-rfm@cpdb.com
ef-jrb@cpdb.com
ef-sgr@cpdb.com
ef-msc@cpdb.com
ef-wia@cpdb.com

Attorneys for Claimants
First 100, LLC, 1st One Hundred Holdings, LLC
and Battle Born Investments Company, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>Approximately 69,370 Bitcoin (BTC), Bitcoin Gold (BTG), Bitcoin SV (BSV), and Bitcoin Cash (BCH) seized from 1HQ3Go3ggs8pFnXuHVHRytPCq5fGG8Hbhx,<br><br>Defendant.<br><br>First 100, LLC, 1st One Hundred Holdings, LLC, and Battle Born Investments Company, LLC,<br><br>Claimants. | Case No. 3:20-cv-07811-RS<br><br>**DECLARATION OF JOSEPH GUTIERREZ IN SUPPORT OF CLAIMANTS' OPPOSITION TO MOTION TO STRIKE THE CLAIMS OF CLAIMANTS BATTLE BORN INVESTMENTS COMPANY, LLC, FIRST 100, LLC AND 1ST ONE HUNDRED HOLDINGS, LLC**<br><br>Date: September 9, 2021<br>Time: 1:30 p.m.<br>Ctrm: 3 (Via Zoom)<br><br>The Hon. Richard Seeborg<br><br>Trial Date: None Set |

-1-  Case No. 3:20-cv-07811-RS
**DECLARATION OF JOSEPH GUTIERREZ IN SUPPORT OF CLAIMANTS' OPPOSITION TO MOTION TO STRIKE THE CLAIMS OF CLAIMANTS BATTLE BORN INVESTMENTS COMPANY, LLC, FIRST 100, LLC AND 1ST ONE HUNDRED HOLDINGS, LLC**

## DECLARATION OF JOSEPH GUTIERREZ, ESQ.

I, Joseph Gutierrez, declare as follows:

1. I am an attorney duly admitted to practice before the State of Nevada and United States District Court for the District of Nevada. I am the founding partner of Maier Gutierrez & Associates. I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true. If called as a witness, I could and would competently testify to the matters stated herein.

2. I was lead trial counsel for claimants First 100, LLC and 1st One Hundred Holdings, LLC ("Claimants") against Raymond Ngan and his entities in litigation that proceeded in the Eighth Judicial District Court of the State of Nevada as Case No. A-16-738970-C.

3. On March 28, 2017, Claimants First 100 and 1st One Hundred obtained a judgment for $2,211,039,718.46 against Raymond Ngan and his entities in Nevada state court, Case No. A-16-738970-C.

4. The lawsuit concerned Mr. Ngan's breach of agreements to provide approximately $160 million to Claimants' business ventures.

5. These agreements entered into by Claimants were with the understanding that Mr. Ngan was known to be an individual of substantial personal wealth.

6. The Nevada state court found that Mr. Ngan's intentional breach and failure to perform resulted in the loss of approximately $1 billion in profits to Claimants, an amount that the Nevada Court doubled by way of punitive damages, resulting in the largest judgment in the State of Nevada for a single civil case.

7. To enforce the judgment, Claimants conducted substantial discovery efforts into Mr. Ngan's assets, including both domestic and international collection efforts.

8. To date, the collection efforts have revealed tens of millions of dollars' worth of assets held by Mr. Ngan, some of which Claimants have acquired, and Claimants' investigation remains ongoing. For example, Claimants discovered at least 272 kilograms of Monatomic Ultra-Pure Electrolytic Copper Powder, a rare isotope with enormous value, and a bank account worth $8 million belonging to Mr. Ngan, both of which assets he failed to disclose in his bankruptcy filings.

9. Mr. Ngan filed a voluntary bankruptcy case ("Bankruptcy Case") under Chapter 7 of the United States Bankruptcy Code on July 31, 2017.

10. The Bankruptcy Case was filed in the United States Bankruptcy Court, District of Nevada ("Bankruptcy Court") and was assigned Case No. 17-14166-BTB.

11. Claimants conducted substantial discovery into Mr. Ngan's assets during the Bankruptcy Case, including hiring private investigators to search of Mr. Ngan's domestic and international assets, conducting multiple 2004 examinations on Mr. Ngan, his family, friends, and business associates, and issuing subpoenas to various financial institutes where Mr. Ngan was believed to hold assets.

12. Battle Born Investments Company, LLC ("Battle Born") is a Nevada limited liability company that purchased the assets of the Raymond Ngan bankruptcy estate on May 8, 2018.

13. On May 14, 2018, U.S. Bankruptcy Judge Beesley approved the Battle Born Purchase Agreement and entered an Order granting Motion to Approve Sale of assets of the Ngan Bankruptcy estate to Battle Born. The order approved the Purchase and Sale Agreement between Battle Born and the United States Trustee for the Ngan bankruptcy estate, which included all disclosed and undisclosed property interests of the bankruptcy debtor.

14. In August of 2018, Mr. Ngan attempted to settle the judgment with Claimants and represented he had access and the ability to pay $75 million toward a global settlement with Claimants.

15. On November 23, 2018, the parties entered into a Memorandum of Understanding for settlement of the case and judgment for a total settlement amount of $75 million. Mr. Ngan, however, failed to fund the agreement and the case did not settle.

16. In January of 2019, Claimants continued with discovery and collection efforts on Mr. Ngan after he failed to fund the Memorandum of Understanding to settle the case. Claimants noticed several continued 2004 examinations of Mr. Ngan and requested production of financial information that he previously failed to disclose.

17. On March 13, 2019, Judge Beesley ordered Ngan to produce all of his electronically stored information on his laptops, cell phone, chat logs, and emails.

**DECLARATION OF JOSEPH GUTIERREZ IN SUPPORT OF CLAIMANTS' OPPOSITION TO MOTION TO STRIKE THE CLAIMS OF CLAIMANTS BATTLE BORN INVESTMENTS COMPANY, LLC, FIRST 100. LLC AND 1ST ONE HUNDRED HOLDINGS. LLC**

18. On information and belief, on March 14, 2019, in violation of Judge Beesley's order, Robert Dooley gave Mr. Ngan's laptop and cell phone to Mr. Ngan's business partner, Samuel Oliver, who then fled with the devices to Canada.

19. On March 15, 2019, Judge Beesley issued a writ of assistance to allow the U.S. Marshal Service to seize all of Mr. Ngan's financial records, any correspondence, any electronic storage devices, and all electronically stored information.

20. On March 20, 2019, my firm hired Holo Discovery to conduct a forensic imaging of Ngan's electronic devices.

21. On information and belief, on April 9, 2019, Samuel Oliver sent Mr. Ngan's laptop and cell phone to his attorney, John Harper, Esq., who then turned them over to the Claimants' data forensic experts at Holo Discovery in Las Vegas, Nevada.

22. Holo Discovery took possession of Mr. Ngan's laptop and cell phone and conducted a forensic imaging of the hard drive and files, uploading them to Relatively, which is a web-based review platform, for counsel for Claimants to access and review.

23. Claimants engaged a private investigator, Lou Cologiovani from Isotro Consulting, to conduct a forensic review of Mr. Ngan's imaged devices in the Relativity database.

24. On information and belief, Mr. Cologiovani's review of the Mr. Ngan's imaged files revealed Mr. Ngan's negotiations and documents relating to transactions involving the 1HQ3 Wallet, that Mr. Ngan and Mr. Oliver called each other no less than 600 times from late December 2018 through mid-March 2019, and that Mr. Oliver deleted fifty-four files from Mr. Ngan's devices over a two-day period.

25. On October 9, 2020, the Bankruptcy Court entered an Order concerning ownership and transferability of the Copper Isotope asset in Mr. Ngan's possession and found Battle Born to be deemed a good faith purchaser of the assets of the Estate. Attached as **Exhibit 1** is a true and correct copy of the October 9 Bankruptcy Court Order.

26. On December 5-6, 2019, the Bankruptcy Court scheduled a hearing in which Mr. Ngan was to provide sworn testimony regarding his Bankruptcy Case, assets, destruction of evidence, and business dealings. We also planned at the hearing to request that Mr. Ngan turn over

**DECLARATION OF JOSEPH GUTIERREZ IN SUPPORT OF CLAIMANTS' OPPOSITION TO MOTION TO STRIKE THE CLAIMS OF CLAIMANTS BATTLE BORN INVESTMENTS COMPANY, LLC, FIRST 100. LLC AND 1ST ONE HUNDRED HOLDINGS. LLC**

the contents of the 1HQ3 Wallet. However, a few days before the hearing, Mr. Ngan provided the Bankruptcy Court with a doctor's note requesting a continuance to the hearing based upon a medical condition.

27. On January 31, 2020, the Bankruptcy Court held a status hearing on the continued hearing on Claimant's Order to Show Cause why Debtor should not be held in contempt and Mr. Ngan again failed to appear.

28. Claimants have attempted to discover the extent of Mr. Ngan's assets and business dealings since the underlying Nevada state court action was filed against him in 2016.

29. On information and belief, Claimants have incurred several hundred thousand dollars in costs alone in attempting to collect on their judgment and in discovery into Mr. Ngan's assets.

30. My investigation of Mr. Ngan has revealed evidence that "Individual X," who according to the Government turned over the 1HQ3 Wallet to the Government, may be Nikita Kislitsin, a Russian hacker, or an associate of Mr. Kislitsin. Because we have evidence that Mr. Ngan was prepared to put 1HQ3 into escrow for a sale, we are continuing to investigate a possible connection between Mr. Kislitsin and Mr. Ngan. Paragraphs 31 through 38 reflect information that I obtained in my investigation.

31. According to a trial brief submitted in March 2020 by the United States in the prosecution of a Russian hacker, Yevgeniy Nikulin, for hacking various U.S. companies such as DropBox, LinkedIn, and Formspring, Mr. Nikulin conspired with four other hackers who were not charged together in that case, including Nikita Kislitsin, another Russian hacker.[1]

32. According to Mr. Kislitsin's unsealed indictment, the federal government indicted Mr. Kislitsin for hacking various accounts in the District of Nevada in 2013 (Case No. 2:13-cr-00101-GMN-EJY) and the Northern District of California in 2014 (Case No. 3:14-cr-00126). Mr. Kislitsin then then met with FBI agents after being charged, but was not arrested.

33. On information and belief, Mr. Kislitsin was indicted in the Northern District of California and the District Court of Nevada at the same time that Mr. Ngan lived in those locations.

---

[1] *See United States v. Nikulin*, case No. 3:16-cr-00440, Dkt. No. 170 at 8-10, 14 (N.D. Cal., March 3, 2020).

**DECLARATION OF JOSEPH GUTIERREZ IN SUPPORT OF CLAIMANTS' OPPOSITION TO MOTION TO STRIKE THE CLAIMS OF CLAIMANTS BATTLE BORN INVESTMENTS COMPANY, LLC, FIRST 100. LLC AND 1ST ONE HUNDRED HOLDINGS. LLC**

1  In addition, per Mr. Kislitsin's Twitter feed, he listed his location in or around 2010-2012 as Las Vegas, where Mr. Ngan resided. Mr. Kislitsin's Twitter handle, @udalite, corresponds with an AKA listed by the U.S. Attorney's Office in the Northern District of California for Mr. Kislitsin in his March 13, 2014 indictment in this district. Attached as **Exhibit 2** is a true and correct screenshot of Mr. Kislitsin's Twitter.

34. A jury convicted Mr. Nikulin at trial and the court sentenced him to 88 months in prison on September 29, 2020. *Id.*, Dkt. No. 282.

35. On information and belief, Mr. Kislitsin cooperated in the Government's prosecution of Mr. Nikulin.[2]

36. On November 3, 2020, four weeks after Mr. Nikulin's sentencing, Individual X signed the Consent and Agreement to Forfeiture with the U.S. Attorney's office in the Northern District of California and turned over the contents of the 1HQ3 Wallet. (Dkt. No. 8, ¶ 23.)

37. On November 20, 2020, seventeen days after Individual X signed the agreement, a federal judge in Nevada unsealed Mr. Kislitsin's 2013 indictment in response to a Government motion, after virtually nothing had occurred in the case over seven years per the docket in that case.[3] As the highest ranking federal prosecutors in the nation have commented, the unsealing of an indictment often indicates that the Government does not anticipate an arrest or prosecution.[4]

---

[2] Mike Eckel, *More Glimpses Of How Russian Intelligence Utilized Hackers Revealed In U.S. Trial*, rferl.org (March 16, 2020 16:13 GMT), https://www.rferl.org/a/more-glimpses-of-how-russian-intelligence-utilized-hackers-revealed-in-u-s-trial/30491223.html.

[3] *United States v. Kislitsin*, case No. 2:13-CR-00101-GMN-EJY, Dkt. No. 12 (D. Nev., Nov. 2020).

[4] Jeff Stone, *Indictment names Group-IB executive in scheme to sell hacked data*, Cyberscoop (March 5, 2020), https://www.cyberscoop.com/group-ib-nikita-kislitsin-indicted-formspring-nikulin/ ("When U.S. prosecutors unseal high-profile indictments against foreign suspects before they are arrested, it can be an implicit acknowledgement that individual is not likely to be apprehended and extradited to U.S. court soon. John Demers, assistant attorney general for national security, said last week that, if prosecutors believe an arrest is likely to occur "within a reasonable timeframe," the government will keep charges sealed.").

38.     A search of the Office of Foreign Assets Control's ("OFAC") Sanction List reveals that the only other individual alleged to have co-conspired with Mr. Nikulin and who remains abroad and out of U.S. custody, Alexsey Belan, is subject to sanctions from the U.S. Government.[5]

39.     Mr. Kislitsin has not been extradited and is not subject to sanctions from our government per the OFAC Sanction List. Instead, Mr. Kislitsin continues to operate as a prominent international businessperson in Moscow.[6]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 10th day of August, 2021, in Las Vegas, Nevada.

_____
JOSEPH GUTIERREZ, ESQ.

---

[5] https://sanctionssearch.ofac.treas.gov/ (last checked Aug. 10, 2021).
[6] *See Indictment names Group-IB executive in scheme to sell hacked data, supra* at fn. 4; *see also Group-IB's official statement on case No. CR 16-00440 involving Nikita Kislitsin*, Group IB (March 5, 2020), https://www.group-ib.com/media/official-statment-gib-cr-16-00440/.

# Exhibit 1

*signature: Bruce T. Beesley*
Honorable Bruce T. Beesley
United States Bankruptcy Judge

Entered on Docket
October 09, 2020

**ANDERSEN LAW FIRM, LTD.**
Ryan A. Andersen, Esq.
Nevada Bar No. 12321
3199 E Warm Springs Rd, Ste 400
Las Vegas, Nevada 89120
Email: *randersen@andersenlawlv.com*
Phone: 702-522-1992
Fax:    702-825-2824

*Attorneys for Battle Born Investments Company, LLC*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>RAYMOND NGAN,<br><br>Debtor. | Case No.: 17-14166-BTB<br>Chapter 7<br><br>**ORDER CONCERNING OWNERSHIP AND TRANSFERABILITY OF ASSET**<br><br>Hearing Date:  N/A<br>Hearing Time:  N/A |

The Court, having considered the *Motion for Clarification of Ownership and Transferability of Asset*, filed by Battle Born Investments Company, LLC ("Battle Born"), and having found good and adequate cause for the relief requested therein;

**NOW THEREFORE**, the Court hereby **ORDERS** as follows:

**IT IS ORDERED** that the Motion is **GRANTED**;

1       **IT IS FURTHER ORDERED** that, by virtue of 11 U.S.C. § 541, the commencement of the above-captioned bankruptcy case by Raymond Ngan ("Debtor") created a bankruptcy estate ("Estate") comprised of all legal and equitable interests of the Debtor, wherever located and by whomever held;

      **IT IS FURTHER ORDERED** that, by virtue of 11 U.S.C. § 541, property of the Estate included all interests of the Debtor in certain Monatomic Ultra-Pure Electrolytic Copper Powder ("Powder");

      **IT IS FURTHER ORDERED** that, by virtue of 11 U.S.C. § 323, Lenard E. Trustee was appointed as the duly-qualified chapter 7 trustee ("Trustee") for the Estate;

      **IT IS FURTHER ORDERED** that, by virtue of 11 U.S.C. § 704, the Trustee was exclusively authorized to liquidate or sell all property of the Estate;

      **IT IS FURTHER ORDERED** that, pursuant to the Trustee's exclusive authority to sell assets of the Estate, and after notice and a hearing as required by 11 U.S.C. § 363(b), the Court entered an order ("Sale Order") on May 14, 2020, at Dkt. No. 294, approving of the sale of certain assets of the Estate to Battle Born, such assets including all of the Debtor's interest in the Copper;

      **IT IS FURTHER ORDERED** that, pursuant to 11 U.S.C. § 363(m), Battle Born was deemed a good faith purchaser of the assets of the Estate, including all of the Debtor's interest in the Copper;

      **IT IS FURTHER ORDERED** that, on September 10, 2018, the Court entered an order at Dkt. No. 401, by which Battle Born received approval and authority to, with the assistance of the United States Marshals Service, seek out and take possession of the Copper ("Order for Possession");

      **IT IS FURTHER ORDERED** that, Battle Born is in lawful possession of the Copper, pursuant to both the Sale Order and the Order for Possession; and

//
//
//
//
//
//
//

1     **IT IS FURTHER ORDERED** that, as a result, Battle Born has the ability and authority necessary to sell or otherwise dispose of the Copper as it sees fit.

    **IT IS SO ORDERED**.

Respectfully submitted by:

**ANDERSEN LAW FIRM, LTD.**

By:    /s/ Ryan A. Andersen
         Ryan A. Andersen, Esq.
         Nevada Bar No. 12321
         3199 E Warm Springs Rd, Ste 400
         Las Vegas, Nevada 89120

*Attorneys for Battle Born Investments Company, LLC*

# # #

# Exhibit 2





