# **EXHIBIT 4**



- 9.7.4 PRE-SEIZURE PLANNING
  - 9.7.4.1 OVERVIEW
  - 9.7.4.2 PRE-SEIZURE PLANNING RESPONSIBILITY
  - 9.7.4.3 DECISION TO SEIZE
    - 9.7.4.3.1 Prospects for Success in Forfeiture Proceeding
    - 9.7.4.3.2 Evaluation of Property
    - 9.7.4.3.3 Net Equity Requirements
    - 9.7.4.3.4 Law Enforcement Objectives
    - 9.7.4.3.5 Department of Justice Authorization in Tax or Tax-Related Investigations
      - 9.7.4.3.5.1 Requesting Approval for Title 18 Forfeitures in Tax or

# Part 9. Criminal Investigation

# Chapter 7. Asset Seizure and Forfeiture

# Section 4. PRE-SEIZURE PLANNING

## 9.7.4 PRE-SEIZURE PLANNING

**Manual Transmittal**

November 20, 2013

**Purpose**

(1) This transmits a complete reprint with changes to IRM 9.7.4.

**Material Changes**

(1) All references to the Executive Office for Asset Forfeiture (EOAF) is changed to the Treasury Executive Office for Asset Forfeiture (TEOAF).

(2) Former paragraphs (5) and (6) of subsection 9.7.4.3.3 are deleted; the former paragraphs referenced obsolete net equity requirements.

(3) Subsection 9.7.4.3.5 is revised to change Directive 99 to Directive 128.

(4) Subsection 9.7.4.3.5 is further revised, with subsection 9.7.4.3.5.1 to update the process for requesting approval for Title 18 forfeitures.

(5) Subsection 9.7.4.6.1 is revised to change Customs Suspense Account to Treasury Suspense Account.

(6) Subsection 9.7.4.7.1 is revised to remove references to Contracting Officer's Technical Representative (COTR).

(7) Additional revisions, deletions, and grammatical changes were made throughout the section, which did not result in substantive changes but contributed to procedural clarity.

**Effect on Other Documents**

This IRM supersedes IRM 9.7.4 dated March 19, 2003.

**Audience**

- Tax-Related Investigation
- 9.7.4.4 ALTERNATIVES TO SEIZURE
- 9.7.4.5 SOURCES OF INFORMATION FOR SEIZURE
  - 9.7.4.5.1 Grand Jury Information
  - 9.7.4.5.2 Tax Return and Return Information
  - 9.7.4.5.3 Ex Parte Order
- 9.7.4.6 SPECIAL POLICIES AND CONSIDERATIONS
  - 9.7.4.6.1 Cash
  - 9.7.4.6.2 Financial Instruments
  - 9.7.4.6.3 Conveyances
  - 9.7.4.6.4 Perishable Goods
- 9.7.4.7 REAL PROPERTY AND ONGOING BUSINESS CONSIDERATIONS
  - 9.7.4.7.1 Real Property Pre-Seizure Services Available from the Seized

CI

**Effective Date**

(11-20-2013)

Daniel W. Auer for Richard Weber
Chief, Criminal Investigation

## 9.7.4.1 (03-19-2003)
## OVERVIEW

(1) Pre-seizure planning consists of anticipating and making intelligent decisions about **what** property should be seized, **how** and **when** it should be seized, and most important, **whether** it should be seized.

(2) Pre-seizure planning should occur, in both civil and criminal seizure and forfeiture actions, prior to the actual physical seizure of property, and prior to the filing of a civil judicial forfeiture complaint or an indictment with a forfeiture count or allegation.

(3) This section sets forth practices to minimize or avoid the possibility that IRS, Criminal Investigation (CI) and the Department of the Treasury will encounter unnecessarily difficult or insurmountable problems in the seizure, management, and disposition of seized assets.

## 9.7.4.2 (03-19-2003)
## PRE-SEIZURE PLANNING RESPONSIBILITY

(1) The Assistant United States Attorney (AUSA) is responsible for ensuring that proper **and** timely pre-seizure planning occurs in civil judicial and criminal forfeiture actions. In administrative forfeiture actions, the Asset Forfeiture Coordinator (AFC) has this responsibility.

(2) Although the AUSA may be ultimately responsible for pre-seizure planning in civil judicial and criminal forfeiture actions, the AFC is responsible for **initiating** the pre-seizure planning process set forth in this section and **ensuring** that they are followed in all seizure and forfeiture actions.

(3) Most importantly, it is the investigating agent's responsibility to inform the AFC of any potential seizure or forfeiture action as early as possible, so the AFC can ensure that timely and proper pre-seizure planning occurs.

(4) When an individual or the underlying conduct giving rise to the forfeiture is also the subject of a simultaneous criminal investigation or proceeding, the AUSA responsible for the civil forfeiture action should consult with the AUSA responsible for the criminal investigation or proceeding to ensure that their activities are coordinated and consistent.


8/26/2021                    Case 3:20-cv-07811-RS    Document 100-8    Filed 08/26/21    Page 4 of 17
                              9.7.4 PRE-SEIZURE PLANNING | Internal Revenue Service

- Property Contractor
- 9.7.4.7.2 Contaminated or Potentially Contaminated Real Property
- 9.7.4.7.3 Lead-Based Paint in Residential Real Property
- 9.7.4.7.4 National Register of Historic Places
- 9.7.4.7.5 Seizure of Occupied Real Estate
- 9.7.4.7.6 Headquarters Approval to Seize Real Property and Businesses
- 9.7.4.8 SEIZURE OF LIVESTOCK AND REGISTERED ANIMALS
- 9.7.4.9 DOCUMENTATION OF PRE-SEIZURE PLANNING
  - 9.7.4.9.1 Evaluation of Property and Net Equity

### 9.7.4.3 (03-19-2003)
### DECISION TO SEIZE

(1) There are numerous factors involved in the decision to seize property and commence a forfeiture action.

### 9.7.4.3.1 (03-19-2003)
### Prospects for Success in Forfeiture Proceeding

(1) The primary determination to be made before seizing property for forfeiture is whether the United States is likely to prevail in the ensuing forfeiture action. To make this determination, Criminal Tax (CT) Counsel and the local forfeiture AUSA should be consulted to assure there is sufficient evidence to show probable cause for the seizure and proof of forfeitability by a preponderance of the evidence at trial. The determination of evidentiary sufficiency should also include a realistic assessment of the validity of potential defenses that could ultimately defeat the forfeiture.

### 9.7.4.3.2 (11-20-2013)
### Evaluation of Property

(1) When determining whether to seize property that is subject to forfeiture, the type of property involved and its value should be considered and analyzed. The analysis should be a realistic estimate of the condition and value of the property, the extent of the violator's interest, and the potential validity of third-party claims.

(2) The seized property contractor should be consulted to discuss possible problems with the property's storage and preservation during the forfeiture proceeding. The Warrants and Forfeitures Section and the Treasury Executive Office for Asset Forfeiture (TEOAF) should also be contacted when particularly difficult problems of business management, maintenance, and/or eventual disposition are presented.

(3) If it is likely that third parties, such as lienholders or victims, will be entitled to relief from the forfeiture, or if the costs and difficulties of storage, preservation, and disposition will be unduly burdensome, it may be ill-advised or wasteful to seize the property and attempt to forfeit it. The same is true if the target property has a low monetary value or is in poor condition.

### 9.7.4.3.3 (11-20-2013)
### Net Equity Requirements

(1) The TEOAF Directive Number 20, Net Equity Requirements for Seized Property, provides policy for the net equity requirements of seizures by Treasury law enforcement agencies. Minimum net equity is the

- 9.7.4.9.2 Required Approval Signatures Prior to Seizure
- 9.7.4.10 SPECIAL AGENT LIABILITY IN SEIZURE CASES

    difference between current market value/appraised value of the property less innocent third party liens/mortgage(s) and estimated disposition expenses.

(2)  Criminal Investigation has established higher net equity requirements than those contained in Directive Number 20. The minimum net equity requirements established by CI on individual assets are as follows:

| | |
|---|---|
| Real Property- | $20,000 or 20 percent of the appraised value, whichever is greater |
| If Vacant Land | $10,000 or 20 percent of the appraised value, whichever is greater |
| Conveyances- | $ 5,000 |
| Vehicles | $10,000 |
| Vessels | $10,000 |
| Aircraft | |
| Currency/Monetary Instruments/Financial Accounts- | $ 2,000 |
| All Other Personal Property- | $ 2,000 |

(3)  The minimum net equity requirements may be waived in individual investigations to serve an overriding law enforcement objective such as:

    a. failure to seek forfeiture of some of the assets will cause the United States to take an inconsistent position in its theory of forfeiture; or

    b. the seized assets are an integral part of the criminal operation and the failure to seek forfeiture of the asset will allow the criminal operation to continue

(4)  The aggregate net equity is the total value of all the property seized from a common owner where the property is subject to forfeiture under the same statutory authority and on the same factual basis.

### 9.7.4.3.4 (03-19-2003)
### Law Enforcement Objectives

(1)  The purpose of forfeiture is not to make a profit for the United States, but to provide a remedial device to impose liability on persons who knowingly or consensually acquiesce in the illegal use of their property, or in the acquisition of criminally derived property. Therefore, even if the property has little value, its forfeiture may serve legitimate and overriding law enforcement objectives by

     depriving the violator or persons in concert with the violator, of its use and availability.

(2) When the proposed seizure and forfeiture involves identifiable victims other than the government, and such identifiable victims have an interest in the seized property which will likely result in mitigation in favor of the victims, consideration should be given to not pursuing the forfeiture. Criminal Investigation should pursue forfeiture if it appears the assets may be sold, disposed of, concealed or otherwise depleted before distribution to victims. Criminal Investigation should weigh public perception relative to forfeiture action where assets can only be protected by seizure by the government for eventual distribution to the victims, versus the cost of distributing said assets to victims through the forfeiture process. Factors weighing against pursuing the forfeiture include injunctions to prevent disposition or encumbrance of the property, or the likelihood that other circumstances, including existing law suits, liens, etc., will allow distribution of assets to the victims.

### 9.7.4.3.5 (11-20-2013)
### Department of Justice Authorization in Tax or Tax-Related Investigations

(1) It is the general practice of Criminal Investigation that Title 18 seizure/forfeiture authority will not be used in tax or tax-related investigations. However, there may be instances where Title 18 seizure/forfeiture provisions are appropriate in tax or tax-related investigations. Pre-seizure reviews and approvals are needed in these cases.

(2) The use of such forfeitures in tax and tax-related investigations may require approval by the Department of Justice Tax Division pursuant to the provisions of Tax Division Directive 128. Forfeitures in tax or tax-related investigations must be reviewed by Area Counsel, have the concurrence of the Director, Field Operations, and be approved by the Chief, Criminal Investigation (CI). If approved, the Chief, CI will then refer the matter to the requesting SAC. If a judicial case, the field office will prepare a transmittal memorandum and forward the request to Tax Division for authorization to pursue a judicial forfeiture action pursuant to Directive 128.

(3) The use of Title 18 forfeiture provisions in tax or tax-related investigations must be limited to egregious circumstances where:

  a. significant assets have been identified
  b. IRS civil collection methods cannot adequately protect the assets subject to forfeiture
  c. Title 26 seizure/forfeiture provisions are not applicable

### 9.7.4.3.5.1 (11-20-2013)

**Requesting Approval for Title 18 Forfeitures in Tax or Tax-Related Investigation**

(1)  It is generally acknowledged that, in many instances, time is of the essence when considering a seizure action. This is due to the fact that some types of assets (particularly currency or cash on deposit) can easily be placed outside the reach of the government. In addition, in some instances a decision to utilize Title 18 forfeiture provisions is made subsequent to the seizure of an asset (e.g., search warrants). Given these circumstances, it is understood that it may sometimes be impractical or impossible to forward a request without the required approval. Therefore, in any event where it is anticipated that forfeiture will be pursued under Title 18, approval will be sought prior to forfeiture, and as early as practicable. The process for making this request is as follows:

  a. A memorandum from the SAC; through the Director, Field Operations; to the Director, Warrants and Forfeiture, will be prepared. The memorandum will contain the following information:
  • A summary of the investigation.
  • An explanation as to why IRS collection methods cannot adequately protect the asset(s) subject to forfeiture and why the assets are at immediate risk.
  • An explanation as to why Title 26 seizure/forfeiture provisions are inapplicable.
  • Sufficient facts and information to determine the potential application of the Title 18 seizures/forfeiture provisions.
  • In those situations where a Title 18 seizure warrant has already been executed, an explanation of the circumstances that prevented the request for approval from being forwarded prior to the execution date.

  b. A Law and Fact Memorandum will be obtained from local Area Counsel and will be forwarded with the field office request.

  c. Where judicial forfeiture is anticipated, a memorandum of support will be obtained from the appropriate United States Attorney's Office. This advice will be sought within the confines of IRC §6103.

  d. The SAC will forward the above documents, together with a copy of the seizure warrant and affidavit (if a seizure has already been made) to his/her Director, Field Operations, for concurrence. The Director, Field Operations, will forward the request to the Director, Warrants and Forfeiture. The Director, Warrants and Forfeiture will seek the advice and recommendation of the Division Counsel/Associate Chief Counsel (Criminal Tax) regarding the request.

 e. The Director, Warrants and Forfeiture, will prepare a memorandum to the Chief, CI, through the Director, Operations Policy and Support. If approved, the Chief, CI will refer the matter to the requesting SAC. If a judicial case, the field office will prepare a transmittal memorandum and forward the package to the Department of Justice (DOJ), Tax Division, to pursue a judicial forfeiture.

 f. Upon approval by the Chief, CI, the administrative forfeiture action may commence.

### 9.7.4.4 (03-19-2003)
### ALTERNATIVES TO SEIZURE

(1) The primary goal of the Treasury Asset Forfeiture Program is to deprive criminals of property used or acquired through illegal activities. Depriving an individual of an asset derived from or used in a crime can be achieved by means other than forfeiture. Alternatives include:

 a. In investigations involving real estate with negative or minimal net proceeds, allow the mortgage holder to foreclose on the mortgage, targeting the equity, if any, for seizure from the escrow account.

 b. In certain high crime areas, low value real estate (e.g., "crack houses") may be removed by working with the local authorities to have the building condemned based on health and sanitation code violations, or as a public nuisance.

 c. In instances where local taxes are owed, work with the local taxing authorities to have the property seized for back taxes.

 d. Allow the posting of cash or other property in lieu of seizure of the asset.

 e. In instances where the property is being marketed for sale, allow the sale to continue and seize the net proceeds.

### 9.7.4.5 (03-19-2003)
### SOURCES OF INFORMATION FOR SEIZURE

(1) In the course of a criminal investigation, special agents work with restricted and sensitive information from various sources. When planning for a civil seizure and forfeiture action, special agents must be certain to adhere to the secrecy provisions surrounding the grand jury process and restrictions concerning the disclosure of tax return and return information.

### 9.7.4.5.1 (03-19-2003)
### Grand Jury Information

(1) The Civil Asset Forfeiture Reform Act of 2000 (CAFRA) amended 18 USC §3322, Disclosure of Certain Matters Occurring before Grand Jury, to allow a person who is privy to grand jury information received in the course of duty as an attorney for the government, or disclosed under the Federal Rules of Criminal Procedure (FRCrP) Rule 6(e), to disclose that information to an "attorney for the government" for use in connection with any civil forfeiture provision of federal law.

(2) Because the definition of "attorneys for the government" may vary between districts, the local AUSA should be consulted before grand jury information, not made public through an indictment or application and affidavit for search or seizure warrant, is disclosed to CT Counsel where their assistance is needed to prepare a law and fact memorandum.

(3) Because the rules and definitions of grand jury information may also vary between circuits and districts, the local AUSA should be consulted regarding the disclosure of grand jury information in connection with civil forfeiture actions.

### 9.7.4.5.2 (03-19-2003)
### Tax Return and Return Information

(1) An ex parte order is the only method that allows a special agent to utilize tax return and return information in an affidavit for a seizure warrant or in a complaint for civil forfeiture (in non-tax investigations) and in subsequent litigation.

### 9.7.4.5.3 (03-19-2003)
### Ex Parte Order

(1) Pursuant to 26 USC §6103(i)(1), for non-tax criminal investigations or 26 USC §6103(i)(4), for non-tax civil investigations, a Federal district court judge or magistrate may grant an ex parte order for the disclosure of tax return and return information:

   a. if the court finds that such tax return or return information has probative value in establishing the commission of a crime or the guilt or liability of a party, or
   b. to the extent required by order of the court pursuant to 18 USC §3500 or FRCrP Rule 16

(2) If an ex parte order has been granted solely pursuant to 26 USC §6103(i)(1), a second ex parte order pursuant to 26 USC §6103(i)(4)(A) must be obtained prior to use in a related civil forfeiture (in non-tax criminal investigations).

(3) If tax return and return information has been accessed through the authorization of a tax grand jury investigation, an ex parte order

| | |
|---|---|
| | pursuant to 26 USC §6103(i)(4)(A) must be obtained to utilize tax return and return information in a related civil forfeiture action (in non-tax criminal investigations). |
| (4) | In a non-tax criminal investigation, an ex parte order obtained pursuant to 26 USC §6103(i)(1) and (i)(4) is the preferable method to access and utilize tax return and return information in a related civil forfeiture. |

### 9.7.4.6 (03-19-2003)
### SPECIAL POLICIES AND CONSIDERATIONS

| | |
|---|---|
| (1) | The seizure of certain types of personal property requires special consideration in the pre-seizure planning process. One consideration is that a search warrant may be required in addition to a seizure warrant when the seizure of property for forfeiture involves an intrusion into an area where there is a legitimate expectation of privacy and there are no exigent circumstances mandating immediate action to preserve the property. |

### 9.7.4.6.1 (11-20-2013)
### Cash

| | |
|---|---|
| (1) | The security, budgetary, and accounting problems associated with the seizure and retention of large amounts of cash creates great concern within CI, the Department of the Treasury, and Congress, and raises both financial management and internal control issues. |
| (2) | Criminal Investigation policy mandates that domestic and foreign currency seized for forfeiture, except where it is to be used as evidence or held as a "collectible asset" , must be expeditiously counted, processed, and deposited to the Treasury Suspense Account within 5 days of seizure. The use of safe deposit boxes or other secure methods of storing seized currency temporarily is acceptable when necessary. |
| (3) | The TEOAF Directive Number 4, Seized Cash Management Policy, establishes policy on the management of seized cash, including levels of approval to hold seized currency for evidentiary purposes. |

### 9.7.4.6.2 (11-20-2013)
### Financial Instruments

| | |
|---|---|
| (1) | Because the value of financial instruments can be lost or diminished if proper procedures are not followed, TEOAF issued Directive Number 2, Seizures of Financial Instruments. The following financial instruments seized for forfeiture are to be handled in accordance with the procedures in Directive Number 2: |

    a. postal money orders

     b. personal checks
     c. cashier's checks
     d. certificates of deposit
     e. traveler's checks
     f. stocks and bonds
     g. US savings bonds
     h. airline tickets

### 9.7.4.6.3 (11-20-2013)
### Conveyances

(1) If feasible, title and lien searches should be considered prior to the seizure of certain conveyances for forfeiture. State motor vehicle agencies, the Federal Aviation Administration, and the US Coast Guard keep records of ownership and certain security interests which can be indispensable in deciding whether to pursue forfeiture.

(2) The seized property contractor should be consulted about the marketability of certain conveyances to be seized and the possible need for a prompt interlocutory sale of the property to prevent deterioration or damage and to avoid excessive storage and maintenance costs.

(3) The TEOAF Directive Number 33, Seizure of Motor Vehicles, Payment of Liens and Official Use Requirements, directs seizing agencies and the seized property contractor to use the National Automobile Dealers Association (N.A.D.A.) Official Used Car Guide as the standard source for assigning "appraised" or "fair market " values of seized vehicles.

### 9.7.4.6.4 (03-19-2003)
### Perishable Goods

(1) Seizing perishable goods poses the immediate problem of needing to maintain the condition of the asset at time of seizure. It is extremely important to involve the seized property contractor in pre-seizure discussions since the value of the asset can deteriorate rapidly if appropriate measures are not taken.

### 9.7.4.7 (03-19-2003)
### REAL PROPERTY AND ONGOING BUSINESS CONSIDERATIONS

(1) When real property or an ongoing business is the contemplated subject of forfeiture, it is particularly important to investigate ownership interests in the property. Additionally, possible problems with its custody, marketability, and eventual disposition can cause further concerns. Other considerations may involve deciding whether and how to continue commercial operation of a business enterprise.

### 9.7.4.7.1 (11-20-2013)
### Real Property Pre-Seizure Services Available from the Seized Property Contractor

(1) The seized property contractor provides pre-seizure and post-seizure assistance and property management services for both residential and commercial properties. These services are detailed in the seized property contractor's Statement of Work, which completely describes the seized property contractor's work requirements.

(2) At a minimum during pre-seizure planning, the AFC will prepare a Disposition Order. The order instructs the seized property contractor to obtain a title report (to determine the legal owner of the property and identify all recorded mortgages, liens, easements, etc.) and prepare a limited or " drive-by" appraisal of real property and/or a business and, in the case of an ongoing business, a business operation analysis and business operations plan. The seized property contractor can also be instructed to provide a net equity and cost benefit analysis to assist in pre-seizure planning.

(3) The seized property contractor is required to immediately notify the AFC upon finding any lead-based paint or other environmental issues during pre-seizure analysis and provide their management recommendations. These issues are especially critical in evaluating whether or not to proceed with the forfeiture of certain real property and/or ongoing businesses. Environmental issues and lead-based paint are covered in subsections below.

### 9.7.4.7.2 (11-20-2013)
### Contaminated or Potentially Contaminated Real Property

(1) It is the policy of both the Department of the Treasury and the Department of Justice that contaminated real property, or potentially contaminated with hazardous substances may, in the exercise of discretion, be seized and forfeited upon a determination by the United States Attorney in the district where the property is located. The determination is made in consultation with the seizing agency and the seized property contractor. The United States Attorney may delegate this authority to an AUSA, with a provision for review by a supervisor.

(2) The Department of the Treasury policy is contained in TEOAF Directive Number 7, Seizure and Forfeiture of Real Property That is Potentially Contaminated, or is Contaminated, with Hazardous Substances.

(3) This policy is applicable regardless of the type or source of the hazardous substance(s).

(4) This policy is based on the ability of the United States to invoke an "innocent owner" defense from liability for hazardous substance

        contamination found on real property, if such contamination resulted from a prior owner's activities.

(5) However, if the real property becomes contaminated with a hazardous substance after the United States becomes the owner, then the "innocent owner" defense is inapplicable to that contamination. This situation normally will arise when the United States operates a business or activity on the property that results in the storage, release or disposal of hazardous substance (e.g., gasoline station, metal plating shops, dry cleaners, printers, etc.).

(6) This policy envisions United States Attorneys exercising discretion in the seizure and forfeiture of real property that is contaminated or potentially contaminated with hazardous substances. Normally, such properties should not be forfeited unless there is at least $30,000 in net equity. Furthermore, such properties should not be forfeited when there is reason to believe that property is substantially contaminated with hazardous substances and that such contamination would render the property unmarketable. Clean-up costs can be considerable particularly when the water table is involved. In making this determination an environmental assessment may be ordered, which will be paid by the Treasury Forfeiture Fund.

### 9.7.4.7.3 (11-20-2013)
### Lead-Based Paint in Residential Real Property

(1) The Department of Housing and Urban Development (HUD) first promulgated regulations in 1978 regarding the use and disposal of residential property that may have lead-based paints. The regulations require Federal agencies to:

    a. inspect for lead-based paint
    b. eliminate the hazards of any lead-based paint present
    c. notify prospective purchasers of the hazard

(2) The TEOAF issued Directive Number 30, Interim Guidelines re: Lead-Based Paint in Residential Property Built Prior to 1978, to set policy with regard to the following:

    a. unoccupied pre-1978 constructed residential properties targeted for seizure
    b. seized unoccupied residential properties-leasing the property
    c. seized and occupied pre-1978 residential property
    d. disposition of seized occupied residential property
    e. continued case processing to seizure/forfeiture

(3) If the decision is made to progress to seizure/forfeiture of a residential real property found to be contaminated with lead-based paints, or it is assumed that a residential real property is

> contaminated with lead-based paints based solely on the fact that the property was constructed prior to 1978, the AFC must obtain written concurrence from TEOAF. The written request will be made by memorandum from the SAC to the Director, Treasury Executive Office for Asset Forfeiture, through the Director, Operations Policy and Support. Directive Number 30 sets forth what information that should be included in the written request.

(4) The seized property contractor has been instructed not to take real property subject to Directive Number 30 into custody without the required written concurrence of the Director, Treasury Executive Office for Asset Forfeiture.

### 9.7.4.7.4 (11-20-2013)
### National Register of Historic Places

(1) In 1966, Congress passed the National Historic Preservation Act (NHPA) to preserve irreplaceable parts of the American heritage to allow future generations of Americans to benefit from the cultural, educational, and aesthetic qualities of these historic places.

(2) The NHPA not only applies to Federal buildings and land managed by Federal agencies, but it also applies to all other historic properties, which may be seized, and subject to forfeiture. The TEOAF issued Directive Number 25, Department Policy Regarding the Seizure and Forfeiture of Real Property that is included in or eligible for the National Register of Historic Places, to set policy for Treasury law enforcement agencies seizing and forfeiting these properties to ensure that these properties are managed in such a way that prevents the loss of their historic integrity and protects national interests.

### 9.7.4.7.5 (11-20-2013)
### Seizure of Occupied Real Estate

(1) The TEOAF Directive Number 3, Seizure of Occupied Real Property, sets forth policy regarding the seizure of occupied real property. Except as provided in 18 USC §985, real property that is the subject of a civil forfeiture action cannot be seized before entry of an order of forfeiture. Real property that is subject to criminal forfeiture generally cannot be seized prior to entry of a preliminary order of forfeiture.

(2) Directive Number 13, Occupancy Agreements, was developed by TEOAF to reclassify leases subject to state landlord/tenant laws and establish that the agreement is a license. This will enhance the United States' position in evicting occupants when necessary.

(3) Directive Number 3 and Directive Number 13 also apply to occupied real property after the entry of an order of forfeiture.

### 9.7.4.7.6 (11-20-2013)
### Headquarters Approval to Seize Real Property and Businesses

(1) Concurrence by Headquarters CI, is required before real property and businesses are seized and taken into custody. Headquarters concurrence is not required prior to the filing of a complaint or lis pendens, a post and walk, or the indictment of real property or businesses. However, concurrence of Headquarters CI, must be obtained prior to the physical seizure of real property and businesses through a final judgment/order of forfeiture (civil) or preliminary order of forfeiture (criminal).

(2) Headquarters concurrence should be obtained by memorandum, prepared by the AFC, from the SAC to the Director, Warrants and Forfeiture, as early as possible in order to assist field offices in ensuring that the contemplated enforcement action complies with the strategic goals of the agency and TEOAF. The memorandum should concisely state the economic as well as law enforcement value of the seizure. The memorandum should also address any sensitive issues, possible adverse publicity, and risks associated with the seizure.

(3) The field office must perform a thorough pre-seizure analysis of each real property and business to be seized. The AFC should task the seized property contractor with assisting in a pre-seizure analysis that includes the following:

   a. real property and/or business appraisal
   b. a preliminary title report
   c. a net equity or cost/benefit analysis
   d. an evaluation of the property for existence of lead-based paint, potential environmental hazards, and possible historical significance, and
   e. if the seizure involves an on-going business, a business operations analysis and business operations plan

(4) The results of the pre-seizure analysis with reference to the steps listed above and the date they were performed by the seized property contractor should be included in the memorandum requesting HQ concurrence to seize real property or ongoing businesses. The Real Property/Business Pre-Seizure Checklist and Net Equity Worksheet forms located in Document Manager should be completed and attached to the memorandum. An approval signature line should be included at the end of the memorandum.

### 9.7.4.8 (11-20-2013)
### SEIZURE OF LIVESTOCK AND REGISTERED ANIMALS

(1) The decision to seize livestock is very serious and requires extraordinary analysis from both an operational and economic perspective. Consultation with the Associate Director, Warrants and Forfeiture, TEOAF, and the seized property contractor is essential.

(2) Policy and procedures for pre-seizure planning, seizure and management, and disposition of livestock and registered animals are covered in TEOAF Directive Number 15, Seizure of Livestock and Registered Animals, to provide uniformity in application by Treasury law enforcement agencies.

### 9.7.4.9 (03-19-2003)
### DOCUMENTATION OF PRE-SEIZURE PLANNING

(1) The pre-seizure planning process will be documented in the seizure/forfeiture file.

### 9.7.4.9.1 (03-19-2003)
### Evaluation of Property and Net Equity

(1) Personal Property and Real Property/Business Pre-Seizure Checklists and Net Equity Worksheet forms are located in Document Manager and should be prepared prior to the seizure of property. Any pre-seizure analyses requested from the seized property contractor will be documented in the seizure/forfeiture file. An explanation for any downward departure from either an individual asset net equity requirement or the $25,000 aggregate will be documented in the seizure/forfeiture file.

### 9.7.4.9.2 (03-19-2003)
### Required Approval Signatures Prior to Seizure

(1) Section 1203(b)(1) of the IRS Restructuring and Reform Act of 1998, P.L. 105-206, establishes a number of actions which, if committed by IRS employees in the course of their official duties, will require termination of employment. Section 1203(b)(1) prohibits "willful failure to obtain the required approval signatures on documents authorizing the seizure of a taxpayer's home, personal belongings, or business assets. " While the legislative history of the Restructuring and Reform Act suggests that this provision was primarily meant to apply to collection activities, it is considered to apply to CI seizures for evidentiary and forfeiture purposes.

(2) Section 1203(b)(1) was determined by Division Counsel/Associate Chief Counsel (Criminal Tax), to apply to CI seizures of a taxpayer's home, personal belongings, or business assets, both for 26 USC §7301 and 7302 seizures, as well as seizures under 18 USC §981 and 982.

 (3) Prior to the seizure of any property, both for 26 USC §7301 and 7302 seizures, and seizures under 18 USC §981 and 982, an Enforcement Action Review Form must be prepared and the required approval signatures obtained. The Enforcement Action Review Form is located in Document Manager.

 (4) The Risk Assessment Guide and Post Enforcement Operation Summary Form may also be required in an enforcement operation involving the seizure of property depending on the nature of the action and the local field office policy. These documents are also located in Document Manager.

### 9.7.4.10 (11-20-2013)
### SPECIAL AGENT LIABILITY IN SEIZURE CASES

 (1) Special agents should always obtain a judicial determination before seizing property in order to insulate themselves from liability. The TEOAF Directive Number 6, Judicial Approval Prior to Seizure, details multiple purposes that judicial approval serves.

 (2) If a claimant prevails in a forfeiture action but it appears that there was reasonable cause for the seizure, the court will enter a certificate of reasonable cause relieving the special agent of liability in connection with the seizure or forfeiture action.

*Page Last Reviewed or Updated: 10-Sep-2017*