# EXHIBIT 5

**U.S. Department of Justice**
Criminal Division
*Money Laundering and Asset Recovery Section*

# Asset Forfeiture Policy Manual 2021

# Table of Contents: Asset Forfeiture Policy Manual

**Foreword** .......... **1**

**Chapter 1: Planning for Seizure and Restraint** .......... **3**

I. Guidelines for Planning for Seizure and Restraint .......... 3
  A. Background .......... 3
  B. Scope of assets covered by guidelines .......... 4
  C. General policy guidelines .......... 6
  D. Seizure planning questionnaires and documentation .......... 8
  E. Quick release .......... 14
II. Pre-seizure Judicial Review .......... 15

**Chapter 2: Seizure and Restraint** .......... **17**

I. Overview .......... 17
II. General Procedures for Seizing Property .......... 18
  A. Notification by seizing agency .......... 18
  B. Forms of process .......... 18
  C. Responsibility for execution of process .......... 20
III. Seizures for Criminal Forfeiture .......... 20
  A. When must the government seek a criminal seizure warrant or a criminal restraining or "housekeeping" order to be entitled to retain custody of the asset for potential criminal forfeiture? .......... 20
  B. When and how must the government seek a criminal seizure warrant or a criminal restraining or "housekeeping" order to preserve the option of pursuing civil forfeiture? .......... 21
  C. Property seized without a warrant .......... 24
  D. Property seized for evidence .......... 24
IV. Proper Use of Writs of Entry in Civil and Criminal Forfeiture Cases .......... 24
  A. When should the government obtain a writ of entry? .......... 24
  B. Explanation .......... 25
V. Seizure of Financial Instruments and Cryptocurrency .......... 25
  A. Certificates of deposit .......... 25
  B. Cryptocurrency .......... 26
  C. Employee Retirement Income Security Act (ERISA) accounts .......... 29
  D. Interest On Lawyer Trust Accounts (IOLTA) .......... 30
  E. Life insurance .......... 30
  F. Money orders .......... 32
  G. Personal, certified, and cashier's checks .......... 34
  H. Prepaid access devices .......... 35

I. Securities ....37
J. Travelers' checks ....38
K. U.S. savings bonds ....39
VI. Seized Cash Management ....40
VII. Use of Asset Forfeiture Authorities in Connection with Structuring Offenses ....41
A. Link to prior or anticipated criminal activity ....41
B. No intent to structure ....42
C. 150-day deadline ....42
D. Settlement ....43
E. Internal Revenue Service (IRS) structuring cases ....43

**Chapter 3: Seizures by State and Local Law Enforcement ....45**
I. Forfeitures Follow the Prosecution ....45
II. General Adoption Policy ....45
III. Custody ....46
A. Concurrent jurisdiction ....46
B. Use of anticipatory seizure warrants to obtain federal in rem jurisdiction ....48
C. Retention of custody by state or local agency during federal forfeiture proceedings ....48
IV. Federal Adoption Procedure ....49
A. Federal adoption request ....49
B. Federal law enforcement agency review ....51
C. Timing ....51
V. Cases Initiated by a U.S. Attorney Directly with State and Local Law Enforcement without Federal Agency Involvement ....52
A. Direct adoption by the U.S. Attorney ....52
B. Direct referral by the U.S. Attorney ....53

**Chapter 4: Real Property ....55**
I. Pre-forfeiture Considerations ....55
A. General policy ....55
B. Real property valuation ....55
C. Commencing the civil forfeiture action and establishing in rem jurisdiction ....57
D. Title conveyance ....59
E. Contamination liability ....60
II. Ownership and Notice ....60
A. Title search ....61
B. Lis pendens ....61
C. Noticing the Mortgage Electronic Registration System (MERS) ....62

III. Third Party Interests ....62
A. Tenancy interests ....62
B. Occupancy agreements for tenants ....62
C. Business or corporate owners ....63
D. Lienholders ....63
IV. Taxes and Penalties ....63
A. Payment of state and local real property taxes ....63
B. Some taxes become a lien on the property before they are due ....63
C. Payment of interest and penalties on real property taxes ....64
V. Real Property Transfers ....64
A. Equitable sharing transfer for official use ....65
B. Weed & seed initiative ....65
C. Operation Goodwill ....66
D. Federal component transfers ....66
E. Governor's request for historic, recreational or preservation purposes ....66

**Chapter 5: Administrative and Judicial Forfeiture ....67**
I. Overview ....67
A. Seized property eligible for forfeiture should be forfeited ....67
B. Forfeiture should follow the prosecution ....67
II. Administrative Forfeiture Guidelines ....68
A. Scope of property subject to administrative forfeiture ....68
B. Administrative forfeiture notice deadlines ....70
C. Timeliness and content of claims in administrative proceedings ....73
D. Decisions to forego administrative forfeiture proceedings in favor of civil or criminal judicial resolutions ....75
E. Plea and settlement negotiations involving property subject to administrative forfeiture ....75
III. Judicial Forfeiture Guidelines ....76
A. Parallel administrative, civil, and criminal forfeiture proceedings ....76
B. Deadlines for instituting civil judicial forfeiture proceedings ....76
C. Providing notice of judicial forfeiture actions ....77
D. Issues specific to civil judicial proceedings ....81
E. Issues specific to criminal judicial proceedings ....88
IV. Firearms Forfeiture Policy ....88
A. Preference for forfeiture ....89
B. Administrative and civil judicial forfeiture of firearms deadline issues ....89
C. Firearms are treated differently ....90

**Chapter 6: Grand Jury....91**
I. Introduction....91
II. Disclosures of Grand Jury Information under 18 U.S.C. § 3322(a)....91
A. Summary....91
B. Discussion....92
C. Conclusion....94
III. Presenting Forfeiture to the Grand Jury....94
A. Charging document must include notice of forfeiture....94
B. Government may ask the grand jury to make a probable cause finding on the nexus between a charged offense and allegedly forfeitable property....95

**Chapter 7: Litigation Issues: Legal and Ethical....99**
I. Negotiating with Fugitives....99
A. Summary....99
B. Discussion....99
II. Criminal Forfeiture and *Brady* Obligations....100
III. Fifth Amendment Advisements in Civil Forfeiture Cases....101
IV. Preservation Policy for Civil Forfeiture....102
A. Legal obligation....102
B. Litigation holds....103
C. Information subject to preservation....104
D. Litigation hold notice....104

**Chapter 8: International Forfeiture....109**
I. Forfeiture of Assets Located Abroad under U.S. Law....109
II. Forfeiture of Assets Located in the United States under Foreign Law....109
III. Policy on International Contacts....109
IV. Foreign Property Management Issues....110
V. Publication of Notice Abroad....111
VI. Consultation with Money Laundering and Asset Recovery Section (MLARS) or Office of International Affairs (OIA) when Seeking Repatriation of Forfeitable Assets Located Abroad....111
VII. Probable Cause Finding to Seize or Restrain Assets Abroad....112
A. Criminal forfeiture cases....112
B. Civil forfeiture cases....114
C. Parallel civil and criminal cases....115
VIII. Consultation for Civil Forfeiture of Property Located Overseas....115
IX. Approval Process for 18 U.S.C. § 981(k) Seizure from Correspondent Bank Account....116
X. Lack of Administrative Forfeiture Authority for Overseas Property....117
XI. Settlements, Plea Agreements, and Attorneys' Fees....117

XII. Enforcement of Judgments ....118
- A. Foreign enforcement of U.S. judgments ....118
- B. U.S. enforcement of foreign judgments and restraining orders ....118

XIII. International Sharing ....119

**Chapter 9: Trustees, Monitors, Managers and Custodians in Forfeiture Cases ....121**

I. Overview ....121
- A. Purpose ....121
- B. Statutory authority ....121
- C. Special considerations ....122
- D. Determining when a trustee, monitor, manager, or custodian should be engaged ....122

II. Prerequisites to the Selection of a Trustee, Monitor, Manager, or Custodian: Seizure Planning and Other Requirements ....123

III. Qualifications of Trustees, Monitors, Managers, and Custodians ....124

IV. Trustee, Monitor, Manager, and Custodian Expenses ....125

**Chapter 10: Use and Disposition of Seized and Forfeited Property ....127**

I. Management and Disposal of Seized Assets ....127
- A. Role of the U.S. Marshals Service (USMS) ....127
- B. Department of the Treasury property custodians ....127
- C. Seizure planning ....127
- D. Coordination of custody and disposition decisions ....127

II. Use of Seized Property ....128
- A. Background ....128
- B. Use of seized property is prohibited ....128
- C. Pre-forfeiture sale of seized property ....128

III. Disposition of Forfeited Property and Funds ....128
- A. Forfeiture orders ....128
- B. Disposition of forfeited property in civil and criminal cases ....129
- C. Sale of forfeited property ....129
- D. Disposition of forfeited funds ....130

IV. Purchase or Personal Use of Forfeited Property by Department of Justice Employees ....131

**Chapter 11: Settlements .......... 133**
I. General Policy .......... 133
  A. Scope .......... 133
  B. General settlement principles .......... 135
II. Settlement Approval Authorities .......... 137
  A. Authorizing officials .......... 137
  B. Approval authority examples .......... 138
III. Using Administrative Forfeiture to Achieve a Settlement .......... 138
  A. Settlement of forfeiture as an administrative forfeiture after a claim is filed in an administrative forfeiture proceeding but before a judicial complaint is filed .......... 138
  B. Using administrative forfeiture proceeding to settle civil forfeiture case where no prior administrative forfeiture proceeding has commenced .......... 140
  C. Using administrative forfeiture proceeding to settle a criminal forfeiture action .......... 140
IV. References to Remission or Restoration in Settlements .......... 141
V. Settlements in Civil Judicial Forfeiture Cases .......... 141
VI. Plea Agreements Incorporating Criminal Forfeiture .......... 142
VII. Global Settlements and Dealing with Claimants and Witnesses .......... 142
  A. Ethical considerations .......... 142
  B. Global settlements .......... 142
  C. Claimants and witnesses .......... 144
VIII. Cash in Lieu of Forfeiture of Other Property .......... 145
  A. Department of Justice policy .......... 145
  B. Policy limitations .......... 145
  C. "Cash in lieu" vs. "substitute asset" .......... 146
  D. Interlocutory sales .......... 147
IX. Agreements to Exempt Attorneys' Fees from Forfeiture and Payment of Equal Access to Justice Act (EAJA) Fees .......... 147

**Chapter 12: Attorneys' Fees .......... 149**
I. Payment of Attorneys' Fees in Civil Forfeiture Cases .......... 149
II. Payment of Attorneys' Fees in Criminal Forfeiture Cases .......... 149
  A. Defendant's attorneys' fees .......... 149
  B. Third party petitioner's attorneys' fees .......... 150
III. Payment of Attorneys' Fees in Forfeiture Cases Chart .......... 153
IV. Forfeiture of Attorneys' Fees .......... 153

**Chapter 13: Post-Forfeiture Third Party Interests ....................155**

I. Petitions for Remission and Mitigation ....................155
- A. Owners ....................155
- B. Lienholders ....................156
- C. Mitigation....................156
- D. Procedure for notice and processing petitions ....................157
- E. Priority of payments....................157
- F. Cultural property....................157

II. Qui Tam Actions: Payment of Relator's Share ....................158
- A. Overview of the False Claims Act (FCA)....................158
- B. Forfeiture proceedings as alternate remedies....................159
- C. Source of relator's right to recover ....................160
- D. Relator's share is a percentage of the net forfeiture recovery....................161
- E. Procedure for paying relator's share ....................162

**Chapter 14: Forfeiture and Compensation for Victims of Crime ....................163**

I. Overview....................163

II. Returning Forfeited Assets to Victims ....................164
- A. Remission....................164
- B. Restoration ....................167
- C. Preservation of assets for victims ....................171
- D. Special considerations for federal government victims....................171
- E. Special considerations for victims of human trafficking crimes....................172
- F. Hybrid remission and restoration review....................172
- G. Termination of forfeiture and direct payment of assets to victims ....................172
- H. Comparison of judicial remission and restoration ....................173

III. Constructive Trusts in Multiple-Victim Fraud Cases....................174

**Chapter 15: Federal Official Use and Equitable Sharing ....................175**

I. Federal Official Use ....................175
- A. Overview....................175
- B. Official use designations by the federal seizing agency....................175
- C. Official use requests by other federal agencies....................175
- D. Internal guidelines....................176
- E. Payment of liens on personal property placed into federal official use ....................177

II. Equitable Sharing....................177

III. Processing Applications for Equitable Sharing....................178
- A. Eligible participants ....................178
- B. Compliance ....................178
- C. Equitable sharing allocations....................178
- D. Submission of requests for official use or equitable sharing ....................179

E. Final decision maker ....... 179
F. Communication with the requesting agency ....... 181
G. Reimbursement of federal costs and expenses ....... 181
IV. Equitable Sharing Payments ....... 181
V. Federal Contribution Form (FCF) ....... 182
VI. Reverse Sharing ....... 183
VII. International Sharing of Forfeited Assets ....... 184

**Appendix A:**
**Approval, Consultation, and Notification Requirements Chart ....... 185**

# Foreword

The Money Laundering and Asset Recovery Section (MLARS) is pleased to release the 2021 edition of the *Asset Forfeiture Policy Manual*, a publicly available compilation of policies governing the Department of Justice Asset Forfeiture Program (Program). The purpose of the *Policy Manual* is to provide Department of Justice (Department) prosecutors, agents, and support staff with a reference manual containing the policies in support of the Program's goals.

The Program's mission is to use asset forfeiture as a tool to deter, disrupt, and dismantle criminal enterprises, denying them the instruments and the proceeds of criminal activity. The effective use of both criminal and civil asset forfeiture is an essential component of the Department's efforts to combat the most sophisticated criminal actors and organizations including terrorist financiers, fraudsters, human traffickers, transnational drug cartels, and cyber criminals. The Program's primary goals, announced in *The Attorney General's Guidelines on the Asset Forfeiture Program* (July 2018) (*AG Guidelines*), include:

(1) To punish and deter criminal activity by depriving criminals of property used in or acquired through illegal activities.

(2) To promote and enhance cooperation among federal state, local, tribal, and foreign law enforcement agencies.

(3) To recover assets that may be used to compensate victims when authorized under federal law.

(4) To ensure the Program is administered professionally, lawfully, and in a manner consistent with sound public policy.

For 2021, the updates to the *Policy Manual* focus particular attention on policy guidance related to the operational aspects of the forfeiture process itself, including updated consultation requirements when planning seizures, new guidance on when and how to seek certain criminal warrants, new delegations to the U.S. Attorney's Offices to approve direct adoptions and referrals, and substantial revisions to the grand jury and settlements chapters.

This *Policy Manual* replaces and supersedes all previous versions of the *Policy Manual* and all Policy Directives issued by MLARS unless otherwise noted. The *Policy Manual* is available in print and online at MLARS Publications. Any future updates issued before the publication of the next *Policy Manual* will be issued as MLARS Policy Directives.

The *Policy Manual* sets forth the policies of the Department of Justice. It does not, however, create or confer any legal rights, privileges, or benefits that may be enforced in any way by private parties. *See United States v. Caceres*, 440 U.S. 741 (1979).

We recommend using this format when citing the *Policy Manual*:

> *Asset Forfeiture Policy Manual* (2021), Chap. ___, Sec. ___.___. (e.g. Chap. 1, Sec. I.A).

Deborah L. Connor
Chief
Money Laundering and
Asset Recovery Section

# Chapter 1: Planning for Seizure and Restraint

## I. Guidelines for Planning for Seizure and Restraint

### A. Background

The Department of Justice (Department) Asset Forfeiture Program (Program) encompasses the seizure and forfeiture of assets that represent the proceeds of, or were used to facilitate, federal crimes. The Program has four primary goals:

(1) Punish and deter criminal activity by depriving criminals of property used in or acquired through illegal activities.

(2) Promote and enhance cooperation among federal, state, local, tribal, and foreign law enforcement agencies.

(3) Recover assets that may be used to compensate victims when authorized under federal law.

(4) Ensure that the Program is administered professionally, lawfully, and in a manner consistent with sound public policy.

The Department must administer the Program in a fiscally responsible manner to minimize costs while maximizing the Program's ability to deter criminal activity. These guidelines encourage practices that accomplish the Program's mission, while minimizing or avoiding the possibility that the government may inadvertently file forfeiture actions against properties that lead to net losses to the Assets Forfeiture Fund (AFF) or cause the government to assume unnecessarily difficult or insurmountable problems in the management and disposition of properties.[1] In particular, these guidelines ensure that the U.S. Marshals Service (USMS), including its district offices and headquarters Asset Forfeiture Division (AFD), and other agencies with responsibility for seizing, restraining, managing, and disposing of assets are consulted before legal action is commenced against forfeitable property.[2] Seizure planning affords these agencies an opportunity to conduct financial analyses to determine net equities of identified assets and to review in advance title or ownership issues that may delay or prevent the government from disposing of an asset in a timely manner following forfeiture. In addition, seizure planning gives the USMS sufficient time to plan for the care of the assets, assess the level of difficulty in handling the assets, and identify any special requirements needed to preserve the assets.

These guidelines direct each U.S. Attorney's Office (USAO) (or in administrative forfeitures, the agents in charge of each field office) to establish specific procedures for their respective offices or districts to ensure that critical financial and property management issues are identified and addressed before seizing or restraining real property, commercial enterprises, or other types of property that may pose problems of maintenance or disposition (e.g. animals and aircraft). These guidelines are sufficiently flexible to enable each USAO (or in administrative matters, the agent in charge of a

[1] References to seizure in this chapter include criminal or civil restraint unless plainly not applicable or appropriate.

[2] References to the USMS throughout this *Manual* include other departments responsible for managing restrained and seized assets like the Department of the Treasury (Treasury) and the Department of Homeland Security (DHS).

seizing agency's field office) to establish and use local procedures that clearly define and assign local seizure and restraint-planning responsibilities.

The USAO or seizing agency should advise the USMS[3] promptly before the seizure or restraint, or before the filing of any civil forfeiture complaint or the return of any indictment containing forfeiture allegations as to any assets that are best managed with advanced seizure planning (e.g. real or commercial property, virtual currency, animals, etc.). Such prior consultation affords the USMS sufficient time to conduct ownership or title and valuation analyses, and to identify all resources necessary to effectuate a problem-free forfeiture.

### B. Scope of assets covered by guidelines

These guidelines cover all assets considered for federal forfeiture.[4] The degree and nature of planning for seizure or restraint will vary depending upon the circumstances and complexity of each case.

In order for the USMS to best assist USAOs and seizing agencies in a thorough, efficient, and effective manner, the USAO or seizing agency must involve the USMS in the investigation as soon as it identifies assets that likely will be seized for forfeiture.[5] Formal seizure planning should occur well before the filing of a civil forfeiture complaint or the return of an indictment containing forfeiture allegations. Specifically, formal seizure planning requires a detailed discussion of all potential issues affecting the seizure, custody, and disposal arrangements specific to each asset identified for forfeiture. This discussion may occur in person, by telephone, or electronically, and may be ongoing depending on the nature of the asset and stage of the forfeiture proceeding. These seizure planning discussions are mandatory for assets in any of the categories listed below:

- residential or commercial real property and vacant land;[6]
- businesses and other complex assets;[7]
- large quantities of assets involving potential inventory and storage or security problems (e.g. multiple vehicles from several locales or districts, drug paraphernalia to be seized from multiple locations on the same day, or the inventory of operating businesses such as jewelry stores);
- assets that create difficult or unusual problems (e.g. animals, perishable items, chemicals and pharmaceuticals, leasehold agreements, intellectual property, cryptocurrency and valuable art and antiques); and

---

3 References to the USMS include USMS district office representatives.

4 *See* Chap. 3 in this *Manual* for a full discussion of the policies and procedures involving assets seized by state and local law enforcement agencies.

5 Assets in cases where a Department agency is not the lead agency may be handled by the independent contractors employed by non-Department agencies rather than the USMS (like Treasury or DHS) and those independent contractors should participate in seizure planning as appropriate. *See* Sec. I.C.1 in this chapter for a discussion of lead agency responsibility.

6 For the purposes of this *Manual*, commercial real property means residential real property comprised of five or more units and any other real property held for commercial purposes.

7 Commercial vessels, or any vessels worth more than $1 million, are considered complex assets that require prior notification and consultation with the Money Laundering and Asset Recovery Section (MLARS). *See* Sec. I.D.1 in this chapter.

- assets located in foreign countries.[8]

Depending upon the complexity and scope of the case, formal seizure planning may continue after this initial discussion as required by either the USAO, the seizing agency, or the USMS. In many instances, the USMS will need to procure the professional assistance of commercial vendors during the covert stage of an investigation so that services such as inventories, appraisals, transportation, and storage will coincide with a scheduled takedown date. The USMS will take appropriate measures to protect sensitive law enforcement information while consultation occurs with the involved components.

The USAO or the seizing agency must approve in advance the release of any information to third party contractors.[9] The information provided to contractors can be limited to that necessary to procure required contractor services and facilities (e.g. towing services and storage space for 50 vehicles required in a particular location by a certain date). At all times, those engaged in the seizure planning process must be sensitive to operational security, and never do anything that might jeopardize operational security or compromise ongoing covert criminal investigations. In addition, the USAO or seizing agency must conduct real property lien and title searches as covertly as possible, such as through use of property websites, if available.

Examples of the types of services the USMS may provide upon the request of a USAO or seizing agency (as well as the usual time it takes to obtain the requested service) include lien search and appraisal information, animal care, logistics services, and business recommended action plan.

| | | |
|---|---|---|
| **Lien search and appraisal information** | 3–4 weeks from date of request to return information (additional time necessary for full, non-“drive-by” appraisals) | USMS offers these services to provide USAOs and investigative agencies information during the pre-indictment, seizure planning stage of a criminal or civil investigation. |
| **Animal care** | 1–2 months prior to seizure | Proper arrangements must be made to ensure health and daily care of the animals. USAOs should contact USMS for further guidance involving the care of animals seized and forfeited in animal fighting cases. |
| **Logistics services** | 3–6 months prior to takedown date for unusual or complex assets | Federal contracting regulations and the time necessary to coordinate with commercial vendors make it imperative to involve USMS as soon as such services are anticipated. |
| **Business recommended action plan** | 2–4 months or longer in more complex cases | USAOs and seizing agencies should make forfeiture decisions only after USMS conducts a documentary review of the business assets identified for forfeiture and their financial status. |

8 Federal prosecutors must adhere to established procedures for international contacts and should not contact foreign officials directly on case-related matters unless such contacts have been approved by, and are under the supervision of, or are in consultation with the Office of International Affairs (OIA). *See also* Chap. 8 in this *Manual*.

9 However, the USAO and the seizing agency must take steps to avoid disclosing law enforcement sensitive information to a third party contractor. Moreover, in any event, neither the USAO nor the seizing agency may disclose grand jury information to a third party contractor unless the anticipated disclosure is being made “preliminarily to or in connection with a judicial proceeding” and is authorized by a judicial disclosure order under Federal Rule of Criminal Procedure 6(e)(3)(E)(i).

## C.  General policy guidelines

Broad seizure planning policy guidelines for all agencies participating in the Program are defined below. In some circumstances, variations to these guidelines may be made following discussions with the Money Laundering and Asset Recovery Section (MLARS).

### C.1  Lead agency responsibility

The U.S. Attorney[10] (or in administrative forfeiture cases, the agent in charge of the forfeiture matter in the field office[11]) is responsible for ensuring that proper and timely seizure planning occurs in asset forfeiture cases within each federal judicial district. All seizure planning meetings must include, at a minimum, as applicable:

- the Assistant U.S. Attorney (AUSA) or investigative agent in charge of the administrative forfeiture matter (and, if applicable, the AUSA in charge of the related criminal matter);

- investigative agents;

- the appropriate USMS representative (and should include a representative from the district where the property is to be seized or managed if different from the district where the action is to be filed); and

- a federal regulatory agency representative in forfeiture cases involving federal regulatory matters, as appropriate.

As a general rule, the lead agency will process all the assets. The lead agency is the agency that initiates the investigation. Another agency may be designated as the lead agency if provided for in a task force agreement or memorandum of understanding (MOU). Ordinarily, the lead agency only must process the assets, which shall not be divided among multiple agencies.[12] For instance, a cash seizure of $800,000 may not be divided into two $400,000 seizures to be separately credited to two agencies. Or, a seizure of two vehicles may not be divided into two seizures of one vehicle each to be credited to two different agencies. Further, forfeiture amounts paid pursuant to an agreement to pay a particular amount in the future to satisfy a money judgment, a deferred prosecution agreement (DPA) or a non-prosecution agreement (NPA) may not be divided into separate payments to multiple agencies. Although exceptions may be made in extraordinary circumstances to permit individual seizures to be allocated to different agencies, no such allocation may be made without the express consent of the lead prosecuting office.

In asset forfeiture cases involving more than one federal judicial district, the USAO instituting the forfeiture action shall have primary responsibility, in coordination with the lead investigative agency, to ensure that all applicable forfeiture participants in the case are notified and that proper and timely seizure planning occurs in all districts in which assets will be seized.

---

[10]  Unless otherwise noted, references to the "U.S. Attorney" in this *Manual* include other authorizing officials responsible for oversight of Criminal Division trial attorneys or Department components.

[11]  Depending on the agency, agency staff may be responsible for ensuring that proper and timely seizure planning occurs.

[12]  Multiple asset identification numbers should not be created for an individual asset in the Consolidated Asset Tracking System (CATS) database.

### C.2  Seizure planning overview

Seizure planning ensures that the various components of the Department work together so that asset forfeiture is used as an efficient and cost-effective law enforcement tool consistent with the Program's goals. To that end, seizure planning provides the government with the opportunity to make informed decisions on matters regarding the financial effects of seizing, restraining, forfeiting, and managing assets, and on all matters affecting the government's ability to efficiently dispose of assets following forfeiture. Specifically, seizure planning consists of anticipating issues and making fully informed decisions concerning what property should be seized or restrained, how and when it should be seized or restrained, and, most importantly, whether the property should be forfeited at all. Seizure planning discussions should answer at least the following questions, depending on asset type and circumstance:

- **What is being seized, who owns it, and what are the liabilities against it?** Determine the full scope of the seizure to the extent possible. For example, if a house is being seized, will the contents also be seized? If a business is being seized, are the buildings in which it operates, the property upon which it is located, the inventory of the business, and the operating or other bank accounts, accounts receivable, accounts payable, etc., also to be seized? All ownership interests and any existing or potential liabilities in each asset must be identified to the extent possible.

- **Should the asset be seized or even identified for forfeiture?** If the asset has a negative or marginal net equity at the time of seizure, should it be seized and forfeited? Over time, what is the likelihood that the asset will depreciate to a negative or marginal value? What law enforcement benefits are to be realized from seizure and forfeiture? Is a restraining or protective order an adequate alternative to seizure given the circumstances? Can any anticipated losses be avoided or mitigated through careful planning? Will custody, forfeiture, or disposal of the asset impose unduly significant demands on USMS or USAO resources or require a considerable infusion of funds from the AFF?

- **How and when is the asset going to be seized and forfeited?** Determine whether immediate seizure is necessary or if restraint of the asset is sufficient to preserve and protect the government's interest. The type and content of the seizing instrument and authority for both the investigative agency and the USMS to enter or cross private property must be identified and procured before seizure or restraint to ensure that each agency has the necessary information and legal authority for its seizure and post-seizure responsibilities.

- **What management and disposition problems are anticipated, and how will they be resolved?** Any expected logistical issues involving the maintenance, management, or disposition of the asset should be discussed and resolved as early as possible.

- **If negative net equity, management, and disposition problems are identified, what are the alternatives to forfeiture?** Is it possible to instead release the property to a lienholder, or allow tax foreclosure and identify any proceeds of it, file an interpleader action, etc.?

- **Is any negative publicity anticipated?** If publicity or public relations concerns are anticipated, appropriate public affairs personnel should be advised and consulted. Consider preparing a press release announcing the basis and purpose of the seizure, restraint, and forfeiture.

## D. Seizure planning questionnaires and documentation

### D.1 Asset-specific net equity thresholds

These guidelines set minimum net equity levels that generally must be met, preferably before seizing property and certainly before instituting federal forfeiture actions. The net equity values are intended to decrease the amount of federal seizures and thereby enhance case quality and expedite processing of the cases that are initiated. The thresholds are also intended to encourage state and local law enforcement agencies to use state forfeiture laws where appropriate. In general, the minimum net equity requirements are:

- **Real property and vacant land**—minimum net equity must be at least $30,000 or 20% of the appraised value, whichever amount is greater, at the time of case initiation. No real property with a net equity less than $30,000 should be identified for forfeiture but individual districts may set higher thresholds to account for local real estate markets. *See also* Chapter 4, Section I.B.2 in this *Manual*. As a general rule, the Department does not seize contaminated real properties.[13]
- **Vehicles**—minimum net equity must be at least $5,000 (based on the National Automobile Dealers Association "trade-in value"). The value of multiple vehicles seized at the same time may *not* be aggregated for purposes of meeting the minimum net equity.
- **Cash**—minimum amount must be at least $5,000, unless the person from whom the cash was seized either was, or is, being criminally prosecuted by state or federal authorities[14] for criminal activities related to the property, in which case the amount must be at least $1,000.
- **Aircraft**—minimum net equity must be at least $30,000. Note that failure to obtain the log books for the aircraft will significantly reduce the aircraft's value.
- **Vessels**—for personal or recreational vessels, the minimum net equity must be at least $15,000. Commercial vessels, or any vessels worth more than $1 million, are considered complex assets that require the USAO or the seizing agency to notify and closely consult with MLARS prior to seizing, restraining or otherwise seeking forfeiture of the asset. *See* Section I.B in this chapter.
- **All other personal property**—minimum net equity must be at least $2,000 in the aggregate.
- **Firearms and devices used in child exploitation**—Minimum value and net equity thresholds do not apply to firearms[15] or devices used in child exploitation.
- **Businesses**—*see* Section D.4 in this chapter.

Exceptions from the minimum net equity requirements are not allowed for any individual item if it has a value of less than $1,000. Exceptions may be allowed if practical considerations support the seizure (e.g. 20 items of jewelry, each valued at $500, might be seized, as the total value of the items is $10,000 and the cost of storing 20 small items of jewelry is not excessive).

[13] *See* Chap. 4, Sec. I.E in this *Manual*.

[14] Written communication from state or federal authorities of the intent to seek criminal prosecution in the future is also appropriate to trigger the $1,000 threshold.

[15] *See* Chap. 5, Sec. IV in this *Manual*.

The USAO, in consultation with local federal law enforcement agencies, may institute higher district-wide thresholds for judicial forfeiture cases as law enforcement or management needs require. Similarly, a federal law enforcement agency may institute higher thresholds for administrative forfeiture cases. Districts shall not use their own higher thresholds as a basis to deny a request for seizure assistance from another district with a lower threshold if the requesting district intends to file the judicial action.

In some circumstances an overriding law enforcement interest may require the seizure and forfeiture of an asset that does not meet the criteria described above. In individual cases, these thresholds may be waived when forfeiture of a particular asset—e.g. a crack house, a conveyance with after-market hidden compartments, a computer or internet domain name involved in a major fraud scheme, equipment connected to child exploitation and pornography, human trafficking or terrorism, vessels used in alien smuggling or modified or customized to facilitate illegal activity, or a vehicle used in alien smuggling seized at an international border—will serve a compelling law enforcement interest. Any downward variation from the above thresholds must be approved in writing by a supervisory-level official at the USAO (for judicial forfeitures) or seizing agency (for administrative forfeitures) and an explanation of the reason for the waiver must be noted in the case file.

If the restraint, seizure, or forfeiture of real property could create a net loss to the AFF for that property, MLARS, the Asset Forfeiture Management Staff (AFMS), the USMS, and the participating agencies (the USAO and the seizing agency) must also be consulted. *See* Section I.D.3.b.1 in this chapter; *see also* Chapter 4, Section I.B.2 in this *Manual*. If the restraint, seizure, or forfeiture of an operating business could create a net loss to the AFF for that business, prior approval from MLARS, in coordination with AFMS and the USMS, is required. *See also* Section I.D.4 in this chapter.

### D.2 Seizure planning questionnaires

The USMS has access to various seizure planning resources to assist stakeholders in making informed decisions when identifying assets for forfeiture. Obtaining the information required to complete these various documents will identify the issues that must be addressed during the seizure planning phase of a case, which reduces the chance that forfeiture may cause the AFF to incur a loss. Obtaining this information also preserves the government's ability to dispose of the asset in an efficient and cost-effective manner following forfeiture. Consultation with the USMS ensures that the costs of storage and maintenance of particular assets, as well as the potential liabilities involving the assets, may be assessed well in advance of forfeiture. Individual offices may supplement these forms as they see fit. However, the basic information requested in these forms is required for adequate planning.

### D.3 Net equity worksheet

When certain assets, especially residential, commercial, and vacant real properties, are identified for forfeiture, the potential net equity must be calculated as part of seizure planning. In cases where information relating to titles and liens cannot be acquired without compromising the investigation, the financial analysis may be completed following restraint or seizure of the property.[16] A written financial analysis facilitates, documents, and informs seizure planning decisions. The USMS net equity worksheets provide step-by-step formulas for computing net equity—the estimated total amount of money the government expects to recoup from the asset once the aggregate of all liens, mortgages, and management and disposal costs have been subtracted from the expected proceeds of

[16] *See* Sec. I.D.3.b.2 in this chapter.

the sale of the asset—and documents the results of this analysis. The USAO or the seizing agency is strongly encouraged to adopt the USMS net equity forms as they provide the most updated estimates for the management and disposal of properties based on current contract prices. These forms may be supplemented as conditions dictate.

#### D.3.a Ownership and encumbrances

The investigative agency is responsible for ensuring that current and accurate information on the ownership of, and any encumbrances against, personal property identified for forfeiture is compiled and made available to the USMS and the USAO before seizure, whenever practicable. When not practicable before the seizure, this information must be compiled and made available as soon as possible following the seizure. When real property and businesses are identified for seizure, the USMS has primary responsibility for conducting a title search before seizure unless otherwise agreed in individual cases. The USMS cannot conduct a complete ownership analysis for a business unless the USAO obtains, by subpoena or otherwise, appropriate ownership documents (e.g. stock record books, stock certificates, LLC operating agreements, etc.). A subpoena may be required to obtain accurate mortgage balances to establish an accurate net equity.

#### D.3.b Financial analysis: avoiding liability seizures

##### D.3.b.1 Planning before seizure and restraint

Before seizing an asset with a potential liability in a judicial forfeiture, the USAO must consult with the seizing agency and the USMS to evaluate and consider the forfeitable net equity and the law enforcement purposes in light of the potential liability issues and estimated costs of post-seizure management and disposition. In an administrative forfeiture of non-routine assets, the seizing agency must consult with the USMS.

If the financial analysis, at the time of case initiation, indicates that the aggregate of all liens (including judgment liens), mortgages, and management and disposal costs approaches or exceeds the anticipated proceeds from the sale of the property, the USAO, or in administrative forfeiture actions the seizing agency, must either (1) determine not to go forward with the seizure[17] or (2) acknowledge the potential financial loss and document the circumstances that warrant the seizure and institution of the forfeiture action. For real property, the USAO must: obtain approval by a supervisory-level official at the USAO in writing with an explanation of the reason noted in the case file.[18]

##### D.3.b.2 Planning after seizure and restraint

In instances where seizure planning is not possible or is not completed before seizure, the seizing agency may be responsible for custody and maintenance of the property until the USMS has had the opportunity to conduct an analysis of the assets. The USMS will complete a seizure planning questionnaire as soon as practicable given the nature of the information required. Upon completion and reporting of the USMS seizure analysis, a seizure meeting with the appropriate agencies as described in Section I.C.1 in this chapter should take place to address all issues identified. For property that has met the required net equity threshold, if the financial assessment indicates that the aggregate of all liens, mortgages, and management and disposal costs approaches or exceeds the

[17] The USAO may consider alternatives to seizure such as restraint of certain assets or a lis pendens for real property.

[18] *See* Chap. 4, Sec. I.B.2 in this *Manual*.

anticipated proceeds from the sale of the property, the seizing agency in administrative forfeiture proceedings must either (1) take immediate action to terminate forfeiture of the asset (if any forfeiture proceeding has been commenced) or (2) acknowledge the potential loss and document the circumstances that warrant continued pursuit of the forfeiture notwithstanding the financial assessment. In judicial forfeiture cases, the USAO must either (1) take action to dismiss the asset from the forfeiture action and to void any expedited settlement agreements involving the asset (if any have been entered into) or (2) acknowledge the potential loss and document the circumstances that warrant the continuation of the forfeiture action notwithstanding the loss.

### D.4  Seizure or restraint of operating businesses

The complexities of seizing an operating business, combined with the potential for substantial losses and liabilities resulting from a forfeiture of the business, mandate that before seizing, restraining, or otherwise seeking forfeiture of the business, the USAO notify and closely consult with MLARS and the USMS.

If the restraint, seizure, or forfeiture of a business could create a net loss to the AFF, prior approval from MLARS, in coordination with MLARS and the USMS, is required. Further, prior approval from the U.S. Attorney is required before seizing or filing a civil forfeiture complaint against an operating business based on a facilitation theory.[19]

It is typically difficult in the early stages of an investigation to collect all information necessary to make an informed decision about whether an operating business should be forfeited as part of the underlying criminal investigation. Therefore, in almost all cases, MLARS and the USMS recommend that the USAO file a restraining order or protective order that allows normal operations to continue under the review and monitoring of the USMS, and concurrently allows the USMS on-site access to the business to inspect the premises, review financial records, and interview employees. This business review is a time-consuming process that may take 30 days or longer to complete, depending on the availability of records and willingness of the business principals and employees to cooperate in the process. Upon review and analysis of the information obtained through the restraining or protective order, the USMS will make an informed recommendation to the USAO as to whether seizure and forfeiture of the business is advisable. The USAO should include the USMS' recommendation in its consultation with MLARS.

Although there are many complex issues to consider in evaluating an operating business, the government must first determine what it intends to restrain, and ultimately seize and forfeit. This determination requires analysis of the business entity itself (e.g. corporation, limited liability company, partnership, sole-proprietorship), the ownership structure of the business (e.g. the existence of other owners or partners), and whether the entity itself or its owners have been or will be indicted.

The USAO should be mindful of the intricacies in identifying an ownership interest in the business (e.g. shares of stock, membership interest, partnership shares), the financial and physical assets of the business (e.g. the bank accounts, accounts receivable, inventory, equipment, licenses),[20] or both. The phrasing of the restraining order and subsequent forfeiture order might affect the administration, management, and sale of the business. For example, the seizure of an ownership interest may have

---

[19]  *See* Chap. 5, Sec. III.D.1.b in this *Manual*.

[20]  In cases where the business owns real property, a lis pendens should be placed on the real property in conjunction with the restraining order.

legal (e.g. business law, labor law, securities law, tax law) and regulatory implications that need to be identified in advance and fully considered.[21] Alternatively, the seizure of all assets of a business might very well cause the operating business to fail, even if the business itself is not seized. For example, thoughtful consideration should be given before seizing a business's operating bank account that may be used to meet the next payroll for its employees, or pay independent entities that provide supplies, materials, or essential services to the business.

Protective orders and restraining orders are powerful tools because they can be drafted to authorize the USMS to monitor all financial and operational activities of the business, take signatory control over the business bank accounts, and approve certain business transactions. The authority granted by a protective order or restraining order should authorize the USMS to use internal resources to monitor and oversee operations of the business for a period of time so as to best formulate a recommendation on whether seizure and forfeiture of the business is advisable. In rare cases, a court-appointed trustee or monitor may be required.[22] The authority granted to the USMS under a restraining or protective order must *not* include—in fact, must expressly exclude—taking over the management responsibilities for operation of the business, at least during the assessment period; this must be considered an action of last resort and should normally be taken only after the USMS has completed a thorough business review pursuant to the protective order or restraining order and determined that the business should be forfeited and that there is no other option regarding management responsibilities of the business.

A pre-seizure review of a business will help a USAO answer the following questions:

- Who owns the building in which the business operates?
- Who owns the land?
- What is the cash flow of the business? What is the cash flow if income from the illegal activity ceases?
- What are the monetary values of accounts receivable and payable?
- What other valuable assets does the business own?
- Are there significant liabilities?
- Are there environmental concerns?
- Is the business highly regulated? Is the business currently in compliance with its regulatory obligations?
- Will the business require capital contributions to remain viable?
- What law enforcement or regulatory methods or alternatives to forfeiture may be effective (e.g. revocation of a license essential to operation of the business by state or local authorities)?

[21] Also, absent a veil piercing or straw-owner argument, the owners of a business entity that is legally distinct from the owners do not own the assets of that entity.

[22] *See* Chap. 9 in this *Manual*.

- Is the business being seized as facilitating property or as proceeds of crime? Once the source of illegal funding and the illicit customers are gone, the business may no longer be profitable. If the business is facilitating illegal activity and also engaging in legal but unseemly activity, is the government in a position to prevent or monitor the activity (e.g. government operation of a strip club that attracts illegal drugs and prostitution)? The public may have an expectation that if the government is operating the business, it will be able to prevent all illegal activity.[23]
- What would it cost to hire either a business monitor or trustee and necessary staff?
- Can the business be disposed of efficiently and cost-effectively upon forfeiture, and how long will the forfeiture and post-forfeiture disposition process take?

A restraining order or protective order over a business should be served on the business itself, the owners, key employees (e.g. executive officers, accounting department), banking institutions holding business' accounts, and any other person or entity that has an interest in the ongoing operations of the business. Ideally, this service should occur simultaneously and in conjunction with service of any arrest, search, or seizure warrants by the investigative agency as part of the criminal investigation against the business, its principals, or any target conspiring in, aiding, or abetting the criminal activity supporting forfeiture of the business.

The USAO should be mindful that a criminal investigation that requires an in-depth analysis of business books and records will most likely require the investigative agency to seize records that are essential to both (1) the continued operation of the business (if anticipated) and (2) the initiation, conduct, and completion of the business review by the USMS. Before any seizure or restraint of an operating business, the USAO, investigative agency, and USMS should formulate an action plan outlining each agency or office's requirements, responsibilities, and objectives.

During the pendency of a restraining or protective order, the business' existing management personnel will generally remain in place unless a compelling reason warrants otherwise and the USMS is authorized under the restraining order to remove and replace any personnel. In some instances, the business may be forced to shut down temporarily (or even permanently) once key defendants are arrested or indicted. In these instances, and particularly in dealing with a service-oriented industry where a large portion of the business's value consists of goodwill the defendant generates, it may be advisable to limit forfeiture to separable-but-forfeitable assets of the business only. However, if the government fails to achieve forfeiture and the business asset must be returned to the owner, it must be considered that the government may be subject to substantial liability and adverse legal ramifications for depriving the business of the asset and for any failure to return the asset to the business owner in substantially the same condition in which it was seized. The practice of monitoring an operating business pursuant to a restraining order should help to mitigate this risk.

### D.5 Seizure of proceeds from violations involving a state sponsor of terrorism

As discussed in Chapter 10, Section III.D.6 in this *Manual*, the statute governing the U.S. Victims of State Sponsored Terrorism Fund (USVSST Fund) mandates that certain forfeiture proceeds, penalties, and fines be deposited into the USVSST Fund if forfeited or paid to the United States after the date of the Act's enactment (December 18, 2015). This includes cases related to countries designated by the Department of State as state sponsors of terrorism, involving violations of the

[23] *See* Chap. 9, Sec. III in this *Manual* for a discussion of security measures.

International Emergency Economic Powers Act (IEEPA)[24] or the Trading with the Enemy Act[25] or related conspiracies, schemes or other federal offenses.[26] For criminal matters, all funds and the net proceeds from the sale of the property from these violations must be deposited into the USVSST Fund; for civil cases, 75% of the proceeds must be deposited.[27] Prosecutors must consult MLARS as early as possible in any case that involves a state sponsor of terrorism and may require deposits to the USVSST Fund.

## E. Quick release

### E.1 Before filing of any claim

Certain property may be released following federal seizure for forfeiture but prior to the filing of any claim pursuant to 28 C.F.R. § 8.7 ("quick release"). This may include property that does not meet asset-specific net equity thresholds (*see* Section I.D.1 in this chapter), property the seizing agency decides not to forfeit after post-seizure analysis (*see* Sections I.D.3 and I.D.4 in this chapter), property belonging to an innocent owner having an immediate right to possession, or other property the release of which serves to promote the best interests of justice or the government (28 C.F.R. § 8.7(b)). While these issues ideally should be resolved in seizure planning (*see* Section I.C.2 in this chapter), agencies may use post-seizure quick release whenever warranted.

When a seizing agency elects to use quick release, determining the appropriate party to whom the property should be released will depend on the nature of the seized property and the particular circumstances. If there is no registered owner of the property to be released, e.g. currency, it usually should be returned to the person from whom it was seized.[28] If there is a registered owner of the property, such as an automobile, the property should usually be returned to that party, regardless of whether there is a lien or other third party interest with ownership rights to the property. However, if a third party, such as a lienholder, has asserted its contractual rights in a judicial proceeding, obtained a final judgment, and provided satisfactory proof of the judgment and its ownership interest and right to immediate possession of the property, the seizing agency may return the property to that third party instead of the registered owner. Similarly, if a state court authorizes a state or local law enforcement agency to take possession of the seized property, the seizing agency may release the property in accordance with that court order. If the seizing agency is aware of a third party with an ownership interest in the property, regardless of whether it has asserted any contractual rights to immediate possession, it may notify the third party of the release in advance of releasing the asset to the registered owner.

### E.2 Declination

There may be instances in which a prosecutor declines to proceed with a judicial forfeiture after a claim has been filed in an administrative forfeiture proceeding. Once that decision is made and the federal government no longer has a legal basis for holding the seized property (i.e. it is not evidence

[24] Pub. L. 95-223, Title II, § 202, Dec. 28, 1977, 91 Stat. 1626.

[25] Pub. L. 65–91, Oct. 6, 1917, ch. 106, § 1, 40 Stat. 411.

[26] *See* 34 U.S.C. § 20144(e)(2)(A).

[27] For more information about the USVSST Fund, visit MLARS' USVSST page.

[28] In most cases, however, release of funds will be subject to the Treasury Offset Program (TOP). *See also* Chap. 11, Sec. I.B.9 in this *Manual*.

of a violation of law), the agency that seized the property must return it to the appropriate party, initiate abandonment proceedings pursuant to 28 C.F.R. § 8.10(e), or otherwise dispose of it in accordance with law. In determining the appropriate party to whom to return the seized property, the seizing agency should follow the same guidance for the return of property pursuant to quick release, including providing prompt notification to the appropriate party.

## II.   Pre-seizure Judicial Review

Pre-seizure judicial authorization of property seizures serves multiple purposes, including:

- allowing neutral and detached judicial officers to review the basis for seizures before they occur;

- enhancing protection for Department officers against potential civil suits claiming wrongful seizures; and

- reducing the potential that the public will perceive property seizures to be arbitrary and capricious.

Whenever practicable, Department officials should obtain ex parte judicial approval by, for example, obtaining a seizure warrant, before seizing personal property.

# Chapter 2:
# Seizure and Restraint

## I. Overview

Seizure and restraint of assets is a critical step in any civil or criminal investigation. *Seizure* involves the physical restraint of an asset or its transfer from the owner or possessor to the custody or control of the government, primarily through a law enforcement agency. Seizure generally occurs:

- incident to an arrest,
- pursuant to a search warrant,
- pursuant to a civil or criminal seizure warrant for specific items subject to forfeiture, or
- pursuant to a preliminary order of forfeiture.

A restraining order is a pretrial order, which the government may obtain before or after filing a civil forfeiture complaint or an indictment seeking forfeiture of an asset, directing someone who owns or has custody of an asset subject to forfeiture to preserve the asset for potential forfeiture. A restraining order typically does not entail the government taking physical possession of the asset. But a restraining order may: require the execution of satisfactory performance bonds; create receiverships; appoint conservators, custodians, appraisers, accountants, or trustees; or the taking of other actions to seize, secure, maintain, or preserve the availability or value of property subject to forfeiture.[1]

In contrast, *forfeiture* is the legal process by which title to an asset is transferred to the government, without compensation, because that asset was derived from, used to facilitate, or involved in criminal conduct in a manner that subjects it to forfeiture under an applicable asset forfeiture statute. The government obtains title to the asset upon obtaining: a declaration of forfeiture in an administrative forfeiture proceeding, a judgment of forfeiture in a civil forfeiture proceeding, or a final order of forfeiture in a criminal case.

Law enforcement generally must obtain authority for seizures through a search warrant or seizure warrant issued by a federal magistrate and based upon a sworn affidavit that describes in detail the property items to be seized and the evidence demonstrating probable cause that the items are subject to forfeiture and seizure. Federal Rule of Criminal Procedure 41 governs the authorization for search warrants, and the seizure of evidence, contraband or items illegally possessed, and the instrumentalities to a crime. 18 U.S.C. § 981(b), 21 U.S.C. §§ 881, and 21 U.S.C. § 853 govern the authorization of seizure warrants of assets for forfeiture.

Under certain circumstances, however, warrantless seizures may be necessary and appropriate. A warrantless seizure is valid if the seizing agent had probable cause at the time of seizure to believe that the property item is subject to forfeiture, an exception to the warrant requirement applies, and the seizing agent is lawfully in a position to effect the seizure. *See* 18 U.S.C. § 981(b)(2)(B). A lawful warrantless seizure is appropriate if seeking a warrant would not be practicable under the circumstances.

[1] *See* 18 U.S.C. § 983(j), which provides for issuance of civil restraining orders, and 21 U.S.C. § 853(f), which provides for issuance of criminal restraining orders.

Investigators should begin seizure planning once an investigation has identified assets for seizure or forfeiture. Seizure planning helps agencies avoid potentially costly management or safekeeping issues as well as incomplete investigations that result in dismissal of charges or return of assets prematurely to criminals. Seizure planning also identifies viable third party interests before seizure and mitigates harm to innocent third parties. The U.S. Marshals Service (USMS)—the primary federal agency responsible for seized asset management for the Department of Justice (Department)—has developed seizure planning methodology and uses it extensively.[2]

Investigators should also formulate a plan for executing the warrant itself. Effective warrant execution planning includes, for example,

- identifying who will be the seizing agents;

- planning for unusual assets that would be difficult to secure, transport, maintain, or store, such as heavy machinery;

- identifying and inventorying assets;

- planning for safeguarding the value of assets upon seizure, such as perishable items; and

- caring for any animals to be seized.

## II.   General Procedures for Seizing Property[3]

### A.  Notification by seizing agency

Most U.S. Attorneys' Offices (USAOs) can access reports of seizures by agencies participating in the Department's Asset Forfeiture Program (Program) in their districts from the Consolidated Asset Tracking System (CATS) database. All non-Department agencies that do not report seizures in CATS must forward copies of seizure forms or a report of seizures to the pertinent USAO within 25 days of seizure unless an individual USAO chooses to not receive seizure notices.

### B.  Forms of process

#### B.1  Warrant of arrest in rem

In most civil judicial cases, the court exercises its in rem jurisdiction over property by issuing warrants of arrest in rem, which the seizing agency then executes. Rule G(3) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (Supplemental Rules) governs the procedure for issuing an arrest warrant in rem. Under the Supplemental Rules, no arrest warrant is needed if the defendant property is real property[4] or if the defendant property is already subject to a pretrial restraining order.[5] In all other cases, however, the government must obtain an arrest warrant in rem and serve it on the property, generally by actual or constructive seizure of the property, so that the court obtains in rem jurisdiction.

---

[2]   *See* Chap. 1 in this *Manual* for a full discussion of seizure planning.

[3]   *See* Chap. 3, Sec. III in this *Manual* for a full discussion of the policies and procedures involving custody and concurrent jurisdiction.

[4]   *See* 18 U.S.C. § 985(c)(3) and Supplemental Rule G(3)(a).

[5]   *See* Supplemental Rule G(3)(b)(iii).

The procedure for issuing the warrant of arrest in rem differs depending on the custody of the property at the time the complaint is filed. If the property is already in the government's custody at the time the complaint is filed, the clerk of the court may issue the warrant without any finding of probable cause by a judge or magistrate judge; but if the effect of the warrant will be to take the property out of the hands of a non-government entity, the court must issue the warrant upon a finding of probable cause. *See* Supplemental Rule G(3)(b). Once the warrant is issued, it must be delivered "to a person or organization authorized to execute it." *See* Supplemental Rule G(3)(c) and Section III.A in this chapter.

### B.2 Seizure warrant

A seizure warrant authorized by 21 U.S.C. § 881(b), 21 U.S.C. § 853(f), and 18 U.S.C. § 981(b)(2) also serves as a form of process for seizing forfeitable property. A seizure warrant requires that any seizures made are made in the same manner as a warrant obtained under Federal Rule of Criminal Procedure 41, and a judicial determination of probable cause; a criminal seizure warrant also requires a showing that a restraining order is insufficient.[6] While a seizure warrant may be issued pursuant to either the applicable criminal or civil forfeiture statute, it may be prudent to obtain a warrant under both the civil *and* criminal statutes. This is often referred to as a "dual-purpose" or "hybrid" warrant. Such a dual-purpose eliminates the need for the government to obtain any additional order authorizing the government to continue holding property for criminal forfeiture where the government had originally seized the property via a civil warrant or for civil (including administrative) forfeiture. *See* 18 U.S.C. § 983(a)(3); *see also* Section III.B in this chapter.

If agents intend to enter a private structure for the purpose of searching for and seizing, or inventorying, personal property subject to forfeiture, the Money Laundering and Asset Recovery Section (MLARS) recommends that the agency obtain a separate search warrant.

### B.3 Seizure of real property

The government ordinarily does not physically seize real property prior to forfeiture. Indeed, in a civil forfeiture case, 18 U.S.C. § 985 bars the government from seizing real property before judgment except upon the government's (1) making a pre-seizure ex parte showings of probable cause and exigent circumstances or (2) serving notice of the motion for a seizure warrant on the property owner and giving the property owner a meaningful opportunity to be heard. *See* Chapter 4 in this *Manual* for a discussion of the Department's policy on how to obtain in rem jurisdiction over real property and the limited circumstances under which it may be appropriate to seek pre-judgment seizure of real property.

### B.4 Seizure by state or local law enforcement

An adoptive forfeiture occurs when a state or local law enforcement agency seizes property and requests that a federal seizing agency adopt the seizure and proceed with federal forfeiture. *See*

---

[6] *See* 18 U.S.C. § 982(b)(1); 21 U.S.C. § 853(e); *In re Pre-Indictment Restraining Ord.* (*Hailey*), 816 F. Supp. 2d 240, 244 (D. Md. 2011) (noting that under § 853(e), a court may enter orders directing a person to refrain from dissipating assets, to account for expenditures of funds subject to forfeiture; and to take affirmative steps to preserve property subject to forfeiture; entering pre-indictment restraining order, following court's earlier issuance of non-dissipation and accounting orders that froze two bank accounts of target of criminal investigation and required target to surrender property items he acquired in violation of prior non-dissipation order to the custody of the court pending indictment and trial).

Chapter 3 in this *Manual* for a full discussion of the policies and procedures involving seizures by state and local law enforcement agencies.

### C. Responsibility for execution of process

Generally, the USMS has primary responsibility for execution of warrants of arrest in rem, while the pertinent Department investigative agency has primary responsibility for execution of seizure warrants. The USMS and investigative agencies should coordinate execution of process.

## III. Seizures for Criminal Forfeiture

### A. When must the government seek a criminal seizure warrant or a criminal restraining or "housekeeping" order to be entitled to retain custody of the asset for potential criminal forfeiture?[7]

The government is not required to have an asset subject to criminal forfeiture in the government's possession during the pendency of a criminal forfeiture proceeding. That is because criminal forfeiture proceedings are in personam—so the court does not need to have in rem jurisdiction over the asset (which type of jurisdiction typically requires the government to have possession of the asset) to make the asset subject to criminal forfeiture. The criminal forfeiture statutes accordingly contemplate that assets subject to criminal forfeiture might remain in the defendant's custody until the court enters a preliminary order of forfeiture. *See* 21 U.S.C. § 853(g) ("Upon entry of an order of forfeiture under this section, the court shall authorize the Attorney General to seize all property ordered forfeited").

That said, the government often *does* have physical possession of the asset subject to criminal forfeiture before a preliminary order of forfeiture is entered in the criminal case. For example, the government could have obtained custody of the asset via a criminal seizure warrant under 21 U.S.C. § 853(f) or a criminal restraining order under § 853(e) that required the defendant to transfer the asset to the government's custody. Likewise, the government could have seized the asset as evidence in a criminal investigation. Finally, the government could have seized the asset for civil forfeiture via a civil seizure warrant issued under 18 U.S.C. § 981(b), a warrant of arrest in rem issued under Rule G(3)(b)(ii) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (Supplemental Rules) after the government filed a civil forfeiture action, or a lawful warrantless seizure for forfeiture purposes.

But where the government has seized an asset *in some way other than a criminal or dual-purpose seizure warrant or criminal restraining order*—and the government's sole pending avenue for forfeiture is criminal forfeiture—then the government must seek a criminal or dual-purpose seizure warrant or a criminal restraining order to be entitled to continue holding the asset for criminal forfeiture purposes. Indeed, 18 U.S.C. § 983(a)(3)(C) provides that if "criminal forfeiture is the only forfeiture proceeding commenced by the government, the government's right to continued possession of the property shall be governed by the applicable criminal forfeiture statute."

[7] As noted below, the question of whether a criminal seizure warrant or restraining order is required to retain custody of an asset for criminal forfeiture does not arise where the asset was originally seized via a criminal seizure warrant under 21 U.S.C. § 853(f) and 18 U.S.C. § 982(b)(1) or a dual-purpose criminal-civil seizure warrant under those statutes and 18 U.S.C. § 981(b).

Accordingly, where the government seeks to criminally forfeit an asset that was originally through some process other than a criminal or dual-purpose seizure warrant and (1) civil forfeiture proceedings against the asset—whether administrative, civil judicial, or both—were never commenced or have terminated and (2) the asset lacks sufficient evidentiary value to justify its continued retention as evidence, then *to be entitled to retain custody of the asset for criminal forfeiture pending the outcome of the criminal case* under 18 U.S.C. § 983(a)(3)(C), the government must obtain:

- a criminal or dual-purpose seizure warrant,
- a restraining order under 21 U.S.C. § 853(e), or
- a "housekeeping order" under § 853(e) authorizing retention of the asset for criminal forfeiture purposes.[8]

Property originally obtained by the state and handed over to the federal agency for criminal forfeiture is addressed in Chapter 3 in this *Manual*.

### B. When and how must the government seek a criminal seizure warrant or a criminal restraining or "housekeeping" order to preserve the option of pursuing civil forfeiture?[9]

As long as an administrative forfeiture proceeding or a civil judicial forfeiture action is pending against an asset, any civil seizure warrant authorizing its seizure under 18 U.S.C. § 981(b) or the warrant of arrest in rem issued as to it under Rule G(3)(b)(ii) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (Supplemental Rules), or both, would authorize the government's continued retention of an asset pending the outcome of the civil forfeiture proceeding. If a civil forfeiture case against the asset were stayed pending resolution of a parallel federal criminal case in which criminal forfeiture of the asset were also sought, then the civil seizure authority would—as a practical matter—enable the government to continue retaining the asset until the criminal case was resolved.[10]

---

8 *See United States v. Zazueta-Hernandez*, No. 1:19-cr-00130-MWM-1, 2020 WL 5016940 (S.D. Ohio Aug. 25, 2020) (holding that for assets already in the government's custody, the government may satisfy 18 U.S.C. § 983(a)(3)(B)(ii)(II)'s requirement that the government take steps to assure the availability of the property for criminal forfeiture by requesting only a "housekeeping" order, and noting that because a housekeeping order is not a restraining order as the property is already in the government's custody, order requires no finding of probable cause); *In Re 2000 White Mercedes ML320*, 220 F. Supp. 2d 1322, 1325–1326 (M.D. Fla. 2001) (holding that as to property already in government custody, the government may satisfy 18 U.S.C. § 983(a)(3)(B)(ii)(II) by requesting only a "housekeeping" order under 21 U.S.C. § 853(e)).

9 The question of whether a criminal seizure warrant or restraining order is required in a criminal case in order for the government to preserve the option of civil forfeiture does not arise where the asset was originally seized via a criminal seizure warrant under 21 U.S.C. § 853(f) and 18 U.S.C. § 982(b)(1) or a dual-purpose criminal-civil seizure warrant under those statutes and 18 U.S.C. § 981(b).

10 *See United States v. Stokes*, No. 1:14-CR-290-1-TWT, 2017 WL 5986231, *5 (N.D. Ga. Oct. 23, 2017), *r. & r. adopted*, 2017 WL 5971986 (N.D. Ga. Dec. 1, 2017) (holding that government may lawfully retain possession of funds subject to criminal forfeiture "by virtue of [a] timely filed parallel civil forfeiture action" where funds were seized via civil seizure warrant and after claim was made in administrative proceeding, government filed parallel civil forfeiture case against funds within the 90-day period prescribed in 18 U.S.C. § 983(a)(3); stay of civil forfeiture case pending resolution of criminal case did not affect government's authority to retain the seized funds by virtue of timely filing of parallel civil forfeiture case).

Assistant U.S. Attorneys (AUSAs) should strive, where practicable, to preserve the option of pursuing civil forfeiture of assets—particularly high-value assets—even while pursuing criminal forfeiture of those assets. That is because no matter how strong the government's proof of both (1) the defendant's commission of the offense for which forfeiture is sought and (2) the asset's nexus to that offense, every criminal case carries with it some risk that the defendant will be acquitted, will flee, or will die before the criminal case is finalized. If the defendant does die before the criminal case—including an appeal—is final, the criminal case and any restitution and criminal forfeiture orders typically abate.[11] If that happens, and if the government has failed to preserve its civil forfeiture options, then the government will typically be left with no option to divest the defendant's estate of the defendant's ill-gotten gains and any forfeitable tools of crime.

To preserve the option of pursuing civil forfeiture, AUSAs must pay special attention to cases where an asset—no matter how it was seized—was the subject of an administrative forfeiture proceeding and someone made a claim to the asset in that proceeding. In such cases, *to preserve the government's ability to pursue civil forfeiture of the asset*, the government must, within 90 days from the date the claim was "filed" with the seizing agency in the administrative proceeding:

(1) commence a civil forfeiture action against the asset;

(2) obtain a criminal indictment or file a criminal information "containing an allegation that the property is subject to forfeiture" and "take the steps necessary to preserve [the government's] right to maintain custody of the property as provided in the applicable criminal forfeiture statute"; or

(3) return the property.

*See* 18 U.S.C. § 983(a)(3)(B). As a fourth option, the government may obtain, from a court in the district where the civil forfeiture complaint will be filed, an extension of the complaint-filing deadline "for good cause or upon agreement of the parties." *See* § 983(a)(3)(A).[12]

If the government files a civil forfeiture case against the asset within that 90-day period following the filing of the claim in the administrative forfeiture proceeding (or within the time of any court-authorized extension), the government obviously preserves its option to pursue civil forfeiture of the asset. In addition, as noted above, the arrest warrant in rem (as well as any civil seizure warrant) would authorize the government's continued possession of the property while the civil forfeiture case is pending.

If, on the other hand, the government seeks to satisfy 18 U.S.C. § 983(a)(3)(A) solely by pursuing criminal forfeiture of an asset—by obtaining an indictment (or filing an information) that includes a forfeiture notice listing the asset as subject to forfeiture within the 90-day period—and if the government has already obtained a pre-indictment criminal or a dual-purpose seizure warrant or a criminal restraining order as to the asset, then the government need not take any further steps

[11] *See United States v. Ajrawat*, 738 F. App'x. 136, 139–140 (4th Cir. 2018) (if defendant's conviction is extinguished because of death while appealing conviction and sentence, the forfeiture and restitution orders must be abated); *United States v. Lay*, 456 F. Supp. 2d 869, 874 (S.D. Tex. 2006) (noting that a conviction typically abates if the defendant dies after he is sentenced but before his appeal is final and that this abatement rule applies equally to cases where the defendant dies before he has been sentenced and judgment entered against him; vacating conviction and restitution order.)

[12] Because it is not always clear who will be the "parties," that is, who will be the claimants, in a not-yet-filed civil forfeiture case, even upon reaching extension stipulations with all the anticipated claimants, an AUSA seeking an extension of the complaint-filing deadline should nonetheless ask the court to make a good-cause finding for the extension.

"to preserve [the government's] right to maintain custody of the property" for criminal forfeiture as required by § 983(a)(3)(B)(ii)(II).[13] But if the government has not already obtained such a pre-indictment criminal or dual-purpose seizure warrant or restraining order upon obtaining the indictment, then to satisfy § 983(a)(3)(B)(ii)(II), the government must also obtain within the 90-day period:

- a criminal or dual-purpose seizure warrant,
- a restraining order under 21 U.S.C. § 853(e), or
- a "housekeeping order" under § 853(e) authorizing retention of the asset for criminal forfeiture purposes.[14]

Finally, if within that 90-day period (or any extension), the government fails either (1) to commence a civil forfeiture case against the asset or (2) to both commence a criminal action seeking forfeiture of the asset and obtain a criminal seizure warrant, restraining order, or housekeeping order to preserve the government's right to retain the asset for criminal forfeiture, then the government is subject to the "civil forfeiture death penalty." In that circumstance, 18 U.S.C. § 983(a)(3)(B) requires that the government "promptly release the property pursuant to regulations promulgated by the Attorney General, and may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense."

To summarize, where (1) the government has seized an asset *in some way other than a criminal seizure warrant or criminal restraining order*, (2) the asset subject of an administrative forfeiture proceeding, (3) someone made a claim to the asset in that administrative forfeiture proceeding, and (4) the government elects to pursue only criminal forfeiture of the asset, then to preserve the government's option to pursue civil forfeiture (by avoiding the civil forfeiture "death penalty" set forth in 18 U.S.C. § 983(a)(3)(B)(ii)), the government must, within 90 days after the claim was made in the administrative proceeding, both (1) include the asset in the forfeiture notice of an indictment or in a bill of particulars and (2) obtain a seizure warrant, restraining order, or a housekeeping order allowing the government to maintain custody of the asset for potential criminal forfeiture pending the conclusion of the criminal case. Thus, under these very common circumstances, a timely order authorizing the government to continue retaining the asset for criminal forfeiture is essential to preserve the government's power to forfeit the asset civilly.

The 90-day deadline provision in 18 U.S.C. § 983(a)(3) applies only where an asset was the subject of an administrative forfeiture proceeding in which a claim was made. *See* § 981(a)(1)(A). If no administrative forfeiture proceeding was commenced against the asset, then the 90-day deadline and the other requirements of § 983(a)(3) do not apply. Still, even in such cases, if the government pursues only criminal forfeiture of an asset, the government may not lawfully maintain possession of that asset by relying solely on a civil seizure warrant; rather, in that case, and as noted in Section III.A

[13] *See United States v. Lindell*, No. 13-00512 DKW, 2016 WL 4707976, *8 (D. Haw. Sept. 8, 2016) (because government had initially seized funds via a pre-indictment dual-purpose warrant issued under both civil and criminal forfeiture statutes, when the government then obtained an indictment seeking forfeiture of those funds within the time specified in 18 U.S.C. § 983(a)(3)(A), the government was already in compliance with § 983(a)(3)(B)(ii)'s requirement that the government also "take steps necessary to preserve its right to maintain custody of the property as provided in the applicable criminal forfeiture statute").

[14] *See* Sec. III.B n.8 in this chapter for cases holding that holding that as to property already in government custody, the government may satisfy 18 U.S.C. § 983(a)(3)(B)(ii)(II) by requesting only a "housekeeping" order under 21 U.S.C. § 853(e).

in this chapter, the government must obtain either a criminal seizure warrant, restraining order or housekeeping order to be entitled to retain the asset for criminal forfeiture.

### C. Property seized without a warrant

Under 18 U.S.C. § 981(b), property may be seized for civil or administrative forfeiture without a warrant if probable cause exists for the seizure and an exception to the warrant requirement applies. If the seizure satisfies those conditions, the government may maintain physical possession of the property pursuant to the § 981(b) seizure during the pendency of a criminal forfeiture case to the same extent as it could if the property had been seized with a warrant. That is, as long as the civil or administrative forfeiture case is ongoing, the continued possession may be based on the civil seizure. But if the civil case is terminated or not filed within the statutory deadline, the government will have to maintain physical possession pursuant to a criminal seizure warrant or pretrial restraining order or as evidence.

### D. Property seized for evidence

The seizure of property for evidence in a criminal case provides an independent basis for the continued physical possession of property during the pendency of a criminal forfeiture proceeding as long as the evidentiary value of the property persists.[15] Thus, if property is seized for evidence, it may be named in a criminal forfeiture proceeding and held by the government without the need to obtain a criminal seizure warrant or pretrial restraining order.[16]

Once the property loses its evidentiary value, however, the government must obtain a seizure warrant or restraining order to maintain custody of the property for the purpose of forfeiture. If a prosecutor declines to seek a criminal seizure warrant or a pretrial restraining order on the ground that this exception applies (i.e. on the ground that the property has evidentiary value but the seizing agency believes that the evidentiary value of the property is in doubt), the agency may request that the USAO provide the agency with a letter that it may use to protect itself from liability should someone later question whether there was a lawful basis for the agency's retention of the property.

The USMS does not store property held as evidence, even when it is subject to forfeiture. Such property is retained in the custody of the seizing agency until it is no longer needed for evidence.

## IV. Proper Use of Writs of Entry in Civil and Criminal Forfeiture Cases

### A. When should the government obtain a writ of entry?

In both civil and criminal cases in which a final order has not been obtained, the government may use writs of entry issued by the court and based upon a finding of probable cause to enter:

- onto the curtilage of private real property to inventory structures located thereon without entering those structures;

[15] However, a warrantless seizure justified on the ground of exigent circumstances may not remain valid once the exigency has passed. *See United States v. Cosme*, 796 F.3d 226, 235 (2d Cir. 2015) ("the exigent circumstances exception only permits a seizure to continue for as long as reasonably necessary to secure a warrant"; invalidating under the Fourth Amendment the continued government custody of funds without a warrant two years after the funds were seized from bank accounts without a warrant on the grounds of exigent circumstances).

[16] For a discussion of policies and procedures relating to seized cash management and cash retained for evidence, *see* Sec. VI in this chapter.

- onto private real property for the purpose of seizing personal property located thereon (such as an automobile) in plain view; or
- the interior of a private structure subject to forfeiture to conduct an inventory limited to documenting the condition of the interior and inspecting for damage, and to conduct an appraisal.

When seeking a writ of entry, the application should include a detailed agent affidavit setting forth the facts supporting a conclusion that the government has probable cause to believe that (1) the property being searched for, seized, or inventoried is subject to forfeiture and (2) the property is located at or in the place to be searched.

### B. Explanation

According to 18 U.S.C. § 985(b)(2), which addresses the civil forfeiture of real property, "[the] filing of a lis pendens and the execution of a writ of entry for the purpose of conducting an inspection and inventory of the property shall not be considered a seizure under this subsection."

The government may argue that it may seek, and a district court has the authority to issue, writs of entry in both civil and criminal forfeiture cases. Although the phrase "writ of entry" appears only in 18 U.S.C. § 985, the use of a writ of entry is not restricted to the civil forfeiture of real property because a district court has the authority pursuant to 18 U.S.C. § 983(j)(1)[17] and 21 U.S.C. § 853(e)(1)[18] to take any action necessary to preserve the availability of property subject to forfeiture. Accordingly, the government may apply for a writ of entry in any civil or criminal forfeiture case to preserve the availability of property subject to forfeiture, and the district court has the authority to issue such a writ for that purpose.

## V. Seizure of Financial Instruments and Cryptocurrency

The following section describes procedures and responsibilities for handling financial instruments and cryptocurrency seized for forfeiture.

### A. Certificates of deposit

#### A.1 Overview

A Certificate of Deposit (CD) is a savings deposit certificate with a fixed maturity date and a specified fixed interest rate. Essentially a promissory note from the issuer to repay the deposited funds plus interest at a future maturity date, CDs are usually issued by commercial banks, mature in as little as a month or as long as 10 years or more, and range in denominations from $1,000 to "jumbo" CDs over $100,000. If issued by qualifying financial institutions, the principal amount is insured by the Federal Deposit Insurance Corporation (FDIC) and the National Credit Union Administration (NCUA) for up

---

17 18 U.S.C. § 983(j)(1) provides that "Upon application of the United States, the court may enter a restraining order or injunction, require the execution of satisfactory performance bonds, create receiverships, appoint conservators, custodians, appraisers, accountants, or trustees, or take any other action to seize, secure, maintain, or preserve the availability of property subject to civil forfeiture."

18 21 U.S.C. § 853(e)(1), a criminal forfeiture statute located in the drug code, provides that "Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property [subject to criminal forfeiture] under this section." Section 853 applies to the general criminal forfeiture statute found in Title 18 pursuant to 18 U.S.C. § 982(b)(2).

to $250,000 per person per account. Interest may be paid at regular intervals or all at once at maturity. Higher interest is available for larger deposits or longer maturity dates. A penalty usually applies for early withdrawal of the funds, but no-penalty CDs are available at an extremely low interest rate. Because there are no licensing or registration requirements, brokerage firms and independent salespersons may issue CDs, which may or may not be FDIC or NCUA-insured.

#### A.2 Seizing procedures

Particularly because Certificates of Deposit (CDs) are so variable, the seizing agency should immediately notify the issuer of the CD that it has been seized or restrained for forfeiture. The agency should instruct the issuer to take the steps necessary to freeze the principal and accrued interest covered by the CD so it will be negotiable by the USMS after forfeiture. Most CDs issued today are not evidenced by a paper certificate; they are simply an electronic bookkeeping entry.

#### A.3 Disposition

The USMS will take appropriate action, in accordance with established procedures, to liquidate the CDs after forfeiture.

### B. Cryptocurrency

#### B.1 Overview

Cryptocurrency, a type of virtual currency, is a decentralized, peer-to peer, network-based medium of value or exchange that may be used as a substitute for fiat currency to buy goods or services, or exchanged for fiat currency or other cryptocurrencies.[19] Individuals can obtain cryptocurrency through exchanges and other intermediaries, person–to-person transfers, the sale of goods or services, or mining.[20]

Cryptocurrency uses cryptography to secure and authenticate transactions and to manage and control the creation of new currency units. There are thousands of cryptocurrencies, including Bitcoin, Litecoin, and Ether. Generally, cryptocurrency is not issued by any government, bank, or company; it is instead generated and controlled through computer software operating on a decentralized peer-to-peer network. Most cryptocurrencies have a “blockchain,” which is a decentralized, typically public, transaction ledger containing an immutable and historical record of every transaction involving the cryptocurrency. Using open source or subscription analytical tools, cryptocurrency transactions can often be traced in their blockchains. However, some cryptocurrencies operate on blockchains that are not transparent or have built in protocols designed to conceal transactional information, making it difficult to trace or attribute transactions.

---

19 Virtual currency is distinguished from fiat currency, which is the coin and paper money of a country that has legal tender.

20 An individual can “mine” bitcoins by using computing power to solve a complicated cryptographic function and verify and record payments on the blockchain. Individuals are rewarded for this task by receiving newly created units of a cryptocurrency.

Financial Crimes Enforcement Network (FinCEN) Guidance issued on March 18, 2013 (FIN-2013-G001),[21] and May 9, 2019 (FIN-2019-G001),[22] states that convertible virtual currency administrators and exchangers, including kiosk operators and individual exchangers operating as a business, are regulated as money services businesses (MSBs).[23]

Cryptocurrency is associated with a type of account called a **wallet**. A wallet is a software program that interfaces with the blockchain and generates and stores public and private keys used to send and receive cryptocurrency. A public address, which is represented as a case-sensitive string of letters and numbers, is akin to a bank account number, and a private key is a cryptographic equivalent of a Personal Identification Number (PIN) or password. To access and transfer value associated with a public key or address on a blockchain, an individual must use the public key or address and its unique corresponding private key. The value lies in the private key because whoever controls the private key controls any value associated with the corresponding cryptocurrency public address. While private keys are initially generated by a user's wallet software, they can be copied and stored in myriad locations, described further below.

Cryptocurrency wallets exist in several forms, and users may store public and private keypairs either locally or remotely. Additionally, wallets may be *custodial* (also known as *hosted*)—where the wallet provider, as opposed to the owner of the cryptocurrency, keeps custody of the public and private keys on the wallet owner's behalf—or *non-custodial* (also known as or *un-hosted* or *self-hosted*)—where the wallet owner has sole access to the private keys. Where the keys are stored and who can access the keys will determine where and to whom agents can effectuate service of a seizure warrant.

**Wallet types include:**

- **Paper wallets** (locally stored, self-hosted/non-custodial):
    - An alphanumeric string or list (or other physical representation, such as a QR code) of public and private keypairs stored on a piece of paper. The user needs to connect a device to the internet, import the keys, and use wallet software to conduct transactions.
- **Hardware wallets** (locally stored, self-hosted/non-custodial):
    - A physical, electronic device that stores the public and private keypair on the device. Some hardware wallets have additional offerings, such as security features (e.g. login credential requirements), the ability to display the remaining balance in a wallet, and internet connectivity so that a hardware wallet owner can conduct cryptocurrency transactions.

[21] FIN-2013-G001: Application of FinCEN's Regulations to Person Administering, Exchanging, or Using Virtual Currencies (Mar. 18, 2013).

[22] FIN-2019-G001: Application of FinCEN's Regulations to Certain Business Models Involving Convertible Virtual Currencies (May 9, 2019).

[23] *See* FIN-2013-G001 and FIN-2019-G001.

- **Software wallets** (locally stored, self-hosted/non-custodial):
  - Software installed on a user's electronic device (e.g. computer, server, and mobile phone), which stores the wallet and private keys on the device and enables the internet-connected user to conduct cryptocurrency transactions from the device. (Although software wallets store the public and private keypair on a device, some software permits the user to remotely access the device and keys.)
- **Web-based wallets** (remotely stored, custodial and non-custodial):
  - Third party owned, cloud-based software that users can log into using a username and password. The third party software provider stores the public and private keypair on its cloud on the account holder's behalf. Once logged in, the user can see their keys and can transact in cryptocurrency from the online wallet. In some instances, the keys are stored on the software provider's servers in an encrypted state such that only the user (not the software provider) can access them after entering their username and password.

## B.2 Seizing procedures

### B.2.a Agency/U.S. Marshals Service (USMS) wallets

Each seizing agency should have a wallet or address for temporary storage of seized cryptocurrency prior to the transfer of custody to the USMS or USMS contractor. Agencies typically set up one or more wallets for each seizure. After seizing cryptocurrency, processing the seized cryptocurrency through the seizing agency's Asset Forfeiture department, and assigning a CATS identification number, the seizing agency should then transfer the cryptocurrency for pre-forfeiture storage according to current USMS Complex Assets Unit (CAU) procedures.

### B.2.b Seizure of cryptocurrency

Unless authorized by a search warrant or consented to by the owner, a seizure warrant should be obtained for the seizure of cryptocurrency.[24] In the case of cryptocurrency held in a locally stored wallet in the United States, the seizing agency should obtain a seizure warrant for that cryptocurrency possessed and controlled by the owner and serve the warrant on the owner or the owner's counsel. In the case of cryptocurrency held in an account or wallet hosted by a U.S.-based service provider, such as an institutional exchange, the seizing agency should obtain and serve a seizure warrant on the service provider, similar to executing a seizure warrant on a bank account.

Many cryptocurrency service providers are located outside the United States. Prosecutors should consult the Office of International Affairs (OIA) regarding seizure of cryptocurrency from foreign-located service providers, even in cases where a wallet company does not itself have access to or control of the private key. Generally, such seizures will require use of a mutual legal assistance treaty (MLAT) request or other similar authority. *See* Chapter 8 in this *Manual* for a discussion of policies relating to international seizures and forfeitures. Prosecutors should consult OIA regarding the seizure of cryptocurrency from foreign-located service providers, such as institutional exchanges. Some exchanges located outside the United States might have U.S. offices or points of contact and will

[24] In many cases, the seizure of cryptocurrency associated with a locally stored wallet may be authorized by a Federal Rule of Criminal Procedure 41 search and seizure warrant issued for a premises or electronic device where a wallet and private keys are located.

accept service of U.S. seizure warrants; however, prosecutors and agents should seek the voluntary restraint of foreign-located assets only through U.S. points of contact. Prosecutors should not agree to accept any cryptocurrency from a foreign-located company without an MLAT or permission from OIA, even if the company offers to transfer the assets voluntarily. Doing so without an MLAT or permission from OIA could violate the sovereignty of another country. Contact MLARS for examples of warrants for cryptocurrency.

Prosecutors and agents should be aware that there may be multiple copies of a private key for a particular asset. Thus, it is imperative that once authorization to seize the virtual currency is obtained, it be transferred to an agency-controlled wallet. This will not only preserve the cryptocurrency for forfeiture but will also preserve the jurisdiction of the court in a civil forfeiture case, because in rem jurisdiction is premised upon the court's control of the asset. All seized cryptocurrency should be held in "cold storage," i.e. in a secure offline device, until it is transferred to a designated government-controlled custodial wallet, per current USMS procedures.

If the seizing agency has difficulty accessing the cryptocurrency for seizure, it should work with the owner or contact the Computer Crime and Intellectual Property Section (CCIPS) for assistance.

### B.3 Disposition

Because of the risks that early conversion may pose, in most cases, cryptocurrency should be kept in the form it was seized and not liquidated (i.e. converted to fiat currency or other cryptocurrency) until a final order of forfeiture is entered or an administrative forfeiture is final. Agencies or prosecutors may, however, seek an order for the interlocutory sale of cryptocurrency at the request or with consent of all parties with an ownership interest in the asset, or in certain cases involving victims who suffered pecuniary losses. Prosecutors must consult with MLARS before any pre-forfeiture conversion and before seeking an order for interlocutory sale of cryptocurrency.

Any liquidation of cryptocurrency should be executed according to established written policies of the seizing agency and the USMS. Prosecutors may contact MLARS or USMS' headquarters Asset Forfeiture Division (AFD) for guidance regarding disposition of any alternative cryptocurrencies (e.g. cryptocurrency other than Bitcoin), including anonymity enhanced cryptocurrencies (commonly referred to as privacy coins) and tokens. Permission to sell privacy coins or to place them into official use must be obtained from MLARS.

## C. Employee Retirement Income Security Act (ERISA) accounts

Defendants frequently hold retirement accounts that may be subject to forfeiture, either directly or as substitute property. Even when not subject to policy limitations or approval requirements, prosecutors should be aware that there may be legal limitations on the forfeiture of retirement accounts. Certain employee pension benefit or deferred compensation plans are governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461 et seq. Section 1056(d)(1) of ERISA provides that "[each] pension plan shall provide that benefits provided under the plan may not be assigned or alienated." Few courts have addressed whether this anti-alienation provision precludes the forfeiture of funds in retirement plans covered by ERISA, but those few courts have generally held that ERISA's anti-alienation provision does preclude forfeiture of funds in ERISA-protected retirement plans. *See United States v. Funds ex rel. Weiss*, 345 F.3d 49, 56–57 (2d Cir. 2003) (ERISA

anti-alienation provision bars forfeiture of funds while they are held in a valid ERISA-protected pension plan). Prosecutors should be familiar with the caselaw in their own districts and circuits.

But prosecutors should also know that the ERISA anti-alienation provision has been held not bar the garnishment of funds in an ERISA-protected retirement plans for restitution. *See United States v. Sheth*, 759 F.3d 711 (7th Cir. 2014) ("We have recognized that the Mandatory Victims Restitution Act supersedes anti-alienation provisions so that retirement accounts may be used as a source of funds to provide restitution" (cleaned up)); *United States v. DeCay*, 620 F.3d 534, 541 (5th Cir. 2010) (notwithstanding its anti-alienation provision, 29 U.S.C. § 1056(d)(1), ERISA retirement accounts are subject to MVRA restitution awards).

### D. Interest On Lawyer Trust Accounts (IOLTA)

Most states require attorneys to maintain client funds in a client trust account (CTA). CTAs frequently hold funds clients pay up-front as an advance on fees and expenses before legal work is commenced. These accounts also frequently contain other client funds, such as funds received from legal settlements. All states have IOLTA programs. IOLTA accounts, which are one form of a CTA, are mandatory in some states and voluntary in others. Whether mandatory or voluntary, the IOLTA mechanism pools funds that could not otherwise earn interest for individual clients, and the interest on the pooled funds is payable to a state-sponsored IOLTA program. IOLTA programs in turn use the funds to finance charitable and educational endeavors, improvements to the administration of justice, and to provide indigent and low-income persons with legal services. CTA or IOLTA accounts may contain client funds that are subject to forfeiture, including funds transferred by a client relating to legal services to be performed, and other funds. Specific Department policy applies to the forfeiture of attorneys' fees.[25] This policy does not limit the seizure and forfeiture of client funds held in CTA or IOLTA accounts that are unrelated to the provision of legal services. However, CTA or IOLTA accounts often contain commingled funds of numerous clients. Consequently, prosecutors should ensure that only forfeitable funds in CTA or IOLTA accounts that are subject to forfeiture are seized or restrained, not other untainted funds unrelated to the target that are commingled in the CTA or IOLTA account. To avoid the seizure of untainted, third party funds, prosecutors should not rely on the fungible property statute, 18 U.S.C. § 984, when seizing funds from CTA or IOLTA accounts.

### E. Life insurance

#### E.1 Overview

There are generally two types of life insurance—term life insurance and cash value or permanent life insurance. Term life insurance is referred to as basic life insurance. Term insurance provides coverage for a specific period of time and pays a lump sum upon the death of the policyholder. Once the term ends, coverage under this policy ends. It does not include a cash value that can be used in the future. However, some term insurance policies include an option to convert to a cash value policy.

Cash-value life insurance is considered a form of permanent life insurance that pays out upon the policyholder's death but accumulates wealth during the policyholder's lifetime. The policyholder can use the cash value as a tax-sheltered investment or as a fund from which to borrow and as a means to pay policy premiums later in life, or the policyholder can pass it to their heirs. The cash-value account

[25] *See* Chap. 12, Sec. IV in this *Manual* and *Justice Manual* (JM) § 9-120.000 et seq.

earns a modest rate of interest that accumulates tax-free. Over time, the cash-value account grows, which reduces the mortality risk of the life insurer. Upon the death of the insured, the insurer is only obligated to pay the death benefit, not the cash value, which it retains. Whole life, variable life, and universal life are all types of cash-value life insurance. Coverage under these policies stays in effect as long as the premiums are paid.

The cash value to be realized from the seizure or restraint of a life insurance policy depends upon the type of insurance policy at issue and its level of maturity. The account value of a life insurance policy that builds cash value is the amount that the investment portion of the policy is worth. The investment portion of the policy is paid out of the premiums paid by the insured. Some cash-value life insurance policies levy a surrender charge if cashed in before a certain length of time. Surrender charges generally become lower the longer the insured owns the life insurance policy. With most policies the surrender charges eventually disappear, and the account value and surrender value of the policy become the same.

The face value of the policy is the death benefit that it provides upon the insured's death. This is the minimum that the beneficiary would receive from the policy, as long as there is not an outstanding loan against a cash-value policy. Some policies, typically universal life policies, pay more than the face value if the insured dies and the investments have gained in value. The policy might pay the surrender value of the policy in addition to the face value.

### E.2  Seizing procedures

Because the value to be realized from the seizure or restraint of a life insurance policy depends upon the type of insurance policy at issue and its level of maturity, and because there may be tax and other legal implications for early withdrawal, to preserve the value of policy, it may be more appropriate for prosecutors to seek a restraining order, rather than a seizure warrant, for the funds.

To maximize the value of the particular policy prosecutors should:

(1)  identify the type of insurance policy at issue;

(2)  identify the maturity date of the policy;

(3)  identify the value of the policy to be seized or restrained. Prosecutors may be able to obtain this information from various sources, including the attorney or fraud investigator for the insurance company;

(4)  if seeking a restraining order, make sure that the order directs the insurance company to:

    (a) maintain investments as they were as of the date of restraint, in the case of a restraining order; and

    (b) change the beneficiary of the policy to the government.

(5)  if seeking a seizure warrant, make sure that warrant directs insurance company to pay the requested value as set forth in the warrant;

(6)  serve the restraining order or seizure warrant on the insurance company or appropriate financial institution; and

(7) provide a copy of the restraining order or seizure warrant to the USMS at the time the funds are transferred to government custody.

#### E.3 Disposition

The USMS will take appropriate action, in accordance with established procedures, to liquidate the life insurance policy after forfeiture.

### F. Money orders

#### F.1 Overview

The U.S. Postal Service (USPS) is the largest issuer of money orders. Other non-USPS private MSBs and financial institutions issue their own money orders either through thousands of agents or through their own branches.

The USPS sets a maximum purchase value of $1,000 for each domestic money order and $700 for most international money orders, except for El Salvador and Guyana, for which the maximum purchase value is $500. Other issuers set maximum purchase values of $500 to $1,000 for their money orders. Purchasers may use cash, debit cards, or travelers' checks to purchase most money orders. Because purchasers frequently use cash to buy money orders, criminals often misuse money orders as part of laundering schemes or to move illicit proceeds obtained from any number of criminal activities.

A buyer of a money order usually receives a receipt that includes the money order's serial number, which the buyer should retain until the money order has cleared. Tracking a money order without a receipt or serial number can be difficult, if not impossible. The USPS offers an online money order inquiry service that allows purchasers to input the money order serial number and receive an update on its status. To track any other type of money order, issuers usually require the inquirer to complete a tracking form and pay additional fees to determine whether a money order already has been cashed.

#### F.2 Seizing procedures

Seizing a money order as evidence or for forfeiture does not necessarily seize the funds held on deposit by the issuer to satisfy payment of the money order. Because the purchaser may obtain a refund of the purchase funds by reporting money orders stolen, lost, or accidentally destroyed, physical possession of the money order is not required to dispose of the funds associated with it. Therefore, in most instances, prosecutors should obtain a criminal or civil seizure warrant or criminal restraining order that authorizes seizure or restraint of the money orders themselves, and should also obtain an order that authorizes seizure or restraint of the total amount of funds held by the issuer necessary to satisfy the money orders.

#### F.2.a U.S. Postal Service (USPS) money orders

For USPS money orders, investigating agents or prosecutors may verify or track a money order several ways:

- by checking the USPS online Money Order Inquiry System (MOIS) by selecting the "6401 Inquiry" option and entering the serial numbers to determine whether the payees already may have redeemed them;
- by calling the USPS automated money order verification system at 1-866-459-7822; or
- by emailing the USPS accounting help desk, making sure to include a contact name and other contact information along with the money order amounts, serial numbers, and any other information requested, such as payment date or whether the money order has been reported lost or stolen.

Immediately following seizure, the seizing agency should send a request to hold the money orders seized to the following address:

U.S. Postal Inspection Service
Criminal Investigations Group
National Money Order Coordinator
475 L'Enfant Plaza SW, Room 3800
Washington, DC 20260-3800

The request must be submitted on agency letterhead and include:

(1) the reason for the request;

(2) the case number and seizure number;

(3) statutory authority for seizure and possession; and

(4) a money order list by serial number, issue office, and monetary value.

Originals or copies of money orders are not required. Upon receipt of this information, the U.S. Postal Inspection Service (USPIS) will flag the respective money orders to place them "on hold," pending further instructions. The timing of the issuance of a hold on the money orders is critical, as they can be replaced very quickly by the purchaser. Accordingly, the seizing agency should submit its written request as soon as possible. The seizing agency should also provide the USMS with a copy of this letter at the time the money orders are transferred to the USMS for custody. If further assistance is needed, contact the local office of the USPIS.

#### F.2.b Non-U.S. Postal Service (USPS) money orders

Immediately after seizing non-USPS-issued money orders, the seizing agency should send correspondence to the money order issuer that includes the same information for USPS money orders and advise the issuer to place a hold on payment of the money orders pending further instructions.

### F.3 Disposition

When seeking a judicial order of forfeiture[26] for money orders and the funds held on deposit to satisfy them, prosecutors should:

- forfeit the seized money orders as well as the funds held by the issuer on deposit for payment of the money orders; and
- authorize the USMS to take possession of the funds held by the issuer on deposit to satisfy the money orders.

The USMS will take appropriate action, in accordance with established procedures, to liquidate the money orders after forfeiture.

## G. Personal, certified, and cashier's checks

### G.1 Overview

A personal check is a check drawn on the personal account of the originator, which could be an individual or entity. A certified check is a check on which the bank has certified that the account holder has sufficient funds to cover the check and the check is drawn against that personal account holder's funds. In contrast, a cashier's check is a check issued by the bank itself and sold to a purchaser. Whereas a personal check or certified check is an obligation of the account-holder, a cashier's check is a direct obligation of a bank.

### G.2 Seizing procedures

Following the seizure of a check, the agency should immediately identify the source of funding for the check, investigate that source, and determine whether seizure of funds is appropriate.[27] Different processes for seizure and restraint of funds apply depending on whether agents have seized a personal, certified, or cashier's check.

If the source of funding for a personal or certified check is an account that contains property subject to forfeiture, then the seizing agency, working with the prosecutor, should immediately obtain a seizure warrant, under the applicable criminal or civil forfeiture statute, for the funds in the account; serve the seizure warrant on the financial institution; and advise the USMS of the warrant and seizure of funds, as well as the amounts held in the account and subject to forfeiture.

If a cashier's check was purchased with funds subject to forfeiture, and if the seizing agency and prosecutor determine that the funds that support the check are subject to forfeiture, then the seizing agency, in conjunction with the USAO, should immediately:

(1) obtain a judicial restraining order or seizure warrant, under the applicable criminal or civil forfeiture statute, directing the financial institution upon which the check is drawn to either:

(a) take necessary steps to maintain funds sufficient to cover the check or place a hold on or revoke the check, in the case of a restraining order; or

[26] For administrative forfeiture, please contact agency counsel for further guidance.

[27] Agencies should also note the date the check was drawn to avoid a stale dated personal check (*see* U.C.C. § 4-404) or a certified check that may be considered abandoned property under state law.

       (b) release funds in the amount of the check, in the case of a seizure warrant;

(2) serve the restraining order or seizure warrant on the financial institution; and

(3) provide a copy of the restraining order or seizure warrant to the USMS at the time the check is transferred for custody.

#### G.3 Disposition

The USMS will accept custody of all checks for which the investigative agency has contacted the bank from which they were drawn. The agency and USAO should ensure that any final order of forfeiture provides the USMS with authority to take or maintain custody of, deposit, and dispose of the funds that were restrained or seized to cover the check.

### H. Prepaid access devices

#### H.1 Overview

A prepaid access device is a card-based alternative to cash. It is a stored value card linked to an external account maintained by a financial institution; it is not linked to an account held by the cardholder. Instead, the funds are in a pooled account. A prepaid access device acts as a debit card linked to that pooled account, and the program manager or processor allows the card to access only the amount of funds "loaded" on the device. The value stored on the device can be accessed using either the device's magnetic stripe or chip, or by entering the device number.

Two categories of prepaid access devices exist. Closed-loop devices may be used only for the issuer's products or other limited purposes (for example, a device that can be used at a specific retailer, restaurant, or utility provider). Most closed-loop devices are issued for a fixed amount and cannot be redeemed for cash.[28] Open-loop devices, in contrast, are more general-purpose cards that can be used to obtain cash, make purchases, or transfer funds. Open-loop devices are backed by an online electronic system for authorization, and often can be reloaded in person or online and used again. All open-loop devices are branded cards (e.g. Visa, MasterCard, Discover, American Express, JCB, and Union Pay) that allow the user to make purchases or conduct transactions anywhere the brand is accepted. However, there are also network-branded devices (e.g. public benefits cards or bank Automated Teller Machine (ATM) cards) that are linked to point-of-sale and ATM networks using PIN-based technologies for sales and withdrawals.

##### H.1.a Issuing bank

An issuing bank is the financial institution that acquires a Bank Identification Number (BIN), or Issuer Identification Number (IIN), on behalf of a prepaid access device program manager, and then "rents" the BIN to the program manager.[29] Only a financial institution can register a BIN, and it retains ultimate responsibility for use of the BIN. The issuing bank is a member of a card network

---

[28] Branded, closed-loop cards also exist. Examples include cards that can only be used at a particular place, such as a specific mall or university.

[29] The BIN or IIN, is the first 6 digits of a bank card number or payment card number and is part of ISO/IEC 7812, a standardized global numbering scheme used for the purpose of identifying institutions who assign unique account numbers to their customers, including for the issuance of payment cards. The Registration Authority for banks and other issuers is the American Banking Association (ABA), which maintains a complete listing of IINs/BINs.

for which it has an agreement to issue network branded cards. The issuing bank maintains cardholder funds that have been added, or loaded, onto the prepaid access device through the use of a "pooled account." These funds are held on deposit by the issuing bank until the cardholder uses the prepaid access device to make purchases or to transfer or withdraw funds.

#### H.1.b Program manager

A program manager is the company that oversees a prepaid access device program and is responsible for card activation, cardholder verification, account servicing, records processing, establishing relationships with retail partners, and maintaining the relationship with the issuing bank, among other duties. The program manager, in most cases, also produces and distributes the prepaid access devices.

#### H.1.c Card processor

Prepaid access device processors (issuing processors) are hired by a program manager, issuing bank, retail partner, or merchant to handle all or some program operation components as provided for in the processing contract. To effectively handle the payment-processing component of any transaction involving a prepaid access device, a processor records transaction information (purchase, transfer, fees, and all other credits or debits to the card), tracks the card balance, and oversees all aspects of card usage, including chargebacks, returns, or payment disputes. Some processors also take responsibility for managing the card (card issuance, enrollment options, and loading), providing cardholder care (call centers, online account management, statement generation, balance inquiry capabilities, fraud mitigation monitoring, risk mitigation, security, and compliance), and other platform management functions.

The issuing processor differs from the merchant processor. Merchant processors work on behalf of the merchants accepting branded cards, providing the network to process the transaction through the card association.

### H.2 Seizing procedures

A seizure of a prepaid access device does not constitute a seizure of the funds associated with or loaded onto the card because disposition of funds does not require physical possession of the card. For example, funds associated with a prepaid access device easily can be spent or transferred while law enforcement holds the card as evidence. Thus, to prevent criminals from spending or transferring funds associated with a particular card, law enforcement must take additional action.

The seizing agency should first examine the card to determine the issuing bank and program manager or processing company. The seizing agency should then contact the issuing bank to determine the identity of the program manager. In some instances, the issuing bank is also the program manager, and will be able to provide all necessary balance and card information. If the card has been re-encoded with other account information, however, the seizing agency will want to contact the issuing bank associated with the re-encoded information.

The seizing agency must determine whether the issuer, program manager, or processor can put a hold on the funds associated with the prepaid access device so that the funds are not spent or transferred while the seizing agency obtains and serves a warrant or restraining order. The issuer, program manager, or processor may do this automatically as a risk management function upon contact by law enforcement, and may request written documentation for its file.

Unless the owner consents, the government should obtain a seizure warrant or restraining order for the seizure of all funds associated with seized prepaid access devices to ensure the associated funds' availability for forfeiture. Seizure of the card itself neither deprives the owner of control over the funds associated with the seized prepaid access device nor authorizes the government to take possession of the funds.

The government should issue a grand jury or a Federal Rule of Civil Procedure 45 subpoena to the program manager or processor for all customer account records, any customer interactive voice response account records, customer web log information reports, customer deposit information for account reports, customer account history reports, and any internal customer, anti-money laundering, or Bank Secrecy Act (BSA) compliance documentation related to the customer or account activity.

#### H.3 Disposition

The USMS will take appropriate action, in accordance with established procedures, to liquidate the prepaid access device after forfeiture.

### I. Securities

#### I.1 Overview

A security is a negotiable financial instrument that represents some type of financial value: an equity interest in a publicly traded corporation (stock), a debt security used by a governmental body or a corporation to borrow money (bond), or rights to ownership as represented by an option. The company or entity that issues the security is known as the issuer.

#### I.2 Seizure procedures

As a general rule, the USMS will accept custody of all stocks and bonds for which the seizing agency can document a significant worth. The seizing agency should consult with the USMS before seizing any stocks or bonds with questionable value. As a best practice, the USMS will coordinate with the USAO to try to liquidate stocks and bonds through interlocutory sale whenever possible.

##### I.2.a Securities not held in a brokerage account

For publicly traded securities, the seizing agency should contact a state- and national-certified stockbroker immediately following seizure or restraint to establish the fair market value of the asset and the manner of trading. If the instrument has an insignificant or minimal value, it should not be seized or restrained. If the seizing agency does not have a brokerage account at an established securities firm, the agency should discuss with the USMS' CAU where the seized securities will be held.

For non-publicly traded securities, including stock of a privately held company, the seizing agency should contact the USMS' CAU.[30] The stocks and bonds of closely held corporations can present unique issues caused by illiquidity and lack of information. Closely held financial instruments that have been determined to have an insignificant or minimal value should not be seized or retained

[30] To the extent possible, the seizing agency should establish the value of all closely held financial instruments prior to seizure. If the determination cannot be made prior to seizure, it should be made as expeditiously as possible subsequent to seizure.

because the USMS will not take custody of them. In the event that law enforcement seizes closely held securities with significant worth, the seizing agency must expeditiously seek a viable plan for liquidation in consultation with the AUSA and the USMS.

#### I.2.b Securities held in a brokerage account

Securities that are held are in a brokerage account usually will be seized or restrained in place. Any restraining order may provide that the funds will continue to be invested as they were on the date of restraint, unless modified by court order. Upon receipt of an interlocutory order or final order of forfeiture, or a declaration of administrative forfeiture, the USMS will instruct the broker to liquidate the account. The net proceeds after commission are deposited in the Seized Asset Deposit Fund (SADF) or Assets Forfeiture Fund (AFF). Pursuant to court order, brokerage accounts may be held in a different manner to preserve the value of the account.

### I.3 Disposition

Whether the forfeited securities were held in a brokerage account or not, upon entry of an interlocutory sale order or a final order, the seizing agency or the prosecutor must immediately consult the USMS to effect the liquidation of the securities, and the deposit of proceeds (less broker or transfer agent commission) into the AFF. If closely held financial instruments (*see* Section V.I.2.a in this chapter) were not liquidated prior to forfeiture, prosecutors must consult with USMS' CAU to ensure expeditious liquidation.

## J. Travelers' checks

### J.1 Overview

Despite their rapidly declining use, traveler's checks occasionally may still be used to conceal or convert criminal proceeds, and agents and prosecutors may encounter them during investigations. If agents locate older travelers' checks during an investigation, they may still be redeemable for forfeiture even if the original issuer no longer offers travelers' checks for sale. Certain companies will honor their no-longer-issued travelers' checks.

### J.2 Seizing procedures

Seizing a traveler's check as evidence or for forfeiture does not necessarily seize the funds held on deposit by the issuer to satisfy payment of the traveler's check. Because the purchaser may obtain a refund of the purchase funds by reporting a traveler's check or a series of travelers' checks stolen, lost, or accidentally destroyed, physical possession of the traveler's check is not required to dispose of the funds associated with it. In most instances, prosecutors should obtain a criminal or civil seizure warrant or criminal restraining order that authorizes seizure or restraint of the travelers' checks themselves, as well as an order that authorizes seizure or restraint of the total amount of funds held by the issuer necessary to satisfy the travelers' checks.

Upon seizing travelers' checks, the seizing agency should immediately identify and contact the issuer responsible for their payment to determine the checks' authenticity and validity. The seizing agency should also notify the issuer that law enforcement has seized the checks for forfeiture and should determine the required procedures for redemption. If the checks can be redeemed before resolution of

the forfeiture case, the seizing agency should ask the issuer to liquidate and redeem them to allow the funds to be held by the USMS pending conclusion of the forfeiture case.

### J.3 Disposition

If the travelers' checks cannot be redeemed until after forfeiture, the checks should be turned over to the USMS with verification that the issuing company has been notified of the forfeiture action. If necessary, the prosecutor may need to seek a restraining or freezing order to prevent the issuer from dissipating the funds held for redeeming the travelers' checks during the pendency of the forfeiture action.

In seeking a judicial order of forfeiture[31] of travelers' checks and the funds held on deposit to satisfy them, the prosecutor should request that the district court:

- forfeit the seized travelers' checks and the funds held by the issuer on deposit for their redemption; and
- authorize the USMS to take possession of the funds held by the issuer on deposit to satisfy the travelers' checks.

The USMS will take appropriate action, in accordance with established procedures, to liquidate the travelers' checks after forfeiture.

## K. U.S. savings bonds

### K.1 Overview

U.S. savings bonds are debt securities issued by the Department of the Treasury (Treasury). Treasury and virtually all financial institutions sold paper bonds until 2012, when paper bonds were abolished, and financial institutions stopped selling them. Today, savings bonds may be bought and redeemed only via TreasuryDirect accounts online,[32] and they are issued only in electronic, book-entry form.

### K.2 Seizing procedures

Immediately following seizure, the seizing agency should notify Treasury by certified letter, listing:

(1) serial numbers;

(2) bond denominations;

(3) to whom payable; and

(4) the reason for which they were seized.

The seizing agency should send this information to:

Treasury Retail Securities Site
P.O. Box 214 (for series EE, E, and I savings bond service transactions) or

[31] For administrative forfeiture, please contact agency counsel for further guidance.

[32] *See* TreasuryDirect.

P.O. Box 2196 (for series H and HH savings bond service transactions)
Minneapolis, MN 55480-0214

Savbond@bpd.treas.gov

Phone: 1-844-284-2676 (toll free)

The seizing agency should provide the USMS with a copy of this letter at the time the savings bonds are transferred for custody.

### K.3 Disposition

The USMS will accept custody of all savings bonds, maintain them until forfeiture, and dispose of them in accordance with established procedures.

## VI. Seized Cash Management

The Department must report annually to Congress on the amount of seized cash not on deposit. As a result, the Department developed a seized cash management policy. Seized cash must be deposited promptly in the SADF pending forfeiture.[33]

This policy applies to all cash seized for purposes of forfeiture.[34] Therefore, all seized currency subject to criminal or civil forfeiture must be delivered to the USMS for deposit in the SADF either within 60 days after seizure or 10 days after indictment, whichever occurs first.[35] Photographs or videotapes of the seized cash should be taken for use in court as evidence.

Exceptions to this policy may be granted only in extraordinary circumstances. If the USAO seeks to retain less than $5,000 of seized cash for evidentiary purposes, then a supervisory official within the USAO must approve the continued retention on the currency. However, if the USAO seeks to retain $5,000 or more in seized cash, a supervisor within the USAO must forward to MLARS a request for an exception to the seized cash policy.[36] The request should include a brief statement of the factors warranting its retention and the name, position, and phone number of the individual to contact regarding the request. Contact MLARS for further guidance on the form of submission.

Limited circumstances merit exceptions to this policy. Exceptions, including extensions of applicable time limits for deposit in the SADF, may be granted, on an interim basis, only with the express written permission of the Chief of MLARS.[37] Retention of currency will be permitted only when it serves a significant independent, tangible, evidentiary purpose due to, for example, the presence of fingerprints, packaging in an incriminating fashion, or a traceable amount of narcotic residue on the

[33] 28 C.F.R. § 8.5.

[34] Cash seizures made by Treasury Forfeiture Fund (TFF) member agencies are governed by similar policy contained in Treasury Executive Office for Asset Forfeiture (TEOAF) Directive No. 4: Seized Cash Management Policy.

[35] This policy does not apply to the recovery of buy money advanced from appropriated funds. To the extent practical, negotiable instruments and foreign currency should be converted and deposited.

[36] The criteria and procedure for obtaining exemptions remains the same for cash retained by other agencies participating in the Program.

[37] The authority to approve exceptions to the Department's cash management policy requiring that all seized cash, except where it is to be used as evidence, is to be deposited promptly into the SADF was delegated by the Assistant Attorney General, Criminal Division (AAG), to the Chief of MLARS on December 13, 1991. Requests for an exemption should be filed by the USAO or Criminal Division section responsible for prosecuting, or reviewing for prosecution, a particular case.

bills.[38] If only a portion of the seized cash has evidentiary value, only that portion with evidentiary value should be retained. The balance should be deposited in accordance with Department policy.

## VII. Use of Asset Forfeiture Authorities in Connection with Structuring Offenses

31 U.S.C. § 5324(a) prohibits evasion of certain currency transaction reporting and record-keeping requirements, including structuring schemes. Generally speaking, structuring occurs when, instead of conducting a single transaction in currency in an amount that would require a report to be filed or record made by a domestic financial institution, the violator conducts a series of currency transactions, keeping each individual transaction at an amount below applicable thresholds to evade reporting or recording.

The Department must appropriately and effectively allocate its limited investigative resources to address the most serious structuring offenses, consistent with Departmental priorities. The following guidance applies to all federal seizures for civil or criminal forfeiture based on a violation of the structuring statute, except those occurring after an indictment or other criminal charging instrument has been filed.[39]

### A. Link to prior or anticipated criminal activity

If no criminal charge has been filed and a prosecutor has not obtained the approval identified below, a prosecutor shall not move to seize structured funds unless there is probable cause that the structured funds were generated by unlawful activity or that the structured funds were intended for use in, or to conceal or promote, ongoing or anticipated unlawful activity. For these purposes, “unlawful activity” includes instances in which the investigation revealed no known legitimate source for the funds being structured. Also for these purposes, the term “anticipated unlawful activity” does not include future Title 26 offenses. The basis for linking the structured funds to additional unlawful activity must receive appropriate supervisory approval and be memorialized in the prosecutor’s records.[40]

Where the requirements of the above paragraph are not satisfied, unless criminal charges are filed, a warrant to seize structured funds may be sought from the court only upon approval from an appropriate official:[41]

- AUSAs must obtain approval from their respective U.S. Attorney. The U.S. Attorney may not delegate this approval authority.[42]

---

[38] When practicable and consistent with law and policy, law enforcement is encouraged to, before depositing the entirety of the seized currency, test and retain samples of seized currency suspected to be proceeds of, or currency used to facilitate, narcotics trafficking.

[39] These guidelines apply to all structuring activity whether it constitutes “imperfect structuring” chargeable under 31 U.S.C. § 5324(a)(1), or “perfect structuring” chargeable under § 5324(a)(3).

[40] In order to avoid prematurely revealing the existence of the investigation of the additional unlawful activity to the investigation’s targets, there is no requirement that the evidence linking the structured funds to the additional unlawful activity be memorialized in the seizure warrant application.

[41] These requirements are effective as of March 31, 2015. For any case in which seizure was effected prior to this date, the forfeiture may continue so long as it otherwise comports with all other applicable law and Department policy.

[42] Although this authority is ordinarily non-delegable, if the U.S. Attorney is recused from a matter or absent from the office, the U.S. Attorney may designate an Acting U.S. Attorney to exercise this authority, in the manner prescribed by regulation. *See* 28 C.F.R. § 0.136.

- Criminal Division trial attorneys or other Department components not partnering with a USAO must obtain approval from the Chief of MLARS. The Chief of MLARS may not delegate this approval authority.

The U.S. Attorney or the Chief of MLARS may grant approval if there is a compelling law enforcement reason to seek a warrant, such as: serial evasion of the reporting or record keeping requirements; the causing of domestic financial institutions to file false or incomplete reports; and violations committed, or aided and abetted, by persons who are owners, officers, directors, or employees of domestic financial institutions.

If the U.S. Attorney or the Chief of MLARS approves the warrant, the prosecutor must send a completed "Structuring Warrant Notification Form" to MLARS.[43]

### B. No intent to structure

There may be instances in which a prosecutor properly obtains a seizure warrant but subsequently determines that there is insufficient admissible evidence to prevail at either civil or criminal trial for violations of the structuring statute or another federal crime for which forfeiture of the seized assets is authorized. In such cases, within seven (7) days of reaching this conclusion, the prosecutor must direct the seizing agency to return the full amount of the seized money. Once directed, the seizing agency will promptly initiate the process to return the seized funds.

### C. 150-day deadline

Within 150 days of seizure solely based on structuring, if a prosecutor has not obtained the approval discussed below, a prosecutor must either file a criminal indictment or a civil complaint against the asset.[44] The criminal charge or civil complaint can be based on an offense other than structuring. If no criminal charge or civil complaint is filed within 150 days of seizure, then the prosecutor must direct the seizing agency to return the full amount of the seized money to the person from whom it was seized by no later than the close of the 150 day period. Once directed, the seizing agency will promptly initiate the process to return the seized funds.

With the written consent of the claimant, the prosecutor can extend the 150day deadline by 60 days. Further extensions, even with consent of the claimant, are not allowed, unless the prosecutor has obtained the approval discussed below.

An exception to this requirement is permissible only upon approval from an appropriate official:

- AUSAs must obtain approval from their respective U.S. Attorney. The U.S. Attorney may not delegate this approval authority, except as discussed in Section VII n.42 in this chapter.
- Criminal Division trial attorneys or other Department components not partnering with a USAO must obtain approval from the Chief of MLARS. The Chief of MLARS may not delegate this approval authority.

[43] Contact MLARS for additional guidance regarding submission of the form.

[44] This deadline does not apply to administrative cases governed by the independent time limits specified by the Civil Asset Forfeiture Reform Act of 2000 (CAFRA). *See also* Chap. 5, Sec. III.B.2.a in this *Manual*.

If additional evidence becomes available after the seized money has been returned, an indictment or complaint can still be filed.

### D. Settlement

Settlements to forfeit or return a portion of any funds involved in a structuring investigation, civil action, or prosecution must comply with the requirements set forth in Chapter 11 in this *Manual*. In addition, settlements must be in writing, include all material terms, and be signed by a federal prosecutor. Informal settlements, including those negotiated between law enforcement and private parties, are expressly prohibited.

### E. Internal Revenue Service (IRS) structuring cases

On July 1, 2019, Congress passed the Taxpayer First Act (H.R. 3151). Section 1201 of the Taxpayer First Act amended 31 U.S.C. § 5317(c) to place conditions on Internal Revenue Service (IRS) seizures with respect to structuring transactions. Specifically, the IRS may seize assets or require the taxpayer to forfeit assets only if the property to be seized came from an illegal source, or if the transactions were structured to conceal illegal activities beyond structuring. *See* § 5317(c)(2)(B)(i). The IRS is also required to provide notice within 30 days of the seizure to anyone with an ownership interest in the property. *See* § 5317(c)(2)(B)(ii).

# Chapter 3: Seizures by State and Local Law Enforcement

## I. Forfeitures Follow the Prosecution

As discussed in Chapter 5, Section I.B in this *Manual*, when property is seized as part of an ongoing federal criminal investigation and the criminal defendants are being prosecuted in federal court, and unless federal forfeiture is not possible for one of the reasons outlined in Section IV in this chapter, the federal seizing agency should commence an administrative forfeiture proceeding or forfeiture should be pursued civilly or criminally in federal court, regardless of whether the property was seized by a federal, state, or local law enforcement agency.

Conversely, when a state or local agency has seized property as part of an ongoing state criminal investigation and the criminal defendants are being prosecuted in state court, any forfeiture action should generally be pursued in state court assuming that state law authorizes the forfeiture.

## II. General Adoption Policy

An "adopted" forfeiture—or "adoption" for short—occurs when a state or local law enforcement agency seizes property under state law, without federal oversight or involvement, and requests that a federal agency take the seized asset into its custody and proceed to forfeit the asset under federal law. Federal forfeiture law addresses the federal adoption of seizures by state and local agencies. *See* 18 U.S.C. § 981(b)(2)(C) (civil forfeiture statute includes an exemption to the warrant requirement if "the property was lawfully seized by a State or local law enforcement agency and transferred to a Federal agency"); 18 U.S.C. § 983(a)(1)(A)(iv) (extending the general requirement in 18 U.S.C. § 983(a)(1)(A)(i) that notice to "interested parties" be sent "in no case more than 60 days after the date of the seizure" to 90 days in the case of adoptions).

Under Attorney General Order No. 39462017: Federal Forfeiture of Property Seized by State and Local Law Enforcement Agencies (July 19, 2017), federal adoption of all types of assets seized lawfully by state or local law enforcement under their respective state laws is authorized whenever the conduct giving rise to the seizure violates federal law.[1] The net equity and value thresholds in Chapter 1 in this *Manual* continue to apply.[2] Agencies and components should prioritize the adoption of assets that will advance the Attorney General's Crime Reduction Strategy.[3] Please consult the Department of the Treasury (Treasury) for procedures regarding adoptions by federal agencies participating in the Treasury Forfeiture Fund (TFF).

The Department of Justice (Department), through legal counsel for federal investigative agencies as well as through U.S. Attorney's Offices (USAOs), will ensure that adoptions are conducted in

---

1 *See* Attorney General Order No. 39462017: Federal Forfeiture of Property Seized by State and Local Law Enforcement Agencies (July 19, 2017).

2 Chap. 1, Sec. I.D.1 in this *Manual* establishes minimum net equity thresholds of at least $5,000 for vehicles, and a minimum amount of $5,000 for cash seizures, or at least $1,000 if the person from whom the cash was seized either was, or is, being criminally prosecuted by state or federal authorities for criminal activities related to the property. U.S. Attorney's Offices (USAOs), in consultation with federal law enforcement agencies, may continue to establish higher thresholds for judicial forfeiture cases in order to best address the crime threat in individual judicial districts.

3 *See* Department Press Release 17-227 "Attorney General Announces Crime Reduction and Public Safety Task Force" (February 17, 2017).

compliance with law and Department policies.[4] Specifically, the following safeguards, among others, shall be maintained and implemented to ensure that there is sufficient evidence of criminal activity and that the evidence is well documented:

- to ensure that adoptions involve lawfully seized property, legal counsel at the federal agency adopting the seized property must continue to review all seizures for compliance with law, especially seizures made pursuant to an exception to the Fourth Amendment's warrant requirement; and
- to assist federal legal counsel in this review process, the adoption form used by state and local agencies seeking federal adoption of seized assets requires that the state or local agency provide additional information about the probable cause determination justifying the seizure. The additional information in the adoption form better documents probable cause in the first instance and provides federal legal counsel with the relevant information relating to probable cause for review. In addition, state and local agencies are required to certify on the adoption form that they have obtained a turnover order, if necessary,[5] and that the adoption request complies with their state laws.

Adoptions of cash in amounts equal to or less than $10,000 require additional safeguards. Those adoptions are permissible where the seizure was conducted:

- pursuant to a state warrant,
- incident to arrest for an offense relevant to the forfeiture,
- at the same time as a seizure of contraband relevant to the forfeiture, or
- where the owner or person from whom the property is seized makes admissions regarding the criminally derived nature of the property.

If a federal agency seeks to adopt cash equal to or less than $10,000, and none of these safeguards are present, then the agency may proceed with the adoption only if the USAO first concurs.

## III. Custody

### A. Concurrent jurisdiction

Federal prosecutors and agencies may not initiate a federal forfeiture proceeding in rem against property seized by state or local law enforcement while the property remains subject to the in rem or quasi-in-rem jurisdiction of a state court. The court first assuming in rem jurisdiction over the property retains jurisdiction to the exclusion of all others.[6] In addition, the *Rooker-Feldman* doctrine acts as a jurisdictional bar to a federal court reconsidering matters finally decided by a state court, and this doctrine may be applicable in certain circumstances.[7] Finally, considerations of comity may

4 Department policy does not affect the ability of state and local agencies to pursue the forfeiture of assets pursuant to their respective state laws. Moreover, when a state or local agency has seized property as part of an ongoing state criminal investigation and the criminal defendants are being prosecuted in state court, any forfeiture action should generally be pursued in state court assuming that state law authorizes the forfeiture. *See* Sec. I in this chapter.

5 *See* Sec. IV.B in this chapter.

6 *United States v. Timley*, 443 F.3rd 615, 627–628 (8th Cir. 2006).

7 *United States v. Timley*, 443 F.3rd 615, 628 (8th Cir. 2006) (*Rooker-Feldman* doctrine not applicable where the state court did not decide a turnover order proceeding on the merits).

counsel against a federal court asserting jurisdiction over an asset seized by the state even where there is no direct legal obstacle to federal in rem jurisdiction.

Depending on state and circuit law, a state court may be deemed to acquire jurisdiction over property seized by a state or local agency in various circumstances, such as:

- a state or local agency seizes the property pursuant to a state search warrant or seizure warrant,
- a state commences forfeiture proceedings against the seized property,
- the property is subject to a state turnover order requirement or another state-imposed limitation on turnover of seized property for federal forfeiture,
- a party files an action in state court seeking the return of the property, or
- even when a state or local law enforcement officer simply seizes the property in the absence of state process. If a state court has in rem jurisdiction over property, the state court must relinquish jurisdiction before any initiation of federal in rem forfeiture.[8]

Assets seized pursuant to the authority of a state search or seizure warrant may be deemed to be within the actual or constructive in rem jurisdiction of the state court, thereby impeding federal adoption of those assets even in the absence of a formal turnover statute.[9] Where federal adoption is sought for assets seized through state process, federal prosecutors and agencies should be aware of state law and state practice concerning such assets, and may want to consider requesting assistance from the appropriate state or local prosecutorial office in seeking an order from the state court either approving the turnover of the asset for adoption or formally releasing the asset from state jurisdiction.[10]

Several states have statutes that require formal state court approval for turnover of a state-seized asset for federal forfeiture. In these situations, the agency requesting to initiate federal forfeiture, with the assistance of the appropriate state or local prosecutorial office, may be required to obtain a state court turnover order relinquishing jurisdiction and authorizing the turnover of the property to a federal law enforcement agency for the purpose of federal forfeiture.[11]

The turnover order must be obtained from the state court with jurisdiction over the seized property (i.e. the state court that issued the warrant allowing the seizure or before which the state forfeiture proceedings have been or could be commenced). The USAO should not seek such orders in state court but may assist its state counterparts in doing so. Failure to obtain a turnover order may make it impossible for a federal court to take jurisdiction over the seized property in subsequent judicial forfeiture proceedings. In some cases, this may result in the United States dismissing or voiding a federal judicial forfeiture proceeding.

---

8 Depending on state law, a turnover order may be required for the federal department to assert in rem jurisdiction over the asset.

9 In *Little v. Gaston*, 232 So.3rd 231 (Ala. Civ. App. 2017), the state appellate court held that assets seized pursuant to the authority of a state search warrant remained within the actual or constructive in rem jurisdiction of the court that had issued the search warrant, such that their provision for federal adoption was improper.

10 Federal agents and federal taskforce officers (TFOs) will often participate in the execution of a state search or seizure warrant. Assets seized by agents and TFOs pursuant to the authority of state process should normally be returned to the state court rather than taken in directly for federal forfeiture.

11 State and local agencies are required to certify that they have obtained a turnover order where necessary. *See* Secs. II and IV.B in this chapter.

Some states have passed laws prohibiting the turnover of assets for federal forfeiture unless the asset exceeds a specific value, or unless other conditions are met, which may prevent or limit federal adoption of state-seized assets. These state laws may or may not provide exceptions for seizures by task force officers (TFOs) acting in their federal role or in connection with joint investigations. It is imperative that federal prosecutors work in conjunction with state prosecutors and state agencies to understand the impact state law may have on the federal forfeiture process, as a failure to do so may result in a court-ordered return of seized assets, state court lawsuits against the seizing state agency or officers, and state officers not acting in compliance with state law.

### B. Use of anticipatory seizure warrants to obtain federal in rem jurisdiction

If a state or local law enforcement agency commences a forfeiture action under state law, no federal forfeiture action may be commenced as long as the state court has in rem or quasi-in-rem jurisdiction over the subject property. If, however, the state or local authorities determine, for whatever reason, that the state action will be terminated before it is completed, and that the property will accordingly be released, or a federal seizing agency otherwise learns that the state court is about to order the release of property that is federally forfeitable, the property may be federally seized by obtaining an anticipatory seizure warrant from a federal judge or magistrate. The anticipatory seizure warrant must provide that it will be executed only after the state court has relinquished control over the property. For purposes of the notice requirements in 18 U.S.C. § 983(a)(1), property seized pursuant to an anticipatory seizure warrant in these circumstances is considered the subject of a federal seizure such that the period for sending notice of the forfeiture action is 60 days, commencing on the date when the anticipatory seizure warrant is executed.

Given the rapidly changing landscape of state forfeiture laws described above, federal prosecutors should consider whether an anticipatory federal seizure warrant will create obligations that are directly inconsistent with state law.

### C. Retention of custody by state or local agency during federal forfeiture proceedings

Where authorized by the U.S. Marshals Service (USMS) or Treasury, federal, state, or local agencies may maintain custody of designated assets pending forfeiture under a written substitute custodial agreement. Such agreements are contractual in nature and do not require district court approval. Substitute custodial agreements shall detail requirements for proper storage and maintenance of specified assets under the care of the custodial agency. In all such cases, security of the assets and the preservation of their condition and value pending forfeiture is of primary concern. Substitute custodial agencies must provide USMS-approved secure storage for the specified assets and provide the USMS full access to the assets for inspection purposes on request. The USMS may terminate substitute custodial agreements at any time at its sole discretion if the USMS determines that a substitute custodian has failed to comply with any of the terms of the agreement.[12]

[12] *See also* Chap. 10, Sec. II.B in this *Manual*.

## IV. Federal Adoption Procedure

### A. Federal adoption request

State and local agencies are required to complete the Request for Adoption of State or Local Seizure Form (July 2017) (adoption form) when seeking federal adoptions. Seizures made as part of joint federal-state investigations or pursuant to federal seizure warrants are not considered adoptions. Agency participants must review the circumstances of a seizure by state and local law enforcement to determine whether it is a federal adoption.

All state and local seizures that qualify for adoption under Attorney General Order No. 39462017: Federal Forfeiture of Property Seized by State and Local Law Enforcement Agencies (July 19, 2017) and are presented for adoption to either a Department or Treasury federal agency must be reported on the adoption form. The adoption form should be completed by the requesting state or local agency in the adoption form. A federal agency should not adopt a seizure while the property remains subject to the jurisdiction of a state court.[13] The state or local agency also may be required to complete the federal agency's standard seizure form as part of the adoption request. All information provided must be complete and accurate. Copies of any investigative reports and of any affidavits in support of warrants pertinent to the seizure must be attached for review.[14] When requesting adoption, state and local agencies must certify that the request complies with state law, as some states prohibit the referral of certain categories of seizures for federal forfeiture.

A federal forfeiture proceeding may appropriately arise in the following circumstances and is not considered an adoption:

- seizures by state or local authorities who are federally deputized TFOs working with federal authorities on a joint task force (*see* Section IV.A.1 in this chapter);[15] or
- seizures by state or local authorities that are the result of a joint federal-state investigation or were coordinated with federal authorities as part of an ongoing federal investigation (*see* Section IV.A.2 in this chapter).

#### A.1 Seizure by a federal task force officer (TFO)

This category of seizure generally occurs when an asset is seized by a sworn law enforcement officer employed by a state or local law enforcement agency but assigned either part-time or full-time to a federal law enforcement agency as a TFO. To qualify as a TFO seizure, the following criteria must be met:

- the TFO must have been a credentialed, deputized federal law enforcement officer at the time of the seizure;
- the TFO must have been assigned to a task force operated by a federal law enforcement agency at the time of seizure; and

[13] *See* Sec. III this chapter.

[14] State or local agencies may redact from investigative reports information which may disclose the identity of a confidential informant. However, disclosures ultimately may be required if information provided by the informant is needed to establish the forfeitability of the property in a subsequent judicial forfeiture proceeding.

[15] In some states, state law may forbid or regulate the provision of state-seized assets for forfeiture. In Missouri, for example, all seizures by TFOs are deemed Missouri state seizures if the TFO is a Missouri state or local officer.

- the TFO's actions and authorizations for those actions at the time of seizure were related to task force duties and were not conducted solely pursuant to duties and authorizations as a state or local law enforcement agent.

If the above criteria are not met, the forfeiture of an asset seized by a TFO may nonetheless meet the criteria for a joint investigation seizure (*see* Section IV.A.2 in this chapter). There is no circumstance that would warrant a blanket "federalization" of every seizure made by a state or local law enforcement agency simply because the state or local agency has an officer assigned to a federal task force or initiative like the High Intensity Drug Trafficking Area (HIDTA) or Organized Crime Drug Enforcement Task Force (OCDETF).

However, as discussed in Section III.B in this chapter, federal forfeiture of assets seized by state or local law enforcement officers, including TFOs acting in a federal role, may be foreclosed or delayed where the state has preexisting in rem jurisdiction, or if state law forbids or regulates the provision of state-seized assets for federal forfeiture.

### A.2 Seizure by a state or local law enforcement officer as part of a joint investigation

This category of seizure occurs when an asset is seized under the following circumstances:

- seizure is made at the direction of, or in coordination with, a sworn federal law enforcement officer in conjunction with a pre-existing federal criminal investigation;
- seizure is made as part of a pre-existing joint federal-state or federal-local criminal investigation in which a federal law enforcement agency is actively participating for the purpose of pursuing federal criminal charges against one or more specific persons or entities; or
- seizure is made as part of a pre-existing joint federal-state or federal-local criminal investigation in which a federal law enforcement agency is actively participating and the seizure arose from the joint investigation.

It can be appropriate to use state or local law enforcement officers to conduct seizures based on probable cause obtained during a federal investigation.

The following criteria generally must be met for a seizure to qualify as a joint-investigation seizure:

- the federal law enforcement agency had advance notice that the seizure would be made;
- the federal law enforcement agency concurred with the seizing state or local law enforcement agency that the seizure was appropriate and in furtherance of the goals of the relevant federal criminal investigation;[16] and
- there was an open federal criminal investigation in which federal agencies were participating in at the time of seizure.

[16] In some states, state laws may nullify this exception.

### B.  Federal law enforcement agency review

The adopting federal agency must consider adoption requests promptly.[17] Absent exceptional circumstances, the adopting federal agency must approve the request prior to the turnover of the property to federal custody.

Only an attorney (e.g. the agency's office of chief counsel or other legal unit) outside the chain-of-command of operational officials may approve a request for adoption.

The attorney review shall verify that:

(1)  the property is subject to federal forfeiture;

(2)  the state or local law enforcement agency has provided sufficient information about the probable cause determination justifying the seizure;

(3)  the property is not subject to the jurisdiction of a state court;

(4)  there is no other legal impediment to a successful forfeiture action; and

(5)  the state or local law enforcement agency has certified that the adoption complies with state law and that the appropriate state turnover order has been obtained, if applicable.

Federal law enforcement agencies will normally secure attorney review through their own offices of chief counsel or other legal unit but—at their discretion—may request that a federal prosecutor conduct this review. Any further review processes established in the future for federal seizures will also apply to adoptive seizures.

### C.  Timing

Federal law requires agencies to commence administrative forfeiture proceedings by sending written notice to interested parties "not more than 90 days after the date of seizure by the state or local law enforcement agency."[18] In order to give individual property owners an opportunity to challenge the seizure as soon as practicable, the Department will expedite federal agencies' decisions regarding adoptions and their provision of notice to interested parties. State and local law enforcement agencies must request federal adoption within 15 calendar days following the date of seizure. The adopting federal agency must send notice to interested parties within 45 days of the date of seizure.[19] The supervisory forfeiture counsel (or higher-level official) of the adopting agency may extend these time limitations for good cause by, provided that such extensions are documented in writing and include a description of the circumstances justifying the extension. Any such extensions remain subject to statutory time limits pursuant to 18 U.S.C. § 983(a)(1)(A)(iv).

---

[17] *See also* Sec. IV.C in this chapter.

[18] *See* 18 U.S.C. § 983(a)(1)(A)(iv); *see also* Chap. 5, Sec. II.B.1 in this *Manual*.

[19] Although federal law gives agencies up to 90 days to send notice to interested parties in the case of adoptive forfeitures, Attorney General Order No. 39462017: Federal Forfeiture of Property Seized by State and Local Law Enforcement Agencies (July 19, 2017), requires them to send notice not later than 45 days after seizure, unless a senior official at the federal agency approves such an extension. *See also* Chap. 5, Sec. I.B of this *Manual*.

## V.  Cases Initiated by a U.S. Attorney Directly with State and Local Law Enforcement without Federal Agency Involvement

As a general rule, a lead federal seizing agency is required to be involved in a federal forfeiture case. However, there are occasions when a federal agency declines involvement or federal prosecutors partner with state and local law enforcement directly and no federal seizing law enforcement agencies are involved.[20]

### A.  Direct adoption by the U.S. Attorney

If a federal agency will not adopt property seized by a state or local law enforcement agency, and the USAO wants to include the property in a judicial forfeiture, the U.S. Attorney must request that the Money Laundering and Asset Recovery Section (MLARS) authorize direct adoption of the seizure for the following assets: firearms, ammunition, explosives and any asset that does not meet the minimum net equity and value thresholds in Chapter 1, Section I.D.1 in this *Manual*.[21] The U.S. Attorney may approve direct adoption of assets that meet the applicable minimum net equity and value thresholds and property associated with child pornography.

For the U.S. Attorney or MLARS to approve a proposed direct adoption:

- a federal seizing agency must decline adoption of the seizure;

- the state or local law enforcement agency that seized the property must complete the adoption form and certify that the proposed direct adoption complies with state and local law, including any turnover statutes;

- the USAO must independently verify that the proposed transfer complies with state and local law and all turnover orders, if required, are obtained before recommending approval of the direct adoption;[22]

- the USAO must coordinate with its district USMS Asset Forfeiture Coordinator to ensure that the USMS can obtain custody of the asset and the agency with custody of the property will continue to retain custody in accordance with Section III.C in this chapter.

For direct adoptions requiring MLARS approval, the USAO must send a request to MLARS to initiate the direct adoption of an asset named in a federal indictment or civil forfeiture complaint. During the approval process, MLARS may obtain input from the headquarters office of the seizing agency that declined to adopt the seizure. MLARS shall notify the USAO and the USMS in that district when direct adoption is authorized. Where the property being adopted for federal forfeiture is a seized firearm, the state or local law enforcement agency that seized or is holding the firearm pending federal forfeiture is required to submit a tracing request to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) National Tracing Center (NTC) via eTrace, in accordance with the January 16, 2013, Presidential Memorandum "Tracing of Firearms in Connection with Criminal Investigations." Written acknowledgement from the state or local agency indicating that this action was completed is required before the USMS will accept custody.

---

[20] On such occasions, the USMS is the custodial agency.

[21] For direct referral of assets that do not qualify for adoption, *see* Sec. V.B in this chapter.

[22] *See* Sec. III.A in this chapter.

## B. Direct referral by the U.S. Attorney

In some instances, the USAO will partner directly with a state or local law enforcement agency regarding an asset that cannot be adopted because no seizure has occurred (i.e. money judgment, collection on a money judgment, real property).[23] If the USAO wants to include the property in a judicial forfeiture, the USAO must not accept a direct referral from a state or local agency until a federal agency declines to process the asset for federal forfeiture. Once that occurs, the USAO may authorize direct referral of any asset other than real property. For real property, the USAO must request that MLARS authorize the direct referral. Prior MLARS approval is required for real property to ensure proper communication and coordination between the USAO, state or local agency, and USMS to process the asset and manage its liquidation and deposit into the Assets Forfeiture Fund (AFF). The USAO must initiate the request to MLARS in the same manner as a direct adoption (*see* Section V.A in this chapter). MLARS shall notify the USAO and USMS in that district when direct referral is authorized.

[23] Regarding real property, Department officials should adhere to the Department's applicable net equity thresholds (*see* Chap. 4, Sec. I.B.2 in this *Manual*) and policy concerning the forfeiture of personal residences where title or ownership lies with persons not implicated in illegal conduct. *See* Chap. 5, Sec. III.D.1.c. in this *Manual*.

# Chapter 4: Real Property

## I. Pre-forfeiture Considerations

All real property pre-seizure procedures rely upon the accurate calculation of value and the identification of ownership interests. While the U.S. Attorney's Office (USAO) works closely with the U.S. Marshals Service (USMS) district offices regarding pre-seizure and pre-forfeiture considerations for all types of assets, the USAO should coordinate particularly closely with the USMS to address the unique issues that arise before and during forfeiture of real property.[1] Real property associated with an operating business,[2] for example, always presents unique issues requiring advance planning and coordination with the USMS and consultation with the Money Laundering and Asset Recovery Section (MLARS) and the Department of Justice (Department). Regarding the seizure planning, management, and disposal of assets seized by agencies operating under Department of the Treasury (Treasury) guidelines, *see also* Chapter 10, Section I.B in this *Manual*. When the USAO identifies real property for forfeiture that is located in a different district, the USAO should consult with the USMS district office or the USAO where the property is located to discuss any state-specific issues relating to the forfeiture.

### A. General policy

The potential for substantial losses and other liabilities in forfeiting real property underscores the need for heightened planning and monitoring. The USAO must conduct planning discussions with the USMS as soon as real property has been identified for forfeiture.[3] The USMS must consider factors such as existing liens and encumbrances, as well as the costs of future maintenance, sale, any environmental factors or contamination, and depreciation prior to forfeiture. If the USAO intends to forfeit real property that could create a net loss to the Assets Forfeiture Fund (AFF) for that property,[4] the USAO must consult with MLARS before taking any action in furtherance of the forfeiture beyond the filing of a lis pendens pursuant to state law. That consultation must occur once the USAO obtains the net equity report from USMS and prior to the entry of a preliminary order of forfeiture. Prosecutors must also obtain prior written approval from their U.S. Attorney before filing a civil forfeiture complaint against a personal residence based on a facilitation theory.[5]

### B. Real property valuation

To properly evaluate real property, the federal seizing agency and the USAO must consult with the USMS to discuss valuation products, lien information, legitimate third party interests, occupancy issues, environmental considerations, and other factors that may affect seizure and forfeiture decisions. Participating agencies must communicate with the USMS regarding information developed throughout the investigation that may assist the USMS with preparing an accurate estimate of

---

1 A general reference to USMS indicates the USMS district office. Reference to USMS' headquarters Asset Forfeiture Division (AFD) indicates that USMS headquarters should be contacted to obtain topical expertise and/or authority.

2 *See* Chap. 1, Sec. I.D.4 in this *Manual*.

3 *See* Chap. 1, Sec. I.B of this *Manual*.

4 *See* Sec. I.B.1 in this chapter and Chap. 1, Sec. I.D.1 in this *Manual*.

5 *See* Chap. 5, Sec. III.D.1.c in this *Manual*. For purposes of this policy, the term "personal residence" refers to a primary residence occupied by the titled owner(s).

valuation. If multiple real properties are identified for forfeiture, or more than one district is involved in the forfeiture, the USAO should consult with each USMS district office involved to develop a communication strategy between offices and to ensure adequate seizure planning for properties located outside their district. The USAO and seizing agencies are responsible for providing the USMS with information obtained via subpoenas (such as mortgage payoff amounts) and other investigative tools, as well as any negotiated settlement agreements with lienholders to ensure that the USMS' net equity calculations are accurate.[6] Participating agencies must consult each other when seizing or forfeiting property that could create a net loss to the AFF, as determined by the USMS, for that property.[7]

### B.1. Net equity calculation

To determine ownership and the amount and validity of liens recorded against the real property, the USAO must order both a title report and a valuation[8] (appraisal) through the USMS district office as soon as practicable. Upon receiving these documents, the USMS will conduct an analysis and prepare a net equity worksheet that calculates a net equity minimum value for each parcel of real property to determine whether the property is suitable for forfeiture. This analysis considers all potential expenses that may accrue from commencement of the forfeiture action or, where applicable, from seizure or restraint, through disposition. The analysis also contemplates market conditions as well as existing clouds to title. Upon completing the analysis and net equity worksheet, the USMS will be able to recommend whether the real property meets established net equity thresholds.

The most current equity information resides with the mortgage lender and borrower. Pursuant to the Financial Right to Privacy Act of 1978, 12 U.S.C. § 3401 et seq., however, such information may be obtained only through use of a subpoena, by agreement with the mortgage lender or borrower, or by other means in limited circumstances.

### B.2. Net equity thresholds

The established minimum net equity threshold for forfeiture of commercial or residential real property and vacant land is at least 20% of the appraised value, or no less than $30,000, whichever amount is greater. Properties with a net equity of less than $30,000 should not be considered for forfeiture. Individual districts may set higher thresholds.

If the USMS financial analysis indicates that the equity of real property is below threshold at the initiation of a case, or if the aggregate of all liens, mortgages, management costs, and disposal costs approaches or exceeds the anticipated proceeds of sale after the initiation of a case against real property that had previously met threshold, the USAO must either discontinue the forfeiture process or consult with MLARS. To consult with MLARS, the USAO must acknowledge the potential for financial loss and document the circumstances that warrant a compelling law enforcement interest that would be served by pursuing forfeiture of the real property. MLARS will rely upon the USAO's

---

[6] USMS will enter the information update in the Consolidated Asset Tracking System (CATS) on a continuing basis during the forfeiture process as expenses are incurred.

[7] *See* Sec. I.B.2 in this chapter.

[8] The USMS can recommend whether a satellite appraisal, brokers price opinion, or drive-by appraisal is the appropriate type of instrument under the circumstances. Only when the government has the legal right to enter property, or the consent of the property owner, may a comprehensive appraisal be obtained. In special circumstances, such as with high value or difficult to appraise property, the USAO may choose to engage the services of an appraiser with the necessary expertise.

documentation of the downward variation from the threshold, which must include a copy of the net equity worksheet, an appraisal, the facts underlying the forfeiture case, and a detailed explanation of the reason for variation from the threshold. MLARS will discuss the request with the USAO and promptly provide its recommendation in writing. The USAO must also consult with the Asset Forfeiture and Management Staff (AFMS).[9]

Following these consultations with MLARS and AFMS, the USAO should proceed with particular caution when deciding whether to waive the Department's net equity thresholds for real property.[10] If the USAO decides at this point to continue the forfeiture process, the USAO must obtain approval from a supervisory-level official at the USAO and include an explanation of the reason in the case file.

### B.3. Use of a writ of entry

To document the current condition of a property and conduct a comprehensive appraisal during seizure planning, the government may require entry into the interior of a structure. The USAO may obtain a writ of entry based upon a finding of probable cause by the court. The district court has the authority to issue writs of entry in both civil and criminal forfeiture cases. *See generally* 18 U.S.C. § 983(j)(1) (in civil forfeiture cases, the government may move for a restraining order and ask the court to "take any other action to seize, secure, maintain, or preserve the availability of property subject to civil forfeiture"); and 21 U.S.C. § 853(e)(1) (in criminal cases, the government may seek restraining [or protective] order and ask the court to "take any other action to preserve the availability of property...for forfeiture"). For a general discussion of writs, *see* Chapter 2, Section IV in this *Manual*.

## C. Commencing the civil forfeiture action and establishing in rem jurisdiction

In contrast to personal property, real property cannot be forfeited administratively.[11] Likewise, real property is generally not seized or served with an arrest warrant in rem before being forfeited civilly.[12] To be sure, the government may seek a warrant to seize real property before it is forfeited civilly either (1) after giving the property owner notice of the warrant application and the opportunity for a pre-seizure hearing or (2) by a seizure warrant issued ex parte where the government demonstrates probable cause for the forfeiture and exigent circumstances justifying seizure without prior notice.[13]

But otherwise, Congress has directed that the government must commence a civil forfeiture action against real property by filing a complaint for forfeiture, posting notice of the complaint on the property, and *serving* notice of the complaint along with a copy of the complaint on the titled property

---

[9] *See* Chap. 1, Secs. I.D.1 and I.D.3.b.1 in this *Manual*.

[10] *See also* Chap. 3, Sec. V.B in this *Manual*.

[11] *See* 18 U.S.C. § 985(a): "Notwithstanding any other provision of law, all civil forfeitures of real property and interests in real property shall proceed as judicial forfeitures."

[12] The government typically "seizes" real property by taking physical custody of it. Neither the filing of a notice of lis pendens nor the execution of a writ of entry for the purpose of conducting an inspection and inventory of real property constitutes a "seizure" under 18 U.S.C. § 985. *See* § 985(b)(2).

[13] *See* 18 U.S.C. § 985(d)(1) & (2) and Rule G(3) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (Supplemental Rules).

owner or owners in compliance with Federal Rule of Civil Procedure 4.[14] The USAO should also send notice of the action to any other potential claimants who might have an interest in the real property.[15]

Potential claimants include persons or entities having an ownership interest in the specific real property sought to be forfeited, such as persons or entities having a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest in the real property, but exclude those having only a general unsecured interest in, or claim against, the real property as well as nominees who exercise no dominion or control over the real property.[16]

Potential lienholder claimants include:

- mortgage lienholders,

- tax lienholders,

- homeowners' associations and condominium associations that have recorded liens for past-due assessments, and

- judgment lienholders who may have perfected their judgment liens against the real property under state law.[17]

Even before serving the property owner, the government obtains in rem jurisdiction over the defendant real property by filing the complaint and then either posting the property[18] or properly recording a notice of lis pendens under state law.[19] A lis pendens provides notice that a property is involved in a pending civil or criminal action.[20] Thus, in a civil forfeiture case against real property, the government typically takes physical custody of the real property only after obtaining judgment of forfeiture.

To pursue criminal forfeiture of real property, the government lists the real property subject to forfeiture in the forfeiture notice of the indictment or in a bill of particulars and records a notice of lis pendens. Only after the court has entered a preliminary order of forfeiture against the real property may the government take physical custody of that real property. The USAO should work closely with the USMS to determine the proper timing for taking custody of the property.

---

[14]  *See* 18 U.S.C. § 985(c); *United States v. 120 Teriwood St., Fern Park, FL*, No. 16-cv-6101 (CBA) (RER), 2017 WL 8640911 (E.D.N.Y. June 22, 2017), *r. & r. adopted*, 2018 WL 1513641 (E.D.N.Y. Mar. 27, 2018) (under 18 U.S.C. § 985(c), government is required to serve property owners with notice and copy of complaint in compliance with Federal Rule of Civil Procedure 4; service by mail under the Supplemental Rule G(4) "reasonably calculated" standard is insufficient).

[15]  *See* Sec. II.B in this chapter and Supplemental Rule G(4)(b): "The government must send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government before the end of the time for filing a claim under Rule G(5)(a)(ii)(B)."

[16]  *See* 18 U.S.C. § 983(d)(6) (defining "owner" for innocent ownership purposes).

[17]  As noted in Sec. II.A in this chapter, the USMS will identify potential claimants, including lienholders, in its preliminary title report or commitment.

[18]  *See* 18 U.S.C. § 985(c)(3): "If real property has been posted in accordance with this subsection, it shall not be necessary for the court to issue an arrest warrant in rem, or to take any other action to establish in rem jurisdiction over the property."

[19]  *See United States v. 223 Spring Water Lane*, No. 6:18-cv-00315-REW, 2021 WL 144245, *13 n.29 (E.D. Ky. Jan. 15, 2021) (filing complaint and recording notice of lis pendens is another way to establish in rem jurisdiction, in addition to the steps detailed in 18 U.S.C. § 985(c)).

[20]  *See* Sec. II.B in this chapter.

For cases in which an operating business is targeted for seizure and the business entity owns real property subject to forfeiture, the USAO should record a lis pendens on the real property in conjunction with a restraining or protective order issued for other assets of the business.[21] The restraining or protective order should include language intended to prevent illegal activities from occurring on the real property pending forfeiture.

### D.  Title conveyance

Pursuant to 28 U.S.C. § 524(c)(9)(A), the Attorney General has the authority to warrant clear title upon transfer of forfeited real property. The authority to warrant title conferred by § 524(c)(9)(A) does not extend to interlocutory sales which are, by definition, pre-forfeiture. Accordingly, the transfer of property pursuant to an interlocutory sale shall be by a USMS deed. The authority to execute deeds and transfer title has been delegated to the USMS pursuant to 28 C.F.R. §§ 0.111(i) and 0.156.[22] The USMS is responsible for determining the preferred means to transfer forfeited real property.[23] Despite the Attorney General's authority to warrant clear title, the ability of the USMS to offer forfeited properties at market value is often predicated on obtaining a title insurance policy. Title companies may often have more stringent noticing requirements, above those required by state or federal law, for issuing these title policies. To avoid difficulties in obtaining title insurance and selling property forfeited civilly or criminally, the following types of filings and proposed orders concerning real property shall include the property address and a complete and accurate legal property description: notice of lis pendens, civil forfeiture complaint, civil judgment or decree of forfeiture, the criminal information or indictment, preliminary order of forfeiture, final order of forfeiture, and all notice and publication documents and filings.[24] Moreover, all decrees and final orders of forfeiture shall specifically forfeit "all right, title, and interest in" the real property—and not merely the claimant or defendant's interest in that real property—to the United States. In addition, all decrees and final orders of forfeiture should specifically divest the interests of all titled owners, the defendant in a criminal case, the defendant's spouse, and any LLCs, lienholders, homeowners associations, and taxing authorities. Absent adherence to these common title requirements, USAOs should expect a delay in the time it takes to sell the real property, a reduction in net equity realized on the sale of the property, or both.

The USMS and its headquarters Asset Forfeiture Division (AFD) will determine the form of deed by which the government will transfer title to forfeited real property. The AFD will approve use of a general warranty deed only in compelling circumstances.[25] In addition to the specific real property at issue, the AFD shall also consider the cumulative potential liability that will accrue over time as a result of each successive use of a general warranty deed.

---

[21] *See* Chap. 1, Sec. I.D.4 in this *Manual*.

[22] The 28 C.F.R. § 0.156 delegation predates the Asset Forfeiture Program and applies to all court-ordered sales of property, not solely to forfeited property sales.

[23] The USMS chooses the type of deed pursuant to existing contracts, regional preferences, and market indicators.

[24] If a legal description does not exist or is unavailable for a parcel of real property, contact USMS headquarters Asset Forfeiture Division (AFD) for assistance.

[25] Such circumstances may exist where the financial advantage of offering a general warranty deed in a particular case, compared to the available alternatives, far outweighs both the potential cost of honoring the warranty and the potential effect of increased purchaser demand for general warranty deeds in future sales of other forfeited properties.

### E. Contamination liability

#### E.1. General policy

Certain federal and state statutory provisions may impose liability on the government with regard to ownership of contaminated real property.[26] Consequently, extreme caution must be exercised in targeting real property for forfeiture if there are indications that the real property may be contaminated. The USAO must consult with the seizing agency, USMS, AFMS, and MLARS before determining to forfeit real property that is contaminated or potentially contaminated with hazardous substances. This policy is applicable to all forfeiture cases referred to the Department by any government agency, regardless of the type or source of the hazardous substance(s) other than lead-based paint.

#### E.2. Lead-based paint contamination

Real property that is federally owned, and for which the proposed use is residential, is subject to the regulations promulgated to implement the Lead-Based Paint Poisoning Prevention Act,[27] as well as the Residential Lead-Based Paint Hazard Reduction Act of 1992.[28] Residential property for which construction was completed on or after January 1, 1978, does not contain lead-based paint and is exempt.[29] The government may be required to undertake certain abatement actions of leadbased paint contamination for forfeited residential property constructed prior to 1960. [30] Forfeited residential property constructed between January 1, 1960, and December 31, 1977, may be marketed and sold after conducting a leadbased paint risk assessment and lead-based paint inspection without obligation to conduct abatement.[31] Residential property for which construction was completed on or after January 1, 1978, is exempt by law.[32] If the sale is completed within 270 days of the final order of forfeiture, the government is exempted from these abatement, risk assessment, and inspection requirements.[33] Specific questions should be directed to the AFD.

## II. Ownership and Notice

In order to satisfy the notice requirements of 18 U.S.C. § 985 and Rule G(4) of the Supplemental Rules of Admiralty or Maritime Claims and Asset Forfeiture Actions (Supplemental Rules), the USAO must identify all parties holding an interest in the real property.[34] The USMS has multiple types of title report products that are available based on the size and scope of the real property. The USAO may consult with the USMS to determine the type best suited to serve its needs.

---

[26] Although federal law may allow for the transfer of contaminated real property without federal liability for cleanup, applicable state law may continue to impose liability or render the real property unmarketable.

[27] 42 U.S.C. § 4821 et seq.

[28] 42 U.S.C. § 4851 et seq.; 24 C.F.R. § 35.100(a)(10).

[29] 24 C.F.R. § 35.115.

[30] For pre-1960 construction, 24 C.F.R. § 35.210 allows the USMS to delegate the abatement but not the inspection.

[31] USMS must inspect residences constructed from 1960 to 1978, but no abatement is required. *See* 24 C.F.R. § 35.215.

[32] 24 C.F.R. § 35.115.

[33] "If a Federal law enforcement agency has seized a residential property and owns the property for less than 270 days," the regulations requiring the government to inspect, assess and abate contamination shall not apply. *See* 24 C.F.R. § 35.115(a)(10).

[34] Examples include owners (pursuant to state law), mortgagees, lienholders, lessees, taxing authorities, business entities, trustees, tenants with a right of first refusal and referees.

### A. Title search

Once the seizing agency has identified real property for forfeiture, the USAO must determine the identity of any borrower, purchaser, note-holder, mortgagee, and all others holding valid liens of record and the amount of each. To do so, the USAO must request that the USMS order a preliminary title commitment. This preliminary title commitment identifies the original mortgagee and lienholders, provides the amount of debt recorded against the real property, and provides the legal description of the property that should be used in the order of forfeiture. The preliminary title commitment also reflects whether the mortgage is registered with the Mortgage Electronic Registration System (MERS). Additional notification of a forfeiture action must be provided if a mortgage servicer is registered with MERS.[35] The preliminary title commitment is prepared by a title company or an authorized title attorney on behalf of a title company.

Title reports and appraisals are considered current if dated not more than six months prior to the filing date of a charging instrument. When needed, the USAO must request updated valuations and title searches from the USMS.

### B. Lis pendens

A lis pendens provides general notice that a property is involved in a pending civil or criminal legal action. A lis pendens typically is recorded in the real property records of the jurisdiction where the property is located. While recording a notice of a lis pendens is not a seizure of the real property,[36] it constitutes a cloud on the title that effectively prevents the owner or claimant from succeeding in a disposal action, refinancing, or obtaining a secondary mortgage to reduce equity or avoid forfeiture.

In addition to federal law, actions involving real property are governed by state law. It is the responsibility of the USAO to ensure that a lis pendens is properly recorded in accordance with state law.[37] The USAO determines whether the USAO, federal seizing agency, or USMS records the lis pendens. Duration of the lis pendens varies by state and may require periodic renewal.[38] The USAO is responsible for tracking all related recording deadlines and releasing the lis pendens when appropriate as governed by state law. If more than one USAO is involved, the district that initiates the forfeiture action is responsible for tracking deadlines. When a parcel of real property is the subject of both a

[35] *See* Sec. III.C in this chapter. Except in limited circumstances, mortgagees may not release private information about a mortgagor without notifying the mortgagor. In a civil case, the investigative agency may be able to issue an administrative subpoena to obtain detailed information from the mortgagee. In a criminal case, the USAO may use a grand jury subpoena to obtain an accurate mortgage balance. When a civil or criminal restraining order is entered, the USAO may seek to include language that directs lien holders to provide current payoff information.

[36] *See* 18 U.S.C. § 985(b)(2).

[37] Whether a lis pendens may be filed on a real property named solely as a substitute asset in a criminal case is dependent on applicable federal law in the district in which the action is filed and state law in the state in which the property is located. *United States v. Balsiger*, 910 F.3d 942, 951 (7th Cir. 2018) (while noting that it "cannot foreclose a circumstance where a lis pendens operates to infringe on a defendant's right to choice of counsel," court found in this case that there was no Sixth Amendment violation for district court's supposed refusal to lift lis pendens on defendant's untainted residence, where defendant actually sold that residence for $1.5 million 8 months before trial and thereby obtained sufficient funds to hire counsel of choice); *United States v. Jarvis*, 499 F.3d 1196, 1203 (10th Cir. 2007) (under New Mexico law, a lis pendens may only be filed on property involved in pending litigation; it may not be used merely to secure a future money judgment; substitute assets are not involved in the pending criminal case except to the extent they may be used to satisfy a money judgment; therefore a lis pendens cannot be filed against such property). Prosecutors should therefore confirm, before filing a lis pendens on a real property sought to be forfeited solely as a substitute asset, that applicable law permits the filing of a lis pendens under such circumstances.

[38] In Florida, for example, a lis pendens automatically expires after one year unless renewed.

criminal and a civil forfeiture action, a separate lis pendens should be recorded in each action. A lis pendens should be released upon issuance of a final order of forfeiture or when a forfeiture action is dismissed.

### C. Noticing the Mortgage Electronic Registration System (MERS)

MERS is a national electronic registration system that tracks the changes in servicing rights and beneficial ownership interests in residential mortgage loans on behalf of banks and other financial institutions[39] that service mortgages. While a title search may identify the original mortgage service provider, MERS captures the most current assignment of a mortgage instrument. Accordingly, providing notification of a forfeiture action involving real property with a MERS-registered mortgage constitutes notice reasonably calculated to apprise all parties holding an interest in the mortgage of the impending litigation. The USAO should provide notice directly to MERS concerning any forfeiture action involving MERS-registered real property, if unable to obtain good notice with lienholder directly.

## III. Third Party Interests

### A. Tenancy interests

Leasehold interests represent an interest in real property and are subject to forfeiture.[40] Therefore, to the extent that the USAO seeks to forfeit a leasehold interest, the USAO must give notice to the tenant, in addition to the fee holder. Likewise, when forfeiting a fee interest in land, if the government seeks to terminate a leasehold interest, the USAO must give notice to the lease holder and oppose any claim.

### B. Occupancy agreements for tenants

The seizing agency is responsible for determining whether a real property subject to forfeiture is occupied pursuant to a valid lease. To the extent that a leaseholder's interest is not forfeited, the United States "steps into the shoes" of the fee holder and takes the property subject to all the obligations of the former owner. To that end, the United States will be substituted for the landlord on any lease. If a leaseholder's interest has been extinguished by its failure to file a recognized claim, the USMS may seek to enter into an occupancy agreement with the current tenant, which agreement may include provisions governing the collection of rent until disposition of the property. The USMS may collect rent prior to entry of a preliminary order of forfeiture or a civil forfeiture order pursuant to a restraining order[41] allowing the USMS to do so.[42]

---

39 Not all financial institutions are members of MERS.

40 For example, a long-term commercial lease may have significant economic value.

41 The Second Circuit has held that the receipt of rental income generated by a commercial real property is a property interest subject to the protections of the Due Process Clause, such that absent a showing of exigent circumstances, the government must provide notice and an opportunity for owner of the real property to be heard before the obtaining an order seizing or restraining such rental income. *See In re 650 Fifth Ave. Co.*, 991 F.3d 74, 89–90 (2d Cir. 2021); *see also* 18 U.S.C. § 985(f)(1), which provides that § 985 "applies...to civil forfeitures of real property and interests in real property."

42 With the exception of commercial properties, where paying tenants add value, the preference of the USMS is to have the property vacated to facilitate disposition.

### C. Business or corporate owners

If real property represents a substantial portion of an operating business' assets and the government seeks to forfeit the business, the government must follow all policies applicable to the seizure or restraint of an operating business and those policies related to real property.[43] In particular, the USAO must consult with MLARS prior to initiating a forfeiture against, seeking the seizure of, or moving to restrain an operating business or commercial property in which an operating business is operating.[44]

When the government seeks forfeiture of real property that is owned by a business, but not forfeiture of the business itself, all pre-forfeiture planning policies for real property as described in this chapter must be followed. The charging instrument (civil complaint, criminal information, or indictment) must identify the real property by address *and* legal description, and the final order of forfeiture shall extinguish any interest listed as the vested owner, including any corporate entity.[45]

### D. Lienholders

The USAO must obtain a copy of the recorded mortgage instrument and the note that the mortgage secures. If the government is required to pay interest and penalties, the Department will recognize claims consistent with the terms of the note for recorded debt. The USAO is encouraged to require evidence of the payment history, including, but not limited to, fees, penalties, and escrows.

## IV. Taxes and Penalties

### A. Payment of state and local real property taxes

Notwithstanding the enactment of 18 U.S.C. § 983(d)(3), which bars assertion of the "innocent owner defense" in certain civil forfeiture cases by persons who are not bona fide purchasers for value, it is Department policy that the Department pays state and local real property taxes that accrue up to the date of the entry of order of forfeiture or, in criminal cases, the final order of forfeiture. The refusal to pay such taxes would draw the Department into conflict with state and local authorities and would have the potential to complicate the interlocutory or post-judgment sale of real property. For the same reasons that it is the Department's policy in civil forfeiture cases to pay state and local taxes even if those tax liabilities accrue after the events giving rise to forfeiture, it is the Department's policy to also pay such taxes in criminal forfeiture cases. Prosecutors are encouraged to contact MLARS for additional guidance regarding the payment of state and local taxes.

### B. Some taxes become a lien on the property before they are due

In certain states, taxes become a lien on the property at some date before the taxes are assessed.[46] In such jurisdictions, if the tax lien date precedes the date of forfeiture, the taxing authorities have frequently taken the position that the entire tax must be paid by the government because it was a lien

[43] *See* Chap. 1, Sec. I.D.4 in this *Manual*.

[44] *See* Chap. 1, Sec. I.D.4 in this *Manual.*

[45] Failure to properly identify the parcel subject to forfeiture may prevent timely disposal or may lead to a dismissal of the forfeiture.

[46] For example, in California, taxes on real property become a lien on the first of January. *See* CA Rev & Tax C. § 2192. However, the tax is not assessed until late September [CA Rev & Tax C. § 2601(a)] and the first half of taxes are not due and payable until November 1 (CA Rev & Tax C. § 2605). To further complicate matters, the second half of taxes are not due until the following February, after the next year's taxes have become a lien. *See* CA Rev & Tax C. § 2606.

on the property before forfeiture. Federal prosecutors should be aware of state law where the real property is located.

### C. Payment of interest and penalties on real property taxes[47]

To ensure consistent national treatment of the payment of interest and penalties on state and local taxes that have accrued on forfeited real property up to the date of entry of the final order of forfeiture, the Department will pay:

- interest on overdue taxes that have accrued up to the date that the final order of forfeiture is entered and not thereafter; and
- penalties on overdue taxes until the date of entry of the final order of forfeiture in the event that this does not conflict with local taxing authority requirements. If taxing authorities require a greater period for penalties, the Department will comply. A final order must be properly recorded.

Outstanding real property taxes (and interest and penalties thereon) may only be paid up to the amount realized from the sale of forfeited real property.

## V. Real Property Transfers

The Attorney General may dispose of property "by sale or any other commercially feasible means."[48] In certain circumstances, the Attorney General may execute a non-sale transfer of federally forfeited real property for official use; to meet other federal needs; to serve state recreational, preservation, or historic purposes; or to assist a state or local government, or public or non-profit agency, in carrying out educational, treatment, rehabilitation, housing, and other community-based initiatives.[49]

Applications for transfer must be provided to MLARS for review and recommendation before being submitted for final approval by the Attorney General (or a designee).[50] Although eligibility varies by program, certain requirements apply to all transfers:

(1) the forfeiture must be final and no longer subject to appeal, clear title must be vested in the government, and the real property must be vacant;

(2) the requested use of the real property must comply with all applicable laws, including zoning and land-use restrictions; and

(3) environmental issues and costs of remediation must be addressed.

The additional requirements listed below apply for the current five mechanisms regarding a non-sale transfer of forfeited real property.

[47] With regard to interest and penalties on real property taxes on real property forfeited by agencies operating under Treasury guidelines, please contact the Treasury Executive Office for Asset Forfeiture (TEOAF).

[48] *See* 21 U.S.C. §§ 853(h) and 881(e).

[49] *See* The Attorney General's Guidelines on the Asset Forfeiture Program (July 2018) (*AG Guidelines*), Sec. V.H.

[50] Applications for transfer of property forfeited by a TEOAF participating agency must be submitted to TEOAF.

### A. Equitable sharing transfer for official use

The Attorney General may transfer forfeited real property to state and local law enforcement agencies for law enforcement use through the Equitable Sharing Program based upon the agency's participation in the underlying case, pursuant to 18 U.S.C. § 981(e)(2) and 21 U.S.C. §§ 853(i)(4) and 881(e)(1)(A).[51] In order to qualify as a recipient, the state or local law enforcement agency must be an entity in good standing that participates in the Equitable Sharing Program, must have substantially participated in the investigation leading to the seizure, and must articulate a compelling law enforcement need for the real property that comports with established permissible uses. Further, the recipient must enter into a memorandum of understanding (MOU) with all parties to the transfer and agree to use the real property as proposed for a specified period of time. Where appropriate, the MOU shall include a provision for reversion of title to the United States if the property is not used for the agreed-upon purposes.

Transfers are initiated through an equitable sharing request form (Form DAG-71) provided by the requesting state or local law enforcement agency to the federal seizing agency. The federal seizing agency supplies the USAO with documentation supporting the transfer with Form DAG-71. All transfer requests ultimately require the approval of the Assistant Attorney General for the Criminal Division (AAG), based on the recommendation provided by MLARS.

### B. Weed & seed initiative

Real property forfeited for drug violations pursuant to 21 U.S.C. §§ 853(i)(4) and 881(e)(1)(A) may be eligible for transfer to the state or local law enforcement agency[52] that participated in the seizure or forfeiture of the real property for subsequent transfer to public agencies and non-profit organizations. The proposed use must:

- support community-based drug treatment, crime prevention, and education;
- improve housing;
- enhance job skills; or
- perform other activities that will substantially further neighborhood rehabilitation and rejuvenation.

The state or local law enforcement agency must submit a Form DAG-71 accompanied by a request from the U.S. Attorney of the district in which the real property is located. The real property must have an appraised value that is not greater than $50,000 or an appraised value of not more than $200,000 if the net equity value of the real property is $50,000 or less. The intended recipient must be vetted by the USAO, enter into an MOU with all parties to the transfer, and agree to use the real property as proposed for a period of five or more years. All transfer requests ultimately require the approval of the Deputy Attorney General (DAG) based on a recommendation provided by MLARS.

---

[51] While 21 U.S.C. § 853(i) governs forfeitures under the drug abuse prevention and control laws, it is incorporated by reference in 18 U.S.C. § 982(b)(1), which extends forfeiture authority to most other criminal offenses.

[52] *See* 18 U.S.C. § 981(e)(1) and (2), and 21 U.S.C. § 881(e)(1)(A).

### C. Operation Goodwill

The Attorney General is authorized to transfer real property of limited or marginal value to a state or local government agency, or to its designated contractor or transferee, for use in support of community-based revitalization programs. *See* Pub. L. 108-199, Jan. 23, 2004, Div. B, Title I, § 108, 118 Stat. 61 (reprinted in the historical and statutory notes for 28 U.S.C. § 524). Programs include drug abuse treatment, drug and crime prevention, education, housing, job skills training, and other community-based health and safety programs.

To be eligible, the property must have an appraised value of $50,000 or less or have an appraised value of $200,000 or less if the net equity value of the real property is $50,000 or less.[53] The recipient must be vetted by the USMS, meet Operation Goodwill Program guidelines, enter into an MOU with all parties to the transfer, be approved by the AFD, and use the real property as proposed for a period of five or more years. These transfers require the approval of the Attorney General, based upon the recommendation provided by MLARS. USAOs should contact the AFD with questions regarding the Operation Goodwill Transfer Program.

### D. Federal component transfers

Any federal agency component may request the transfer or retention of forfeited real property pursuant to 18 U.S.C. § 981(e)(1)[54] and 21 U.S.C. §§ 853(i)(4) and 881(e)(1)(A).[55] A Department agency may request the transfer in order to use the real property for a law enforcement purpose. Non-Department agencies may request that real property be transferred to serve a significant and continuing federal purpose. There are no valuation limitations for eligibility. However, financial effects on the AFF are factored into the approval decision. All transfer requests ultimately require the approval of the DAG based on the recommendation provided by MLARS.

### E. Governor's request for historic, recreational or preservation purposes

Pursuant to 21 U.S.C. § 881(e)(4)(B), the governor of a state in which forfeited real property is located may request that the Attorney General transfer the real property to the state. Real property is eligible only if it is used by the state as a public area reserved for recreational or historic purposes, or for the preservation of the real property's natural condition. The state official seeking a transfer must contact the USAO, which, in consultation with the USMS and the federal seizing agency, will ensure that all specific program requirements are satisfied.

The recipient state must enter into an MOU with all parties to the transfer and agree to use the real property as agreed in perpetuity. All transfer requests ultimately require the approval of the DAG based on the recommendation provided by MLARS.

[53] The valuation limitation may be waived if the USMS and USAO determine that compelling law enforcement circumstances exist to warrant the transfer.

[54] Any federal agency component requesting the transfer or retention of forfeited real property must have statutory authority to receive the real property.

[55] The customs law provisions for disposition of forfeited property are incorporated by reference. *See* 19 U.S.C. § 1616a(c)(1)B)(i).

# Chapter 5: Administrative and Judicial Forfeiture

## I. Overview

### A. Seized property eligible for forfeiture should be forfeited

*The Attorney General's Guidelines on the Asset Forfeiture Program* (July 2018) (*AG Guidelines*) provides that "the Department of Justice should use asset forfeiture to the fullest extent possible to investigate, identify, seize, and forfeit the assets of criminals and their organizations while ensuring that due process rights of all property owners are protected."[1]

### B. Forfeiture should follow the prosecution

For legal and practical reasons, it is Department of Justice (Department) policy that regardless of whether a federal, state, or local law enforcement authority seizes property subject to forfeiture, forfeiture proceedings against that property should follow the criminal prosecution.[2]

A state forfeiture action that runs parallel to a pending federal criminal investigation or prosecution not only risks jeopardizing the federal proceedings but may also create jurisdictional conflicts and unnecessary confusion among potential claimants and law enforcement authorities. The federal government should pursue federal administrative or judicial forfeiture where there is a pending federal criminal investigation or prosecution. Under certain extraordinary circumstances, however, state forfeiture proceedings may be appropriate where the investigation or prosecution is federal in nature. These limited circumstances include:

- state authorities have commenced litigation against, conducted substantial litigation regarding, or concluded forfeiture proceedings against an asset seized before the federal agency joined an investigation.
- an existing memorandum of understanding (MOU) between state and federal authorities provides for different procedures for effectuating seizures and forfeitures.
- state or local authorities seized an asset, a turnover order is required by law to pursue federal forfeiture of it, and agency counsel and the federal prosecuting official elect not to seek such an order.
- state or local authorities seized an asset, a turnover order is required by law to pursue federal forfeiture of it, the state court issues an adverse order, and the local prosecuting attorney, agency counsel, and the federal prosecuting official conclude that the public interests are best served by pursuing the state forfeiture.
- the seized asset does not meet the Department's minimum monetary thresholds.
- the pertinent federal prosecuting official has reviewed the case, declined to initiate forfeiture proceedings, and approved a referral for state forfeiture.

---

[1] *See* AG Guidelines, Sec. II.

[2] *See* Chap. 3 in this *Manual* for a full discussion of issues involving adoptive forfeitures.

When a federal agency believes a state forfeiture is appropriate, agency counsel and the federal prosecuting official responsible for asset forfeiture must discuss referring the asset for state forfeiture before any referral. If a federal agency refers significant assets for state forfeiture after a determination to seek federal prosecution has been made and without the required discussion, a federal prosecuting official may decline the federal prosecution.

When a state forfeiture relates to a federal criminal prosecution, federal equitable sharing decisions should account for both state and federal forfeitures in the investigation.[3] Consequently, federal agencies and U.S. Attorney's Offices (USAOs) should collectively review state and federal forfeitures stemming from a single investigation before making federal equitable sharing recommendations and decisions.

## II. Administrative Forfeiture Guidelines

The administrative forfeiture process promotes the efficient allocation of Department resources and discourages undue burdens on the federal judicial system while affording interested parties a prompt resolution through the remission process. Accordingly, property subject to administrative forfeiture should be forfeited administratively, absent an exception identified in Section II.A.1 in this chapter.

### A. Scope of property subject to administrative forfeiture

In general, property subject to administrative forfeiture includes:

- monetary instruments as defined by statute and implementing regulations[4] in any amount;
- personal property, including but not limited to vehicles, vessels, aircraft, merchandise, baggage, jewelry, art, furniture, and antiquities valued at less than or equal to $500,000;[5]
- a vessel, vehicle, or aircraft used to import, export, transport, or store any controlled substance or listed chemical; and
- merchandise the importation of which is prohibited.[6]

[3] *See* Chap. 15 in this *Manual* for a full discussion of issues involving federal equitable sharing.

[4] *See* 31 U.S.C. § 5312(a)(3). U.S. coins and currency; coins and currency of a foreign country, travelers' checks, bearer negotiable instruments, bearer investment securities, bearer securities, stock on which title is passed on delivery, and similar material outlined in 31 C.F.R. § 1010.100(dd), the applicable regulation; and checks, drafts, notes, money orders, and other similar instruments that are drawn on or by a foreign financial institution and are not in bearer form as outlined in that same regulation (designating currency; traveler's checks in any form; all negotiable instruments, including personal checks, business checks, official bank checks, cashier's checks, third-party checks, promissory notes as defined in the Uniform Commercial Code, and money orders, in bearer form, endorsed without restriction, made out to a fictitious payee, or otherwise in such form that title thereto passes upon delivery; incomplete instruments, including personal checks, business checks, official bank checks, cashier's checks, third-party checks, promissory notes as defined in the Uniform Commercial Code, and money orders, signed but with the payee's name omitted; and securities or stock in bearer form or otherwise in such form that title thereto passes upon delivery). Per this regulation, monetary instruments do not include warehouse receipts or bills of lading. *See* 31 C.F.R. § 1010.100(dd)(2).

[5] Cryptocurrency valued at less than or equal to $500,000 may be forfeited administratively. Cryptocurrency valued at more than $500,000 must be forfeited judicially. The value of cryptocurrency is determined at the date of seizure. *See* Chap. 2, Sec. V.B in this *Manual* for more guidance on the seizure and forfeiture of cryptocurrency.

[6] *See* 15 U.S.C. § 1595a.

In contrast, administrative forfeiture is not authorized for:

- real property;[7]
- personal property valued at more than $500,000;[8]
- funds seized from a bank account in an amount of more than $500,000;[9] or
- property subject to forfeiture pursuant to a statute that does not incorporate the customs laws.

### A.1 Exceptions to the preference for administrative forfeiture

Despite the preference for administrative forfeiture, it may be appropriate to seek a judicial forfeiture:

- when two or more items of personal property (not including monetary instruments) have a collective appraised value of $500,000 or more, a common owner, are subject to civil forfeiture pursuant to the same statutory authority and on the same factual basis and can be included in a single judicial action;
- where the items subject to forfeiture include some that can be forfeited administratively and others that must be forfeited judicially, and can be included in a single judicial action;
- when pursuing administrative forfeiture might create the appearance that the government is circumventing the time limits in 18 U.S.C. § 983(a);
- when the U.S. Attorney[10] and the seizing agency agree that the forfeiture should proceed judicially in the first instance; or
- as explained further in Section II.D in this chapter, when the U.S. Attorney requests that the seizing agency suspend the administrative forfeiture in favor of criminal judicial forfeiture and the seizing agency agrees to do so, and the forfeiture may therefore be pursued exclusively as part of the criminal case.

[7] *See* 18 U.S.C. § 985.

[8] *See* 19 U.S.C. § 1607(a).

[9] 31 U.S.C. § 5312(a)(3) defines "monetary instruments" as currency, traveler's checks, various forms of bearer paper, and "similar material." Neither that statutory definition nor the parallel definition in the applicable regulations encompasses the funds in a bank account. *See* 31 C.F.R. § 1010.100(dd) (eff. Mar. 1, 2011, formerly § 103.11(u)), which defines monetary instruments. Consequently, funds seized from a bank account do not qualify as monetary instruments for the purposes of the exception to the $500,000 cap on administrative forfeitures.

[10] References to the "U.S. Attorney" include other authorizing officials responsible for oversight of the Department's Criminal Division trial attorneys or Department components.

#### A.2 Seizure method does not affect the availability of administrative forfeiture

An agency may pursue an administrative forfeiture of property seized pursuant to a criminal seizure warrant, civil seizure warrant, or valid warrantless seizure.[11]

### B. Administrative forfeiture notice deadlines

Statutory deadlines govern providing owners and other interest-holders in seized property prompt notice of the right to contest a non-judicial forfeiture, which includes guidance on the procedures for doing so.

Although the pertinent statute authorizes delaying notice under limited circumstances, law enforcement agencies should seek extensions of notice deadlines only when necessary and in the manner described in the statute. *See* 18 U.S.C. § 983(a)(1)(B) and (C).

#### B.1 18 U.S.C. § 983(a)(1)—the default rules

18 U.S.C. § 983(a)(1) outlines the deadlines and other guidelines for notifying potential claimants of administrative forfeiture proceedings instituted against property seized for forfeiture. The deadlines in § 983(a)(1) do not apply, however, to seizures of property to be used strictly for evidence, seizures undertaken only pursuant to an exclusively criminal seizure warrant, and seizures made pursuant to a statute that makes administrative forfeiture unavailable.

Pursuant to § 983(a)(1)(A)(i), a federal agency that seizes property for forfeiture must send "written" notice to all known, interested parties "as soon as practicable" but no later than 60 days after the seizure date. Section 983(a)(1)(A)(iv) extends that deadline to 90 days in cases where the forfeiture is adopted from a state or local law enforcement agency; however, Department policy requires notice within 45 days of the seizure in adoption cases, unless a senior official at the federal agency approves an extension.[12] In cases where an agency learns of a party's interest or identity after the date of the federal seizure or turnover from a state or local agency, but before the administrative forfeiture is effective, the agency must send notice to the newly-identified interest holder within 60 days of the discovery. *See* § 983(a)(1)(A)(v).

---

[11] Most civil forfeiture statutes authorize the seizing agency to forfeit property administratively in accordance with the customs laws. *See* 18 U.S.C. § 981(d) and 21 U.S.C. § 881(d) (incorporating the provisions of 19 U.S.C. § 1602 et seq. into the civil forfeiture statutes). Nothing in the incorporated provisions of Title 19 limits administrative forfeiture to property seized pursuant to a particular kind of seizure warrant. To the contrary, 19 U.S.C. § 1603(a) provides that property may be seized for administrative forfeiture "upon process issued in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure [i.e., Rule 41], [or] any seizure authority otherwise provided by law." *See also* 18 U.S.C. § 981(b)(2) (allowing for seizures made pursuant to a warrant "obtained in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure"). Thus, nothing in the customs laws themselves precludes instituting administrative forfeiture proceedings when property is seized pursuant to a criminal seizure warrant issued under 21 U.S.C. § 853(f).

[12] Although federal law gives agencies up to 90 days to send notice to interested parties in the case of adoptive forfeitures, Attorney General Order No. 39462017: Federal Forfeiture of Property Seized by State and Local Law Enforcement Agencies (July 19, 2017) requires them to send notice not later than 45 days after seizure, unless a senior official at the federal agency approves such an extension. *See* Chap. 3, Sec. IV.C in this *Manual*.

### B.2 Administrative forfeiture proceedings arising from criminal seizure warrants should ordinarily follow 18 U.S.C. § 983(a)(1)'s default rules

By their terms, the notice deadlines in 18 U.S.C. § 983(a)(1) apply only to "nonjudicial civil forfeiture proceedings under a civil forfeiture statute." *See* § 983(a)(1)(A)(i). Because the statutory provision authorizing criminal seizure warrants, 21 U.S.C. § 853(f), is in a statute specifically designated as a criminal forfeiture statute, § 983(a)(1) does not apply.

Nonetheless, routinely commencing administrative forfeiture proceedings against property seized with criminal process more than 60 days after seizure could create an appearance of misusing the criminal forfeiture process to circumvent The Civil Asset Forfeiture Reform Act of 2000 (CAFRA)'s deadlines.[13] Consequently, absent unusual circumstances, agencies should send notice of administrative forfeiture proceedings against property seized pursuant to an exclusively criminal seizure warrant within the deadlines that § 983(a)(1) would have imposed had the seizure occurred pursuant to a civil seizure warrant. If an agency does not send timely notice, it should refer the case to the U.S. Attorney for civil or criminal judicial proceedings in the manner described in Section II.B.4 in this chapter.

Despite the strong preference for adhering to the civil forfeiture statute's deadlines even when § 983(a)(1) does not apply, rare circumstances could warrant instituting administrative forfeiture proceedings against property seized with exclusively criminal process more than 60 days after seizure (for example, a case where a defendant agrees to forfeit property administratively as part of a plea agreement).

Generally, decisions to pursue an administrative forfeiture of property seized with criminal process outside the deadlines that would have applied had the property been seized civilly should be extremely rare.

### B.3 Exceptions to 18 U.S.C. § 983(a)(1)'s default rules

Three exceptions can provide relief from 18 U.S.C. § 983(a)(1)'s notice deadlines. The first, which requires exceptional circumstances, is an extension granted by a designated official within the seizing agency. The second exception, which also requires exceptional circumstances, is an extension granted by a federal court. The third exception is known as the "customs carve-out." All three are discussed below.

#### B.3.a 30-day seizing agency extension

18 U.S.C. § 983(a)(1)(B) authorizes designated officials within a seizing agency to issue a limited waiver of the 60-day notice deadline under exceptional circumstances. Outlined in § 983(a)(1)(D)(i)–(v), those exceptional circumstances are limited to situations where a reasonable belief exists that supplying notice may have an adverse result, including endangering the life or physical safety of an individual, flight from prosecution, destruction of or tampering with evidence, intimidation of potential witnesses, or "otherwise seriously jeopardizing an investigation or unduly delaying a trial."

All extensions issued under § 983(a)(1)(B) must be written, describe the exceptional circumstances warranting the waiver, and be included and maintained in the administrative forfeiture case file.

[13] Pub. L. 106-185, Apr. 25, 2000, 114 Stat. 202.

Moreover, any such waiver is valid for no more than 30 days, and any additional extension requires a judicial officer's approval. *See* § 983(a)(1)(C).

#### B.3.b 60-day federal court extension

Should a seizing agency's personnel conclude that continuing extraordinary circumstances warrant extending the 18 U.S.C. § 983(a)(1) notice deadline beyond the 30 days that its designated agency official(s) may grant, a federal court order is required. *See* § 981(a)(1)(C). A concurring government prosecutor must file a motion supported by the agency-designated official's written certification that extraordinary circumstances described in § 983(a)(1)(D) continue to warrant delaying notice. *See* § 981(a)(1)(C).

If the court concurs, any order that it issues may extend the deadline for no more than 60 days. Although the statute does not limit the number of extension orders a court may grant, the government should remain cognizant that successive motions for extensions are contrary to policies favoring prompt notice to stakeholders and forfeiture proceedings.

#### B.3.c Customs carve-out

Although CAFRA imposed strict deadlines and notice requirements in the overwhelming majority of federal civil asset forfeiture proceedings, Congress expressly exempted from 18 U.S.C. § 983(a)'s notice deadlines administrative forfeiture proceedings commenced pursuant to five classes of civil forfeiture statutes:

(1) the Tariff Act of 1930[14] and all other civil forfeiture provisions codified in Title 19 of the U.S. Code,[15] statutes that are ordinarily enforced by U.S. Customs and Border Protection (CBP) and U.S. Immigration and Customs Enforcement-Homeland Security Investigations (ICE-HSI);

(2) the Internal Revenue Code of 1986;[16]

(3) the Federal Food, Drug, and Cosmetic Act, found at 21 U.S.C. § 301 et seq.;[17]

(4) Trading with the Enemy Act, found at 50 U.S.C. § 4301 et seq.,[18] the International Emergency Economic Powers Act (IEEPA), found at 50 U.S.C. § 1701 et seq.,[19] and the North Korea Sanctions Enforcement Act of 2016;[20] and

(5) Section 1 of Title VI of the Act of June 15, 1917, 40 Stat. 233, pertaining to unlawful exportation of war materials pursuant to 22 U.S.C. § 401.

*See* 18 U.S.C. § 983(i).

---

[14] Pub. L. 71-361, June 17, 1930, ch. 497, 46 Stat. 590.

[15] The reference to forfeitures commenced under Title 19 is to cases in which Title 19 provides the substantive basis for the forfeiture, not cases in which the procedures in Title 19 are incorporated into other forfeiture statutes. *See* 18 U.S.C. § 981(d).

[16] Pub. L. 99–514, § 2, Oct. 22, 1986, 100 Stat. 2095.

[17] June 25, 1938, c. 675, § 1, 52 Stat. 1040.

[18] Pub. L. 65–91, Oct. 6, 1917, ch. 106, § 1, 40 Stat. 411.

[19] Pub. L. 95-223, Title II, § 202, Dec. 28, 1977, 91 Stat. 1626.

[20] Pub. L. 114-122, Feb. 18, 2016, 130 Stat. 93.

### B.4 Forfeiture proceedings to rectify inadvertent violations of the deadlines in 18 U.S.C. § 983(a)

Failure to comply with 18 U.S.C. § 983(a)(1) deadlines implicates § 983(a)(1)(F):

> If the Government does not send notice of a seizure of property in accordance with subparagraph (A) to the person from whom the property was seized, and no extension of time is granted, *the Government shall return the property* to that person *without prejudice to the right of the Government to commence a forfeiture proceeding at a later time*. The Government shall not be required to return contraband or other property that the person from whom the property was seized may not legally possess.

(emphasis added).

Seized property cannot remain in the government's possession indefinitely without giving interest holders an opportunity to contest the forfeiture in court. Consequently, absent extraordinary circumstances, when § 983(a)(1)(A)'s applicable notice deadlines pass without the government initiating judicial forfeiture action of any kind, the property at issue must be returned to the person from whom it was seized.

Absent extraordinary circumstances, once the government misses § 983(a)(1)(A)'s notice deadline for an administrative forfeiture proceeding and has returned the property pursuant to § 983(a)(1)(F), no new administrative forfeiture should be commenced against that same property based on the original violation.

Thus, when an agency and a federal prosecutor agree that circumstances warrant pursuing forfeiture of property despite a missed deadline, the forfeiture should be immediately pursued pursuant to a judicial action (civil, criminal, or administrative forfeiture where the party waives the deadline or the government obtains a seizure warrant issued after disclosure of the missed deadline to the court). If a criminal judicial action is pursued, the government must obtain a criminal seizure warrant, a restraining order, or some other order under 21 U.S.C. § 853(e) to maintain custody of the asset. If a civil judicial action is pursued, the government must obtain an arrest warrant in rem or otherwise restrain the property pursuant to Rule G(3)(b) of the Supplemental Rules of Admiralty or Maritime Claims and Asset Forfeiture Actions (Supplemental Rules), and execute that warrant to ensure that it has a lawful basis for maintaining custody of the property pending resolution of the case. Thereafter, pursuant to the newly executed civil or criminal process, the government should be authorized to maintain custody and control over seized property pending resolution of any claims. The government does not have to release the property and then re-seize it.

## C. Timeliness and content of claims in administrative proceedings[21]

### C.1 General rules

18 U.S.C. § 983(a)(2) sets the deadlines for filing claims to contest administrative forfeiture actions and outlines applicable content required for such claims. A person contesting an administrative

[21] Sec. III.C's discussion applies only to claims filed in administrative forfeiture proceedings commenced under statutes subject to 18 U.S.C. § 983. While Sec. III.C does not apply to claims filed in administrative proceedings exempted under the customs carve-out provision of § 983(i), agencies addressing claims filed in such proceedings are encouraged, in general terms, to assess and resolve claims having questionable timeliness, content, or verification in the manner outlined here.

forfeiture proceeding must file a claim with the seizing agency or forfeiture.gov no later than the deadline set forth in the notice letter or, if the potential claimant did not receive direct notice, no later than 30 days after the final day of publication of notice.[22] *See* § 983(a)(2)(B). Section 983(a)(2)(C) further requires that claims identify the specific property at issue, state the claimant's interest in that property, and be submitted in proper form, that is, "under oath" and "subject to penalty of perjury."[23] *See* § 983(a)(2)(c).

When an agency receives no claims that conform to the requirements, it may enter a declaration of forfeiture pursuant to 19 U.S.C. § 1609. When an agency receives a timely claim that meets the statutory content and form requirements, it must refer the case to the U.S. Attorney, who in turn must either commence a civil or criminal forfeiture action in the district court within 90 days after the agency received the claim or return the property. *See* 18 U.S.C. § 983(a)(3)(A).

### C.2 Resolving disputes as to form and content

Difficulty can arise if an agency receives a document that purports to be a claim but appears to be facially defective, untimely, or both. Deciding how to address claims of questionable timeliness or content requires balancing competing concerns. An agency that refers such claims to the U.S. Attorney for civil judicial forfeiture undermines policies favoring efficient administration and strict compliance with the requirements of 18 U.S.C. § 983(a)(2), leaving claimants with scant incentive to follow the rules. In contrast, an agency that unilaterally issues a declaration of administrative forfeiture without referring the case to the U.S. Attorney runs the risk that the claimant will file a subsequent judicial proceeding in which the district court sides with the claimant. Moreover, if the 90 day deadline in § 983(a) for commencing a civil judicial forfeiture action has expired, a likely circumstance, the "death penalty" provision of § 983(a)(3)(B) will bar further civil forfeiture proceedings against that property.

The seizing agencies should adhere to a policy of strict compliance by referring only timely and otherwise valid claims to the U.S. Attorney. In cases where (1) a claim's content or timeliness is questionable and (2) a potential claimant takes such a position, the seizing agency should consult with the U.S. Attorney before deciding whether to issue a declaration of forfeiture or refer the case. Such consultations—particularly in cases where further litigation is likely—are favored because they give the U.S. Attorney, who could have to defend the agency's action in district court, the opportunity to give advice on the strengths, weaknesses, and risks associated with alternative courses of action.

Moreover, the routine but discretionary practices that many agencies have adopted of returning questionable submissions to the potential claimant, with a request to clarify or supplement and an extended deadline for doing so, are also encouraged; such follow up with potential claimants should be pursued only where the defective claim was filed in a timely manner. *See* 28 C.F.R. § 8.10(g).

---

22 Download a standard claim form from forfeiture.gov.

23 Interestingly, to address the concern that eliminating the pre-CAFRA cost bond requirement would increase the number of attempts to contest forfeiture actions on false or frivolous grounds, Congress enacted a provision in CAFRA authorizing courts to impose a civil fine upon a finding that a claimant's "assertion of an interest" was "frivolous." *See* 18 U.S.C. § 983(h). Viewed against this backdrop, the reason for construing 18 U.S.C. § 983(a)(2)(c)'s mandate that claims be filed under a claimant's personal oath verified in a manner that subjects the claimant to the penalty of perjury becomes even more compelling.

### C.3 Defending against a motion to set aside an administrative forfeiture declaration

When an agency rejects a claim as defective and issues an administrative forfeiture declaration, the putative claimant may seek federal district court intervention in the form of a motion to set aside the administrative declaration filed pursuant to 18 U.S.C. § 983(e). When confronted with such motions, U.S. Attorneys are advised to give thoughtful consideration to whether equitable tolling is properly raised as one of the defenses. However, causes of action based on any other procedural or constitutional defect must rely on another basis for subject matter jurisdiction.

## D. Decisions to forego administrative forfeiture proceedings in favor of civil or criminal judicial resolutions

Although parallel proceedings are encouraged by policy, as a matter of discretion, the U.S. Attorney may ask the seizing agency to either forego or suspend administrative proceedings in favor of civil or criminal judicial forfeiture. In contemplating such requests, U.S. Attorneys should remain cognizant that the seizing agencies may have expended considerable resources toward effectuating an administrative forfeiture. Ordinarily, seizing agencies will comply with such a request, but the U.S. Attorney may then have to take steps to ensure that the 60-day deadline for commencing an administrative forfeiture proceeding under 18 U.S.C. § 983(a)(1)(A) is not violated. *See* § 983(a)(1)(A)(iii) (no notice of administrative forfeiture is required if, before the 60-day period expires, a grand jury returns an indictment naming the property, and the government takes steps to preserve its right to maintain custody of the property under the criminal forfeiture laws). However, seizing agencies must continue the administrative forfeiture process until the government files a civil complaint for forfeiture and obtains a warrant for arrest in rem or names the property in a criminal forfeiture allegation and obtains a protective order or some other order authorizing custody pursuant to the applicable criminal forfeiture laws.

## E. Plea and settlement negotiations involving property subject to administrative forfeiture

Prosecutors must bear in mind that although administrative forfeitures are generally more efficiently accomplished than judicial forfeitures, they still require investments of agency resources. Consequently, even when an agency has not yet issued a declaration of forfeiture against property in administrative forfeiture proceedings, a U.S. Attorney should not agree to return property as part of a plea agreement or civil settlement if the property is subject to ongoing administrative forfeiture proceedings unless: (1) the seizing agency concurs with a request to suspend administrative forfeiture proceedings or (2) the Money Laundering and Asset Recovery Section (MLARS) approves the decision to return the property.[24] Absent one or both of these conditions being satisfied, the U.S. Attorney does not have jurisdiction to enter into an agreement to return property.

Once an agency has issued a declaration of administrative forfeiture, there are two primary reasons why a government prosecutor should not agree to return seized property. First, a properly effectuated administrative forfeiture declaration vests title to property in the United States with "the same force and effect as a final decree and order of forfeiture in a judicial forfeiture proceeding." *See* 19 U.S.C. § 1609(b). Because administratively forfeited property is, by definition, government property, and

[24] *See also* Chap. 11, Sec. I.B.4 in this *Manual*.

because attorneys litigating on behalf of the United States, including U.S. Attorneys themselves, are not authorized to unilaterally dispose of government property, entering into an agreement to return administratively forfeited property, either in a plea agreement or in any case resolution document, is almost always an *ultra vires* act. Second, as a practical matter, administratively forfeited property is often liquidated promptly. For these two reasons, neither criminal prosecutors nor other lawyers litigating on behalf of the United States should agree to return property that has already been forfeited administratively.

## III. Judicial Forfeiture Guidelines

### A. Parallel administrative, civil, and criminal forfeiture proceedings

It is well-settled that the government may pursue forfeiture of an asset in administrative, civil, and criminal judicial proceedings. Instituting one type of proceeding does not necessarily prevent the government from pursuing another type. Moreover, 18 U.S.C. § 983(a)(1)(A)(iii)(I), enacted with CAFRA, specifically contemplates that the government may pursue parallel administrative and criminal judicial forfeiture actions.

### B. Deadlines for instituting civil judicial forfeiture proceedings[25]

#### B.1 Statutory deadline for civil judicial forfeiture actions following administrative proceedings

18 U.S.C. § 983(a)(3) mandates that "not later than 90 days after a claim has been filed" in an administrative forfeiture proceeding, the government must file a civil forfeiture complaint, include the property in a criminal indictment, return the property, or obtain an extension of time from the court. Since § 983(a)(3)(A) states that "a court in the district in which the complaint will be filed may extend the period for filing a complaint," a court order should be obtained to extend the filing deadline even if the claimant has stipulated to the extension.[26]

#### B.2 Preferred filing dates where no statutory deadlines apply

CAFRA does not provide civil judicial filing deadlines for two sets of circumstances: (1) when an agency seized property that is eligible for administrative forfeiture but no administrative forfeiture proceedings are instituted[27] and (2) when property is seized that is ineligible for administrative forfeiture.[28] The 90-day deadline in 18 U.S.C. § 983(a) does not apply in either situation. Department policy provides *recommended* time limits for initiating a civil judicial forfeiture action against property in both situations.

[25] Sec. III.B in this chapter does not apply to criminal forfeitures, which have no statutory deadline.

[26] This language has been interpreted by at least one court to permit an extension to be based solely on an agreement of the parties. *See United States v. Misc. Firearms*, Nos. 03–CV–1920 RMW, 09–CV–80136 RMW, 2012 WL 3877797 (N.D. Cal. Sept. 6, 2012), in which the court noted that "parties may extend time for filing of forfeiture action by agreement." No court order allowing for the extension is referenced in the *Misc. Firearms* court's opinion.

[27] *See* Sec. III.B.2.a in this chapter.

[28] *See* Sec. III.B.2.b in this chapter. *See also* Sec. II.B.3.c discussing 19 U.S.C. § 1607, which provides that administrative forfeiture is not available for personal property valued at $500,000 or more, including $500,000 or more seized from a financial account and other classes of property.

#### B.2.a Property for which the government elects not to pursue administrative forfeiture[29]

Given other deadlines in CAFRA, when the government seizes property but elects not to pursue administrative forfeiture as a remedy, the Department recommends that U.S. Attorneys commence a civil judicial forfeiture action against that property within 150 days after the seizure. Because this guideline mirrors the total of the 60-day deadline applicable for commencing administrative forfeiture proceedings, added to the 90-day period allowed for instituting a judicial forfeiture, the 150-day policy not only conforms to other provisions of CAFRA, but also avoids allegations that the government elected to forego administrative forfeiture to circumvent statutory deadlines and the policies that they embody.

#### B.2.b Property that is ineligible for administrative forfeiture

Where the seized property at issue is ineligible for administrative forfeiture pursuant to 19 U.S.C. § 1607, the Department recommends that U.S. Attorneys commence a civil judicial forfeiture action within 90 days after receiving a potential claimant's written request to release that property.[30] Some courts, reluctant to conclude that no deadline limits the period within which the government must file a judicial forfeiture action against property ineligible for administrative forfeiture, may press the Department litigators to concede otherwise. Department employees should resist such pressure; given that Congress set no such deadline in CAFRA, adopting one is not necessary. Moreover, it is not true that no legal deadline applies—courts have applied the Due Process Clause to set limits on how long the government may retain seized property absent the initiation of forfeiture proceedings. Accordingly, in a case where the agency or the Department receives a putative claimant's written request to return property that is ineligible for administrative forfeiture, the Department recommends where possible that the prosecutor commence a judicial forfeiture action within 90 days of receiving the request.

### C. Providing notice of judicial forfeiture actions[31]

Although different statutes and rules authorize and govern civil and criminal judicial forfeiture proceedings, mechanics providing notice in both contexts are more similar than different, as shown below.

[29] This policy applies only in cases where the U.S. Attorney, in consultation with the seizing agency, affirmatively decides at the outset of a case that the forfeiture of the seized property will be done judicially in the first instance. It does not apply to cases where the seizure should have been handled as a routine administrative forfeiture to which the 60- or 90-day deadlines in 18 U.S.C. § 983(a)(1)(A) apply, but where the notice was not sent due to inadvertence or error. The policy regarding the handling of forfeitures in that situation is set forth in Sec. II.B.4 in this chapter.

[30] Nothing in this policy should be interpreted to allow a potential claimant to shorten the deadline for commencing an administrative forfeiture in a case where administrative forfeiture is authorized. In all events, in such cases the seizing agency will have 60 days (or 90 days in the case of adoptive forfeitures) to determine whether or not to proceed with the forfeiture proceeding. Although federal law gives agencies up to 90 days to send notice to interested parties in the case of adoptive forfeitures, Attorney General Order No. 39462017: Federal Forfeiture of Property Seized by State and Local Law Enforcement Agencies (July 19, 2017) requires them to send notice not later than 45 days after seizure, unless a senior official at the federal agency approves such an extension. *See* Chap. 3, Sec. IV.C in this *Manual*.

[31] *See* Chap. 4, Sec. I.C in this *Manual* for a full discussion of the policies and procedures involving the notice requirements for forfeiting real property.

### C.1 General rules governing notice by publication and direct notice in civil and criminal judicial forfeiture proceedings

The charts in Sections III.C.1.a and III.C.1.b capture and compare the general rules governing direct notice and notice by publication in civil and criminal judicial forfeiture proceedings. *See* Rule G(4) of the Supplemental Rules of Admiralty or Maritime Claims and Asset Forfeiture Actions (Supplemental Rules) and Federal Rule of Criminal Procedure 32.2(b)(6).[32] Government prosecutors should comply with the applicable provisions.

[32] Effective Dec. 1, 2009.

### C.1.a. Comparison of direct notice requirements chart

**Comparision of Direct Notice Requirements Applicable to Civil and Criminal Judicial Forfeiture Proceedings**

| Direct Notice | Civil | Criminal |
|---|---|---|
| **Must be sent** | Per Supp. R. G(4)(b)(i), **to:** "any person who reasonably appears to be a potential claimant on the facts known to the government before the end of the time for filing a claim under R. G(5)(a)(ii)(B)." | Per Fed. R. Crim. P. 32.2(b)(6)(A), **to:** "any person who reasonably appears to be a potential claimant with standing to contest the forfeiture." |
| **Content** | Per Supp. R. G(4)(b)(i) & (ii), **must contain**:<br>**copy of the complaint**, and<br>**document outlining:**<br>(**1**) "the date when the notice is sent";<br>(**2**) the deadline for filing a claim falling at least 35 days after the notice is sent, and that an answer or Rule 12 motion is due no later than 21 days after claim is filed; **and**<br>**(3)** the name of the government attorney upon whom to serve the claim and answer. | Per Fed. R. Crim. P. 32.2(b)(6)(B), **must:**<br>**describe** the forfeited property,<br>**state** the times when a petition contesting the forfeiture must be filed, **and**<br>**state** the name and contact information for the government attorney to be served with the petition (same as required for publication). |
| **Means** | Per Supp. R. G(4)(b)(iii), **notice:**<br>**must** be "sent by means reasonably calculated to reach the potential claimant";<br>**may** be sent to "the potential claimant," or the "attorney representing" claimant, "with respect to the seizure of the property or in a related investigation, administrative forfeiture proceeding, or criminal case."<br>**must** be sent to "the place of incarceration" **if potential claimant is incarcerated**.<br>**may** be sent to "the address that person last gave to the agency that arrested or released the person," **if potential claimant was "arrested in connection with an offense giving rise to the forfeiture" but is no longer incarcerated** when notice is sent.<br>**may** be sent to "the last address that person gave to the agency that seized the property," **if a person from whom the property was seized is not incarcerated** when notice is sent. | Fed. R. Crim. P. 32.2(b)(6)(D) incorporates and adopts means of direct notice specified in Supp. R. G(4)(b)(iii)–(v). |

### C.1.b. Comparison of publication notice requirements chart

**Comparision of Publication Notice Requirements Applicable to Civil and Criminal Judicial Forfeiture Proceedings**

| Publication | Civil | Criminal |
|---|---|---|
| **When** | Per Supp. R. G(4)(a)(i):<br>"**within a reasonable time** after filing the complaint or at a time the court orders." | Per Fed. R. Crim. P. 32.2(b)(6)(A), **after** "the court orders forfeiture of specific property" under R. 32.2(b)(2). |
| **Content** | Per Supp. R. G(4)(a)(ii)(A)–(C), **must**:<br>**describe** the property with reasonable particularity,<br>**state** the deadlines for claims and answers, **and**<br>**name** the government attorney to be served with the claim and answer. | Per Fed. R. Crim. P. 32.2(b)(6)(B), **must**:<br>**describe** the forfeited property,<br>**state** the times when a petition contesting the forfeiture must be filed, **and**<br>**state** the name and contact information for the government attorney to be served with the petition. |
| **Means** | Per Supp. R. G(4)(a)(iv), **must be:**<br>"reasonably calculated to notify potential claimants of the action"—<br>**by posting on forfeiture.gov** for at least 30 consecutive days; **OR**<br>**if the property is in the U.S.**, publication in a generally circulated newspaper in the district where the action is filed, where the property was seized, or where property that was not seized is located, **OR**<br>**if the property is outside the U.S.,** publication in a generally circulated newspaper in the district where the action is filed, in a generally circulated newspaper in the country where the property is located, or in generally published legal notices in the country where the property is located. | Fed. R. Crim. P. 32.2(b)(6)(C) incorporates and adopts the procedures outlined in Supp. R. G(4)(iii)(iv), with certain exceptions. |
| **Frequency** | Per Supp. R. G(4)(a)(iii), **notice must appear:**<br>Once a week for 3 consecutive weeks, **OR**<br>Once, if notice of administrative forfeiture proceedings against the same property were published at **forfeiture.gov** for 30 days, **OR**<br>Once, if notice of administrative forfeiture proceedings against the same property were published for 3 consecutive weeks in an authorized district. | Fed. R. Crim. P. 32.2(b)(6)(C) incorporates and adopts frequency specified in Supp. R. G(4)(a)(iii). |

**Comparision of Publication Notice Requirements Applicable to Civil and Criminal Judicial Forfeiture Proceedings**

| Publication | Civil | Criminal |
|---|---|---|
| **Not Required** | Per Supp. R. G(4)(a)(i) **if:**<br>Property is worth less than $1,000, **and** direct notice dispatched as required by Supp. R. G(4)(b) to "every person the government can reasonably identify as a potential claimant,"[33] **OR**<br>Court finds that publication cost exceeds property's value and "other means of notice would satisfy due process." | Per Fed. R. Crim. P. 32.2(b)(6)(A) **for**: generic forfeiture orders **or** money judgments.[34] |

#### C.2 Notice policies specific to civil judicial forfeiture proceedings

Rule G(4)(b)(i) of the Supplemental Rules of Admiralty or Maritime Claims and Asset Forfeiture Actions (Supplemental Rules) requires that the government send direct notice and a copy of the complaint to "any person who reasonably appears to be a potential claimant on the facts known to the government before the end of the time for filing a claim under Rule G(5)(a)(ii)(B)." Department policy views anyone who appears likely to be able to show that they are an "owner" as defined in 18 U.S.C. § 983(d)(6) as entitled to direct notice of a civil forfeiture action. In contrast, because § 983(d)(6) excludes persons with general unsecured interests in, or claims against the property or estate of another from the definition of "owners," the Department's policy is to treat such persons as outside the class of persons entitled to receive direct notice of a civil forfeiture proceeding.

#### C.3 Notice policies specific to criminal judicial forfeiture proceedings

Because Federal Rule of Criminal Procedure 32.2(b)(6) sets no deadlines for publishing notice of a preliminary order of forfeiture or for supplying direct notice to potential petitioners that a court has entered such an order, the government should simply effectuate those measures as soon as practicable. Moreover, the government should send direct written notice to any person who reasonably appears to be a potential petitioner with standing to contest the forfeiture of property at issue in the ancillary proceeding.

### D. Issues specific to civil judicial proceedings

#### D.1 Initiating and pursuing civil forfeiture actions against facilitating property used or intended to be used to facilitate criminal activity

Property used to facilitate the commission of a crime—that is, property that makes a crime easier to commit or harder to detect—or property that constitutes the instrumentalities of a crime is generally

[33] Because internet publication costs essentially nothing, litigators may decide to use this means in all judicial forfeiture cases rather than run the risk of challenges based on whether the value of the asset is actually below the $1,000 threshold.

[34] *See* Federal Rule of Criminal Procedure 32.2(b)(6)(A), which requires publication only "[if] the court orders the forfeiture of specific property."

referred to as "facilitating property."[35] Unlike the proceeds of crime, which are acquired by the criminal wrongdoer as a direct result of the crime, facilitating property may be legally acquired but nonetheless subject to forfeiture because of how it is used. Thus, property may be forfeited on a theory of facilitation if it is used to commit, or subsequently conceal, illicit activity, even if the person who uses the property is not the owner. However, precisely because persons unrelated to criminal activity may lawfully own facilitating property, prosecutors must be mindful of the rights of property owners before filing a civil forfeiture complaint against facilitating property.

This policy is intended to ensure that the compelling law enforcement interest in civilly forfeiting facilitating property is appropriately balanced with the rights of property owners.[36] This guidance applies with respect to the filing of a civil forfeiture complaint that includes a theory of facilitation; it does not apply to the seizure or restraint of property (except the seizure of an operating business), to the filing of a complaint against the proceeds of a crime, or to a criminal forfeiture action involving facilitating property.

Although some of the guidance may be useful in determining whether to initiate a criminal forfeiture action against facilitating property, this policy is limited specifically to civil forfeiture actions because of important distinctions in the two types of actions relating to the government's standard of proof and a property owner's defenses. For example, unlike civil forfeiture actions, criminal forfeiture actions are predicated on the conviction of a criminal defendant, on proof beyond a reasonable doubt, for a criminal offense supporting the forfeiture.

#### D.1.a "Substantial connection" between the property subject to forfeiture and the underlying criminal activity

In any case in which the government seeks to pursue a civil forfeiture action against property that either facilitated or was "involved in" the commission of an offense, the government must demonstrate a "substantial connection" between the property subject to forfeiture and the underlying criminal activity. *See* 18 U.S.C. § 983(c)(3). Although the statute does not define the phrase "substantial connection," at a minimum, the government must show that use of the property made the prohibited conduct "easier or less difficult" to commit or "more or less free from obstruction or hindrance." *See United States v. Herder*, 594 F.3d 352, 364–365 (4th Cir. 2010) (the substantial connection test is satisfied by showing that the property made the offense either less difficult to commit or more or less free from obstruction or hindrance).

---

[35] Statutes that provide for forfeiture of property "involved in" an offense—such as 18 U.S.C. § 981(a)(1)(A), which permits forfeiture of property "involved in" various money laundering offenses—allow for forfeiture of property that facilitated the offense as well as, for example, proceeds of specified unlawful activity laundered through the money laundering offense and commissions that the money launderer earned as a result of the offense. This guidance addresses only the facilitating property "involved in" those offenses; it does not apply to either the criminal proceeds laundered through, or the commissions earned as a result of the money laundering offense.

[36] The terms "property owner" and "owner" refer not only to title owners of property, but also to persons or entities having a statutorily recognizable interest in all or a portion of the property subject to forfeiture, such as "a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest." *See* 18 U.S.C. § 983(d)(6)(A).

Prosecutors must consider at least the following factors as applicable:

- whether the property had more than a negligible, inconsequential, incidental, tangential, or merely fortuitous role in facilitating or concealing the criminal activity;[37]
- whether the property was specifically designed, adapted, or modified to facilitate or conceal the criminal activity, or the property otherwise possessed unique features or characteristics making it particularly useful for facilitating or concealing the criminal activity; and
- the amount of time that the property was used, the frequency of such use, and total portion(s) of the property used in facilitating or concealing the underlying criminal activity.

Although the presence or absence of one or all of these factors will not be dispositive, collectively they provide a basic framework for prosecutors to assess whether there exists a "substantial connection" between the property and the underlying criminal activity.

To ensure that these factors are applied to address compelling law enforcement needs in a judicial district, prosecutors must obtain written authorization from their respective U.S. Attorney, or a designee, before filing any civil forfeiture complaint based on a theory that the property facilitated or concealed underlying criminal activity. The authorizing official may approve the filing of a complaint after determining that, based on a review of the case and the factors listed above, there is a substantial connection between the property and the underlying criminal activity. That written authorization must be retained in the forfeiture case file. Criminal Division trial attorneys, or other Department components not partnering with a U.S. Attorney's Office (USAO) in the prosecution, must obtain approval from the Chief of MLARS.

#### D.1.b Civil forfeiture actions against operating businesses[38]

Because of the complexities of seizing and forfeiting an operating business,[39] and the potential for substantial losses to the owner, other persons such as shareholders and employees, and the government itself, as well as the potential exposure to liabilities arising from the business, prosecutors must obtain written approval from their respective U.S. Attorney before seizing or filing a civil forfeiture complaint against an operating business based on a facilitation theory. The U.S. Attorney may not delegate this approval authority.[40]

[37] As an example, use of a large parcel of property merely as a shortcut for transporting contraband from a property outside the parcel to another property outside the parcel generally would have only a fortuitous connection to the criminal activity. *See United States v. Two Tracts…in Carteret Cty., NC*, 998 F.2d 204 (4th Cir. 1993).

[38] This policy and the prior approval requirement apply only when a prosecutor seeks to civilly forfeit under a facilitation theory an operating business itself or all or most of the property necessary for an operating business to continue operations. Therefore, it would not apply when a prosecutor seeks to forfeit only an individual asset or some discrete property of an operating business, the forfeiture of which would not cause a substantial or complete disruption or discontinuance of business operations (e.g. a car when the business has multiple vehicles, an individual parcel, among many, of real property, or a single financial account among several).

[39] *See* Chap. 1, Sec. I.D.4 in this *Manual* for a full discussion of the policies and procedures involved in the seizure/restraint of an operating business and its property.

[40] Although this authority is ordinarily non-delegable, if the U.S. Attorney is recused from a matter or absent from the office, this authority may be exercised by an acting U.S. Attorney selected in the manner prescribed by regulation. *See* 28 C.F.R. § 0.136.

Prosecutors must consider the following factors as applicable when evaluating whether to attempt to seize or file a civil forfeiture action against an operating business based on a facilitation theory:[41]

- the nature, management structure, and ownership of the operating business;
- the nature and seriousness of the criminal activity, including the risk of harm to the public;
- the nature and extent of the operating business's involvement in the facilitation or concealment of the underlying criminal activity;
- the pervasiveness of wrongdoing within the business, including the complicity in, or the condoning of, the wrongdoing by its principals, including corporate management and/or ownership;
- collateral consequences, including whether there is disproportionate harm to shareholders, pension holders, employees, and others not proven personally culpable, as well as effect on the public arising from forfeiture of the operating business; and
- the adequacy of other remedies, such as a restraining order, protective order, or other court-approved remedy in lieu of seizure and forfeiture of the business. *See generally* Chapter 1, Section I.D.4 in this *Manual* (discussing use of protective orders).

If a prosecutor obtains approval to seek an order authorizing seizure or restraint of an operating business before filing a civil forfeiture complaint, they must file the complaint within 60 days of seizing or restraining that business subject only to the exceptions noted below. With the written consent of the owner, the prosecutor can extend the deadline by 60 days. Further extensions, even with consent of the owner, are not permitted unless the prosecutor has obtained the approval discussed below.

An exception to the 60-day requirement is permissible only upon approval from an appropriate official.

- Assistant U.S. Attorneys (AUSAs) must obtain approval from their respective U.S. Attorney. The U.S. Attorney may not delegate this approval authority, except as discussed in Section III.D.1.b n.40 in this chapter.
- Criminal Division trial attorneys, or other Department components not partnering with a USAO in the investigation or prosecution, must obtain approval from the Chief of MLARS. The Chief of MLARS may not delegate this approval authority.

If additional evidence becomes available after the affected business has been released from seizure or a restraining order, a civil forfeiture complaint may still be filed with applicable approval of the new action.

[41] Before seizing or filing a complaint against an operating business under any available forfeiture theory, prosecutors should consult MLARS' guidance on the seizure and restraint of an operating business and/or its property. *See* Chap. 1, Sec. I.D.4 in this *Manual*.

#### D.1.c Civil forfeiture actions against personal residences[42]

To reduce the potential risk of subjecting innocent third parties to litigation in order to protect their lawful interests in their own homes, prosecutors must obtain written approval from their respective U.S. Attorney before filing a civil forfeiture complaint against personal residences based on a facilitation theory. For purposes of this policy, the term "personal residence" refers to a primary residence occupied by the title owner(s). The U.S. Attorney may not delegate this approval authority except as discussed in Section III.D.1.b n.40 in this chapter. Criminal Division trial attorneys, or other Department components not partnering with a USAO in the prosecution, must obtain approval from the Chief of MLARS. The Chief of MLARS may not delegate this approval authority.

The factors that must be considered in determining whether the proposed forfeiture of a residence serves a compelling law enforcement interest include:

- the nature of the underlying criminal activity being facilitated by the residence;
- the extent to which the property was used to facilitate or conceal the underlying criminal activity, including such factors as the amount of time that the property was used, the frequency of such use, and total portion(s) of the property used in facilitating or concealing the underlying criminal activity;
- whether the perpetrator or any other persons involved in the underlying criminal activity have an ownership interest in or reside at the residence; and
- if the owner(s) of the residence is neither the perpetrator nor otherwise involved in the underlying criminal activity, whether they would likely prevail on an innocent owner defense, as discussed in Section III.D.2.a in this chapter, or otherwise meet the criteria in 18 U.S.C. § 983(d)(3)(B).

### D.2 Pre-filing due diligence on defenses to forfeiture

Even if the government is able to meet its burden of establishing by a preponderance of the evidence a "substantial connection" between the facilitating property and the underlying criminal activity, property owners can still assert defenses to defeat or reduce the forfeiture. Before filing a complaint, prosecutors must take all reasonable steps to determine the likelihood of a potentially meritorious defense. This analysis will depend in part upon whether the property is either subject to forfeiture is owned or controlled by the person or persons involved in the criminal activity or owned or otherwise controlled by a third party.

#### D.2.a Innocent owner

The law entitles any claimant with standing to assert a defense, after the government has sustained its initial burden of proof on forfeitability, that the claimant qualifies as an innocent owner of the property as defined in 18 U.S.C. § 983(d). There are two different innocent owner defenses; one applies to persons who owned their property interests while the illegal activity was occurring and the other applies to persons who acquired their interest in the property only after the illegal conduct occurred.

[42] *See* Chap. 4 in this *Manual* for a full discussion of the policies and procedures involving the unique issues that arise before and during forfeiture of real property.

Persons who had an interest in the property at the time the illegal activity was occurring can defeat the government's proven forfeiture claim by establishing that

(a) they did not know of the conduct giving rise to the forfeiture,[43] *see* § 983(d)(2)(A)(i); or

(b) upon learning of the conduct, they did all that reasonably could be expected, under the circumstances, to terminate such use of the property, including

  (1) giving timely notice to an appropriate law enforcement agency of information that led the person to know the conduct giving rise to a forfeiture would occur or has occurred, and

  (2) in a timely fashion, revoking or making a good faith attempt to revoke permission for those engaging in such conduct to use the property or taking reasonable actions in consultation with a law enforcement agency to discourage or prevent the illegal use of the property. *See* § 983(d)(2)(A)(ii) and (B)(i)(I)–(II).[44]

Persons who acquired an interest in the property after the illegal conduct occurred can also defeat the government's proven forfeiture claim by establishing that they qualify as a bona fide purchaser for value of the interest, and at the time they acquired the interest, they did not know and were reasonably without cause to believe that the property was subject to forfeiture. *See* § 983(d)(3). When evidence available before filing a civil forfeiture complaint demonstrates that the likely owner of the property used to facilitate or conceal the underlying criminal activity was either the perpetrator of or knowing participant in the activity, that evidence should be sufficient to overcome any "innocent owner" defense.[45] If, however, the likely owner is not the perpetrator of, or knowing participant in, the underlying criminal activity, prosecutors must take all reasonable steps, such as the use of special interrogatories under Rule G(6) of the Supplemental Rules of Admiralty or Maritime Claims and Asset Forfeiture Actions (Supplemental Rules), before filing a civil forfeiture complaint to ascertain whether the likely owner may have a viable "innocent owner" defense.[46]

In making this determination, relevant factors that must be considered include whether the likely owner:

- has standing to maintain a claim in the forfeiture proceeding;
- is merely a nominee or straw owner for the perpetrator of the criminal activity;
- had knowledge of, consented to, or was otherwise willfully blind to illegal use of the property at the time of the criminal activity;

[43] In determining actual knowledge, some courts continue to subscribe to a concurrent willful blindness test. *See United States v. $822,694.81 in U.S. Currency*, No. 3:13-cv-00545-DFM, 2019 WL 4369936 (D. Conn. Sept. 12, 2019); *United States v. 1988 Beachcraft Power Boat*, No. 4:01-cv-10054-JJO (S.D. Fla. Nov. 21, 2002).

[44] However, such persons are not required to take steps they reasonably believe would be likely to subject any person (other than the person whose conduct gave rise to the forfeiture) to physical danger. *See* 18 U.S.C. § 983(d)(2)(B)(ii).

[45] Before a forfeiture complaint is filed, it is not always readily apparent who may have an ownership interest in particular property. Nonetheless, reasonable efforts must be taken before the complaint is filed to identify any person or entity with a likely ownership interest.

[46] In some cases, it will be difficult to anticipate the nature of a likely owner's innocent owner defense, or to investigate and develop evidence to evaluate the merits of such a defense before filing a complaint. Nonetheless, when time and resources permit, prosecutors must undertake such efforts in order to ensure that the case serves a compelling law enforcement interest.

- learned of the illegal use after the fact, but failed to take reasonable and timely steps to properly notify law enforcement or to prevent further illegal use of the property;
- financially or otherwise benefitted from the property's involvement in the criminal activity; or
- would qualify as a bona fide purchaser for value who was reasonably without cause to believe that the property was subject to forfeiture, if the likely owner acquired the property after the criminal activity subjecting the property to forfeiture had been completed.[47]

If a pre-filing investigation reveals that an owner with standing has a viable innocent owner defense, prosecutors should refrain from proceeding with a forfeiture action against that property. In a case where there may be more than one potential owner of the same property, it may be possible to proceed with the forfeiture but agree to mitigate the forfeiture to recognize the interests of the owners who would likely qualify as innocent owners.

#### D.2.b Grossly disproportional

A property owner may also challenge the forfeiture of facilitating property on grounds that the forfeiture is excessive. Specifically, 18 U.S.C. § 983(g) provides that civil forfeiture, regardless of the nature of the relationship between the property and the criminal activity, shall not be "grossly disproportional to the gravity of the offense." Rule G(8)(e) of the Supplemental Rules of Admiralty or Maritime Claims and Asset Forfeiture Actions (Supplemental Rules) requires that a property owner who seeks to mitigate the forfeiture based on excessiveness do so by pleading it in the answer in order to give the parties an opportunity to conduct discovery relating to the defense. In anticipation of this defense, prosecutors must make reasonable efforts to develop evidence and articulate reasons why forfeiture of facilitating property, or a portion of the property, would not be grossly disproportionate to the underlying criminal activity. Relevant factors include:

- the seriousness of the underlying criminal activity;
- the extent of the owner's involvement in or knowledge of the use of the property in the commission or concealment of the criminal activity;
- the extent to which the property was involved in the criminal activity;
- the effect of the criminal activity, and the property's use in the activity, on the community or identifiable victims; and
- the value of and equity in the property.

After consideration of these and any other relevant factors, if prosecutors determine that forfeiture of the facilitating property would be grossly disproportionate to the criminal activity, then they must attempt to mitigate the forfeiture. For example, a prosecutor may seek to forfeit only a divisible portion of the property otherwise subject to civil forfeiture. When mitigation is not possible, it may be appropriate to forego the forfeiture action altogether, unless doing so would potentially deprive victims of recovery of their losses.

[47] The relevance of each of the various factors will depend on whether the likely owner had an interest in the property when it was used in the commission or concealment of underlying criminal activity or whether they acquired an interest after the property's involvement in the activity.

This policy addresses the exercise of investigative and prosecutorial discretion and does not alter in any way the Department's authority to enforce federal law. Neither the policies set forth in this section nor any state or local law provides a legal defense to a violation of federal law, including any civil or criminal violation.

### E. Issues specific to criminal judicial proceedings

#### E.1 Best practice when property identified as subject to forfeiture in a criminal proceeding is forfeited administratively

In cases where administrative and criminal forfeiture proceedings are instituted simultaneously and no one files a claim in the administrative proceeding, the agency should complete the administrative forfeiture. Thereafter, the prosecutor handling the criminal case should file a "notice" in the criminal proceeding that reports the completed forfeiture and is served on the defense.

#### E.2 Correcting errors of law in criminal judicial forfeiture actions[48]

To try to identify errors before sentencing, prosecutors should recommend to the court that it follow Federal Rule of Criminal Procedure 32.2(b)(2)(B) and issue preliminary orders of forfeiture "sufficiently in advance of sentencing to allow the parties to suggest revisions or modification before the order becomes final as to the defendant" at sentencing "unless doing so is impractical."

Due to varied law on correction of errors, when errors occur during sentencing, the period for correcting such errors is potentially very short. Litigators should presume that courts may construe their motions to correct errors of law as Federal Rule of Criminal Procedure 35(a) motions to correct sentence that do not toll Appellate Rule 4(b)'s deadlines. When confronted with a forfeiture error of law at sentencing, a prosecutor should file a motion for reconsideration but urge the court to rule on it within 14 days of the sentence. In addition, no matter what title the motion bears, the litigator should not presume that filing it will toll appellate deadlines, but instead, should file a notice of appeal before the 30th day under Appellate Rule 4(b)(1)(B), regardless of the status of a pending motion for reconsideration. As a courtesy to the district court, the prosecutor may want to advise the court of this policy to ensure that the court understands what compels the government to file a notice of appeal—which divests the district court of jurisdiction—even though the court may have scheduled a hearing on the government's motion.

## IV. Firearms Forfeiture Policy

This section provides a brief summary of policies concerning the forfeiture of firearms. It is Department policy to subject seized firearms and ammunition to formal forfeiture proceedings. Firearms are a unique type of personal property, and the forfeiture of firearms presents challenging issues involving complex firearms regulations, property ownership, and constitutional rights. For further details on firearms forfeiture matters, prosecutors and law enforcement agencies should consult MLARS.

[48] The government may move to correct a clerical error at any time pursuant to Federal Rule of Criminal Procedure 36. For example, if the error was simply the district court's failure to make the order of forfeiture part of the judgment as required by Federal Rule of Criminal Procedure 32.2(b)(3), in most circuits the error could be corrected pursuant to Rule 36.

### A. Preference for forfeiture

As a practical matter, forfeiture is the best way to dispose of crime-related firearms and ammunition. Forfeiture is most consistent with congressional intent, as reflected in the many specific and general forfeiture statutes that apply to firearms. Forfeiture proceedings provide the best and clearest protections for the due process rights of firearms' owners,[49] including innocent third parties who may have a lawful interest in firearms that have been stolen or otherwise used without the owners' knowledge and consent. In any case where firearms or ammunition have been seized for forfeiture, any plea agreement should specifically address the forfeiture or other disposition of seized firearms or ammunition.

In criminal prosecutions where the government has included the notice of forfeiture of firearms or ammunition as part of the indictment, any plea agreement must specifically address the forfeiture or other disposition of those items. The failure by the USAO to do so leaves the seizing agency in the difficult situation of determining how to dispose of personal property that cannot be returned to a possessor (typically, a prohibited person) and cannot be destroyed via the forfeiture process because the government does not yet hold title to that property. This results in the unnecessary expenditure of government resources and delays the destruction of or other disposition of the property.

### B. Administrative and civil judicial forfeiture of firearms deadline issues

Firearms and ammunition are subject to specific deadlines for the commencement of forfeiture actions pursuant to the forfeiture authority in the Gun Control Act (GCA). The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) has jurisdiction to pursue administrative forfeitures under the GCA. Under 18 U.S.C. § 924(d)(1), "[any] action or proceeding for the forfeiture of firearms or ammunition shall be commenced within one hundred and twenty days of such a seizure." The commencement of an administrative forfeiture action within CAFRA deadlines has been held to meet this deadline. See *United States v. Ninety-Three (93) Firearms*, 330 F.3d 414 (6th Cir. 2003). However, courts have not reconciled the statutory 120day deadline in § 924(d)(1) for forfeiture under the GCA with those situations where delay in sending notice of a forfeiture action is permitted under 18 U.S.C. § 983(a)(1)(D). As a precaution, the ATF should commence administrative forfeiture before the 120day deadline, or request that the USAO seek a criminal indictment that includes a notice of criminal forfeiture for the firearm or ammunition if possible.[50]

The ATF also has jurisdiction to pursue administrative forfeitures under the National Firearms Act (NFA). However, because the NFA is part of the Internal Revenue Code, Title 26, United States Code, forfeiture cases based on Title 26 offenses are exempted from CAFRA deadlines by 18 U.S.C. § 983(i) (generally known as the "customs carve-out"). *See United States v. TRW Model M14 7.62 Cal. Rifle*, 414 F.3d 416 (6th Cir. 2006). These forfeitures are governed by the customs laws—19 U.S.C. §§ 1602–1619.

[49] *See Henderson v. United States*, 135 S.Ct. 1780, 1786–1787 (2015) (holding that although 18 U.S.C. § 922(g) bars courts from ordering firearms returned to their felon-owner, it permits the court-ordered transfer of firearms to a third party of the felon's choosing so long as the recipient will not grant the felon access to, or accede to the felon's instructions about, the future use of the firearm).

[50] Federal Bureau of Investigation (FBI) and Drug Enforcement Administration (DEA) have authority to administratively forfeit firearms used in drug trafficking or firearms as proceeds of drug trafficking.

The CBP has administrative forfeiture authority in limited circumstances (i.e. firearm seized during alien smuggling) as well.

### C. Firearms are treated differently

Forfeited firearms and ammunition are treated differently from other types of forfeited property in several respects. As explained below, they are not equitably shared with state and local law enforcement, they are not sold, and most often, they are destroyed.

Forfeited firearms may be placed into federal official use (e.g. by a federal investigative agency for federal law enforcement use, ballistics testing, or display). Firearms are neither equitably shared with non-federal law enforcement agencies nor sold.[51] In rare cases, firearms with significant educational, scientific, or historic value may be placed into official use for display purposes, such as at The Smithsonian Institution or another federally funded museum, or at one of the U.S. military academy museums. The ATF or the U.S. Marshals Service (USMS) may approve this type of official use only after the subject firearms have been rendered inoperable.

Minimum value and net equity thresholds do not apply to firearms. As explained in Chapter 1 in this *Manual*, there is an exception to the net equity thresholds where a particular forfeiture serves a compelling law enforcement interest. The Department has concluded that such a compelling interest applies to firearms and ammunition involved in crime. Therefore, unlike most forms of personal property, forfeitable firearms and ammunition should be forfeited regardless of their monetary value. Because cheap firearms used criminally cause harm the same as expensive ones, there is a strong law enforcement interest in removing both types from circulation. Moreover, as discussed below, the federal government generally destroys forfeited firearms and ammunition and never resells them. Therefore, their potential resale value is irrelevant to the determination whether to forfeit them.

Because Department policy prohibits the sale of federal forfeited firearms, prosecutors should not enter into any agreement calling for the sale of forfeited firearms and the distribution of proceeds from any such sale. Prosecutors should bring this prohibition on sale of forfeited firearms to the attention of the court whenever necessary to avoid entry of an order calling for such a prohibited sale. The overriding policy concern weighing against the sale or sharing of forfeited or abandoned firearms is that they may subsequently be resold and used in crime.

Unlike other types of forfeited property, federally forfeited firearms and ammunition may not be sold, except as scrap. 18 U.S.C. § 3051(c)(3) provides that "[notwithstanding] any other provision of law, the disposition of firearms forfeited by reason of a violation of any law of the United States shall be governed by the provisions of section 5872(b) of the Internal Revenue Code of 1986." 26 U.S.C. § 5872(b) provides that no notice of public sale is required as to forfeited firearms and that no forfeited firearm may be sold at public sale. Although § 5872(b) permits forfeited firearms to be retained for federal official use, forfeited firearms are not transferred to state or local law enforcement agencies through equitable sharing or otherwise. Although § 5872(b) indicates that the General Services Administration (GSA) could sell forfeited firearms to state or local governments, GSA has determined that it will not do so. GSA's national property management regulations provide that "seized and forfeited firearms *shall not be sold* as firearms"—only as scrap. 41 C.F.R. § 10148.303 (emphasis added). As a result, seized and forfeited firearms cannot be sold and are generally destroyed.

[51] *See* Chap. 15 in this *Manual*.

# Chapter 6: Grand Jury

## I. Introduction

One of the primary goals of the Department of Justice's Asset Forfeiture Program is to punish and deter criminal activity by depriving criminals of property used in or acquired through illegal activities.[1] It is therefore the Department of Justice's (Department) policy "to use asset forfeiture to the fullest extent possible to investigate, identify, seize, and forfeit the assets of criminals and their organizations while ensuring that due process rights of all property owners are protected."[2] Criminal Assistant U.S. Attorneys (AUSAs) and investigators can best accomplish these policy objectives, in connection with federal criminal investigations, by making lawful and prudent use of the grand jury both (1) to locate assets that might be subject to forfeiture, either criminally or civilly, in connection with the criminal investigation and (2) to return indictments that permit the fullest extent of criminal forfeiture possible under the charges, applicable law, and facts.

Before indictment, by virtue of their power to compel witnesses to provide testimony and to produce records, grand juries can help AUSAs and investigators secure evidence as to more than simply where, when, how, and why a target committed suspected criminal conduct. Indeed, prudent AUSAs and investigators can and should also use the grand jury and its subpoena power—in connection with an ongoing federal criminal investigation—to determine, where possible: how much in suspected criminal proceeds the target obtained; how the target disposed of those criminal proceeds; whether the target engaged in money laundering transactions using those proceeds; what property items the defendant obtained with those proceeds; and what property facilitated or, in the case potential money laundering conduct, was "involved in," the target's suspected criminal conduct. AUSAs and investigators may use information and evidence obtained by grand jury subpoena—including, for example, records permitting tracing of criminal proceeds—to pursue criminal forfeiture and, as discussed below, civil forfeiture.[3]

At the time of indictment, as an incident of their power to approve, or "return," an indictment charging federal criminal offenses upon findings of probable cause, a grand jury can return an indictment setting forth not only the proposed federal criminal charges but also a "forfeiture notice" informing the defendant that the government will seek to forfeit property as part of any sentence in accordance with applicable forfeiture statutes. Upon request, a grand jury can include in the indictment probable cause findings that the requisite nexus exists between the charged offenses and particular property alleged to be forfeitable.[4]

## II. Disclosures of Grand Jury Information under 18 U.S.C. § 3322(a)

### A. Summary

The Civil Asset Forfeiture Reform Act of 2000 (CAFRA)[5] amended 18 U.S.C. § 3322(a) to allow criminal AUSAs to disclose grand jury information to government attorneys "for use in connection

[1] *The Attorney General's Guidelines on the Asset Forfeiture Program* (July 2018) (*AG Guidelines*), Sec. 1.

[2] *Id*.

[3] *See* Sec. II in this chapter.

[4] *See* Sec. III in this chapter.

[5] Pub. L. 106-185, Apr. 25, 2000, 114 Stat. 202.

with any civil forfeiture provision of federal law." CAFRA legislatively overruled a portion of the holding in *United States v. Sells Eng'g, Inc*., 463 U.S. 418 (1983), which interpreted Federal Rule of Criminal Procedure 6(e) to prohibit a criminal AUSA from disclosing grand jury information to a civil AUSA who was not part of the prosecution team. However, the amendment to § 3322 did not make clear whether the "use" that the civil AUSA could make of the disclosed information included further disclosure to the public in the course of the litigation of a civil forfeiture case without obtaining a court order.

The matter is a sensitive one, as the penalty for violating the grand jury disclosure rules set forth in Rule 6(e) is contempt. For that reason, prosecutors will naturally want to act with caution in this area. However, based on fundamental rules of statutory construction and the practice regarding the use of grand jury information in criminal cases, the Money Laundering and Asset Recovery Section (MLARS) concludes that § 3322 permits civil AUSAs to not only to review and rely upon grand jury information in the preparation of civil forfeiture pleadings but also to disclose that information in publicly filed documents and as evidence at trial.

Section 3322 does not, however, permit an AUSA to disclose grand jury information to seizing agency attorneys to use in administrative forfeiture proceedings. Seizing agency attorneys are not "attorneys for the government" as Federal Rule of Criminal Procedure 1(b) defines.[6] Nor does § 3322 explicitly authorize disclosure to government contractors without a court order pursuant to Rule 6(e)(3)(A)(ii) or (E)(i).[7]

## B. Discussion

### B.1 Assistant U.S. Attorneys may use and disclose grand jury information on the public record during the course of civil forfeiture litigation without obtaining a court order

As noted above, CAFRA's amendment to 18 U.S.C. § 3322(a) allows disclosure of grand jury information to another "attorney for the government" without a court order for "use in connection with any civil forfeiture provision of Federal law."

MLARS considered the plain meaning of the statute and the well-established authority for an AUSA who is privy to grand jury information to use it not only to prepare a case for trial but also to disclose it in the indictment and in the course of the criminal trial. Accordingly, MLARS has concluded that just as criminal AUSAs may disclose grand jury information either in an indictment and other documents filed in the course of a criminal prosecution or through evidence introduced in the course of a criminal trial, so too may civil AUSAs disclose grand jury information in a civil forfeiture complaint and other documents filed in the course of civil litigation without obtaining a judicial disclosure order.

6 *See* Sec. II.B.2 in this chapter.

7 Federal Rule of Criminal Procedure 6(e)(3)(A)(ii) authorizes disclosure to "government personnel," which may include contract personnel, but only upon court order as discussed below. Rule 6(e)(3)(E)(i) authorizes disclosure "preliminary to or in connection with a judicial proceeding" and also requires a court order.

### B.2 Assistant U.S. Attorneys may not disclose grand jury information to agency counsel for use in connection with an administrative proceeding

18 U.S.C. § 3322(a) provides for automatic disclosures of grand jury information by an AUSA who is privy to that information "to an attorney for the government…for use in connection with any civil forfeiture provision of Federal law." Federal Rule of Criminal Procedure 1(b) defines "*attorney for the government"* as the Attorney General, an authorized assistant of the Attorney General, a U.S. Attorney, or an authorized assistant of a U.S. Attorney. Department attorneys may conduct grand jury proceedings when authorized to do so by the Attorney General. Agency or other non-Department attorneys may not be present unless they are appointed as special assistants.

In *In re Grand Jury Proceedings,* 309 F.2d 440, 443 (3d Cir. 1962), the Third Circuit emphasized that the "term 'attorneys for the government' is restrictive in its application." The *In re Grand Jury* court concluded that "if it had been intended that attorneys for administrative agencies were to have free access to matters occurring before the grand jury the rule would have so provided." [8] The Sixth Circuit, addressing the definition of *attorney for the government*, found that an attorney in the Department's Tax Division was not an attorney for the government because he was not assigned to work on a particular criminal case in any "official" capacity.[9] Seizing agency attorneys and non-Department attorneys may obtain grand jury information without a disclosure order if they are appointed under 28 U.S.C. § 515 as a special AUSA or special assistant to the Attorney General.[10] Otherwise, they are not considered *attorneys for the government* and cannot receive grand jury information without a court order. As a result, MLARS concludes that 18 U.S.C. § 3322 does not authorize disclosure of grand jury information to a seizing agency counsel for use in connection with an administrative proceeding.

### B.3 Assistant U.S. Attorneys should consult district or circuit law to determine whether to disclose grand jury information to a government contractor assisting in the preparation of a civil forfeiture case without a prior court order

As with agency counsel, depending on the law of a particular district or circuit, 18 U.S.C. § 3322 may not authorize disclosure without a court order to government contractors who are assisting the civil AUSA with the preparation of the civil forfeiture case.

In both civil and criminal cases, and with regard for district norms and accepted practices, an AUSA may wish to first obtain a disclosure order pursuant to either Federal Rule of Criminal Procedure 6(e)(3)(A)(ii) or (E)(i) before disclosing grand jury information to a contract employee,[11]

[8] *See In re Grand Jury Proceedings*, 309 F.2d 440, 443 (3d Cir. 1962).

[9] *See United States v. Forman*, 71 F.3d 1214, 1218 (6th Cir. 1995).

[10] *See In re Perlin*, 589 F.2d 260, 267 (7th Cir. 1978) (Commodity Futures Trading Commission); *United States v. Bates*, 627 F.2d 349 (D.C. Cir. 1980) (Federal Maritime Commission); *Bradley v. Fairfax*, 634 F.2d 1126, 1130–1132 (8th Cir. 1980) (Parole Commission hearing officer).

[11] The practice in a number of districts has been to obtain a standing order from the district court under either Federal Rule of Criminal Procedure 6(e)(3)(A)(ii) or (E)(i) (or both) authorizing disclosure to specific contractors who are directly involved in assisting attorneys for the government in the prosecution of cases. Such orders should be updated frequently to reflect any changes in conditions which were considered by the court in support of the order.

being mindful of any required showings under these provisions.[12] In some districts and circuits, it may be necessary to obtain a Rule 6(e) disclosure order before a civil AUSA, who is entitled under 18 U.S.C. § 3322(a) to use grand jury information in a civil forfeiture case, may disclose that information to a government contractor unless the information is first disclosed in a publicly filed document or in open court. As a result, AUSAs should review the law in their district and circuit to ensure compliance with local practice.

### C. Conclusion

Under 18 U.S.C. § 3322(a), criminal AUSAs may disclose grand jury information to civil forfeiture AUSAs. This information may be used by the civil AUSAs in their complaints, seizure warrants, restraining orders, and any other pleadings and papers filed in a civil forfeiture case, and as evidence at trial, without getting a disclosure order. However, neither criminal nor civil AUSAs may disclose grand jury information to seizing agency attorneys to use in administrative forfeiture proceedings without obtaining a judicial order. Moreover, a disclosure order may also be required to share grand jury information with government contract employees who may be assisting in the preparation of a civil forfeiture case.

## III. Presenting Forfeiture to the Grand Jury

### A. Charging document must include notice of forfeiture

Federal Rule of Criminal Procedure 32.2(a) provides that the court may not enter a judgment of forfeiture in a criminal proceeding "unless the indictment or information contains notice to the defendant that the government will seek the forfeiture of property as part of any sentence in accordance with the applicable statute." Accordingly, in cases in which the government seeks forfeiture, the indictment or information must include a forfeiture notice setting forth the counts under which the government intends to seek forfeiture if the defendant is convicted and the forfeiture statute or statutes applicable to each of those counts. The forfeiture notice should also set forth, as to each count for which the government seeks forfeiture, the forfeiture nexus authorized by the applicable forfeiture statute or statutes. The notice should also include a notice of the government's intent to forfeit substitute assets as permitted by applicable forfeiture law, typically 21 U.S.C. § 853(p), as made applicable to non-drug cases by 28 U.S.C. § 2461.

This standard notice of forfeiture in an indictment does not entail the grand jury making any probable cause finding as to nexus between a charged offense and particular property items sought to be forfeited. Accordingly, the indictment may, but need not, also list specific assets sought to be forfeited. Simply including a general forfeiture notice, without listing particular assets subject to forfeiture, will preserve criminal forfeiture as an available option. The government may then identify the specific assets it seeks to directly forfeit in the criminal case in a bill of particulars that it files with the court at some time before entry of the preliminary order of forfeiture as to that asset.[13] The

[12] *Compare In re Grand Jury*, 607 F. Supp. 2d 273, 276–277 (D. Mass. 2009) (denying disclosure to contractor on grounds that the contractor was not the equivalent of government personnel and that particularized need had not been shown), with *In re Disclosure of Matters Occurring before a Grand Jury to Litig. Tech. Serv. Ctr.*, No. 11–00163 JMS/RLP, 2011 WL 3837277 (D. Haw. Aug. 25, 2011) (authorizing disclosure on grounds that contractor employees are equivalent of government personnel).

[13] *See United States v. Davis*, 177 F. Supp. 2d 470, 484 (E.D. Va. 2001) (holding that government may identify property item as subject to forfeiture in a bill of particulars where indictment used general language tracking the forfeiture statute); *aff'd*, 63 F. App'x. 76 (4th Cir. 2003).

forfeiture notice may, but need not, make any reference to a forfeiture money judgment or specify the particular dollar amount that the government might seek in such a money judgment.[14]

### B. Government may ask the grand jury to make a probable cause finding on the nexus between a charged offense and allegedly forfeitable property

Although the grand jury need not make a finding as to forfeiture nexus in connection with the inclusion of a standard notice of forfeiture in an indictment, the government may request the grand jury to find probable cause to believe that the requisite nexus exists between a charged offense or offenses and particular property alleged to be forfeitable. In appropriate circumstances, it can be prudent to do so.

#### B.1 Under certain circumstances, prosecutors should instruct the grand jury on forfeiture and request a probable cause nexus finding

Although neither the Constitution, the forfeiture statutes, nor the rules require the grand jury to find probable cause as to forfeiture nexus, in certain circumstances, it can make sense for prosecutors to instruct the grand jury on applicable substantive forfeiture law, to present evidence on nexus, and to request that the grand jury find probable cause that such a forfeiture nexus exists between an offense or offenses charged in the indictment and one or more particular assets sought to be directly forfeited. Such a probable cause forfeiture nexus finding can serve several useful purposes.

First, such a probable cause forfeiture nexus finding can serve as a basis for restraining directly forfeitable assets identified in the indictment. 21 U.S.C. § 853(e)(1)(A) provides for entry of a post-indictment restraining order "upon the filing of an indictment or information charging a violation… for which criminal forfeiture may be ordered…and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section." The grand jury's finding of probable cause as to both the commission of the underlying offense supporting forfeiture as well as to nexus between the offense or offenses giving rise to forfeiture and the property sought to be restrained would provide strong support for the government's follow-on motion for a post-indictment restraining order. Upon considering that motion, the district court would of course be bound to accept the grand jury's finding as to probable cause as to the commission of the offense, and it would have to accept the grand jury's finding as to nexus as at least persuasive evidence.[15] That said, in seeking the restraining order, an AUSA would still be wise to submit an agent affidavit setting forth the key facts at least as to nexus. Providing the district judge with the most robust findings of probable cause possible can help convince the district judge of the strength of the motion for a restraining order.

Second, a grand jury finding of probable cause to believe certain property is forfeitable might increase the impact that the indictment might have on third parties, including attorneys, who do business with, and receive funds from, the defendant. An indictment containing such an additional probable cause finding as to nexus would provide additional notice to such third parties of the nature and extent of

[14] *See United States v. Plaskett*, 355 F. App'x. 639, 644 (3d Cir. 2009) (indictment need not specify that the government will seek a money judgment; notice that the defendant will be required to forfeit the proceeds of his offense and that government may seek substitute assets provides sufficient notice).

[15] *See Kaley v. United States*, 570 U.S. 320, 331 n.9 (2014) (holding that when challenging the legality of funds restrained pretrial under 21 U.S.C § 853(e), a criminal defendant who has been indicted may not contest a grand jury's determination of probable cause to believe that the defendant committed the crimes charged, but indicating that a defendant may contest a grand jury's finding of probable cause as to nexus).

the defendant's alleged criminal activities. Such an indictment would thereby have a heightened effect on those third parties' ability to continue to receive potentially forfeitable property from the defendant as "bona fide purchaser[s]…reasonably without cause to believe that the property [is] subject to forfeiture." *See* 21 U.S.C. § 853(c) & (n)(6)(B); *United States v. McCorkle*, 321 F.3d 1292, 1294 n.2 (11th Cir. 2003) (attorney may lose bona fide purchaser status as to advance fee received from client "because the client is indicted and the attorney learns additional information about his client's guilt"); *see also Caplin & Drysdale v. United States*, 491 U.S. 617, 632–633 n.10 (1989) ("the only way a lawyer could be a beneficiary of § 853(n)(6)(B)['s bona fide purchaser provision] would be to fail to read the indictment of his client").

Third, in particularly challenging cases, the grand jury's probable cause finding might help insulate case agents and prosecutors from subsequent liability under *Bivens*[16] or the Hyde Amendment.[17]

In these types of circumstances, criminal AUSAs—with the assistance and guidance of their USAO's asset forfeiture AUSAs and MLARS attorneys when needed—should consider instructing the grand jury on applicable asset forfeiture law, presenting evidence as to the forfeiture nexus between pertinent offenses and assets sought to be directly forfeited, and asking the grand jury to make appropriate probable cause findings as to nexus between the relevant offenses and assets. Where the government asks the grand jury to make such a forfeiture nexus finding, the indictment should include both a forfeiture notice—at least a general one—as well as the specific nexus findings given the requirement in Federal Rule of Criminal Procedure 32.2 that an indictment seeking forfeiture include a forfeiture notice.[18]

### B.2 It is not necessary to ask the grand jury to determine the defendant's interest in forfeitable property

A separate issue is whether the prosecutor should also ask the grand jury to find probable cause to believe that "the defendant (or some combination of defendants [charged] in the case) had an interest in the property that is forfeitable under the applicable statute." *See* Federal Rule of Criminal Procedure 32.2(c)(2). Unlike the forfeiture nexus, this issue is not presented to the *trial* jury. Indeed, the court itself reaches the issue of the defendant's interest in forfeitable property in cases only where no third party claims to the property are filed. Moreover, unlike the nexus finding, which serves the various useful purposes outlined above, a finding of probable cause to believe that the defendant has an interest in particular property serves no comparable purpose in most cases. Therefore, the issue of the defendant's interest in forfeitable property need not be presented to the grand jury.

Nonetheless, in cases where the defendant has attempted to conceal an interest in property subject to forfeiture, it may be important to the grand jury's understanding of the case—and its ability to make necessary findings as to elements of charged offenses—to present evidence concerning the defendant's actual, although hidden, interest in forfeitable property.

In any event, because only property of the defendant and proceeds of crime can be forfeited in a criminal case, the prosecutor should make reasonable efforts to establish that any property alleged to be forfeitable, and particularly property sought to be restrained as forfeitable, is property of the defendant's or proceeds of crime within the meaning of the applicable forfeiture statutes, including

[16] *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

[17] Pub. L. 105-119, § 617, 111 Stat. 2440, 2519 (1997), reprinted in 18 U.S.C. § 3006A historical and statutory notes.

[18] *See* Sec. III.A in this chapter.

21 U.S.C. § 853(c), which voids purported post-crime transfers of forfeitable property other than to bona fide purchasers for value reasonably without cause to believe the property was subject to forfeiture.

### B.3 Presenting forfeiture evidence to the grand jury

Just as trial evidence relating to forfeiture is often best presented as an integral part of the government's case-in-chief, most grand jury evidence relating to forfeiture is also best presented as an integral part of the case establishing probable cause to charge the underlying criminal offenses. Prosecutors should focus their forfeiture presentation to the grand jury on (1) the facts that identify the assets with particularity and (2) the facts concerning the applicable nexus between the offense or offenses giving rise to forfeiture and the assets as to which the government seeks to have the grand jury make a nexus findings under all applicable theories of forfeiture—e.g. facts indicating that the assets constitute, or were derived from, proceeds of the offenses; that the assets were "used, or intended to be used, in any manner or part, to commit, or to facilitate the commission" of offenses permitting forfeiture of facilitating property; or that the assets constitute "property, real or personal, involved in" money laundering offenses or "property traceable to such property." *See* 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(1), 21 U.S.C. § 853(a), and 28 U.S.C. § 2461(c).

### B.4 Instructing the grand jury on forfeiture

If it is consistent with local practice to do so, prosecutors should explain to the grand jury preliminarily that

- forfeiture is not a substantive offense, or an element of an offense, but rather a required part of the punishment imposed upon conviction for certain criminal offenses;
- the forfeiture allegations in the proposed indictment will put the defendant on notice that the government is seeking to forfeit certain property, or types of property, upon the defendant's conviction; and
- the government will seek to forfeit substitute assets of the defendant if some act or omission of the defendant makes the directly forfeitable property unavailable.[19]

When presenting a proposed indictment that asks the grand jury to make a probable cause finding as to forfeiture nexus, the AUSA should instruct the grand jury as to the type or types of nexus that must be found to exist between the charged offenses and the assets alleged to be forfeitable and present evidence as to such nexus.

[19] Some districts have found it useful to cover these points in an introductory presentation to the grand jury outlining forfeiture law and procedures, as part of the grand jury's orientation during the first few weeks after a new grand jury is empaneled. This can be done by the district's forfeiture AUSA, who is in the best position to cover these issues and to address the grand jurors' questions. The orientation session also provides the prosecutor with the opportunity to explain to the grand jury that forfeiting the defendant's interest in a piece of property does not end the matter, but that an ancillary proceeding is held after a preliminary order of forfeiture is entered to allow third parties who claim to have an interest in the property to petition the court to establish that interest. Although that issue is of no direct concern to the grand jurors in their deliberations, it is helpful that they understand that the government is not seeking to forfeit the property of owners with superior interests to that of the defendant or property belonging to bona fide purchasers of the property who did not have reason to know it was subject to forfeiture.

Finally, if the grand jurors have no questions about the forfeiture instructions, the prosecutor should ask the grand jury, during its process of considering the entire indictment, to find probable cause to believe that the listed assets have the required nexus to the specified charged offenses.

### B.5 Memorializing and describing the grand jury's probable cause finding

As explained in Section III.B.1 in this chapter, in certain circumstances, it is prudent to have the indictment contain not only a forfeiture notice but an explicit probable cause finding as to forfeiture nexus as well.

To make the grand jury's nexus probable cause finding easily recognizable—which is helpful if the government seeks to reference that finding when seeking and defending a pretrial restraints as described in Section III.B.3 in this chapter—such probable cause nexus findings should be set forth in a separate section of the indictment, following the forfeiture notice, titled "Findings as to Forfeiture Nexus."

The grand jury's probable cause findings as to nexus should also be stated explicitly in the text of the indictment:

> The grand jury further finds probable cause to believe that upon conviction of the offense(s) in violation of ________________ set forth in Count(s) ______ of this Indictment/Information, the defendant(s) [*NAME(s)*] shall forfeit to the United States of America as [*describe nexus—for example, as property constituting, or were derived from, proceeds of that offense*], pursuant to ____ U.S.C. § _________ all [*insert statutory language*], including, without limitation: $ _________ . ___ in United States currency seized from an account ending in digits ______ and held in the name of [*NAME(s)*]; [*other particular assets*].

Using this language in which the grand jury expressly finds nexus, in a clearly captioned portion of the indictment separate from the forfeiture notice, will help establish that the grand jury did in fact make the specific probable cause nexus findings.

# Chapter 7:
# Litigation Issues: Legal and Ethical

## I. Negotiating with Fugitives

### A. Summary

Absent compelling circumstances, prosecutors should not negotiate with fugitives. Before undertaking such negotiations, prosecutors should exhaust all potentially viable pretrial motions, such as any possible fugitive disentitlement motion. In many instances, the policy considerations for declining to negotiate with fugitives will outweigh the potential benefit to an individual civil forfeiture case. Only in instances where other considerations (e.g. the cost of maintaining the asset subject to forfeiture) militate towards negotiating a settlement should prosecutors entertain fugitive negotiations. In such circumstances the prosecutor handling the negotiations should consult closely with the prosecutor handling the parallel criminal case. It is important to note that in the event a defendant made an appearance prior to taking flight, the proceeding (including sentencing and criminal forfeiture) may continue because the defendant has voluntarily chosen to be absent from an in personam proceeding.[1]

### B. Discussion

Periodically, a situation arises where an individual has been indicted, becomes a fugitive, and seeks to challenge or negotiate with the government regarding a civil forfeiture case. Prior to the enactment of the Civil Asset Forfeiture Reform Act of 2000 (CAFRA),[2] a fugitive in a related criminal case was not barred from opposing the civil forfeiture of property.[3] CAFRA reinstated the fugitive disentitlement doctrine with the passage of 28 U.S.C. § 2466, which permits a court to: "disallow a person from using the resources of the courts of the United States in furtherance of a claim in any related civil forfeiture action or a claim in third party proceedings in any related criminal forfeiture action," if certain conditions are met.[4]

If a court agrees to apply the fugitive disentitlement doctrine, the government should be able to obtain a default judgment, at least as to the fugitive's interest, in most cases. Thus, there would be no reason to negotiate with a party who is barred from challenging a forfeiture, and negotiation is thus discouraged in that circumstance.

---

1 Federal Rule of Criminal Procedure 43(c).

2 Pub. L. 106-185, Apr. 25, 2000, 114 Stat. 202.

3 *See Degen v. United States*, 517 U.S. 820 (1996) (fugitive disentitlement doctrine cannot be created by case law); *United States v. Funds ex rel. Wetterer*, 17 F. Supp. 2d 161 (E.D.N.Y. 1998) (because of *Degen*, claimant that is alter ego of fugitive may file claim challenging forfeiture of bank account held by perpetrator of mail fraud/child sex abuse scheme who is resisting extradition in Guatemala); *United States v. 1988 Chevrolet Cheyenne Half-ton Pickup Truck*, 357 F. Supp. 2d 1321 (S.D. Ala. 2005) (tracing the history of the fugitive disentitlement doctrine and discussing the impact of *Degen*).

4 *See Collazos v. United States*, 368 F.3d 190 (2d Cir. 2004) (section 2466 is Congress's response to the Supreme Court's decision in *Degen*; it does not violate claimant's constitutional right to due process); *United States v. 1988 Chevrolet Cheyenne Half-ton Pickup Truck*, 357 F. Supp. 2d 1321, 1326 (S.D. Ala. 2005) (section 2466 is a "forceful legislative response" to the void created by *Degen*).

Even in cases where a court may decline to apply the fugitive disentitlement doctrine, the government may be able to prevail on a pretrial motion.[5] For example, fugitives often will decline to appear for deposition or otherwise participate in discovery. Federal Rule of Civil Procedure 37(b)(2) allows the court to order a party to comply with a discovery request and if the party fails to comply, the court can impose sanctions that include

(1) an order that certain facts shall be taken as established;

(2) an order refusing to allow the disobedient party to support or oppose designated claims or defenses or introduce matters in evidence; and

(3) rendering judgment by default against the disobedient party.

Where pretrial motions are not viable or are unsuccessful, prosecutors should pursue negotiations with fugitives only as a last resort. As a general matter, it is rarely in the government's interest to negotiate with fugitives.[6] Prosecutors should be sensitive to these considerations and not take any actions that may undermine the policy considerations noted in *In re Grand Jury Subpoenas*, 179 F. Supp. 2d 270, 277 (S.D.N.Y. 2001), and should in all circumstances coordinate closely with prosecutors handling the parallel criminal case.

In the exceptional case where negotiations with a fugitive are appropriate, prosecutors should limit the factors that influence the conduct of the negotiations. It is legitimate to take into account either the government's litigation risk at trial or the expenses that the government may incur in maintaining an asset if the case would otherwise be delayed indefinitely. For example, if the forfeiture involves tangible property that is incurring storage expenses or property having a lien that is continuing to accrue interest and erode the equity, it may be in the government's financial interest to resolve the forfeiture matter quickly. If a court declined to invoke the fugitive disentitlement doctrine, negotiation may be necessary in order to resolve the matter. But in no circumstances should a prosecutor agree to exchange assets for a defendant's agreement to surrender and face criminal charges.

## II. Criminal Forfeiture and *Brady* Obligations

In criminal forfeiture matters, the government has not only an ethical but also a legal duty to disclose information favorable to the defendant as to either guilt or punishment. *See Brady v. Maryland*, 373 U.S. 83 (1963) ("suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution").[7] Forfeiture is an element of the sentence, and thus forms part of the punishment imposed on the defendant. *See Libretti v. United*

[5] *United States v. 1988 Chevrolet Cheyenne Half-ton Pickup Truck*, 357 F. Supp. 2d 1321, 1326 (S.D. Ala. 2005) (section 2466 "'does not mandate the court to disallow the claimant,' but rather confers upon the Court discretion to determine whether or not disentitlement is warranted.").

[6] *See In re Grand Jury Subpoenas*, 179 F. Supp. 2d 270, 277 (S.D.N.Y. 2001) (noting the Southern District of New York U.S. Attorney's Office's (USAO) response in the Rich case that "it is our firm policy not to negotiate dispositions of criminal charges with fugitives. Such negotiations would give defendants an incentive to flee, and from the Government's perspective, would provide defendants with the inappropriate leverage and luxury of remaining absent unless and until the Government agrees to their terms.").

[7] *United States v. Agurs*, 427 U.S. 97, 110–111 (1976) (extended the rule announced in *Brady* to apply to evidence that "is obviously of such substantial value to the defense that elementary fairness requires it to be disclosed even without a specific request").

*States*, 516 U.S. 29, 38–39 (1995). Accordingly, *Brady* requires the government, even absent a request by the defendant, to disclose evidence favorable to the defendant that relates to criminal forfeiture.

## III. Fifth Amendment Advisements in Civil Forfeiture Cases

The procedural safeguards established by the Supreme Court in *Miranda v. Arizona*, 384 U.S. 436 (1966), protect persons' Fifth Amendment rights to not be compelled in a criminal case to be a witness against themselves. In *Miranda*, the Supreme Court's primary concern was the coercive atmosphere surrounding a person in custody who is subject to interrogation by the police. *Id*. at 457–458. Because these conditions typically are not present in the context of a deposition of a witness or claimant in a civil forfeiture case, the Constitution does not require prosecutors to warn the witness of the right against self-incrimination prior to questioning in a civil deposition. *See United States v. Solano-Godines*, 120 F.3d 957 (9th Cir. 1997) (*Miranda* warnings are not required before questioning in a civil deposition hearing). Consequently, statements, including those which might be self-incriminating, made in the course of a deposition in a civil forfeiture case are admissible in the proceeding even in the absence of *Miranda* warnings because deposition proceedings are civil in nature, not criminal prosecutions.

Nonetheless, in civil forfeiture cases where the deponent is known to the government to be a target or subject of a parallel criminal investigation or prosecution, government attorneys may wish to consider either deferring the deposition, or taking the deposition but giving an advisement that draws elements from those advice of rights that prosecutors routinely give targets and subjects in federal grand jury practice.

For example, before taking the deposition in a civil forfeiture case of an unrepresented claimant or witness who is a target of a parallel criminal investigation, the advisement may state simply that

> You are advised that you are a target of a parallel federal criminal investigation.[8] You may refuse to answer any question in this proceeding if a truthful answer to the question would tend to incriminate you. Anything that you do or say may be used against you in this proceeding, in a criminal proceeding, or in any other subsequent legal proceeding.

Include if applicable:

> If you are represented by appointed counsel in a related criminal case, you have a right to ask the court to appoint counsel for you in this proceeding.

Or:

> If you are using the real property which this case seeks to forfeit as your primary residence, you have a right to ask the court to appoint counsel for you in this proceeding provided you show that you are financially unable to obtain counsel.

In contrast, before taking the deposition of a deponent who is a target, and who is represented, the advisement may simply state that "you are advised that you are a target of a parallel criminal investigation."

[8] Where the civil forfeiture is being litigated by an attorney other than the criminal prosecutor, the forfeiture attorney may not be authorized to disclose the existence of the criminal investigation to the deponent. At the same time, the attorney's duty of candor may preclude them from denying the existence of an ongoing criminal investigation if asked by the deponent or deponent's counsel. In those instances, it is still the better course to advise the deponent of their Fifth Amendment rights but to do so without confirming or denying the existence of a criminal investigation.

The suggestion that a government attorney may want to give an advisement to a deponent in certain civil forfeiture cases rests on several considerations. In grand jury practice, Department of Justice (Department) policy requires prosecutors to give criminal targets and subjects Fifth Amendment advisements in a target letter and repeat those advisements on the record before the grand jury. *See* Justice Manual (JM) § 9-11.151.[9] In the case of targets, the Department's policy goes further. Prosecutors must advise targets that they are a target of a criminal investigation. These policies exist notwithstanding the lack of a clear constitutional imperative requiring prosecutors to give any advisements to targets or subjects in the context of grand jury practice. *See* JM § 9-11.151. While there is no constitutional right to an attorney in a civil forfeiture proceeding, certain indigent claimants may have a statutory right to counsel. The court may authorize counsel for an indigent claimant with standing to contest the forfeiture who is represented by court-appointed counsel in a related criminal case. *See* 18 U.S.C. § 983(b)(1)(A). And, upon the request of an indigent party in a civil forfeiture action brought by the government to forfeit the person's primary residence, the court shall ensure that the person is represented by an attorney. *See* § 983(b)(2)(A). An advisement also enhances the likelihood that if the testimony is offered in a criminal prosecution, it will be admitted. Finally, the advisement helps rebut claimants' subsequent arguments that they were not aware of the Fifth Amendment right, or in the case of certain indigent claimants, that they were not aware that they may have the right to counsel in the civil forfeiture case. *See* § 983(b); *see also* 18 U.S.C. § 981(g)(2) (authorizing a claimant to move to stay a civil forfeiture proceeding based on Fifth Amendment concerns).[10]

## IV. Preservation Policy for Civil Forfeiture

### A. Legal obligation

There is a legal duty to preserve potentially relevant evidence once a party reasonably anticipates litigation, whether the government is the plaintiff or defendant. See *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003); Federal Rule of Civil Procedure 37 Advisory Committee Note, 2006 Amendment Subdivision (f). Although a litigation hold is the primary method of preservation, reasonableness and good faith are the ultimate standards by which an alleged breach of the duty to preserve is judged. A breach of the duty to preserve may be the basis for discovery sanctions if the government fails to produce relevant electronically stored information (ESI) or tangible items.

Preservation should be distinguished from production under the Federal Rules of Civil Procedure that govern discovery and from admissibility under the Federal Rules of Evidence. The fact that information may be work product, otherwise privileged, or inadmissible does not obviate the duty to preserve. The fact that information is preserved does not necessarily mean it will be produced. The practical guidance below applies equally to Department attorneys, including Assistant U.S. Attorneys (AUSAs), and investigative agency counsel. The guidance does not apply to attorneys at independent agencies. Mentions of "the Department" or "a Department attorney" do not refer to investigative agency counsel, regardless of that fact that investigative agencies like the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Drug Enforcement Administration (DEA), and Federal Bureau of Investigation (FBI) and their attorneys fall under the Department's umbrella. Thus, there is

[9] *See* Justice Manual (JM).

[10] Because state ethics rules vary on this issue, federal prosecutors should be aware of the applicable ethics policy in both the district where they practice and the district where they are licensed if those districts are not the same.

a distinction drawn between "the Department" and "agencies" or "agency counsel" for the purposes of this policy.

Except where this policy clearly addresses the particularities of a situation where a Department attorney is assigned to a case and initiates the call for a litigation hold, agency counsel may still wish to take note of the practical guidance in Sections IV.A–D in this chapter, in the event that they enact a litigation hold in the administrative context, to the extent that it does not contradict internal agency procedure relating to litigation holds.

### B. Litigation holds

The obligation to preserve evidence arises when a party has notice that evidence is relevant to litigation or when a party reasonably anticipates litigation and foresees that the evidence may be relevant to that future litigation. When a Department attorney assigned to a case determines that an event triggers the obligation, the attorney should advise participating agency counsel to implement a litigation hold. In administrative forfeiture cases, relevant agency counsel should determine whether a litigation hold is necessary and appropriate and follow the guidance below as applicable.

#### B.1 Seizure or restraint of non-administratively forfeitable assets

Where a case has been assigned to a Department attorney, the attorney should advise the relevant agency or agencies to enact a litigation hold no later than the time at which a seizure warrant is obtained for property that, by statute, may not be administratively forfeited or for which the seizing agency lacks administrative forfeiture authority.

#### B.2 Claimant action

Where a case has been assigned to a Department attorney, the attorney should advise the relevant agency or agencies to enact a litigation hold no later than upon service or actual notice, whichever is earlier, of the filing of a complaint or other pleading by a claimant; or, upon receipt of a motion for return of property or notice of other action regarding seized or forfeited property.

#### B.3 Reasonable certainty

Where a case has been assigned to a Department attorney, the attorney should advise the relevant agency or agencies to enact a litigation hold no later than when the attorney has received a referral to file a judicial forfeiture action, the time when it is reasonably certain that the Department will indeed file a complaint or a motion for extension of time to file a complaint (as opposed to declining the matter or pursuing criminal forfeiture instead).

#### B.4 Special circumstances

Where a case has been assigned to a Department attorney, the attorney should advise the relevant agency or agencies to enact a litigation hold no later than when the attorney advises, if the attorney determines that special circumstances exist, that warrant the immediate preservation of relevant information.

## C. Information subject to preservation

### C.1  Scope

The scope of the litigation hold defines what information is relevant and defines the sources (physical locations) of such documents, tangible items, and ESI. Relevant information is anything that the government knows, or reasonably should know, relates to the foreseeable claims or defenses of any party or is likely to lead to the discovery of relevant information. There is no duty to retain every piece of paper. The Department attorney should determine relevance in consultation with the custodians of information, who, in an asset forfeiture matter, include persons at agencies in possession of the relevant case files. Scope is a fact-specific inquiry, the parameters of which should be explained in detail by the Department attorney on a case-by-case basis. The initial decision to preserve and the subsequent mechanisms chosen to fulfill the obligation should be guided by reasonableness and proportionality.

Relevant information should be preserved as it is kept in the usual course of business. Duplicates do not need to be retained. ESI should be maintained in native format. Any agency advised to implement a litigation hold should ensure that all materials designated by the Department attorney as within the scope of the hold are, in fact, retained, and retained in the form specified.

### C.2  Relevant time frame

All relevant information in existence at the time when the duty to preserve attaches should be retained, as well as relevant information created thereafter, until the Department attorney or agency counsel advises otherwise. The starting point for information that should be captured by the litigation hold is no later than either the date the investigation began or the date of the relevant seizure.

The point at which information will no longer require preservation under the litigation hold is no earlier than

- the date when the forfeiture decision is final and non-appealable;

- the date upon which the time for filing an appeal or petition for a writ of certiorari expires; or,

- another date as the Department attorney or agency counsel advises.

## D. Litigation hold notice

### D.1  Who issues litigation hold

The Department attorney or agency counsel advises the relevant agency or agencies to implement the litigation hold. The Department attorney should be responsible for (1) preserving documents created or received by that attorney, (2) guiding other members of the office, and (3) advising and monitoring preservation efforts at the agency or agencies.

The practical duty of preservation remains on agency staff, except as it relates to documents within the possession of the Department. Proper execution of the duty to preserve includes consulting with information technology (IT) personnel, guiding the individual custodians of information, and

following the instructions in the litigation hold notice as provided by the Department attorney or agency counsel.

### D.2   Who receives litigation hold

Each agency is responsible for identifying key custodians who coordinate litigation holds. Key custodians should receive the litigation hold notice from their preservation point persons at the agencies. These custodians may include, non-exclusively, counsel's office attorneys assigned to the case, case agents, and any other players who may have produced or received information relevant to the case. The list of key custodians may be amended, and the hold notice should be sent to new persons as needed. The Department attorney should be notified of all key custodians and any changes to that list made by the agency preservation point persons.

The Department attorney and agency preservation point person should take particular care that the relevant documents and information are retained when key custodians leave their respective agencies or are reassigned. New employees should be apprised of existing litigation holds relevant to their assignments when they assume their positions.

### D.3   Multiple agency situations

When more than one investigative agency works on a particular case—whether in a task force setting, through informal coordination, or under seizures from state and local agencies—the Department attorney should consult with the lead agency to ascertain which entities, exactly, participated in the investigation. The Department attorney should inquire as to which other agencies may be involved and communicate with the designated preservation point persons at all additional participating agencies. The lead agency point persons should provide the Department attorney with the contact information of the preservation point persons at the other agencies involved in the case no later than the date specified by the Department attorney so that attorney can determine the scope of the hold and send the litigation hold notice to the lead and all other participating agencies.

### D.4   Litigation hold format

Best practice entails a *written* litigation hold (urgent email is the preferred method) to the point person in the agency or agency counsel. The Department attorney should attach a written (electronic) agreement to comply along with the litigation hold notice and require an affirmative response from all recipients by a certain date. In a multiple agency situation, all litigation hold recipients should be able to view the entire list of addressees or otherwise provide means for determining if all relevant parties have been included. This access enables the recipients to identify an agency that may have relevant information in its files but was erroneously overlooked in the Department attorney's initial email advising the agency or agencies to implement a litigation hold.

### D.5   Litigation hold content

Where feasible, the litigation hold notice should contain:

(1)  names of any foreseeable parties in the anticipated litigation;

(2)  time frame during which relevant information has been or will be created;

(3) affirmative directions to preserve information and prohibitions on destruction/deletion;

(4) instructions to initially separate information believed to be privileged from other preserved information;

(5) expectations for compliance, consequences of non-compliance, and method of monitoring compliance;

(6) instructions on how to proceed when the recipient believes the hold inadvertently excludes relevant information, sources of data, or entities likely to possess information;

(7) an agreement to comply with the hold, to be signed and returned by a certain date;

(8) a summary of the claims, defenses, or issues raised by the anticipated litigation and/or trigger;

(9) scope of the hold and any limitations on it;

(10) mechanisms for the collection of preserved ESI, tangible items, and documents;

(11) any technological aspects of IT systems that could help/hinder preservation;

(12) procedure for how the hold may be expanded, diminished, and terminated; and

(13) contact information of the advising attorney.

### D.6  Ongoing duty

The Department attorney who advises an agency to issue a litigation hold should

(1) keep a log of all steps taken to initiate and maintain a litigation hold, including a record of communication with agency point persons and a concise statement of the reason any significant decision on preservation was made;

(2) periodically review the litigation hold to determine whether to maintain, diminish, or expand its scope in light of the evolving claims, defenses, and issues in the case;

(3) document changes made to the scope of the litigation hold or list of key custodians;

(4) periodically review compliance with the hold, in consultation with the preservation point person at the agency (agencies);

(5) send a reminder notice, electronically, to all recipients of the litigation hold notice, including agency preservation point persons, every 90–120 days unless other suitable arrangements have been made to ensure compliance;

(6) promptly notify, electronically, all recipients of any modifications to the scope of the hold; and

(7) notify agency counsel when the hold may be lifted.

### D.7   Removing a litigation hold

The advising Department attorney should not make the decision to lift a litigation hold until after the time for filing direct appeals in the case (and related or ancillary proceedings) or a petition for a writ of certiorari has passed. If a Department attorney was never assigned to the case but agency counsel issued a litigation hold independently, the hold may be removed when the time for a claimant to file a claim contesting the forfeiture has passed. The Department attorney or agency counsel should electronically notify all recipients of the litigation hold notice that the need for the hold has ended and that they may cease preserving information related to the case.

# Chapter 8:
# International Forfeiture

## I.   Forfeiture of Assets Located Abroad under U.S. Law

Federal law enforcement should include in its priorities the pursuit and recovery of forfeitable assets beyond the borders of the United States. Federal investigators and prosecutors who seek to restrain and forfeit illicit assets located abroad should contact and seek the advice of the Money Laundering and Asset Recovery Section (MLARS) and the Office of International Affairs (OIA). They should do so as soon as foreign assets are identified as potentially subject to restraint for purposes of forfeiture under U.S. law. The extent and speed of forfeiture assistance afforded by the foreign nation in which the assets are located may vary greatly depending upon the applicable treaty obligations and laws of the foreign nation. Moreover, international requests for legal assistance occasionally may implicate issues of diplomatic sensitivity or require coordination with other related investigations, domestic or foreign. MLARS, in conjunction with OIA, will help guide Assistant U.S. Attorneys (AUSAs) and agents through this often complicated, but fruitful, process. MLARS will also provide informal assistance to AUSAs upon request.

## II.   Forfeiture of Assets Located in the United States under Foreign Law

The Department of Justice (Department) assigns high priority to requests by foreign countries for assistance in restraining, forfeiting, and repatriating assets found in the United States that are forfeitable under foreign law. Additionally, it is important for the United States to act affirmatively on these incoming requests so that it is not wrongly perceived as becoming a safe haven for proceeds of foreign crime and other property forfeitable under foreign law. MLARS executes incoming requests for forfeiture assistance under 28 U.S.C. § 2467 in consultation and coordination with OIA. In some circumstances, it may be necessary for MLARS to file a civil forfeiture action under 18 U.S.C. § 981(a) against an asset to assist a foreign government's forfeiture efforts. MLARS will work with the established forfeiture contact(s) in each district where forfeitable assets are located to accommodate the legal assistance needs of the requesting jurisdiction.

## III.   Policy on International Contacts

The Department, by long-standing policy, has required that all incoming and outgoing international contacts by or with AUSAs regarding criminal justice matters be coordinated with and through OIA. OIA is the designated entity through which the United States must make all formal requests for legal assistance to foreign governments. Federal prosecutors must adhere to established procedures for international contacts and should not contact foreign officials directly on case-related matters unless such contacts have been approved by, are under the supervision of, or are in consultation with OIA. This includes contacting foreign citizens and entities to provide direct notice of forfeiture actions. Where foreign law and practice permits, OIA will allow prosecutors to have direct contact with foreign officials provided OIA is copied on, or informed about, all of the relevant communications. Federal investigators and prosecutors should consult with OIA regarding the official policy on contact with foreign officials.

In addition to regulating formal contacts between U.S. prosecutors and foreign officials, MLARS and OIA encourage the legal exchange of law enforcement information via the appropriate law

enforcement liaison offers and Department attachés stationed in the United States and abroad whenever this is operationally feasible. Prosecutors and agents should also use secure law enforcement networks to obtain or share information relevant to forfeiture efforts. For example, the United States is a member of the Camden Assets Recovery Inter-Agency Network (CARIN), an international asset forfeiture practitioners' network of 56 jurisdictions comprised of one law enforcement representative and one judicial (prosecutor) representative, which includes access to an additional 50 satellite jurisdictions participating in CARIN-style regional bodies in the Caribbean, Latin America, Africa, and the Asia-Pacific region. MLARS is the prosecutor contact and the United States Marshals Service (USMS) is the law enforcement contact for the United States. CARIN points of contact can provide investigatory assistance and legal advice to support ongoing US forfeiture efforts before statutory or treaty-based assistance is invoked. The USMS Asset Forfeiture International Unit can process outgoing CARIN requests for U.S. prosecutors and agents. Other channels include the Egmont Group channel[1] via the Financial Crimes Enforcement Network (FinCEN), which permits the exchange of financial intelligence and inquiries through Egmont Group's rules of engagement. MLARS can assist in understanding what information is available and in making such requests.

## IV. Foreign Property Management Issues

Tangible assets located abroad may present unique property management issues. Federal prosecutors and investigators should keep in mind that, although many countries are willing to restrain or seize assets in support of U.S. forfeiture efforts, some of them lack the resources, experience, or legal authority for adequate management of the seized or restrained property pending resolution of the U.S. forfeiture proceeding. Thus, extensive seizure or restraint planning may be required for certain property located abroad, which is likely to require affirmative post-seizure or post-restraint preservation or management. Foreign governments may be willing to assume responsibility for preserving assets, or they may ask the United States to do so, and the United States or the foreign government may need to hire, or legally appoint, guardians, monitors, trustees or managers for certain assets. Prosecutors should be aware that the costs of storing, maintaining, and disposing of certain assets, particularly depreciating assets such as vehicles, vessels, or aircraft, located in a foreign country may, in many instances, exceed the value of the asset itself.

When faced with the seizure of tangible assets abroad that may require affirmative management, a federal prosecutor or investigator should promptly contact the U.S. Marshals Service (USMS) Asset Forfeiture International Unit and MLARS. In cases in which the lead law enforcement agency is a Department of the Treasury (Treasury) or Department of Homeland Security (DHS) agency, the federal prosecutor or investigator should contact the Treasury Executive Office for Asset Forfeiture (TEOAF). Prosecutors must consult MLARS before the United States asks a foreign government to restrain or seize an ongoing business or its assets or to appoint or hire a guardian, monitor, trustee, or manager for same.[2]

Finally, in order to accurately track assets restrained abroad, it is important to create a "Frozen, Indicted, Restrained, Encumbered (FIRE) asset" entry in the Consolidated Asset Tracking System (CATS) before requesting restraint of assets abroad. In cases in which the lead law enforcement agency is a Treasury or DHS agency and the asset is tracked in the applicable Treasury or DHS asset

1 Contact MLARS for additional guidance.

2 For more information, *see* Chap. 1, Sec. I.D.4 in this *Manual*, which discusses the business consultation requirement for domestic seizures, and Chap. 9 in this *Manual*, which discusses consultation for trustees or monitors.

tracking system, the federal prosecutor or investigator should nonetheless ensure that a parallel FIRE asset entry is created in CATS.

## V. Publication of Notice Abroad

In both civil and criminal forfeiture proceedings, the United States is required to provide notice by publication; this may occur on forfeiture.gov, the federal government's forfeiture site.[3] Publishing notice online provides more effective (and cost-efficient) notice than newspaper publication because the notice is available 24 hours a day, reachable worldwide by anyone with internet access, and searchable by use of search terms. Therefore, in the absence of a compelling reason to use print publication, online publication should be considered as the norm and print publication as the exception.

Published notices on forfeiture.gov are limited to English at this time. However, depending on the facts of the case, it may be appropriate to publish notice in a newspaper of general circulation in the country in which the assets are restrained or seized, or via legal notices, in the appropriate foreign language, in the country in which known potential claimants are located. Publication abroad should be requested in the same manner and format that complies with the requirements of domestic publication in the United States and, as much as is possible, in the manner requested by the foreign government providing assistance with the publication. Some foreign governments will assist with publication, while other governments require the United States to make its own arrangements. In many instances, U.S. law enforcement officers or Department attachés stationed in foreign countries will arrange for publication. Some foreign governments will not assist the United States with publication but still require that the United States obtain governmental permission before publishing in their jurisdictions. Other countries insist that there be no publication at all within their borders. Where foreign publication does occur, the United States typically pays the costs of publication. Prosecutors and investigators should consult MLARS to ascertain the foreign government's preferences regarding publication of notice within its borders before attempting publication in the country.

## VI. Consultation with Money Laundering and Asset Recovery Section (MLARS) or Office of International Affairs (OIA) when Seeking Repatriation of Forfeitable Assets Located Abroad

In cases where a foreign government has restrained or seized assets based upon the formal request of the United States, the prosecutor and investigators must consult MLARS and the OIA attorney handling the case before seeking repatriation of restrained or seized assets. MLARS, in consultation with OIA, is usually aware of foreign legal constraints on repatriation of forfeitable assets as well as any sensitivity against repatriation on the part of the foreign government, and therefore must be consulted before taking any action to repatriate such frozen assets. Repatriation of frozen assets also generally requires that any foreign restraint or seizure order be lifted or modified, as needed, which can only be done with the consent of and action by the appropriate foreign country. In some cases, resolution of the U.S. forfeiture action may not alone be sufficient cause for lifting the foreign restraint; for example, the seizure or restraint may remain in place pending the outcome of a related prosecution in jurisdictions having mandatory prosecution laws. *See* Section XI in this chapter.

[3] *See* Rule G(4) of the Supplemental Rules for Admiralty or Maritime Claims (Supplemental Rules) and Asset Forfeiture Actions and Federal Rule of Criminal Procedure 32.2(b)(6).

Further, before seeking an order compelling the repatriation of specific assets pursuant to 21 U.S.C. § 853(e)(4), federal prosecutors and investigators should always consult with MLARS or OIA before negotiating or ratifying an agreement with a defendant to repatriate criminally derived assets from abroad, even as to property that is not seized or restrained by the foreign government. First, the property in question may be subject to domestic proceedings in the foreign jurisdiction. Second, certain countries deem another government's efforts to repatriate assets located in their jurisdictions to constitute a violation of their sovereignty, and in rare instances, these nations may deem any person who instigates or is involved in the effort to repatriate to be involved in committing a criminal offense, such as money laundering. Similarly, many countries may not object to a negotiated voluntary repatriation of assets and allow such transfers to occur pursuant to a plea agreement or settlement, but often object to court-ordered, non-voluntary repatriations because they regard the repatriation order as a "coercive measure" that violates the property owner's civil rights under their domestic law. Other countries take the position that a failure to inform them of forfeitable assets located in their jurisdiction is a violation of applicable treaty obligations. Finally, in matters in which the United States previously has asked a foreign government to restrain an asset, a voluntary repatriation by the defendant will obviously require the lifting or modification of the foreign restraint of seizure, which, although legally permissible, may subject the foreign nation to unintended legal liabilities under its law, such as attorneys' fees.

## VII. Probable Cause Finding to Seize or Restrain Assets Abroad

In *Kim v. Dep't of Justice,* No. 053155 ABC (FMOx) (C.D. Cal. July 11, 2005),[4] a federal district court held that the United States must demonstrate probable cause of forfeitability of the subject assets located abroad before requesting another country to seize or restrain the assets. As a result, MLARS and OIA, in the exercise of caution and solely as a matter of policy, and without conceding that *Kim* is properly decided, advise prosecutors seeking the seizure or restraint of property located abroad to first obtain a probable cause finding from a U.S. court regarding the forfeitability of the property in question before asking OIA to make the request.[5] As discussed below, there are a number of ways to obtain such a probable cause finding.[6] Again, nothing in this section is intended to suggest or concede that such a probable cause finding is necessary, and the discussion reflects only a matter of policy.

### A. Criminal forfeiture cases

In a criminal forfeiture case, there are at least three options for obtaining a probable cause determination regarding forfeitability:

(1) naming the foreign-based asset in the forfeiture allegation in the indictment and requesting the grand jury to find probable cause for forfeiture;

(2) obtaining a restraining order; and

[4] Unpublished. *See also Colello v. U.S. Sec. Exch. Comm'n*, 908 F. Supp. 738 (C.D. Cal. 1995), on which the *Kim* court heavily relied.

[5] Under rare circumstances, OIA may authorize a prosecutor to move forward with a treaty request to seize or restrain assets abroad without the prosecutor first obtaining a finding of probable cause.

[6] OIA will consider making a formal request without a probable cause determination where the assets located in a foreign state are held by a person "with no voluntary attachment to the United States," rendering the Fourth Amendment inapplicable. See *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990). If the facts support this conclusion, the prosecutor should discuss this possibility with OIA.

(3) obtaining a criminal seizure warrant.

### A.1   Indictment

If a pending indictment contains a criminal forfeiture allegation relating to property located abroad, and the grand jury has made a nexus finding of probable cause to believe that the *specific property* located abroad is subject to forfeiture, the indictment itself will serve as the necessary probable cause finding for purposes of the Mutual Legal Assistance Treaty (MLAT) request.[7]

### A.2   Restraining order

Once the indictment is returned, the United States may obtain a post-indictment ex parte restraining order pursuant to 21 U.S.C. § 853(e).[8] Such a restraining order requires a finding of probable cause; therefore, the issuance of the restraining order will provide the necessary probable cause determination so long as the asset located abroad is specifically identified in the restraining order.

The restraining order may be obtained in either of two ways. First, if the property is specifically listed in the indictment and the grand jury actually finds probable cause for the forfeiture allegation, most courts hold that the grand jury's finding of probable cause is alone sufficient to support the issuance of a restraining order without further submission by the United States.[9] However, it should not be necessary to obtain such an order solely for purposes of complying with the Department's policy where the property located in the foreign nation is listed in the indictment and the grand jury specifically found probable cause for forfeiture of the property. Moreover, property that was not specifically listed in the forfeiture allegation of the indictment but is later identified as subject to forfeiture in a bill of particulars, will meet the requirements of the Department's policy if the United States supports its application for modification of the restraining order to include the overseas property with a probable cause affidavit regarding the property.

The statutory authority for a restraining order under 21 U.S.C. § 853(e) is broad and includes authority to direct a defendant to repatriate property subject to forfeiture. *See* 21 U.S.C. § 853(e)(4). As noted, MLARS should be consulted prior to seeking issuance of such an order.

### A.3   Criminal seizure warrant

The legal authority for the issuance of a criminal seizure warrant against foreign-based property is not explicit: 21 U.S.C. § 853(f) authorizes an AUSA to obtain a seizure warrant from the court in the same manner as a search warrant under Federal Rule of Criminal Procedure 41, and § 853(l) provides that a federal court has "jurisdiction to enter orders as provided in this section *without regard to the location of any property which may be subject to forfeiture*" (emphasis added). Also, § 853(f), which governs issuance of criminal seizure warrants, is not as broad as the corresponding authority for civil seizure warrants under 18 U.S.C. § 981(b). Section 853(f) provides that criminal seizure warrants may

---

[7]   A general or "generic" description of assets, such as "all property of the defendant located in Switzerland" will probably not satisfy the particularity requirement for probable cause under the Fourth Amendment.

[8]   21 U.S.C. § 853(e) also provides for ex parte temporary restraining orders of short duration and pre-indictment restraining orders upon notice and an opportunity for a hearing. Prosecutors may want to discuss these options with MLARS in the context of the facts of their case.

[9]   *See United States v. Jamieson,* 427 F.3d 394, 405–406 (6th Cir. 2005) (initial issuance of restraining order may be based on the grand jury's finding of probable cause); *United States v. Bollin,* 264 F.3d 391, 421 (4th Cir. 2001) (grand jury's finding of probable cause is sufficient to satisfy the government's burden).

be obtained only if it appears that a restraining order would be inadequate to preserve the availability of the property for forfeiture. Use of criminal restraining orders rather than criminal seizure warrants also would not raise whether a U.S. district court has the authority to issue an extraterritorial seizure warrant pursuant to Rule 41(b) beyond the express authorization to issue warrants for foreign-based property in domestic and international terrorism investigations under Rule 41(b)(3).[10] However, in executing U.S. requests for assistance, foreign governments often obtain orders under foreign law rather than directly enforce a seizure warrant or restraining order issued by a U.S. court. Thus, a foreign nation's determination to secure property under foreign law seldom turns on whether the United States obtained a seizure warrant versus a restraining order, and the United States may be unable to meet the requirement under Rule 41 to show that a restraining order pursuant to § 853(e) would not be sufficient to preserve the property pending forfeiture.

## B.  Civil forfeiture cases

In a civil forfeiture case, there are at least three options for obtaining a probable cause determination: (1) a warrant of arrest in rem, (2) a seizure warrant, and (3) a restraining order.

### B.1  Warrant of arrest in rem

The preferred means of obtaining the requisite probable cause finding is to obtain a warrant of arrest in rem from the district court after a civil forfeiture complaint has been filed. Rule G(3)(b)(ii) & (c)(iv) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (Supplemental Rules) requires a probable cause finding by a judge or magistrate judge before any warrant of arrest in rem is issued for property that is not already in the custody of the United States and provide for sending the warrant to a foreign country if the property is located abroad. Obtaining a warrant of arrest in rem under Supplemental Rule G is the best and easiest means of obtaining the required probable cause finding in support of MLAT requests asking another country to seize or restrain property abroad in civil forfeiture proceedings.

### B.2  Civil seizure warrant

Another option is to obtain a civil seizure warrant for the property pursuant to 18 U.S.C. § 981(b)(2) in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure. Such a warrant requires a finding of probable cause and may be obtained on an ex parte basis.

Section 981(b) applies to all property subject to civil forfeiture under both § 981(a) (the forfeiture statute applicable to most federal crimes) and any other forfeiture statute containing language incorporating the procedures of Title 18, Chapter 46 of the United States Code, such as 21 U.S.C. § 881(a) (the civil forfeiture statute for drug offenses) and 8 U.S.C. § 1324(b) (the civil forfeiture statute for the smuggling or harboring of illegal aliens).[11] Accordingly, § 981(b) provides a means for obtaining a probable cause finding under the vast majority of federal civil forfeiture statutes. However, where a given civil forfeiture statute does not incorporate § 981(b), the prosecutor will have to identify an alternative statutory basis for obtaining a pre-complaint finding of probable cause of forfeitability as to the foreign property sought to be forfeited.

---

[10] Alternatively, it may be advisable to obtain a criminal and civil seizure warrant in the same application so that the court's extraterritorial jurisdiction is clear and unassailable. *See* the discussion in Sec. VII.B.2 in this chapter and 18 U.S.C. § 981(b) (providing express authority for issuance of civil seizure warrants for property located outside the United States).

[11] *See also* 18 U.S.C. § 1594 (forfeiture provisions for human trafficking).

In seeking such a warrant, it may be helpful to explain to the magistrate or judge the statutory scheme authorizing federal courts to order the seizure of assets in a foreign country. A court has the authority to issue seizure warrants for assets located in a foreign jurisdiction pursuant to 18 U.S.C. § 981(b)(3). Section 981(b)(3) provides that a seizure warrant may be issued by a "judicial officer in any district in which a forfeiture action against the property may be filed under [28 U.S.C. § 1355(b)], and may be executed in any district in which the property is found, *or transmitted to the central authority of any foreign state for service in accordance with any treaty or other international agreement*" (emphasis added). Pursuant to 28 U.S.C. § 1355(b), a forfeiture action may be brought in any district court where any of the acts or omissions giving rise to the forfeiture occurred, even as to property located in a foreign jurisdiction.

One concern about obtaining such a seizure warrant is that 18 U.S.C. § 981(b) arguably incorporates all the provisions of Federal Rule of Criminal Procedure 41, which, in turn, might require that the warrant be executed within 14 days. However, § 981(b)(3) states that, notwithstanding the provisions of Rule 41(a),[12] a seizure warrant may be "transmitted to the central authority of any foreign state for service in accordance with any treaty or other international agreement." Thus, the requirements of both § 981(b)(3) and Rule 41 are completely satisfied once a seizure warrant issued under § 981(b) has been transmitted for service in a formal request to the foreign country through OIA. Prosecutors attempting to obtain such a seizure warrant are encouraged to first consult with MLARS.

#### B.3 Restraining order

Finally, whether or not a complaint has been filed, the United States may ask the court to issue a restraining order pursuant to 18 U.S.C. § 983(j). A restraining order may be issued on an ex parte basis. Temporary restraining orders may only be issued upon a showing of probable cause—usually in the form of an affidavit submitted along with the application for the order.[13] Thus, the issuance of a temporary restraining order will constitute the probable cause finding required to support the MLAT request.

### C. Parallel civil and criminal cases

Often the best option is to initiate both civil and criminal forfeiture actions against property located abroad and then stay the civil proceeding pursuant to 18 U.S.C. § 981(g)(1) until the conclusion of the parallel criminal proceedings. In addition to allowing a choice of options for restraining assets abroad, this approach will also have preserved other options should the criminal forfeiture fail for any reason.

## VIII. Consultation for Civil Forfeiture of Property Located Overseas

According to *Justice Manual* § 9-13.526,[14] AUSAs shall consult with OIA before filing an in rem forfeiture action based on 28 U.S.C. § 1355(b)(2). A growing number of jurisdictions can enforce

[12] Prior to the 2002 Amendments to Federal Rule of Criminal Procedure 41, section (a) addressed the jurisdictional reach of Rule 41 search warrant, which, arguably, was limited to locations within the United States. The Rule 41 reference in 18 U.S.C. § 981(b), added by the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), Pub. L. 106-185, Apr. 25, 2000, 114 Stat. 202, was express Congressional intent to give U.S. courts jurisdiction to issue seizure warrants with an extraterritorial reach. After 2002, Rule 41(a) contains scope and definitions provisions not relevant for jurisdictional reach and so the § 981 reference to Rule 41 is confusing.

[13] 18 U.S.C. § 983(j)(3). *See also United States v. Melrose E. Subdiv.,* 357 F.3d 493 (5th Cir. 2004) (applying the probable cause requirement in *United States v. Monsanto,* 491 U.S. 600 (1989), to 18 U.S.C. § 983(j)(1)(A)).

[14] *See Justice Manual* (JM).

civil forfeiture judgments, due, in part, to expanding international standards, particularly where a perpetrator is unavailable by reason of death, flight, or absence. However, criminal forfeiture is more universally recognized and prosecutors should first pursue the criminal forfeiture of assets located abroad where possible. OIA and MLARS can provide guidance regarding anticipated assistance from the foreign country where the assets are located.

## IX. Approval Process for 18 U.S.C. § 981(k) Seizure from Correspondent Bank Account

Approval authority for use of 18 U.S.C. § 981(k) rests with the Chief of MLARS in consultation with the appropriate OIA, Treasury, and the Department of State officials. These officials should be viewed as stakeholders in the serious policy implications raised by the potential use of § 981(k) and need an opportunity to closely review the § 981(k) request and consider the ramifications of granting the request. Section 981(k) authorizes the United States, in a civil forfeiture action, to constructively restrain, seize, and forfeit funds on deposit in foreign bank accounts located abroad by restraining, seizing, and forfeiting an equivalent amount of funds from a correspondent or interbank account held in the United States by the foreign financial institution with which the relevant foreign bank account is maintained. It is irrelevant for purposes of § 981(k) whether the tainted funds on deposit in the foreign bank account ever transited through the foreign bank's U.S. correspondent account that is subject to the § 981(k) forfeiture effort. Thus, § 981(k) can be used to constructively restrain, seize, and forfeit funds on deposit abroad without resort to a treaty or letter rogatory request.[15] Even so, MLARS must approve use of this provision in writing, and will grant this approval only in extraordinary cases. For this reason, prosecutors and agents are should contact MLARS to explore whether the approved use of § 981(k) authority might be feasible in their cases.

Thus, prosecutors should seek written approval to use 18 U.S.C. § 981(k) well in advance of any attempt to restrain or seize assets from a foreign bank's correspondent accounts in the United States. Applications requesting approval to use § 981(k) must be submitted in writing to the Chief of MLARS, who has responsibility for coordinating the approval process. Sample § 981(k) approval requests may be obtained from MLARS. MLARS will approve requests for authority to use § 981(k) as the basis for constructively forfeiting funds on deposit in foreign accounts only if there are no other viable alternative means of effecting forfeiture of the tainted funds in the foreign bank account. Therefore, it should be considered only as a last resort. MLARS will not approve an application simply because it is deemed more expedient than using the treaty or letters rogatory mechanism. Accordingly, MLARS will approve § 981(k) requests only in limited cases, like when there is

- no applicable treaty, agreement, or legal process in the foreign nation that would allow it to restrain, seize, or forfeit the target assets for the United States;
- a treaty or agreement in force, but the foreign nation does not recognize the U.S. offense that gives rise to forfeiture;
- a treaty or agreement in force, and in spite of its treaty obligation, in the past the foreign nation has failed to provide requested forfeiture assistance, or provided untimely or unsatisfactory forfeiture assistance;

[15] Letters rogatory are the customary method of obtaining assistance from abroad in the absence of a treaty or executive agreement. See Department of State's Preparation of Letters Rogatory page.

- a treaty or agreement in force, but the foreign nation has no domestic legislation authorizing it fully to execute U.S. forfeiture orders or judgments; or

- some other significant reason that, in the view of the policy stakeholders, justifies use of § 981(k) (e.g. corruption within the foreign government that may compromise the execution of a treaty request, or the inability to repatriate or return victim money to the United States after forfeiture).

Once permission is granted to seize funds from a U.S. correspondent account pursuant to § 981(k), prosecutors should take special care to ensure that the restrained correspondent account is limited to the amount of tainted funds traceable to, and on deposit in, the foreign bank account.

## X.   Lack of Administrative Forfeiture Authority for Overseas Property

Forfeiture of assets located abroad must be initiated as part of a judicial forfeiture action, civil or criminal. There is no authority under federal law to commence an administrative forfeiture of property that is not physically located in the United States or its territories or possessions. Administrative forfeiture can, of course, be pursued against property repatriated to the United States pursuant to Section VI in this chapter, assuming the property is otherwise eligible for administrative forfeiture.

## XI.   Settlements, Plea Agreements, and Attorneys' Fees

Federal prosecutors should not agree to, or enter into, any settlement or plea agreement affecting assets located abroad, or make any representation concerning the availability of assets located abroad to pay the legal fees incurred by a criminal defendant, without first speaking to MLARS about the foreign consequences of such decisions. In addition, prosecutors should be aware of limitations on negotiating with fugitives or persons fighting extradition. The policy considerations that underlie the consultation and approval requirements applicable to settlement and plea agreements and agreements to use forfeitable funds to pay for attorneys' fees in purely domestic cases apply with even greater force in the international context, particularly in light of the problems inherent in releasing property held abroad. *See* Section VI in this chapter. In some cases, a U.S. request to restrain or seize foreign assets will necessarily precipitate the initiation of a foreign criminal investigation as many jurisdictions are required to prosecute all criminal matters brought to their attention. Thus, it may not be possible to make any meaningful or binding commitments to defendants or claimants regarding the disposition of funds restrained or seized abroad because the property may remain restrained or seized, or even ordered forfeited, under foreign law following conclusion of the U.S. forfeiture proceeding. Furthermore, the United States has no authority to bind a foreign government regarding the disposition of assets ordered forfeited in any U.S. proceedings. In addition, all plea and settlement agreements should include broad waiver and indemnification language that protects both the United States and foreign officials, and their governments, from any liability arising from seizing, restraining, or forfeiting assets located abroad.

Finally, prosecutors should seek and, if possible, obtain from a defendant or claimant an agreement to specifically waive any right to an award of costs or attorneys' fees under foreign law. Prosecutors should also seek from the defendant, and persons acting in concert with the defendant, an agreement not to oppose enforcement of a U.S. forfeiture judgment abroad, any other legal action in any foreign jurisdiction relating to U.S. forfeiture efforts, or any U.S. request to a foreign government for related financial records.

## XII. Enforcement of Judgments

### A. Foreign enforcement of U.S. judgments

Some nations afford full faith and credit to U.S. forfeiture judgments affecting property within their borders. Before transmitting a U.S. forfeiture judgment via OIA to a foreign jurisdiction to be given effect, prosecutors should verify that the judgment is final under U.S. law. In other words, the judgment must be final and no longer subject to direct appeal either because all opportunities for direct appeal have been taken and exhausted or the time for filing a direct appeal has expired. These facts should be noted in the legal assistance request to the foreign authority for the jurisdiction in which the judgment is sought to be enforced. In criminal cases, great care should be taken to obtain a final order or judgment of forfeiture. A preliminary order of forfeiture, which is only valid as to the convicted criminal defendant, should never be sent to a foreign authority for execution; only the completed final order of forfeiture should be submitted—even if the convicted defendant has agreed to forfeit the asset in a plea or settlement agreement. This avoids problems when an asset forfeited to the United States is not titled in the name of the convicted defendant; the convicted defendant has a legal or common law spouse with a possible interest in the forfeited property; or another person could conceivably claim a valid interest in the forfeited property.

Prosecutors should be mindful that third parties who did not appear in the U.S. proceedings may still be permitted to challenge enforcement of the U.S. forfeiture orders under foreign law. Thus, when transmitting a U.S. forfeiture judgment for execution by a foreign country, the request should demonstrate to the foreign jurisdiction that third parties were provided or sent notice of the U.S. forfeiture proceedings, had an opportunity to challenge the U.S. forfeiture, and either failed to avail themselves of the right to contest the forfeiture or were unsuccessful in their challenges.

### B. U.S. enforcement of foreign judgments and restraining orders

Pursuant to 28 U.S.C. § 2467, the United States can enforce foreign forfeiture judgments. Before a federal court may enforce any foreign forfeiture or confiscation judgment or enforce a foreign restraining order under § 2467, the "Attorney General or the designee of the Attorney General" must certify that enforcing the order is "in the interest of justice." *See* 28 U.S.C. § 2467(b)(2) & (d)(3)(B)(ii). In 2006, the Attorney General delegated this authority to the Assistant Attorney General for the Criminal Division (AAG).[16] That delegation order provides that the AAG may delegate the certification authority to "any subordinates."[17] In October 2018, the AAG delegated to the Chief of MLARS the certification authority for (1) foreign forfeitures or confiscation judgments under § 2467(b)(2), where the amount involved is $5 million or less, and (2) all foreign forfeiture restraining orders under § 2467(d)(3)(B)(ii).[18]

[16] *See* Attorney General Order No. 28202006.

[17] *Id.*

[18] The amount involved for certification purposes should be determined based on the expected fair-market value of the assets unless the amount of the forfeiture judgment itself (or expected judgment) is under $5 million. *See* Chap. 11, Sec. I.A in this *Manual*.

## XIII. International Sharing

The Attorney General (or a designee) may transfer any forfeited assets, as authorized by statute, to a foreign country that participated directly or indirectly in the seizure or forfeiture of those assets.[19] It is the policy of the United States in those forfeiture matters that do not involve victims to encourage international asset sharing and to recognize all foreign assistance that facilitates U.S. forfeitures so far as consistent with U.S. law. International sharing is governed by 18 U.S.C. § 981(i), 21 U.S.C. § 881(e)(1)(E), and 31 U.S.C. § 9705(h)(2), and is often guided by standing international sharing agreements or may be the subject of bilateral case-specific forfeiture sharing arrangements negotiated by MLARS and approved by the Department of State. The decision to share assets that have been forfeited to the United States with a foreign government is a completely discretionary function of the Attorney General or the Secretary of the Treasury. However, this decision also requires the concurrence of the Secretary of State and, in certain circumstances, may be vetoed by Congress. An April 1992 international sharing memorandum of understanding (MOU) between the Department, Treasury, and Department of State expressly prohibits investigators or prosecutors from making representations to foreign officials "that assets will be transferred in a particular case, until an international agreement and commitment to transfer assets have been approved by the Secretary of State and the Attorney General or the Secretary of the Treasury." Prosecutors and federal law enforcement agencies should always be mindful that any international sharing is given priority and any domestic sharing can occur only after all victims are compensated and international sharing is completed. Moreover, in all cases, both international and domestic sharing comes from the net sale proceeds of forfeited property following the deduction of all case-related expenses. Thus, federal prosecutors and investigators should refrain from making any representations, to representatives of either a foreign government or any domestic law enforcement agency that provided assistance, regarding any sharing tied to the forfeiture of assets located abroad or any domestic forfeiture accomplished with the assistance of a foreign government.

Foreign governments are not required to follow a specific process for submitting a sharing request to the United States. This may be done pursuant to a treaty or sharing agreement, or, less formally, through other diplomatic or law enforcement channels. In forfeiture cases where international sharing may be appropriate, prosecutors and law enforcement agencies should recommend international sharing to MLARS or their respective law enforcement agencies whenever they have received foreign assistance that facilitated the forfeiture of an asset in a U.S. case, particularly as to assets located in the United States. Upon completion of a forfeiture proceeding and the entry of a final order of forfeiture achieved with the assistance of a foreign government, the seizing agency shall submit a memorandum addressing a sharing recommendation and forward that to the federal prosecutor assigned to the case who is responsible for sending a formal sharing recommendation to MLARS. For assets forfeited administratively, the seizing agency is responsible for submitting the recommendation.

The Deputy Attorney General (DAG) delegated authority to (1) the AAG to make final determinations on uncontested international sharing proposals involving assets valued at more than $5 million and (2) the Chief of MLARS to make final determinations on uncontested international sharing proposals involving forfeited assets valued at $5 million or less. If the seizing agency, U.S. Attorney's Office (USAO), and MLARS do not agree on the sharing allocations, the DAG makes the final decision.

[19] *The Attorney General's Guidelines on the Asset Forfeiture Program* (July 2018) (*AG Guidelines*), Sec. V.E.

In cases implicating the Treasury Forfeiture Fund (TFF), the seizing agency—e.g. Internal Revenue Service-Criminal Investigations (IRS-CI), U.S. Secret Service (USSS), U.S. Customs and Border Protection (CBP) or U.S. Immigration and Customs Enforcement-Homeland Security Investigations (ICE-HSI)—is responsible for submitting a sharing recommendation to TEOAF. However, the seizing agency should first consult the AUSA responsible for the case. In these cases, the Director of TEOAF approves the sharing recommendations. MLARS and TEOAF also obtain concurrence from each other and the Department of State for each proposed sharing transfer to a foreign government after it is approved by their respective designees. This interagency approval and consultation process may be lengthy.

To avoid delays, it is advisable to make the international sharing recommendation as soon as practicable, or immediately after the final order forfeiting the foreign assets is obtained. At the earliest possible time and definitely before the asset has been liquidated, the seizing agency should note in any electronic asset tracking system (like CATS) that a particular asset might be, is, or will be subject to an international sharing request or recommendation. In order to place a "hold" on an asset intended for international sharing, the seizing agency must either (1) select "international sharing anticipated" when creating the standard seizure form or (2) enter a sharing recommendation in the international sharing module. Either of these actions will prevent the asset from being shared domestically until a pre-approval or approval ruling is entered by MLARS.

If forfeitable assets located overseas are forfeited under U.S. law, repatriated, and placed into the Assets Forfeiture Fund (AFF), they may be eligible for domestic sharing with participating state, local, and tribal agencies. However, funds shared with the United States by the foreign government that have not been forfeited under U.S. law may not be eligible for domestic equitable sharing.[20] Nevertheless, if U.S. prosecutors or investigators assisted in a foreign case that resulted in a foreign forfeiture, they should contact MLARS' International Unit to determine if it might be fruitful to submit a sharing request to that country, as these funds still may be deposited into the AFF. MLARS' International Unit, in coordination with OIA, submits all requests to foreign countries for asset sharing.

Similarly, funds shared with the United States by a foreign government that have not been forfeited under U.S. law may not be eligible to be used for victim remission or restoration or confidential informant awards under 28 U.S.C. § 524(c)(1)(C). However, depending upon the circumstances of the case, it may be possible to employ other mechanisms for using such shared funds to make victims whole.[21] If U.S. prosecutors or investigators assisted in a foreign case involving victims that resulted in a foreign forfeiture, they should also contact MLARS' International Unit for guidance on potential alternative mechanisms and submission of a sharing request to that country.

---

[20] *See* also Chap. 15, Sec. VIII in this *Manual*.

[21] *See also* Chap. 14, Sec. I. n.2 in this *Manual*.

# Chapter 9:
# Trustees, Monitors, Managers and Custodians in Forfeiture Cases

## I.   Overview[1]

### A.  Purpose

This policy provides guidance regarding the engagement and use of trustees, business monitors, property managers, custodians or other third parties (together "third party experts") to assist the Department of Justice (Department) in property management in federal forfeiture cases involving complex assets, business enterprises, or international seizures.

In cases where the lead law enforcement agency is a Department of the Treasury (Treasury) or Department of Homeland Security (DHS) agency, the federal prosecutor or investigator should consult the Treasury Executive Office for Asset Forfeiture (TEOAF) for guidance.

Historically, the Department has used a variety of experts to accomplish its law enforcement objectives in complex forfeiture cases. Because an expert's role may vary based on the facts of each case and the nature of the asset or business entity involved, there is no single method for selecting third party experts in every case.

Due to the cost and labor-intensive nature of monitoring and administering third party expert assistance, and the potential for litigation extending beyond entry of a final order of forfeiture, third party experts should be appointed only when absolutely necessary, after all other alternatives have been considered and rejected, and where there is clearly sufficient net equity in the asset(s) to cover the total estimated cost of using the third party expert and any necessary staff. As a general rule, the government generally should avoid seizing or forfeiting operating businesses and other complex assets that will require third party expertise or supervision, continuing capital investment for the business, or other complex assets to remain viable, competitive, and marketable; or the assumption of direct or contingent liabilities. In rare cases, compelling law enforcement or policy considerations may warrant the appointment of third party experts even though there is insufficient equity in the business enterprise or complex assets to cover the costs.

### B.  Statutory authority

Statutory authority, both specific and general, for the appointment of a third party expert in federal forfeiture cases is found in 18 U.S.C. § 983(j) (civil forfeiture), 18 U.S.C. §§ 1963(d) & (e) (criminal forfeiture), and 21 U.S.C. § 853(e)–(g) (criminal forfeiture) as well as 18 U.S.C. § 1956(b)(4) and, which permit a court to act to preserve property.[2]

---

[1]   This chapter does not apply to the responsibility or authority of independent bankruptcy trustees, financial institution receivers, and foreign liquidators not otherwise directly engaged in forfeiture case activities on behalf of the government. U.S. Attorney's Offices (USAOs) and agencies interested in utilizing the services of a trustee to support the remission and restoration processes should refer to Chap. 14, Sec. II.A.4 in this *Manual*.

[2]   18 U.S.C. § 1964(a) and (b) grants courts broad injunctive and remedial authority in RICO cases.

### C.  Special considerations

In cases requiring the assistance of third parties to effectuate the forfeiture and liquidation of complex assets, comprehensive seizure planning is mandatory. In certain instances, procurement of the services not covered under existing contracts may require a new solicitation under Federal Acquisition Regulations (FAR).[3]

The U.S. Attorney's Office (USAO) must consult with the Money Laundering and Asset Recovery Section (MLARS) before seeking the appointment of a third party expert in any forfeiture case. The U.S. Marshals Service (USMS) field office must notify USMS headquarters Asset Forfeiture Division (AFD) headquarters when it becomes aware that a third party expert may be required.

### D.  Determining when a trustee, monitor, manager, or custodian should be engaged

In almost all forfeiture cases, the value of an operating business can be preserved through the issuance of a protective order without appointment of a third party expert. Generally, a protective order must be sought any time an operating business entity or other complex asset is targeted for forfeiture prior to seeking appointment of a third party expert. This order should seek to restrain the owners from further encumbering the business, dissipating its assets, or selling the business except as authorized by court order. The business must be determined to have current and long-term financial viability well before appointment of a third party expert is even considered. Appointment of a third party expert will occur only when clearly necessary and after all other alternatives have been considered and rejected. In rare cases, compelling law enforcement or policy considerations might warrant appointment of a third party expert even though there is not or may not be sufficient equity in the business enterprise or complex asset to cover the costs of employing the third party expert. In such cases, the USAO must thoroughly document for MLARS the reasons for rejecting all alternatives to the appointment of a third party expert.

In the typical forfeiture case where business property or other complex assets have been restrained criminally or civilly, the USMS is capable of managing and selling assets either with its own resources or under its existing property management contracts for managing and selling property without resort to appointment of third party experts. Moreover, the owners and internal management of an operating business are often able to continue operating the business pending forfeiture except, of course, where probable cause exists to believe that they have been or are engaged in criminal conduct involving the business. In cases in which third party expert assistance is required, the USAO, USMS, and MLARS must work together to determine how best to obtain the assistance of a qualified third party expert.

Alternatives to the appointment of a third party expert must always be considered to select the least intrusive and most cost-effective means of protecting the government's interests while achieving a successful forfeiture. Such alternatives include:

- obtaining a protective or restraining order, perhaps providing for USMS oversight, that specifies the consequences for violations of the order (such as the appointment of a third party expert in addition to a contempt citation);

---

[3]  *See* 48 C.F.R. Part 1.000 et seq.

- appointment of a business or property manager through an existing contract;

- restraint or seizure of specific valuable assets, equipment, or inventory (restraint is preferred) in lieu of the entire business;

- oversight or management by state or local regulatory agencies;

- filing a lis pendens;

- interlocutory sale;

- foreclosure by a lienholder;

- retention of a professional, upon the consent of the business and to be paid at its own cost, to oversee business operations and finances while ensuring against future criminal violations during the pendency of the forfeiture action;

- enforcement of state or local nuisance or business regulatory laws;

- seizure of property by federal or state tax authorities to satisfy outstanding tax obligations; and

- securing a performance bond.

The Department must strive to avoid managing any business or complex asset that may require extraordinary action, significant capital investment from the Assets Forfeiture Fund (AFF) to keep the business competitive or asset marketable, or the assumption of considerable risk or liabilities. It is permissible to restrain or seize such a business only if there is no effective alternative for accomplishing the government's objectives.

## II.  Prerequisites to the Selection of a Trustee, Monitor, Manager, or Custodian: Seizure Planning and Other Requirements

The appointment of a third party expert is to be made only after the all interested components (MLARS, USAO, USMS, and investigative agencies) agree on a pre-seizure plan as discussed below. The USAO is required to notify the USMS either through a local district office or direct communication to the USMS Complex Asset Unit (CAU) as soon as the USAO becomes aware that a third party appointment is being contemplated. In cases involving complex assets that require a third party expert, seizure planning with the USMS is mandatory.

Before seeking appointment of a third party expert, the USAO must

(1) contact the USMS to engage in formal pre-indictment or pre-complaint planning before seizing or restraining complex assets, including businesses and real property;

(2) consult with the USMS prior to the submission or filing of any proposed court orders to a court to restrain, seize, or impose property management or financial management obligations on property in USMS custody;

(3) consult with MLARS and the USMS before commencing any action seeking forfeiture of, or seeking any form of restraint or protective order over, an operating business; and

(4) consult with MLARS concerning the need for a third party expert.

Seizure planning must include an assessment of the long-term marketability of any complex asset as to which forfeiture is contemplated. As to a business, seizure planning must include an assessment of the financial viability of the business,, including, for example, a determination as to whether the continued operation, or even a takeover, of the business is in the government's best interest. The seizure plan must develop (or include) an estimate, to the extent feasible, of the

(1) net equity of the business or business assets as to which forfeiture is contemplated;

(2) current and projected cash flow of the business;

(3) anticipated fees and other costs of the third party expert and the source(s) for paying these fees; and (4) likely duration of the third party expert assistance.

If it is contemplated that a targeted business will continue in operation pending forfeiture, a business review must be undertaken after the USAO and the CAU obtain, by protective order or otherwise, and assess the pertinent business records and other information relating to the financial viability of the business, the challenges facing the business pending forfeiture, and the capital that will be required for the business to remain viable pending the forfeiture. The business review must identify and consider key historic financial data for the business, its current operating environment (including financial activity), and financial projections for the next two years. These projections should include both best- and worst-case scenarios for the business operations as well as "exit strategies" should conditions change for the worse. If the business is likely to lose money or to be sold at a loss, the business plan should include plans to mitigate such losses or liquidate all or parts of the business.

During the pre-seizure phase or while an indictment is under seal, diligent care should be taken to maintain confidentiality and secrecy of the matter and particularly any grand jury material. While agency components are reviewing investigative business and financial records to develop a proposed business plan, appropriate measures must be taken to ensure that sensitive law enforcement information remains protected and that all required disclosure orders are obtained for grand jury information.

## III.   Qualifications of Trustees, Monitors, Managers, and Custodians

The qualifications required of a third party expert will vary depending on the nature and purpose of the contemplated third party expert assistance. For example, if the main purposes of the assistance are to manage a business and prevent dissipation of its value, the qualifications will likely include a business management and accounting background as well as expertise in the particular industry or specialized operational activity. It will often be necessary for the third party expert to comply with various reporting and legal requirements (e.g. taxes, securities, environmental) pertaining to the business. If a third party expert detects or suspects operating criminal activity or evidence of past criminal conduct, the expert should be directed to contact and coordinate with the designated prosecutor or supervisory case agent.

The restraining order or other order appointing a third party expert engaged by the government must define the duties and goals of the third party expert. Prior to appointment, the government must determine the purpose of and need for the assistance (i.e. to prevent either the dissipation of the asset or the enterprise from engaging in illegal activity or both) as well as its goals. The theory of forfeiture under which the property is seized and the nature of the business itself will inform the duties and goals of the third party expert. For example, if the business subject to forfeiture was acquired with

proceeds of illegal activity and is self-supporting or is subject to forfeiture as a substitute asset, the goal of the government generally is to prevent dissipation of the business and its assets. Monitorship or trusteeship of such an asset usually requires less oversight and more often results in a profitable forfeiture than the forfeiture of an enterprise used to facilitate illegal activity.

## IV. Trustee, Monitor, Manager, and Custodian Expenses

MLARS and the Asset Forfeiture Management Staff (AFMS) must be notified as soon as the USAO, investigative agency or the USMS learns or anticipates that a seized or restrained business will lose money, has contingent or direct liabilities for which the government will be responsible or has insufficient equity. If the restraint, seizure, or forfeiture of a business could create a net loss to the AFF for that business, prior approval from MLARS, in coordination with AFMS, is required.[4] Once it is determined that operation of the business is not financially viable, the USAO should exclude or seek to dismiss the business from the forfeiture action, if possible, or close and wind up the business as soon as practicable, and obtain any necessary court orders to accomplish this end, while giving due regard to the ownership rights of the defendant or owner (before forfeiture) and other partners, shareholders, and parties of interest. Alternatively, the business or its assets might be sold by interlocutory sale, even if the sale may result in a loss.

In general, the government should not enter into a contract to pay for the services of a third party expert from the AFF unless or until a determination is made that forfeiture is likely and the business revenues or proceeds from the eventual sale justify those costs in addition to any assumed and contingent liabilities and disposal costs.

4 *See* Chap. 1, Sec. I.D in this *Manual*.

# Chapter 10: Use and Disposition of Seized and Forfeited Property

## I. Management and Disposal of Seized Assets

### A. Role of the U.S. Marshals Service (USMS)

The U.S. Marshals Service (USMS) has primary authority over the management and disposal of assets in its custody that have been seized for forfeiture or forfeited by law enforcement agencies of the Department of Justice (Department) and, by agreement, certain other federal law enforcement agencies.[1] The USMS bears responsibility for arrangements for property services or commitments pertaining to the management and disposition of such property. The Attorney General has delegated the authority to dispose of forfeited real property and to warrant title to the USMS Director. *See* 28 C.F.R. § 0.111(i); *see also* Chapter 4, Section I.D in this *Manual* (title conveyance).

### B. Department of the Treasury property custodians

Property custodians (generally contractors) operating under Department of the Treasury (Treasury) guidelines handle management and disposal of assets seized by agencies within Treasury[2] and other agencies included by agreement (including certain agencies moved from Treasury to the Department of Homeland Security (DHS)).[3] The Treasury agency case agent or the asset forfeiture coordinator in the agency's field office generally serves as the initial point of contact for issues relating to seized property custody, management, and disposal.[4]

### C. Seizure planning

In a federal case, as soon as possible after the identification of assets other than cash for seizure or forfeiture, the U.S. Attorney's Office (USAO) or agent in charge of the field office responsible for an administrative forfeiture case should contact the USMS (or Treasury in cases involving Treasury seizing agencies) to discuss seizure planning. *See* Chapter 1, Sections I.A–D in this *Manual*.

### D. Coordination of custody and disposition decisions

Before taking any property management or disposition action (e.g. making a commitment in a settlement or plea agreement), the USAO or agency responsible for an administrative forfeiture case should consult the USMS in cases involving Department seizing agencies (or Treasury, in cases involving Treasury seizing agencies) to discuss any management or disposition issues. *See* Chapter 11, Section I.B.2 in this *Manual*.

---

1 The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) has primary authority over the custody and disposition of firearms and ammunition forfeited by Department agencies. References to the USMS here include other departments responsible for managing restrained and seized assets.

2 For a list of agencies participating in the Treasury Forfeiture Fund (TFF), *see* 31 U.S.C. § 9705(o).

3 For example, U.S. Customs and Border Protection (CBP).

4 Prosecutors should consult Treasury for procedures involving assets seized by Treasury agencies.

## II.   Use of Seized Property

### A.  Background

Absent an order of forfeiture or declaration of administrative forfeiture affirmatively vesting title to seized property in the United States, the government does not have title to the property. Thus, any use of property held pending forfeiture raises potential issues of liability and creates the appearance of impropriety. Therefore, Department policy generally prohibits the use of property pending forfeiture.

### B.  Use of seized property is prohibited

Property under seizure and held pending forfeiture may not be used for any reason by government or contractor personnel, including for official use, until a final order of forfeiture is issued. Likewise, government or contractor personnel may not make such property available for use by others, including persons acting as substitute custodians, for any purpose, before completion of the forfeiture. Any vehicles or other property being stored by a federal agency, or under an authorized substitute custodial agreement with state or local agency, must not be used by any party until the forfeiture is completed and title of the asset has been transferred to that agency.

In limited circumstances, however, a prosecutor may seek court authority for the use of seized property, after consultation with the USMS. This may be appropriate, for example, in situations where the maintenance of the property requires use of equipment under seizure (like to maintain a ranch or business).

### C.  Pre-forfeiture sale of seized property

The Department favors pre-forfeiture sale of property (e.g. interlocutory or stipulated sale) as a means of preserving asset value and mitigating asset expenses. The USAO shall consult with the seizing agency and the USMS to determine the status of any petitions for remission before seeking a pre-forfeiture sale of property pending judicial forfeiture.

Proceeds from any pre-forfeiture sale shall be promptly deposited into USMS Seized Assets Deposit Fund (SADF) unless otherwise ordered by the court.

## III.  Disposition of Forfeited Property and Funds

### A.  Forfeiture orders

The disposition of property forfeited to the United States is an executive branch decision and not a matter for the court. Consequently, preliminary and final orders of forfeiture should include language directing forfeiture of the property to the United States "for disposition in accordance with law."

In addition, judicial orders of forfeiture should specifically address any third-party claims against the forfeited property that the United States recognizes. If the interests of claimants will be satisfied in whole or in part by payments from the proceeds of a sale of property by the USMS (or Treasury), the proposed forfeiture order should provide specific guidance for the USMS (or Treasury) concerning these payments and, where possible, specify that these claims shall be paid only after the United States recovers its costs, and only up to the net amount realized from the proceeds of the forfeited property. The proposed forfeiture order should also identify those persons or entities who received

direct notice of the forfeiture proceeding and expressly state that the interests of all persons who received notice and did not file a claim are extinguished.

The comptroller general has determined that judgments in excess of the proceeds of sale must be paid from Treasury's Judgment Fund.[5] However, the Assets Forfeiture Fund (AFF) is available for the payment of valid liens and mortgages "subject to the discretion of the Attorney General to determine the validity of any such lien or mortgage and the amount of payment to be made." *See* 28 U.S.C. § 524(c)(1)(D). The USMS is authorized to pay a lien or mortgage in excess of the proceeds of sale if the payment will facilitate the liquidation of the property and, thus, reduce expenses of such property's continued custody. USAOs must submit requests for approval of liens and mortgages in excess of the proceeds of sale to the Money Laundering and Asset Recovery Section (MLARS) for approval.

### B. Disposition of forfeited property in civil and criminal cases

The Attorney General has complete authority to dispose of forfeited property by "sale or any other commercially feasible means," without subsequent court approval. *See* 21 U.S.C. §§ 853(h) and 881(e)(1)(B); *see also* 18 U.S.C. §§ 1467(b), 1963(f), and 2253(b). This is generally called a "forfeiture sale" of the property.[6]

Forfeiture divests an owner of property of all right, title, and interest in it, and vests the right, title, and interest in the government. Accordingly, because of the property's or its owner's involvement in criminal activity, forfeiture extinguishes all of the former owner's interests in that criminally derived or criminally involved asset, and vests title in the United States.[7] While the relation back doctrine found in 21 U.S.C. § 853(c) provides that all right, title, and interest in forfeitable property vests in the United States upon the commission of the criminal act giving rise to the forfeiture, the government's ownership interest is not confirmed to the world until a court enters a final order of forfeiture.

Because the forfeiture process vests title to the property in the United States, when the government conducts a forfeiture sale, it sells property the United States owns. The forfeiture statutes give the power to the Attorney General, on behalf of the United States as owner, to dispose of the property. After the final order of forfeiture, the court has no involvement in the sale or disposal process.

### C. Sale of forfeited property

Upon the successful completion of the forfeiture, the USMS shall promptly sell the property and promptly deposit the proceeds of the sale into the AFF. The property may not be sold and the proceeds of the sale may not be deposited in the AFF if there is a pending owner or lienholder petition for remission or a pending request to place the property into official use or transfer it to a federal, state, local, or tribal law enforcement agency.

---

5 Treasury's Financial Management Service (FMS) manages the Judgment Fund. For more information, visit FMS at treasury.gov.

6 The Department takes the position that 28 U.S.C. § 2001 does not apply to judicial forfeiture sales and no judicial confirmation is required.

7 21 U.S.C. §§ 853(c) and 881(h); 18 U.S.C.§ 1963(c); *see United States v. Grundy*, 7 U.S. 337, 350–351 (1806); *United States v. 6124 Mary Lane Dr., San Diego, CA*, No. 3:03-CV-00580, 2008 WL 3925074, *2 (W.D.N.C. Aug. 20, 2008).

Seizing agencies and the USAO shall promptly notify the USMS of all relevant facts affecting the forfeited property, including

- outstanding bills, invoices, or pending requests for mitigation and remission;
- requests to transfer to federal, state, local, or tribal agencies;
- requests for official use by Department components, if known; and
- appraisals not provided by the USMS.

Based upon these and other relevant factors, the USMS shall promptly and appropriately dispose of the property.

## D. Disposition of forfeited funds

The USAO securing a forfeiture and the seizing agency are responsible for initiating the disposal of funds forfeited to the United States. In cases involving a Department seizing agency, the USAO and the seizing agency should provide prompt notification to the USMS of the events, enter the forfeiture decision and amount in the Consolidated Asset Tracking System (CATS), and provide the forfeiture documentation to the USMS.[8] USMS will promptly dispose of forfeited funds by transferring the funds from the SADF to the AFF and entering disposal and collection data in CATS. The transfer of funds to the AFF does not affect the availability for post-forfeiture distributions where appropriately authorized.

### D.1 Administrative forfeitures

Seizing agencies are responsible for initiating the disposition of forfeited funds by entering the forfeiture decision and amount into CATS. USMS will dispose of forfeited funds based on the entry of the forfeiture in CATS. Receipt of a hard copy of a declaration of forfeiture notice by the USMS is not necessary to dispose of forfeited funds in administrative cases.

### D.2 Civil forfeiture cases concluded by either a consent judgment or default judgment

In the case of either a consent judgment or a default judgment, the USMS disposes of the forfeited funds upon entry of the forfeiture in CATS and receipt of forfeiture documentation.

### D.3 Civil forfeiture cases concluded by summary judgment or judgment after trial

The final forfeiture decision should be entered in CATS within 10 business days of its entry by the court or no later than the last day of the fiscal quarter. However, the Federal Rules of Civil Procedure provide for an automatic stay of execution of a judgment of 30 days. *See* Federal Rule of Civil Procedure 62(a). If an appeal is filed or the judgment is stayed, the appeal sequence or stay must also be added to CATS within 10 business days of the filing of the notice of appeal or entry of the stay order. USAOs must record the final decision on the appeal within 10 days of entry of the final judicial document by the appellate court or no later than the last day of the fiscal quarter. The USMS will

[8] For cases involving assets seized by a Treasury agency, the USAO should provide prompt notification to the Treasury custodian for transfer to the TFF.

dispose of the forfeited funds once the forfeiture decision is final, including if applicable when the stay is lifted or the appeal is resolved.[9]

### D.4 Additional stay in civil or criminal judicial forfeitures

If the district court or court of appeals grants an additional stay, the funds will remain in the SADF until the termination of the stay.

### D.5 Criminal forfeiture cases

In criminal forfeiture cases, the USMS will not transfer criminal proceeds to the AFF until a final order of forfeiture has been entered by the court and the USAO has made the appropriate entries into CATS authorizing the transfer.

### D.6 Violations involving a state sponsor of terrorism

As discussed in Chapter 1, Section I.D.5 in this *Manual*, the Consolidated Appropriations Act of 2016[10] established—and the U.S. Victims of State Sponsored Terrorism Fund Clarification Act of 2019 amended—requirements for the disposition of the proceeds of forfeitures, fines, and penalties arising from violations of the International Emergency Economic Powers Act (IEEPA)[11] or the Trading with the Enemy Act (TWEA),[12] or any related criminal conspiracies, schemes, or other federal offenses, that involve state sponsors of terrorism. For criminal matters, all funds and the net proceeds from the sale of property from these violations must be deposited into the U.S. Victims of State Sponsored Terrorism Fund (USVSST Fund). For civil matters, effective November 21, 2019, 75% of all funds and 75% of all proceeds from the sale of property, must be deposited into the USVSST Fund.[13] Prosecutors should consult MLARS as early as possible in any case that involves a state sponsor of terrorism and may require deposits to the USVSST Fund.

## IV. Purchase or Personal Use of Forfeited Property by Department of Justice Employees

Regulations prohibit Department employees from purchasing, either directly or indirectly, or using any property if the property has been forfeited to the government and offered for sale by the Department or its agents, absent prior approval by an agency designee. *See* 5 C.F.R. § 3801.104. In addition, Department employees are prohibited from using such property that has been purchased, directly or indirectly, by a spouse or minor child. *Id*.

This policy serves a twofold purpose: first, it ensures that there is no actual or apparent use of inside information by employees wishing to purchase forfeited property; and second, the policy protects the integrity of the Department's Asset Forfeiture Program. The integrity of the Asset Forfeiture Program

---

9 Even absent the filing of a motion for a stay of the judgment pending appeal pursuant to Federal Rule of Civil Procedure 62(d) and the transfer of forfeited funds from the SADF to the AFF, the courts of appeals will be deemed to retain in rem jurisdiction to hear any direct appeal. *See Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 93 (1993) (holding that the transfer of res from the district to the AFF does not divest the court of in rem jurisdiction over the case).

10 Pub. L. 114-113, Dec. 18, 2015, 129 Stat. 2242.

11 Pub. L. 95-223, Title II, § 202, Dec. 28, 1977, 91 Stat. 1626.

12 Pub. L. 65–91, Oct. 6, 1917, ch. 106, § 1, 40 Stat. 411.

13 MLARS' USVSST Fund page has more information.

requires that the Department precludes even the appearance of a conflict of interest that would otherwise arise should a Department employee purchase forfeited property.

A written waiver of these restrictions may be granted by the agency designee upon determination that, in the mind of a reasonable person with knowledge of the circumstances, purchase or use of the asset by the employee will not raise a question as to whether the employee has used their official position or nonpublic information to obtain or assist in an advantageous purchase or create an appearance of the loss of impartiality in the performance of the employee's duties. The agency designee must file a copy of this waiver with the Deputy Attorney General (DAG).

# Chapter 11: Settlements

## I. General Policy

In situations where justice will be served, the Department of Justice (Department) encourages settlements to forfeit property to conserve the resources of both the government and claimants.

The Department's decision maker considers several basic criteria in determining whether a settlement is appropriate, including whether

- the litigation risks or other circumstances justify the settlement;
- the settlement employs forfeiture best practices;
- the settlement is consistent with overall Department policy and goals;
- the proposed settlement is made merely to induce a criminal plea, or conversely, gives the appearance that a defendant is avoiding or receiving a reduction in criminal penalties in exchange for agreeing to the proposed forfeiture; and
- the economic analysis is sound.[1]

### A. Scope

#### A.1 Settlement

For purposes of this chapter, *settlement* means:

a. In a criminal forfeiture case, a plea agreement with a criminal defendant regarding the forfeiture or return of seized or restrained property, property not seized or restrained but listed in the forfeiture allegation of the indictment or in a bill of particulars, or real property listed in an indictment or subject to lis pendens under state law; or an agreement to resolve a third party claim in the ancillary proceeding in a criminal case;

b. Resolution of a civil judicial or administrative claim following referral to a U.S. Attorney's Office (USAO);

c. An agreement to dismiss a civil forfeiture case or forfeiture in a criminal case, or to release property seized or restrained for forfeiture, or real property listed in an indictment or subject to lis pendens under state law, where the agreement includes a provision for the payment of a sum of money to the federal government or a federal agency as, for example, a fine, penalty, or restitution; or

[1] The applicable net equity thresholds may be waived where forfeiture of a particular asset serves a compelling law enforcement interest. *See* Chap. 1, Sec. I.D.1 of this *Manual*.

   d. A deferred prosecution agreement (DPA) or non-prosecution agreement (NPA) that contains

i. an agreement regarding the forfeiture or return of seized or restrained property, property not seized or restrained but listed in the forfeiture allegation of the indictment, information, or in a bill of particulars, or real property listed in an indictment or subject to lis pendens under state law; an agreement to resolve a claim filed by any claimant in a civil forfeiture case; or

ii. an agreement to release property seized or restrained for forfeiture, or real property subject to lis pendens under state law, where the agreement includes a provision for the payment of a sum of money to the federal government or a federal agency as, for example, a fine, penalty, or restitution.[2]

### A.2 Amount involved

For purposes of this chapter, the *amount involved* means:

- In a criminal forfeiture case, the *amount involved* is the fair market value at the time of settlement of the aggregate value of any property that has been seized, restrained, subject to lis pendens under state law, or specifically identified as property subject to forfeiture in any forfeiture count, allegation, or bill of particulars, including substitute assets. But the *amount involved* does not include the amount of a money judgment, unless there are assets currently available that may be forfeited to satisfy the judgment. For example, if the government has seized several assets and restrained other assets for the purpose of forfeiture in connection with a criminal prosecution, and has also alleged in the indictment that the defendant is liable for a $2 million money judgment, for purposes of negotiating a plea agreement with the defendant, the amount involved is the aggregate value of the assets that have actually been seized or restrained, but would not include the $2 million unless it appears that there are assets currently available that may be forfeited in satisfaction of the judgment.

- In the ancillary proceeding in a criminal case, the *amount involved* is the fair market value of the interest in the forfeited property claimed by the third party with whom the government is attempting to reach a settlement.

- In a civil forfeiture case, the *amount involved* is the fair market value of an interest claimed by the person with whom the government is attempting to reach a settlement. If the claimant asserts an interest in more than one asset, the amount involved is the aggregate of those interests. For example, if the defendant property is a dwelling with a fair market value of $1.2 million, and the claimant is a lienholder asserting a $400,000 lien, for purposes of reaching a settlement with the lienholder, the amount involved is $400,000. In the same case, if the claimant is the owner who acknowledges the validity of the lien but contests the forfeiture of the equity in the property, for purposes of reaching a settlement with the owner the amount involved would be $800,000. But if the claimant is the owner who also contests the forfeiture of three other assets with a combined value of $350,000, the amount involved would be $1.15 million.

[2] In Department of the Treasury Forfeiture Fund (TFF) agency cases, consult with the Department of the Treasury Executive Office of Asset Forfeiture (TEOAF) counsel and the TFF seizing agency for additional guidance.

### A.3 Amount to be released

For purposes of this chapter, the *amount to be released* means the value of the property that a claimant, defendant, or third party in an ancillary proceeding would recover or would be permitted to retain.

### A.4 Fair market value

For purposes of this chapter, the *fair market value* of real and personal property means the appraised value of the property less the amount of any outstanding costs, such as storage costs, mortgages, liens, and unpaid property taxes.

## B. General settlement principles

Prosecutors must observe the following principles when negotiating and structuring forfeiture settlements.

### B.1 Factual basis

There must be a statutory basis for the forfeiture of the property and sufficient facts stated in the settlement documents or any related pleadings to show a nexus between the property subject to forfeiture and the offense of conviction to justify the forfeiture of the property.

### B.2 Consultation

Prosecutors must negotiate all settlements in consultation with the seizing agency[3] and the U.S. Marshals Service (USMS) where appropriate.[4] The seizing agency's input is essential in order to reach a settlement based on a common understanding of the facts and circumstances surrounding the seizure. Settlements occasionally require that administrative action be taken by the agency to implement those settlements, including, on occasion, accepting a referral of the case back to the agency for administrative forfeiture of all or some of the seized property. When a settlement involves complex assets, complex terms, or risk of loss to the government, prosecutors should seek input from the USMS or the relevant Department of the Treasury (Treasury) Forfeiture Fund agency to determine any current and prospective expenses to ensure that the settlement is fiscally sound from the government's perspective, that the settlement agreement adequately addresses ownership interests and title issues, and that the USMS or the relevant Treasury Forfeiture Fund (TFF) agency may carry out the terms of the settlement.

3 The agency to be consulted regarding the terms of the settlement may not be the "seizing agency." For example, U.S. Customs and Border Protection (CBP) is responsible for processing all seizures made by either CBP or Immigration and Customs Enforcement-Homeland Security Investigations (ICE-HSI). In those cases, a prosecutor must consult both agencies.

4 In Department of the Treasury (Treasury) cases where the USMS is not the custodian of the property, the independent contractor will serve as the property manager and the USMS need not be consulted. It is the responsibility of the seizing agency and authorized designee (CBP in ICE-HSI seizures) to contact the independent contractor when appropriate and to inform it of any settlement proposals.

### B.3 Recovery of investigative and other costs

In general, the government should not attempt to use a settlement to recover the costs of its investigation. It may be appropriate in unusual circumstances, however, to recover extraordinary expenditures, such as funds needed to clean up environmental damage to the forfeited property.

### B.4 Status of administrative forfeiture

As outlined in Chapter 5, Section II.E in this *Manual*, before discussing any settlement, the prosecutor and the investigating agent must determine what property, if any, is presently being processed for administrative forfeiture or has previously been declared administratively forfeited. Property that has been administratively forfeited belongs to the government and, therefore, cannot be returned to a defendant or used to pay restitution or other obligations of the defendant as part of a plea agreement. Accordingly, prosecutors may not reach agreements with defendants or their counsel in a criminal case regarding the return of property that is the subject of a pending administrative forfeiture proceeding unless (1) the seizing agency concurs with a request to suspend administrative forfeiture proceedings or (2) the Money Laundering and Asset Recovery Section (MLARS) approves the decision to return the property.

### B.5 Disagreements

If the seizing agency or the USMS disagrees with the U.S. Attorney's recommended settlement proposal, either agency may refer the matter to the Chief of MLARS for resolution.

### B.6 Property located in another district

To settle a forfeiture action involving property located in another judicial district, the USAO handling the forfeiture must notify and coordinate with the USMS in the district where the property is located. It is the responsibility of the USAO in the district that forfeits property located in another district to comply with the requirements for forfeiture in the district where the property is located. Failure to comply with such requirements may result in a cloud on the government's title that may interfere with the disposal of assets in accordance with settlement terms. Coordination will minimize this possibility.

### B.7 Partial payments

Generally, settlements shall not provide for partial payments. However, the USAO may seek an exception to this policy on the advice and approval of MLARS, in consultation with the USMS and its headquarters Asset Forfeiture Division (AFD).[5] For purposes of this provision, the subsequent forfeiture of assets to satisfy a money judgment does not constitute a partial payment.

### B.8 Reacquiring the property

The settlement should state that the claimant/defendant may not reacquire the forfeited property directly or indirectly through family members or any other agent. Family members or other agents

[5] Prosecutors should also seek the advice and approval of MLARS in Treasury and Department of Homeland Security (DHS) cases.

who already own a partial interest in the forfeited property may, however, purchase the forfeited interest with legitimate funds.

#### B.9 Effect on taxes and other obligations

Settlements do not negate the tax obligations, fines, penalties, or any other monetary obligations that the claimant/defendant owes to the government outside of the forfeiture action.

When a proposed forfeiture settlement will release assets to a claimant/defendant who is known or likely to have other outstanding obligations to the United States (e.g. taxes), prosecutors should notify the appropriate agency (e.g. the IRS) of the proposed settlement.

Additionally, the Debt Collection Improvement Act of 1996 (DCIA) requires Treasury and other disbursing officials to offset federal payments to collect delinquent non-tax debts owed to the United States and to collect delinquent debts owed to states. The Treasury Offset Program (TOP) offsets payments related to the DCIA. Accordingly, settlements should also notify the claimant/defendant that any funds currently on deposit in USMS Seized Asset Deposit Fund (SADF) or Assets Forfeiture Fund (AFF) will have to be processed through TOP before being returned to the claimant/defendant, with the possibility that any of the claimant/defendant's outstanding and delinquent obligations to the federal or a state government might be offset against the payment.

## II. Settlement Approval Authorities

### A. Authorizing officials

U.S. Attorneys, the Chief of MLARS, and the Deputy Attorney General (DAG) have authority to settle civil or criminal forfeiture cases as outlined in the chart below.[6]

| Authorizing Official | Amount Involved | Amount to be Released |
|---|---|---|
| **U.S. Attorney** | Up to $1,000,000 | Any dollar amount |
| **U.S. Attorney** | $1,000,001 to $5,000,000 | Up to 15% of amount involved |
| **MLARS Chief** | Any dollar amount | Less than $2 million and more than 15% of amount involved |
| **Deputy Attorney General (DAG)** | Any dollar amount | More than $2 million and more than 15% of amount involved |

[6] *See* 28 C.F.R. §§ 0.160, 0.161 and 0.168; Attorney General Order No. 1598-92.

### B. Approval authority examples

- A criminal indictment alleges that the defendant must forfeit, upon conviction, various assets where the amount involved totals $3 million. The assets are neither seized nor restrained, but they are listed in the forfeiture allegation in the indictment, and the real property is included in an indictment or subject to lis pendens under state law. As part of a plea agreement, the government agrees not to go forward with the forfeiture of most of the assets but instead agrees to accept a lump sum payment of $750,000 in lieu of forfeiture. Because the agreement allows the defendant to retain assets worth more than $2 million, and which represent more than 15 percent of the total amount involved ($3 million in assets subject to forfeiture), the DAG must approve the plea agreement.
- The government brings a civil forfeiture action against a piece of real property with a market value of $1.5 million but in which the sole claimant has only claimed an interest in $250,000 of the equity in the real property. The government settles with the claimant by agreeing to pay $125,000 out of the proceeds of the sale of the real property. Because the total value of the equity involved—claimant's $250,000 claim—is less than $1 million, the U.S. Attorney has authority to approve the settlement.
- The government files a civil forfeiture action against seized bank accounts and currency in the amount of $1.8 million but agrees as part of a settlement to release 20% ($360,000) to the claimant. Because the total value of the property exceeds $1 million and the amount to be returned is above 15%, the U.S. Attorney does not have authority to settle the case without approval from the Department; but because the amount to be returned does not exceed $2 million, the Chief of MLARS has the authority to approve the settlement without having to consult with the DAG, even though the amount to be returned is more than 15% of the total value.

## III. Using Administrative Forfeiture to Achieve a Settlement

The following procedures apply to settlement agreements in civil judicial forfeiture cases, criminal forfeiture plea agreements, and DPAs and NPAs where an administrative forfeiture is necessary to effectuate the agreement. In such cases, the USAO must consult the headquarters of the seizing agency involved prior to finalizing an agreement to ensure that the agency can accommodate the terms of the agreement. The government should pursue administrative forfeiture, absent an exception identified in Chapter 5, Section II.A.1 in this *Manual*.

### A. Settlement of forfeiture as an administrative forfeiture after a claim is filed in an administrative forfeiture proceeding but before a judicial complaint is filed

The following requirements apply when a claim has been filed in response to a notice of administrative forfeiture and the case has been referred to the USAO but a settlement is reached before the USAO files a civil judicial complaint.

(1) The USAO must reduce the terms of the settlement to writing and include the following:

a. a provision in which the claimant/defendant identifies their ownership interest in the property to be forfeited;

      b. a provision in which the claimant/defendant gives up all of the right, title, and interest in the property so identified;

c. a provision in which the claimant/defendant agrees not to contest the government's administrative forfeiture action and waives all deadlines under 18 U.S.C. § 983(a);

d. a provision in which the claimant/defendant agrees that the property is subject to forfeiture under the applicable civil forfeiture statute;

e. a provision reciting the statutory basis for the forfeiture of the property and sufficient facts to show a sufficient nexus between the property subject to forfeiture and the offense of conviction to justify the forfeiture of the property.

f. specific reference to the withdrawal of the claim, and any pending petitions for remission, *see* Chapter 13, Section I.A in this *Manual*;

g. a "hold harmless" provision and a general waiver of Federal Tort Claims Act (FTCA) rights and *Bivens*[7] actions, as well as a waiver of all constitutional and statutory defenses and claims;

h. where funds are to be returned to the claimant/defendant as part of the settlement, a statement that the return of funds may be subject to offset for any active debts the claimant may have in TOP;

i. a provision in which the claimant/defendant agrees to not reacquire the property (*see* Section I.B.8 in this chapter); and

j. a provision in which the claimant/defendant agrees to bear his or her own costs, attorney's fees, and expenses.

(2) The case should promptly be referred back to the seizing agency to reinstitute the administrative process. The seizing agency shall reinstitute the administrative forfeiture process to effectuate the agreement upon receipt of a referral in compliance with this policy, consistent with its lawful authority.

(3) Property to be administratively forfeited must be eligible for administrative forfeiture under federal law, which in a settlement may include accepting "cash in lieu" of a named and existing forfeitable asset, as discussed in Section VIII.C in this chapter. Substitute assets are not subject to administrative forfeiture.

Where the agreement provides for the claimant/defendant to withdraw the claim to all property subject to forfeiture, the entire case will be referred back to the agency for administrative forfeiture unless, of course, other claims have been filed as to the same property.

Where the agreement provides for the claimant to withdraw only a part of a claim, the case will be referred back to the agency for administrative forfeiture of that portion of the forfeitable property subject to the withdrawal. The remaining property will be handled as specified in the agreement, which may include release of the remaining property to the defendant. Republication of the notice or of the administrative forfeiture action is not necessary, provided publication covering the property to be forfeited occurred prior to the filing of the claim.

[7] *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

### B. Using administrative forfeiture proceeding to settle civil forfeiture case where no prior administrative forfeiture proceeding has commenced

If a prosecutor has commenced a judicial action without a prior administrative forfeiture action, then in order to enter a settlement agreement involving a proposed administrative forfeiture of seized property:

- the headquarters of the seizing agency must concur in that part of the settlement that would obligate the agency to commence administrative forfeiture proceedings;

- the prosecutor must dismiss or amend the complaint to strike the assets to be administratively forfeited;

- the jurisdiction of the district court over the assets to be administratively forfeited must be relinquished before the prosecutor can refer the case to a seizing agency; and

- the property to be administratively forfeited must be eligible for administrative forfeiture under federal law, which in a settlement may include accepting "cash in lieu" of a named and existing forfeitable asset, as discussed in Section VIII.C in this chapter. Substitute assets are not subject to administrative forfeiture.

Following the entry of a settlement agreement and completion of the above steps, the prosecutor will refer the case to the seizing agency. The seizing agency shall initiate the administrative forfeiture process to effectuate the agreement upon receipt of a referral in compliance with this policy, consistent with its lawful authority.

### C. Using administrative forfeiture proceeding to settle a criminal forfeiture action

Prosecutors may settle a criminal forfeiture action through plea or agreement to the administrative forfeiture of any asset if the asset is in fact subject to administrative forfeiture. The headquarters of the seizing agency must concur in that part of the settlement that would obligate the agency to commence administrative forfeiture proceedings. The terms of any plea or agreement should include a waiver of administrative forfeiture deadlines and notice requirements.

Following the entry of a settlement agreement, the prosecutor will refer the case to the seizing agency. The seizing agency shall initiate the administrative forfeiture process to effectuate such an agreement upon receipt of a referral in compliance with this policy, consistent with its lawful authority.

Property to be administratively forfeited must be eligible for administrative forfeiture under federal law, which in a settlement may include accepting "cash in lieu" of a named and existing forfeitable asset, as discussed in Section VIII.C in this chapter. Substitute assets are not subject to administrative forfeiture.

## IV. References to Remission or Restoration in Settlements

No agreement—whether a settlement in a civil judicial action, a plea agreement resolving both criminal charges and the forfeiture of assets in a criminal case, settlement of a claim in an ancillary proceeding, or a DPA or NPA—may contain any provision binding the Department and the agencies to a particular decision on a petition for remission or request for restoration, or otherwise contain terms the effectiveness of which is contingent upon the making of such a particular decision. The remission and restoration processes, like the pardon process in criminal cases, are completely independent of the litigation and case settlement process.[8]

However, in extremely limited circumstances and on request by the USAO, MLARS may adjudicate a properly filed petition for remission or mitigation prior to the negotiation of a forfeiture settlement or entry of a final order of forfeiture. MLARS will only adjudicate a petition for remission or mitigation following consultation with the USAO and receipt of the USAO and agency report and recommendations. Any such decision will include various caveats, such as the evaluation of any other filed petitions, liquidation of the assets and available net proceeds in the case. Upon approval by MLARS in those specific cases only, a settlement agreement may include a provision that expressly leaves open or expressly forecloses the right of any party to file a petition for remission or mitigation.

## V. Settlements in Civil Judicial Forfeiture Cases

Any settlement that purports to forfeit property binds only the parties to it and forfeits only the interest in the property that the settling claimant possesses. The USAO must follow these procedures to ensure that a valid and complete civil judicial forfeiture of the interest occurs through the settlement. The USAO must:

- file a civil verified complaint for forfeiture of the property in the U.S. district court to establish the court's jurisdiction. Filing an action as a "miscellaneous docket," "consent civil decree," and any other attempts to avoid filing a complaint violates the Department's policy requiring that a complaint be filed in each civil forfeiture case;[9]
- provide written notice to all known parties with interest in the property and publish notice;
- if no timely claim has been filed pursuant to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, seek a default judgment pursuant to Federal Rule of Civil Procedure 55 as to all interests in the property other than the interest(s) subject to the settlement agreement; and
- fully incorporate into proposed orders of forfeiture the terms of all settlement agreements, such as any lien or mortgage per diem rates and payoffs or spousal ownership interests.

[8] Although the USAO and seizing agency must provide their recommendations as to the allowance or denial of a judicial petition or request for restoration, the final determination rests with MLARS. *See* 28 C.F.R. § 9.2(b)(2). Prosecutors or seizing agencies must take care not to make representations to the court, the defendant, or potential victims as to whether remission or restoration may be granted. *See* Chap. 14, Secs. II.A and II.B.2 in this *Manual*.

[9] *See* Chap. 5, Sec. II.B.4 in this *Manual*.

## VI. Plea Agreements Incorporating Criminal Forfeiture

In any plea agreement, a defendant may consent to forfeiture of any asset for which the forfeiture is factually supported by the counts of conviction. A plea agreement that purports to forfeit the property may bind only the parties thereto and transfer only the interest that the settling claimant/defendant possesses. Property that has been transferred by a defendant to a third party may still be subject to forfeiture, subject to the third party's right to contest the forfeiture in the ancillary proceeding. The USAO must follow the procedures below to ensure that a valid forfeiture results from a plea agreement. The USAO must

- include in the indictment or information a forfeiture count or allegation. To the extent property is known to be subject to forfeiture, it should be listed in the indictment or information, or in a subsequent bill of particulars. The USAO must ensure that its criminal pleadings comply with Federal Rule of Criminal Procedure 32.2;
- comply with the requirements applicable to third party interests (like 21 U.S.C. § 853(n)(1)–(7) and the provisions of Federal Rule of Criminal Procedure 32.2), including notifying appropriate third parties of the forfeiture and of their right to obtain a post-conviction adjudication of their interests in the property;
- reduce the settlement to forfeit property to writing, and ensure the defendant expressly stipulates to all facts supporting the forfeiture and waives all statutory and constitutional defenses to the forfeiture;[10] and
- ensure that the court issues a preliminary order of forfeiture that incorporates the settlement and includes the forfeiture order in the oral pronouncement of the sentence in the presence of the defendant and in the written judgment of conviction at sentencing.

## VII. Global Settlements and Dealing with Claimants and Witnesses

### A. Ethical considerations

In situations where both a civil forfeiture proceeding and a related criminal investigation or charges are pending, forfeiture attorneys may face ethical issues in the context of settlements, plea agreements, and dealings with witnesses. The discussion below addresses some of these issues, with references to certain pertinent authority; however, in addition to the materials identified here, prosecutors should consult the rules that apply in the state in which they are licensed as well as the state and court(s) in which the proceedings are pending.[11]

### B. Global settlements

The term *global settlement* describes a situation whereby the government concludes a civil or administrative forfeiture action in conjunction with the resolution of the criminal charges involving the same activity that gave rise to the forfeiture of the property. Global settlements may also include

[10] To the extent that the defendant preserves any rights, exceptions should be explicitly expressed and the rights observed should be identified.

[11] *See* 28 U.S.C. § 530B. Department attorneys are "subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State."

other types of proceeding, such as False Claims Act (FCA) treble-damage suits, and federal agency injunctive and civil penalty actions. While such agreements often effectively and efficiently resolve disputed matters, they may also raise ethical issues. Prosecutors must take care to avoid any plea or settlement agreement that risks undermining faith in the fairness of those who administer the criminal process, such as an agreement that appears to reduce prison time in exchange for forfeiture, or vice versa. *See Town of Newton v. Rumery*, 480 U.S. 386, 400 (1987) (O'Connor, J., concurring in part).

Therefore, prosecutors must observe the following principles in negotiating such a global settlement.

(1) No settlement agreement should be used to gain an improper advantage in a related civil or criminal case. The government should *not* agree to release property subject to forfeiture (civil or criminal) to *coerce* a guilty plea on the substantive charges, nor should the government agree to dismiss criminal charges to *coerce* a forfeiture settlement. To the maximum extent possible, the criminal plea and forfeiture should conclude the defendant's business with the government. Delaying consideration of the forfeiture until after the conclusion of the criminal case unnecessarily extends the government's involvement with the defendant and diminishes the effectiveness and efficiency of forfeiture enforcement.

(2) If a plea agreement in a criminal case does not resolve the criminal forfeiture or a related civil forfeiture case, express language to this effect should be included in the plea agreement to remove any doubt or ambiguity on this point.

(3) Where a defendant who is also a claimant in a related civil forfeiture action has negotiated a plea agreement in the criminal case and concurrently wishes to forfeit the property in the related civil forfeiture action, the plea agreement should state that the claimant/defendant is waiving any and all rights—constitutional, statutory, or otherwise—with respect to the civil forfeiture.[12]

(4) The defendant, in the plea agreement, must admit to facts sufficient to support the forfeiture. The government, however, should expressly reserve its right to reopen the civil forfeiture action if it is later determined that the settlement was based on false information, if the defendant violates the plea agreement, or if the agreement is invalidated for any other reason.

Government attorneys should not introduce or suggest a global settlement disposition. If opposing counsel raises the issue, however, prosecutors may respond, and subsequently pursue a global settlement, in close consultation with supervisors and mindful of the relevant ethical issues. The initiation of the global settlement by opposing counsel should be documented by email or other means.

Notwithstanding the above, this policy does not bar the introduction by the prosecutor of negotiations regarding the criminal forfeiture aspects of a criminal prosecution, regardless of any related and pending parallel civil forfeiture actions. A criminal plea agreement should properly address and include the criminal forfeiture of assets related to the criminal offenses to which the defendant is pleading guilty.

[12] To the extent that the defendant preserves any rights, exceptions should be explicitly expressed and the rights observed should be identified.

### C.  Claimants and witnesses

The same ethical considerations of fairness and proper conduct that apply in global settlements also apply in situations where the government attorney interacts with claimants and witnesses in civil forfeiture litigation. These issues may arise where the potential exists for the appearance of a consolidation of governmental power against individuals in a way that could become abusive, or where conditioning the subject's status in a prosecution on that person's cooperation has the appearance of seeking a subject's cooperation solely in connection with a civil forfeiture matter.

For example, a claimant or witness may be required to take action in the civil forfeiture case, such as providing testimony in a deposition, while a related criminal investigation or charges are pending. In that scenario, a claimant or witness may perceive a threat of criminal prosecution. In these circumstances, prosecutors must not coerce cooperation or the provision of testimony in the civil case by threats or promises relating to the criminal proceedings.[13] Government attorneys should not use civil forfeiture discovery or other proceedings solely to obtain information or benefit for the criminal proceeding.[14]

Similarly, an individual who is not currently charged with a crime but who was involved in the offense may have relevant information that would aid the government in pursuing a civil forfeiture case. In a criminal case, the prosecutor could properly advise the witness that if the witness does not tell the truth about what they know, they could be charged for their own involvement in the crime, assuming evidence existed to support a prosecution. Generally, the same should be true in a civil case scenario; no blanket prohibition exists to preclude threatening a prosecution to persuade someone to take a particular action in a civil matter. However, government attorneys must take care to not threaten prosecution solely to gain an advantage in the civil matter (i.e. to ensure that the criminal charges would be brought for some legitimate purpose in addition to gaining an advantage in the civil action). The prosecution must be related to the criminal case and well-founded.

In the context of settling civil forfeiture cases, the government attorney handling the civil case must not harm the government's criminal prosecution, by, for example, compromising a civil forfeiture case to the benefit of a defendant/witness who has already entered into a cooperation agreement with the government. In that circumstance, the civil forfeiture settlement may be viewed as a benefit to the cooperating witness that the government would have to disclose to the defense, and which may be used to impeach the cooperating witness on cross-examination. Thus, prior to negotiating a civil

---

[13] A claimant or witness in a civil forfeiture proceeding who is also a defendant in a pending criminal case may want to cooperate in the civil case in the hope that such cooperation may be a factor in supporting a motion by the government for reduction of sentence pursuant to USSG §5K1.1; however, it is not clear whether or to what extent cooperation in a civil forfeiture case would constitute a factor under USSG §5K1.1, though it is clear that the Sentencing Guidelines expressly separate a defendant's sentence from forfeiture of defendant's property. *See United States v. Hendrickson*, 22 F.3d 170, 175 (7th Cir. 1994) (USSG §5E1.4's explicit language that "forfeiture is to be imposed upon a convicted defendant as provided by statute" makes it "readily apparent that forfeiture was considered by the Sentencing Commission and was intended to be imposed in addition to, not in lieu of, incarceration" (cleaned up)); *cert. denied*, 513 U.S. 878 (1994).

[14] *See In re Phillips, Beckwith & Hall*, 896 F. Supp. 553, 558 n.5 (E.D. Va. 1995) (law firm moved to stay forfeiture action in view of potential criminal charges against firm personnel; court denied stay, noting that allegation of "bad faith on the government's part by, for example, pursuing a civil lawsuit solely for the purpose of aiding a criminal investigation, or threatening or delaying bringing criminal charges in order to extract an advantage in the civil case by keeping the cloud of criminal prosecution overhead" would have produced different outcome).

forfeiture settlement with a cooperating witness/defendant in a pending criminal case, the government forfeiture attorney should consult with the government attorney prosecuting the criminal case.[15]

Ethical issues may also arise where government attorneys include cooperation provisions in civil forfeiture settlements. Cooperation provisions that provide for assistance or cooperation by the claimant in other civil forfeitures or in related criminal proceedings create no ethical problems, so long as the settlement agreement itself stands on its merits, and so long as, if the provision calls for cooperation in a criminal case, it does not run afoul of ethical considerations relating to the interplay of civil and criminal cases noted above.

Again, ethics rules vary from state to state, and MLARS strongly recommends that each attorney dealing with related civil forfeiture and criminal cases consults the rules that apply to the states in which the attorney is licensed and the action is pending. Prosecutors should also consult the ethics advisor in the USAO or the Department's Professional Responsibility Office.

## VIII. Cash in Lieu of Forfeiture of Other Property

### A.  Department of Justice policy

One of the primary goals of the Department's Asset Forfeiture Program is to "punish and deter criminal activity by depriving criminals of property used in or acquired through illegal activities."[16] Forfeiting the "tainted" property itself accomplishes this goal more directly and clearly than forfeiting an agreed sum of money, because accepting cash in lieu leaves the "tainted" property itself in the hands of those whose acts or failures to act made it forfeitable.

Under limited circumstances, however, accepting and forfeiting an amount of money in lieu of the property directly linked to an underlying offense best serves the interests of justice. For example, the forfeiture of cash in lieu of other tangible property may be appropriate in cases where innocent owners own all but a small portion of the property; where forfeiture of the particular property will cause an undue hardship on innocent owners; or where, after balancing the costs and risks of continued litigation, the government determines that settling for part of the value of allegedly forfeitable property is just and appropriate.

Thus, Department policy requires the forfeiture of all available directly forfeitable property rather than a replacement sum of money, unless the interests of justice clearly favor forfeiture of the replacement sum of money. If the interests of justice clearly favor forfeiture of a replacement sum of money, the government may accept and agree to replace directly forfeitable property with a replacement sum of money, subject to the policy limitations outlined in Section VIII.B in this chapter.

### B.  Policy limitations

The following limitations apply to cases in which the directly forfeitable property is available for forfeiture and forfeiting a replacement sum of money would leave the directly forfeitable property in the hands of some or all of its present owners.

---

[15] *See* Sec. I.B.2 in this chapter (the seizing agency or authorized designee must also be consulted in connection with settlement negotiations).

[16] *The Attorney General's Guidelines on the Asset Forfeiture Program* (July 2018) (*AG Guidelines*), Sec. II.

### B.1 Administrative forfeitures

Federal seizing agencies may, as a form of relief from administrative forfeiture, accept and forfeit a sum of money in lieu of directly forfeitable seized property. *See* 19 U.S.C. § 1613(c) (as incorporated by 18 U.S.C. § 981(d), 21 U.S.C. §§ 853(j) and 881(d)); *see also* 18 U.S.C. § 2341 and 19 U.S.C. § 1614. As a matter of policy and discretion, however, the Drug Enforcement Administration (DEA) and the Federal Bureau of Investigation (FBI) limit their use of this authority to cases where such substitution is determined to be in the interests of justice and the agency has received a timely claim for the forfeitable property has been filed pursuant to 18 U.S.C. § 983(a)(2), and referred it to the USAO for initiation of judicial forfeiture proceedings. After consultation with the seizing agency (*see* Section I.B.2 in this chapter), the government may accept a monetary amount in lieu of forfeiture of the seized property and refer the matter back to the seizing agency to effect the settlement.

### B.2 Judicial forfeitures

In a judicial forfeiture case, the government may accept and forfeit an agreed sum of money in lieu of directly forfeitable property, although a court order approving the substitution should be sought and obtained whenever possible. This is true regardless of whether the directly forfeitable property has been seized if the directly forfeitable property is named in the lawsuit and in existence.

These policies do not apply when the government either (1) forfeits substitute assets in a criminal case under 21 U.S.C. § 853(p), because directly forfeitable property is unavailable because of some act or omission of a criminal defendant or (2) sells property, either before or after forfeiture, to persons not involved in or associated with the underlying criminal activity.

## C. “Cash in lieu” vs. “substitute asset”

Liquidation of the property, and replacing it with a sum of money, is often an effective means of preserving forfeitable value. However, and particularly in criminal forfeiture cases, prosecutors must refer to the replacement sum of money as “cash in lieu” or “substitute res” and not as a “substitute asset.”

In criminal forfeitures, substitution of money for tainted property is authorized under the substitute assets provision if the defendant has transferred or commingled interests in directly forfeitable property in a way that makes liquidation and forfeiture of the property itself difficult. *See* 21 U.S.C. § 853(p). The phrase “substitute asset” is a term of art referring to substitute property forfeitable under § 853(p) and 18 U.S.C. § 1963(m). “Substitute assets” are legitimate assets that are subject to forfeiture in place of directly forfeitable property that has been made unavailable for forfeiture solely because of some act or omission of the criminal defendant. As a matter of statutory construction and Department policy, such “substitute assets” may not be restrained or seized under asset forfeiture authority prior to the conviction of the criminal defendant.[17]

By contrast, “cash in lieu” is a sum of clean money that replaces directly forfeitable property prior to forfeiture, either by consent of the parties or by court order. It does not replace property that has been made unavailable for forfeiture by some act or omission of the defendant. Rather, it replaces directly forfeitable property that is currently available and does so by consent or court order; thus,

[17] In certain cases, assets that are not directly traceable to criminal activity can be restrained under other authority, including 18 U.S.C. § 1345.

the replacement sum of money should be subject to restraint and seizure the same as the directly forfeitable property it replaces.

### D. Interlocutory sales[18]

In civil judicial forfeiture cases, interlocutory sales are specifically authorized by Rule G(7)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (Supplemental Rules), which provides that the sale proceeds "are a substitute res subject to forfeiture in place of the property that was sold." Supplemental Rule G(7)(b)(iv).

Under many forfeiture statutes, the proceeds from sale of forfeitable property are directly forfeitable without the need for formal "substitution" because the scope of direct forfeiture under such statutes is "derived from" or "traceable to" the forfeitable property. *See* 18 U.S.C. § 981(a)(1)(A) (authorizing forfeiture of property traceable to property "involved in" money laundering, which includes any property traceable to otherwise forfeitable property) and § 981(a)(1)(C) (property "which constitutes or is derived from proceeds traceable to" any offense constituting "specified unlawful activity"); 21 U.S.C. § 881(a)(6) (property traceable to drug proceeds). "Substitution" of untainted property for forfeitable property is only necessary in the interlocutory sale context where the proceeds from sale of forfeitable property are not themselves directly subject to forfeiture. *See* § 881(a)(7) (authorizing forfeiture of facilitating real property, but not of property derived from or traceable to such property).

In judicial forfeiture cases, the government should request that any interlocutory order substituting money for a forfeitable asset direct the USMS or the appropriate Treasury agency or other property custodian to accept and hold the money, after paying any expenses incurred with respect to the seizure and maintenance of the asset being liquidated or released, pending further orders of the court. Once a substitute res has been forfeited, the USMS or the appropriate Treasury agency must dispose of it in the same manner as other forfeited property.

## IX. Agreements to Exempt Attorneys' Fees from Forfeiture and Payment of Equal Access to Justice Act (EAJA) Fees

Any agreement to exempt an asset from forfeiture so that it can be transferred to an attorney as fees must be approved by the Assistant Attorney General of the Criminal Division (AAG). *See* Chapter 12, Section IV in this *Manual*; *see also Justice Manual* (JM) § 9-120.116.

In limited circumstances, the government may be required to pay attorney's fees under the Equal Access to Justice Act (EAJA) to a third party petitioner who asserted a claim in the ancillary proceeding of a criminal case. Proposed settlements of EAJA claims are subject to the procedures in Chapter 12, Section II.B in this *Manual*.

[18] Prosecutors must consult with MLARS prior to seeking an order for the interlocutory sale of cryptocurrency. *See* Chap. 2, Sec. V.B.3 in this *Manual*.

# Chapter 12: Attorneys' Fees

## I. Payment of Attorneys' Fees in Civil Forfeiture Cases

A claimant in a civil forfeiture case who "substantially prevails" in a civil forfeiture proceeding is entitled to an award of attorneys' fees and other litigation costs, regardless of whether the government was justified in bringing the forfeiture action. *See* 28 U.S.C. § 2465(b). To be eligible for attorneys' fees, however, the claimant must pursue the claim in court and obtain a judgment that the government is liable for attorneys' fees under 28 U.S.C. § 2465.[1] These awards will be paid out of the Department of the Treasury's (Treasury) Judgment Fund.[2]

When the court enters a judgment awarding attorneys' fees, interest, and costs in a civil forfeiture case, the U.S. Attorney's Office (USAO) should submit a request for payment of the award to Treasury's Financial Management Service (FMS), which manages the Judgment Fund. FMS[3] has links to procedures for submitting a request for an award of costs and fees and to the appropriate forms. In addition to the forms and instructions, FMS also contains general information about the Judgment Fund.

## II. Payment of Attorneys' Fees in Criminal Forfeiture Cases

### A. Defendant's attorneys' fees

The defendant in a criminal forfeiture action may file for an award of attorneys' fees only under the Hyde Amendment.[4] A motion for fees and costs filed in a civil forfeiture case under 28 U.S.C. § 2465(b) cannot include fees and costs incurred in even a directly related criminal proceeding.[5] To prevail on a Hyde Amendment claim, the defendant must prove that: (1) the defendant was the prevailing party in the underlying action; (2) the government's position was vexatious, frivolous, or in bad faith; and (3) there are no special circumstances that would make the award unjust.[6] This burden is heavier than the one the government must meet under the Equal Access to Justice Act (EAJA),

---

1 In civil forfeitures of firearms and ammunition pursuant to 18 U.S.C. § 924(d) where a claimant substantially prevails, 28 U.S.C. § 2465(b) applies and the government is liable for reasonable attorneys' fees and other litigation costs.

2 Forms for requesting payments out of the Judgment Fund are available at FMS and should be submitted directly to the office that handles Judgment Fund matters.

3 Visit FMS at ftreasury.gov.

4 "During fiscal year 1998 and in any fiscal year thereafter, the court, in any criminal case (other than a case in which the defendant is represented by assigned counsel paid for by the public) pending on or after the date of enactment of this Act [Nov. 26, 1997], may award to the prevailing party, other than the United States, a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust." Hyde Amendment to the Department of Commerce, Justice, and State, the Judiciary and Related Agencies Appropriations Act of 1998, Pub. L. 105-119, § 617, 111 Stat. 2440, 2519 (1997), codified as a note following 18 U.S.C. § 3006A.

5 *See United States v. 317 Nick Fitchard Rd. N.W. Huntsville, AL*, 579 F.3d 1315 (11th Cir. 2009).

6 *See* Hyde Amendment to the Department of Commerce, Justice, and State, the Judiciary and Related Agencies Appropriations Act of 1998, Pub. L. 105-119, § 617, 111 Stat. 2440, 2519 (1997), codified as a note following 18 U.S.C. § 3006A.

28 U.S.C. § 2412, for civil actions.[7] When a request for attorneys' fees under the Hyde Amendment is based on a criminal prosecution, the defendant should submit it directly to the Hyde Amendment Committee and the Executive Office for U.S. Attorneys (EOUSA). If the request specifically addresses the criminal forfeiture, the defendant should also submit a copy to the Chief of the Money Laundering and Asset Recovery Section (MLARS). Hyde Amendment claim awards are paid from the Judgment Fund.

Despite arising from a criminal action, most courts have found a Hyde Amendment action to be a civil proceeding governed by the Federal Rules of Civil Procedure.[8] Moreover, the Hyde Amendment provides that the procedures and limitations for granting an award shall be derived from those set forth in EAJA.[9] In particular, EAJA requires the parties seeking an award to file their claims within 30 days of final judgment of the underlying civil action.[10] EAJA also provides for the determination of reasonable attorneys' fees and other expenses.[11]

### B. Third party petitioner's attorneys' fees

#### B.1 Legal Authority

Since the Civil Asset Forfeiture Reform Act of 2000 (CAFRA)[12] strictly applies to civil forfeiture proceedings, the third party petitioner in an ancillary proceeding to a criminal forfeiture must assert payment for attorneys' fees under EAJA.[13] EAJA provides for the award of attorneys' fees to prevailing parties in any civil action against the government in which the government's position was

---

[7] *See United States v. Gilbert*, 198 F.3d 1293, 1299–1302 (11th Cir. 1999) (discussing legislative history of the Hyde Amendment). In its original form, the Hyde Amendment tracked the EAJA in its burden and standard of proof but was changed prior to enactment by switching the burden from the government to the plaintiff and heightening the standard of misconduct that must be shown. *Id*. at 1302. *See also United States v. Wade*, 255 F.3d 833, 839 n.6 (D.D.C. 2001) (discussing in footnote that the Hyde Amendment is a heavier burden for petitioner than the EAJA standard); *see also* Sec. II.B in this chapter.

[8] *United States v. Braunstein*, 281 F.3d 982, 994 (9th Cir. 2002), *United States v. Holland*, 214 F.3d 523 (4th Cir. 2000), *United States v. Truesdale*, 211 F.3d 898, 902–904 (5th Cir. 2000), and *United States v. Wade*, 255 F.3d 833, 839 (D.D.C. 2001). *But see United States v. Robbins*, 179 F.3d 1268, 1270 (10th Cir. 1999) (finding a Hyde Amendment action was a criminal proceeding to which the appellate rule for criminal actions applies).

[9] "Such awards shall be granted pursuant to the procedures and limitations (but not burden of proof) provided for an award under Title 28, U.S.C. § 2412." Hyde Amendment to the Department of Commerce, Justice, and State, the Judiciary and Related Agencies Appropriations Act of 1998, Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519 (1997), codified as a note following 18 U.S.C. § 3006A.

[10] 28 U.S.C. § 2412(d)(1)(B).

[11] 28 U.S.C. § 2412(d)(2)(A).

[12] Pub. L. 106-185, Apr. 25, 2000, 114 Stat. 202.

[13] *See United States v. Stanholtzer*, 492 F. App'x. 799, 801 (9th Cir. 2012) (section 2465(b) applies only to civil forfeiture, not the ancillary proceeding); *see also United States v. Moser*, 586 F.3d 1089, 1092–1096 (8th Cir. 2009) (prevailing third party in ancillary proceeding is not entitled to recover attorneys' fees under CAFRA); *United States v. Nolasco*, 354 F. App'x. 676, 679–681 (3d Cir. 2009).

not substantially justified.[14] A third party claimant's ancillary proceeding to a criminal forfeiture is considered a "civil action" under EAJA.[15]

EAJA requires the court to award fees upon finding that (1) the applicants were the prevailing parties, (2) the government's position was not substantially justified, and (3) no circumstances exist that would make an award unjust.[16] Payment of attorneys' fees awarded under EAJA will be paid "from any funds made available to the agency by appropriation *or otherwise*." 28 U.S.C. § 2412(d)(4) (emphasis added). Generally, the Assets Forfeiture Fund (AFF) is not available to pay judgments arising from asset forfeiture cases, including costs and attorneys' fees. However, the Department of Justice's (Department) has the legal authority under 28 U.S.C. § 524(c)(1)(A) to permit the use of the AFF to pay EAJA awards arising from actions related to the seizure, attempted forfeiture, or forfeiture of property. AFF allocations represent funds that are "otherwise" available to an agency. The Chief of MLARS must expressly approve in writing any EAJA award before it may be charged against the AFF or an agency's AFF allocation.[17]

### B.2 Procedure

MLARS may authorize payment of an EAJA award from the AFF when (1) federal participants acted in a way that was clearly consistent with current law and Department policy[18] or (2) federal participants acted in good faith, but it is not clear that their actions were consistent with existing law and Department policy. The AFF will not be available, either directly or indirectly, to fund the EAJA award in any case in which the court finds bad faith or intentional disregard for existing law or Department policy by the federal participants. If the Chief of MLARS denies authorization for the payment from the AFF, the attorneys' fees awarded under EAJA may be paid from the operating budget of the federal government participants in the case.

If the government has contested the case and incurred an adverse judgment,[19] the prosecutor should immediately provide a copy of the court order to all involved agencies to permit their participation in preparation of the EAJA request. The USAO should forward the request to MLARS within five (5) business days of the court order. The request should include, as appropriate:

- a copy of the court order awarding a claimant attorneys' fees under 28 U.S.C. § 2412(d);

---

[14] "Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust… (4) Fees and other expenses awarded under this subsection to a party shall be paid by any agency over which the party prevails from any funds made available to the agency by appropriation or otherwise." 28 U.S.C. § 2412(d)(1)(A) and (4).

[15] *United States v. Douglas*, 55 F.3d 584, 587 (11th Cir. 1995); *United States v. McAllister*, No. 95–430–03, 1998 WL 855498, *3 (E.D. Pa. Dec. 9, 1998); *United States v. Bachner*, 877 F. Supp. 625, 627 (S.D. Fla. 1995).

[16] *Jean v. Nelson*, 863 F.2d 759, 765 (11th Cir. 1988).

[17] The AFF and AFF allocations are *not* available to fund EAJA awards in non-forfeiture cases. Therefore, the USAO should not notify MLARS of actions in non-forfeiture cases.

[18] This includes those in cases in which: (1) MLARS is involved in planning a specific case or program initiative and the federal participants were executing the planned initiative in good faith; (2) the federal participants were executing their responsibilities in consonance with current law and Department policy but the court creates a novel reason or basis for overturning a case that could not be anticipated; or (3) similar "no fault" cases.

[19] *See* Justice Manual (JM) § 9-2.170 for adverse decision reporting and approval requirements.

- a copy of any pleadings or answers, or a description of any litigative position that was cited as a basis for the award;
- a description of any governmental action not referenced above that was cited as a basis for the award; and
- a description of any extenuating factors affecting the federal participants that should be considered.

If the USAO is proposing to settle an EAJA claim, the USAO should provide these materials (minus the court order) to MLARS *before* agreeing to any settlement. This policy is in addition to other policies governing forfeiture settlements referenced in Chapter 11 in this *Manual*.

The government should not include any reference to the source of funds for paying any award in any proposed court orders drafted by the government. The identification of appropriate sources of funding to pay court judgments is an Executive Branch function and may vary from case to case depending on the facts of the case.

Once approved, MLARS will notify the USAO, EOUSA, and Asset Forfeiture Management Staff (AFMS). AFMS will instruct the U.S. Marshals Service (USMS) to charge the award directly against the AFF from the federal participants' case-related expenses category. Responsibility for an EAJA award will generally be allocated equally among the participants, including the USAO, but MLARS may modify this allocation, depending on specific findings made by the court and extenuating circumstances described by the participants.

## III. Payment of Attorneys' Fees in Forfeiture Cases Chart

| Forfeiture Type | Funding Source | Payment Authority | Approval Authority | Standard |
|---|---|---|---|---|
| **Civil** | Judgment Fund | CAFRA, 28 U.S.C. § 2465(b) | FMS | Mandatory award of attorneys' fees and other litigation costs to non-government parties who substantially prevail in a civil forfeiture proceeding. |
| **Criminal** | Judgment Fund | Hyde Amendment[20] | EOUSA and Hyde Amendment committee | Award of attorneys' fees to defendants in criminal actions in which the government's position was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust. |
| **Third Party Petitioners in Ancillary Proceeding to Criminal Forfeiture** | AFF | EAJA, 28 U.S.C. § 2412(d)(4) | MLARS Chief | Award of attorneys' fees to prevailing parties in any civil action against the government in which the government's position was not substantially justified, and no circumstances exist that would make an award unjust.<br>A third party claimant's ancillary proceeding to a criminal forfeiture is considered a "civil action" under EAJA. |

## IV. Forfeiture of Attorneys' Fees

The policy on the forfeiture of attorneys' fees is set forth in the *Justice Manual* (JM).[21] As set forth in the *Justice Manual*, any action to forfeit attorneys' fees in a civil or criminal case as well as any agreement *not* to seek forfeiture of attorneys' fees in a case requires the approval of the Assistant Attorney General for the Criminal Division (AAG).

[20] Pub. L. 105-119, § 617, Nov. 26, 1997, 111 Stat. 2519, codified as a note following 18 U.S.C. § 3006A.

[21] *See* JM § 9-120.000 et seq.

# Chapter 13:
# Post-Forfeiture Third Party Interests

## I. Petitions for Remission and Mitigation

Once assets have been forfeited, the authority to distribute them to owners, lienholders, or victims rests solely with the Attorney General. *See* 18 U.S.C. § 981(d) (civil forfeitures); 21 U.S.C. § 853(i)(1) (pertaining to controlled substances violations) incorporated by reference in 18 U.S.C. § 982(b)(1) (criminal forfeiture); 21 U.S.C. § 881 (controlled substances violations); *see also* 28 C.F.R. Part 9. Congress granted complete discretion to the Attorney General to remit or mitigate forfeitures as an "act of grace," and no judicial review of remission decisions is available. *See United States v. 1957 Buick Roadmaster*, 167 F. Supp. 597, 601 (E.D. Mich. 1958).

The federal regulations at 28 C.F.R. Part 9 govern the remission of administrative, civil or criminal forfeiture. The Attorney General delegated the authority to decide petitions for remission in judicial cases to the Chief of the Money Laundering and Asset Recovery Section (MLARS). *See* 28 C.F.R. § 9.1(b)(2). In administrative forfeitures, the authority to decide petitions for remission or mitigation rests with the seizing agency. *See* 19 C.F.R. §§ 171.11–171.14 and 172.2; 26 C.F.R. Part 403.35–403.45; 28 C.F.R. § 9.1(b)(1).

Questions regarding administrative forfeiture policies and procedures should be directed to the forfeiting agency. *See* Chapter 14 in this *Manual* for a discussion of the policies and procedures governing the remission and restoration of forfeited property to victims.

### A. Owners

An innocent owner's right to file a petition for remission or mitigation is distinct from the right to file a claim in an administrative or judicial forfeiture proceeding.[1] Consequently, the Department of Justice (Department) must rule on petitions for remission filed by petitioners who claim that they have an owner or lienholder interest in a forfeited asset, notwithstanding the fact that they may have already filed an unsuccessful judicial claim. If a claimant consents to a judicial forfeiture, U.S. Attorney's Offices (USAO) should include petition withdrawal language in their plea agreements and forfeiture stipulations so that MLARS may summarily extinguish any pending petitions that have been rendered moot. Absent a petitioner's explicit petition withdrawal, MLARS may not summarily extinguish a pending petition and must issue a decision on the merits of the petition.

Remission may be granted if petitioners demonstrate that they have a valid, good faith, and legally cognizable interest in the seized property as an owner. *See* 28 C.F.R. § 9.5(a)(1). The petitioner must further demonstrate that they are an "innocent owner" as defined by 18 U.S.C. § 983(d)(2)(A) or (3)(A). The ruling official shall presume a valid forfeiture and shall not consider whether sufficient evidence supports the forfeiture. *See* 28 C.F.R. § 9.5(a)(4). The petitioner has the burden of establishing the basis for granting a petition for remission or mitigation of forfeited property. *See* 28 C.F.R. § 9.5(a)(3).

[1] Many forfeiture cases begin administratively and become judicial after a party files a claim challenging the agency's administrative forfeiture and the U.S. Attorney's Office (USAO) begins a civil judicial or criminal forfeiture case. Often the party files both a claim and petition. MLARS must eventually adjudicate the petition where a judicial forfeiture case has commenced but only after the claim is resolved in the case. However, the petitioner need not submit a second remission petition. The seizing agency should forward the petition to the USAO, which will further submit to MLARS. *See also* Chap. 14, Sec. II.A. in this *Manual*.

Because owners typically petition for the forfeited property itself, property should not be sold before a remission decision is issued if there is a pending owner petition. However, if the property is sold before remission is granted, an owner shall receive the proceeds of the sale, less any costs incurred by the government if the owner's petition is granted. The ruling official may waive these costs. *See* 28 C.F.R. § 9.7(a)(3).

### B. Lienholders

Lienholders may qualify for remission only if they can also demonstrate that they are innocent as defined by 18 U.S.C. § 983(d)(2)(A) or (3)(A). *See* 28 C.F.R. § 9.5(a)(1). If remission is granted to an innocent lienholder, the lienholder may receive: (1) the property itself, or (2) a payment up to the lienholder's net equity, less the expenses and costs incident to the forfeiture and sale of the property. *See* 28 C.F.R. § 9.7(b)(2)(ii). If the lienholder opts to claim the property itself, the lienholder must pay the United States the costs and expenses incident to the forfeiture and any value of the property exceeding the lienholder's net equity. *See* 28 C.F.R. § 9.7(b)(2)(i). If the lienholder agrees to the sale of the property, the lienholder may receive the amount up to their net equity, less the costs and expenses incident to the forfeiture and sale of the property. *See* 28 C.F.R. § 9.7(b)(2)(ii). The ruling official, at their discretion, may waive costs and expenses incident to the forfeiture. *See* 28 C.F.R. § 9.7(b)(2)(i) & (ii).

A general creditor holding an unsecured debt may not be granted remission or mitigation unless it otherwise qualifies as an owner, lienholder, or victim. *See* 28 C.F.R. § 9.6(a).

A creditor holding a judgment against the owner of the forfeited property will only be recognized as a lienholder if:

(1) the judgment was duly recorded before the seizure of the property for forfeiture;

(2) under applicable state or local law, the judgment constitutes a valid lien on the property that attached to it before the seizure of the property for forfeiture; and

(3) the petitioner had no knowledge of the commission of any act giving rise to the forfeiture at the time that the judgment became a lien on the forfeited property.

*See* 28 C.F.R. § 9.6(f)(1). A judgment creditor's lien must be registered in the district where the property is located if the judgment was obtained outside the district. *See* 28 C.F.R. § 9.6(f)(3).

### C. Mitigation

Mitigation is an alternative remedy for owners and lienholders. *See* 28 C.F.R. § 9.5(b). The ruling official may mitigate a forfeiture where an owner or lienholder has not met the minimum conditions for remission but the ruling official finds that some relief should be granted to avoid extreme hardship, mitigation will promote the interests of justice, and mitigation will not diminish the deterrent effect of the law. *See* 28 C.F.R. § 9.5(b)(1)(i). The ruling official may also grant mitigation to an owner or lienholder who has met the minimum conditions of remission but where the overall circumstances do not warrant complete relief. *See* 28 C.F.R. § 9.5(b)(1)(ii).

Non-innocent owners may qualify for mitigation in some cases. *See* 28 C.F.R. § 9.5(b)(2). The ruling official may grant mitigation to an owner or lienholder involved in the offense underlying

the forfeiture when certain mitigating factors exist (such as the lack of a prior record or evidence of similar criminal conduct); if the violation does not include drug distribution, manufacturing, or importation; the fact that the violator has taken steps like drug treatment to prevent further criminal conduct; the fact that the violation was minimal and not part of a larger criminal scheme; the fact that the violator cooperated with law enforcement investigations relating to the criminal conduct underlying the forfeiture; or the fact that complete forfeiture of an asset is not necessary to achieve the legitimate purposes of forfeiture.

### D. Procedure for notice and processing petitions

In administrative forfeiture cases, the agency must notify potential owners and lienholders of the opportunity to file petitions for remission or mitigation of forfeiture.[2] *See* 28 C.F.R. § 9.3(a). In judicial cases, the USAO must notify potential owners and lienholders of the opportunity to file petitions for remission or mitigation of forfeiture. *See* 28 C.F.R. § 9.4(a). Petitioners who have filed a petition in an administrative forfeiture case are not required to refile a petition for remission or mitigation if the USAO institutes judicial forfeiture proceedings.

Once a seizing agency or the USAO receives a petition for remission or mitigation, the seizing agency must conduct an investigation of the petition and issue a decision in administrative forfeitures, or a report and recommendation in judicial forfeitures. For judicial forfeiture, the USAO then must prepare its own recommendation on the petition and send the petition, report, and recommendations to MLARS, along with any necessary supporting documentation. Although the USAO and seizing agency must provide their recommendations as to the grant or denial of a petition for remission for judicially forfeited assets, the final determination rests with MLARS. MLARS will notify the petitioner of its decision. Petitions are decided based on written documentation. There is no right to a hearing on the petition. *See* 28 C.F.R. § 9.4(g). Unsuccessful petitioners are entitled to one request for reconsideration, which is reviewed and decided by a different ruling official.

### E. Priority of payments

If the seizing agency and the USAO receive multiple petitions, innocent owners have first priority, followed by lienholders, federal financial institution regulatory agencies not constituting owners or lienholders, and victims. *See* 28 C.F.R. § 9.9(a). All pending petitions for remission or mitigation must be ruled on before any official use or equitable sharing of forfeited proceeds occurs.

### F. Cultural property

When the U.S. government forfeits cultural property that has been removed from a foreign country or tribal authorities, the government often seeks to return the property to its country of origin. A foreign government may submit a petition for remission for forfeited cultural property if it can demonstrate a valid, good faith, legally cognizable ownership interest in the forfeited cultural property. In many cases, cultural property is stolen from a government institution like a museum, and a foreign government can easily demonstrate that it was the titled owner of the property. In other cases,

[2] For any asset identified within the public notices of forfeiture, forfeiture.gov's petition information page has updated public-facing forms and petition filing FAQs. For any asset seized by Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Drug Enforcement Administration (DEA), Federal Bureau of Investigation (FBI), USAO, or United States Postal Inspection Service (USPIS) that is identified within the public notices of forfeiture, a petition may also be filed on forfeiture.gov.

cultural property may be returned to its country of origin even if the foreign government was not the titled owner. This is usually accomplished by recognizing foreign laws that establish governmental ownership of cultural property. If agencies and USAOs want to use this alternate theory of ownership, they should determine whether an appropriate cultural patrimony law exists before planning to return forfeited cultural property to a foreign government.[3] Agencies and USAOs should coordinate any communications about petitions for remission with a foreign governmental representative with either the Department's Office of International Affairs (OIA) or the seizing agency attaché. *See Justice Manual* § 9-13.540.

In judicial cases involving forfeitures pursuant to 19 U.S.C. § 2609 (Convention on Cultural Property Implementation Act (CPIA)), the government must first offer to return forfeited property to countries who are parties to CPIA. In these cases, MLARS will conduct a summary review of the case and issue a concurrence letter. USAOs should submit CPIA requests to MLARS just as they would submit typical remission petitions.

## II. Qui Tam Actions: Payment of Relator's Share

### A. Overview of the False Claims Act (FCA)

The False Claims Act (FCA) imposes civil liability on any person who submits a false or fraudulent claim to the government. *See* 31 U.S.C. §§ 3729–3733. An action may be filed by the Attorney General or a private person on behalf of the government. *See* § 3730(a)–(b). An action filed by a private person is known as a qui tam suit, and the private party filing the action is referred to as the relator. The government can intervene in and take over the litigation of a qui tam suit or permit the relator to pursue the qui tam suit on their own. *See* § 3730(b)(4). If the qui tam suit is successful, the government recovers the judgment and pays part of it to the relator. *See* § 3730(d). The relator's share of any recovery depends in part on whether the government intervenes in the action. *See* § 3730(d)(1)–(2).

FCA permits the relator to object to a settlement of the relator's claim. *See* 31 U.S.C. § 3730(c)(2)(B). However, the government may settle notwithstanding a relator's objection if the court determines after a hearing that the settlement is "fair, adequate, and reasonable." *Id*.

In addition, FCA provides that in qui tam suits the government "may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty." *See* 31 U.S.C. § 3730(c)(5). FCA further provides that "the person initiating the action shall have the same rights in such proceeding as such person would have if the action had continued under this section." *Id*.

The purpose of this "alternate remedy" provision is to provide the government with maximum flexibility to choose the best forum for pursuing its fraud claims against the defendant. *See* S. Rep. 99-345, 99th Cong., 2d Sess. 27, reprinted in 1986 U.S.C.C.A.N 5266, 5292. Thus, the alternate remedy provision authorizes the United States to stay the relator's FCA action and choose instead to pursue its fraud claims against the defendant through an alternative proceeding, in lieu of the relator's action under the FCA. *See* S. Rep. 99-345, 99th Cong., 2d Sess. 27. ("While the Government will have the opportunity to elect its remedy, it will not have an opportunity for dual recovery on the same claim or claims.") To ensure that the relator is not prejudiced if the government

[3] Information about applicable cultural patrimony laws can be found in the UNESCO Database of Cultural Heritage Laws.

pursues an alternate remedy, the relator is granted the same rights in the alternative proceeding that the relator would have had in the civil action under FCA, including the right to participate in the proceedings, to object to any settlement of the proceeding, and to receive a share of any recovery as described in Section II.D in this chapter. *See* 31 U.S.C. § 3730(c)(5).

### B. Forfeiture proceedings as alternate remedies

The Department's view is that a forfeiture proceeding does not qualify under FCA as an alternate remedy giving rise to a relator share because the alternate remedy provision encompasses only those proceedings that are properly viewed as a substitute for the relator's civil claims under FCA. Thus, the alternate remedy provision is limited to alternative proceedings to redress the submission of false or fraudulent claims and does not extend to forfeiture or other criminal proceedings that do not serve as a substitute for such claims.

Several courts have considered the question of whether a criminal proceeding qualifies as an alternate remedy under FCA and concluded it does not. In *United States v. Lustman*, No. 4:05-CR-40082, 2006 WL 1207145, *3 (S.D. Ill. May 4, 2006), the Court rejected the relators' motion to intervene in, and obtain a share of the proceeds of, a criminal proceeding instituted against one of the defendants named in their qui tam action. As part of that criminal proceeding, the defendant was ordered to pay restitution. *Id*. at *1. The Court concluded that the alternate remedy provision did not encompass criminal proceedings. *Id*. at *3. The Court also concluded that the relators' motion was moot because the restitution paid by the defendant had already been disbursed. *Id*.

Similarly, in *United States ex rel. Oehm v. Nat'l Air Cargo, Inc.,* No. 1:05-CV-00242, 1 (W.D.N.Y. Feb. 15, 2008), the government executed a global settlement with the defendant that resolved the FCA claims as well as separate criminal and civil forfeiture proceedings. The Court rejected the relator's request for a share of the global settlement attributable to the criminal and civil forfeiture proceedings, reasoning that "the existence of an 'alternate remedy' can be found only if the government has not pursued the [FCA] claims instituted by the relator." *Id*. at 7–8.

In *United States ex rel. Babalola v. Sharma*, 746 F.3d 157, 158 (5th Cir. 2014), two relators filed suit against their former employers, alleging that the defendants defrauded the government by filing tens of millions of dollars in fraudulent Medicare and Medicaid claims. However, the relators did not file their qui tam action until after the government's prosecution and during the pendency of the defendants' direct criminal appeal. Id. at 159. The district court held, and the appellate court affirmed, that because there was no qui tam action pending at the time the government pursued criminal charges, the criminal charges could not be deemed an alternate remedy under FCA. *Id*. at 161–162.

However, in *United States v. Bisig*, No. 1:00-CV-00335, 2005 WL 3532554, *4 (S.D. Ind. Dec. 21, 2005), the district court found that a criminal forfeiture proceeding constituted an alternate remedy under the FCA. In this case, the government sought to freeze the defendants' assets, and then subsequently filed an indictment against the defendants, which included a criminal forfeiture allegation. *Id*. at *1–2. One of the defendants named in the indictment was also named in a qui tam suit, which the government declined to take over. *Id*. The relator in the qui tam suit argued that the criminal forfeiture proceeding constituted an alternate remedy to its FCA action, and the Court agreed. *Id*. at *2. The Court noted that the relator was the first to uncover the fraud, the government had stayed the relator's case pending a resolution of the criminal proceeding, and the government's forfeiture action would leave the defendant without any assets. *Id*. at *4. The Court concluded on

these facts that the government "had made an actual monetary recovery by the relator in the qui tam action either impossible or futile" and thus "in effect, elected to pursue its claim through an alternate remedy under [31 U.S.C.] § 3730(c)(5)." *Id*. The Court held that the alternate proceeding in that case, however, was just the criminal forfeiture proceeding, and thus the relator's right to participate as a party was limited to that proceeding, and not the entire criminal prosecution. *Id*. at *6. The Court agreed that allowing a relator to participate in criminal proceedings generally "would be an undesirable result." *Id*.

Thus, following the reasoning in *Bisig*, some courts may be inclined to find an alternate remedy where a criminal proceeding will recover most or all of a qui tam defendant's assets, particularly if the government also stayed the relator's qui tam suit in favor of the criminal case. Under such circumstances, the courts may conclude, as the *Bisig* court did, that the government deprived the relator of any meaningful opportunity to pursue the qui tam suit, and therefore the criminal proceeding was effectively a substitute for that suit. Accordingly, in such circumstances (i.e. where the criminal proceeding will render the defendant without assets to satisfy an FCA judgment, and particularly where the government has stayed the qui tam case to pursue the criminal case), it may be appropriate to consider a negotiated resolution of the alternate remedy issue, provided that other bases to challenge the relator's entitlement to a share do not exist.[4]

In all events, if a relator seeks to intervene or file a claim in any forfeiture proceeding, the prosecutor must immediately consult government counsel on the FCA action or the Director of the Department's Commercial Litigation Branch, Fraud Section, Civil Division.

### C. Source of relator's right to recover

To the extent that a relator is awarded a share of any forfeiture proceeds under FCA's alternate remedy provision, the relator's entitlement to the proceeds arises strictly out of FCA and does not constitute a claim of ownership or interest in the specific property forfeited. Consequently, a qui tam relator does not qualify as a third party entitled to relief pursuant to 21 U.S.C. § 853(n) or 18 U.S.C. § 983(d). *See United States v. Bisig*, No. 1:00-CV-00335, 2005 WL 3532554, *6–7 (S.D. Ind. Dec. 21, 2005) (granting relator's motions to intervene and for adjudication of relator's interest in forfeited property despite the fact that relator does not qualify for relief under 21 U.S.C. § 853(n) because relator has a valid claim under FCA). Likewise, the qui tam relator is not a victim or third party generally entitled to recovery pursuant to the regulations governing petitions for remission. *See* 28 C.F.R. § 9.4(b) (providing that only petitioners as defined in 28 C.F.R. § 9.2(o) or attorneys and guardians on their behalf may file a petition for remission) and 28 C.F.R. § 9.2 (defining *petitioner* to include an owner, a lienholder, or a victim as defined in other subparts of 28 C.F.R. § 9.2).

[4] The following issues may constitute bases to challenge the relator's entitlement to a share of the judgment: (1) the validity of the qui tam action; (2) the relator's allegations are based on a "public disclosure" and the relator does not qualify as an original source of those allegations; or (3) jurisdictional and non-jurisdictional reasons (for example, where a relator is not the first to file or has failed adequately to plead a FCA claim) why a relator has failed to file a valid action. *See* 31 U.S.C. § 3730(e)(4); Department briefs filed in *United States ex rel. Hefner v. Hackensack Med. Ctr.*, 495 F.3d 103 (3d Cir. 2007), and *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634 (6th Cir. 2003). Moreover, even where a relator's action is proper, the relator may be entitled only to a reduced share. *See* 31 U.S.C. § 3730(d)(1) & (3).

### D.  Relator's share is a percentage of the net forfeiture recovery

If a court orders—or the Commercial Litigation Branch decides—that the forfeiture constitutes an alternate proceeding and the relator is entitled to a share of the recovery, then the relator must be awarded a percentage of the net forfeiture recovery.[5] The exact percentage share to be received by the relator should be determined in FCA action by agreement of the parties or by adjudication.[6] While it is preferable for this determination to be made prior to the final disposition of the forfeited assets, this may not always occur. In fact, where FCA action will be litigated after the forfeiture proceeding, it is unlikely that the relator's share will be determined prior to the final disposition of the forfeited assets. In such instances, the relator might request that up to 25% of the total forfeiture recovery be escrowed in case such funds are later needed to satisfy the relator's share.[7] Because the proceeds of the forfeiture will be deposited into the Assets Forfeiture Fund (AFF), an escrow is not necessary and prosecutors should oppose the request.[8] Determining the dollar value of the relator's share is more complicated. In the context of a forfeiture, "the proceeds of the action" would be the amount of money available for deposit into the AFF—i.e. the net recovery, which can be defined as the value of the forfeited property less the value of any valid claims and the costs associated with the seizure, forfeiture, and disposal of the property. Consequently, the dollar value of the relator's share cannot be determined until all claims and expenses are paid and the amount available for deposit into the AFF is fixed.[9]

The dollar value of the relator's share is calculated in the same fashion when the forfeiture action is resolved by settlement. Where possible, the United States should obtain the relator's agreement to the forfeiture settlement. Pursuant to the statute, however, the United States may settle the action with the defendant notwithstanding the objection of the relator "if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances." *See* 31 U.S.C. § 3730(c)(2)(B).

---

[5]  Under the FCA, the percentage of the proceeds that the relator is entitled to recover varies depending on whether the United States intervenes in the relator's action, as well as other factors. *See* 31 U.S.C. § 3730(d)(1) & (2). Assuming that the relator is not otherwise barred from claiming a share of the proceeds, determination of the relator's share will involve two related inquiries: first, the "percentage" of the proceeds of the action to be awarded to the relator, and second, the value of those "proceeds." Section 3730(c)(5) makes these inquiries applicable to a proceeding qualifying as an alternate remedy. The Civil Division has issued guidelines governing the determination of relator share percentages. The Fraud Section or government counsel in the FCA action—not forfeiture counsel—is responsible for determining or litigating the relator's share issue.

[6]  Where the issue of the relator's share is addressed may well depend on the forum in which the relator chooses to pursue it; however, the government should advocate for the determination to be made in FCA action whenever such litigation remains viable.

[7]  Relators have made similar requests regarding the escrow of funds paid toward restitution and criminal fines. Where the restitution is payable to governmental victims, the government may consider such requests, particularly where the FCA action will not be completed. However, prosecutors should always oppose requests for an escrow of funds due to individual victims or for criminal fines.

[8]  Until the relator's share is determined, the Department will not know the amount of funds that will remain in the AFF. Therefore, final decision on any petition for remission or mitigation should be deferred until the relator's share is determined, unless the total value of all petitions for remission or mitigation is less than 75% of the net forfeiture recovery.

[9]  On request of the relator, the United States may provide the total expenses incurred in connection with a forfeiture action. In the Department's view, relators have no right to challenge forfeiture expenses or intervene in property management issues, and therefore, are not entitled to a detailed itemization of forfeiture expenses, even if the forfeiture action is determined to be an alternate remedy.

### E. Procedure for paying relator's share

Because the relator's share is mandated by Congress, it is a necessary expense incident to the forfeiture of the property as provided for in 28 U.S.C. § 524(c)(1)(A).The government should obtain an order in the FCA action that reflects the percentage share of the net recovery to be paid to the relator and should forward a copy of the order to the U.S. Marshals Service (USMS), directing the USMS to pay the relator's share.

The Department of the Treasury (Treasury) Forfeiture Program takes a similar approach on the legal theories supporting a relator's share as a necessary expense incident to the forfeiture of the property pursuant to 31 U.S.C. § 9705(a)(1)(A). Payment is coordinated through the seizing agency and the Treasury Executive Office for Asset Forfeiture (TEOAF) and is usually processed using a Form 7 refund package if the funds are already in the Treasury Forfeiture Fund (TFF). However, please contact the seizing agency counsel or TEOAF Legal Counsel for assistance.

# Chapter 14:
# Forfeiture and Compensation for Victims of Crime

## I. Overview

Forfeiture is a critical tool in the recovery of illicit gains arising from financial crimes such as fraud, embezzlement, and theft. Returning forfeited assets to victims through the remission and restoration processes is one of the primary goals of the Department of Justice's (Department) Asset Forfeiture Program.[1] *See* Chapter 13 of this *Manual*. Remission and restoration authority exists for virtually all offenses for which the government obtains a related administrative declaration of forfeiture, or civil or criminal forfeiture order.[2] *See* 18 U.S.C. § 981(e)(6) (civil forfeiture), and 21 U.S.C. § 853(i)(1) (while § 853(i) governs the procedures for disposing of property criminally forfeited under the drug abuse prevention and control laws, those procedures are incorporated by reference in 18 U.S.C. § 982(b)(1), which extends those procedures to most other criminal offenses). There are three primary means to pay victims—restitution, remission, and restoration. Restitution refers to the process of determining victim losses for purposes of sentencing and paying victims in criminal cases, often, but not always, through collections from defendants and via the Federal Debt Collections Procedures Act. Remission is a process whereby, in a civil or criminal forfeiture case, the Department solicits, considers, and rules on petitions for payment. The petitions can be submitted by, among other petitioners, victims. The federal regulations governing the remission of civil or criminal forfeiture are found at 28 C.F.R. Part 9.

Restoration is a hybrid process available in both civil and criminal forfeiture cases that are closely related to a criminal prosecution in which a court has issued a restitution order identifying victims and restitution losses for which a defendant is liable. The restoration procedure of the Department's Criminal Division enables the Attorney General to transfer forfeited funds to a court for satisfaction of a criminal restitution order, provided that all victims named in the order otherwise qualify for remission under the applicable regulations.

Remission, restoration, and criminal restitution all serve to compensate victims through related but distinct mechanisms. Remission and restoration are discretionary procedures for victim recovery from forfeitures and are available to persons who have incurred pecuniary losses from the offense underlying the forfeiture or from a related offense. Restitution is an equitable remedy intended to make crime victims whole and prevent unjust enrichment to the perpetrator. In many cases, restoration—the use of forfeited funds to pay restitution—is desirable, because the defendant may be left without assets to satisfy their restitution obligation following forfeiture.

---

[1] *See The Attorney General's Guidelines on the Asset Forfeiture Program* (July 2018) (*AG Guidelines*), Sec. II.

[2] Funds shared with the United States by a foreign government that have not been forfeited under U.S. law may not be eligible to be used for victim remission or restoration via the Money Laundering and Asset Recovery Section (MLARS). However, depending upon the circumstances of the case, it may be possible to employ other mechanisms for using such shared funds to make victims whole. If U.S. prosecutors or investigators assisted in a foreign case involving victims that resulted in a foreign forfeiture, they should also contact MLARS for guidance on potential alternative mechanisms and submission of a sharing request to that country. *See* also Chap. 8, Sec. XIII in this *Manual*.

The Department of the Treasury Forfeiture Fund (TFF) has a similar procedure for remission and restoration.[3] Please consult the *Guidelines for Treasury Forfeiture Fund Agencies on Refunds Pursuant to Court Orders, Petitions for Remission, or Restoration Requests* (*Treasury Blue Book*).[4]

## II. Returning Forfeited Assets to Victims

### A. Remission

For administrative forfeitures, the seizing agency should provide notice to all parties believed to be victims. The notice should advise victims of the right to file a petition for remission under 28 C.F.R. Part 9. For judicial forfeitures, the U.S. Attorney's Office (USAO) should send such notice to all potential victims who did not submit a petition for remission following any administrative notice or who will not be included in a restitution order and related restoration request.

Once assets have been judicially forfeited, the authority to distribute them to owners, lienholders, and victims rests solely with the Attorney General. *See* 28 C.F.R. § 9. The Attorney General delegated the authority to decide petitions for remission in judicial cases to the Chief of the Money Laundering and Asset Recovery Section (MLARS). *See* 28 C.F.R. § 9.1(b)(2). In administrative forfeitures, the authority to decide petitions for remission or mitigation rests with the seizing agency.[5] Questions regarding administrative forfeiture policies and procedures should be directed to the seizing agency.

Whether a victim may receive remission is governed by regulation. *See* 28 C.F.R. § 9.8. MLARS decides petitions based on written documentation; there is no right to a hearing on the petition. *See* 28 C.F.R. § 9.4(g). Unsuccessful petitioners are entitled to one request for reconsideration, which is reviewed and decided by a different ruling official within MLARS. *See* § 9.4(k)(3). Judicial review of a denial of remission is not available.[6] Although the USAO and seizing agency must provide recommendations as to the allowance or denial of a judicial petition for remission, the final determination rests with MLARS. USAOs or seizing agencies must take care not to make representations to the court or potential victims as to whether remission will be granted.

When petitions have been filed for both administratively and judicially forfeited assets in the same case, the seizing agency must coordinate with MLARS and the forfeiture Assistant U.S. Attorney (AUSA) assigned to the case to ensure consistency in rulings.

Many forfeiture cases begin administratively and become judicial after a party files a claim challenging the agency's administrative forfeiture. Often the party files both a claim and petition. MLARS must eventually adjudicate the petition in a judicial forfeiture, but only after the claim is

---

[3] TFF member agencies include the Internal Revenue Service-Criminal Investigation (IRS-CI), U.S. Immigration and Customs Enforcement-Homeland Security Investigations (ICE-HSI), U.S. Customs and Border Protection (CBP), U.S. Secret Service (USSS), and U.S. Coast Guard (USCG).

[4] Download a copy of *Treasury Blue Book* from.treasury.gov.

[5] *See* 19 C.F.R. §§ 171 and 172.2; 26 C.F.R. § 403, Subpart D; 28 C.F.R. § 9.1(b)(1).

[6] *See LKQ Corp. & Keystone Auto. Indus., Inc. v. DHS*, 369 F. Supp. 3d 577 (D. Del. 2019) (court lacked subject matter jurisdiction under Administrative Procedures Act to review decisions by CBP on petitions for remission because remission statutes provide CBP with wide discretion to make a determination on remission or mitigation; such decisions are unreviewable absent allegations of statutory or procedural violations); *United States v. Betancourt-Vega*, No. 3:12–CR–314, 2013 WL 6697811, *4 (N.D. Tex. Dec. 19, 2013) (because what claimant filed was a remission petition and not a claim under 18 U.S.C. § 983(a)(2), court's review is limited to ensuring that DEA acted in accordance with proper procedures in exercising its discretion); *Laconia Sav. Bank v. United States*, 116 F. Supp. 2d 248, 256 (D.N.H. 2000) (when claimant chooses to file remission petition instead of filing claim, court is without jurisdiction to review the denial of the petition on the merits or consider any constitutional claims even if denial was an abuse of discretion).

resolved. However, the petitioner need not submit a second petition. The seizing agency should forward the petition to the USAO, which will submit to MLARS.[7]

### A.1 Standards for victims—28 C.F.R. Part 9

The factual basis and legal theory underlying the forfeiture will determine who qualifies as a victim. A "victim" for purposes of remission is "a person who has incurred a pecuniary loss as *a direct result of the commission of the offense underlying a forfeiture*." 28 C.F.R. § 9.2 (emphasis added).[8] Corporations, federal agencies, and other governmental entities may also qualify as victims under the regulations.

Victims may also recover losses caused by a related offense. *See* 28 C.F.R. § 9.8(a)(1). *Related offense* means: "(1) Any predicate offense charged in a federal Racketeer Influenced and Corrupt Organizations Act (RICO) count for which forfeiture was ordered; or (2) An offense committed as part of the same scheme or design, or pursuant to the same conspiracy, as was involved in the offense for which forfeiture was ordered." *See* 28 C.F.R. § 9.2. In general, the ruling official will consider all the crimes discussed in the charging documents or civil complaint as "related offenses" for purposes of victim compensation.

### A.2 Qualification to file

A victim may be granted remission of the forfeiture of property if the victim satisfactorily demonstrates that:

> (1) a pecuniary loss of a specific amount has been directly caused by the criminal offense, or related offense, that was the underlying basis for the forfeiture, and the loss is supported by documentary evidence including invoices and receipts; (2) the pecuniary loss is the direct result of the illegal acts and is not the result of otherwise lawful acts that were committed in the course of a criminal offense; (3) the victim did not knowingly contribute to, participate in, benefit from, or act in a willfully blind manner towards the commission of the offense, or related offense, that was the underlying basis for the forfeiture; (4) the victim has not in fact been compensated for the wrongful loss of the property by the perpetrator or others; and (5) the victim does not have recourse reasonably available to other assets from which to obtain compensation for the wrongful loss of the property.

28 C.F.R. § 9.8(b).

> "The amount of the pecuniary loss suffered by a victim for which remission may be granted is limited to the fair market value of the property of which the victim was deprived as of the date of the occurrence of the loss."

28 C.F.R. § 9.8(c). The term "fair market value" is not defined in 28 C.F.R. Part 9. When the loss is property other than money, the date of the victim's loss and the fair market value of the property on that date must be decided to determine the victim's recoverable loss.

A victim's pecuniary loss must be supported by documentary evidence. Secondary losses to the principal loss, such as "interest foregone or for collateral expenses incurred to recover lost property

---

7 *See also* Chap. 13, Sec. I.A. n.1. in this *Manual*.

8 A *person* is "an individual, partnership, corporation, joint business enterprise, estate, or other legal entity capable of owning property." *See* 28 C.F.R. § 9.2.

or to seek other recompense," or attorneys' fees or other investigative expenses, are not eligible for remission. *See* 28 C.F.R. § 9.8(c).

Losses are also ineligible for remission if they result from property damage or physical injuries, or from a tort associated with illegal activity that formed the basis for the forfeiture, unless the tort constitutes the illegal activity itself. *See* 28 C.F.R. § 9.8(d). However, specific, documented pecuniary losses like medical and counseling bills in child exploitation cases may be eligible. Victims who "knowingly contribute to, participate in, benefit from, or act in a willfully blind manner towards the commission of the offense, or related offense that was the underlying basis for the forfeiture" are also ineligible for remission. *See* 28 C.F.R. § 9.8(b)(3). However, forced or unknowing participation in a crime, as in cases involving victims of human trafficking and forced labor, or cases in which elderly fraud victims lose money yet also unwittingly serve as "money mules"—that is, persons who transfer money acquired illegally—will not preclude victims from compensation under this provision.

Victims need not show that their specific funds are among the funds that have been forfeited to establish eligibility for remission.

Petitions should be made sworn under penalty of perjury. Petitioners should also submit any supporting documentation that the government does not already have to support their petitions and claims of qualifying pecuniary losses.

### A.3 Priority in multiple-victim remission cases

Priority in the distribution of forfeited assets is given to valid owners, lienholders, federal financial regulatory agencies,[9] and victims (in that order), who in turn have priority over official use requests and equitable sharing requests. Victim recovery is limited to the net proceeds of all assets in the case or related cases. In cases involving more than one victim, the ruling official will generally grant remission on a pro rata basis where the amount to be distributed is less than the value of the victims' losses. Additional exceptions are permitted only in rare situations, such as when a pro rata distribution would result in extreme hardship to a victim or when a victim has better evidence of loss than other victims. *See* 28 C.F.R. § 9.8(f). However, the tracing of a particular victim's funds into a forfeited account does not give that victim priority over the victims whose funds cannot be traced.

### A.4 Claims administrators

MLARS may opt to hire a trustee or claims administrator in large, multiple-victim cases to assist in notifying potential victims of the opportunity to seek remission, processing the petitions, and making decision recommendations. *See* 28 C.F.R. § 9.9(c). MLARS will coordinate with the USAO and lead seizing agency, as necessary, during the selection process. In addition, if a trustee has been appointed in parallel regulatory or bankruptcy actions, MLARS may approve transferring funds for distribution to the trustee for ultimate payment to the identified victim pool.

USAOs and agencies interested in using the services of a trustee or claims administrator to support the remission and restoration processes should consult early with MLARS. MLARS awarded a

[9] A federal financial regulatory agency is generally entitled to priority of distribution over non-owner victims for losses and expenses incurred in its capacity as receiver of a failed institution. *See* 28 C.F.R. § 9.8(h). This priority applies only for reimbursement of the Federal Deposit Insurance Corporation (FDIC)'s payments to claimants and creditors of the institution or reimbursement of insurance fund losses under 18 U.S.C § 981(e)(3), and for fraud losses associated with the sale of assets held in receivership pursuant to § 981(e)(7).

national claims administration support contract that simplifies procurement actions and streamlines petition review and payment distribution in victim cases where highly experienced and expert firms are required to handle the volume of petitioners. Costs of an administration contract are deducted from the forfeited funds prior to any distribution.

### A.5 Additional grounds for denial of remission to victims

Remission to victims may be denied: (1) if determination of the pecuniary loss to be paid to individual victims is too difficult; (2) if the amount to be paid to victims is small compared to the expense incurred by the government in deciding the victims' claims; or (3) if the total number of victims is large and the amount available for payment to victims is so small as to make granting payments to victims impractical. *See* 28 C.F.R. § 9.8(e).

### A.6 Timeliness

Victims should file petitions for forfeited assets within the time period detailed in the notice.[10] However, when a victim fails to submit a timely petition, MLARS may allow exceptions for good cause based on the particular circumstances of the case. Victims may file claims in the Department's Asset Forfeiture Program Online Claims & Petitions portal up to 60 days after the date of forfeiture; after that date, they must submit paper forms.[11]

### A.7 Remission decisions

Deciding officials will send remission decisions to the victims along with instructions for obtaining payment. Victims must provide their own Social Security numbers (SSN) for purposes of the Treasury Offset Program (TOP), although they may choose to use their attorney's bank account for payment. MLARS, Treasury Executive Office for Asset Forfeiture (TEOAF), and the seizing agency do not have insight into whether an offset will occur. However, victims can call (800) 304-3107 for the Department of Treasury (Treasury) Bureau of the Fiscal Service's TOP interactive voice response system to determine whether an offset will occur. Because of unknown Treasury offsets and case expenses, MLARS refrains from quoting specific payment amounts to victims in their remission grant letter.

If the deciding official grants remission, it will notify both the forfeiture unit and the financial litigation unit at the USAO. It is the USAO's responsibility to record payment information for purposes of capturing any restitution "credit" to the defendant in remission cases and to coordinate with the local Financial Deputy Clerk of Court to ensure that the court is aware of the credit.

## B. Restoration

Because forfeited assets are property of the government, courts and defendants lack authority to use them to satisfy a defendant's criminal debts, including fines or restitution obligations. *See United States v. Trotter*, 912 F.2d 964, 965–966 (8th Cir. 1990). However, in many cases, defendants are left with little or no property after the forfeiture is completed. Thus, under the restoration procedures, the Department may forfeit property and transfer the proceeds to the court in satisfaction of the defendant's order of restitution.

---

[10] If direct notice is provided, it can be sent by the USAO, seizing agency, or claims administrator, as appropriate.

[11] Victims should visit forfeiture.gov's petition information page for updated public-facing forms and FAQs.

Restoration simplifies and accelerates the return of forfeited property to victims. Restoration is an alternative to petitions for remission in cases where both forfeiture and restitution have been ordered and is designed to accommodate victims and the courts to the furthest extent possible while still meeting the statutory and regulatory requirements for remission. Victims will not need to file petitions for remission, and the process of returning funds to victims typically will be faster. The forfeiture will be completed so that costs can be recovered and third party rights extinguished. Proceeds from civil, criminal, and administrative[12] forfeitures can be handled together and applied to restitution. Assets will be distributed primarily as they would have been under the remission regulations. The restoration procedure permits victims to obtain compensation from the forfeited assets in accordance with the court's restitution order without having to file petitions for remission with the government and await decisions on them. These procedures apply where:

(1) both restitution to compensate victims and a related forfeiture (either civil, criminal, or administrative) have been ordered;

(2) the victims and amounts listed in the restitution order essentially conform to the victims and amounts that would have been paid through the remission process; and

(3) other property is not available to fully satisfy the order of restitution.

However, under no circumstances should the criminal AUSA make representations to a defendant or the court that forfeited funds will be used to satisfy restitution through the restoration process. However, the AUSA may represent in a plea agreement that the USAO will seek MLARS' approval to have forfeited funds applied to restitution, as appropriate under applicable regulations.

### B.1 How the restoration process works

Restoration requires both a court order of restitution *and* an order (or declaration) of forfeiture. Because restoration decisions must be approved by the Chief of MLARS (as delegated by the Attorney General), the USAO or court may not unilaterally direct forfeited assets to be applied to restitution, or decrease restitution orders by the value of forfeited assets.[13] However, when requested by the USAO, MLARS may undertake a preliminary review of the expected restitution and forfeiture, so that prosecutors may advise the court of the government's intended distribution of the property.

To request restoration, the USAO must send the Chief of MLARS a copy of the judgment in a criminal case containing the order of restitution and a copy of the forfeiture order, along with a written request signed by the U.S. Attorney, or a designee, that includes the representations outlined in Section II.B.2 below. If the restitution order is sealed, the USAO must submit the underlying list containing victim names and restitution amounts to MLARS. Once the Chief of MLARS has approved the request for restoration, MLARS notifies both the USAO and the custodian of the property. The custodian then transfers the net proceeds of the forfeiture to the clerk of court for distribution pursuant to the order of restitution. MLARS will not accept or approve

[12] In administrative forfeitures involving TFF member agencies, the USAO must obtain the written concurrence of the local or headquarters TFF seizing agency before MLARS may approve restoration of forfeited funds for purposes of criminal restitution. *See Treasury Blue Book*, Sec. VI.B.1.b. TEOAF policy does not permit the release of administratively forfeited funds to crime victims without the prior approval of the TFF seizing agency. *See Treasury Blue Book*, Sec. VI.B.1.b.ii.

[13] The Attorney General's restoration authority has been delegated to the Chief of MLARS pursuant to Attorney General Order No. 2088-97 (June 14, 1997).

restoration requests for assets that have been disposed of for over five years unless there are unique circumstances surrounding the delay.[14]

Restoration is appropriate only when the distribution pursuant to the restitution order is essentially the same as the distribution that would be obtained through the remission process. Prosecutors who plan to request restoration must work with the seizing agency, probation officer, and the court to ensure that the court's restitution order lists the names of all victims and the amount of restitution due to each. Updated payment addresses must also be provided to the court so that the funds are paid out to victims.

Restitution is generally available for a much broader range of harms than may be satisfied through remission, which is allowed only for pecuniary losses caused by the offense underlying the forfeiture or a related offense. Thus, restoration may not be used where a significant portion of the losses covered by the restitution order relate to bodily harm, property damage, future expenses, and collateral expenses like legal, accounting, or security expenditures incurred in trying to correct the harm caused by the crime. Moreover, 28 C.F.R. § 9.8(c) limits the victim's loss to the fair market value of the property of which the victim was deprived, as of the date of the loss. No allowance is made for interest forgone, lost profits, or collateral expenses incurred to recover lost property or to seek other recompense.

If the restitution order is not amenable to the restoration process, MLARS will advise the USAO, and the USAO may have to collect remission petitions to distribute forfeited funds to victims through the remission process. In some instances, a USAO may be able to use an existing victim impact statement as a substitute for a petition for remission, or a "hybrid" approach may be warranted. *See* Section II.F in this chapter.

### B.2 Representations

Restoration is designed to achieve results that are consistent with the results of the application of the remission standards for forfeited assets at 28 C.F.R. § 9.8. Therefore, the U.S. Attorney, or a designee, must inform MLARS, in writing and accompanied by a signature, as part of the request for restoration that:

(1) **All known victims have been properly notified of the restitution proceedings and are properly accounted for in the restitution order**. This representation is intended to ensure that no victims have been left out of the restitution order and that all are treated fairly in the order. This is also to ensure that the restitution order reflects the proper priority of payment to victims, if applicable.[15]

[14] Treasury has issued a similar policy to not accept or approve restoration requests for assets that have been disposed of for over five years unless there are unique circumstances surrounding the delay.

[15] *See* Sec. II.B.3 in this chapter.

(2) **To the best of the U.S. Attorney's, or designee's, knowledge and belief after consultation with the seizing agency, the losses described in the restitution order have been verified, comport with the remission requirements, and reflect all sources of compensation received by the victims, including returns on investments, interest payments, insurance proceeds, refunds, settlement payments, lawsuit awards, and any other sources of compensation for their losses**. This is to avoid double recovery by victims who may already have been compensated for part of their losses.

(3) **To the best of the U.S. Attorney's, or designee's, knowledge and belief after consultation with the seizing agency, reasonable efforts to locate additional assets establish that the victims do not have recourse reasonably available to obtain compensation for their losses from other assets, including those owned or controlled by the defendants**. This is to ensure that restoration does not confer an undue benefit on the defendant.

(4) **There is no evidence to suggest that any of the victims knowingly contributed to, participated in, benefitted from, or acted in a willfully blind manner, toward the commission of the offenses underlying the forfeiture or a related offense**. This is to prevent the return of forfeited property to those who essentially took part in the conduct that led to the forfeiture.

The USAO must also ensure that the time for filing an appeal challenging either the restitution order or the forfeiture has passed or all relevant appeals have been adjudicated before submitting the restoration request to MLARS.

Because restitution and forfeiture are mandatory and independent parts of a criminal sentence, the forfeited assets may not be used to satisfy the restitution order if other assets are available for that purpose. Typical examples of this situation might involve corporations that have extensive holdings that are not subject to forfeiture, or individuals who have property that exceeds the amount subject to forfeiture. The statutes governing restitution permit the government to enforce the restitution order as a final judgment against almost all of the defendant's property, not just facilitating property or fraud proceeds that may be subject to forfeiture. Asset forfeiture coordinators should coordinate with the financial litigation coordinators in their offices on the best approach to return all available assets to victims.

### B.3  Payment

To restore assets to the victims listed in the restitution order, MLARS will notify the USAO and property custodian. The custodian will then transfer the net forfeited proceeds of all assets in the case or related cases to the clerk of court for distribution pursuant to the restitution order, which should reflect proper priority of payment. Payments will be made *only* in accordance with the court's restitution order. If the forfeited assets are not sufficient to fully satisfy the order, payment will be made by the court as directed in the order. Federal government entities are compensated only after all non-federal agencies are compensated in full. *See* 18 U.S.C. § 3664(i); *see also* Section II.D in this chapter. Insurance companies must also be prioritized after direct victims. *See* 18 U.S.C. § 3664(j).

### C. Preservation of assets for victims

To ensure that forfeited assets are made available for victims, the USAO and seizing agency must enter remission petitions in the Consolidated Asset Tracking System (CATS) immediately upon receipt. In addition, the USAO must place a restitution "hold" on the distribution of seized assets in CATS when a restoration request is anticipated. If assets are transferred for official use or equitable sharing prior to victim compensation, the transfer may be reversed at the discretion of the Chief of MLARS or the Director of TEOAF (for seizures by TFF member agencies) to make the property available for remission or restoration.

Because CATS is not the TFF's system of record, the USAO must request that the TFF preserve the asset in cases involving TFF agencies where restitution may be ordered or where remission or restoration may occur. To ensure the preservation of the forfeited property in judicial cases involving TFF agencies, the USAO must also timely notify and send a copy of the restoration request to the TFF seizing agency. *See* *Treasury Blue Book*, Sec. VI.B.1.[16]

### D. Special considerations for federal government victims

A federal government agency may qualify as a victim entitled to receive compensation through the restoration and remission procedures. A federal government agency victim, like other types of victims, must demonstrate that it suffered a pecuniary loss of a specific amount as a direct result of the commission of the offense, or related offense, underlying the forfeiture. *See* 28 C.F.R. §§ 9.2 and 9.8(b). Federal agencies are not required to submit detailed documentation of loss when an acceptable estimation of loss is provided.

Federal government agencies often suffer pecuniary losses as a result of crimes involving taxpayer-funded programs like Medicare or Medicaid healthcare, Supplemental Nutrition Assistance Program (SNAP) benefits, and U.S. Department of Housing and Urban Development (HUD) insured loans. In some cases, the federal investigating agency is also a victim of the offense that it is investigating. For instance, the Internal Revenue Service-Criminal Investigations (IRS-CI) may investigate and seize assets in a tax return scheme in which the IRS unknowingly paid tax refunds based on fraudulent tax returns. In these cases, the agency must ensure that the division of the agency providing the petition report and recommendation is separate from the petitioning division. For example, in an IRS-CI investigation involving a tax return scheme, IRS-CI could provide the remission petition report and recommendation, while a different IRS division submits the petition.

The act of forfeiting the seized assets and depositing the proceeds into the Assets Forfeiture Fund (AFF) or TFF does *not* mean that the seizing agency has received victim compensation. Rather, the victim agency should either: (1) be included in the restitution order, with a specified pecuniary loss amount, for restoration request purposes;[17] or (2) file a petition for remission requesting compensation for its losses from the proceeds of the forfeited assets.

[16] Download *Treasury Blue Book* from treasury.gov.

[17] If restoration is used pursuant to 18 U.S.C. § 3664(i) federal agencies will not receive compensation until all non-federal victims are compensated in full.

### E. Special considerations for victims of human trafficking crimes

On May 29, 2015, the Justice for Victims of Trafficking Act (JVTA) was enacted.[18] JVTA directs the Attorney General to pay victim restitution orders in cases where a forfeiture occurs pursuant to 18 U.S.C. § 1594. *See* § 1594(f)(1). Accordingly, MLARS processes requests from USAOs in accordance with this statutory language regardless of whether the victims' losses are considered "pecuniary" as defined by the relevant remission regulations. If no restitution order exists in cases where a forfeiture occurs pursuant to § 1594, MLARS will consider petitions for remission that include a claim of lost wages (based on minimum wage) as the victim's pecuniary loss, along with any other losses permitted by 28 C.F.R. Part 9.

However, 18 U.S.C. § 1594 does not allow for innocent owner or lienholder priority in remission cases. *See* § 1594(f)(2). Therefore, the USAO must resolve all outstanding innocent owner and lienholder claims through the judicial forfeiture process rather than the remission process.

### F. Hybrid remission and restoration review

MLARS will process a restoration request together with petitions for remission in appropriate cases where a hybrid decision would be an efficient and just mechanism for compensating the victims. For example, the USAO may discover after the entry of a restitution order that, despite its due diligence, additional victims exist who were inadvertently omitted from the restitution order. In such a situation, it may be burdensome to require the victims in the existing restitution order to seek remission. MLARS may determine that a hybrid restoration and remission decision is appropriate in light of inter alia the number of victims listed in the existing restitution order, the number of victims omitted from the restitution order, the reasons why victims were omitted from the restitution order, and the amount of net proceeds available for distribution from the forfeited assets. However, this hybrid process is not suitable when a restitution order includes those who do not qualify as victims under the remission regulations.

### G. Termination of forfeiture and direct payment of assets to victims

If forfeiture tools and resources are used to seize an asset, the forfeiture process should be followed to completion. Termination of forfeiture is appropriate only in extremely limited circumstances and only if no final order of forfeiture has been entered. In these limited situations, it may be appropriate for the USAO to move to dismiss the forfeiture proceeding and request the court to direct the property be turned over directly as restitution pursuant to 18 U.S.C. § 3663A(b)(1)(A), or be transferred to the clerk of court to be paid to the victim. However, the USAO may not unilaterally direct a seizing agency or property custodian to send funds that have been seized for forfeiture but not forfeited to the clerk for restitution, absent a court order or agreement with the person from whom the funds were seized. *See* Chapter 1, Section I.E in this *Manual*. If that person has an outstanding restitution order in the TOP system when the funds are returned, the funds may be automatically offset and applied to the restitution order through that process.

Termination of forfeiture may be more appropriate than remission or restoration when the victim is entitled to restitution for non-pecuniary harm or other collateral costs that are not compensable under the remission regulations. In addition, termination of forfeiture may be appropriate in multiple-

[18] Justice for Victims of Trafficking Act of 2015, Pub. L. 114-22, May 29, 2015, 129 Stat. 227.

victim fraud cases arising in jurisdictions with unfavorable caselaw concerning constructive trusts. *See* Section III in this chapter. If payment is to be made to the victim through the clerk of court, the property subject to forfeiture must be liquid, as the clerk cannot liquidate real or personal property. For example, the default method of sale to execute a restitution judgment is a sale by the U.S. Marshals Service (USMS) at the courthouse. *See* 28 U.S.C. § 3203(g)(1)(A)(i).

### H. Comparison of judicial remission and restoration

| Remission | Restoration |
|---|---|
| There is no need for a criminal conviction or restitution order. Only a forfeiture of assets related to the victim's loss is required. | A criminal conviction, an order of restitution, and a criminal, civil, or administrative forfeiture which is related to the victim's loss are all required. |
| The USAO, in cooperation with the investigative agency or a claims administrator, may send notice to all known victims of the offense underlying the forfeiture. | The USAO works with the investigative agency and probation office to identify victims and determine their losses to ensure inclusion in the restitution order. |
| The victim must file a petition in order to receive compensation. | The victim is not required to file a petition but may be required to submit information to the investigative agency or probation office prior to sentencing. |
| The USAO requests the investigative agency to prepare a report and recommendation. The USAO makes a recommendation and forwards the petition package to MLARS. | The USAO submits a restoration request, including the four required representations, to MLARS. *See* Section II.B.3 in this chapter. |
| MLARS decides petitions for remission of judicially forfeited assets. Seizing agencies decide petitions for remission of administratively forfeited assets. | The Attorney General, through MLARS, reviews the restoration request and may restore forfeited property to victims identified in the restitution order. |
| The custodian of the forfeited asset distributes the net proceeds directly to victims. | The custodian of the forfeited asset transfers the net proceeds directly to the Clerk of Court. |

## III.  Constructive Trusts in Multiple-Victim Fraud Cases

While courts generally agree that fraud victims do not retain legal title in money paid voluntarily into a fraud scheme, some courts have recognized constructive trusts in favor of victims. Under this equitable remedy, the perpetrator of the fraud holds title to the victim's funds in trust for the benefit of the victim. A constructive trust generally requires a victim to trace their money to the seized funds, which may warrant extensive discovery and evidentiary hearings. This legal theory is troublesome in forfeiture cases involving multiple victims because it can transform the forfeiture case into a cumbersome liquidation proceeding in which all victims compete against each other and against the government for the seized funds. The government should generally oppose a claim of constructive trust in such cases so that the Attorney General can return the funds to the victims through the orderly remission or restoration process. However, government attorneys should consult the caselaw in their circuit and state in responding to constructive trust claims in their districts.

In *United States v. $4,224,958.57* (*Boylan*), 392 F.3d 1002, 1003–1005 (9th Cir. 2004), the Ninth Circuit held that victims of a large, fraudulent investment scheme established a sufficient legal interest in the seized proceeds through a constructive trust to confer on them standing to contest the forfeiture. Under this holding, government attorneys litigating forfeiture cases may be required to identify all potential victims of the fraud, notify them of the forfeiture action, and afford them an opportunity to file claims in the judicial proceeding. *Id*. Following *Boylan*, some judicial circuits have recognized that the forfeiture statutes do not preclude, as a matter of law, the imposition of a constructive trust. *See Willis Mgmt. (Vermont), Ltd. v. United States*, 652 F.3d 236, 238 (2d Cir. 2011).

Thus, in litigating forfeiture cases in circuits that recognize constructive trusts, government attorneys may elect to oppose victims' individual claims of constructive trust on the merits, and further argue that recognition of the trust would result in unfair priority to the claimant, contrary to the equitable principles underlying the trust. The courts should also be advised that forfeiture will enable all victims to have the opportunity to recover the funds on the pro rata basis through the Attorney General's remission authority. *See* 28 C.F.R. §§ 9.8(a)(1) and (f).

# Chapter 15: Federal Official Use and Equitable Sharing

## I. Federal Official Use

### A. Overview

Federal retention, or "official use," means a law enforcement agency's use of forfeited assets in the direct performance of law enforcement activities. The transfer of "unique" assets, such as property of cultural or historical significance, to non-component federal agencies is also considered official use.

According to *The Attorney General's Guidelines on the Asset Forfeiture Program* (July 2018) (*AG Guidelines*),[1] Sec. V.F., "the Attorney General has the authority to retain or transfer property for official use to any federal agency. No seized property shall be placed into official use until a final determination of forfeiture has been made and the request to place the property into official use has been approved by the appropriate official."

Agencies must request specific assets for official use.[2] Federal agencies may not put into official use any cash or proceeds from the sale of forfeited property. The requests need not specify the exact intended use of the assets, but all official use must be for law enforcement purposes. This allows agencies to use forfeited property for operations, training, and other functions, including administrative and other mission support activities.

### B. Official use designations by the federal seizing agency

The head of the federal seizing agency, or designated headquarters official, decides whether to put assets seized by the agency into its own official use. Once an asset designated by the federal seizing agency for official use has been administratively or judicially forfeited and all third-party interests, including victim compensation, have been resolved, the seizing agency has 30 calendar days to inform the U.S. Marshals Service (USMS) of its final decision to place or decline to place the asset into official use. At the discretion of the USMS, a one-time extension of 15 calendar days may be granted. Requests for extensions must be made in writing to the USMS. Absent a response from the seizing agency within the initial 30 calendar days (or a time extension that has expired), or following a negative response within the specified time period, the USMS is authorized and directed to take the necessary steps to dispose of the asset in the usual manner, according to law and regulations.

In any instance where the property requested for federal official use is valued at over $50,000, the seizing agency and the USMS must provide the Money Laundering and Asset Recovery Section (MLARS) with advance notice and an opportunity to review the request.

### C. Official use requests by other federal agencies

If the lead federal seizing agency decides not to put the asset into its own official use, then any other Department of Justice (Department) investigative agency that participated in the case, Department

1 *See* AG Guidelines.

2 *See* Chap. 4, Sec. V.A. in this *Manual* regarding the authorities and guidelines for placing real property into official use.

components, or non-seizing federal agencies, in that order, may request to put the asset into its own official use. These agencies may seek the transfer of property for official use only if the property is not required for victim compensation or for equitable sharing with a foreign, tribal, state, or local agency.[3]

Where one Department agency requests an asset for official use that was seized by another Department agency, the requesting agency must follow the official use request process of the seizing agency and the USMS (e.g. if the U.S. Department of Agriculture (USDA) wants to place a vehicle into official use that was seized by the Federal Bureau of Investigation (FBI)). If more than one Department component seeks to retain the same forfeited property for official use, MLARS will determine which agency may place the property into official use. All requests, other than those for retention by the lead federal seizing agency, must be submitted to the USMS. Agencies that are not members of either the Department or the Department of the Treasury (Treasury) forfeiture programs must request items for official use through the agencies and the USMS. No federal contribution form (FCF) is required, and the decision to transfer is made via the official use approval process, not the equitable sharing approval process.[4]

### D. Internal guidelines

Each agency is required to maintain internal guidelines governing official use requests. The internal guidelines shall:

- prohibit the placement into official use of any seized property before (1) the entry of a final determination of forfeiture, (2) resolution of all third-party interests, including victim compensation, and (3) the appropriate approval of the request to place the property into official use;
- require all seized property be recorded and tracked in an official inventory of seized property without regard to its intended disposition;
- require a written justification detailing the reasons why the forfeited property was placed into official use, and require retaining these justifications for three years;
- require a specific supervisory-level official be responsible and accountable for the decision to place each item of forfeited property into official use and for ensuring appropriate official use of such property following its transfer;
- require the property placed into official use be identified and tracked in an accountable property system; and
- state that the property may not be transferred or retained if it is primarily for purposes of trade or sale, or home-to-work transportation, or other uses not expressly authorized for property acquired through the expenditure of appropriated funds. There must be an intention to place the property into official use for two years.

[3] Requests for official use from tribal, state, and local law enforcement agencies are included as part of equitable sharing decisions as outlined in Sec. III.D in this chapter. Because these requests are part of equitable sharing, state, local, and tribal agencies may request forfeited assets only when they directly participated in the case leading to forfeiture. *See also* *Guide to Equitable Sharing for State, Local, and Tribal Law Enforcement Agencies* (July 2018), Sec. V.C.

[4] For assets seized by a Treasury Forfeiture Fund (TFF) member agency, *see* Treasury Executive Office of Asset Forfeiture (TEOAF) Directive 6: Transfer of Forfeited Property and Retention for Official Use, July 29, 2016.

### E.  Payment of liens on personal property placed into federal official use

Liens on personal property placed into official use by Department seizing agencies and the USMS may be paid from the Assets Forfeiture Fund (AFF) provided that:

- there remains sufficient funding from the agency's AFF allocation for payment of such liens;

- the agency intends to place the property into official use for at least two years, except when the property is a vehicle requested for use in an undercover capacity. In the case of a vehicle requested for use in an undercover capacity, the head of the seizing agency may decide to exchange the undercover vehicle for a similar vehicle(s) for use in an undercover capacity. No cash or remuneration of any kind may be received as part of any such exchange. All such exchanges shall be reported to the Chief of MLARS within 90 days after the end of each fiscal year;

- the total amount to be paid from the AFF amounts to less than one-third the appraised value of the property; and

- the total amount to be paid from the AFF is less than $25,000.

Seizing agencies must submit requests for exceptions to this policy in writing to the Chief of MLARS.

## II.  Equitable Sharing

Federal law authorizes the Attorney General to share federally forfeited property with participating tribal, state, and local law enforcement agencies.[5] *See* 21 U.S.C. §§ 881(e)(1)(A) and (3); 18 U.S.C. § 981(e)(2); 31 U.S.C. § 9705(a)(1)(G) and (b)(4). Through equitable sharing, any tribal, state, or local law enforcement agency that directly participates in a law enforcement effort that results in a federal forfeiture may either request to put tangible forfeited property into official use or an equitable share of the net proceeds of the forfeiture. The exercise of this authority is discretionary. The Attorney General is not required to share property in any case.

Equitable sharing and official use requests will be granted only if forfeited property[6] or net proceeds[7] from the sale of forfeited property remain after all approved claims, petitions for remission, and restoration requests have been processed and paid. In addition, international sharing must be reviewed and approved prior to payment of domestic sharing.[8]

---

[5]  For more details and related publications on equitable sharing, please refer to MLARS Equitable Sharing Program page. The Treasury Forfeiture Fund (TFF) administers a substantially similar equitable sharing program.

[6]  Unlike other types of forfeited property, federally forfeited firearms and ammunition may not be sold. While forfeited firearms and ammunition may be put into federal official use, they may not be shared with tribal, state, or local agencies. *See* Chap. 5, Sec. IV.C in this *Manual*. Also, gift cards and other types of stored value cards seized by a Treasury member agency cannot be placed into official use or transferred to another federal agency. *See* TEOAF Directive 6: Transfer of Forfeited Property and Retention for Official Use, July 29, 2016.

[7]  In any case with underwater asset(s) (i.e. where the asset expenses are greater than income), the deciding official must offset the negative value of the underwater asset(s) against any asset(s) with a net income prior to distribution of any approved sharing.

[8]  *See* Chap. 8, Sec. XIII in this *Manual*.

## III. Processing Applications for Equitable Sharing

### A. Eligible participants

Any tribal, state, or local law enforcement agency that is a participant in the Equitable Sharing Program (Program) and directly participates in an investigation or prosecution resulting in a federal forfeiture may request an equitable share of the net proceeds of the forfeiture. To receive shared funds, the agency must comply with the Program guidelines and reporting requirements. *See* the *Guide to Equitable Sharing for State, Local, and Tribal Law Enforcement Agencies* (July 2018) (*Guide*), Sec. II.

MLARS determines the eligibility of a tribal, state, or local law enforcement agency to participate in the Program. MLARS will assess any request according to criteria outlined in the *Guide* and any subsequent updates to the *Guide*. *See* Secs. III and VII. No agency will be accepted into the Program until MLARS' determination is complete.

### B. Compliance

To participate in the Program, tribal, state, and local law enforcement agencies must first submit, and annually resubmit, an Equitable Sharing Agreement and Certification form (ESAC form) signed by both the head of the law enforcement agency and the head of the governing body having budgetary authority over the law enforcement agency. By signing the ESAC form, the signatories agree to be bound by, and comply with, the federal statutes and Department policies—including policies on the appropriate law enforcement purposes and functions of forfeiture—governing the Program. *See Guide* Sec. VII.A.

Any breach of the ESAC form by a tribal, state, or local law enforcement agency may render it non-compliant or ineligible to receive equitable sharing payments. Participation may be barred on either a temporary or permanent basis, and in some cases, an agency's pending equitable sharing distributions may be permanently extinguished where a requesting agency has failed timely to submit an ESAC form or UFMS Vendor Request Form (ACH form) or has failed to meet any other requirements as set forth in the *Guide*. *See* Sec. VII. While federal investigative agencies and U.S. Attorneys (USAOs) have no affirmative obligation to monitor an agency's eligibility, they are obliged promptly to report to MLARS any information that might affect an agency's eligibility to participate in the Program.

### C. Equitable sharing allocations

Equitable shares allocated to a law enforcement agency must bear a reasonable relationship to the agency's direct participation in the law enforcement effort resulting in the forfeiture. As a general rule, the recommended equitable sharing allocation should be based on a comparison of the workhours and qualitative contributions of each and every federal, tribal, state, and local law enforcement agency that participated in the law enforcement effort resulting in the forfeiture.[9] Qualitative factors that the decision maker may consider when determining a sharing percentage are outlined in Sec. IV.A. of the *Guide*.

[9] When a state forfeiture relates to a federal criminal prosecution, federal equitable sharing decisions should account for both state and federal forfeitures in the investigation. Consequently, federal agencies and USAOs should collectively review state and federal forfeitures stemming from a single investigation before making federal equitable sharing recommendations and decisions.

Equitable sharing percentages may also be awarded based on an agency's participation in a task force that has previously adopted a task force sharing arrangement consistent with Department policy. In these cases, all agencies participating in the task force must sign a memorandum of understanding (MOU) reflecting the task force sharing arrangement before any seizures may be made pursuant to the MOU. These MOUs should be updated periodically to reflect material changes in the agencies constituting the task force or in any agency's contribution to forfeitures credited to the task force. However, an MOU only governs the total contribution of the task force agencies. It may not bind Department agencies or non-task force agencies to a particular share. For further information regarding the calculation of the sharing percentage, *see Guide* Sec. IV.B.

Funds collected to satisfy a forfeiture money judgment are not eligible for equitable sharing where no collection efforts were expended by the participants in the underlying investigation. For example, if a Deputy U.S. Marshal (DUSM), U.S. Attorney's Office (USAO) employee, or other federal agency locates funds in satisfaction of a money judgment, those funds cannot be shared unless the tribal, state, or local agency assisted in the collection effort. Funds located and applied to the money judgment at the time the money judgment is entered could be eligible for sharing.

### D. Submission of requests for official use or equitable sharing

A tribal, state, or local law enforcement agency participating in the Program may request official use or an equitable share of forfeited property by submitting an equitable sharing request form (Form DAG-71) through the Department's Equitable Sharing Portal (eShare Portal). A separate Form DAG-71 must be completed by the requesting agency for each asset to be shared. An agency may not file a Form DAG-71 on behalf of another agency. For more information about the procedures for submitting a Form DAG-71, consult Sec. IV of the *Guide*.

Federal agencies are not eligible to receive equitable sharing funds. Federal law enforcement agencies that participated in the forfeiture must follow agency policy to submit a FCF to the lead or processing federal agency to record participation or, where applicable, request a fund-to-fund transfer (e.g. a transfer from the AFF to the Treasury Forfeiture Fund (TFF) or vice versa) for the assistance they provided.[10] A federal investigative agency shall not complete a FCF for another federal agency.

### E. Final decision maker

#### E.1 Investigative agency

If assets are administratively forfeited and the total appraised value of all items forfeited under a single Declaration of Administrative Forfeiture is less than $1 million, the head of the investigative agency, or designated agency headquarters official, decides the appropriate equitable share as to each asset and requesting agency.

#### E.2 U.S. Attorney

If the assets are judicially forfeited and the total appraised value of all of the assets forfeited in a single judicial forfeiture order is less than $1 million, the U.S. Attorney decides the appropriate equitable share as to each asset and requesting agency.

[10] *See* Sec. V in this chapter for additional information on the FCF.

### E.3 Deputy Attorney General (DAG)

Regardless of whether assets are administratively or judicially forfeited, the Deputy Attorney General (DAG), or a designee, decides the final equitable share as to each asset and requesting agency in:

(1) All cases in which the total appraised value of all of the assets forfeited under a single declaration of administrative forfeiture or judicial forfeiture order is $1 million or more. Assets forfeited under a single declaration of administrative forfeiture or judicial forfeiture order cannot be separated so that only the individual assets having a value greater than $1 million are submitted to the decision maker for sharing decisions;

(2) Cases involving the equitable transfer of real property;[11] or

(3) Cases involving the transfer of tangible items.

The appropriate decision maker with delegated decision-making authority from the DAG is generally determined by the value of the assets to be shared, as set forth below.

#### E.3.a Assets valued between $1 and $5 million

The DAG delegated to the Chief of MLARS the authority to decide equitable sharing requests for judicially or administratively forfeited assets in which (1) the property to be shared is valued between $1 million and $5 million and (2) MLARS, the seizing agency, and the USAO agree on the sharing allocations. If the seizing agency, the USAO, and MLARS do not agree on the sharing allocations, the DAG must make the final decision.

#### E.3.b Assets valued over $5 million

The DAG delegated to the Assistant Attorney General for the Criminal Division (AAG) authority to decide equitable sharing requests for judicially or administratively forfeited assets in which: (1) the property is valued in excess of $5 million and (2) the seizing agency, the USAO, and MLARS agree on the sharing allocations. If the seizing agency, the USAO, and MLARS do not agree on the sharing allocations, the DAG must make the final decision.

#### E.3.c Transfer of tangible property

Regardless of the asset value, all transfers of tangible items to a state or local law enforcement agency require approval from MLARS. The state or local law enforcement agency must intend to use the property for law enforcement purposes and must specify the exact intended use of the requested asset(s). Should MLARS approve such a transfer, the recipient agency will be required to pay any expenses and the federal share. *See* *Guide* Sec. V.C.1.

[11] The transfer of real property to a tribal, state, or local law enforcement agency for official use is contingent upon the agency's demonstration of a compelling law enforcement need for the property. The recipient agency must sign an MOU before the transfer will be approved. *See* *Guide* Sec. V.C.2. All sharing requests involving the transfer of real property must be submitted to MLARS for processing, regardless of the value of the real property.

### F.   Communication with the requesting agency

Until the final decision maker has rendered a decision, federal personnel and contractors involved in making, processing, or deciding an equitable sharing request must not represent the projected outcome of sharing requests.

### G.   Reimbursement of federal costs and expenses

Tribal, state, and local law enforcement agencies that receive real property or tangible personal property must reimburse the AFF for any liens, accrued expenses,[12] costs of sharing with other agencies, and the "federal share," which is at least 20% but often more.[13] The requesting agency must pay within 30 calendar days of notification of the total expenses. If the requesting agency has no pending sharing requests or is unable or unwilling to pay the balance within 30 calendar days, the property must be sold and an equitable share will be distributed to the agency in lieu of transfer.

Payment of the costs and expenses or the federal share may not be waived, except in cases of extreme hardship where the requesting agency lacks sufficient funds from previous equitable sharing or other available funds to pay the total costs and expenses. The decision to waive the federal share and expenses rests with MLARS. The requesting agency must demonstrate in writing that it is unable to pay the total reimbursement, that the payment of such reimbursement would result in an immediate and extreme financial hardship to the requesting agency, and that the benefit of receiving the property outweighs the receipt of the agency's otherwise applicable equitable share. MLARS does not issue waivers except in unique circumstances (such as for property that would have otherwise been destroyed). In those cases, MLARS will consider the agency's submission and whether it is fiscally advantageous to transfer the property, as opposed to liquidating the property and transferring the proceeds, when determining whether to waive expenses.

## IV.   Equitable Sharing Payments

The USMS makes equitable sharing payments only after final approval of the sharing appears on the applicable reports generated by the Consolidated Asset Tracking System (CATS). Payments will not happen unless all information required to authorize the payment has been entered in CATS by the investigative agency, the USAO, and MLARS, and the recipient agency complies with all reporting requirements.

The USMS electronically transfers all equitable sharing payments to tribal, state, and local law enforcement agencies. To electronically receive equitable sharing payments, a tribal, state, or local law enforcement agency must submit a completed ACH form to the USMS at AFD.ACHFORMS@usdoj.gov.[14] Note that approved sharing of less than $500 will not be processed.

---

[12] "Accrued expenses" includes reimbursement of the cost of contractor expenses that are allocated by the federal agency to the forfeited asset.

[13] The federal share is the amount retained in the AFF that represents the percentage corresponding to the federal participation in the law enforcement effort. If a tribal, state, or local agency opts to take an asset for official use as opposed to receiving the net proceeds, the agency must pay the value of the federal share that would have been retained had the asset been sold. In these instances, the federal share is based on the current appraised value of the asset. In no case shall the federal share be less than 20% of the appraised value of the asset.

[14] The ACH form is available on MLARS Equitable Sharing Program page. Contact the Treasury Executive Office of Asset Forfeiture (TEOAF) or the USPIS for information about payments from these agencies.

All equitable sharing payments are subject to certain offsets under the Debt Collection Improvement Act of 1996 (DCIA), through which Treasury and other disbursing officials must offset federal payments to collect delinquent non-tax debts owed to the United States or state governments, and the Taxpayer Relief Act of 1997, which provides for the continuous levy of federal non-tax payments to collect delinquent tax debts. The Treasury Offset Program (TOP) collects Taxpayer Identification Numbers (TIN) and banking account information for the payee on any such offset payment.[15]

## V. Federal Contribution Form (FCF)

Each federal agency must complete the FCF to fully capture federal participation in the law enforcement effort leading to forfeiture, and when appropriate, must request a transfer of funds from one forfeiture fund (the AFF, TFF or U.S. Postal Inspection Service (USPIS) Forfeiture Fund[16]) to the fund of the recipient agency. Any forfeited funds or proceeds from the sale or other disposition of forfeited property may be transferred directly only to the appropriate forfeiture fund of the requesting agency, not to the requesting agency itself.

When federal agencies from the same forfeiture program participate in a joint investigation, no fund-to-fund monetary transfers occur. In these cases, the FCF serves the important function of documenting the participation of each federal agency and also provides necessary information to the sharing decision-maker who must evaluate the overall workhour and qualitative contributions of all participating federal, tribal, state, and local agencies when determining sharing percentages for "cash/proceeds" decisions.

When an AFF investigative agency participates in an investigation resulting in the seizure of property processed for forfeiture by another federal investigative agency, it can record the seizure in CATS by creating a "referral asset." A referral asset is another method for capturing statistics on seizures to document participation in an investigation.

An FCF may only be completed by the federal agencies listed in the chart below.

[15] On occasion, a delinquent debt giving rise to an offset may be attributable to another agency in the same governmental jurisdiction as the requesting agency. Agencies whose funds have been offset should review *Guide* Sec. V.E. for information relevant to seeking repayment of the offset funds from the responsible city, county, or state agency.

[16] The USPIS has the authority to directly receive asset forfeiture proceeds, expend funds, and manage its own asset forfeiture fund. *See* 39 C.F.R. §§ 2003 and 2601.

| NCIC/ORI CODE | Agency |
|---|---|
| CBPAMO000 | Customs and Border Protection- Air Operations (CBP-AO) |
| CBPOBP000 | Customs and Border Protection- Border Patrol (CBP) |
| CBPOFO000 | Customs and Border Protection- Field Operations (CBP-FO) |
| DCATF0000 | Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) |
| DCDOS0000 | Department of State |
| DCICE0000 | Immigration and Customs Enforcement (ICE) |
| DCIS | Defense Criminal Investigative Service (DCIS) |
| DEA | Drug Enforcement Administration (DEA) |
| FBI | Federal Bureau of Investigation (FBI) |
| IRS | Internal Revenue Service (IRS) |
| MDFDA03T0 | Food and Drug Administration (FDA) |
| TTB | Tax and Trade Bureau (TTB) |
| USCG | U.S. Coast Guard (USCG) |
| USDAIG | U.S. Department of Agriculture, Office of Inspector General (USDA-OIG) |
| USMS | U.S. Marshals Service (USMS) |
| USPS00000 | U.S. Postal Service (USPS) |
| USSS | U.S. Secret Service (USSS) |

When a TFF agency becomes involved in an ongoing joint investigation involving an AFF agency and tribal, state, or local law enforcement agencies, and an existing MOU governs sharing between the AFF agency and the participating tribal, state, and local law enforcement agencies, the sharing percentages agreed on in the MOU must be reduced to include a transfer to the TFF in recognition of the Treasury agency's participation. When a federal agency is invited to join an ongoing investigation, the agency must immediately notify the lead agency and the USAO of its involvement. Any issues that cannot be resolved through communication between case agents should be submitted to the appropriate special agent-in-charge (SAC) for the involved agencies. Agency headquarters will not become involved in the resolution of issues unless the SAC from either of the participating agencies requests assistance. Prompt and accurate communication about sharing matters is important and should occur in the first instance at the field level.

The deadline for agencies to submit FCFs is 45 days after forfeiture. Agencies may submit FCFs for intra-fund joint investigations (i.e. from one Department seizing agency to another) electronically through the eShare Portal.[17]

## VI. Reverse Sharing

The Department investigative agencies participating in an investigation resulting in the seizure of property that is processed for forfeiture by a tribal, state, or local law enforcement agency or foreign jurisdiction should create a "referral asset" in CATS to document their participation in the investigation. If any proceeds are received from the state, local, or tribal law enforcement agency or foreign jurisdiction through "reverse sharing," the agency's share will be deposited into the AFF.

[17] Agencies should continue to submit hard copies of the FCF to Treasury and Department of Homeland Security (DHS) agencies.

## VII. International Sharing of Forfeited Assets

Department policy applicable to international sharing, as well as the forfeiture of assets located overseas, is in Chapter 8, Section XIII of this *Manual*. The Department encourages international asset sharing with countries that facilitate the forfeiture of assets under U.S. law. International sharing, which requires both Department of Justice and Department of State's approval and concurrence by Department of the Treasury, must be either approved or pre-approved before any domestic equitable sharing can take place. The percentage granted to a foreign country often depends upon international sharing agreements or factors that differ significantly from the "workhour and qualitative contribution" standard used in determining domestic sharing.

Funds shared with the United States by the foreign government that have not been forfeited under U.S. law may not be eligible for domestic equitable sharing. These funds would be eligible for domestic equitable sharing only if they are forfeited under U.S. law.[18] Nevertheless, if U.S. prosecutors or investigators assisted in a foreign case that resulted in a foreign forfeiture, they are encouraged to contact MLARS to determine if it might be appropriate to submit a sharing request to that country, as the funds still may be deposited into the AFF and be applied for Asset Forfeiture Program purposes. All requests to foreign countries for asset sharing must be submitted by MLARS in coordination with the Department's Office of International Affairs (OIA).

[18] *See also* Chap. 8, Sec. XIII in this *Manual*.

# Appendix A:
# Approval, Consultation, and Notification Requirements Chart

## Adoption (State/Local Seizures)

| | | | |
|---|---|---|---|
| **Direct Adoption by U.S. Attorney** | Approval | AFPM Chap. 3.V.A | **MLARS** must authorize direct adoption by U.S. Attorney for firearms, ammunition, explosives, and any asset that does not meet the minimum net equity and value thresholds in AFPM Chap. 1.I.B.1 |
| **Direct Adoption by U.S. Attorney** | Approval | AFPM Chap. 3.V.A | **U.S. Attorney** may authorize direct adoption of assets that meet the applicable net equity and value thresholds and property associated with child pornography |
| **Direct Referral of Assets Other than Real Property by U.S. Attorney** | Approval | AFPM Chap. 3.V.B | **MLARS** must authorize direct referral by U.S. Attorney for real property |
| **Direct Referral by U.S. Attorney** | Approval | AFPM Chap. 3.V.B | **U.S. Attorney** may authorize direct referral of any asset other than real property |

## Attorneys' Fees

| | | | |
|---|---|---|---|
| **EAJA Awards** | Approval | AFPM Chap. 12.II.B; JM § 9-117.220 | **MLARS** must give approval to use funds to pay EAJA awards arising from third party petitioners in criminal forfeiture actions. |
| **Exempt Fees from Forfeiture** | Approval | AFPM Chap. 11.IX, Chap. 12.IV; JM §§ 9-113.600, 9-120.116 | **AAG** must give approval to enter into a formal or informal, written or oral agreement to exempt from forfeiture an asset transferred to an attorney as fees for legal services, including those restrained as substitute assets. |
| **Proceedings Against Fees** | Approval | AFPM Chap. 12.IV; JM § 9-120.112 | **AAG** must give approval for any action to institute a criminal or civil forfeiture proceeding against an asset transferred to an attorney as a fee for legal services. |

## Business Entities

| | | | |
|---|---|---|---|
| **Facilitating Property** | Approval | AFPM Chap. 1.I.D.5, Chap. 5.III.D.1.b | **U.S. Attorney** must provide written authorization before the USAO: (1) seizes or files a civil forfeiture complaint against an ongoing business based on a facilitation theory or (2) extends 60-day deadline to file civil forfeiture complaint against an ongoing business based on a facilitation theory. |

| | | | |
|---|---|---|---|
| **AAG** | Assistant Attorney General | **JM** | *Justice Manual* |
| **AFF** | Assets Forfeiture Fund | **MLARS** | Money Laundering and Asset Recovery Section |
| **AFMS** | Justice Management Division, Asset Forfeiture Management Staff | **OIA** | Office of International Affairs |
| **AFPM** | *Asset Forfeiture Policy Manual* (2021) | **SADF** | Seized Assets Deposit Fund |
| **AG** | Attorney General | **TFF** | Department of the Treasury Forfeiture Fund |
| **DAG** | Deputy Attorney General | **Treasury** | Department of the Treasury |
| **Department** | Department of Justice | **USAO** | U.S. Attorney's Office |
| **EAJA** | Equal Access to Justice Act | **USMS** | U.S. Marshals Office |
| **EOUSA** | Executive Office for U.S. Attorneys | **USVSST Fund** | United States Victims of State Sponsored Terrorism Fund |

## Business Entities

| | | | |
|---|---|---|---|
| **Facilitating Property** | Approval | AFPM Chap. 5.III.D.1.b | **MLARS Chief** must provide written authorization before the Criminal Division or other Department component not partnering with the USAO may extend 60-day deadline to file civil forfeiture complaint against an ongoing business based on a facilitation theory. |
| **Losses or Liabilities, Post-Seizure** | Notify | AFPM Chap. 9.IV | USAO, USMS, or investigative agency must notify **MLARS** and **AFMS** when they learn that a restrained or seized business will lose money, has liabilities, or has insufficient equity. |
| **Net Losses, Planning for Seizure and Restraint** | Approval | AFPM Chap. 1.I.D.1 and 1.I.D.4, Chap. 9.IV | **MLARS** must give approval, in coordination with **AFMS** and **USMS**, if the restraint, seizure, or forfeiture of a business could create a deficit to the AFF for that business. |
| **Prior to Instituting Forfeiture Proceedings** | Consult | AFPM Chap. 1.I.D.4, Chap. 4.III.C, Chap. 9.II; JM §§ 9-105.330, 9-111.124 | USAO must consult **MLARS** and **USMS** prior to filing indictment, information, or complaint in any forfeiture action against, seeking the seizure of, or moving to restrain an ongoing business.<br><br>JM § 9-105.330 requires consultation with MLARS prior to seeking forfeiture of a business on the theory that it facilitated money laundering. JM 9-111.124 says that USAO must consult MLARS prior to initiating a forfeiture action against, or seeing the seizure of, or moving to restrain an operating business. MLARS will coordinate with EOUSA to update JM. |

## Civil Forfeiture Complaint

| | | | |
|---|---|---|---|
| **Facilitating Property** | Approval | AFPM Chap. 5.III.D | **U.S. Attorney** must provide written authorization before USAO files any civil forfeiture complaint based on a theory that the property facilitated or concealed underlying criminal activity. |
| **Facilitating Property** | Approval | AFPM Chap. 5.III.D | **MLARS Chief** must provide written authorization before the Criminal Division or other Department component not partnering with the USAO files any civil forfeiture complaint based on a theory that the property facilitated or concealed underlying criminal activity. |

## Correspondent Accounts

| | | | |
|---|---|---|---|
| **Restraining Order or Warrant** | Approval | AFPM Chap. 8.IX; AAG Chertoff Memorandum; USA Patriot Act, § 319, codified at 18 U.S.C. § 981(k) | **MLARS** must give approval before serving a restraining order, seizure warrant, or warrant of arrest on a correspondent bank account under 18 U.S.C. § 981(k) (**MLARS Chief** will get concurrence from **OIA director**). |

| | | | |
|---|---|---|---|
| AAG | Assistant Attorney General | JM | *Justice Manual* |
| AFF | Assets Forfeiture Fund | MLARS | Money Laundering and Asset Recovery Section |
| AFMS | Justice Management Division, Asset Forfeiture Management Staff | OIA | Office of International Affairs |
| AFPM | *Asset Forfeiture Policy Manual* (2021) | SADF | Seized Assets Deposit Fund |
| AG | Attorney General | TFF | Department of the Treasury Forfeiture Fund |
| DAG | Deputy Attorney General | Treasury | Department of the Treasury |
| Department | Department of Justice | USAO | U.S. Attorney's Office |
| EAJA | Equal Access to Justice Act | USMS | U.S. Marshals Office |
| EOUSA | Executive Office for U.S. Attorneys | USVSST Fund | United States Victims of State Sponsored Terrorism Fund |

| Correspondent Accounts | | | |
|---|---|---|---|
| **Subpoena or Summons** | Approval | AAG Chertoff Memorandum;<br>AG order delegating authority to AAG;<br>USA Patriot Act, § 319, codified at 31 U.S.C. § 5318(k) | **MLARS** must give approval before AAG can issue summonses or subpoenas to foreign banks that maintain correspondent accounts in the United States to get records (**MLARS Chief** will get approval from **OIA** as well). |
| **Equitable Sharing** | | | |
| **Assets Valued $1 to $5 Million** | Approval | AFPM Chap. 15.III.E.3.a | **MLARS Chief** has authority to rule on equitable sharing requests for judicially and administratively forfeited assets in which: (1) the property to be shared is valued between $1 and $5 million and (2) MLARS, seizing agency, and USAO agree on the sharing. |
| **Assets Valued Over $5 Million** | Approval | AFPM Chap. 15.III.E.3.b | **AAG** has the authority to rule on equitable sharing requests if: (1) the property is over $5 million and (2) MLARS, seizing agency, and USAO all agree on the sharing. |
| **International Sharing** | Approval | AFPM Chap. 8.XIII, Chap. 15.VIII;<br>JM § 9-116.400 | **Secretary of State** and **AG** approval required before forfeited assets can be shared internationally. In cases involving the AFF, (1) **AAG** approves uncontested international sharing proposals over $5 million and (2) **MLARS Chief** approves uncontested international equitable sharing proposals for $5 million or less. |
| **Multi-District / Real Property Transfer / Disagreement** | Approval | AFPM Chap. 15.III.E.3.b<br>JM § 9-116.210 | **DAG** must approve equitable sharing in cases involving: (1) multiple districts, (2) real property transfers to a state or local agency for law enforcement related use, or (3) disagreement among USAO, MLARS, and seizing agency on the sharing, regardless of the property value.<br><br>JM § 9-116.210 says that DAG must approve equitable sharing in cases involving: (1) $1 million or more in forfeited assets, (2) multi-district cases, or (3) cases involving real property transfers to a state or local agency for law enforcement related use. MLARS is coordinating with EOUSA to update JM. |
| **Transfer of Tangible Items** | Approval | AFPM Chap. 15.III.E.3.c | **MLARS** must approve equitable sharing in cases involving the transfer of tangible items. |
| **International Forfeiture** | | | |
| **Businesses Located Abroad** | Consult | AFPM Chap. 8.IV | **MLARS** must be consulted before the United States asks a foreign government to restrain or seize an ongoing business or its assets, or appoint a guardian, or similar fiduciary for the same. |

| | | | |
|---|---|---|---|
| AAG | Assistant Attorney General | JM | *Justice Manual* |
| AFF | Assets Forfeiture Fund | MLARS | Money Laundering and Asset Recovery Section |
| AFMS | Justice Management Division, Asset Forfeiture Management Staff | OIA | Office of International Affairs |
| AFPM | *Asset Forfeiture Policy Manual* (2021) | SADF | Seized Assets Deposit Fund |
| AG | Attorney General | TFF | Department of the Treasury Forfeiture Fund |
| DAG | Deputy Attorney General | Treasury | Department of the Treasury |
| Department | Department of Justice | USAO | U.S. Attorney's Office |
| EAJA | Equal Access to Justice Act | USMS | U.S. Marshals Office |
| EOUSA | Executive Office for U.S. Attorneys | USVSST Fund | United States Victims of State Sponsored Terrorism Fund |

## International Forfeiture

| | | | |
|---|---|---|---|
| **Civil Forfeiture** | Consult | AFPM Chap. 8.VIII; JM § 9-13.526 | **OIA** (which will consult with **MLARS**) must be notified before filing an in rem forfeiture action based on 28 U.S.C. § 1355(b)(2). |
| **Enforcement/ Recognition in Foreign Jurisdiction** | Consult | JM § 9-13.526 | **OIA** (which will consult with **MLARS**) must be consulted before taking steps to present to a foreign government, for enforcement or recognition, any civil or criminal forfeiture order entered in the United States for property located within the foreign jurisdiction. |
| **Enforcement of Foreign Judgments and Restraining Orders** | Approval | AFPM Chap. 8.XII.B | **MLARS** must authorize: (1) foreign forfeiture or confiscation judgments under 28 U.S.C. § 2467(b)(2) where the amount is $5 million or less; and (2) all foreign forfeiture restraining orders under § 2467(d)(3)(B)(ii). |
| **Repatriation** | Consult | AFPM Chap. 8.VI | **MLARS** and **OIA** must be consulted when seeking repatriation of forfeitable assets located abroad. |

## Net Equity Thresholds

| | | | |
|---|---|---|---|
| **Decrease Thresholds** | Approval | AFPM Chap. 1.I.D.1; JM § 9-111.120 | Supervisory-level approval, in writing, from the **USAO** (for **judicial forfeitures**) or **seizing agency** (for **administrative forfeitures**) required for any downward departure from the seizing thresholds. Reason for waiver must be explained in the case file. |
| **Increase Thresholds** | Consult | AFPM Chap. 1.I.D.1, Chap. 3.I n.2; JM § 9-111.120 | **USAO** (which will consult seizing agencies affected by the change) may institute higher district-wide thresholds for judicial forfeitures. |

## Official Use

| | | | |
|---|---|---|---|
| **Property Value $50,000 or More** | Notify | AFPM Chap. 15.I.B | Seizing agency and/or USMS must notify **MLARS** where property requested for official use is valued at over $50,000. |
| **Asset Seized by Its Own Agency** | Decision | AFPM Chap. 15.I.B | **Head of the seizing agency**, or a **designated headquarters official**, decides whether to put assets seized by the agency into its own official use. |
| **Requests by Other Federal Agencies** | Approval | AFPM Chap. 15.I.C | **Lead federal seizing agency** approves requests for official use by other federal agencies. If more than one Department component seeks to retain the same forfeited property for official use, **MLARS** will determine which agency may place the property into official use. |

| | | | |
|---|---|---|---|
| AAG | Assistant Attorney General | JM | *Justice Manual* |
| AFF | Assets Forfeiture Fund | MLARS | Money Laundering and Asset Recovery Section |
| AFMS | Justice Management Division, Asset Forfeiture Management Staff | OIA | Office of International Affairs |
| AFPM | *Asset Forfeiture Policy Manual* (2021) | SADF | Seized Assets Deposit Fund |
| AG | Attorney General | TFF | Department of the Treasury Forfeiture Fund |
| DAG | Deputy Attorney General | Treasury | Department of the Treasury |
| Department | Department of Justice | USAO | U.S. Attorney's Office |
| EAJA | Equal Access to Justice Act | USMS | U.S. Marshals Office |
| EOUSA | Executive Office for U.S. Attorneys | USVSST Fund | United States Victims of State Sponsored Terrorism Fund |

## Official Use

| | | | |
|---|---|---|---|
| **Payment of Liens on Personal Property Placed into Official Use** | Approval | AFPM Chap. 15.I.E | **MLARS Chief** must approve requests for exceptions for payment of liens on personal property placed into official use from the AFF. |

## Plea Agreements or Settlements

| | | | |
|---|---|---|---|
| **Interlocutory Sale of Cryptocurrency** | Consult | AFPM Chap. 2.V.B.3, Chap. 11.VIII.D n.17 | Consultation with **MLARS** is required prior to seeking an order for the interlocutory sale of cryptocurrency. |
| **Administrative Forfeiture, Return of Property** | Consult | AFPM Chap. 5.II.E, Chap. 11.I.B.4; JM § 9-113.103 | **Seizing agency** must be consulted before entering into plea agreements or settlements returning property that is the subject of administrative forfeiture proceedings. USAO should not agree to return property that is the subject of a pending administrative forfeiture proceeding, unless (1) **seizing agency** agrees to suspend administrative forfeiture or (2) **MLARS** approves the decision to return the property. |
| **Administrative Forfeiture, Return of Property** | Approval | AFPM Chap. 5.II.E, Chap. 11.I.B.4; JM § 9-113.104 | **Seizing agency** must be consulted before entering into plea agreements or settlements returning property that is the subject of administrative forfeiture proceedings. USAO should not agree to return property that is the subject of a pending administrative forfeiture proceeding, unless (1) **seizing agency** agrees to suspend administrative forfeiture or (2) **MLARS** approves the decision to return the property. |
| **Administrative Forfeiture Used to Effectuate Agreement** | Consult | AFPM Chap. 11.III.C; JM § 9-113.300 | **Seizing agency headquarters** must be consulted where an administrative forfeiture is necessary to effectuate an agreement.<br><br>JM § 9-113.300 requires consultation with **the seizing agency headquarters** where an administrative forfeiture is necessary to effectuate a settlement. MLARS will coordinate with EOUSA to update JM. |
| **Deferred Prosecution Agreement (DPA) or Non-Prosecution Agreement (NPA)** | Approval | AFPM Chap. 11.I.A | **TEOAF** counsel and **TFF seizing agency** must be consulted for additional guidance on plea agreements or settlements involving DPAs or NPAs. |
| **Management or Disposition** | Consult | AFPM Chap. 9.II, Chap. 10.I.D, Chap. 11.I.B.2 | USAO or seizing agency (in **administrative forfeitures**) should consult **USMS** before taking any property management or disposition actions. |

| | | | |
|---|---|---|---|
| **AAG** | Assistant Attorney General | **JM** | *Justice Manual* |
| **AFF** | Assets Forfeiture Fund | **MLARS** | Money Laundering and Asset Recovery Section |
| **AFMS** | Justice Management Division, Asset Forfeiture Management Staff | **OIA** | Office of International Affairs |
| **AFPM** | *Asset Forfeiture Policy Manual* (2021) | **SADF** | Seized Assets Deposit Fund |
| **AG** | Attorney General | **TFF** | Department of the Treasury Forfeiture Fund |
| **DAG** | Deputy Attorney General | **Treasury** | Department of the Treasury |
| **Department** | Department of Justice | **USAO** | U.S. Attorney's Office |
| **EAJA** | Equal Access to Justice Act | **USMS** | U.S. Marshals Office |
| **EOUSA** | Executive Office for U.S. Attorneys | **USVSST Fund** | United States Victims of State Sponsored Terrorism Fund |

## Plea Agreements or Settlements

| | | | |
|---|---|---|---|
| **Negotiations** | Consult | AFPM Chap. 11.I.B.2; JM § 9-113.103 | **USMS** and **seizing agency** must be consulted during settlement negotiation where appropriate. When a settlement involves complex assets, complex terms, or a risk of loss to the government, prosecutors should consult **USMS**. |
| **Settlement Over $2 Million and 15% of Amount Involved** | Approval | AFPM Chap. 11.II; JM § 9-113.200 | **DAG** must approve settlements where the amount to be released exceeds $2 million and 15% of the amount involved. |
| **Settlement over $1 Million but under $2 Million and 15% of Amount Involved** | Approval | AFPM Chap. 11.II; JM § 9-113.200 | **MLARS Chief** has authority to approve a forfeiture settlement over $1 million, unless the amount to be released exceeds 15% of the amount involved and is greater than $2 million. |
| **Settlement under $1 Million or between $1 and $5 Million if Released Amount Under 15% of Original Claim** | Approval | AFPM Chap. 11.II; JM § 9-113.200 | **U.S. Attorney** may approve any settlement in a criminal or civil forfeiture claim if (1) the amount involved is less than $1 million, regardless of the amount to be released or (2) the amount involved is between $1 and $5 million, if the amount to be released does not exceed 15% of the original claim. |
| **Taxes** | Notify | AFPM Chap. 11.I.B.9 | USAO should notify **appropriate agency** (like IRS) prior to any settlement that will release assets to claimant/ defendant known (or likely to have) other outstanding obligations to the United States (like taxes). |
| **Unsecured Partial Payment** | Approval | AFPM Chap. 11.I.B.7; JM § 9-113.107 | USAO must obtain approval from **MLARS** (which will consult **USMS**) prior to any settlement that provides for unsecured partial payment. |
| **Unsecured Partial Payment** | Consult | AFPM Chap. 11.I.B.7; JM § 9-113.107 | USAO must obtain approval from **MLARS** (which will consult **USMS**) prior to any settlement that provides for unsecured partial payment. |

## Planning for Seizure/Restraint

| | | | |
|---|---|---|---|
| **Loss or Liabilities** | Consult | AFPM Chap. 1.I.D.1 and 1.I.D.3.b; JM § 9-111.123 | USAO must consult **USMS** and **seizing agency** (in **judicial forfeitures**) before seizing assets with potential liabilities.<br>Seizing agency must consult **USMS** (in **administrative forfeitures**) in forfeiture of non-routine assets. |
| **Management or Disposition** | Consult | AFPM Chap. 9.II, Chap. 10.I.D | USAO should consult **USMS** before submitting or filing any proposed court orders to restrain, seize, or impose property or financial managment obligations on property in USMS custody. |

| | | | |
|---|---|---|---|
| AAG | Assistant Attorney General | JM | *Justice Manual* |
| AFF | Assets Forfeiture Fund | MLARS | Money Laundering and Asset Recovery Section |
| AFMS | Justice Management Division, Asset Forfeiture Management Staff | OIA | Office of International Affairs |
| AFPM | *Asset Forfeiture Policy Manual* (2021) | SADF | Seized Assets Deposit Fund |
| AG | Attorney General | TFF | Department of the Treasury Forfeiture Fund |
| DAG | Deputy Attorney General | Treasury | Department of the Treasury |
| Department | Department of Justice | USAO | U.S. Attorney's Office |
| EAJA | Equal Access to Justice Act | USMS | U.S. Marshals Office |
| EOUSA | Executive Office for U.S. Attorneys | USVSST Fund | United States Victims of State Sponsored Terrorism Fund |

| **Planning for Seizure/Restraint** | | | |
|---|---|---|---|
| **Planning Discussions** | Consult | AFPM Chap. 1.I.A–D; JM § 9-111.110 | **USMS** must be consulted as part of the planning process prior to seizure/restraint and forfeiture of complex assets. |
| **Third Party Contractors** | Approval | AFPM Chap. 1.I.B | **USAO** must give approval prior to the release of sensitive law enforcement information to third party contractors for the purpose of pre-seizure planning. |

| **Real Property** | | | |
|---|---|---|---|
| **Contaminated Real Property** | Consult | AFPM Chap. 4.I.E; JM § 9-111.400 | **Seizing agency**, **USMS**, **MLARS**, and **AFMS** must be consulted prior to seizure of contaminated real property. (JM says USAO should exercise its discretion.) |
| **Liens or Mortgages** | Approval | AFPM Chap. 10.III.A; JM § 9-113.800 | **MLARS** must approve any requests for payment of liens and mortgages in excess of sale proceeds. |
| **Net Loss, Planning for Seizure and Restraint** | Consult | AFPM Chap. 1.I.D.1, Chap. 4.I.A–B | Consultation between **MLARS**, **AFMS**, and **participating agencies** (USAO, seizing agency, USMS) is required if the restraint, seizure, or forfeiture of real property could create a deficit to the AFF for that property. |
| **Net Loss, Pre-Seizure** | Notify | AFPM Chap. 1.I.D.3.b.1, Chap. 4.I.B.2 | If USAO decides to continue with forfeiture, it must (1) notify **MLARS** and **AFMS** and (2) obtain approval in writing from supervisory-level official at **USAO**. |
| **Net Loss, Pre-Seizure** | Approval | AFPM Chap. 1.I.D.3.b.1, Chap. 4.I.B.2 | If USAO decides to continue with forfeiture, it must (1) notify **MLARS** and **AFMS**, and (2) obtain approval in writing from supervisory-level official at **USAO**. |
| **Transfer: Equitable Sharing** | Approval | AFPM Chap. 15.III.E.3 n.11, Chap. 4.V.A | **AAG** must approve real property transfers to state or local agencies for official use in fulfilling a compelling law enforcement need. |
| **Transfer: Federal Purpose** | Approval | AFPM Chap. 4.V.D | **DAG** must approve a real property transfer to a federal agency for use in fulfilling a law enforcement need, or for serving a significant and continuing federal purpose. |
| **Transfer: Operation Goodwill** | Approval | AFPM Chap. 4.V.C | **AG** must approve real property transfers to state or local governmental agencies, or its transferees, for use in the Operation Goodwill Program. |
| **Transfer: Recreational, Historic Preservation purpose** | Approval | AFPM Chap. 4.V.E | **DAG** must approve real property transfers to a state for use as a recreational or historic site, or for the preservation of natural conditions. |
| **Transfer: Weed and Seed** | Approval | AFPM Chap. 4.V.B; JM § 9-116.500 | **DAG** must approve real property transfers to state or local agencies for further transfer to other government agencies or non-profit agencies for use in Weed and Seed Program. |

| | | | |
|---|---|---|---|
| **AAG** | Assistant Attorney General | **JM** | *Justice Manual* |
| **AFF** | Assets Forfeiture Fund | **MLARS** | Money Laundering and Asset Recovery Section |
| **AFMS** | Justice Management Division, Asset Forfeiture Management Staff | **OIA** | Office of International Affairs |
| **AFPM** | *Asset Forfeiture Policy Manual* (2021) | **SADF** | Seized Assets Deposit Fund |
| **AG** | Attorney General | **TFF** | Department of the Treasury Forfeiture Fund |
| **DAG** | Deputy Attorney General | **Treasury** | Department of the Treasury |
| **Department** | Department of Justice | **USAO** | U.S. Attorney's Office |
| **EAJA** | Equal Access to Justice Act | **USMS** | U.S. Marshals Office |
| **EOUSA** | Executive Office for U.S. Attorneys | **USVSST Fund** | United States Victims of State Sponsored Terrorism Fund |

## Real Property

| | | | |
|---|---|---|---|
| **Facilitating Property** | Approval | AFPM Chap. 5.III.D.1.c | **U.S. Attorney** must provide written authorization before USAO files a civil forfeiture complaint against personal residences based on a facilitation theory. **MLARS Chief** must provide written authorization before the Criminal Division or other Department component not partnering with the USAO files a civil forfeiture complaint against personal residences based on a facilitation theory. |
| **Property Located in Another District** | Consult | AFPM Chap. 4.I | When USAO identifies real property for forfeiture that is located in a different district, the USAO should consult with the **USAO district** where the property is located to discuss any state-specific issues relating to the forfeiture. |
| **Property Located in Another District** | Notify | AFPM Chap. 11.I.B.6 | To settle a forfeiture action involving property located in another district, the USAO handling the forfeiture must notify and coordinate with **USMS** in the district where the property is located. |
| **Valuation** | Consult | AFPM Chap. 4.I.B | Federal seizing agency and USAO are required to consult **USMS** to discuss valuation products, lien information, occupancy issues, and other factors that may impact seizure and forfeiture decisions. |

## Remission or Restoration

| | | | |
|---|---|---|---|
| **Remission or Mitigation Petitions** | Approval | AFPM Chap. 13.I, Chap. 14.II.A | **MLARS** must approve (in **judicial forfeitures**) petitions for remission or mitigation.<br>**Seizing agency** must approve (in **administrative forfeitures**) petitions for remission or mitigation. |
| **Restoration Requests** | Approval | AFPM Chap. 14.II.B.1 | **MLARS** must approve requests for restoration. |

## Seized Cash Management

| | | | |
|---|---|---|---|
| **Exceptions to Prompt Deposit** | Approval | AFPM Chap. 2.VI; JM § 9-111.600 | **MLARS** must give approval for exceptions to the policy requiring prompt deposit of any seized cash into the SADF, unless the seized cash is less than $5,000. |

| | | | |
|---|---|---|---|
| **AAG** | Assistant Attorney General | **JM** | *Justice Manual* |
| **AFF** | Assets Forfeiture Fund | **MLARS** | Money Laundering and Asset Recovery Section |
| **AFMS** | Justice Management Division, Asset Forfeiture Management Staff | **OIA** | Office of International Affairs |
| **AFPM** | *Asset Forfeiture Policy Manual* (2021) | **SADF** | Seized Assets Deposit Fund |
| **AG** | Attorney General | **TFF** | Department of the Treasury Forfeiture Fund |
| **DAG** | Deputy Attorney General | **Treasury** | Department of the Treasury |
| **Department** | Department of Justice | **USAO** | U.S. Attorney's Office |
| **EAJA** | Equal Access to Justice Act | **USMS** | U.S. Marshals Office |
| **EOUSA** | Executive Office for U.S. Attorneys | **USVSST Fund** | United States Victims of State Sponsored Terrorism Fund |

## Structuring

| | | | |
|---|---|---|---|
| **Seizure** | Approval | AFPM Chap. 2.VII.A | If no criminal charges have been filed, **U.S. Attorney** must provide written authorization before the USAO seeks a warrant to seize structured funds where no probable cause that the structured funds were generated by unlawful activity or that the structured funds were intended for use in, or to conceal or promote, ongoing or anticipated unlawful activity. |
| **Seizure** | Approval | AFPM Chap. 2.VII.A | If no criminal charges have been filed, **MLARS Chief** must provide written authorization before the Criminal Division or other Department component not partnering with the USAO seeks a warrant to seize structured funds where no probable cause that the structured funds were generated by unlawful activity or that the structured funds were intended for use in, or to conceal or promote, ongoing or anticipated unlawful activity.<br><br>The basis for linking the structured funds to additional unlawful activity must receive appropriate supervisory approval and be memorialized in the prosecutor's records. |
| **150-day deadline** | Approval | AFPM Chap. 2.VII.C | **U.S. Attorney** must provide written authorization before the USAO may extend the 150-day deadline by 60 days to file criminal charges or a civil complaint against the asset. |
| **150-day deadline** | Approval | AFPM Chap. 2.VII.C | **MLARS Chief** must provide written authorization before the Criminal Division or other Department component not partnering with the USAO may extend the 150-day deadline by 60 days to file criminal charges or a civil complaint against the asset. |

## Terrorism

| | | | |
|---|---|---|---|
| **State Sponsor of Terrorism** | Consult | AFPM Chap. 1.I.D.5, Chap. 10.III.D.6 | Consult with **MLARS** as early as possible in any forfeiture case involving a state sponsor of terrorism that may require deposits to the USVSST Fund. |

## Trustees and Monitors

| | | | |
|---|---|---|---|
| **Appointment** | Consult | AFPM Chap. 9.I.C | USAO must consult with **MLARS** before seeking appointment of a trustee, monitor, or similar fiduciary in any forfeiture case. |

| | | | |
|---|---|---|---|
| **AAG** | Assistant Attorney General | **JM** | *Justice Manual* |
| **AFF** | Assets Forfeiture Fund | **MLARS** | Money Laundering and Asset Recovery Section |
| **AFMS** | Justice Management Division, Asset Forfeiture Management Staff | **OIA** | Office of International Affairs |
| **AFPM** | *Asset Forfeiture Policy Manual* (2021) | **SADF** | Seized Assets Deposit Fund |
| **AG** | Attorney General | **TFF** | Department of the Treasury Forfeiture Fund |
| **DAG** | Deputy Attorney General | **Treasury** | Department of the Treasury |
| **Department** | Department of Justice | **USAO** | U.S. Attorney's Office |
| **EAJA** | Equal Access to Justice Act | **USMS** | U.S. Marshals Office |
| **EOUSA** | Executive Office for U.S. Attorneys | **USVSST Fund** | United States Victims of State Sponsored Terrorism Fund |