STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

DAVID COUNTRYMAN (CABN 226995)
CHRIS KALTSAS (NYBN 5460902)
CLAUDIA A. QUIROZ (CABN 254419)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6915
    FAX: (415) 436-7234
    chris.kaltsas2@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CV 20-7811 RS |
| Plaintiff, | **NOTICE OF MOTION AND MOTION TO STRIKE CLAIMANT LUCAS BUCKLEY'S AND THE GOX VICTIM BITCOIN TRUST'S VERIFIED CLAIM FOR LACK OF STANDING** |
| v. | |
| Approximately 69,370 Bitcoin (BTC), Bitcoin Gold (BTG), Bitcoin SV (BSV), and Bitcoin Cash (BCH) seized from 1HQ3Go3ggs8pFnXuHVHRytPCq5fGG8Hbhx | DATE: May 12, 2022
TIME: 1:30 p.m.
COURTROOM: Courtroom 3, 17th Floor (or via Zoom) |
| Defendant. | |

U.S. MOTION TO STRIKE LUCAS BUCKLEY'S CLAIM
CV 20-7811 RS

i

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 12, 2022, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 3 of the above-entitled court located at 450 Golden Gate Avenue, San Francisco, California 94102, Movant, the United States of America (hereinafter "the United States" or "the government"), will hereby respectfully move to strike the Verified Claim of Claimant Lucas Buckley, as Trustee for the Gox Victim Bitcoin Trust.

The Motion will be based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, Claimant Lucas Buckley's Response to the Government's Special Interrogatories, attached hereto as Exhibit "A," and the Declaration of IRS-CI Special Agent Jeremiah Haynie, located at Docket Number 69-1, in addition to all other filings and pleadings in this matter.

DATED: April 4, 2022

STEPHANIE M. HINDS
United States Attorney

    /s/
DAVID COUNTRYMAN
CHRIS KALTSAS
CLAUDIA QUIROZ
Assistant United States Attorneys

U.S. MOTION TO STRIKE LUCAS BUCKLEY'S CLAIM
CV 20-7811 RS                                      1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The United States of America hereby moves pursuant to Supplemental Rule (G)(8)(c)(i)(A) of the Supplemental Rules for Admiralty of Maritime Claims and Asset Forfeiture Actions ("the Supplemental Rules") to strike the claim filed by claimant Lucas Buckley (hereinafter, "Buckley"), the purported trustee of the Gox Victim Bitcoin Trust, because he lacks standing to bring his claim to the approximately 69,370 Bitcoin (BTC), Bitcoin Gold (BTG), Bitcoin SV (BSV), and Bitcoin Cash (BCH) seized from Bitcoin address 1HQ3Go3ggs8pFnXuHVHRytPCq5fGG8Hbhx (hereinafter, collectively, "the Defendant Property") under Rule G(8)(c)(B).

On March 25, 2022, this Court issued an order striking three of the claims in this action and denying a fourth claimant's motion for direct access/intervention. *See* Dkt. No. 104. The Court noted in its Order that, "[a]ll four motions will be decided in the government's favor as none of the claimants offer anything more than implausible speculation that any of the seized Bitcoin is their property." *See id.* at 2. Buckley's is the only outstanding claim in this action, which the government did not yet move to strike because it hinges on and is entirely derivative of one of the stricken claims—Roman Hossain's. Specifically, Buckley and the Gox Victim Bitcoin Trust purportedly purchased their interest in the property from Hossain. Ex. A, Responses to Special Interrogatories, at 5-6. Now that the Court has stricken Hossain's claim for lack of standing (among other things), Buckley's claim can be similarly struck. Following resolution of Buckley's claim, the case can be brought to a close.

Buckley's assertion of nominal "ownership," is for a nominal amount of cryptocurrency—a mere 0.01 BTC (valued at approximately USD $458 as of the date of this Motion). This shows what Buckley himself has plainly admitted—that his claim is nothing more than a fishing expedition through which the Gox Victim Bitcoin Trust seeks to obtain information on an unrelated matter. Indeed, Buckley blatantly admits that he submitted his claim to get discovery supporting a potentially larger claim, to wit, "approximately 34,754 additional bitcoin that were formerly held in accounts on Mt. Gox . . . ." Dkt. No. 43 ¶ 8. Buckley further explains that his primary objective is to obtain "additional

information, that is currently not publicly available, to determine which if any, of those bitcoin [from the hack at the Mt. Gox Exchange] may have been seized from the 1HQ3 wallet." *See* Dkt. No. 43 at ¶ 8. Buckley's admission underscores the speculative nature of his claim, and in no sense a establishes colorable claim to title of the Defendant Property. For these reasons and because his claim is entirely derivative of Roman Hossain's failed claim, the Court should strike Buckley's claim forthwith.

## II.   PROCEDURAL HISTORY

This is an *in rem* forfeiture action against the Defendant Property, which was seized on November 3, 2020 from Individual X, who signed a Consent and Agreement to Forfeiture with the U.S. Attorney's Office, Northern District of California.[1] *See* United States' Amended Complaint for Forfeiture, Dkt. No. 8 ¶ 23. In that agreement, Individual X consented to the forfeiture of the Defendant Property to the United States government. *Id.* Buckley has filed one of the seven claims and motions to intervene submitted to the Court regarding the Defendant Property. *See* Dkt. Nos. 14, 35, 42, 43, 64, 67, 87. One claimant withdrew their claim. Dkt. No. 48. The Court disposed of five of the claims by denying two claimants' motions to intervene, and striking three claimants' claims upon the government's motion. Dkt. Nos. 19, 24, 104. This motion addresses the sole remaining claim.

## III.   FACTS

### A.   Silk Road

From 2011 until October 2013, Silk Road was the most sophisticated and extensive criminal marketplace on the Internet, serving as a sprawling black-market bazaar where unlawful goods and services, including illegal drugs of virtually all varieties, were bought and sold by the site's users. While in operation, Silk Road was used by thousands of drug dealers and other unlawful vendors to distribute hundreds of kilograms of illegal drugs and other unlawful goods and services to well over 100,000 buyers, and to launder hundreds of millions of dollars derived from these transactions. Dkt. No. 8 ¶ 7. The only form of payment accepted on Silk Road was Bitcoin. *Id.* ¶ 11. All told, Silk Road generated

---

[1] As the Court is familiar with the facts and procedural history of this case, the government recites only the most essential facts for resolving the instant Motion.

U.S. MOTION TO STRIKE LUCAS BUCKLEY'S CLAIM
CV 20-7811 RS                                                           3

sales revenue totaling over 9.5 million Bitcoin, and collected commissions from these sales totaling over 600,000 Bitcoin. *Id.* ¶ 12. In February 2015, a federal jury in the Southern District of New York convicted Silk Road creator Ross Ulbricht on seven counts, including conspiracy to distribute narcotics and money laundering in connection with his operation of Silk Road.

### B. Theft of Bitcoin from Silk Road and Transfer of Bitcoin from Hossain's Mt. Gox Account

In 2020, law enforcement officers used a third-party bitcoin attribution company to analyze Bitcoin transactions executed by Silk Road. From this review, they observed that on May 6, 2012, 54 transactions were sent from Bitcoin addresses controlled by Silk Road to two Bitcoin addresses: 1BADznNF3W1gi47R65MQs754KB7zTaGuYZ and 1BBqjKsYuLEUE9Y5WzdbzCtYzCiQgHqtPN (hereinafter, collectively "1BAD") totaling 70,411.46 BTC (valued at approximately $354,000 at the time of transfer). *Id.* ¶ 15; *see also* Dkt. No. 69-1, Haynie Decl., at ¶ 3. These 54 transactions were not noted in the Silk Road database as a vendor withdrawal or a Silk Road employee withdrawal and therefore appeared to represent Bitcoin that was stolen from Silk Road. Dkt. No. 8 ¶ 16.

In February 2013—nine months *after* the theft of Bitcoin from Silk Road—Hossain's Bitcoins were withdrawn from his Mt. Gox account. Dkt. No. 69-1, Haynie Decl., at ¶ 4 ("Mt. Gox records show that on February 8, 2013 and February 9, 2013, there was a transfer of 200 BTC and 45.92 BTC out of Hossain's Mt. Gox account for a total of 245.92 BTC. This matches exactly the amount Hossain claimed was stolen from his Mt. Gox account."). There is accordingly no possibility that Hossain's Bitcoin was among the stolen Bitcoin transferred to 1BAD. *Id* ¶ 5.

On approximately April 9, 2013, the Bitcoin addresses that received the 70,411.46 Bitcoin from Silk Road sent 69,471.082201 (worth approximately $14 million at the time of transfer) to 1HQ3Go3ggs8pFnXuHVHRytPCq5fGG8Hbhx (hereafter "1HQ3"). Dkt. No. 8 ¶ 17. On approximately April 23, 2015, 1HQ3 sent 101 Bitcoin (approximately $23,700) to BTC-e, a company that provided Bitcoin related services and operated as an unlicensed cryptocurrency exchange. In January 2017, BTC-e and a Russian operator of BTC-e were indicted in the Northern District of California for operating an unlicensed money transmitting business and for money laundering through the exchange. *Id.* ¶ 18.

U.S. MOTION TO STRIKE LUCAS BUCKLEY'S CLAIM
CV 20-7811 RS                                             4

Between April 2015 and November 2020, the remainder of the funds, 69,370.082201 BTC, remained in 1HQ3. As of November 3, 2020, 1HQ3 had a balance of 69,370.22491543 Bitcoin (valued at approximately $3.1 billion as of March 31, 2022). *Id.* ¶ 19.

Individual X, whose identity is known to the government, was involved in a transaction related to 1HQ3. *Id.* ¶ 21. Specifically, the Criminal Investigation Division of the Internal Revenue Service and the U.S. Attorney's Office for the Northern District of California learned that Individual X was the individual who moved the cryptocurrency from Silk Road to 1BAD. Investigators believe that they were able to hack, and accordingly gain unauthorized access to, Silk Road and thereby steal the illicit cryptocurrency from Silk Road and move it into wallets Individual X controlled. The investigation also revealed that Ulbricht learned of Individual X's online identity and threatened Individual X for return of the cryptocurrency to Ulbricht. Individual X did not return the cryptocurrency. *Id.* ¶ 22.

### C. Both Ulbricht and the Thief Consented to Forfeiture

On November 3, 2020, Individual X signed a Consent and Agreement to Forfeiture with the U.S. Attorney's Office, Northern District of California. *Id.* ¶ 23. In that agreement, Individual X consented to the forfeiture of the Defendant Property to the United States. *Id.* That same day, the United States took custody of the Defendant Property from 1HQ3. *Id.* ¶ 24. On January 22, 2021, Ross Ulbricht admitted that the Defendant Property was subject to forfeiture and consented to its forfeiture. Dkt. No. 47.

## IV. FORFEITURE PROCEEDINGS

On November 5, 2020, the government initiated a judicial forfeiture proceeding against the Defendant Property by filing a Civil Complaint for Forfeiture.[2] Dkt. No. 1. The government simultaneously filed a Notice of Forfeiture Action, advising all persons asserting an interest in the Defendant Property and who had received direct notice of the forfeiture action to file a verified claim with the Clerk of the Court pursuant to Supplemental Rule G(5). Dkt. No. 3.

On January 25, 2021, Buckley filed a verified claim and statement of interest pursuant to 18

---

[2] The government amended its complaint on November 20, 2020 to add a missing letter from the Bitcoin address from which the government seized the Defendant Property. *See* Dkt. No. 8.

U.S.C. § 983(a)(4)(A) and Supplemental Rules C(6)(a) & (G)(5)(a) as the Trustee of the Gox Victim Bitcoin Trust ("the Trust"). Dkt. No. 43 ¶ 4. In his claim, Buckley asserts that the Trust maintains an interest in "approximately 0.01 BTC Bitcoin ('BTC'), Bitcoin Gold ('BTG'), Bitcoin SV ('BSV'), Bitcoin Cash ('BCH'), and future Bitcoin hard forks" of the Defendant Property. *Id*. ¶ 4. He claims that the Trust's interest in the claim was "was purchased for valuable consideration from the original owner who opened an account on Mt. Gox, formerly an online bitcoin exchange, on or before March 1, 2012." *Id.* Buckley, however, noted that he did not bring his *de minimus* claim only to recover the claimed cryptocurrency. Rather, Buckley indicated that the Trust "owns all of the rights to the claims for approximately 34,754 additional bitcoin that were formerly held in accounts on Mt. Gox by victims of the above theft but requires additional information, that is currently not publicly available, *to determine which, if any, of those bitcoin may have been seized from the 1HQ3 wallet*." *Id.* ¶ 8 (emphasis added).

In his response to Special Interrogatories the government propounded, Buckley admitted that the individual from whom the Trust purchased that interest was claimant Roman Hossain, who filed his verified claim to the Defendant Property on the same day as Buckley. Ex. A at 5-6; *see also* Dkt. Nos. 42, 43. Buckley also admitted that he purchased his interest from Hossain on the day they filed their claims. Ex. A at 6.

Buckley's basis for bringing the claim on behalf of the trust was that the transfers from 1BAD to 1HQ3 contained the proceeds of the Mt. Gox hack, which included property belonging to Hossain and the property which the Trust purchased. Dkt. No. 43 ¶¶ 5-6. In his claim, Hossain averred that he had stored 245.92 BTC at the Mt. Gox Exchange, "from where it was stolen by hackers and transferred to Silk Road." Dkt. No. 42, Roman Hossain Claim, ¶ 2. From Silk Road, he claims that it was stolen again and transferred to the 1HQ3 wallet, from which it was seized by the government. *Id.* Hossain asserted that he opened an account on the Mt. Gox Exchange on or before March 1, 2012 and deposited $2,475 USD to purchase Bitcoin with the hope that his investment would appreciate over time. *Id.* ¶ 4. He "thereafter openly and legitimately purchased BTC on the Mt. Gox Exchange for investment purposes, and for no unlawful purpose." *Id.* Hossain asserts that his account balance at the time hackers were

U.S. MOTION TO STRIKE LUCAS BUCKLEY'S CLAIM
CV 20-7811 RS                                              6

stealing Bitcoin from Mt. Gox was 245.98124 BTC and that at least 245.92 BTC were stolen from him. *Id.* ¶ 5. Hossain did not identify his Mt. Gox Bitcoin wallet address or account information in his claim.

On March 25, 2022, this Court issued an Order striking Hossain's claim for lack of statutory and Article III standing. Dkt. No. 104 at 6. In so holding, the Court explained that Hossain failed to "point[] to a single fact supporting his assertions that his Bitcoin was stolen from Mt. Gox and transferred to Silk Road, and then stolen *again* and transferred ultimately into the HQ3 wallet." *Id.* But as the Court noted, the transfers from Hossain's Mt. Gox accounts occurred on February 8 and 9, 2013, nine months after the Defendant Property was transferred from Silk Road. *Id.* Although the factual impossibility of Hossain's claim was sufficient to grant the government's motion, the Court added that Hossain offered only "pure speculation" in support of his claim, and that he "baldly claimed that even though the seized Bitcoin was stolen from somewhere else, some of it must be his." *Id.*

## V.  LEGAL STANDARD

"Before a claimant can contest a forfeiture, he must demonstrate standing." *Mercado v. U.S. Customs Service*, 873 F.2d 641, 644 (2d Cir. 1989). Standing is a threshold jurisdictional issue in civil forfeiture cases, *see United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526-27 (2d Cir. 1999), and the government is entitled to "test" the veracity of the claimant's claim of ownership and interest any time after a claim is filed prior to trial. *See $133,420.00*, 672 F.3d at 642 (9th Cir. 2012) ("The issue of standing is subject to adversarial testing under Supplemental Rule G(6)(a), which gives the government the right to question the claimant regarding the 'claimant's identity and relationship to the defendant property,' and to 'gather information that bears on the claimant's standing'") (internal citations omitted).

To contest a forfeiture, a claimant must demonstrate both statutory and Article III standing. *United States v. $1,181,895.00 in U.S. Currency*, No. CV 14-03973-CBM, 2015 U.S. Dist. LEXIS 17448, 2015 WL 631394, at *2 (C.D. Cal. Feb. 12, 2015). "A claimant bears the burden of establishing Article III standing, the threshold function of which is to ensure that the government is put to its proof only where someone acting with a legitimate interest contests the forfeiture . . . . A claimant must therefore demonstrate that he has a sufficient interest in the property to create a case or controversy."

*United States v. $41,471.00 in U.S. Currency*, No. CV 15-00696-R(SHSX), 2016 U.S. Dist. LEXIS 10952, 2016 WL 337380, at *1 (C.D. Cal. Jan. 6, 2016); *see also United States v. Real Prop. Located at 5208 Los Franciscos Way*, 385 F.3d 1187, 1191 (9th Cir. 2004).

"In order to meet the case-or-controversy requirement of Article III, a plaintiff (including a civil forfeiture claimant) must establish the three elements of standing . . . ." *$133,420.00*, 672 F.3d at 637 (9th Cir. 2012). These are (1) "that the plaintiff suffered an injury in fact," (2) "that there is a causal connection between the injury and the conduct complained of, and" (3) "that it is likely the injury will be redressed by a favorable decision." *Id.* (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). In a civil forfeiture proceeding, standing is satisfied if the claimant can show "a colorable interest in the property, for example, by showing actual possession, control, title, or financial stake." *United States v. Real Prop. Located at 475 Martin Lane*, 545 F.3d 1134, 1140 (9th Cir. 2008). The burden for showing standing rests on the party asserting it. *Lujan*, 504 U.S. at 561.

## VI.   ARGUMENT

### A. Buckley Has No Colorable Ownership or Possessory Interest in the Defendant Property

Buckley's claim fails to establish that either he or the Trust has any cognizable interest in the Defendant Property, notwithstanding his attempt to manufacture standing through his purchase of a *de minimus* interest in Hossain's claim. The Court has already concluded that Hossain's claim failed for lack of standing. Specifically, Hossain claimed that "he owned some Bitcoin that was stolen from him, and then baldly claimed that even though the seized Bitcoin was stolen from somewhere else, some of it must be his." Dkt. No. 104 at 6. The Court held that these unsupported assertions failed to establish "a colorable interest" in the Defendant Property because Hossain's claim was supported by nothing other than "pure speculation." *Id.* at 6-7. Hossain's failure to even articulate "actual possession, control, title, or financial stake" necessitated this result. *See 475 Martin Lane*, 545 F.3d at 1140.

Buckley's claim fares no better because it is entirely derivative of Hossain's claim. When asked how he and the Trust obtained their property interest in the portion of the Defendant Property in which they laid a claim, Buckley specifically stated that the Trust purchased its stake in the Defendant

Property from Hossain. Ex. A at 5-7. Buckley articulates no other fact demonstrating any control or stake of any portion of the defendant property; his entire claim rests on Hossain having a valid claim to the property. As Hossain failed to establish standing, Buckley also fails. Hossain never had a colorable interest in the Defendant Property to sell to Buckley or the Trust. Buckley and the Trust thus came no closer to obtaining an ownership or possessory interest by entering into an agreement with Hossain. The Court should accordingly strike Buckley's claim.

### B. Buckley and the Trust are Mere Nominal Owners of their Purported Stake in the Defendant Property.

Buckley's claim fails for a second reason—because the Trust is a mere nominal owner in search of discovery, not recovery. It is clear from the face of Buckley's filing that the entire purpose of his claim is to determine whether he has any interest in the property through the discovery process. *See* Dkt. No. 43 ¶ 8 ("Claimant currently owns all of the rights to the claims for approximately 34,754 additional bitcoin that were formerly held in accounts on Mt. Gox by victims of the above theft but requires additional information, that is currently not publicly available, to determine which, if any, of those bitcoin may have been seized from the 1HQ3 wallet.").

Buckley's and the Trust's purchase of the miniscule portion of Hossain's claim is nothing more than an attempt at conjure bare legal ownership of a portion of the Defendant Property, which is insufficient to establish standing for purposes of a civil forfeiture action. Indeed, there is no evidence that Buckley or the Trust ever possessed the Defendant Property or meaningfully interacted with it— they executed an agreement regarding the .01 BTC on *the day* Buckley filed his claim. Ex. A at 5. Nominal owners of property generally lack standing to bring claims to property. *United States v. United States Currency, $81,000*, 189 F.3d 28, 35 (1st Cir. 1999) ("[C]ourts have uniformly rejected standing claims put forward by nominal or straw owners. Thus, even possession of legal title to the res may be insufficient to establish standing to contest the forfeiture." (quoting *United States v. Contents of Accounts Nos. 3034504504 & 144–07143 at Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 971 F.2d 974, 985 (3d Cir. 1992))). Legal title to property alone cannot establish standing without some indication of actual ownership or control over that property. *See United States v. 2007 33' Hydra*

*Sport Vessel*, 59 F. Supp. 3d 417, 420 (D.P.R. 2014) (citation omitted); *United States v. One 2005 Dodge Magnum*, 845 F. Supp. 2d 1361, 1367 (N.D. Ga. 2012) ("Nominees, or 'straw owners,'" do not 'necessarily suffer an injury that is sufficient to demonstrate standing.'" (quoting *Via Mat Int'l S. Am. Ltd. v .United States*, 446 F.3d 1258, 1262 n.5 (11th Cir. 2006))).

Buckley and the Trust have shown nothing more than threadbare legal ownership, what Buckley likely believed was the absolute minimum to make a claim and take discovery on behalf of the Trust. This manufactured nominal ownership cannot overcome the requirement that a Claimant demonstrate an injury in fact when, here, Buckley cannot do so. Buckley has failed to allege any actual dominion over the cryptocurrency at issue here, especially as he only obtained it after this action was already pending. The Court should strike Buckley's blatant attempt at a fishing expedition.

## VII.   CONCLUSION

Buckley's claim ultimately fails because neither he nor the Trust have a legitimate, colorable interest in any portion of the Defendant Property. Buckley and the Trust essentially tried to purchase standing from Hossein, who had no colorable right to the Defendant Property in the first place. Buckley thus categorically fails to establish standing. Buckley also fails to articulate an injury in fact as he is a mere nominal owner of the claimed Defendant Property, which fails to meet the requirement that a claimant demonstrate an injury in fact. Accordingly, the Court should grant the government's motion to strike his claim pursuant to Rule G(8)(c)(i).

DATED:  April 4, 2022

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

/s/
DAVID COUNTRYMAN
CHRIS KALTSAS
CLAUDIA A. QUIROZ
Assistant United States Attorneys