STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

DAVID COUNTRYMAN (CABN 226995)
CHRIS KALTSAS (NYBN 5460902)
GALEN A. PHILLIPS (CABN 307644)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6915
    FAX: (415) 436-7234
    chris.kaltsas2@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>Approximately 69,370 Bitcoin (BTC), Bitcoin Gold (BTG), Bitcoin SV (BSV), and Bitcoin Cash (BCH) seized from 1HQ3Go3ggs8pFnXuHVHRytPCq5fGG8Hbhx<br><br>    Defendant.<br><br>First 100, LLC, 1st One Hundred Holdings, LLC, and Battle Born Investments Company, LLC,<br><br>    and<br><br>Ilija Matusko,<br><br>    Claimants. | CASE NO. CV 20-7811 RS<br><br>**OMNIBUS OPPOSITION TO CLAIMANTS' MOTIONS FOR ENTRY OF FINAL JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 54(B)**<br><br>Hearing Date:  June 9, 2022<br>Time:             1:30 p.m.<br>Court:            Courtroom 3 (Zoom) |

## I. INTRODUCTION

By their motions, Claimants Battle Born Investments Company, LLC; First 100, LLC; and 1st One Hundred Holdings, LLC (collectively, "the Battle Born Claimants"), and Claimant Ilija Matusko ("Matusko") (collectively, "Claimants") seek to cut the line at the Ninth Circuit, eviscerating a foundational principle of the Federal Rules of Civil Procedure: the orderly and efficient administration of justice. The Court should deny Claimants' motions and require them to appeal at the same time as all other claimants. To allow otherwise would result in wasted judicial resources and potentially inconsistent judgments.

## II. BACKGROUND

On November 5, 2020, the United States filed a Complaint seeking civil forfeiture of approximately 69,370 Bitcoin (BTC), Bitcoin Gold (BTG), Bitcoin SV (BSV), and Bitcoin Cash (BCH) seized from 1HQ3Go3ggs8pFnXuHVHRytPCq5fGG8Hbhx ("the Defendant Property"). Dkt. No. 1. The United States filed an Amended Complaint on November 20, 2020. Dkt. No. 8. The United States alleged that the Defendant Property was traceable to Silk Road, which was the largest darknet marketplace in existence until law enforcement seized it. Dkt. No. 8 ¶¶ 7-13. The United States further alleged that the Defendant Property was transferred out of cryptocurrency wallets that held the proceeds of the various illicit activities occurring on Silk Road, and that these funds were transferred into a wallet controlled by Individual X without the permission of Ross Ulbricht, the creator and leader of Silk Road. *Id.* at ¶¶ 15-23. The United States further alleges that the Defendant Property is subject to civil forfeiture as property involved in a money laundering transaction, pursuant to Title 18, United States Code, Section 981(a)(1)(A); property constituting or derived from computer hacking, pursuant to Title 18, United States Code, Section 981(a)(1)(C); and as tokens of value furnished or intended to be furnished by a person in exchange for a controlled substance, pursuant to Title 21, United States Code, Section 881(a)(6).

The Battle Born Claimants filed their collective Verified Claims to the Amended Complaint on March 16, 2021. Dkt. Nos. 62, 64. Matusko filed his Verified Claim on July 2, 2021. Dkt. No. 87. Both sets of Claimants filed their respective Verified Claims well after the statutory deadline of January 26, 2021.

The government filed a Motion to Strike the Battle Born Claimants' Verified Claims on July 13, 2022 for lack of statutory and Article III standing. Dkt. No. 90. The government filed a Motion to Strike Matusko's Verified Claim for similar reasons on July 29, 2021. Dkt. No. 95. After substantial motion practice involving Claimants and others, the Court granted the government's Motions to Strike on March 25, 2022. Dkt. No. 104. On that date, the Court also ruled in the United States' favor with respect to one other Motion to Strike and a Motion to Intervene. *Id.* In so holding, the Court concluded that Claimants' Verified Claims offered little more than "sheer speculation" to meet their burden in establishing standing, and that they failed to present "facts—as opposed to conclusions—that plausibly put the" ownership of the Defendant Property in dispute. *Id.* at 8-9. The Court granted the government's Motion to Strike as to Claimant Roman Hossain ("Hossain") and denied Putative Intervenor Nobuaki Kobayashi's ("Kobayashi") Motion to Intervene in that same Order. *Id.* at 9. The Court also dismissed as frivolous a Motion to Intervene filed by Adesijuola Ogunjobi in an Order issued on December 1, 2020. Dkt. No. 19.

Claimants filed a Notice of Appeal in the Ninth Circuit Court of Appeals on April 8, 2022. Dkt. Nos. 110-11. The Clerk of Court directed Claimants to show cause as to why the Ninth Circuit had jurisdiction over their appeal in light of the pending claims before this Court. *See United States v. Battle Born Investments Company, LLC, et al.*, Case No. 22-15513, Dkt. No. 2 (9th Cir. 2022); *United States v. Matusko, et al.*, Case No. 22-15514, Dkt. No. 2 (9th Cir. 2022). The Battle Born Claimants have indicated that they will simultaneously respond to the Order to Show Cause and file the instant Motion for Entry of a Final Judgment, which they filed on May 2, 2022. Dkt. No. 113 at 4 n.1. Matusko appears to be seeking entry of a final judgment before advancing his appeal and filed his Motion for Entry of a Final Judgment on May 4, 2022. *Matusko*, Case No. 22-15514, Dkt. No. 10 at 2.

### III.   DISCUSSION

#### A. <u>Legal Standard</u>

Before a ruling is ripe for appellate review, the district court must enter a final judgment, which occurs upon the entry of an "ultimate disposition . . . in the course of a multiple claims action." *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 7 (1980) (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956)); *see also Romoland Sch. Dist. v. Inland Empire Energy Ctr., LLC*, 548 F.3d 738,

1  747 (9th Cir. 2008) (citations omitted). Federal Rule of Civil Procedure 54(b) permits courts to enter a final judgment "as to one or more, but fewer than all claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). The Ninth Circuit has instructed that the entry of a partial final judgment "must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties." *Morrison-Knudsen Co. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981).

In determining whether to grant a motion for a final judgment pursuant to Rule 54(b), courts employ a "two-step process." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 954 (9th Cir. 2006) (citation omitted). First, courts "assess the judicial administrative interests at stake, including factors such as 'the interrelationship of the claims so as to prevent piecemeal appeals in cases which should be reviewed only as single units.'" *Cabrera v. CVS Rx Servs., Inc.*, 2019 WL 7753266, No. 3:17-CV-05803 WHA, at *1 (N.D. Cal. Jan. 2, 2019) (quoting *Curtiss-Wright Corp.*, 446 U.S. at 10). This first step is not a mere stepping-stone on the road to an appeal; rather, "consideration of judicial administrative interests 'is necessary to assure that application of [Rule 54(b)] effectively "preserves the historic federal policy against piecemeal appeals."'" *Wood v. GCC Bend, LLC*, 422 F.3d 873, 878 (9th Cir. 2005) (citations omitted). The ultimate consideration at this stage is "whether the nature of the claim [is] such that no appellate court would have to decide the same issues more than once." *Id.* at 828 n.2. Only if the Court is convinced that entry of a final judgment pursuant to Rule 54(b) will not result in the inefficient use of resources may it consider the second portion of the analysis, in which the Court may weigh the equities specific to the case before it. *Cabrera*, 2019 WL 7753266, at *1 (citing *AmerisourceBergen Corp.*, 465 F.3d at 954).

### B. Entering a Final Judgment as to Claimants at this Juncture Would Yield Potentially Inconsistent, Piecemeal Litigation Concerning Related Claims

Claimants contend their respective appeals raise "narrow" issues that do not overlap with those affecting the other claimants in this matter. Dkt. No. 113 at 6-7; Dkt. No. 115 at 6-7. But allowing Claimants to proceed individually to the Ninth Circuit before the Court has the chance to adjudicate each claim raises at least two issues concerning the efficient administration of justice. First, piecemeal

litigation would inevitably arise if the Ninth Circuit does not handle each appealing party's case concurrently because of the potential for inconsistent judgments as to the various Claimants. Second, each appeal is bound by a common set of facts—including, at their core, the Defendant Property to which each claims an inconsistent share—that the Ninth Circuit would have to revisit multiple times if it were to address each appeal separately.

First, the very nature of this case requires the Ninth Circuit to address it as one cohesive case to avoid potential inconsistencies. Each Claimant in this matter is seeking either all or a portion of the Defendant Property. The Battle Born Claimants have asserted an interest in the Defendant Property in its entirety, while Matusko seeks an interest in "at least 48 bitcoins." *See* Dkt. Nos. 62-3, 62-4,87 ¶ 2. Other litigants in this matter seek other remedies, including "direct access" and intervention (Dkt. No. 67, Kobayashi Motion to Intervene), an interest in 245.92 bitcoins (Dkt. No. 42, Hossain Verified Claim), and an interest in .01 bitcoins (Dkt. No. 43, Lucas Buckley's Verified Claim). The Court's Order Striking Claims and Denying Intervention resolved each litigant's respective Claims and Motion except for Lucas Buckley's ("Buckley"), which is pending. Dkt. No. 104 at 9.

Allowing the Ninth Circuit to proceed on one claim without assessing each litigant's position could result in the Ninth Circuit simultaneously recognizing two claims that are logically incompatible when the Defendant Property is a common denominator. For example, if the Court permitted Matusko and the Battle Born Claimants to proceed individually, the Ninth Circuit could simultaneously conclude that Matusko, the Battle Born Claimants, and Hossain all have valid interests in the Defendant Property, all while allowing Kobayashi a right of intervention based on his interest in the Defendant Property. Moreover, Buckley's Claim has yet to be fully briefed, let alone resolved. The Ninth Circuit could conclude, entirely independently, that Lucas Buckley has an independent interest in the Defendant Property. Such a result would be logically impossible—none of these claimants (apart from, perhaps, Hossain and Buckley, for reasons specific to their cases) could possibly have simultaneous interests in the Defendant Property. The best way to avoid inconsistent judgments, both here and on appeal, is to require each appealing claimant to present their arguments to the Ninth Circuit at the same time. Requiring simultaneous appeals per the normal course of litigation would ensure that the Ninth Circuit could adjudicate inconsistencies among each claimant at the same time. As noted below, there no

apparent likelihood that any of the claimants' arguments would be barred by requiring them to wait for each claim in this matter to be resolved.

Second, having the Ninth Circuit address each appeal separately would undermine the basic tenet of judicial economy in Rule 54(b) determinations. Each claim in this matter arises from a common set of legal arguments and facts, including the common thread of the Defendant Property and each Claimant's essential argument, that they, and not the other claimants, are the true owners of the Defendant Property. The Battle Born Claimants characterize their particular inquiry as "the narrow issue of standing," Dkt. No. 113 at 6, but that "narrow issue" is the same principle undergirding the government's motions to strike the Verified Claims of the Battle Born Claimants, Matusko, Hossain, and Buckley. Standing is the overarching principle animating the Court's Order and the remaining Motion to Strike before the Court.

The facts involved in each of the cases at here are also similar because they all stem from the same Defendant Property and the same Amended Complaint. The operative facts from the Amended Complaint do not change with respect to any of the Motions to Strike or Kobayashi's Motion to Intervene—the government alleges in each of its Motions to Strike that the funds in the 1HQ3 are directly traceable to illicit funds in wallets belonging to Silk Road, a darknet marketplace that sold hundreds of kilograms of various drugs and other illegal goods and services, and subsequently laundered the proceeds of those transactions. Dkt. No. 8 ¶ 7. Each claimant asserts ownership of the same asset, albeit in differing ways: the Battle Born Claimants, for example, assert that Raymond Ngan's possession of a screenshot of a public wallet balance indicates that the Defendant Property is part of his bankruptcy estate, Dkt. No. 98 at 13, whereas Matusko claims that he deposited funds onto Silk Road website that were included in the initial hack but were inexplicably not part of any drug transactions or subsequent money laundering. Dkt. No. 100 at 11. But even in the variation among their claims, each Claimant is, at bottom, simply claiming ownership of the Defendant Property.

Allowing Matusko and the Battle Born Claimants to obtain a final judgment at this juncture would require the Ninth Circuit to address the factual allegations of the Amended Complaint over the course of several appeals. Such strong links between each claim should "weigh heavily against entry of judgment under [Rule 54(b)] . . . ." *Wood*, 422 F.3d at 882 (quoting *Morrison-Knudsen*, 655 F.2d at 965 (alteration in original)). Far from advancing this case, "the practical effect of certifying [these claims] is

to deconstruct [the] action so as to allow piecemeal appeals with respect to the same set of facts." *Jewel v. Nat'l Sec. Agency*, 810 F.3d 622, 630 (9th Cir. 2015) (quoting *Wood*, 422 F.3d at 880). This is especially true as the Court has yet to adjudicate Buckley's claim, again adding complication and the likelihood of repetitious appellate litigation. *See id.* The Court should accordingly deny Claimants' motions for failure to hew to the principles rejecting inconsistent, piecemeal appeals.

### C. The Equities Favor Denial of Claimants' Motions

Even if the Court concludes that judicial economy is not of concern here, the equities still weigh against granting Claimants' motions. This is not "the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by the pressing needs of the litigants for an early and separate judgment as to some claims or parties." *JH Kelly, LLC v. AECOM Tech. Serv's, Inc.*, No. 4:20-CV-05381 HSG, 2021 WL 5712158 at *2 (N.D. Cal. Dec. 2, 2021) (quoting *Morrison-Knudsen*, 655 F.2d at 965). If anything, the potential for multiple, inconsistent judgments and piecemeal appeals will likely negatively impact all claimants, including those yet to be heard, by slowing the appellate process.

Claimants assert that the equities weigh in favor of entering judgment for three reasons. The first is that there is a theoretical possibility that because the Ninth Circuit has passingly called civil forfeiture claimants "intervenors," the jurisdictional rules governing appellate deadlines with respect to denials of motions to intervene in the Eleventh Circuit could undermine the timeliness of their appeals. Dkt. No. 113 at 7-8, Dkt. No. 115 at 7 (citing *Shores v. Sklar*, 885 F.2d 760, 761 n.1 (11th Cir. 1989)). This concern is of no moment because it is entirely theoretical. The government has found no cases from any of the Courts of Appeal applying the 30-day jurisdictional intervenor deadline to a civil forfeiture case. The Courts of Appeal that have considered civil forfeiture actions in the context of Rule 54(b) motions have further made no mention of the possibility of untimeliness when weighing whether entry of a final judgment pursuant to Rule 54(b) was appropriate. *See, e.g.*, *United States v. M/Y Galactica Star*, 784 F. A'ppx 268, 273-75 (5th Cir. 2019); *Hegna v. 650 Fifth Ave. Co.*, 673 F. App'x 54, 56 (2d Cir. 2016). As Claimants note, "[t]he Ninth Circuit has not expressly addressed the right of a forfeiture claimant whose claim is stricken to wait to appeal the final judgment." Dkt. No. 113 at 8; Dkt. No. 115 at 8. A theoretical decision that the Ninth Circuit *may* adopt in the future adds no weight to Claimants'

arguments.

Second, Claimants assert that the government may execute a final judgment once it occurs without agreeing to stay the forfeiture or to substitute proceeds pending appeal, rendering any subsequent appeal moot. Dkt. No. 113 at 8; Dkt. No. 115 at 8. Again, this purported possibility adds no actual weight to their arguments. The sole case Claimants cite to support this argument demonstrates one of the limited circumstances in which the government could execute a judgment pending appeal—consent. In *United States v.$ 493,850.00 in U.S. Currency*, the claimants moved to stay execution of a judgment in a civil forfeiture case, but explicitly withdrew their request as to one of the items at issue in that case: a single truck. 518 F.3d 1159, 1164 (9th Cir. 2008). The remainder of the judgment was stayed upon request, and the appeal concerned the subsequent sale of that truck. *Id.* Claimants have not yet indicated their desire to stay the judgment before either this Court or the district court, indicating that this concern is both premature and, apparently, not important enough for Claimants to resolve at this juncture, whether via bond or otherwise. The Court should accordingly decline to consider this factor as supporting Claimants' arguments.

Finally, Claimants both assert that the volatility of the Bitcoin and other Defendant Property in this case weighs in favor of granting their motions and entering final judgments as to both Claimants. Dkt. No. 113 at 8; Dkt. No. 115 at 8. But Claimants fail to consider the remaining claims in this matter; all claimants, regardless of whether the appeal moves forward without them, are likely concerned with the fluctuation of value inherent in the Defendant Property. Accordingly, it is difficult to surmise why this factor weighs in favor of entering judgment for these two claimants before any other claimant. Moreover, volatility in the value of the *res* is a well-known feature of cryptocurrency. Its value fluctuates wildly, and often. And this fluctuation occurs in both directions; on the date the Complaint was filed, the value of Bitcoin was approximately $15,574, less than half of today's value. These financial considerations should accordingly have little weight on the Court's analysis. To the extent Claimants are truly concerned, Supplemental Federal Rule of Civil Procedure G(7)(b) provides a mechanism for the parties to file a motion to sell the Defendant Property during the pendency of these proceedings, and accordingly, there is no pressing concern justifying early entry of a final judgment on those grounds.

## IV. CONCLUSION

Claimants fail to articulate how abdicating the normal process and fast tracking their specific appeals would not add burden to the courts and would be just under the circumstances. Indeed, they cannot do so. Granting Claimants' motions would add great burden to the already-significant complexity of each claimant's appeal and potential appeal, and could very well result in duplicative work, especially with the possibility of inconsistent judgments. The Court need not go beyond addressing judicial administration concerns, but, even if it chooses to, the equities do not indicate that the Court is currently evaluating "the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by the pressing needs of the litigants for an early and separate judgment as to some claims or parties." *JH Kelly, LLC*, 2021 WL 5712158 at *2. Claimants have several available remedies available short of spurring an expedited appeal, including motions practice in this Court, that would not result in flooding the Ninth Circuit's docket with duplicative litigation involving the same sets of facts. Claimants should use those avenues, or wait for all claims to be resolved and proceed with their appeals in due course.

The Court should deny Claimants' motions.

DATED: 5/16/2022

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

    /s/
DAVID COUNTRYMAN
CHRIS KALTSAS
GALEN A. PHILLIPS
Assistant United States Attorneys