REES F. MORGAN (State Bar No. 229899)
JONATHAN R. BASS (State Bar No. 75779)
STAN ROMAN (State Bar No. 87652)
SARAH E. PETERSON (State Bar No. 309733)
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, California 94104-5500
Telephone: 415.391.4800
Facsimile: 415.989.1663
Email:  ef-rfm@cpdb.com
        ef-jrb@cpdb.com
        ef-sgr@cpdb.com
        ef-sep@cpdb.com

Attorneys for Claimants
BATTLE BORN INVESTMENTS COMPANY, LLC, FIRST 100, LLC and 1ST ONE HUNDRED HOLDINGS, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>   v.<br><br>Approximately 69,370 Bitcoin (BTC), Bitcoin Gold (BTG), Bitcoin SV (BSV), and Bitcoin Cash (BCH) seized from 1HQ3Go3ggs8pFnXuHVHRytPCq5fGG8Hbhx,<br><br>   Defendant.<br><br>Battle Born Investments Company, LLC, First 100, LLC, and 1st One Hundred Holdings, LLC,<br><br>   Claimants. | Case No. 3:20-cv-07811-RS<br><br>**CLAIMANTS BATTLE BORN INVESTMENTS COMPANY, LLC; FIRST 100, LLC; AND 1ST ONE HUNDRED HOLDINGS, LLC'S REPLY IN SUPPORT OF MOTION FOR ENTRY OF FINAL JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 54(B)**<br><br>Date:  June 9, 2022<br>Time:  1:30 p.m.<br>Ctrm:  3 (Via Zoom)<br><br>Chief Judge Richard Seeborg<br><br>Trial Date: None Set |

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...........................................................................................................................5

ARGUMENT ...................................................................................................................................5

    I.    The judicial-administrative interests at stake favor granting the motion. ...................5

        A.    An immediate appeal presents no risk of inconsistent judgments..................5

        B.    The Battle Born Claimants' Article III standing does not concern the other claimants or the allegations in the Government's forfeiture complaint. ........................................................................................................7

    II.    The equities favor granting the motion. ......................................................................9

        A.    The Government admits that "slowing" the appellate process will "negatively impact all claimants." ...................................................................9

        B.    The Government's Opposition provides no assurances that the Battle Born Claimants will be able to appeal the final judgment or that the Government will agree to a stay of the judgment. ........................................9

        C.    The volatility of the value of the asset favors a swift return to the rightful owner. ...............................................................................................11

CONCLUSION ..............................................................................................................................12

**BATTLE BORN CLAIMANTS' REPLY ISO MOT. FOR JUDGMENT PURSUANT TO RULE 54(B)**

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AmerisourceBergen Corp. v. Dialysist West, Inc.*,
  465 F.3d 946 (9th Cir. 2006)..................................................................................................5

*Morrison Knudsen Co. v. Archer*,
  655 F.2d 962 (9th Cir. 1981)................................................................................................12

*United States v. $133,420.00 in U.S. Currency*,
  672 F.3d 629 (9th Cir. 2012).........................................................................................*passim*

*United States v. $493,850.00 in U.S. Currency*,
  518 F.3d 1159 (9th Cir. 2008)..............................................................................................11

*United States v. $84,740.00 Currency*,
  981 F.2d 1110 (9th Cir. 1992)..............................................................................................10

*United States v. $999,830.00 in U.S. Currency*,
  704 F.3d 1042 (9th Cir. 2012)................................................................................................6

*United States v. All Funds in Account Nos. 747.034/278, 747.009/278, &
  747.714/278 Banco Espanol de Credito, Spain*,
  295 F.3d 23 (D.C. Cir. 2002)...............................................................................................10

*United States v. Contents of Accounts Numbers 3034504504 and 144-07143 at
  Merrill, Lynch, Pierce, Fenner and Smith, Inc.*,
  971 F.2d 974 (3d Cir. 1992).................................................................................................10

*United States v. Funds in the Amount of $239,400*,
  795 F.3d 639 (7th Cir. 2015).............................................................................................7, 8

*United States v. JP Morgan Chase Bank Account Number Ending in 8215*,
  835 F.3d 1159 (9th Cir. 2016)................................................................................................6

*United States v. One 1985 Mercedes*,
  917 F.2d 415 (9th Cir. 1990)................................................................................................10

*United States v. One-Sixth Share of James J. Bulger In All Present And Future
  Proceeds Of Mass Millions Lottery Ticket No. M246233*,
  326 F.3d 36 (1st Cir. 2003)...............................................................................................7, 10

*United States v. Phillips*,
  883 F.3d 399 (4th Cir. 2018)................................................................................................10

*United States v. Seventeen Thousand Nine Hundred Dollars ($17,900.00) in United
  States Currency*,
  859 F.3d 1085 (D.C. Cir. 2017).........................................................................................7, 8

/ / /

/ / /

**Statutes & Rules**

Federal Rules of Appellate Procedure
    Rule 3(b)(2)..................................................................................................................6

Federal Rules of Civil Procedure
    Rule 54(b)...........................................................................................................5, 9, 12

Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions
    Rule G(7)(b).................................................................................................................12

## INTRODUCTION

The Government has given this Court no good reason to deny the Battle Born Claimants the opportunity to immediately appeal. Both prongs of the *AmerisourceBergen* test—judicial-administrative interests and equitable interests—favor certification of a Rule 54(b) judgment. The Court should grant the motion and enter judgment.

## ARGUMENT

### I. The judicial-administrative interests at stake favor granting the motion.

According to the Government, allowing an appeal now would "eviscerat[e] . . . the orderly and efficient administration of justice" by causing inconsistent judgments and duplicative appeals. Opp. at 2:4-6. Under no possible scenario will a Ninth Circuit decision on the narrow question at issue—whether the Battle Born Claimants' allegations and evidence met the standards for standing at this juncture—conflict with any judgment of this Court. Nor does that narrow question involve any of the facts or legal issues that are relevant to the other claimants' claims or the Government's forfeiture theory.

#### A. An immediate appeal presents no risk of inconsistent judgments.

The Government fears that permitting an appeal would result in inconsistent judgments. Opp. at 5. It will not. The flaw in the Government's argument is its mistaken belief that permitting the Battle Born Claimants to appeal now could result in the Ninth Circuit deciding that they have a "valid interest[] in the Defendant Property." *Id.* at 5:16-25 (arguing that it is "logically impossible" for all of the claimants to "possibly have simultaneous interests in the Defendant Property"). That is not a possible result of an appeal. If the Battle Born Claimants are permitted to appeal and win a reversal, the Ninth Circuit will not have concluded that the Battle Born Claimants have an interest in the *res* that conflicts with the Government's or any other claimant's rights to it. The Ninth Circuit will only have decided that the Battle Born Claimants overcame summary judgment and judgment on the pleadings by putting forth sufficient facts to state a colorable interest in the property, and therefore have standing to litigate ownership in this Court. Whether the Battle Born Claimants put forth sufficient facts to state a colorable interest was the only issue raised by the Government's motion to strike and is the only one that could be

appealed. *See United States v. $999,830.00 in U.S. Currency*, 704 F.3d 1042, 1042–43 (9th Cir. 2012) (if motion to strike is a pleading motion, claimant must only make an "unequivocal assertion of ownership" to "establish[] Article III standing"); *United States v. JP Morgan Chase Bank Account Number Ending in 8215*, 835 F.3d 1159, 1164 (9th Cir. 2016) (if motion to strike is a summary-judgment motion, "a claimant need not *prove* standing by a preponderance of the evidence to survive summary judgment" but instead must only submit sufficient evidence "for a reasonable factfinder to conclude that the claimant has standing to challenge the forfeiture") (internal quotation marks omitted). It is logically consistent for more than one claimant to have alleged a colorable interest in the *res*, and the only consequence of multiple claimants having made that adequate preliminary showing of standing is that the Government's forfeiture theory will be tested by more than one party.

There is no scenario under which permitting an appeal could result in inconsistent judgments. If the Battle Born Claimants take an appeal now, either (1) the Ninth Circuit will decide the appeal before this Court issues a final judgment awarding the *res* to the Government or another claimant or (2) this Court will reach a final judgment before the Ninth Circuit issues its decision on the appeal. In the first scenario, if the Ninth Circuit rules in favor of the Battle Born Claimants,[1] the Ninth Circuit would remand and the Battle Born Claimants would be allowed to participate in the remaining proceedings before this Court. No inconsistent judgments could result. In the second scenario, all appeals would be before the Ninth Circuit simultaneously, and the Ninth Circuit could consolidate them and decide them at once if it chose. *See* Fed. R. App. P. 3(b)(2) ("[A]ppeals may be joined or consolidated by the court of appeals."). Again, no inconsistent judgments would result.

/ / /

/ / /

/ / /

/ / /

---

[1] Needless to say, no inconsistent judgment would result from an immediate appeal if the Ninth Circuit were to affirm the order striking the Battle Born Claimants' claim.

**B.     The Battle Born Claimants' Article III standing does not concern the other claimants or the allegations in the Government's forfeiture complaint.**

The Government advances a series of vague arguments about piecemeal appeals. It contends that allowing the Battle Born Claimants to appeal now would result in multiple appeals with overlapping issues because all of the claimants' claims implicate "overarching principle[s]" of "[s]tanding" and have a "common thread" with the Government's forfeiture theory. Opp. at 6:5-10. None of those arguments withstand scrutiny.

While it is true that the Government moved to strike other claimants' claims for lack of standing, it is not true that the Court in analyzing those claimants' standing had to consider any of the same issues that it considered when it struck the Battle Born Claimants' claim. The standing analysis concerns whether a claimant has alleged or presented "some evidence" that the claimant holds a property interest in the *res*. *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 637-38 (9th Cir. 2012). Because each claimant in this case alleged a different relationship to the *res*, the facts implicated by that analysis differed as to each claimant. Indeed, the Government concedes as much when it says that "[e]ach claimant asserts ownership of the same asset, *albeit in differing ways*" and describes the distinct ownership theories of the claimants. Opp. at 6:17-18 (emphasis added).

The factual and legal issues pertinent to the Battle Born Claimants' standing are also distinct from the "operative facts from the Amended Complaint." Opp. at 6:12-13. The facts alleged in the complaint concern the Government's theory that the property is subject to forfeiture because it is "directly traceable to illicit funds in wallets belonging to Silk Road." *Id.* at 6:15. The federal courts of appeals have repeatedly held that the merits of the Government's theory of forfeiture has no place in the standing analysis. *United States v. Seventeen Thousand Nine Hundred Dollars ($17,900.00) in United States Currency*, 859 F.3d 1085, 1091 (D.C. Cir. 2017); *United States v. Funds in the Amount of $239,400*, 795 F.3d 639 (7th Cir. 2015); *United States v. One-Sixth Share of James J. Bulger In All Present And Future Proceeds Of Mass Millions Lottery Ticket No. M246233*, 326 F.3d 36, 41 (1st Cir. 2003). The reason that the courts have adopted "the 'some evidence' standard" for standing is to "preserve[] the important distinction between

constitutional standing and the merits" by preventing a claimant from having to address the merits of the Government's case and "prove that her property is unconnected to unlawful activity." *Seventeen Thousand Nine Hundred Dollars*, 859 F.3d at 1091.  Notwithstanding the Government's argument to this Court that the facts underlying the Battle Born Claimants' claim to ownership are inconsistent with the Government's untested version of the facts,[2] the Government cannot properly achieve a dismissal for lack of standing by showing that "a claimant's account of ownership is irreconcilable with the theory upon which the government seeks forfeiture."  *See id.* (holding that the government could not argue that claimants "lack[] Article III standing because their claimed ownership interest is undercut by 'the record evidence' indicating that 'this is drug trafficking money'"); *see also United States v. Funds in the Amount of $239,400*, 795 F.3d 639, 646 (7th Cir. 2015).  When "the government moves for summary judgment on standing in a civil forfeiture action," the claimant is not required to address whether the property is "subject to forfeiture" because such a "melding of standing and the merits" would "shift" the government's burden of proof on forfeitability to the claimant.  *Funds in the Amount of $239,400*, 795 F.3d at 646 (claimant is not required to "demonstrate 'legitimate' ownership" to establish standing). Therefore, here, whether the property is linked to criminal activity because it is "directly traceable to illicit funds in wallets belonging to Silk Road" as the Government alleges, Opp. at 6:15, was not before this Court when it struck the Battle Born Claimants' claim and will not be before the Ninth Circuit in an appeal taken now.  The appeal will only concern whether the Battle Born Claimants' met the judgment-on-the-pleadings or summary-judgment standards for standing with their allegations and evidence that Raymond Ngan owned the bitcoin, and therefore that the Battle Born Claimants now own it as successors to Ngan's estate.

---

[2] *See* Dkt. No. 90 (Government's Mot. to Strike Battle Born Claimants' Claim) at 25 (arguing that "Claimants have no standing because Raymond Ngan and his associates are not Individual X," the person that the Government claims stole the bitcoin from Silk Road), 29 (arguing that the Battle Born Claimants lack standing because "the court must consider . . . validity of title" and the bitcoin is "proceeds of narcotics trafficking") (capitalization omitted); *see also* Dkt. No. 104 (Order Granting Mot. to Strike Battle Born Claimants' Claim), at 8-9 (accepting the Government's argument that the Battle Born Claimants were required to show "some association with Individual X" and "lawful ownership" of the bitcoin in order to defeat the motion to strike for lack of standing).

## II. The equities favor granting the motion.

Under Rule 54(b), this Court should certify a judgment if "there is no just reason for delay." The Government has identified no equitable considerations that favor delay, agrees that delaying the appellate process would prejudice all of the claimants, and does not dispute that the Battle Born Claimants should be permitted to appeal now if they will be unable to appeal at final judgment. The Government's contention that the Court should nevertheless disregard as "theoretical" the prejudices identified by the Battle Born Claimants is meritless.

### A. The Government admits that "slowing" the appellate process will "negatively impact all claimants."

The Government concedes that "slowing the appellate process" would prejudice the parties and is a proper consideration in weighing the equities. Opp. at 7:12-14. The Government makes the odd claim, however, that allowing the Battle Born Claimants to appeal sooner rather than later will somehow "slow[] the appellate process." *Id.* It is difficult to see how. An early appeal could only expedite the appellate process by allowing early resolution of the Battle Born Claimants' right to participate in this case.

### B. The Government's Opposition provides no assurances that the Battle Born Claimants will be able to appeal the final judgment or that the Government will agree to a stay of the judgment.

In their motion, the Battle Born Claimants explained that they should be allowed to take an appeal now because there is a risk, given the unsettled state of the case law, that the Ninth Circuit might conclude that they cannot appeal the final judgment. While the Battle Born Claimants believe they should have the right to appeal the final judgment, as dismissed parties do in other multi-party contexts, the right of a dismissed forfeiture claimant to forego an interlocutory appeal and then appeal a final judgment—when the claimant is no longer a party to the case—has not been expressly recognized by the Ninth Circuit. And there is Ninth Circuit law relating to intervenors that the Government might use to argue that the Battle Born Claimants should not be allowed to appeal a final judgment. The Government declined to disavow such an argument in its Opposition. By skirting the issue, the Government has validated the Battle Born Claimants' concern.

Instead, the Government's response is that this concern is too "theoretical" to be given any weight because there are currently "no cases" that apply "the 30-day jurisdictional intervenor deadline to a civil forfeiture case." Opp. at 7:20-21.  That is exactly the problem: the law on the issue of when a stricken forfeiture claimant may appeal is not clearly articulated in this circuit and the Government could claim in the future that the Battle Born Claimants should be treated as intervenors and denied a right of appeal.  If the Battle Born Claimants are denied the opportunity to appeal now, the issue of whether they can appeal the final judgment will be before the Ninth Circuit.  It is therefore not theoretical that the Ninth Circuit will be asked to rule on it.

Moreover, the Government's position that the Battle Born Claimants' concern is too theoretical rests on the Government's incorrect belief that the Ninth Circuit has referred to civil-forfeiture claimants as intervenors only "passingly." Opp. at 7:17-18.  That is not an accurate characterization of circuit precedent.  The Ninth Circuit has held that an "owner-claimant" in a civil-forfeiture action "*is . . . an intervenor* who seeks to defend his or her right to the property against the government's claim." *United States v. One 1985 Mercedes*, 917 F.2d 415, 419 (9th Cir. 1990) (emphasis added); *United States v. $84,740.00 Currency*, 981 F.2d 1110, 1114 (9th Cir. 1992) (same).  The other federal circuits likewise uniformly equate civil-forfeiture claimants with intervenors.  *See, e.g.*, *United States v. Phillips*, 883 F.3d 399, 404–05 (4th Cir. 2018) ("[I]n civil forfeiture cases, a claimant with standing may intervene . . . to contest the forfeiture on the merits."); *United States v. All Funds in Account Nos. 747.034/278, 747.009/278, & 747.714/278 Banco Espanol de Credito, Spain*, 295 F.3d 23, 25 (D.C. Cir. 2002) (in "[c]ivil forfeiture actions, . . . [t]he owner of the property may intervene to protect his interest"); *United States v. Contents of Accounts Numbers 3034504504 and 144-07143 at Merrill, Lynch, Pierce, Fenner and Smith, Inc.*, 971 F.2d 974, 978 n.3 (3d Cir. 1992) ("[A]ny claimants to th[e] *res*" in a civil-forfeiture action "assert their claims by intervening in the action."); *One-Sixth Share of James J. Bulger*, 326 F.3d at 40 (referring to claimants as intervenors).  It is therefore entirely plausible that the Ninth Circuit could extend to forfeiture claimants a rule that is currently applicable to intervenors.

Citing *United States v. $493,850.00 in U.S. Currency*, the Battle Born Claimants also raised the concern in their motion that the Court of Appeals might rule that it lacks jurisdiction

**BATTLE BORN CLAIMANTS' REPLY ISO MOT. FOR JUDGMENT PURSUANT TO RULE 54(B)**

over an appeal from the final judgment if this Court ultimately awards the *res* to the Government, and the Government refuses to agree to a stay of the judgment pending appeal or to agree to substitute proceeds from the sale of the bitcoin in place of the bitcoin. 518 F.3d 1159, 1164 (9th Cir. 2008). Again, the Government could have alleviated the concern by committing to a stay or substitution, or disavowing any intent to execute a judgment in its favor pending appeal. It chose not to. Instead, the Government maintains that *$493,850.00 in U.S. Currency* is distinguishable because the claimant in that case affirmatively "consent[ed]" to execution of the judgment. Opp. at 8:5-7. There is no support for that reading of *$493,850.00 in U.S. Currency*, and the Government cites no other authority for it. Jurisdiction was lost over the truck at issue in that case not because the appellant affirmatively agreed that the truck could be sold, but because the Court had granted no stay as to it, there was no agreement to substitute proceeds from the sale of the truck, and judgment as to the truck was executed. *$493,850.00 in U.S. Currency*, 518 F.3d at 1163–64. The same could happen here if the Government does not agree to a stay or a substitution, and the Court denies a motion for a stay. A claimant may not have the power to avoid this outcome by unilaterally withholding its consent.

The Government also makes a contradictory arguments that the Battle Born Claimants' concern is "premature" yet could be "resolve[d] at this juncture" if only Claimants would post a bond. Opp. at 8:12-13. It is not premature to express a concern that if denied the opportunity to appeal now, the Battle Born Claimants may never get the chance. A motion requesting authority to appeal is the correct time to express such a concern. It would make no sense to post a bond or otherwise seek a stay at this juncture, when the *res* has not yet been awarded to any party and there is no judgment to stay pending appeal. Regardless, it would not be possible to post a bond to secure a *res* worth over $2 billion.

        C.      <u>The volatility of the value of the asset favors a swift return to the rightful owner.</u>

The Battle Born Claimants also pointed out that they are prejudiced by delay because the value of bitcoin is extremely volatile. The Government acknowledges that "volatility . . . is a well-known feature of cryptocurrency" but questions how that fact should be weighed. Opp. at

8:21. Volatility favors returning control over the asset to the owners as quickly as possible, so that the owners may use their judgment to determine the appropriate time to hold and sell part or all of their bitcoin. The Government notes that Rule G(7)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions "provides a mechanism for the parties to file a motion to sell the Defendant Property." *Id.* at 8:25-26. Even if the Battle Born Claimants could use that procedure, which is reserved for "a party or a person having custody of the property," it requires a noticed motion and a court order approving any sale. It is therefore no substitute for the ability to manage the asset that full control affords.

## CONCLUSION

The Battle Born Claimants could face significant prejudices if they are not permitted to appeal now. Those prejudices necessarily "outbalance[]" the "costs and risks" of allowing an immediate appeal now, because there are no costs and risks. *See Morrison Knudsen Co. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981). The analysis favors entering a Rule 54(b) judgment.

DATED: May 23, 2022                    COBLENTZ PATCH DUFFY & BASS LLP


By:     */s/ Rees F. Morgan*
        REES F. MORGAN
        Attorneys for The Battle Born Claimants
        BATTLE BORN INVESTMENTS COMPANY,
        LLC, FIRST 100, LLC and 1ST ONE HUNDRED
        HOLDINGS, LLC

18906.001 4879-1738-5248.6