1  STEPHANIE M. HINDS (CABN 154284)
   United States Attorney
2
   THOMAS A. COLTHURST (CABN 99493)
3  Chief, Criminal Division

4  DAVID COUNTRYMAN (CABN 226995)
   CHRIS KALTSAS (NYBN 5460902)
5  CLAUDIA A. QUIROZ (CABN 254419)
   GALEN A. PHILLIPS (CABN 307644)
6  Assistant United States Attorneys

7       450 Golden Gate Avenue, Box 36055
        San Francisco, California 94102-3495
8       Telephone: (415) 436-6915
        FAX: (415) 436-7234
9       chris.kaltsas2@usdoj.gov

10 Attorneys for United States of America

11                         UNITED STATES DISTRICT COURT

12                       NORTHERN DISTRICT OF CALIFORNIA

13                             SAN FRANCISCO DIVISION

14

15 | UNITED STATES OF AMERICA, | ) | CASE NO. CV 20-7811 RS
   |  | ) |
16 | Plaintiff, | ) | **REPLY IN SUPPORT OF MOTION TO STRIKE CLAIMANT LUCAS BUCKLEY'S AND THE GOX VICTIM BITCOIN TRUST'S VERIFIED CLAIM FOR LACK OF STANDING**
17 | v. | ) |
   |  | ) |
18 | Approximately 69,370 Bitcoin (BTC), Bitcoin | ) |
   | Gold (BTG), Bitcoin SV (BSV), and Bitcoin | ) | Hearing Date:  June 9, 2022 (Vacated)
19 | Cash (BCH) seized from | ) | Time:          1:30 p.m.
   | 1HQ3Go3ggs8pPFnXuHVHRytPCq5fGG8Hbhx | ) | Court:         Courtroom 3 (Zoom)
20 |  | ) |
21 | Defendant. | ) |

## I. INTRODUCTION

This Court should end the attempt of Claimant Lucas Buckley ("Claimant" or "Buckley") to engage in a fishing expedition. Buckley has failed to demonstrate any colorable claim to the Defendant Property. The crux of Buckley's argument is that there was a "movement of bitcoin from MtGox to Silk Road that is indicative of theft or siphoning rather than individuals transacting on Silk Road." Dec. of Richard A. Sanders (the "Sanders Declaration"), Dkt. No. 116-1 at ¶ 6. As discussed below, there are two fatal flaws with this argument. First, there is nothing to support Claimant's speculation that the approximately 250 BTC described in the Sanders Declaration contained the 0.01 BTC that Mt. Gox's records show were still in Roman Hossain's account. Second, the funds described in the Sanders Declaration were in fact used in illicit transactions conducted by Silk Road users "bren10792," "emptyvoid987," and "TakeMore," specifically of testosterone, dextroamphetamine, and marijuana. Furthermore, although Buckley claims Hossain's assignment of his interest in the 0.01 BTC is valid, because Buckley purchased his purported interest in the Defendant Property from Hossain with full knowledge of the instant forfeiture action, he cannot be an innocent owner who is reasonably without cause to believe that the property was subject to forfeiture. There are accordingly no "innocent owners" subject to any "excessive fines." There are only claimants offering "pure speculation," without demonstrating standing, seeking free admission to the discovery process. The Court should grant the government's motion to strike Buckley's claim.

## II. ARGUMENT

### A. **Buckley Offers Implausible Speculation, Not a Colorable Interest in the Defendant Property**

Buckley purports to have provided the Court with "evidence" establishing a "colorable financial interest in a portion of the Defendant Currency." *See* Dkt. No. 116 ("Opp.") at 4. He has not. Indeed, Buckley has not alleged with specificity how or when the 0.01 BTC moved from Roman Hossain's Mt. Gox account to the 1HQ3 address. Instead, Buckley invites the Court to speculate. Of the tens of millions of active Bitcoin addresses, he posits that it is possible that the 0.01 BTC could have wended its way through *two* separate thefts to 1HQ3, where it came to rest as part of the Defendant Property. Accepting Buckley's position, however, demands doubling down on precisely the speculation that

merited the dismissal of the other claimants' claims. Indeed, to credit Buckley's guesswork would require the Court to accept all the following:

1. Hossain's Mt. Gox account was subject to a hack less than three months after it opened;
2. Unlike the hacks of Hossain's account in February 2013, this earlier hack did not affect Hossain's account balance;
3. Though Hossain's account balance was unaffected, he apparently could not withdraw the 0.01 BTC after it was stolen (though, notably, Hossain never attempted to make any such withdrawal);
4. Having accessed Hossain's account, the first hacker decided to leave nearly all of Hossain's Bitcoin and to abscond with just a fractional interest of Bitcoin; and
5. This fractional interest went to Silk Road and at least 0.01 BTC of it, specifically the amount Buckley bought, was stolen by Individual X and ultimately sent to 1HQ3.

Apart from being wildly unlikely, there is no evidence that any of these events occurred; Buckley merely states that it is *possible* these events occurred. To credit this speculation would be akin to granting standing to someone who lost a nickel at the laundromat, based on nothing more than their suspicion that that same nickel was used to purchase a stolen Fabergé egg years later. Buckley has not identified what portion of Buckley's funds were stolen, when they were stolen, and how exactly they were transferred into the 1HQ3 wallet. Indeed, he cannot, because none of the substantial and extensive third-party analysis conducted with these transactions found any indication that the Defendant Property was associated with the Mt. Gox hack. *See* Dkt. No. 72-1 ¶ 6. To the extent that any of the small portion of funds stolen from Mt. Gox yet to be accounted for may have ended up at Silk Road despite this analysis, it is Buckley's burden to establish standing. *United States v. Real Prop. Located at 5208 Los Franciscos Way*, 385 F.3d 1187, 1191 (9th Cir. 2004) (claimant bears the burden in establishing standing). Thus, even assuming that the 0.01 BTC Buckley asserts is his was never part of Hossain's claim to the Defendant Property (notwithstanding that this is the first time Buckley has made such a claim), Buckley's claim *still* fails because he continues to rely on a narrative that is, at best, conjecture.

In an attempt to buttress his guesswork, Buckley submits the Sanders Declaration, in which Sanders asserts that certain transfers between Mt. Gox and Silk Road *could* be indicative of a systematic

theft of funds from Mt. Gox. *See* Sanders Decl., Dkt. No. 116-1 at ¶ 6. Yet the Sanders Declaration does little besides adding fuel to the speculative fire. The only support for Sanders's theory is a graph depicting a series of transfers from Mt. Gox to Silk Road that purportedly indicate a systematic transfer of Bitcoin from Mt. Gox to Silk Road. *Id.* This falls far short of establishing that Buckley has "a colorable interest in the property." *United States v. Real Prop. Located at 475 Martin Lane*, 545 F.3d 1134, 1140 (9th Cir. 2008). Moreover, a closer assessment of the few facts that Sanders presents shows that they contradict his conclusion.

Sanders points to five transactions that show Bitcoin traveled from Mt. Gox to Silk Road. As detailed in the accompanying declaration of Jeremiah L. Haynie, those transactions do not show the theft of cryptocurrency from Mt. Gox. Haynie Dec. at ¶¶ 15-21. Instead, they show user withdrawals from Mt. Gox that were used to consummate the following illicit transactions on Silk Road:

1. Two withdrawals were made by an account with the username "bren10792" on May 3, 2012 to purchase 10ML of Enanject 250 (Testosterone Enanthate);
2. One withdrawal was made by an account with the username "emptyvoid987" on May 5, 2012 to purchase Dextroamphetamine (Dexedrine) Spansules (Extended Release), 15mg capsules; and
3. One withdrawal was made by an account with the username "TakeMore" on May 6, 2012 to purchase AAA/Medium Grade Marijuana.

*Id*. Far from supporting Buckley's arguments, the Sanders Declaration confirms that Buckley is merely speculating as to the source of the Defendant Property.

The Court should refuse to credit this sheer speculation. Rather, the Court should strike Buckley's claim as he has failed to plead "facts—as opposed to conclusions—that plausibly" establish Buckley's standing. *See* Dkt. No. 104, Order Striking Claims of Other Claimants, at 9. The Court should strike Buckley's claim accordingly.

### B. Buckley Cannot Contest Forfeiture Because He Is Not An Innocent Owner

Buckley claims that the government provided "no authority" for its proposition that an assignment is invalid if the transfer of the property was intended to create a "straw" owner after the forfeiture action was filed, and claims in that vein that he is an innocent owner of his stake in the

1   Defendant Property. Dkt. No. 116, Op. at 8:14-23. However, the statutory definition of innocent
2   ownership in 18 U.S.C. § 983(d)(3)(A)(ii) expressly precludes innocent ownership of property when the
3   purchaser has cause to know it is subject to forfeiture.

4         The innocent ownership defense is the singular mechanism a claimant may use (after the
5   government proves the forfeitability of the Defendant Property) to establish that property should not be
6   forfeited. *See United States v. One 1990 Beechcraft, 1900 C Twin Engine Turbo-Prop Aircraft*, 619 F.3d
7   1275, 1277 (11th Cir. 2010). With respect to a property interest acquired after the conduct giving rise to
8   forfeiture, a bona fide purchaser must demonstrate that they "did not know and [were] reasonably
9   without cause to believe that the property was subject to forfeiture" in order to establish a defense to the
10  forfeiture action. 18 U.S.C. § 983(d)(3)(A)(i)-(ii).

11        Buckley's claim to innocent ownership is defective on its face for two reasons. First, ownership
12  is one of the two elements of proving an innocent ownership claim, and Buckley cannot establish that he
13  was an actual owner of the property for the reasons stated above. *One 1990 Beechcraft*, 619 F.3d at 1277
14  (an innocent ownership defense requires demonstration of both ownership and innocence). Second, even
15  if Buckley could demonstrate that he owned a portion of the Defendant Property, any such ownership
16  was not "innocent." Buckley admits that he acquired his interest in the 0.01 BTC *after* the Defendant
17  Property was subject to forfeiture. *See* Dkt. No. 116, Opp. at 10 n.1. Buckley bought the 0.01 BTC
18  precisely because he wanted to participate in these proceedings, as described in the government's
19  opening brief. In addition to being little more than an attempt to buy a ticket to a fishing expedition, this
20  kind of after-the-fact transfer of ownership is expressly disallowed by 18 U.S.C. § 983(d) and is fatal to
21  Buckley's claim. Here, Buckley not only knew of the forfeiture proceeding against the property—he
22  purchased the 0.01 BTC for the very purpose of participating in the proceeding. Given this conduct,
23  Buckley is not an innocent owner and thus cannot contest the forfeiture of the Defendant Property.

24        *United States v. $3,124,977.28 in U.S. Currency*, 239 F. App'x 335 (9th Cir. 2007) is instructive
25  in this regard. There, a lender acquired a secured interest in real property about two weeks after the
26  government had recorded a lis pendens on the property's title. *Id.* at 337. The lender argued that it
27  qualified as an innocent owner as defined by 18 U.S.C. § 983(d) and thus had a complete defense to
28  forfeiture of its secured interest in the property. *Id.* The trial court disagreed, reasoning that the lis

pendens provided the lender with constructive notice of the government's interest and accordingly prevented the lender from qualifying as an innocent owner.

If a secured creditor with constructive notice may not contest forfeiture, a claimant such as Buckley who acquired title in property precisely *because* it was subject to forfeiture should not be allowed to contest the forfeiture proceedings. *Id.*; *see also United States v. 1980 Red Ferrari, VIN No. 9A0034335, Oregon License No. GPN 835*, 827 F.2d 477, 480 (9th Cir. 1987) (affirming dismissal of claim because the claimant reasonably knew property subject to forfeiture). Buckley takes the idea of the "innocent owner" far beyond its logical limits and invites the Court to bless his exploratory claim. The Court should decline Buckley's invitation and strike his claim accordingly.

### C. **Buckley's Appeal to Due Process Is a Red Herring**

Buckley claims that he "has the right to protect [his] financial interest by requesting dismissal of this action on the grounds that Plaintiff has failed to properly plead for forfeiture and concomitantly failed [to] give proper notice." Opp. at 10. Buckley is mistaken. Because he acquired his alleged interest in the Defendant Property after the forfeiture proceeding began, Buckley was not an interested party entitled to notice at the beginning of the proceedings. *$3,124,977.28 in U.S. Currency*, 239 F. App'x at 338 (holding lender that acquired secured property interest after government acquired interest in property "was not an interested party and was therefore not entitled to notice and an opportunity to be heard"). Moreover, Buckley had no standing to receive notice at the outset of this case because he did not purchase his theoretical stake in the Defendant Property until after the forfeiture proceedings began. Even then, he never purchased an interest in the Defendant Property; he merely hoped that his purchase was of such an interest. And finally, actual notice of the proceedings is sufficient for purposes due process, as long as the claimant in such proceedings has the opportunity to raise their claim in court. *See Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 38 (1st Cir. 2000). Thus, Buckley's appeal to due process is a red herring and should be disregarded.

Even if Buckley were entitled to direct notice, the government provided the requisite notice to individuals with a known interest in the Defendant Property as expeditiously as possible. Indeed, the government provided direct notice to the only individual known to have an interest in the Defendant Property, Ross Ulbricht. The government also issued notice by publication as quickly as possible, as

required by Supplemental Federal Rule of Civil Rule G. The government accordingly provided adequate notice to Buckley.

### III. CONCLUSION

For all these reasons, the United States of America respectfully moves the Court to strike Buckley's claim.

DATED: June 3, 2022

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

/s/
DAVID COUNTRYMAN
CHRIS KALTSAS
CLAUDIA A. QUIROZ
GALEN A. PHILLIPS
Assistant United States Attorneys