UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>APPROXIMATELY 69,370 BITCOIN (BTC), BITCOIN GOLD (BTG) BITCOIN SV (BSV) AND BITCOIN CASH (BCH), et al.,<br><br>Defendants. | Case No. 20-cv-07811-RS<br><br>**ORDER GRANTING MOTION TO STRIKE BUCKLEY CLAIM, DENYING MOTION FOR LEAVE TO SEEK RECONSIDERATION OF ORDER STRIKING HOSSEIN CLAIM, AND DENYING MOTIONS TO ENTER SEPARATE JUDGMENTS** |

This is a civil forfeiture action arising from the seizure of approximately 69,370 Bitcoin, Bitcoin Gold, Bitcoin SV, and Bitcoin Cash ("bitcoin") allegedly derived from certain unlawful activity. The bitcoin was stolen by "Individual X" from addresses at "Silk Road," which is described by the government as having been "the most sophisticated and extensive criminal marketplace on the Internet, serving as a sprawling black market bazaar where unlawful goods and services, including illegal drugs of virtually all varieties, were bought and sold regularly by the site's users." In 2013, law enforcement seized and shut down Silk Road.

In 2020, further investigation revealed that Individual X had hacked into Silk Road and through 54 transactions sent a total of over 70,000 bitcoin to two addresses he controlled. The bulk of that bitcoin was later transferred to another address, from which it was ultimately seized. Individual X and the creator and owner of Silk Road have both consented to the forfeiture of the

seized bitcoin.

Several entities and individuals filed claims asserting that the seized bitcoin could include bitcoin in which they have ownership rights. Prior orders struck several of those claims and denied a motion to intervene by another potential claimant. At this juncture, a single claim remains. This order addresses that claim, denies one of the other claimant's motion for leave to seek reconsideration, and denies motions to enter separate judgments under Rule 54(b).[1]

1. Buckley claim

Lucas Buckley, "as Trustee for the Gox Victim Bitcoin Trust" filed a verified claim in which he asserts an ownership interest in "0.01 BTC Bitcoin ("BTC"), Bitcoin Gold ("BTG"), Bitcoin SV ("BSV"), Bitcoin Cash ("BCH"), and future Bitcoin hard forks (collectively the "Bitcoin") of those Defendant funds that are the subject of this forfeiture action." Buckley purchased the bitcoin from Roman Hossain, one of the other claimants whose claims have previously been stricken.

The government's motion to strike first asserts Buckley's claim fails because it is "entirely derivative" of Hossain's claim. Hossain, however, alleged that his account at Mt. Gox held 245.98124 BTC and that the amount stolen from him was 245.92 BTC.[2] Buckley contends the 0.01 BTC he purchased represents a portion of the fractional bitcoin remaining in Hossein's account *after* the theft of the 245.92 BTC. As such, the prior order's conclusion that Hossein had not plausibly alleged his 245.92 BTC were part of what the government seized from the 1HQ3 wallet, does not automatically also foreclose Buckley's claim.

Buckley's claim nevertheless fails at the outset because he undeniably acquired his asserted interest in the seized property with full knowledge of the forfeiture proceedings.

---

[1] The factual and procedural background has been described in more detail in prior orders and will not be further recounted here.

[2] Hossein's claim alleged "at least" that amount was stolen. In its motion to strike Hossein's claim, however, the government pointed to transfers totaling exactly that amount.

CASE NO. 20-cv-07811-RS

2

Buckley's verified claim asserts his interest in the property as an "innocent owner" under 18 U.S.C. § 983 (d). Subparagraph (3) of that section, however, provides:

> With respect to a property interest acquired after the conduct giving rise to the forfeiture has taken place, the term "innocent owner" means a person who, at the time that person acquired the interest in the property—
>
> (i) was a bona fide purchaser or seller for value (including a purchaser or seller of goods or services for value); and
>
> (ii) did not know and was reasonably without cause to believe that the property was subject to forfeiture.

Buckley plainly cannot satisfy subparagraph (ii), as he knew the property had already been seized and was the subject of this forfeiture proceeding before he purchased the 0.01 BTC from Hossein.[3]

Even assuming Buckley could somehow avoid the import of subparagraph (ii), however, his claim would still fail for the same core reason as those of Hossein and other claimants—he offers nothing more than undue speculation that any of the seized bitcoin is his property. Buckley's theory is that he purchased 0.01 BTC out of the approximately 0.06 BTC that remained in Hossein's account after hackers had stolen the 245.92 BTC in February of 2013. The notion that Hossein's remaining bitcoin was then stolen, then transferred to Silk Road, and then stolen again and transferred ultimately into the 1HQ3 wallet, is non-sensical given that the theft of the subject bitcoin took place months earlier. Even if, as Buckley and Hossein both contend, Mt. Gox records are not sufficiently reliable to establish the timing, Buckley has offered nothing other than guesses and bald assertions in support of his contention that Hossein's bitcoin ended up in the 1HQ3 wallet. Although Buckley offers an expert who opines certain transfers from Mt. Gox to Silk Road were "indicative of theft or siphoning," he does not show that Hossein's bitcoin is part of the seized property, or even that that there is a sufficiently plausible factual basis to so allege.

---

[3] The government did not clearly articulate this issue until its reply brief, instead subsuming it in an argument that Buckley's interest is only "nominal."

Buckley's further argument that factual disputes preclude dismissal is based on two flawed premises. First, Buckley insists that because his claim is "verified," it must be treated as evidence. Conclusory and/or implausible assertions, however, do not foreclose resolution at the pleading stage. *See Ashcroft v. Iqbal*, 556 U.S. 662, 681, 129 S. Ct. 1937, 1951 (2009) ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.")

Second, Buckley (and Hossein before him) appear to believe they can prevail if they show that *specific* bitcoin, once in Hossein's Mt. Gox account, was in the 1HQ3 wallet when seized. The assumption is that the law would not treat bitcoin as fungible in the same way as paper currency. Individual bitcoins, and fractions thereof, apparently are uniquely identifiable. So, of course, is paper currency, because each bill carries a unique serial number.

Consider, however, what would happen if a person deposited a $100 bill in a bank account, keeping a record of its serial number. Later that specific bill is taken in a robbery from that same bank. The government eventually seizes a quantity of cash from the robbers, or other downstream criminals, and that specific bill is part of the seized funds. If the bank did not deduct $100 from the depositor's account when the robbery occurred on grounds that specific bill had been stolen, he or she would not have a viable claim in the forfeiture proceeding. Furthermore, if a person filed a claim baldly asserting that the property included his or her specific bills, he or she likely would not be entitled to discovery of all the serial numbers of the seized cash merely in the hopes of being able to assert a claim.

There may, of course, be reasons to treat the fungibility of cryptocurrency differently from that of paper currency. At least at this point, however, neither Buckley nor any or the other claimants has shown that the law would permit them to trace individual bitcoins without consideration of fungibility issues.

Finally, Buckley refers to potential claims "for approximately 34,754 additional bitcoin that were formerly held in accounts on Mt. Gox." He acknowledges, however, that he lacks knowledge "which, *if any*" (emphasis added) of that bitcoin was transferred to the 1HQ3 wallet.

Accordingly, the government's motion to strike the claim is granted.

### 2. Hossein reconsideration

Pointing to the expert declaration submitted by Buckley as "new evidence," Hossein seeks leave to file a motion for reconsideration of the order striking his own claim. Hossein insists the declaration undermines the government's showing as to when and where bitcoin moved, and thereby at a minimum reflects the existence of disputed factual issues. As discussed above, the declaration does not create factual issues precluding disposition of these claims on the pleadings.

Furthermore, even assuming no weight at all should be given to the government's evidence as to the timing of the various thefts and where funds stolen from Mt. Gox went, Hossein would not be entitled to a different result. The prior order expressly held, "[e]ven apart from the timing, Hossein would have nothing other than pure speculation to suggest that his Bitcoin was transferred to Silk Road . . . . In essence, Hossain has done nothing more than show that he owned some Bitcoin that was stolen from him, and then baldly claimed that even though the seized Bitcoin was stolen from somewhere else, some of it must be his. The timing proves otherwise, but even in the absence of the government's showing on that point, Hussain has not met his burden to show a colorable interest in the property." The request for leave to seek reconsideration is denied.

### 3. Rule 54(b) motions

Claimants Battle Born Investments Company, LLC, First 100, LLC, and 1st One Hundred Holdings, LLC, (collectively "Battle Born") and claimant Ilija Matusko seek entry of separate judgments under Rule 54(b) of the Federal Rules of Civil Procedure. While separate judgments would not have been warranted in any event, with the striking of Buckley's claim, this matter is now ripe for final judgment, which will render the motions moot. They are therefore denied. The government shall promptly submit a proposed final judgment.

**IT IS SO ORDERED**.

Dated: July 14, 2022

_____
RICHARD SEEBORG
Chief United States District Judge