JOSEPH N. AKROTIRIANAKIS (SBN 197971)
  jakro@kslaw.com
KING & SPALDING LLP
633 West Fifth Street, Suite 1700
Los Angeles, CA 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310

ROD ROSENSTEIN (admitted *pro hac vice*)
  rrosenstein@kslaw.com
KELLAM M. CONOVER (SBN 295958)
  kconover@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania Ave., NW
Suite 900
Washington, DC 20006
Telephone: (202) 737-0500
Facsimile: (202) 626 3737

*Attorneys for Claimants*
*Battle Born Investments Company, LLC*;
*First 100, LLC*; *and 1st One Hundred Holdings, LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>   v.<br><br>APPROXIMATELY 69,370 BITCOIN (BTC), BITGOLD (BTG), BITCOIN SV (BSV), AND BITCOIN CASH (BCH) seized from 1HQ3Go3ggs8pFnXuHVHRytPCq5fGG8Hbhx<br><br>             Defendant.<br><br>First 100, LLC, 1st One Hundred Holdings, LLC, and Battle Born Investments Company, LLC,<br><br>             Claimants. | Case No. 3:20-cv-07811-RS<br><br>**NOTICE OF MOTION AND MOTION TO TEMPORARILY STAY ENFORCEMENT OF THE JUDGMENT PENDING RESOLUTION OF RELATED PROCEEDINGS**<br><br>Date: January 9, 2025<br>Time: 1:30 pm<br>Ctrm: 3<br><br>Hon. Chief Judge Richard Seeborg<br><br>Action Filed: November 5, 2020 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 9, 2025, at 1:30pm, or as soon thereafter as the matter may be heard, in Courtroom 3 of the above-entitled court located at 450 Golden Gate Avenue, San Francisco, California 94102, Claimants Battle Born Investments Company, LLC, First 100, LLC, and 1st One Hundred Holdings, LLC respectfully move to temporarily stay enforcement of the judgment pending related parallel proceedings in *Battle Born Investments Co., LLC v. United States Department of Justice*, No. 24-cv-0067 (BAH) (D.D.C.).

The Motion will be based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, and all other files and pleadings in this matter.

DATED: November 8, 2024

KING & SPALDING LLP

By: */s/Rod Rosenstein*
ROD ROSENSTEIN
JOSEPH N. AKROTIRIANAKIS
KELLAM M. CONOVER

*Attorneys for Claimants*
*Battle Born Investments Company, LLC*; *First 100, LLC*; *and 1st One Hundred Holdings, LLC*

# TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ................................................................................................... 1

II.    BACKGROUND ..................................................................................................... 2

III.    LEGAL STANDARD ............................................................................................. 4

IV.    ARGUMENT .......................................................................................................... 5

    A.    A Temporary Stay Would Be The Fairest Course For The Parties. ................ 5

        1.    The Absence of Any Hearing In This Case Was Deeply Unfair. ...................................................................................................... 6

        2.    The Government Will Not Be Harmed By A Temporary Stay. ........................................................................................................ 9

        3.    A Temporary Stay Would Best Serve The Interests Of Justice In This Historically Large Forfeiture Proceeding. .................. 10

    B.    No Bond Is Warranted For Such A Short-Term Stay. .................................... 11

V.    CONCLUSION ..................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Cancelosi*,
    456 B.R. 515 (Bankr. D. Or. 2011)..............................................................................5, 9, 11

*Battle Born Invs. Co., LLC v. U.S. Dep't of Justice* (*"FOIA Action"*),
    No. 24-cv-0067 (BAH) (D.D.C.) ................................................................................ *passim*

*Fresno Rock Taco, LLC v. Nat'l Surety Ins. Corp.*,
    No. 1:11-cv-00845-SKO (E.D. Cal. Oct. 12, 2014), ECF 381 ................................5, 9, 11, 12

*Levya v. Certified Grocers of Cal., Ltd.*,
    593 F.2d 857 (9th Cir. 1979) ........................................................................................4, 5, 9

*Metabolife Int'l Inc. v. Wornick*,
    264 F.3d 832 (9th Cir. 2001) ...............................................................................................7

*Townsend v. Holman Consulting Corp.*,
    881 F.2d 788 (9th Cir. 1989) .........................................................................................4, 11

*United States v. $31,000.00 in U.S. Currency*,
    872 F.3d 342 (6th Cir. 2017) ................................................................................................8

*United States v. $148,840.00 in U.S. Currency*,
    521 F.3d 1268 (10th Cir. 2008) ............................................................................................8

*United States v. $493,850.00 in U.S. Currency*,
    518 F.3d 1159 (9th Cir. 2008) ..............................................................................................5

*United States v. $557,933.89, More or Less, in U.S. Funds*,
    287 F.3d 66 (2d Cir. 2002).....................................................................................................8

*United States v. Battle Born Invs. Co., LLC*,
    2023 WL 5319258 (9th Cir. Aug. 18, 2023)................................................................. *passim*

**Rules**

Fed. R. Civ. P. 60..................................................................................................................2, 5, 9

Fed. R. Civ. P. 62..............................................................................................................4, 5, 9, 11

Fed. R. Civ. P. Supp. R. G(8)(c)(ii)(B).........................................................................................3

S. Ct. R. 45.3................................................................................................................................4

N.D. Cal. Civ. L.R. 16-7........................................................................................................3, 6, 7

BATTLE BORN'S MOTION TO STAY
ENFORCEMENT OF THE JUDGMENT                    ii                    CASE NO. 3:20-cv-07811-RS

**Other Authorities**

"Bitcoin Braces for Further Downside as US Government Prepares to Unload Silk Road Holdings," Brave NewCoin (Oct. 12, 2024) https://bravenewcoin.com/insights/bitcoin-braces-for-further-downside-as-us-government-prepares-to-unload-silk-road-holdings ...................................................................1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Claimants Battle Born Investments Company, LLC, First 100, LLC, and 1st One Hundred Holdings, LLC ("Battle Born") seek a temporary stay of execution of the judgment to ensure that fairness and justice are served in one of the largest civil forfeitures in history. Battle Born claims it innocently acquired ownership of the bitcoin wallet at issue from Raymond Ngan. It is undisputed that Battle Born now owns Ngan's bankruptcy estate, and as this Court recognized, Ngan himself "represent[ed] … that he owned [that] wallet." ECF 104 at 8. Yet the Ninth Circuit held that Battle Born could not enter the case because it failed to show "how Ngan would have come into ownership" of the wallet—*i.e.*, some "association with Individual X," the person whom the government says stole that bitcoin. *United States v. Battle Born Invs. Co., LLC* ("*Battle Born*"), 2023 WL 5319258 at *2 (9th Cir. Aug. 18, 2023). The government is thus poised to liquidate *$5.2 billion* in bitcoin without adversarial testing from any claimant. If the government is permitted to sell that bitcoin, moreover, it "could flood the market and trigger a significant drop in Bitcoin's value, analysts warn." "Bitcoin Braces for Further Downside as US Government Prepares to Unload Silk Road Holdings," Brave NewCoin (Oct. 12, 2024), https://bravenewcoin.com/insights/bitcoin-braces-for-further-downside-as-us-government-prepares-to-unload-silk-road-holdings.

This result is profoundly unfair for several reasons. This Court initially struck Battle Born's claim on the pleadings. The Ninth Circuit found that was error but took the extraordinary step of *sua sponte* granting summary judgment on the theory that there was insufficient evidence of Battle Born's ownership, even though Battle Born was never allowed any discovery. The Ninth Circuit also imposed an impossible standard, requiring proof of Ngan's association with Individual X when the government has never disclosed who Individual X is. To have any hope of satisfying that standard, Battle Born sought to compel disclosure of Individual X's identity under the Freedom of Information Act. *See Battle Born Invs. Co., LLC v. U.S. Dep't of Justice* ("*FOIA Action*"), No. 24-cv-0067 (BAH) (D.D.C.). The parties' cross-motions were fully briefed by August 2, so summary judgment in the FOIA case could be granted any day.

1    Battle Born therefore requests a temporary stay of execution of the judgment in this case pending resolution of the parallel FOIA action. If the government is ordered to disclose Individual X's identity, Battle Born intends to file a Rule 60(b) motion to re-open the judgment so this Court may consider any additional evidence of Ngan's association with Individual X. If no disclosure is compelled, the stay in this case can be lifted. A stay would be the fairest course for the parties, and it would not prejudice the government, which now controls the contents of the 1HQ3 bitcoin in its own, secure wallet. Only a stay can ensure there is no doubt as to the government's entitlement to billions of dollars in property before it is sold.

The Court should grant Battle Born's motion to temporarily stay execution of the judgment.

## II.   BACKGROUND

This forfeiture action concerns the so-called "1HQ3" wallet, which contains roughly 69,370 bitcoin and related cryptocurrency now worth over $5.2 billion. *See* ECF 104 at 1. According to the government's inadmissible hearsay theory, a person known to the government but identified only as "Individual X" stole that bitcoin in 54 distinct transactions from wallets supposedly "controlled by" the Silk Road marketplace, and then transferred the bitcoin to the 1HQ3 wallet. ECF 8, ¶¶ 15–16, 22. The government has never been required to prove these allegations, however, nor has it disclosed the identity of the mystery person who allegedly voluntarily forfeited his interest in that valuable asset, nor has it established that the property was used in any criminal activity.

Battle Born submitted verified claims that it is an innocent owner who acquired ownership of the 1HQ3 wallet from Raymond Ngan. *See* ECF 62-5; ECF 62-6. There is unrebutted evidence that Ngan owned the 1HQ3 wallet—including that he tried to sell enormous quantities of bitcoin, negotiated a sale through an escrow account and draft agreements that required delivery of the bitcoin before Ngan would be paid, and stated that the 1HQ3 wallet would fund that sale. *See* ECF 98-2, ¶¶ 4–14; ECF 98-2, Ex. 2. This conduct would have been pointless unless Ngan controlled the 1HQ3 wallet. In addition, when Ngan's associate fled the country with Ngan's personal electronic devices, he deleted 54 files from those devices, ECF 98-4, ¶¶ 21–24, presumably to

destroy evidence of Ngan's interest in the wallet. While Battle Born suspects that Ngan is, or is associated with, Individual X, it candidly acknowledged in its verified claim that it "require[s] additional information" to confirm it because the government had not disclosed Individual X's identity. ECF 62-5, ¶ 8; ECF 62-6, ¶ 14.

No discovery has happened in this case, as it has been barred in the absence of a case-management order. *See* N.D. Cal. Civ. L.R. 16-7. Given no discovery or evidentiary hearing, the government could move only for judgment on the pleadings to strike Battle Born's claim. Fed. R. Civ. P. Supp. R. G(8)(c)(ii)(B). Yet the government improperly asked this Court to consider on that motion a hearsay declaration by an IRS agent who had no firsthand knowledge of the facts. *See* ECF 90 at 25 (motion); ECF 90-1 (declaration). This Court then held that Battle Born lacked standing because it had not "pleaded facts" indicating "how Ngan would have come into ownership of the Bitcoin in [the] 1HQ3 wallet." ECF 104 at 8–9.

On appeal, the government conceded that this Court had granted its motion to strike based on the pleadings and had not "convert[ed] [its] analysis to one of summary judgment." DOJ Br. at 32, 36–37, *Battle Born* Dkt. 29 (9th Cir. filed Feb. 7, 2023). That should have ended the appeal and resulted in a remand for discovery and an evidentiary hearing: As the Ninth Circuit held, this court had erred because Battle Born's "assertions" of ownership were "sufficient at the pleading stage." *Battle Born*, 2023 WL 5319258 at *2.

Surprisingly, though, the government urged the Ninth Circuit to do what this Court had not done and *grant summary judgment on appeal* on the basis that Battle Born—who had never been allowed any discovery—"did not prove an ownership interest in the bitcoin in 1HQ3 by a preponderance of the evidence." 9th Cir. Dkt. 29 at 45. The Ninth Circuit complied and held that Battle Born "failed to carry [its] burden to establish some evidence" of ownership on summary judgment because it did not explain "how Ngan would have come into ownership" of the wallet or, equivalently, Ngan's "association with Individual X"—which would be impossible because the government has never disclosed who Individual X is. *Battle Born*, 2023 WL 5319258 at *2.

While Battle Born sought certiorari in the U.S. Supreme Court, it filed a related FOIA action seeking to compel the government to disclose Individual X's identity. *See FOIA Action*, No. 24-cv-0067 (BAH) (D.D.C. filed Jan. 8, 2024). The parties completed summary-judgment briefing in the FOIA action on August 2, 2024, and are awaiting resolution of the case from the district court.

The Supreme Court denied certiorari in this case on October 7, 2024. Under the Supreme Court's Rules, the equivalent of that Court's mandate issues "32 days after entry of the judgment," S. Ct. R. 45.3—or November 8, 2024. This stay request was filed that same day.

### III.    LEGAL STANDARD

It is well established that "[a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case," but are not "necessarily controlling of the action." *Levya v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979) (citing numerous authorities). "In such cases the court may order a stay of the action pursuant to its power to control its docket and calendar and to provide for a just determination of the cases pending before it." *Id.* (remanding for district court to determine whether "a just and efficient determination of the case will be promoted by a stay"). The power to grant a stay stems from this Court's inherent authority to manage its own docket.

In addition, Rule 62(b) authorizes this Court to temporarily stay enforcement of the judgment "[a]t any time after judgment is entered" where the requesting party "provid[es] a bond or other security." Fed. R. Civ. P. 62(b). In this case, no bond is justified because the government is not at risk of incurring any loss.[1] Moreover, a "district court has broad discretionary power to waive the bond requirement if it sees fit." *Townsend v. Holman Consulting Corp.*, 881 F.2d 788, 796–97 (9th Cir. 1989) (citing authorities and waiving bond requirement where it was "unnecessary"), *vacated on reh'g on other grounds*, 929 F.2d 1358 (9th Cir. 1990) (en banc).

---

[1] The bitcoin in the wallet was worth approximately $1 billion when the government filed this forfeiture claim on November 5, 2020. It is worth more than $5.2 billion today.

Pursuant to Rule 62, courts in this Circuit commonly have granted a temporary stay of enforcement of a judgment pending resolution of a motion to amend that judgment without requiring any bond. *See*, *e.g.*, Order at 2–3, *Fresno Rock Taco, LLC v. Nat'l Surety Ins. Corp.* ("*Fresno Rock Taco*"), No. 1:11-cv-00845-SKO, ECF 381 (E.D. Cal. Oct. 12, 2014) (granting "National's motion for a stay through disposition of the parties' Rule 59(e) motions" without requiring a bond); *In re Cancelosi*, 456 B.R. 515, 520 (Bankr. D. Or. 2011) (granting "stay [of] enforcement of the Judgment pending a decision on the [post-judgment] Motion, pursuant to Civil Rule 62(b)" and "[i]n light of the limited period contemplated … not requir[ing] [party] to put up any security or bond during the period of the stay").

## IV.   ARGUMENT

### A.   A Temporary Stay Would Be The Fairest Course For The Parties.

Absent a stay, the government will execute the judgment for civil forfeiture and liquidate the defendant *res*—thereby "'render[ing] the judgment'" and any subsequent order amending that judgment "'useless'" because "the *res* can neither be delivered nor restored to Claimants." *United States v. $493,850.00 in U.S. Currency*, 518 F.3d 1159, 1164 (9th Cir. 2008) (quoting *Rep. Nat'l Bank of Miami v. United States*, 506 U.S. 80, 88–89 (1992)). For precisely this reason, this Court previously ordered (and the government stipulated to) a temporary stay of execution of the judgment pending Battle Born's earlier appeal. *See* ECF 133 (citing *$493,8500*, 518 F.3d at 1159). A modest extension of that stay—pending resolution of the related FOIA action and an anticipated Rule 60 motion (if any)—is therefore the "fairest course for the parties." *Levya*, 593 F.2d at 863.

Indeed, it is the only fair course. This case never should have been decided without a hearing, as Battle Born sufficiently alleged standing and was never allowed any discovery or hearing before being ejected from the case. Granting a temporary stay to allow claimants an opportunity to obtain evidence to prove its standing would be the fairest course and would not harm the government. Fairness and justice demand that there can be no doubt as to the government's entitlement to property when it has forfeited a bitcoin wallet now worth $5.2 billion.

### 1. The Absence of Any Hearing In This Case Was Unfair.

The government's entitlement to the 1HQ3 wallet turns in part on whether Battle Born is an innocent owner who acquired an interest in the wallet from Ngan. There is no dispute that Battle Born, if it acquired ownership from Ngan, is an innocent owner who acquired Ngan's assets in good faith. ECF 62-5, ¶ 8; ECF 62-6, ¶ 16; ECF 98-4, ¶¶ 2–24. By opposing Battle Born's standing and introducing a hearsay affidavit without any discovery or cross-examination, the government has prevented Battle Born from having a fair opportunity to prove that it has an ownership interest in the 1HQ3 wallet.

Before any discovery could be conducted, the government quickly moved to strike Battle Born's claim on the pleadings for failure to adequately allege standing. *See* ECF No. 90; N.D. Cal. 16-7. The government sought to bolster this motion with assertions of fact in a declaration that was not based on personal knowledge but instead merely relayed the government's hearsay-based theory about how the bitcoin ended up in 1HQ3. *See* ECF 90 at 25; ECF 90-1. That led this Court to shut Battle Born out of the case for "not plead[ing] facts—as opposed to conclusions—that plausibly put the 1HQ3 wallet into [Ngan's] bankruptcy estate." ECF 104 at 9. This was error: As the Ninth Circuit explained on appeal, Battle Born's "assertions" of ownership were "sufficient at the pleading stage." *Battle Born*, 2023 WL 5319258 at *2.

That should have ended the inquiry. In an ordinary case, the Ninth Circuit would have reversed this Court's judgment and remanded for discovery and further proceedings. But that did not happen here because of unusual gamesmanship by the government on appeal. Despite conceding that this Court had "granted [it]s motion to strike on the basis that Battle Born failed to properly plead standing," 9th Cir. Dkt. 29 at 32, and had not "convert[ed] [its] analysis to one of summary judgment," *id.* at 36–37, the government nonetheless urged the Ninth Circuit to grant *summary judgment on appeal* because Battle Born had "not prove[d] an ownership interest … by a preponderance of the evidence," *id.* at 45. Led astray by the government's unwarranted argument, the Ninth Circuit shut the door again on Battle Born, holding that Battle Born "failed to carry [its] burden to establish some evidence" of ownership because it did not explain Ngan's

"association with Individual X" such that it could show "how Ngan would have come into ownership" of the wallet. *Battle Born*, 2023 WL 5319258 at *2.

This ruling was unfair because the Federal Rules of Civil Procedure "require" discovery "where the nonmoving party [*i.e.*, Battle Born] has not had the opportunity to discover information that is essential to its opposition." *Metabolife Int'l Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (cleaned up). Yet summary judgment was granted here even though Battle Born had never been given that opportunity. The local rules barred discovery until after entry of a case management order, which did not issue in this case. *See* N.D. Cal. Civ. L.R. 16-7. And Battle Born was denied discovery on appeal even though the government admitted at oral argument that the discovery Battle Born would have sought—a declaration from Ngan attesting to his ownership of the 1HQ3 bitcoin wallet, *see* ECF 98-6—"might be [enough] … under a summary judgment standard," 9th Cir. Dkt. 30 at 16:57–17:10, https://www.youtube.com/watch?v=3OovZrVBPPA. This created a Catch-22: Battle Born lacked standing because it didn't have enough evidence of ownership, yet the only way to obtain the required evidence is through discovery, and it can't obtain discovery because it lacks standing.

This Catch-22 was particularly unfair because Battle Born produced significant, unrebutted evidence of Ngan's prior ownership even without discovery. That evidence included proof that Ngan negotiated to sell enormous quantities of bitcoin, secured a sale through draft agreements and an escrow account, and represented that the 1HQ3 wallet would fund that sale. *See* ECF 98-2, ¶¶ 4–14; ECF 98-2, Ex. 2. As this Court recognized, Ngan himself had "represent[ed] … that he owned the 1HQ3 wallet," ECF 104 at 8; this conduct would have been pointless had Ngan not controlled the 1HQ3 wallet (under the draft agreement, Ngan would have received nothing until after he had delivered the 1HQ3 bitcoin). Indeed, Ngan's own associate deleted 54 files from Ngan's devices, ECF 98-4, ¶¶ 21–24—a fact the government has never been able to explain except by reference to "the 54 transactions that were sent from Bitcoin addresses controlled by Silk Road" when the 1HQ3 bitcoin was allegedly stolen, ECF 8, ¶ 15.

Compounding this unfairness, the government successfully pressed the Ninth Circuit to adopt an erroneous—indeed, impossible—standard. Battle Born cannot establish Ngan's "association with Individual X," as the Ninth Circuit required, when the government has never disclosed who Individual X is. According to the government, "only designated USAO-CAN personnel knows the identity of individual X." *FOIA Action* Dkt. 15-2, ¶ 19. Battle Born filed the related FOIA action to compel disclosure of Individual X's identity. Only after Battle Born learns Individual X's identity can Battle Born be said to have had a fair opportunity to demonstrate its standing under the Ninth Circuit's otherwise impossible standard.

The approach that the government pressed the Ninth Circuit to adopt here was unfair for yet another reason: As other Circuits have recognized, the government's approach is "mistaken," *United States v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 76 (2d Cir. 2002) (Sotomayor, J.), and "fundamental[ly] flaw[ed]," *United States v. $148,840.00 in U.S. Currency*, 521 F.3d 1268, 1274 (10th Cir. 2008), because it "turn[s] the burden of proof in forfeiture actions on its head" by effectively requiring claimants to prove the property was acquired lawfully, when it should be the government's burden to prove the property is the fruit of unlawful activity, *United States v. $31,000.00 in U.S. Currency*, 872 F.3d 342, 353 (6th Cir. 2017). If the Ninth Circuit had followed the other Circuits, it would have remanded for an evidentiary hearing. Urged on by the government, however, the Ninth Circuit shut out Battle Born because "no authority in this Circuit" precluded that unfair result. *Battle Born*, 2023 WL 5319258 at *3.[2]

The equities of this case are unique. The government followed an unusual strategy in pressing the courts to deny Battle Born's standing based on erroneous and shifting theories. And unlike most claimants, Battle Born has already proffered substantial evidence of ownership and

---

[2] As other Circuits have explained, the government and Ninth Circuit's approach in this case overlooks "an important difference, for standing purposes, between possessory and ownership interests": Whereas an explanation of ownership is necessary to establish that a possessory interest is legitimate, "no explanatory evidence" is needed to establish an asserted *owner*'s stake in the outcome of a forfeiture action, as Battle Born asserted here. *$148,840.00*, 521 F.3d at 1273–75.

cannot possibly hope to satisfy the Ninth Circuit's heightened evidentiary standard absent discovery or favorable resolution of the FOIA action.

Accordingly, the only fair course is to stay enforcement of the judgment while Battle Born seeks to obtain Individual X's identity through the related FOIA action.

### 2. The Government Will Not Be Harmed By A Temporary Stay.

In addition to being the only fair course for Battle Born, a temporary stay would be fair to the government—which previously stipulated to a similar stay and would not be harmed by a small extension of that earlier stay. The requested stay would be for only a short period of a few months while the FOIA court resolves the parties' summary-judgment motions (which have been fully briefed for over three months now) and, if necessary, while this Court resolves Battle Born's anticipated Rule 60 motion based on new evidence from that FOIA action. There is no risk that the government might somehow lose possession of the 1HQ3 wallet during that short time period. To the contrary, the government has already "t[aken] custody of the Defendant Property from 1HQ3" and transferred those contents to its own, secure cryptocurrency wallet. ECF 8, ¶ 24.

Nor is there any reasonable risk that the government would be harmed by fluctuations in the price of the 1HQ3 bitcoin. The government has, in fact, benefited enormously from such fluctuations so far. When it originally filed this action, the 1HQ3 wallet was worth "approximately $1 Billion." ECF 8, ¶ 19. Today it is worth over five times that amount—more than $5.2 billion. *See* https://coinmarketcap.com/currencies/bitcoin (last accessed Nov. 7, 2024). The lowest value of the wallet over the past year was approximately $2.4 billion (one year ago); and for the lifetime of this litigation, it has not dropped below its value when the government filed this action. *See id.*

Perhaps recognizing the absence of any real risk of harm, the government stipulated to stay enforcement of the judgment pending Battle Born's appeal. *See* ECF 133. A modest extension of that stay "pending resolution of independent proceedings which bear upon the case" and an anticipated post-judgment motion (if any is appropriate) would be "the fairest course for the parties." *Levya*, 593 F.2d at 863; *see also*, *e.g.*, *Fresno Rock Taco* at 2–3 (granting "National's motion for a stay through disposition of the parties' Rule 59(e) motions"); *Cancelosi*, 456 B.R. at

520 (granting "stay [of] enforcement of the Judgment pending a decision on the [post-judgment] Motion, pursuant to Civil Rule 62(b)" and "[i]n light of the limited period contemplated … which will terminate upon entry of an order fully deciding the Motion").

### 3. A Temporary Stay Would Best Serve The Interests Of Justice In This Historic Forfeiture Proceeding.

Two additional public-interest concerns reinforce why a stay is necessary here to preserve the fair administration of justice. First, the risk of error is too large to disregard. This case involves a historically large civil forfeiture. When billions of dollars are at stake, there should not be any doubt about the government's entitlement to the property it forfeits. Yet absent a stay, the government could liquidate the 1HQ3 bitcoin shortly before it comes to light that Individual X was associated with Ngan, Ngan did own the 1HQ3 bitcoin, and Battle Born *is* an innocent owner after all. At that point, Battle Born would have no recourse for recovering from the government the bitcoin that rightly belong to it. The only way to prevent this unjust outcome is to grant a temporary stay.

Second, there is a heightened need for transparency in this case. The government has repeatedly granted lenient treatment to Silk Road criminals so that they would not contest the government's claim to their valuable property. *See* Opp. at 3–4, 13–14, *FOIA Action* Dkt. 16 (D.D.C. July 12, 2024) (detailing pattern of lenient treatment in other Silk Road cases). James Zhong, for example, received just one year in prison despite stealing bitcoin worth billions of dollars because he consented to the bitcoin's forfeiture. *See id.* at 13. The government continued that pattern here by effectively agreeing to deem Ulbricht's civil penalty paid in full in return for consenting to the forfeiture. *See* ECF 47. And to secure Individual X's consent, the government may have declined to press charges. *See* Consent Agreement, *FOIA Action* Dkt. 15-7 (D.D.C. June 18, 2024) (Individual X apparently never charged in exchange for his non-opposition); DOJ Br. at 10, *FOIA Action* Dkt. 19 (D.D.C. July 25, 2024) (Individual X "presently can retain a private life").

The upshot is that nobody has contested the government's entitlement to billions of dollars of assets in these Silk Road cases. The government may believe that it is truly entitled to those assets; but it has succeeded in shrouding its entitlement to those assets (if any) in secrecy, rather than open adversarial testing. In this case, for example, the government has never submitted any competent evidence to substantiate its assertion that the 1HQ3 bitcoin was actually stolen by Individual X. Nor even has it even alleged that Individual X was the *sole* owner of that wallet. As the government's own Asset Forfeiture Manual acknowledges, more than one individual may own a bitcoin wallet. *See* Asset Forfeiture Policy Manual at 2-11 (2023) ("Prosecutors and agents should be aware that there may be multiple copies of a private key for a particular cryptocurrency asset."), https://www.justice.gov/criminal/criminal-afmls/file/839521/dl. There is a significant chance the FOIA action could yield information that would entitle Battle Born to contest the government's entitlement to the 1HQ3 wallet. The public deserves at least that much transparency in this historically large forfeiture case.

Accordingly, the Court should grant a temporary stay pending resolution of the FOIA action and any appropriate post-judgment motion from Battle Born.

### B.      No Bond Should Be Required For A Short-Term Stay.

"The purpose of a bond is to secure the interests of the judgment creditor in collecting the judgment." *Fresno Rock Taco* at 3 (quoting *Rachel v. Banana Rep., Inc.*, 831 F.2d 1503, 1505 n.1 (9th Cir. 1987)). Those purposes are already served here because, as explained above, there is no risk that a stay will imperil either the government's access to the 1HQ3 wallet—which it securely controls—or the $1 billion value the government has already written down for that wallet—which is currently worth over five times that amount. *Supra* I.A.2. Accordingly, this Court has "broad discretionary power to waive the bond requirement if it sees fit." *Townsend*, 881 F.2d at 796–97.

Moreover, the brief period of the requested stay further warrants waiver of the bond requirement. Other courts within this Circuit have dispensed with the bond requirement "[i]n light of the limited period contemplated" by a requested stay that would "terminate upon entry of an order fully deciding" a party's post-judgment motion. *Cancelosi*, 456 B.R. at 520 ("not requir[ing]

[party] to put up any security or bond during the period of the stay" pending forthcoming ruling on post-judgment motion); *Fresno Rock Taco* at 2–3 (similar). Here, a stay would last for a similarly short period to resolve Battle Born's anticipated post-judgment motion—or potentially less time than that, if the government ends up not being compelled to say who Individual X is.

Accordingly, the Court should dispense with Rule 62(b)'s bond requirement.

## V.  CONCLUSION

The Court should temporarily stay enforcement of the judgment pending resolution of the related FOIA action and Battle Born's anticipated Rule 60 motion (if any is appropriate).

DATED:  November 8, 2024

KING & SPALDING LLP

By: /s/Rod Rosenstein
ROD ROSENSTEIN (admitted *pro hac vice*)

*Attorneys for Claimants*
*Battle Born Investments Company, LLC*; *First 100, LLC*; *and 1st One Hundred Holdings, LLC*